# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

JUSTIN W. JENKINS

                Plaintiff,

vs.

CORTEVA, INC.; SYNGENTA CROP
PROTECTION AG; SYNGENTA CORP.;
SYNGENTA CROP PROTECTION, LLC; CHS
INC.; NUTRIEN AG SOLUTIONS, INC.; JOHN
DOE DEFENDANT WHOLESALERS 1–5;
AND JOHN DOE DEFENDANT RETAILERS
6–10,

                Defendants.

**CIVIL ACTION NO. 1:22–cv–1976–RLY–DLP**

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO TRANSFER</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND .......................................................................................................... 2

III.   LEGAL STANDARD ................................................................................................. 3

IV.   ARGUMENT ............................................................................................................... 4

   A.   Plaintiff's choice of forum is entitled to substantial deference. .................................. 4

   B.   The convenience factors favor the Southern District of Indiana. .............................. 6

      1.   The Southern District of Indiana is more convenient for witnesses. ................. 6

      2.   The Southern District of Indiana is more convenient for parties. .................... 8

      3.   Defendants exaggerate the "efficiencies" that can be gained by litigating the private actions in the same forum as the FTC Action. .................................................. 9

   C.   Maintaining this Action in Indiana is in the public interest. ................................... 12

      1.   Indiana has a vested interest in seeing this dispute resolved locally .............. 12

      2.   Docket congestion is not a significant consideration in this District. ............. 14

      3.   Plaintiff's Action will proceed to trial more quickly in this District than in the M.D.N.C. ....................................................................................................... 14

V.   CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

*1st Signature Lending LLC v. Brighton Bank*, No. 20-2130, 2020 U.S. Dist. LEXIS 233223 (S.D. Ind. Dec. 11, 2020)……………………………………………..……………...3,4,6

*Alerding Castor Hewitt LLP v. Wockner*, No. 16-2453, 2017 U.S. Dist. LEXIS 230699 (S.D. Ind. Apr. 28, 2017)………………………………………………….……………………6

*Almonte v. Coca-Cola Bottling Co.*, No. 95-1458, 1996 U.S. Dist. LEXIS 20253 (D. Conn. Dec. 11, 1996)………………………………………………………………………………….10

*In re Am. Express Antisteering Rules Antitrust Litig.*, No. 11-md-2221, 2014 U.S. Dist. LEXIS 17226 (E.D.N.Y. Feb. 11, 2014)…………………………………..……..…10

*Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958 (N.D. Ill. 2000)……………………………3,4

*Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013)……………………………...……….3,4

*Badger Daylighting Corp. v. Palmer*, No. 19-2106, 2019 U.S. Dist. LEXIS 103818 (S.D. Ind. June 20, 2019)……………………………………………………………………………14

*Berghausen v. Microsoft Corp.*, 765 N.E.2d 592 (Ind. Ct. App. 2002)……………………………13

*Brandon Apparel Grp., Inc. v. Quitman Mfg. Co. Inc.*, 42 F. Supp. 2d 821 (N.D. Ill. 1999)………………………………………………………………………………………………6

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986)…………………………………1,3,4,6

*Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017)………………………………………………..5

*Craik v. Boeing Co.*, 37 F. Supp. 3d 954 (N.D. Ill. 2013)……………………………………………12,14

*Dale v. Deutsche Telekom AG*, No. 22-3189, 2022 U.S. Dist. LEXIS 184045 (N.D. Ill. Oct. 7, 2022)……………………………………………………………………………………3

*EPA v. City of Green Forest, Ark.*, 921 F.2d 1394 (8th Cir. 1990)……………………………………10

*FTC v. Cephalon*, No. 08-2141 (E.D. Pa. Feb. 03, 2015), ECF No. 349………………………………10

*FTC v. E.M.A. Nationwide, Inc.*, No. 12-2394, 2013 U.S. Dist. LEXIS 86112 (N.D. Ohio June 19, 2013)………………………………………………………………………………10

*FTC v. Meta Platforms, Inc.* No. 20-3590 (D.D.C.)……………………………………………………9

*FTC v. Qualcomm*, No. 17- 220 (N.D. Cal. Jan. 24, 2018), ECF No. 513……………………...……8

*FTC v. Quincy Bioscience Holding Co.*, No. 17-124, 2021 U.S. Dist. LEXIS 79619 (S.D.N.Y. Apr. 26, 2021)………………………………………………………………………………10

*FTC v. Surescripts*, No. 19-1080 (D.D.C.)……………………………………………………………9

*FTC v. Surescripts*, No. 19-1080 (D.D.C. Feb. 28, 2020), ECF. No. 54……………………………8

*Gelco Corp. v. Major Chevrolet, Inc.*, No. 01-9719, 2002 U.S. Dist. LEXIS 21160 (N.D. Ill. Oct. 30, 2002)………………………………………………………………………………14

*Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770 (N.D. Ill. 1998)……………………………………………12

*Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989)……………………………6

*In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811 (N.D. Ill. 2020)…………………5

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)……………………………………………1,5,6,13

*Jozwiak v. Stryker Corp.*, No. 09-1985, 2010 U.S. Dist. LEXIS 8103 (M.D. Fla. Jan. 11, 2010)………………………………………………………………………………………3-4

*Key Elecs., Inc. v. EarthWalk Commcs., Inc.*, No. 13-98, 2014 U.S. Dist. LEXIS 81884 (S.D. Ind. June 16, 2014)………………………………………………………………4,5

*Klawans v. E.F. Hutton & Co.*, No. 83-680, 1983 U.S. Dist. LEXIS 11887 (S.D. Ind. Nov. 8, 1983)………………………………………………………………………………4

*Klein et al v. Meta Platforms, Inc.*, No. 20-8570 (N.D. Cal.)…………………………………………9

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 372-73 (D.D.C. 2002)………………………………………………………………………………………………10

ii

*In re Lorazepam & Clorazepate Antitrust Litig.*, MDL 1290, No. 99-mc-276 (D.D.C. Feb. 6, 2008), ECF No. 947...........................................................................................................10

*Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832 (7th Cir. 2020).......................5

*Nagle v. Hartford Life & Accident Ins. Co.*, No. 15-6073, 2015 U.S. Dist. LEXIS 169783 (N.D. Ill. Dec. 21, 2015)...............................................................................................1

