Mark E. Anderson
N.C. State Bar No. 15764
manderson@mcguirewoods.com
**MCGUIREWOODS LLP**
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Phone: (919) 755-6600
Fax:(919) 755-6699

Katherine B. Forrest*
kforrest@cravath.com
David R. Marriott*
dmarriott@cravath.com
Margaret T. Segall*
msegall@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Specially appearing under L.R. 83.1(d)

*Attorneys for Defendant Corteva, Inc.*

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# WINSTON-SALEM DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>SYNGENTA CROP PROTECTION., et al.<br><br>Defendants. | CASE NO. 1:22-CV-828-TDS-JEP<br><br>**DECLARATION OF BEN KAEHLER IN SUPPORT OF CORTEVA, INC.'S RESPONSE TO THE FTC'S MOTION TO FILE PORTIONS OF THE AMENDED COMPLAINT TEMPORARILY UNDER SEAL** |

I, Ben Kaehler, declare as follows:

1.  I am currently Vice President, National Accounts for Corteva, Inc. ("Corteva"). I have been employed by Corteva and its predecessors since 1986 and have held my current position since January 2020. Over the course of my employment at Corteva, I have acquired personal knowledge of Corteva's practices and procedures concerning the maintenance of the confidentiality of its strategic, business and marketing information.

2.  I submit this declaration in support of Corteva's Response to the Federal Trade Commission's ("FTC") Motion to File Portions of the Amended Complaint Under Seal. The contents of this declaration are true and correct to the best of my knowledge, information and belief. This declaration is based on my personal knowledge of Corteva's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me or reviewed by me and/or conversations with other knowledgeable employees of Corteva. If called upon as a witness, I could and would testify competently thereto.

3.  Corteva follows a strict practice that requires confidential treatment of all nonpublic commercial proposals to third parties and nonpublic business agreements with third parties. In my experience and to the best of my knowledge, Corteva does not disclose internal documents, confidential agreements or proposals of this nature outside of the company.

4. Likewise, Corteva follows a strict practice that requires confidential treatment of all nonpublic sales data and forecasts concerning its products and products made by its competitors. In my experience and to the best of my knowledge, Corteva does not disclose nonpublic sales data or forecasts of this nature outside of the company.

5. The disclosure of confidential commercial proposals to third parties, business agreements with third parties or nonpublic sales data or forecasts could significantly harm Corteva's relationships and ability to conduct business with counterparties and prospective counterparties, and/or place Corteva at a disadvantage with competitors who could use Corteva's confidential analyses to their advantage in competition with Corteva. These materials therefore derive economic value from not being generally known to Corteva's competitors, counterparties or the general public.

6. I understand that the FTC and several State Attorneys General have filed in this Court an amended complaint ("the Amended Complaint") that reflects information from confidential materials that Corteva has produced to the FTC pursuant to a nonpublic investigation (FTC File No. 191-0031). To the best of my knowledge, Corteva has designated all information produced pursuant to that investigation as confidential. I have reviewed the Amended Complaint and can confirm that it contains confidential information concerning Corteva's business agreements with nonparties and Corteva's nonpublic internal sales forecasts for certain active ingredients. To the best of my knowledge, neither Corteva nor the counterparties to its agreements have ever disclosed the terms of the commercial agreements described in the Amended Complaint.

DECLARATION OF BEN KAEHLER IN SUPPORT OF CORTEVA'S RESPONSE TO FTC'S MOTION TO SEAL Case No. 1:22-cv-828

Case 1:22-cv-00828-TDS-JEP   Document 88-1   Filed 01/06/23   Page 3 of 17

7. I understand that Corteva requests that the Court maintain the following specific information under seal. For the reasons stated below, the following information is confidential and highly sensitive, and if publicly disclosed, could significantly prejudice Corteva's competitive position by harming Corteva's relationships with business partners, putting Corteva at an unfair disadvantage in future business negotiations, and permitting Corteva's competitors to gain an unfair advantage in competition with Corteva.

