# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FEDERAL TRADE COMMISSION,
STATE OF CALIFORNIA,
STATE OF COLORADO,
STATE OF ILLINOIS,
STATE OF INDIANA,
STATE OF IOWA,
STATE OF MINNESOTA,
STATE OF NEBRASKA,
STATE OF OREGON,
STATE OF TENNESSEE
STATE OF TEXAS,
STATE OF WASHINGTON
        and
STATE OF WISCONSIN,

        Plaintiffs,

        v.

SYNGENTA CROP PROTECTION AG,
SYNGENTA CORPORATION,
SYNGENTA CROP PROTECTION, LLC,
        and
CORTEVA, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 22-CV-828

[REDACTED PUBLIC DOCUMENT]

## SYNGENTA'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ........................................................ 1

ARGUMENT .................................................................................. 1

I.    The Amended Complaint Fails
      To State a Federal Antitrust Claim ........................................ 4

      A.    The Price-Cost Test Applies to
            Non-Coercive, Single-Product Loyalty Rebates ............... 5

      B.    Syngenta's Loyalty Rebates, Which Lack Any Coercive
            Non-Price Feature, Are "the Very Essence of Competition" ...... 11

      C.    Plaintiffs Have Failed to Plead Harm to Competition .............. 13

      D.    Plaintiffs Do Not Plead Plausible Product Markets .................. 16

II.   The Amended Complaint Fails
      To State a Claim Under State Law ........................................ 17

III.  The Amended Complaint Fails to State a Claim Against
      Syngenta Corporation or Syngenta Crop Protection AG .................... 18

CONCLUSION .............................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Advanced Health-Care Servs. v. Radford Cnty. Hosp.*,
    910 F.2d 139 (4th Cir. 1990) .......................................................... 9

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
    592 F.3d 991 (9th Cir. 2010) .......................................................... 7

*Am. President Lines, LLC v. Matson, Inc.*,
    2022 WL 4598538 (D.D.C. Sept. 30, 2022) ................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................... 3, 9

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ....................................................................... 11

*Carter Carburetor Corp. v. FTC*,
    112 F.2d 722 (8th Cir. 1940) .......................................................... 9

*Chuck's Feed & Seed Co. v. Ralston Purina Co.*,
    810 F.2d 1289 (4th Cir. 1987) ....................................................... 13

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ........................................... 6, 9, 15

*Eastman Kodak Co. v. Image Tech. Servs. Inc.*,
    504 U.S. 451 (1992) ....................................................................... 11

*E.I. du Pont de Nemours & Co. v. FTC*,
    729 F.2d 128 (2d Cir. 1984) .......................................................... 13

*Eisai, Inc. v. Sanofi Aventis U.S., LLC.*,
    821 F.3d 394 (3d Cir. 2016) ..................................................... 7, 10

*In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
    44 F.4th 959 (10th Cir. 2022) ........................................................ 9

*FTC v. Shkreli*,
    581 F. Supp. 3d 579 (S.D.N.Y. 2022) ......................................... 16

ii

*FTC v. Surescripts, LLC,*
424 F. Supp. 3d 92 (D.D.C. 2020) ............................................................. 8

*Grand Union Co. v. FTC,*
300 F.2d 92 (2d Cir. 1962) ........................................................................ 13

*It's My Party, Inc. v. Live Nation, Inc.,*
811 F.3d 676 (4th Cir. 2016) ..................................................................... 16

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.,*
847 F.3d 1221 (10th Cir. 2017) ................................................................. 18

*McWane, Inc. v. FTC,*
783 F.3d 814 (11th Cir. 2015) ..................................................................... 6

*NicSand, Inc. v. 3M Co.,*
507 F.3d 442 (6th Cir. 2007) ....................................................................... 9

*R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!,*
462 F.3d 690 (7th Cir. 2006) ..................................................................... 14

*S.C. State Bd. of Dentistry v. FTC,*
455 F.3d 436 (4th Cir. 2006) ..................................................................... 13

*In re Surescripts Antitrust Litig.,*
608 F. Supp. 3d 629 (N.D. Ill. 2022) ........................................................ 8

*UniStrip Techs., LLC v. LifeScan, Inc.,*
153 F. Supp. 3d 728 (E.D. Pa. 2015) ........................................................ 8

*United States v. Bestfoods,*
524 U.S. 51 (1998) ..................................................................................... 18