*In re Nat'l Presto Indus.*, 347 F.3d 662 (7th Cir. 2003).................................................3,4,9

*Nev. Irrigation Dist. v. Sobeck*, No. 20-3523, 2021 U.S. Dist. LEXIS 81736 (D.D.C. Apr. 29, 2021)...........................................................................................................4,6

*Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942 (N.D. Ill. 2017)...............................................6

*Outzen v. Kapsch TrafficCom USA, Inc.*, No. 20-1286, 2021 U.S. Dist. LEXIS 186715 (S.D. Ind. Sep. 29, 2021).................................................................................5

*Paper Sys. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002)......................................5

*People for the Ethical Treatment of Animals, Inc. v. Lowe*, No. 17-186, 2021 U.S. Dist. LEXIS 254736 (S.D. Ind. July 1, 2021)....................................................................14

*Polychrome Corp. v. 3M*, 259 F. Supp. 330 (S.D.N.Y. 1966).................................................12

*Reese v. Trail King Indus.*, No. 16-723, 2017 U.S. Dist. LEXIS 70253 (N.D. Ind. May 9, 2017)...........................................................................................................6-7,8

*In re Ryze Claims Sols., LLC*, 968 F.3d 701 (7th Cir. 2020)...............................................14

*Sam Fox Publ'g Co., Inc. v. United States*, 366 U.S. 683 (1961).........................................10

*SEC v. Hart*, No. 78-65, 1978 U.S. Dist. LEXIS 17506 (D.D.C. May 26, 1978)...........................12

*SEC v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110 (D.D.C. 2016).................................................4

*In re Surescripts Antitrust Litig.*, No. 19-6627 (N.D. Ill.).............................................9

*Texas v. Penguin Grp. (USA) Inc.*, No. 12-3394, 2013 U.S. Dist. LEXIS 58925 (S.D.N.Y. Apr. 24, 2013)...................................................................................10

*Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316 (S.D.N.Y. 1976).........................................10

*United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881 (N.D. Ohio 1999)...............................5

*United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140 (D. Del. 1999).............................9,11-12

*Van Dusen v. Barrack*, 376 U.S. 612 (1964).............................................................4-5

*Whitney v. Big Dog Holdings, Inc.*, No. 07-1026, 2007 U.S. Dist. LEXIS 82937 (S.D. Ind. Nov. 7, 2007)......................................................................................7

*Wishon v. Monsanto Co.*, No. 13-770, 2013 U.S. Dist. LEXIS 147349 (W.D. Okla. Oct. 11, 2013)...........................................................................................4

Fed. R. Civ. P. 23...................................................................................9-10

Fed. R. Civ. P. 26(f)...................................................................................15

Fed. R. Civ. P. 45(c)(1).............................................................................7-8

28 U.S.C.S. § 1404(a)..................................................................................3,4

28 U.S.C.S. § 1407......................................................................................11

H.R. Rep. No. 90-1130..............................................................................11-12

## I.   INTRODUCTION

Defendants seek to transfer this action ("Action") to a jurisdiction in which they hope to block on standing grounds a substantial portion of the proposed class from recovering against the manufacturer defendants Corteva and Syngenta. If Defendants succeed, farmers in states without *Illinois Brick* "repealer" laws—including Indiana's 94,000 farmers—would be denied the ability to recover damages against the manufacturer defendants.

The Court should not enable such forum shopping. Plaintiff here—like those in seven of the other nine related private antitrust suits—has chosen this forum because it is in the best interest of the proposed class. The Seventh Circuit has a well-developed body of law, going back decades, granting antitrust standing to purchasers of vertical conspiracies. There is no reason Plaintiff's choice of forum should be disturbed. Defendants have not carried their burden to show the transferee forum is "clearly more convenient" than this Court.[1] To the contrary, the balance of public and private factors favors this forum: Corteva is headquartered here. Indianapolis is more convenient for witnesses and parties than Winston-Salem. And Indiana (which, unlike North Carolina, joined the FTC action on behalf of its farming community) has a strong interest in seeing this dispute resolved locally, particularly so that its residents can pursue overcharge damages as part of the proposed class.

The fact that the FTC (which need not establish antitrust standing or certify a class) chose to bring its suit in a different jurisdiction does not warrant transfer. The "efficiencies" Defendants claim justify transfer[2] are non-existent. The FTC will oppose any attempt to consolidate its suit with the private actions because, as the agency has already argued in proceedings before Judge Schroeder in the Middle District of North Carolina ("M.D.N.C."),

---

[1] *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986); *Nagle v. Hartford Life & Accident Ins. Co.*, No. 15-6073, 2015 U.S. Dist. LEXIS 169783, at *6 (N.D. Ill. Dec. 21, 2015).
[2] Defs.' Transfer Mot. ("Defs. Br."), at 2.

1

"[c]onsolidation of [the] Government Plaintiffs' case with the private cases is contrary to public policy."[3] Absent consolidation, which is highly unlikely to occur, the only efficiencies to be gained are through coordination between class counsel and the FTC, which can and will occur regardless of where the private cases are set.[4]

## II.   BACKGROUND

On September 29, 2022, the FTC and ten states, including Indiana, brought suit against the manufacturers Syngenta and Corteva in the M.D.N.C. alleging an unlawful conspiracy to suppress generic competition in the markets for crop protection products (the "FTC Action").[5] As part of the alleged conspiracy, Syngenta and Corteva, who sell branded crop protection products ("CPPs"), entered into anticompetitive agreements with distributors and retailers to inhibit the sale of less-expensive generic CPPs that compete with branded CPPs.[6]

On October 7, 2022, in this District, Plaintiff Justin Jenkins filed the first private follow-on suit. Plaintiff alleges that he and other similarly-situated farmers paid inflated prices for CPPs as a result of Defendants' conspiracy.[7] Subsequently, seven additional cases were filed in this District (together with this Action, the "Indiana Cases"),[8] and two additional cases were filed in the M.D.N.C. (the "North Carolina Cases").[9]

---

[3] Pls.' Opp. to Defs.' Mot. for Extension of Time ("FTC Opp. Br."), *FTC, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-828 (M.D.N.C. Dec. 2, 2022), ECF No. 59, at 10.