8. I understand that Corteva requests to seal the percentage of sales generated by distributors that participate in Corteva and Syngenta's loyalty programs in **paragraphs 6, 8, and 80** of the Amended Complaint. This information could be used to determine the identities of non-party distributors who are counterparties to Corteva's loyalty agreements. To the best of my knowledge, the identities of the counterparties to Corteva's loyalty agreements have never been disclosed. Corteva's loyalty agreements, by their terms, must be kept confidential by both Corteva and the existing counterparties to the agreements. If the identities of Corteva's existing counterparties were revealed to Corteva's competitors and potential counterparties, they could use that information to disadvantage Corteva. For example, if other crop protection product manufacturers learned of the identities of the counterparties to Corteva's loyalty agreements, they could target those distributors for their own loyalty agreements that are similar to Corteva's. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable

expectation that Corteva will maintain the confidentiality of their participation in the loyalty programs. If distributors who are not parties to Corteva's loyalty agreements learned the identity of the counterparties to Corteva's loyalty agreements, they could use it to inform their negotiation strategies and as leverage in negotiations.

9. I understand that Corteva requests to seal the schedule by which it provides rebates to distributors pursuant to its loyalty programs in **paragraphs 6, 78, 85 and 173** of the Amended Complaint. To the best of my knowledge, the schedule by which Corteva provides rebates to distributors has never been disclosed. It is a specific term of Corteva's loyalty agreements, which, by their terms, must be kept confidential by both Corteva and the existing counterparties to the agreements. If the existence of that term were revealed to Corteva's competitors and potential counterparties, they could use them to disadvantage Corteva. For example, if other crop protection product manufacturers learned of the period over which Corteva provides rebates to distributors, they could use that information to disadvantage Corteva in their own negotiations with distributors. In particular, they could offer the same or a similar term in an agreement with a distributor. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable expectation that Corteva will maintain the confidentiality of contractual terms. Moreover, if distributors who are not parties to Corteva's loyalty agreements learned this information, they could use it to inform their negotiation strategies and as leverage in negotiations.

10. I understand that Corteva requests to seal the percentage of distributors that participate in Corteva's loyalty programs in **paragraphs 8 and 171** of the Amended Complaint. This information could be used to determine the identities of the counterparties to Corteva's loyalty agreements. To the best of my knowledge, the identities of the counterparties to Corteva's loyalty agreements have never been disclosed. Corteva's loyalty agreements, by their terms, must be kept confidential by both Corteva and the existing counterparties to the agreements. If the identities of Corteva's existing counterparties were revealed to Corteva's competitors and potential counterparties, they could use them to disadvantage Corteva. For example, if other crop protection product manufacturers learned of the identities of the counterparties to Corteva's loyalty agreements, they could target those distributors for their own loyalty agreements that are similar to Corteva's. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable expectation that Corteva will maintain the confidentiality of their participation in the loyalty programs. Moreover, if distributors who are not parties to Corteva's loyalty agreements learned the identity of the counterparties to Corteva's loyalty agreements, they could use it to inform their negotiation strategies and as leverage in negotiations.

11. I understand that Corteva requests to seal confidential terms of Corteva's Corporate Distributor Offers in **paragraphs 73, 79 and 85** of the Amended Complaint. To the best of my knowledge, the terms of Corteva's Corporate Distributor Offers have

never been disclosed. Indeed, the terms of Corteva's Corporate Distributor Offers require them to be kept confidential by both Corteva and the existing counterparties to the agreements. If the terms noted in these paragraphs were revealed to Corteva's competitors and potential counterparties, they could use that information to disadvantage Corteva. For example, if other crop protection product manufacturers learned of this term, they could use it to disadvantage Corteva in their own negotiations with distributors. In particular, they could seek to replicate this term in an agreement with a distributor modeled on Corteva's Corporate Distributor Offer. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable expectation that Corteva will maintain the confidentiality of contractual terms. Moreover, if distributors who are not parties to Corteva's loyalty agreements or Corporate Distributor Offers learned this information, they could use it to inform their negotiation strategies and as leverage in negotiations.