*United States v. Dentsply Int'l, Inc.,*
399 F.3d 181 (3d Cir. 2005) ........................................................................ 6

*Woods v. Gerber Life Ins. Co.,*
536 F. Supp. 3d 15 (M.D.N.C. 2021) ........................................................ 12

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012) ........................................................... 5, 6, 7, 10

## Statutes & Rules

15 U.S.C. § 2 ............................................................................................ 7

15 U.S.C. § 14 ..................................................................................... 7, 9

15 U.S.C. § 45 ................................................................................... 3, 13

Fed. R. Civ. P. 8 ................................................................................... 15

## Other Authorities

Areeda & Hovenkamp, *Antitrust Law* (2022) ........................................ 8

EPA, *Evaluation of Public Interest Documentation for the Conditional Registration of Fluoxastrobin Fungicide* (June 1, 2004) .......................... 17

EPA, *Pesticide Fact Sheet: Tembotrione* (Sept. 2007) ......................... 17

*In re Novartis AG* (FTC Nov. 1, 2000) ................................................. 17

iv

## PRELIMINARY STATEMENT

Plaintiffs' opposition confirms they are advocating the remarkable theory that offering customers lower prices in exchange for increased purchases, without more, violates the antitrust laws. As Syngenta has showed, its rebate program is procompetitive as a matter of law and it would be unprecedented to hold otherwise.

Plaintiffs contend that Syngenta's rebate program is illegal exclusive dealing because most distributors choose to participate, thereby "excluding" generics from the market. But Syngenta does not require exclusivity to purchase its products. It offers an optional price reduction in exchange for increased purchases, and distributors participate because they and their customers benefit from high-quality products offered at lower prices. Rivals are free to respond by reducing prices, increasing product quality, or both. Plaintiffs ignore this reality and advance a theory according to which every successful business offering lower prices to induce purchases has "excluded" its competitors in violation of the antitrust laws

Unsurprisingly, that theory fails under the well-established legal standard—which Plaintiffs *agree* applies. Although tellingly postponed until page 30 of their opposition, Plaintiffs concede that *de facto* exclusive dealing claims are evaluated under the "price-cost test" when price is the "predominant mechanism of exclusion." Under this standard, if Syngenta's

discounted price exceeds its costs, then Syngenta has not violated the antitrust laws absent meaningful allegations of coercion. Syngenta's rebate program satisfies this standard because (1) Syngenta's post-rebate prices are higher than its costs, and (2) price is not only "*predominantly*" the alleged mechanism of exclusion, it is the *only* one—because Syngenta simply offers a better price for increased purchases.

Syngenta's program is voluntary, short-term, and based on a single product line; and has *no* coercive feature. The only consequence of not achieving the share threshold is ineligibility for the optional, modest discount; there is no "penalty." Plaintiffs identify no case finding such a rebate program to be anticompetitive, and Plaintiffs embrace *Eisai* and other cases establishing that such programs are *per se* legal.

Plaintiffs' opposition highlights, rather than cures, the defects in their complaint. For example, Plaintiffs suggest that price can "predominate" as the mechanism of exclusion only if the rebate program is challenged as predatory pricing. That gets the test backwards. The *threshold* question is whether, as here, price is the predominant (or only) mechanism of alleged exclusion. If so, then predatory pricing is the *only* potentially viable theory of anticompetitive harm, and Plaintiffs concede there is no predatory pricing here. Thus, the price-cost test proves fatal to Plaintiffs' claims.

2

Plaintiffs also evade this threshold question by insisting Syngenta's rebate program *must* be anticompetitive because it supposedly raises prices. But Plaintiffs do not plausibly plead that Syngenta's program raises prices or has any other anticompetitive effect. Indeed, as a matter of bedrock antitrust principles, the Court *cannot* infer any such effect. Plaintiffs overlook the critical teaching of the Supreme Court at the heart of this case: price reductions are *pro*competitive, and no plaintiff should be heard to argue that an above-cost price reduction, without more, somehow harms competition.

Forced by the governing legal test to explain how *something* other than price predominates in Syngenta's rebate program, Plaintiffs' only answer is a single alleged instance—over decades of this program's implementation—in which Syngenta terminated a distributor that "showed no commitment to" the rebate program. Based on that allegation alone, Plaintiffs claim entitlement to an inference that Syngenta's program—which Plaintiffs "see[k] to end" in its entirety—systematically employs threats and coercion. That conclusion would eviscerate the *Twombly* pleading standard, and is particularly unwarranted because, although the FTC investigated Syngenta for three years, two successive complaints have failed to plead facts showing coercion.