[4] FTC Opp. Br., at 11.

[5] Compl., *FTC, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-828 (M.D.N.C. Sept. 29, 2022), ECF No. 1 ("FTC Compl.").

[6] *Id.*

[7] ECF No. 1 at ¶¶ 141, 152.

[8] *Chuck Day Farms Partnership v. Syngenta Crop Protection AG, et al.*, No. 22-2222 (S.D. Ind. Nov. 17, 2022), ECF No. 1; *Bradley Day Farms v. Syngenta Crop Protection AG, et al.*, No. 22-2223 (S.D. Ind. Nov. 17, 2022); *Danny Day, Jr. Farms, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-2225 (S.D. Ind. Nov. 17, 2022); *Shelby Farms, LLC, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-2226 (S.D. Ind. Nov. 17, 2022); *M&M Farms P'ship v. Syngenta Crop Protection AG, et al.*, No. 22-2227 (S.D. Ind. Nov. 17, 2022); *HYS Farms LLC v. Syngenta Crop Protection AG, et al.*, No. 22-2229 (S.D. Ind. Nov. 17, 2022); *Scott Day Farms v. Syngenta Crop Protection AG, et al.*, No. 22-2230 (S.D. Ind. Nov. 17, 2022).

[9] *Anderson v. Syngenta Crop Protection AG et al.*, No. 22-858 (M.D.N.C. Oct 7, 2020), ECF No. 1; *Croscut v. Syngenta Crop Protection AG et al.*, No. 22-899 (M.D.N.C. Oct. 20, 2022), ECF No. 1.

On November 22, 2022, Defendants moved to transfer this Action to the M.D.N.C. pursuant to 28 U.S.C. § 1404(a).[10] That same day, plaintiffs in the other Indiana Cases moved before the Jurisdictional Panel for Multidistrict Litigation ("JPML") to centralize all private actions in this District.[11]

## III.   LEGAL STANDARD

The party seeking transfer "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" than the transferor forum.[12] "[W]hen the inconvenience of the alternative venues is comparable there is no basis for a change of venue" and "the tie is awarded to the plaintiff."[13] A district court considering a transfer motion "must evaluate both the convenience of the parties and various public-interest considerations."[14] Relevant private interest factors include "the plaintiff's choice of forum, the situs of the material events, the convenience of the parties and witnesses, and the relative ease of access to evidence."[15] Relevant public interest factors include "the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale."[16] For the avoidance of doubt, a motion to consolidate actions before the JPML does not automatically result in a stay of district court cases, and need not delay resolution of motions pending therein.[17]

---

[10] ECF No. 27.

[11] *In re: Crop Protection Products Loyalty Program Antitrust Litig.*, MDL No. 3062 (J.P.M.L. Nov. 22, 2022), ECF No. 1.

[12] *1st Signature Lending LLC v. Brighton Bank*, No. 20-2130, 2020 U.S. Dist. LEXIS 233223, at *2 (S.D. Ind. Dec. 11, 2020) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217 at 219-20 (7th Cir. 1986)).

[13] *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003).

[14] *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 62 (2013).

[15] *See Dale v. Deutsche Telekom AG*, No. 22-3189, 2022 U.S. Dist. LEXIS 184045, at *6 (N.D. Ill. Oct. 7, 2022), *citing Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

[16] *Id.* at * 7, *citing Amoco*, at 962.

[17] *Jozwiak v. Stryker Corp.*, No. 09-1985, 2010 U.S. Dist. LEXIS 8103, at *5-11 (M.D. Fla. Jan. 11, 2010) (noting "a district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend

## IV.    ARGUMENT

Plaintiff's choice of forum is in the best interest of the class and should not be disturbed. Defendants have not shown that the transferee forum is "clearly more convenient" than this Court,[18] or that the "interest of justice" is served by transfer.[19] To the contrary, the balance of public and private factors favors this forum.

### A.  Plaintiff's choice of forum is entitled to substantial deference.

Plaintiffs are "ordinarily allowed to select whatever forum they consider most advantageous,"[20] and their choice of forum is entitled to "substantial deference."[21] At least one Court in this District has rejected the argument (put forward by Defendants) that "this important factor . . . is of little import when the suit is in the nature of a class action."[22] In contrast to a plaintiff's forum choice, a "[d]efendant['s] choice of forum is *not* ordinarily entitled to deference."[23] As the Supreme Court has explained, "[t]here is nothing. . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which . . . was a proper venue," even where the plaintiff's choice is

---

further rulings upon a parties' motion to the MDL Panel for transfer and consolidation" and, at reviewing applicable factors and then exercising discretion to deny motion to stay proceedings pending ruling on motion to transfer); *Wishon v. Monsanto Co.*, No. 13-770, 2013 U.S. Dist. LEXIS 147349, at *6 (W.D. Okla. Oct. 11, 2013) (denying motion to stay case pending a decision by the JPML).

[18] *1st Signature Lending LLC v. Brighton Bank*, 2020 U.S. Dist. LEXIS 233223, at *2 (quoting *Coffey*, 796 F.2d at 219-20).

[19] *Atl. Marine*, 571 U.S. at 63; *Amoco*, 90 F. Supp. 2d at 961-62 (N.D. Ill. 2000) (describing public interest factors).

[20] *Id.*

[21] *Key Elecs., Inc. v. EarthWalk Commcs., Inc.*, No. 13-98, 2014 U.S. Dist. LEXIS 81884, at *22-23 (S.D. Ind. June 16, 2014) ("Traditionally, district courts afford a plaintiff's choice of forum substantial deference."); *In re Nat'l Presto*, 347 F.3d at 663-34 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

[22] *Klawans v. E.F. Hutton & Co.*, No. 83-680, 1983 U.S. Dist. LEXIS 11887, at *9 (S.D. Ind. Nov. 8, 1983) (Noland, J.) ("The plaintiffs' choice of forum is to be given considerable weight . . . . The Court is not dissuaded from this important factor by the defendants' assertion that choice of forum is of little import when the suit is in the nature of a class action.").