12. I understand that Corteva requests to seal the specific percentage of its purchases of an active ingredient that each distributor must make from Corteva to qualify for rebates under Corteva's loyalty programs (the "Loyalty Threshold") in **paragraphs 75, 128, 137, and 146** of the Amended Complaint. To the best of my knowledge, specific Loyalty Thresholds have never been disclosed. If specific Loyalty Thresholds were revealed to competitors and potential counterparties, they could use that information to disadvantage Corteva. For example, if other crop protection product manufacturers

learned of specific Loyalty Thresholds, they could use that information to disadvantage Corteva in their own negotiations with distributors. In particular, they could offer the same or similar thresholds in an equivalent loyalty agreement with a distributor. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable expectation that Corteva will maintain the confidentiality of contractual terms. Moreover, if distributors who are not parties to Corteva's loyalty agreements learned this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Corteva.

13. I understand that Corteva requests to seal a confidential term of Corteva's loyalty agreements with distributors concerning Corteva's treatment of different products and active ingredients covered by the program in **paragraphs 75, 85, 163 and 173** of the Amended Complaint. To the best of my knowledge, this term has never been disclosed. Indeed, the terms of Corteva's loyalty agreements require them to be kept confidential by both Corteva and the existing counterparties to the agreements. If the terms noted in the these paragraphs were revealed to Corteva's competitors and potential counterparties, they could use that information to disadvantage Corteva. For example, if other crop protection product manufacturers learned of this term, they could use it to disadvantage Corteva in their own negotiations with distributors. In particular, they could seek to replicate this term in an agreement with a distributor modeled on Corteva's loyalty agreements. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a

reasonable expectation that Corteva will maintain the confidentiality of contractual terms. Moreover, if distributors who are not parties to Corteva's loyalty agreements or Corporate Distributor Offers learned this information, they could use it to inform their negotiation strategies and as leverage in negotiations.

14. I understand that Corteva requests to seal the percentage discount that Corteva returns to its distributors in the form of a rebate pursuant to the loyalty programs in **paragraph 77** of the Amended Complaint. To the best of my knowledge, the percentage discount of the rebates that Corteva provides to distributors has never been disclosed. If the magnitude of the rebates that Corteva provides pursuant to its programs was revealed to competitors and potential counterparties, they could use that information to disadvantage Corteva. For example, if other crop protection product manufacturers learned of the percentage discount offered by Corteva's rebates, they could use that information to disadvantage Corteva in their own negotiations with distributors. In particular, they could offer the same or similar discounts in an agreement with a distributor. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable expectation that Corteva will maintain the confidentiality of contractual terms. Moreover, if distributors who are not parties to Corteva's loyalty agreements learned this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Corteva.

15. I understand that Corteva requests to seal the approximate dollar value of the rebates that Corteva pays to distributors pursuant to its Corporate Distributor Offers in **paragraph 79** of the Amended Complaint. To the best of my knowledge, the approximate dollar value of the discounts that Corteva pays to distributors pursuant to its Corporate Distributor Offers has never been disclosed. If the magnitude of the discounts that Corteva provides pursuant to its Corporate Distributor Offers were revealed to competitors and potential counterparties, they could use that information to disadvantage Corteva. For example, if other crop protection product manufacturers learned of the approximate dollar value of Corteva's rebates, they could use that information to disadvantage Corteva in their own negotiations with distributors. In particular, they could offer the same or similar amounts in an agreement with a distributor that replicated Corteva's Corporate Distributor Offers. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable expectation that Corteva will maintain the confidentiality of contractual terms. Moreover, if distributors who are not parties to Corteva's loyalty agreements learned this information, they could use it to inform their negotiation strategies and as leverage in negotiations with Corteva.

16. I understand that Corteva requests to seal a confidential term of Corteva's loyalty agreements with distributors concerning Corteva's ability to monitor distributors' compliance with the loyalty agreements in **paragraph 87** of the Amended Complaint. To the best of my knowledge, this term has never been disclosed. Indeed, the terms of

Corteva's loyalty agreements require them to be kept confidential by both Corteva and the existing counterparties to the agreements. If the contractual right noted in the second sentence of **paragraph 81** were revealed to Corteva's competitors and potential counterparties, they could use that information to disadvantage Corteva. For example, if other crop protection product manufacturers learned of this term, they could use that information to disadvantage Corteva in their own negotiations with distributors. In particular, they could seek to replicate this term in an agreement with a distributor modeled on Corteva's loyalty agreements. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable expectation that Corteva will maintain the confidentiality of contractual terms.