Lacking any facts or existing law to support its position, the FTC falls back to its novel interpretation of Section 5 of the FTC Act, under which the

3

FTC believes it is free to decide for itself what is anticompetitive. The FTC not only seeks to condemn procompetitive practices that have been legal for decades, but also claims the prerogative to define product markets in changing, inconsistent ways to suit its purposes in any particular matter. The Court should not permit the FTC to engage in such tactics or to substitute its own judgment for settled antitrust standards.

Finally, the States' invocation of potential differences between their antitrust laws and federal antitrust law is unavailing. Whatever unspecified differences may exist, no State shows that its laws condemn a voluntary, single-product, rebate program lacking any feature that has been found anticompetitive under federal law.[1]

## **ARGUMENT**

### I.   **The Amended Complaint Fails To State a Federal Antitrust Claim**

As decades of precedent establish, a loyalty program offering above-cost, single-product rebates to incentivize purchases without employing coercion to secure exclusivity constitutes legal price competition as a matter

---

[1] Although Plaintiffs' claims against Syngenta and Corteva, Inc. ("Corteva"), respectively, necessarily depend on different facts, Defendants have endeavored to minimize overlap in their briefs. Accordingly, Syngenta joins the arguments in Corteva's reply as applicable to Syngenta.

4

of law.  Mem. 14-29.[2]  Plaintiffs do not, and cannot, identify any case holding otherwise.  Nor do they plead facts showing that Syngenta's program incentivizes customers other than through the procompetitive allure of a lower net price.

Unable to identify any coercive feature of Syngenta's rebate program, Plaintiffs cannot show any *anticompetitive* exclusion condemned under settled law.  This is fatal to Plaintiffs' claims, and the Amended Complaint should be dismissed with prejudice.

### A.      The Price-Cost Test Applies to Non-Coercive, Single-Product Loyalty Rebates

The parties agree that Plaintiffs challenge Syngenta's rebate program as *de facto* exclusive dealing, and that such challenges are subject to the price-cost test when "price is the clearly predominant mechanism of exclusion."  Opp. 30 (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 273-75 (3d Cir. 2012)).  And there is no dispute that Syngenta's prices net of rebates pass the price-cost test.

Resisting the application of the price-cost test, Plaintiffs misportray Syngenta as invoking the test because "the challenged conduct *includes* payments to distributors."  Opp. 28, 30-33.  But the test applies not merely

---

[2] Unless otherwise noted, emphasis has been added to quotations, and internal quotations, brackets, citations, and footnotes have been omitted.

because of the *presence* of rebate payments, but because of the *absence* of coercion.  *Compare Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1061-63 (8th Cir. 2000) (rejecting challenge to market-share-based discounts absent coercive mechanisms of exclusion), *with ZF Meritor*, 696 F.3d at 265, 278 ("compliance with the market penetration targets was mandatory because failing to meet such targets would jeopardize the [customer's] relationships with" the defendant, which could also require "repayment of all contractual savings" under long-term agreements); *see* Mem. 18-22.

Plaintiffs insist the coercive features of the loyalty programs challenged in *McWane*, *ZF Meritor*, and *Dentsply* "were [not] essential to the claims." Opp. 22.  To the contrary, each case turned on pervasive coercion.  *See McWane, Inc. v. FTC*, 783 F.3d 814, 820-21, 835 (11th Cir. 2015) (rejecting argument that the program was "insulated … from antitrust scrutiny" by relying on the defendant's threats to "cut off" product supply and withhold accrued rebates if customers did not "fully support [its] branded products," and enforcement of the program "as threatened"); *ZF Meritor*, 696 F.3d at 277-78 (concluding that "price … was not the clearly predominant mechanism of exclusion" because "customers were [not] free to walk away if a competitor offered a better price" because they were "force[d] … to enter into restrictive long-term agreements … or risk financial penalties or supply shortages"); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 194-96 (3d Cir. 2005)

6

(holding that "all-or-nothing" policy of cutting off supply to dealers who carried any competing product, under which customers "fear[ed] losing the right to sell [the defendant's products]," violated Sherman Act § 2).