[23] *SEC v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 116 (D.D.C. 2016) (emphasis added); *Nev. Irrigation Dist. v. Sobeck*, No. 20-3523, 2021 U.S. Dist. LEXIS 81736, at *6 (D.D.C. Apr. 29, 2021) ("The defendants' choice of forum is not ordinarily entitled to deference.") (internal citations and quotations omitted).

"inconvenient."[24] Not only does "defendant forum shopping" find no justification in federal law or policy; it is widely viewed as "an evil to be avoided."[25]

Plaintiff (like the plaintiffs the seven other related private suits pending in this District) has chosen this forum because it is most advantageous to the proposed class.[26] His choice of forum is entitled to substantial deference.[27] For over 20 years, the Seventh Circuit has made clear that *Illinois Brick*[28] does not block antitrust standing for plaintiffs who purchase from conspiracies, regardless of the type of anticompetitive conduct they involve.[29] As Judge Easterbrook held in 2002 in *Nippon Paper,* "[t]he first buyer from a conspirator is the right party to sue."[30] This holding was reaffirmed by Judge Wood in her 2020 *Marion Becton* decision, where she explained that the right to sue co-conspirators is "a rule inhering in *Illinois Brick* that allocates the right to collect 100% of the damages to the first non-conspirator in the supply chain."[31] This rule applies, she explained, regardless of whether the co-conspirators entered a "direct agreement to raise prices" or engaged in some other "anticompetitive conduct."[32]

The Fourth Circuit is far less clear on this issue of law. If this Action is transferred to the M.D.N.C., Defendants will likely advance standing arguments, that, if accepted, would block

---

[24] *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964), *superseded by statute on other grounds*, 28 U.S.C.S. § 1631.

[25] *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 889 (N.D. Ohio 1999) (citation omitted).

[26] Courts are clear that lead plaintiffs must "keep the interest of the entire class at the forefront," as Plaintiff has done here by filing his suit in this District. *See Outzen v. Kapsch TrafficCom USA, Inc.*, No. 20-1286, 2021 U.S. Dist. LEXIS 186715, at *44 (S.D. Ind. Sep. 29, 2021) (describing obligation of lead plaintiffs to protect interests of class) (quoting *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017)).

[27] *Key Elecs.*, 2014 U.S. Dist. LEXIS 81884 at *22-23.

[28] 431 U.S. 720 (1977). *Illinois Brick* established the rule that only direct purchasers of goods may seek damages under federal law for antitrust violations. *Id.* at 745-7. Indirect purchasers may only bring damages suits under state law if they live in states that have legislatively repealed *Illinois Brick. See In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 849 (N.D. Ill. 2020) ("Some states have enacted "*Illinois Brick* repealer" statutes that allow indirect purchasers to sue for money damages.")

[29] *See Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 837-41 (7th Cir. 2020), *citing Paper Sys. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002).

[30] *Nippon Paper*, 281 F.3d at 631.

[31] *Marion Healthcare*, 952 F.3d at 839.

[32] *Id.* at 840 ("We see nothing in either the *Illinois Brick* line of cases or the conspiracy line that supports this distinction.").

members of the proposed class of farmers who purchased from retailers and distributors, rather than manufacturers, from recovering against defendants Corteva and Syngenta. These plaintiffs' only recourse would be to bring state law claims under statutes passed by some states repealing *Illinois Brick*.[33] But this state-law approach would leave farmers from the approximately 20 states without "repealer" statutes, including Indiana, without any ability to recover against the manufacturer defendants, despite having been harmed by the conspiracy.

It is hardly surprising that Defendants seek to transfer this Action to a jurisdiction that potentially allows them to exclude huge numbers of class members. However, their choice of forum is entitled to no deference and their attempt at forum shopping should be rejected.[34]

## B.  The convenience factors favor the Southern District of Indiana.

Defendants have failed to show that the transferee forum is "clearly more convenient" for witnesses and parties than this District.[35] If anything, the convenience factors favor this District.

### 1.  *The Southern District of Indiana is more convenient for witnesses.*

In order to obtain transfer on the basis of witness convenience, movants must identify specific, key witnesses who are unwilling to travel to the transferor forum (or who are outside its subpoena power).[36] Defendants have not done so, nor can they. Most key witnesses here will be defendants' own employees and paid experts, and "[c]ourts typically presume [that such

---

[33] *See supra* note 28.

[34] *Nev. Irrigation Dist. v. Sobeck*, 2021 U.S. Dist. LEXIS 81736, at *6 ("The defendants' choice of forum is not ordinarily entitled to deference.") (internal citations and quotations omitted).

[35] *1st Signature Lending LLC v. Brighton Bank*, 2020 U.S. Dist. LEXIS 233223, at *2 (quoting *Coffey*, 796 F.2d at 219-20).

[36] *Alerding Castor Hewitt LLP v. Wockner*, No. 16-2453, 2017 U.S. Dist. LEXIS 230699, at *6 (S.D. Ind. Apr. 28, 2017) (Young, J.) (denying transfer where "[d]efendants ha[d] not identified the key witnesses they plan[ned] to call for whom travel to Marion County [Indiana] would be inconvenient") (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293-94 (7th Cir. 1989)); *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co. Inc.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999) ("[T]he court will not consider the convenience of unidentified witnesses."); *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 957 (N.D. Ill. 2017) ("Vague generalizations concerning potential witnesses are insufficient . . . . [T]he party seeking transfer on the grounds of witness convenience must clearly specify the key witnesses to be called and include a generalized statement about what their testimony will include.") (internal citations omitted).