17. I understand that Corteva requests to seal the terms of its confidential mesotrione supply agreement with Syngenta in **paragraphs 109, 110 and 164** of the Amended Complaint. To the best of my knowledge, the terms of Corteva's mesotrione supply agreement with Syngenta have never been disclosed. If the contractual rights noted in these paragraphs is revealed to Corteva's competitors and crop protection product suppliers, they could use that information to disadvantage Corteva. For example, if Corteva's existing and potential crop protection product suppliers learned of these terms, they could demand that their agreements with Corteva include the same terms.

18. I understand that Corteva requests to seal the terms of its confidential s-metolachlor supply agreement with Syngenta in **paragraphs 122 and 164** of the

Amended Complaint. To the best of my knowledge, the terms of Corteva's s-metolachlor supply agreement with Syngenta have never been disclosed. If the contractual rights noted in these paragraphs were revealed to Corteva's competitors and crop protection product suppliers, they could use that information to disadvantage Corteva. For example, if Corteva's existing and potential crop protection product suppliers learned of this term, they could demand that their agreements with Corteva include the same terms.

19. I understand that Corteva seeks to seal a statistic calculated using confidential sales data generated and maintained by Corteva in **paragraph 164** of the Amended Complaint. To the best of my knowledge, internal Corteva sales data concerning rimsulfuron, oxamyl and acetochlor have never been disclosed. If Corteva's internal data concerning sales of rimsulfuron, oxamyl and acetochlor were revealed to Corteva's competitors, they could use those forecasts to disadvantage Corteva. In particular, they could modify their business strategies based on Corteva's proprietary knowledge of acetochlor sales to Corteva's detriment.

20. I understand that Corteva seeks to seal a statistic calculated using confidential sales data generated and maintained by Corteva in **paragraph 171** of the Amended Complaint. To the best of my knowledge, internal Corteva sales data concerning rimsulfuron, oxamyl and acetochlor have never been disclosed. If Corteva's internal data concerning sales of rimsulfuron, oxamyl and acetochlor were revealed to Corteva's competitors, they could use those forecasts to disadvantage Corteva. In

particular, they could modify their business strategies based on Corteva's proprietary knowledge of acetochlor sales to Corteva's detriment.

21. I understand that Corteva seeks to seal information concerning its confidential business plans and strategies in **paragraphs 88 and 200** of the Amended Complaint. To the best of my knowledge, the confidential business plans and strategies in these paragraphs have never been disclosed. If Corteva's internal business plans and strategies were revealed to Corteva's competitors, they could use those forecasts to disadvantage Corteva. In particular, they could modify their business strategies to take advantage of Corteva's plans and strategies that are based on Corteva's proprietary knowledge of its own product sales data. Such changes to Corteva's competitors' business strategies would work to Corteva's detriment.

22. I understand that Corteva requests to seal specific identifying information about a distributor who is a party to Corteva's loyalty programs in **paragraph 237** of the Amended Complaint. This information could be used to determine the identity of this counterparty to Corteva's loyalty agreements. To the best of my knowledge, the identities of the counterparties to Corteva's loyalty agreements have never been disclosed. Corteva's loyalty agreements, by their terms, must be kept confidential by both Corteva and the existing counterparties to the agreements. If the identities of Corteva's existing counterparties were revealed to Corteva's competitors and potential counterparties, they could use them to disadvantage Corteva. For example, if other crop protection product manufacturers learned of the identities of the counterparties to

Corteva's loyalty agreements, they could target those distributors for their own loyalty agreements that are similar to Corteva's. The information also implicates non-party distributors' confidentiality interests. Corteva's business partners, who are not parties to this litigation, have a reasonable expectation that Corteva will maintain the confidentiality of their participation in the loyalty programs. Moreover, if distributors who are not parties to Corteva's loyalty agreements learned the identity of the counterparties to Corteva's loyalty agreements, they could use it to inform their negotiation strategies and as leverage in negotiations.