Plaintiffs also erroneously suggest that *Eisai* and *Tyco* did not rely on the absence of anticompetitive coercion. Opp. 22; *but see Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 407 (3d Cir. 2016) ("[T]he threat of a lost discount is a far cry from the anticompetitive conduct at issue in *ZF Meritor* or *Dentsply*."); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 997 (9th Cir. 2010) ("The market-share discount agreements at issue here did not foreclose Tyco's customers from competition because a competing manufacturer needed only offer a better product or a better deal[.]").

Plaintiffs argue that Section 3 of the Clayton Act "expressly bans payments that may harm competition"—thus highlighting the requirement of harm to competition. Opp. 21. Under *Eisai* and *ZF Meritor*, which involved Section 3 claims in addition to Sherman Act claims,[3] predominantly price-based practices that are not predatory do not harm competition.[4]

---

[3] *See Eisai*, 821 F.3d at 401, 402 & n.11; *ZF Meritor*, 696 F.3d at 168.

[4] Syngenta does not argue that loyalty programs with a one-year duration are "irrebuttabl[y]" legal. Opp. 27. While such programs might involve anticompetitive features, no such feature is alleged here.

7

Plaintiffs' cases (Opp. 21-22, 32) demonstrate this dispositive distinction between price incentives and coercion. In *UniStrip Techs., LLC v. LifeScan, Inc*, 153 F. Supp. 3d 728 (E.D. Pa. 2015), the court recognized that "generally, a claim that rebate programs … condition the rebate on the c[u]st[o]mer's purchasing of its products should be analyzed under the price-cost test." *Id.* at 737. But the test was inapplicable because the complaint pleaded "anticompetitive behavior," including mandatory total exclusivity, multiyear contract terms, bundling, and threats. *Id.*

In *In re Surescripts Antitrust Litig.*, 608 F. Supp. 3d 629 (N.D. Ill. 2022), Surescript's loyalty program featured "long-term exclusivity commitments" and a "clawback" that "penal[ized]" any customer using a competitor by requiring repayment of all loyalty discounts ever received. *Id.* at 637; *see FTC v. Surescripts, LLC*, 424 F. Supp. 3d 92, 95 (D.D.C. 2020) (FTC alleged in parallel action that Surescripts "employed threats and other non-merits based competition to keep its customers from working with its competitors"); *Am. President Lines v. Matson*, 2022 WL 4598538, at *3 (D.D.C. 2022) (loyalty program featured anticompetitive tying and

---

An antitrust treatise cited by Plaintiffs explains, in a subsection they selectively quote: "Discounts conditioned on exclusivity in relatively short-term contracts are rarely problematic," including because "any above-cost discount can be matched by an equally efficient firm." Areeda & Hovenkamp, *Antitrust Law* ¶ 1807b1 (2022) (quoted at Opp. 20).

"threaten[ing], boycott[ing], and punish[ing]" partners that dealt with a competitor); *Carter Carburetor Corp. v. FTC*, 112 F.2d 722, 732, 734 (8th Cir. 1940) (manufacturer "dictate[d] conditions in the sale of its goods which are forbidden by Section 3," including requiring distributors to sell its products to retailers at prices and discounts fixed by manufacturer and, at the retail level, "a complete system of retail price maintenance" and loss of discounts and "cancellation of contracts" for non-exclusivity).[5]

Courts consistently reject antitrust challenges to exclusivity arrangements without coercive features. *See, e.g., In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 1000 (10th Cir. 2022) (rebate "payments exemplified vigorous price competition—something we strenuously protect"); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 452 (6th Cir. 2007) (en banc) (manufacturer's payments for exclusive distribution "furthered" the antitrust laws' "competition-enhancing goals"); *Concord Boat*, 207 F.3d at 1061 (applying "the general rule that above cost discounting is not anticompetitive").

---

[5] *Advanced Health-Care Servs. v. Radford Cmty. Hosp.*, 910 F.2d 139 (4th Cir. 1990) is also unavailing to Plaintiffs. That case, which applied a permissive pre-*Twombly* pleading standard (*id.* at 143-44, 154), did not involve rebates or other price cutting. Indeed, in applying Section 3 to the alleged conduct, the court omitted the language concerning prices and rebates when quoting Section 3. *Id.* at 151.