6

witnesses] will appear voluntarily and therefore are less concerned about the burden that appearing at trial might impose on them."[37]

In any event, most witnesses in this case—whether party or non-party witnesses—will likely be located in neither North Carolina nor Indiana.[38] For these witnesses, the Southern District of Indiana is a far more convenient destination than the M.D.N.C. Known as the "Crossroads of America," Indiana is located at the geographic center of the country and sits at the intersection of four major interstates. The Indianapolis International Airport, which is only 15 minutes from the federal courthouse,[39] is a major air travel hub averaging 145 departures per day, with nonstop flights to 53 destinations.[40]

The Middle District of North Carolina is far less accessible, particularly for witnesses from the Midwest and West Coast. The airport nearest to the federal courthouse in Winston-Salem—Piedmont Triad International Airport in Greensboro, North Carolina—has nonstop flights to only 12 destinations.[41] And while Defendants tout the flight frequency of the Raleigh-Durham and Charlotte-Douglas airports, those airports are 90 minutes from the federal courthouse where this Action would proceed if the Defendants' transfer motion were granted.[42]

Defendants also overstate the "burdens" facing witnesses absent transfer. Regardless of where these proceedings take place, witnesses will not need to travel for depositions (which, in

---

[37] *Reese v. Trail King Indus.*, No. 16-723, 2017 U.S. Dist. LEXIS 70253, at *8-9 (N.D. Ind. May 9, 2017) (internal citations omitted); *see also Whitney v. Big Dog Holdings, Inc.*, No. 07-1026, 2007 U.S. Dist. LEXIS 82937, at *15 (S.D. Ind. Nov. 7, 2007) (noting it can "ordinarily [be] assume[d] that the parties will be sufficiently motivated to have their own employees or other allies appear for trial wherever it might take place") (internal citations omitted).

[38] Defs.' Br. at 8 (noting Defendants are located in various states and that the witnesses they will likely call "are located all across the country").

[39] *Indianapolis International Airport*, VISIT INDY, https://www.visitindy.com/listing/indianapolis-international-airport/166220 (last visited Dec. 4, 2022).

[40] *Id.*

[41] *Airport Facts Brochure*, PIEDMONT TRIAD INTERNATIONAL AIRPORT, https://flyfrompti.com/download/airport-facts-brochure, p. 5 (last visited Dec. 4, 2022).

[42] Defs.' Rep. in Supp. of Mtn. for Ext. of Time at 5, n.3, ECF No. 32.

today's world, are often held remotely anyway); the attorneys meet them where they are.[43] If this Action goes to trial, the majority of witnesses would be outside of the subpoena power of either proposed forum, and would not be required to testify in person.[44] No burden exists for witnesses who agree to appear voluntarily for trial.[45] And, critically (as discussed further below), consolidation of the public and private actions is unlikely to occur. The actions will likely proceed on different schedules, meaning that the burden Defendants identify of witnesses having to testify twice exists whether this Action is transferred or not.[46] The way to mitigate any such burdens is through effective coordination between the counsel for the private plaintiffs and FTC, which can occur even in the absence of transfer.[47] Indeed, Plaintiff's counsel, John Radice, has already been coordinating with the FTC, and will continue to do so.[48]

### 2. The Southern District of Indiana is more convenient for parties.

Nor have Defendants shown that transfer to M.D.N.C is more convenient for the parties. The private plaintiffs overwhelmingly prefer this District, which is why eight of the ten private actions are pending here. While Syngenta is headquartered in North Carolina, Corteva is located in this District. The remaining distributor and retailer defendants are "located throughout the country," as Defendants admit, making one forum no more convenient than another.[49] Where, as

---

[43] Fed. R. Civ. P. 45(c)(1).

[44] *Id.*

[45] *See Reese*, 2017 U.S. Dist. LEXIS 70253 at *8-9.

[46] *See infra* at 59.

[47] FTC actions and follow-on private suits are not always held in the same forum. When public and private suits proceed in different fora, cross-district coordination is routine. For example, such coordination occurred in the *Surescripts* and *Qualcomm* antitrust litigations, and was the subject of various case management orders. *See, e.g.*, Scheduling Order at 3, *FTC v. Surescripts*, No. 19-1080 (D.D.C. Feb. 28, 2020), ECF. No. 54 ("The parties [in the FTC action in the District of D.C.] are ordered to use reasonable best efforts to cooperate with each other and other parties in *In re Surescripts Antitrust Litig.*, [the related private action in the Northern District of Illinois], to reduce discovery burdens."); Joint Stip. & Discovery Coordination Order, *FTC v. Qualcomm, Inc.*, 17- 220 (N.D. Cal. Jan. 24, 2018), ECF No. 513 (order regarding cross-district discovery coordination between N.D. Cal. and S.D. Cal. actions).

[48] Declaration of John D. Radice ("Radice Decl."), attached hereto, at ¶¶ 2-3.

[49] Defs.' Br. at 8.

here, "the inconvenience of the alternative venues is comparable, . . . the tie is awarded to the plaintiff."[50]

Defendants' sole argument in favor of the M.D.N.C. is that "[i]t would be more convenient and efficient for Corteva to defend itself in one jurisdiction, where the FTC action and the private lawsuits can be coordinated."[51] This argument is a red herring. Coordination can and will occur even in the absence of transfer. As Defendants well know, the private actions will ultimately be consolidated in one court.[52] Class counsel will coordinate with the FTC on discovery, scheduling, and other matters, even if the public and private actions are in different districts.[53] Such coordination has occurred in many other cases where follow-on private suits were litigated in different jurisdictions than the initial FTC action.[54] As noted above, Plaintiff's counsel here has already been coordinating with the FTC and that coordination will continue.[55]

### 3. Defendants exaggerate the "efficiencies" that can be gained by litigating the private actions in the same forum as the FTC Action.

There are few if any efficiencies to be gained through transfer here. Private antitrust plaintiffs must satisfy a variety of complex legal and factual burdens that do not apply to the government. Private plaintiffs must establish antitrust standing, meet the standards for class

---

[50] *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003).

[51] Defs.' Br. at 8.

[52] A motion before the J.P.M.L to consolidate the private actions in this District has already been filed, and Plaintiff does not oppose it. *See In re: Crop Protection Products Loyalty Program Antitrust Litig.*, MDL No. 3062, ECF No. 2 (Nov. 23, 2022).

[53] *See* Radice Decl. at ¶¶ 2-3; *see also United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 142 (D. Del. 1999) (noting that "that informal coordination amongst the parties has largely avoided duplicative discovery and motions practice to date.").

[54] The public and private antitrust suits against Meta and Surescripts are currently taking place in separate fora, with effective cross-district coordination ongoing. *See FTC v. Meta Platforms, Inc.* No. 20-3590 (D.D.C.); *Klein et al v. Meta Platforms, Inc.*, No. 20-8570 (N.D. Cal.) (parallel private antitrust class action); *FTC v. Surescripts*, No. 19-1080 (D.D.C.); *In re Surescripts Antitrust Litig.*, No. 19-6627 (N.D. Ill.) (parallel private action).