23. Here, I present a chart listing the specific paragraphs and sentences in which Corteva requests this Court maintain the FTC's redactions, and the basis for Corteva's request in each instance.

| **Location of Sealed Info** | **Basis for Sealing** |
|---|---|
| **Paragraph 6, first sentence** | Percentage of sales generated by distributors that participate in Corteva and Syngenta's loyalty programs |
| **Paragraph 6, second sentence** | Schedule by which it provides rebates to distributors pursuant to its loyalty programs |
| **Paragraph 8, second sentence** | Percentage of distributors that participate in Corteva's loyalty programs |
| **Paragraph 8, third sentence** | Percentage of sales generated by distributors that participate in Corteva and Syngenta's loyalty programs |
| **Paragraph 73, sixth sentence** | A confidential term of Corteva's Corporate Distributor Offers |

| | |
|---|---|
| **Paragraph 75, fourth sentence** | A confidential term of Corteva's loyalty agreements with distributors concerning Corteva's treatment of different active ingredients covered by the program |
| **Paragraph 75, second, third and fifth sentences** | A specific Loyalty Threshold |
| **Paragraph 77, third sentence** | Percentage discount that Corteva returns to its distributors in the form of a rebate pursuant to the loyalty programs |
| **Paragraph 78, first, second and third sentences** | A confidential term of Corteva's loyalty agreements with distributors concerning Corteva's treatment of different active ingredients covered by the program |
| **Paragraph 79, first sentence** | Schedule by which it provides rebates to distributors pursuant to its loyalty programs |
| **Paragraph 79, first, third, fourth and fifth sentences** | A confidential term of Corteva's Corporate Distributor Offers |
| **Paragraph 79, second and fourth sentences** | Approximate dollar value of the rebates that Corteva pays to distributors pursuant to its Corporate Distributor Offers |
| **Paragraph 80** | Percentage of sales generated by distributors that participate in Corteva and Syngenta's loyalty programs |
| **Paragraph 85, fifth sentence** | A confidential term of Corteva's loyalty agreements with distributors concerning Corteva's treatment of different active ingredients covered by the program |
| **Paragraph 85, fifth sentence** | Schedule by which it provides rebates to distributors pursuant to its loyalty programs |
| **Paragraph 87, second sentence** | A confidential term of Corteva's loyalty agreements with distributors concerning Corteva's ability to monitor distributors' compliance with the loyalty agreements |
| **Paragraph 88, fourth and fifth sentences** | Confidential business plans and strategies |

| | |
|---|---|
| **Paragraph 109, first through fourth sentences** | A term of its confidential mesotrione supply agreement with Syngenta |
| **Paragraph 110, first and second sentences** | A term of its confidential mesotrione supply agreement with Syngenta |
| **Paragraph 122, first and second sentences** | A term of its confidential s-metolachlor supply agreement with Syngenta |
| **Paragraph 128, second and fourth sentences** | A specific Loyalty Threshold |
| **Paragraph 128, second sentence** | A confidential term of Corteva's loyalty agreements with distributors concerning Corteva's treatment of different active ingredients covered by the program |
| **Paragraph 137, third sentence** | A specific Loyalty Threshold |
| **Paragraph 146, second and third sentences** | A specific Loyalty Threshold |
| **Paragraph 146, second sentence** | A confidential term of Corteva's loyalty agreements with distributors concerning Corteva's treatment of different active ingredients covered by the program |
| **Paragraph 163, third sentence** | A confidential term of Corteva's loyalty agreements with distributors concerning Corteva's treatment of different products covered by the program |
| **Paragraph 164, second sentence** | A term of its confidential mesotrione and s-metolachlor supply agreements with Syngenta |
| **Paragraph 171, second sentence** | Percentage of distributors that participate in Corteva's loyalty programs |
| **Paragraph 171, third sentence** | A statistic calculated using confidential sales data generated and maintained by Corteva |
| **Paragraph 173, sixth and seventh sentences** | Schedule by which it provides rebates to distributors pursuant to its loyalty programs |

| **Paragraph 173, sixth and seventh sentences** | A confidential term of Corteva's loyalty agreements with distributors concerning Corteva's treatment of different active ingredients covered by the program |
|---|---|
| **Paragraph 200, third sentence** | Confidential business plans and strategies |
| **Paragraph 237, second sentence** | Specific identifying information about a distributor who participates in Corteva's loyalty programs |

I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on January 6, 2023 in Indiana.

*Ben Kaehler*
_____
Ben Kaehler