9

Conflating whether the price-cost test *applies* with whether it is *satisfied*, Plaintiffs assert "price is the clearly predominant mechanism of exclusion" only when "payments might cut a defendant's prices to predatory levels." Opp. 30. That directly contradicts applicable case law. "[A] plaintiff's characterization of its claim as an exclusive dealing claim does not take the price-cost test off the table." *ZF Meritor*, 696 F.3d at 275. Rather, the framework "extend[s] to above-cost discounting or rebate programs, which condition the discounts or rebates on the customer's purchasing of a specified volume or a specified percentage of its requirements from the seller." *Id.*; *see also Eisai*, 821 F.3d at 409 ("When pricing predominates over other means of exclusivity, the price-cost test applies. This is usually the case when a firm uses a single-product loyalty discount or rebate to compete with similar products.").

Plaintiffs' contrary position presents the "intolerable risks" of discouraging procompetitive price reductions that the Supreme Court has warned against:

> [T]he exclusionary effect of prices above a relevant measure of cost either reflects [a] lower cost structure … or is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate price-cutting. To hold that the antitrust laws protect competitors from the loss of profits due to such price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. The antitrust laws require no such perverse result.

10

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993); *see also, e.g.*, *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 478 (1992) ("[C]utting prices to increase business is the very essence of competition.").

## B. Syngenta's Loyalty Rebates, Which Lack Any Coercive Non-Price Feature, Are "the Very Essence of Competition"

The Amended Complaint fails to identify any coercive feature of Syngenta's rebate program. Mem. 18-25. Plaintiffs do not claim to have pleaded loyalty terms of longer than one year, bundling, tying, clawbacks, or withholding of accrued rebates. Nor do Plaintiffs rebut Syngenta's authority holding that their conclusory allegations of "threat[s]" and "retaliat[ion]" by "Defendants" should not be credited. *Id.* 23-24.

Rather, Plaintiffs rely on an alleged termination of one distributor that ███████████████████████████████████████████████████ (¶ 88). A single soured distributor relationship over decades of program administration does not establish a coercive feature of the program. Plaintiffs contend that "retaliation need not be frequent to be effective." Opp. 26. But as to "retaliation," Plaintiffs do not—and cannot—allege there were no other significant factors that contributed to the termination. And as to the effect on other distributors, Plaintiffs plead no facts showing any.

11

Indeed, after a three-year FTC investigation involving nearly unbounded discovery from distributors, Plaintiffs do not identify a single distributor that chose to earn rebates other than voluntarily. Plaintiffs rely only on a soundbite from an internal Syngenta document that does not show any coercion of any distributor. No reasonable inference that coercion is a feature of Syngenta's rebate program—which Plaintiffs "see[k] to end" in its entirety (¶ 3)—arises from Plaintiffs' isolated and thin allegation about one distributor.[6]

Plaintiffs not only fail to plead facts showing coercion, they affirmatively plead it is economically rational for distributors to participate voluntarily: "[d]istributors profit more from accepting [Syngenta's rebates] than they would from distributing lower priced generic products in substantial volumes." ¶ 7. Plaintiffs fail to explain why generic manufacturers do not lower their prices to distributors, or increase the

_____

[6] Plaintiffs appear to claim all inferences (Opp. 26), but only reasonable inferences, as informed by the Court's "judicial experience and common sense," should be drawn in Plaintiffs' favor. *Woods v. Gerber Life Ins. Co.*, 536 F. Supp. 3d 15, 18 (M.D.N.C. 2021).

Also, Plaintiffs mischaracterize Syngenta as arguing "the alleged threats are not part of the loyalty program itself because they are not written down." Opp. 26. No "alleged threat" should be credited because Plaintiffs *do not plead facts showing any threat*. Moreover, Plaintiffs do not, and cannot, dispute that the FTC's investigation preceding this action was extensive. If there were any facts showing "threats and retaliation" (*id.* 25), the Amended Complaint would have pleaded them.

12

quality of their products so they command higher prices when distributors resell them.  Mem. 27.