[55] Defendants attempt to mislead the Court by suggesting that the FTC is already coordinating with attorneys in the North Carolina Actions, but not the Indiana Actions. *See* Defs.' Br. at 9. The FTC does not play favorites. Plaintiff's counsel has had numerous discussions with the FTC and will continue such coordination regardless of where these cases proceed. Radice Decl. at ¶¶ 2-3.

9

certification under Federal Rule 23, and prove and calculate damages. Each of these issues is heavily litigated, including through expert discovery, and requires significant time and resources to resolve. Because of these differences, private antitrust suits generally take far longer to reach resolution than government actions.[56] And, for a variety of reasons, public and private antitrust trials rarely (if ever) happen jointly.[57] Unlike private plaintiffs, the FTC is not entitled to jury trials.[58] FTC actions are subject to bench trials, which are resolved far more speedily than jury trials.[59]

---

[56] In the *Lorazepam* antitrust litigation, it took three years from the filing of the FTC complaint for the government to obtain relief through settlements that were granted final approval by the court. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 372-73 (D.D.C. 2002). The private plaintiffs, however, did not obtain relief for over eight years. *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL 1290, No. 99-mc-276 (D.D.C. Feb. 6, 2008), ECF No. 947 (judgment entered for private plaintiffs).

[57] Courts have consistently ordered that government antitrust actions should proceed first in a separate trial even when the government coordinated discovery with private plaintiffs. In the *American Express* antitrust litigation, for example, the district court denied defendants' motion to consolidate the government's trial with private plaintiffs' trial even though the parties had coordinated fact and expert discovery. *In re Am. Express Antisteering Rules Antitrust Litig.*, No. 11-md-2221, 2014 U.S. Dist. LEXIS 17226, at *20 (E.D.N.Y. Feb. 11, 2014). Similarly, in *FTC v. Cephalon*, after years of coordinated discovery between the FTC and private plaintiffs, the court scheduled an FTC-only trial over defendants' objections. *See Order, FTC v. Cephalon*, No. 08-2141 (E.D. Pa. Feb. 03, 2015), ECF No. 349 at 2. And in the *Electronic Books* antitrust litigation, the court set a schedule for coordinated discovery in the government and class action cases, but ruled that a bench trial on "the injunctive relief sought by the Government" would proceed before trial in the private actions. *Texas v. Penguin Grp. (USA) Inc.*, No. 12-3394, 2013 U.S. Dist. LEXIS 58925, at *8 (S.D.N.Y. Apr. 24, 2013).

[58] *FTC v. Quincy Bioscience Holding Co.*, No. 17-124, 2021 U.S. Dist. LEXIS 79619, at *2 (S.D.N.Y. Apr. 26, 2021) (holding FTC's equitable claims do not confer a Seventh Amendment right to jury); *see also FTC v. E.M.A. Nationwide, Inc.*, No. 12-2394, 2013 U.S. Dist. LEXIS 86112, at *10 (N.D. Ohio June 19, 2013), at *2 ("Because the FTC seeks only equitable remedies, the Defendants have no right to a jury trial.").

[59] Courts routinely decline to combine jury and non-jury claims into a single trial. *See, e.g., EPA v. City of Green Forest, Ark.*, 921 F.2d 1394, 1403 (8th Cir. 1990) (affirming decision not to consolidate cases in part because "the citizens' claims were to be tried before a jury, while the EPA action was to be tried before the court"); *Almonte v. Coca-Cola Bottling Co.*, No. 95-1458, 1996 U.S. Dist. LEXIS 20253, at *7-8 (D. Conn. Dec. 11, 1996) ("There is also no benefit to consolidating the trial because Action 1 is to be tried to a jury and Action 2 is to be tried to the Court."); *Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316, 318 (S.D.N.Y. 1976) ("Additional confusion would arise out of the fact that whereas jury demands have been made in [one case], [the other] will be tried to the court."); *In re Am. Express Antisteering Rules Antitrust Litig.*, No. 11-md-2221, 2014 U.S. Dist. LEXIS 17226, at *20 (E.D.N.Y. Feb. 11, 2014) ("The court is unwilling to empanel a jury for a months-long consolidated trial only to shuttle the jury in and out of the courtroom depending on the evidence presentation or argument of the day or hour."). Indeed, the Supreme Court has long recognized the "unquestionably sound policy of not permitting private antitrust plaintiffs to press their claims against alleged violators in the same suit as the Government." *Sam Fox Publ'g Co., Inc. v. United States*, 366 U.S. 683, 693 (1961), *superseded by statute on other grounds*, Fed. R. Civ. P. 24.

Given these differences, it is highly unlikely that the private actions would proceed on the same schedule as the FTC action, even if Defendants' transfer request were granted. With different schedules and trials, witnesses would have to testify twice even if the private actions were transferred to North Carolina, the very inconvenience Defendants emphasize might occur absent transfer. It matters little to a witness whether she must testify twice in North Carolina, or once in Indiana and once in the M.D.N.C.

Even if parallel schedules and trial proceedings could be imposed upon the public and private actions, it would not be judicially efficient or in the public interest. To the contrary, it would only delay and prejudice the injunctive and equitable relief sought by the FTC. This is why the FTC has already staked out its position against consolidation in the M.D.N.C, writing in its opposition to defendants' motion for an indefinite stay that "[c]onsolidation of [the] Government Plaintiffs' case with the private cases is contrary to public policy."[60] According to the FTC—and as courts have recognized—keeping the FTC and private actions separate "[p]ermit[s] [the] federal suit[] to go forward without being burdened by delays that consolidation may cause," resulting in "more expeditious relief to the public," and "promot[ing] judicial efficiency by . . . fostering settlement" of the private actions.[61] In rejecting consolidation motions, courts have also noted that Congress explicitly considered that defendants "may have to answer similar questions" twice, but "chose to strike the balance in favor of the public's interest in expedited relief."[62]

---

[60] Pls.' Opp. to Defs.' Mot. for Extension of Time, *FTC, et al. v. Syngenta Crop Protection AG, et al.*, No. 22-828, (M.D.N.C. Dec. 2, 2022), ECF No. 59, at 10.