Nor does Section 5 of the FTC Act allow the FTC to escape the conclusion that Syngenta's rebates are procompetitive as a matter of law. Plaintiffs do not dispute that the unfair competition prohibited by Section 5 is "intimately intertwined" with "anticompetitive conduct."  *S.C. State Bd. of Dentistry v. FTC*, 455 F.3d 436, 443 n.7 (4th Cir. 2006); *Chuck's Feed & Seed Co. v. Ralston Purina Co.*, 810 F.2d 1289, 1293 (4th Cir. 1987) ("The [FTC] itself looks to antitrust principles in deciding whether § 5 of the FTC Act has been violated.").  Nor do Plaintiffs identify any Section 5 case condemning a rebate program without coercive features.  Plaintiffs' cases acknowledge that "[n]o economic activity, once lawful, has been suddenly brought within the prohibition of the antitrust laws."  *Grand Union Co. v. FTC*, 300 F.2d 92, 98 (2d Cir. 1962) (permitting a Section 5 claim where the FTC was not "legislating a new antitrust prohibition"); *see E.I. du Pont de Nemours & Co. v. FTC*, 729 F.2d 128, 137 (2d Cir. 1984) (rejecting the FTC's attempt "to break new ground by enjoining otherwise legitimate practices").

## C.     **Plaintiffs Have Failed to Plead Harm to Competition**

Ignoring Syngenta's showing that its alleged "exclusion" of generics results from procompetitive price cutting on higher quality products, Plaintiffs echo their conclusory allegations that generic sales would be higher

13

absent Syngenta's rebates.  Opp. 15-20.  But "[t]he question is not whether the defendant has tried to knock out other businesses but whether the means it has employed to that end are likely to benefit or injure consumers. … [L]ower prices … usually if not always brings benefits to consumers."  *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 696 (7th Cir. 2006).  Thus, rather than dismiss the "need to analyze competitive effects" (Opp. 14), Syngenta has shown that any effects on generics result from conduct—price cutting—that is, as a matter of law, procompetitive (Mem. 18-29).

In any event, Plaintiffs' opposition highlights the hollowness of their allegations of "direct evidence" of "higher prices."  Plaintiffs feature their allegation that "unimpeded" generic competition "predictably leads to dramatic price reductions."  Opp. 4 (quoting ¶ 4).  And in response to Syngenta's demonstration that the pleaded *facts* show that generic competition forces Syngenta to cut its prices (Mem. 27-29), Plaintiffs grudgingly concede that generics have a "limited" effect on prices, and fall back on their unsupported allegation that "this effect is much smaller than it would be absent Defendants' unlawful exclusive dealing."  Opp. 19 (citing ¶¶ 106, 202).

Thus, there is no dispute that, as the alleged facts show, Syngenta has reduced its prices in response to generic competition—including through the

14

challenged rebates, which Plaintiffs allege are "substantial" (¶ 6). Yet Plaintiffs resort only to adjectives to dismiss these undisputed price drops: price reductions allegedly have been "less significant" and "slower" than the "dramatic" price reductions that, according to Plaintiffs, would disprove harm to competition. ¶¶ 4, 202. But those adjectives, which do all the work, are inherently non-factual material that does not satisfy Rule 8, and should not be credited as plausibly alleging "direct evidence" of harm to competition.[7]

Plaintiffs also assert that Syngenta's price reductions to distributors somehow harm competition because they are "not passed on to farmers." Opp. 24. Putting aside the unfounded nature of this assertion, Plaintiffs identify no precedent for condemning Syngenta's price cutting based on distributors' independent pricing decisions. *See Concord Boat*, 207 F.3d at 1061 (dismissing antitrust claims challenging loyalty discounts to

---

[7] Allegations characterizing Syngenta's internal documents lack facts supporting Plaintiffs' claims. The *facts* in those allegations undermine Plaintiffs' claims by showing that ███████████████████████ ███████████████████ (¶ 196) and that Corteva ████████ ███████████████████████████████████████ (¶¶ 107-08, 197-98). *See* Mem. at 27-29. The allegations also contain conjecture about counterfactual, hypothetical situations without a post-patent strategy—but that is inherently speculative.

Also, Plaintiffs concede Syngenta's rebate program is merely one part of Syngenta's "post-patent strategy" (Opp. 18), but ignore Syngenta's broader post-patent efforts to maintain its products' quality and popularity, and the effect of quality differences on pricing.

intermediary buyers because "above cost discounting is not anticompetitive"). Plaintiffs rely only on an inapposite case that did not involve any alleged omission to pass on rebates. Opp. 24 (citing *FTC v. Shkreli*, 581 F. Supp. 3d 579 (S.D.N.Y. 2022)).[8]