[61] *See id.* at 8 (quoting *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999) ("Permitting federal suits to go forward without being burdened by delays that consolidation may cause not only permits more expeditious relief to the public for conduct adjudged illegal, but also makes a judgment in favor of the Government available for use in a private suit. In addition to providing private antitrust plaintiffs with a powerful weapon, it also promotes judicial efficiency by fostering settlement.")).

[62] *Dentsply Int'l*, 190 F.R.D. at 144–45 ("While exempting the Government from [§ 1407 J.P.M.L. transfer] legislation may occasionally burden defendants because they may have to answer similar questions posed by both

11

In short, consolidation of the public and private actions likely will not occur, even if transfer is granted, meaning transfer would result in virtually none of the efficiency gains Defendants tout.[63] Where, as here consolidation is unlikely to occur, transfer does not serve the interest of judicial economy and should be denied.[64]

## C. Maintaining this Action in Indiana is in the public interest.

### 1. Indiana has a vested interest in seeing this dispute resolved locally.

"[T]he interest of justice is better served when a forum contains a community that has a strong desire to resolve a particular dispute and that has an invested stake in the matter such that the venue is 'closer to the action.'"[65] This factors weighs heavily in favor of this District.

In the heart of the "corn belt," Indiana is home to a community of roughly 94,000 farmers and is central to the U.S. agriculture industry.[66] Future Farmers of America, which encourages the pursuit of agricultural careers, is headquartered in Indianapolis, where it hosts an annual convention attended by over 65,000 delegates.[67] Indiana's farmers (like farmers around the country) have been faced with unprecedented increases in operational costs in recent years: One prominent agronomics professor estimates that it cost farmers about 40% more to grow crops

---

the Government and by private parties, this is justified by the importance [to] the public of securing relief in antitrust cases as quickly as possible.") (quoting H.R. Rep. No. 90-1130, at 8, reprinted in 1968 U.S.C.C.A.N. at 1905).

[63] Defs.' Br. at 2 (noting "important efficiencies that would result from transfer").

[64] *See SEC v. Hart*, No. 78-65, 1978 U.S. Dist. LEXIS 17506 at *4-6 (D.D.C. May 26, 1978) (denying transfer because government action would not likely be consolidated with related cases in transferee forum and judicial economy would therefore not be served); *Polychrome Corp. v. 3M*, 259 F. Supp. 330, 333-334 (S.D.N.Y. 1966) (denying transfer of antitrust case to forum where government antitrust suit was pending in part because it was unlikely that cases would be consolidated for trial).

[65] *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 963-64 (N.D. Ill. 2013) (quoting *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 777 (N.D. Ill. 1998)).

[66] *About Indiana Agriculture*, INDIANA STATE DEPT. OF AGRICULTURE, https://www.in.gov/isda/about/about-indiana-agriculture/ (last visited Dec. 6, 2022).

[67] *94th National FFA Convention & Expo Will Be In Person for 2021*, FUTURE FARMERS OF AMERICA, https://www.ffa.org/the-feed/94th-national-ffa-convention-expo-will-be-in-person-for-2021 (last visited Dec. 4, 2022).

this year as compared to two years ago.[68] The President of the Indiana Farm Bureau describes 2022 as the most expensive crop in his nearly four decades in agriculture due to high input costs and expects this problem will worsen.[69] Anticompetitive practices by crop input manufacturers and sellers—including the conspiracy alleged here—contribute significantly to these escalating costs.[70] Indiana plainly has a strong interest in ensuring that the future of agriculture is productive and profitable for farmers, and in ensuring the security and affordability of the nation's food supply. In recognition of the state's strong interest in this dispute, Indiana was one of ten states to join the FTC action on behalf of its citizens.[71] North Carolina did not join the lawsuit.

Indiana's interest in seeing this dispute resolved locally is further heightened by the antitrust standing issues described above.[72] If this Action is transferred to the M.D.N.C. and Defendants prevail on their standing arguments, Indiana farmers (and farmers from other states without *Illinois Brick* repealer laws) could be barred from recovering from the manufacturer defendants overcharges they paid due to the alleged Conspiracy.[73] It is in the interest of Indiana farmers, and the farming community more broadly, to litigate this dispute in Plaintiff's chosen forum.

---

[68] Sarah Bowman, *Feeling the pinch: 'Most expensive crop in decades': Farmers face higher stakes than ever with inflation,* THE INDIANAPOLIS STAR (Sep. 30, 2022), https://www.indystar.com/in-depth/news/environment/2022/09/30/stakes-higher-than-ever-for-farmers-as-they-feel-squeeze-of-inflation/69520689007 (last visited Dec. 4, 2022) ("'[I]t cost the farmer about 40% more to grow the crop this year' compared to two years ago, said Chad Lee, an agronomy professor at the University of Kentucky.").

[69] *Id.*

[70] Lina M. Khan, *Opinion: Ag companies' loyalty programs unfairly extract profits from consumers,* DES MOINES REGISTER (Oct. 6, 2022), https://www.desmoinesregister.com/story/opinion/columnists/2022/10/06/syngenta-corteva-farmers-lawsuit-unfairly-extract-profits-from-consumers/69542239007/ (last visited Dec. 4, 2022).

[71] FTC Compl. at ¶ 2.

[72] *See supra* Section IV.A, at 5-6.

[73] *Berghausen v. Microsoft Corp.,* 765 N.E.2d 592, 596 (Ind. Ct. App. 2002) (noting "Indiana [Antitrust] Act does not provide a cause of action to indirect purchasers who allege they were harmed by an antitrust injury").