## D. <u>Plaintiffs Do Not Plead Plausible Product Markets</u>

Plaintiffs do not dispute that their proffered AI-specific markets are narrower than the multiple-AI markets the FTC has defined in other matters, including for the same AIs. Mem. 32-34.[9] The FTC has, for example, properly asserted in another matter that Syngenta's metolachlor and Corteva's acetochlor compete in the same product market. *Id.* Plaintiffs insist they are free to define "broader and narrower markets" for the same products in separate matters to suit their differing litigation strategies. Opp. 48. But a plaintiff may not "gerrymander its way to an antitrust victory" through market definition. *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 683 (4th Cir. 2016) The governing legal standard focuses on *consumer*

---

[8] In *Shkreli*, the defendant gamed a regulatory barrier to generic entry—the need for generic manufacturers to acquire samples of a branded drug to obtain FDA approval for generic equivalents—by aggressively restricting the retail purchases of his company's branded drug. 581 F. Supp. 3d at 633.

[9] Plaintiffs contend these matters are "outside the record" (Opp. 48), but do not dispute that they are subject to judicial notice. Mem. 33 n.16.

*behavior in the real world*—not whether the FTC decides to challenge a

transaction or a rebate program, or how its lawyers frame its claims.

In addition, Syngenta joins Point I of Corteva's brief.[10]

## II. The Amended Complaint Fails To State a Claim Under State Law

Without disputing that the relevant state antitrust statutes are

generally consistent with federal antitrust law (Mem. 34-35), Plaintiffs

quibble that the consistency "var[ies] from state to state." Opp. 57. But

---

[10] The Amended Complaint fails to justify its exclusion of functional substitutes for Syngenta's AIs. Plaintiffs' markets for Syngenta's AIs exclude, without explanation, AIs from the same class and with common uses:

- Azoxystrobin is a strobilurin fungicide in the same class as, e.g., fluoxastrobin, pyraclostrobin, and trifloxystrobin. *See* www3.epa.gov/pesticides/chem_search/cleared_reviews/csr_PC-028869_1-Jun-04_a.pdf.

- Metolachlor is a "pre-emergent herbicide" in the same class as, e.g., acetochlor and dimenthenamid. *See* www.ftc.gov/sites/default/files/documents/cases/2000/11/novartanalyis.htm; Anderson Decl. Supp. Corteva Reply, Ex. 4 ("Other preemergence corn herbicides which provide weed control similar to acetocholor include dimethanmid-P …, S-metolachlor …, and pendimethalin … and many others.").

- Mesotrione "belongs to a class of herbicides [that] includ[es] … [tembotrione,] pyrasulfotole, isoxaflutole and topramezone." www3.epa.gov/pesticides/chem_search/reg_actions/registration/fs_PC-012801_01-Sep-07.pdf.

These exclusions are, as Corteva demonstrates, fatal to Plaintiffs' claims.

17

Plaintiffs do not identify any state law authority condemning as anticompetitive the conduct alleged *here*.

Similarly, Indiana and Iowa identify no authority holding that Syngenta's rebates violate their consumer protection laws, so those claims should be dismissed for the reasons previously stated. Mem. 35-36.

## III. The Amended Complaint Fails to State a Claim Against Syngenta Corporation or Syngenta Crop Protection AG

The lack of facts meaningfully connecting these parent companies to Syngenta's rebate program is fatal to Plaintiffs' claims against them. Mem. 36-37. Vague assertions that the parents "directly designed, participate in, and implement key aspects" of Syngenta's program as part of a "single enterprise" (Opp. 54) are insufficient, as a matter of law, to overcome the "principle … deeply ingrained in our economic and legal systems that a parent corporation … is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61, 69 (1998).

Indeed, Plaintiffs' cases undermine their reliance on generalized allegations. *See, e.g., Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1237 (10th Cir. 2017) ("[A]n affiliated corporation cannot be held liable as a part of the enterprise" absent "evidence that [it] was involved in the challenged conduct.").

18

## CONCLUSION

For these reasons, and as further demonstrated in Syngenta's opening brief, the Amended Complaint should be dismissed with prejudice in its entirety.

Date: March 7, 2023

/s/ Patrick M. Kane
Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

Paul S. Mishkin*
paul.mishkin@davispolk.com
David B. Toscano*
david.toscano@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4292
Facsimile: (212) 701-5292

*Specially appearing under L.R. 83.1(d)

*Attorneys for Defendants Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC*

19

## CERTIFICATE OF WORD COUNT

Consistent with the Court's Order, (ECF No. 129), I hereby certify that the foregoing document contains 3,994 words, excluding those portions exempted by Local Rule 7.3(d).

/s/Patrick M. Kane
Patrick M. Kane