### 2. Docket congestion is not a significant consideration in this District.

This Court has held, citing Seventh Circuit case law, that docket congestion should not be used as a basis for transfer,[74] rendering Defendants' argument that it weighs heavily in favor of transfer is moot.[75] To the extent the Court gives even a "little weight"[76] to this factor, it is neutral. Defendants claim that M.D.N.C. judges have, on average, 378 cases, while judges in this District have 2,367.[77] But other statistics tell a different story: According to the National Judicial Caseload Profile, in the 12-month period ending June 30, 2022, the median time from filing to disposition in civil cases was 10.1 months in this District and was longer (10.8 months) in the M.D.N.C.[78] Even though this District has a large caseload, it does not translate to the slower progress of cases. There is no question that "the Southern District of Indiana maintains an efficient system."[79] Without a significant difference in time to resolution, this factor should be considered neutral.[80]

### 3. Plaintiff's Action will proceed to trial more quickly in this District than in the M.D.N.C.

Courts consider the speed with which a case will proceed to trial in the transferee versus transferor forum.[81] This factor favors this District, which has, to date, proceeded for more quickly

---

[74] *People for the Ethical Treatment of Animals, Inc. v. Lowe* ("*PETA*"), No. 17-186, 2021 U.S. Dist. LEXIS 254736, at *8, n.2 (S.D. Ind. July 1, 2021) (Young, J.) ("Although previous case law considered docket congestion relevant, the court reads *Ryze* as strongly signaling to district courts to refrain from using docket congestion as a basis for transfer.") (*citing In re Ryze Claims Sols., LLC*, 968 F.3d 701, 710 n. 21 (7th Cir. 2020)).

[75] Defs.' Br. at 12-13.

[76] *PETA*, 2021 U.S. Dist. LEXIS 254736, at *8, n.2 ("The court therefore gives only a little weight to [the docket congestion] factor.")

[77] Defs.' Br. at 12.

[78] Federal Court Management Statistics, United States District Courts – National Judicial Caseload Profile, at 22, 51, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited Dec. 6, 2022).

[79] *Badger Daylighting Corp. v. Palmer*, No. 19-2106, 2019 U.S. Dist. LEXIS 103818, at *10 (S.D. Ind. June 20, 2019) ("Even as the second busiest district on a per judge basis in the United States, the Southern District of Indiana maintains an efficient system.")

[80] *See Gelco Corp. v. Major Chevrolet, Inc.*, No. 01-9719, 2002 U.S. Dist. LEXIS 21160, at *19 (N.D. Ill. Oct. 30, 2002) ("These statistics merely demonstrate that the differences between the districts' management of their respective dockets are inconsequential.")

[81] *Craik*, 37 F. Supp. 3d at 962.

14

than the North Carolina Cases in advancing this Action. On November 16, 2022, roughly five weeks after Plaintiff filed his complaint, this Court entered a scheduling order setting a date for an Initial Pretrial Conference ("IPC") and setting deadlines for the parties to hold their Rule 26(f) Conference and file a Case Management Plan.[82] While the IPC has been continued to January 25, 2023, "[a]ll other requirements of the Court's" original scheduling order "remain in effect."[83] As a result, the parties to this Action held a Rule 26(f) Conference on November 28, 2022.[84] Plaintiff served initial discovery requests on November 30, 2022 and is working on the Case Management Plan and ESI Supplement and a protective order; Defendants must answer or otherwise respond to the Complaint on January 20, 2023.[85] No such progress has been made in the North Carolina Cases.

## V.        CONCLUSION

For the foregoing reasons, Defendants' transfer motion should be denied.


DATED: December 6, 2022                  Respectfully submitted,

                                          */s/ John D. Radice*

                                         John Radice (*pro hac vice*)
                                         Natasha J. Fernández-Silber (*pro hac vice
                                         forthcoming*)
                                         Rishi P. Raithatha (*pro hac vice forthcoming*)
                                         Daniel Rubenstein (*pro hac vice forthcoming*)
                                         Kenneth Walsh (*pro hac vice forthcoming*)
                                         **RADICE LAW FIRM, PC**
                                         475 Wall Street
                                         Princeton, NJ 08540
                                         Telephone: (646) 245-8502
                                         Facsimile: (609) 385-0745
                                         jradice@radicelawfirm.com
                                         nsilber@radicelawfirm.com

---

[82] *See* ECF No. 20.

[83] Scheduling Order (Nov. 29, 2022), ECF. 39.

[84] Radice Decl. at ¶ 4.

[85] *Id.* at ¶¶ 5-7; Scheduling Order (Nov. 29, 2022), ECF No. 39

rraithatha@radicelawfirm.com
drubenstein@radicelawfirm.com
kwalsh@radicelawfirm.com

R. Lyn Stevens (*pro hac vice forthcoming*)
**STEVENS LAW FIRM**
1782 Mountain Springs
Canyon Lake, Texas 78133
Phone: (409) 880-9714
Lyn@Stevens.Law

*Attorneys for Plaintiff and the Proposed Class*

16

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 6, 2022, the foregoing document was

served on all attorneys of record via the Court's CM/ECF system.

*/s/ John D. Radice*

John Radice (*pro hac vice*)
**RADICE LAW FIRM, PC**
475 Wall Street
Princeton, NJ 08540
Telephone: (646) 245-8502
Facsimile: (609) 385-0745
jradice@radicelawfirm.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

JUSTIN W. JENKINS

               Plaintiff,

vs.

CORTEVA, INC.; SYNGENTA CROP
PROTECTION AG; SYNGENTA CORP.;
SYNGENTA CROP PROTECTION, LLC; CHS
INC.; NUTRIEN AG SOLUTIONS, INC.; JOHN
DOE DEFENDANT WHOLESALERS 1-5;
AND JOHN DOE DEFENDANT RETAILERS
6-10,

               Defendants.

**CIVIL ACTION NO. 1:22-cv-1976-RLY-DLP**

## DECLARATION OF JOHN D. RADICE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO TRANSFER

I, John D. Radice, upon my oath certify as follows:

1.  I am the founding partner of the Radice Law Firm, P.C. ("Radice Law Firm"), and have been retained by Plaintiff Justin W. Jenkins in the above-captioned matter.

2.  In connection with the above-captioned matter, I have had several discussions with multiple FTC attorneys (beginning in November 2022 and continuing to the present) to discuss coordination.

3.  I will continue to coordinate with the FTC for the duration of this Action regardless of where the cases are set.

4.  On November 28, 2022, I held a Rule 26(f) Conference with Defendants' counsel.

5.  Following the Rule 26(f) Conference, Plaintiff served initial discovery requests on Defendants on November 30, 2022.

6.  Plaintiff is now working on the Case Management Plan and ESI Supplement, and a protective order.

7.      Defendants must answer or otherwise respond to Plaintiff's Complaint on January 20, 2023.

I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on December 6, 2022 in Princeton, New Jersey.


/s/John D. Radice
John D. Radice