# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | |
| Plaintiffs, | |
| v. | CASE NO. 1:22-CV-828-TDS-JEP |
| SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC | |
| and | ORAL ARGUMENT REQUESTED |
| CORTEVA, INC., | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF <u>DEFENDANT CORTEVA, INC.'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................................. ii

ARGUMENT ....................................................................................................................1

    I.      PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A RELEVANT
            PRODUCT MARKET ............................................................................1

    II.     PLAINTIFFS' CLAIMS FAIL TO ALLEGE IMPERMISSIBLE
            EXCLUSIVE DEALING.........................................................................9

    III.    THE FTC LACKS AUTHORITY TO BRING THIS SUIT .....................12

    IV.    PLAINTIFFS' STATE LAW CLAIMS FAIL .........................................15

    V.     PLAINTIFFS' TIMELINESS CLAIM IS MISPLACED..........................16

CONCLUSION................................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berlyn Inc. v. The Gazette Newspapers, Inc.*,
  73 F. App'x 576 (4th Cir. 2003) .................................................................................5

*FTC v. Sysco Corp.*,
  113 F. Supp. 3d 1 (D.D.C. 2015) ...............................................................................7

*Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*,
  778 F.3d 775 (9th Cir. 2015) ......................................................................................5

*United States v. Energy Sols., Inc.*,
  265 F. Supp. 3d 415 (D. Del. 2017).............................................................................6

*United States v. Cecil*,
  836 F.2d 1431 (4th Cir. 1988) ....................................................................................4

*United States v. Garcia*,
  855 F.3d 615 (4th Cir. 2017) ......................................................................................4

*Am. President Lines, LLC v. Matson, Inc.*,
  No. 21-CV-02040 (CRC), 2022 WL 4598538 (D.D.C. Sept. 30, 2022) ....................10

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  140 S. Ct. 2335 (2020).............................................................................................15

*Bayer-Schering Pharma AG v. Sandoz, Inc.*,
  813 F. Supp. 2d 569 (S.D.N.Y. 2011).....................................................................2, 4

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)................................................................................................8, 9

*Chuck's Feed Seed Co. v. Ralston Purina Co.*,
  810 F.2d 1289 (4th Cir. 1987) ....................................................................................2

*Daubert v. Merrell Dow Pharms. Inc.*,
  509 U.S. 579 (1993)....................................................................................................4

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
  637 F.3d 435 (4th Cir. 2011) ......................................................................................6

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
  821 F.3d 394 (3d Cir. 2016)................................................................................10, 11

*In re EpiPen*,
  336 F. Supp. 3d 1256 (D. Kan. 2018) .......................................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ................................................................14

*FTC v. Roomster Corp.*,
    No. 22-cv-7389, 2023 WL 1438718 (S.D.N.Y. Feb. 1, 2023) ..............................14, 15

*FTC v. Swedish Match*,
    131 F. Supp. 2d 151 (D.D.C. 2000) ................................................................5

*FTC v. Whole Foods Market*,
    548 F.3d 1028 (D.C. Cir. 2008) ................................................................5

*Harvey v. Cable News Network, Inc.*,
    48 F.4th 257 (4th Cir. 2022) ................................................................16

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ................................................................2, 6

*Holloway v. Pagan River Dockside Seafood, Inc.*,
    669 F.3d 448 (4th Cir. 2012) ................................................................13

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ................................................................13, 14

*Linzer Prods. Corp. v. Sekar*,
    499 F. Supp. 2d 540 (S.D.N.Y. 2007) ................................................................7

*Metague v. Woodbolt Distr., LLC*,
    No. 8:20-cv-02186-PX, 2021 WL 2457153 (D. Md. June 16, 2021) ................................4

*Morrison v. Olson*,
    487 U.S. 654 (1988) ................................................................14

*In the Matter of Novartis AG, et al.*,
    Dkt. No. C-3979 (Nov. 1, 2000) ................................................................8

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274 (2018) ................................................................2

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) ................................................................5

*Rowley v. McMillan*,
    502 F.2d 1326 (4th Cir. 1974) ................................................................12

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ................................................................13, 14, 15

*Therapearl, LLC v. Rapid Aid Ltd.*,
No. CCB-13-2792, 2014 WL 4794905 (D. Md. Sept. 25, 2014)..................................3

*In re Tower Auto. Sec. Litig.*,
483 F. Supp. 2d 327 (S.D.N.Y. 2007)............................................................................4

*UniStrip Techs., LLC v. LifeScan, Inc.*,
153 F. Supp. 3d 728 (E.D. Pa. 2015) ........................................................................10

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966)......................................................................................................7

*Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*,
108 F. Supp. 2d 549 (W.D. Va. 2000) ........................................................................9

**Statutes & Rules**

Fed. R. Civ. P. 12(b)(3).....................................................................................................13

Fed. R. Civ. P. 12(g)(1).....................................................................................................12

Fed. R. Evid. 201(b)..........................................................................................................3

Defendant Corteva, Inc. ("Corteva") respectfully submits that the Court should dismiss all claims against Corteva in the Amended Complaint (the "Complaint") for the reasons set forth below in this reply brief.

## PRELIMINARY STATEMENT

Plaintiffs do not dispute that loyalty discounts are both common and presumptively lawful in all but a few, carefully defined circumstances.  Nor do they dispute that Corteva's programs have been in place for years, through decades of both Republican and Democratic executive administrations, without any challenges from federal or state regulators.  Instead, plaintiffs' opposition depends entirely upon gerrymandered markets, invalid legal propositions, and bare, conclusory allegations.  Accordingly, the Court should dismiss all claims the Complaint makes against Corteva.[1]

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A RELEVANT PRODUCT MARKET

Plaintiffs' claims require proof of one or more relevant product markets. Plaintiffs define unduly narrow markets each based on a single active ingredient ("AI") (¶155), to create the false impression that Corteva has a large market share and significant market power.  However, plaintiffs fail to plead facts sufficient to explain their exclusion of products that are well-known alternatives to the Corteva

---

[1] Citations herein are as follows:  the Complaint as "¶__"; Corteva's opening as "O__"; exhibits to the Declaration of Mark Anderson as "Ex.__"; and plaintiffs' opposition as "R__".

AIs (Acetochlor, Rimsulfuron and Oxamyl). Because nothing in plaintiffs'

opposition justifies their gerrymandered markets, dismissal of the Complaint is

warranted.

A.    Plaintiffs' Failure to Explain the Exclusion of Well-Known Alternatives Is Fatal.

A complaint should be dismissed when it "alleges a proposed relevant

market that clearly does not encompass all interchangeable substitute products

even when all factual inferences are granted in plaintiff's favor". *Bayer-Schering*

*Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 575 (S.D.N.Y. 2011); *see also*

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120-21 (9th Cir. 2018).[2]

Here, the Complaint fails to plausibly explain its exclusion of products that

treat the same crops, for the same weeds/pests, by the same mode of action, at the

same site of action and are from the same chemical family:

> Acetochlor: one of many Seedling Shoot Growth
> Inhibitors, and a Long-chain Fatty Acid Inhibitor
> (Group 15) from the Chloroacetamide family.
> Plaintiffs' "Acetochlor markets" not only exclude
> other herbicides with the same mode of action (*i.e.*,
> Lipid Synthesis Inhibitors), but also they exclude
> products with the exact same "site of action" (*e.g.*,
> Oxyacetamide, Pyrazole), and from the exact same

---

[2] Putting aside the conclusory nature of plaintiffs' allegations of "direct evidence" (¶153), those allegations do not negate plaintiffs' obligation to plead a well-defined relevant product market. *See* Syngenta Mem. 29 (citing *Ohio v. Am. Express Co*., 138 S. Ct. 2274, 2285 (2018)). Plaintiffs' argument that Section 5 claims are exempt from this requirement (R37 n.9) is incorrect. *See Chuck's Feed Seed Co. v. Ralston Purina Co.*, 810 F.2d 1289, 1295 (4th Cir. 1987) ("[T]he appropriate analysis to apply to an exclusive dealing arrangement under the FTC Act . . . [requires f]irst, [that] the court . . . determine the nature of the relevant market".).

2

chemical family (*e.g.*, Metolachlor, Dimethenamid, Alachlor).

Rimsulfuron:  one of many Amino Acid Synthesis Inhibitors, and an ALS Inhibitor (Group 2) from the Sulfonylurea family.  Plaintiffs' "Rimsulfuron markets" not only exclude other herbicides with the same mode of action (*i.e.*, EPSP Synthase Inhibitors), but also they exclude products with the same "site of action" (*e.g.*, Imidazolinone, Triazoloyrimidine, Triazolinones), and from the same chemical family (*e.g.*, Chlorimuron, Prosulfuron, Tribenuron).

Oxamyl:  one of many nematicides, an acetylcholinesterase inhibitor (Group N-1) from the carbamate family.  Plaintiffs' "Oxamyl markets" not only exclude other pesticides with the same mode of action (*e.g.*, Cadusafos, Ethoprofos, Fenamiphos), but they also exclude products of the same chemical family (*e.g.*, Aldicarb, Carbofuran, Thiodicard).

Plaintiffs' failure to plead a plausible explanation for these omissions is fatal to their claims against Corteva.  *See e.g., Therapearl, LLC v. Rapid Aid Ltd.*, No. CCB-13-2792, 2014 WL 4794905, at *8 (D. Md. Sept. 25, 2014); *Bayer*, 813 F. Supp. 2d at 13 (dismissing complaint for failure to "plead sufficient facts to demonstrate that no" other functionally interchangeable drug "is an acceptable substitute").

Plaintiffs argue the Court must ignore these substitutes because they are not mentioned in the Complaint and are not susceptible to judicial notice.  (R47-48.) That is incorrect.  The Complaint identifies one of the many substitutes for Acetochlor (*i.e.*, Syngenta's Metolachlor), and all the substitutes identified above and their features are subject to judicial notice.  Fed. R. Evid. 201(b).  They are

3

not subject to reasonable dispute and are capable of accurate and ready determination from sources whose accuracy cannot be reasonably questioned.[3] Contrary to plaintiffs' contention, no "interpretation" is required to determine that the products identified above treat the same crops, for the same weeds/pests, by the same mode of action, at the same site of action, and are from the same chemical family as the alleged AIs. This information is clear on the face of the government-approved labels and scientific literature, and thus is plainly subject to judicial notice. (Exs.1-7.) In view of these substitutes' similarities to the Corteva AIs, plaintiffs are required to plead facts justifying the exclusion of such products. *Bayer*, 813 F. Supp. 2d at 578. Plaintiffs cannot state a claim based on conclusory allegations contradicted by information subject to judicial notice. *See In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 334 (S.D.N.Y. 2007).

B.    Plaintiffs' Justifications for Their Markets are Baseless.

Rather than identify well-pleaded facts supporting their claim that there are no reasonable substitutes for each AI, plaintiffs argue that each AI should be in its own market because Corteva allegedly designed its loyalty programs around them. (R41.) However, the boundaries of a relevant market are defined by the "products that have reasonable interchangeability for the purposes for which they

---

[3] *See Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 592 n.11 (1993) (firmly established theories); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (government websites); *United States v. Cecil*, 836 F.2d 1431, 1452 (4th Cir. 1988) (government reports/statistics); *Metague v. Woodbolt Distr., LLC*, No. 8:20-cv-02186-PX, 2021 WL 2457153, at *2 n.2 (D. Md. June 16, 2021) (labeling guidance/examples on FDA's website).

are produced", *Berlyn Inc. v. The Gazette Newspapers, Inc.*, 73 F. App'x 576, 582 (4th Cir. 2003), not how a company chooses to package discounts, *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438 (3d Cir. 1997) ("[N]o court has defined a relevant product market with reference to the particular contractual restraints of the plaintiff [on a dealer or a franchisee].").

Plaintiffs conclusorily assert that their markets satisfy the hypothetical monopolist test ("HMT"). (R42.) But simply asserting that the HMT is satisfied does not make it so; plaintiffs must plead facts justifying the exclusion of products with substantially similar features. The HMT "facilitates th[e] analysis" of which products are reasonably interchangeable, *FTC v. Whole Foods Market*, 548 F.3d 1028, 1038 (D.C. Cir. 2008); it does not allow plaintiffs to avoid this analysis entirely. *See FTC v. Swedish Match*, 131 F. Supp. 2d 151, 158-61 (D.D.C. 2000) (considering whether products are reasonably interchangeable, and after concluding they are, turning to the HMT).

Moreover, the facts pleaded in the Complaint do not establish that each alleged market satisfies the HMT, which asks whether "a hypothetical monopolist could impose a 'small but significant nontransitory increase in price' ('SSNIP') in the proposed market". *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015). While purporting to show that branded and generic versions of each AI belong in the same market, plaintiffs have not pleaded any facts suggesting why—even if branded and generic versions of each AI are in the same market—they are the *only* products in the market. It does

5

not follow that because branded and generic versions of one AI are within the same product market, all other AIs are excluded. Plaintiffs have not pleaded facts showing that a proper application of the HMT would exclude the alternatives listed above (or any of the other alternatives that Corteva's ordinary-course documents—which Corteva produced to plaintiffs during the years' long investigation preceding the filing of this lawsuit—show it competes with). Rather, the Complaint merely concludes that no other AIs are "close enough substitutes". (¶158.) A conclusory assertion that an alleged market satisfies an HMT is insufficient, especially where known alternatives are not even tested. *See Hicks*, 897 F.3d at 1122.[4]

Plaintiffs further contend the Relevant AIs have "distinct characteristics and uses". (R43.) However, their only supporting allegations are vague, conclusory and ignore the fact that relevant product markets (other than basic commodities) routinely include differentiated products; there are many differentiated but still substitutable products across the economy. *See United States v. Energy Sols., Inc.*, 265 F. Supp. 3d 415, 437 (D. Del. 2017). The law is clear: "[A] product market includes all goods that are reasonable substitutes, even though the products themselves are not entirely the same." *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 25 (D.D.C. 2015); *United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1966) ("We

---

[4] Plaintiffs' reliance on the DOJ's and FTC's Horizontal Merger Guidelines is unavailing. R39 (citing DOJ & FTC, Horizontal Merger Guidelines § 4.1.1 (2010)). The Fourth Circuit has dismissed those guidelines as "no[t] binding authority". *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011).

see no barrier to combining in a single market a number of different products or services where that combination reflects commercial realities."). Yet, plaintiffs' markets exclude products that treat the same weeds, on the same crops, by the same mode of action, at the same site of action and from the same chemical family. Plaintiffs fail to plead any facts to support their contention that simply because generic and branded versions of one AI are within the market, all other AIs are excluded. Their markets "clearly do[] not encompass all interchangeable substitute products" and are legally insufficient. *Linzer Prods. Corp. v. Sekar,* 499 F. Supp. 2d 540, 554 (S.D.N.Y. 2007).

C. Plaintiffs Misstate Defendants' Position, the Complaint and the Law.

Plaintiffs contend their single-AI markets are defensible because "products do not belong in the same market just because they have overlapping uses", and a relevant market need not encompass an "infinite range" of substitutes. (R44-45.) However, those contentions respond to strawmen, not Corteva's arguments. Corteva contends simply that the relevant markets cannot exclude products that treat the same crops, for the same weeds/pests, by the same mode of action, at the same site of action and from the same chemical family—at least without well-pleaded facts supporting a cogent explanation for the exclusion. The Complaint offers no such facts.

Plaintiffs argue that the Complaint includes allegations of the price effects of generic entry and that the governments' past definitions of broader markets are

7

irrelevant because they involved mergers.[5]  (R45-48.)  But the Complaint includes allegations of price effects for only one Corteva AI, Oxamyl (¶140), and although those allegations might indicate generic and branded versions of Oxamyl compete, they do not demonstrate that other products/AIs are not also competitive substitutes for Oxamyl.  And plaintiffs say nothing about the two other AIs. Moreover, the government's past definitions of broader markets cannot be swept under the rug simply because they related to mergers.  One instance, involving different AIs than at issue here, in which the government asserted a narrow market does not change the calculus.  Market definition analysis must include reasonably interchangeable substitutes whether in a merger or a conduct case.  *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).  Plaintiffs have failed to address *any* substitutes, and that failure is dispositive here.

Plaintiffs fail to meaningfully distinguish the authority Corteva cites.  For example, they do not dispute the cases rejecting market allegations where, as here, there was no explanation for the exclusion of relevant products.  And plaintiffs' claim that the cases lacked pricing allegations is beside the point because, as stated, plaintiffs' only pricing allegations do not explain the omitted substitute products.  "A properly-defined product market . . . must include reasonably

---

[5] The FTC defined a broader market for "corn herbicides for pre-emergent control of grasses", which included metolachlor, acetochlor and dimethenamid. Complaint at 3, *In the Matter of Novartis AG, et al.*, Dkt. No. C-3979 (Nov. 1, 2000).  Since then, the AI pyroxasulfone has been registered as a corn herbicide for pre-emergent control of grasses. EPA Reg. No. 63588-92 at 7-8 (2012).

interchangeable substitute products that limit the defendant's ability to sustain an increase in price above competitive levels." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 108 F. Supp. 2d 549, 576 (W.D. Va. 2000). Plaintiffs pay lip service to the principle (R45), but elide altogether their silence concerning the impact of the omitted AIs on Corteva's pricing.

Lastly, plaintiffs own brief admits that their markets "include some number of non-interchangeable goods" (R48-49), an admission that directly contravenes the interchangeability test of market definition. *See*, *e.g., Brown Shoe*, 370 U.S. at 325. Moreover, in arguing their markets are not too broad, plaintiffs acknowledge "goods that share a common component and common features may be grouped in a single market for purposes of antitrust analysis even if they are not functional substitutes" (R4), undercutting their effort to ignore products that are not only functional substitutes but also have the same method of action and hail from the same family.

## II.    PLAINTIFFS' CLAIMS FAIL TO ALLEGE IMPERMISSIBLE EXCLUSIVE DEALING

Even if plaintiffs had adequately pleaded relevant markets (and they have not), their claims should be dismissed because they have not properly pleaded actionable misconduct. Nothing in plaintiffs' opposition shows otherwise.

### A.   The Price-Cost Test Forecloses Plaintiffs' Claims.

Plaintiffs effectively concede that Corteva's programs satisfy the price-cost test. But they incorrectly contend that the test applies only in predatory pricing

9

cases.  In the interest of efficiency, Corteva refers the Court to the legal arguments in Section I.A of Syngenta's Reply to support the conclusion that courts apply the price-cost test to evaluate the legality of exclusive dealing arrangements.  Corteva writes separately here only to address two points that demonstrate that plaintiffs' non-price allegations do not render the test inapplicable.

*First,* plaintiffs seek to avoid the price cost-test by referencing allegations concerning non-price factors.  But plaintiffs' *only* specific non-price allegation, even after a years-long investigation, is that Corteva ███████████████ ████████████████████████████████—over the course of *decades* during which the alleged programs were in place and generics were supposedly excluded.  Plaintiffs do not even connect that alleged conduct to the loyalty programs at issue here.  (R25-26.)  Plaintiffs' non-price allegations contrast starkly with the allegations in the cases plaintiffs cite as support against the price-cost test, which all turn on factors unrelated to price.[6]  Here, there is no way to read plaintiffs' allegations other than that price (rebates) is the *predominant* means of alleged exclusion.

---

[6] *See, e.g., Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 409 (3d Cir. 2016) ("bundling—not the price—served as the primary exclusionary tool"); *In re EpiPen*, 336 F. Supp. 3d 1256, 1288 (D. Kan. 2018) (conduct "beyond pricing itself" including "misleading marketing materials")*; Am. President Lines, LLC v. Matson, Inc.*, No. 21-CV-02040 (CRC), 2022 WL 4598538, at *9 (D.D.C. Sept. 30, 2022) ("threatened potential customers and suppliers"); *UniStrip Techs., LLC v. LifeScan, Inc.*, 153 F. Supp. 3d 728, 735 (E.D. Pa. 2015) (threats).

*Second*, plaintiffs fail to allege that equally efficient rivals cannot match Corteva's prices, nor is there any plausible allegation of anticompetitive bundling. *See Eisai*, 821 F.3d at 409 (holding price predominates when "an equally efficient competitor can match the loyalty price and the firms can compete on the merits"). Thus, price is the predominant means of alleged exclusion for Corteva's programs, and the price-cost test controls.

B. Plaintiffs' Claims Fail Independent of the Price-Cost Test.

Even if the Court does not apply the price-cost test, plaintiffs' claims fail. Plaintiffs' contention that they have stated viable claims by alleging direct and indirect evidence of harm is mistaken, as is their argument that alleging "a loyalty program secured by payments" is sufficient to state a claim. Again, in the interest of efficiency, Corteva references the legal arguments in Section I.B of Syngenta's Reply to support the conclusion that plaintiffs' claims fail to state an antitrust or FTC Act Section 5 claim as a matter of law. Likewise, Corteva references the legal arguments in Section I.C of Syngenta's Reply to show that plaintiffs have failed to plead harm to competition.

Corteva writes separately here only to address plaintiffs' argument that Corteva "coerce[s] distributors into staying loyal by punishing those who do not". (R7.) Plaintiffs point to their allegation that "███████████████████ ████████████████████████████████████████████████ ████████". (*Id.*) As noted above and in Corteva's opening brief, this allegation— lodged after a three-year investigation during which Corteva produced hundreds of

thousands of documents and provided many hours of witness testimony—does not save plaintiffs' claims. Plaintiffs *in no way* connect to Corteva's loyalty programs or the Relevant AIs their sole allegation that, ████████████████████████████ ████████████████████████████████████████████████. This Court should ignore this allegation, and even if not, as explained, it is insufficient to render the price-cost test inapplicable.

## III. THE FTC LACKS AUTHORITY TO BRING THIS SUIT

In addition to its failure to plead a relevant market or actionable misconduct, the FTC's claims should be dismissed as unconstitutional. Where Congress grants executive enforcement power to an independent agency whose commissioners are insulated from removal by the President, that grant of executive power violates separation of powers principles at the core of the Constitution. Nothing in plaintiffs' opposition shows otherwise.

Plaintiffs first contend that Corteva waived the right to challenge the FTC's constitutionality by not doing so in Corteva's initial motion to dismiss, which was mooted by the Complaint. (R50.) However, the sole rule cited, Rule 12(g)(1), is inapposite; it concerns the right to join a motion. The only case plaintiffs cite, *Rowley v. McMillan*, 502 F.2d 1326, 1332-33 (4th Cir. 1974), concerns waiver of the defense of personal jurisdiction, which is not at issue. An Article II defect in the delegation of executive power is not akin to a lack of personal jurisdiction; it is akin to a subject matter defect, which is not waivable. *See Holloway v. Pagan*

12

*River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); Fed. R. Civ. P. 12(b)(3).

Unable to show waiver, plaintiffs contend Corteva asks this Court to "ignore binding Supreme Court precedent". (R2.) Not so. Corteva asks only that the Court apply the Supreme Court's decisions in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), to undisputed facts about the power the FTC exercises today. In *Humphrey's*, the Court held that because the FTC lacked executive power, the statutory removal provision that allows the President to remove FTC commissioners only for "inefficiency, neglect of duty, or malfeasance" is constitutional. 295 U.S. at 622, 628-32. And in *Seila*, the Court held that the FTC's authority to sue "private parties in federal court . . . [is] a quintessentially executive power not considered in *Humphrey's*". *Seila*, 140 S. Ct. at 2200. Read together, the cases teach that Congress's grant of "quintessentially executive power" to commissioners that are not removable at-will by the President is unconstitutional. The FTC now wields its unconstitutional prosecutorial discretion to invalidate procompetitive programs that have existed for decades without challenge by both Republican and Democratic executives.

It is plaintiffs, not Corteva, that ignore Supreme Court precedent:

*First*, plaintiffs claim the *Humphrey's* Court knew that the FTC exercised executive power when it upheld its removal restriction because the FTC Act of 1914 empowers the FTC to enforce cease-and-desist orders and subpoenas in

federal court. (R51.) However, *Humphrey's* definitively stated the FTC could not "in any proper sense be characterized as an arm or an eye of the executive". 295 U.S. at 628. "Rightly or wrongly, the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power'". *Seila*, 140 S. Ct. at 2198.

*Second*, plaintiffs argue that the Supreme Court found the FTC was "no[t] executive" because of its five-commissioner structure composed of nonpartisan experts. (R52.) Although the Supreme Court considered these factors, the crux of the Supreme Court's analysis focused on the overall "character of the office". *Humphrey's*, 295 U.S. at 631. Plaintiffs thus ask this Court to ignore a large part of the Supreme Court's analysis, which focused on the FTC's "duties" and "function". *Id.* at 627-28.

*Third*, plaintiffs suggest that the Supreme Court has rejected Corteva's argument in subsequent cases citing *Humphrey's*. (R51.) But none of plaintiffs' cited cases have evaluated the constitutionality of the modern-day FTC. *See Seila*, 140 S. Ct. at 2198-200 (CFPB); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) (PCAOB); *Morrison v. Olson*, 487 U.S. 654, 686-91 (1988) (independent counsel).

Plaintiffs rely on *FTC v. Roomster Corp.*, No. 22-cv-7389, 2023 WL 1438718 (S.D.N.Y. Feb. 1, 2023). But *Roomster* is inapposite because it held only that an unconstitutional removal restriction does not strip the FTC of the power to sue in federal court. *Id.* at *9. Its holding does not address the constitutionality of Congress's delegation of executive enforcement power to the FTC.

14

Finally, plaintiffs argue that even if Congress overstepped in delegating executive power to FTC commissioners, the FTC's claims should stand because the FTC Act contains a separability section.  (R52-53.)  But where "a constitutional injury arises as a result of two or more statutory provisions operating together . . . the text of [a] severability clause provides no guidance as to *which* provision should be severed".  *Seila*, 140 S. Ct. at 2222-24 (Thomas, J., concurring in part/dissenting in part).  Congress's grant of executive power to the FTC was "an unconstitutional statutory amendment" that was "'void' when enacted".  *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2353 (2020).  Hence, the FTC Act's separability clause cannot save the FTC's claims.

## IV.    PLAINTIFFS' STATE LAW CLAIMS FAIL

Plaintiffs argue their state law claims do not "automatic[ally]" fall with their federal claims because there are differences between them.  (R57.)  While there are differences between the state laws at issue, all require allegations missing from the Complaint, which fails to properly plead antitrust misconduct in a relevant market.  None of the laws at issue precludes a manufacturer from offering above-cost discounts, which, as explained above, is the predominant mechanism of exclusion alleged in the Complaint.

Plaintiffs' enumerated responses to the additional grounds for dismissal are meritless:

1. Texas/Indiana—Damages.  Plaintiffs do not dispute Texas and Indiana cannot recover damages, yet the Complaint suggests they seek exactly that.  (R58.)

15

2. California/Indiana/Iowa—"Unfairness".  Plaintiffs contend that unfair conduct is actionable under California's Unfair Competition Law, Indiana's Deceptive Consumer Sales Act and Iowa's Consumer Frauds Act.  (R59.)  But they elide the absence of allegations sufficient to show that a manufacturer offering above-cost loyalty discounts is unfair.

3. Tennessee/Wisconsin—Effects.  Plaintiffs claim they have adequately pleaded "substantial effects" (R60), but point only to conclusory allegations.  *See Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268-69 (4th Cir. 2022) (rejecting conclusory allegations).

## V.    PLAINTIFFS' TIMELINESS CLAIM IS MISPLACED

Plaintiffs argue that their claims are not time-barred.  (R56.)  Although Corteva believes that at least some of plaintiffs' claims are time-barred, its motion does not seek dismissal on that basis at this time.  Thus, plaintiffs' timeliness contentions are misplaced, and Corteva reserves the right to challenge the timeliness of plaintiffs' claims on summary judgment or at trial, should they survive dismissal.

## CONCLUSION

For the foregoing reasons, Corteva respectfully requests that each of plaintiffs' claims be dismissed.

16

Respectfully submitted this 7th day of March, 2023.

MCGUIREWOODS LLP

/s/ *Mark E. Anderson*
Mark E. Anderson (Bar No. 15764)
manderson@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Phone:  919.755.6600
Fax:  919.755.6699

David R. Marriott*
dmarriott@cravath.com
Margaret T. Segall*
msegall@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Specially appearing under L.R.
  83.1(d)

*Attorneys for Defendant Corteva, Inc.*

17

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this Brief contains 3,957 words,

excluding those portions exempted by Local Rule 7.3(d).

This the 7th day of March, 2023.

MCGUIREWOODS LLP

/s/ *Mark E. Anderson*
Mark E. Anderson (Bar No. 15764)
manderson@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Phone: 919.755.6600
Fax: 919.755.6699

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March, 2023, I caused the foregoing REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT CORTEVA, INC.'S MOTION TO DISMISS, and all attachments thereto, to be filed electronically with the Clerk of Court via the Court's CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF System.

MCGUIREWOODS LLP

/s/ *Mark E. Anderson*
Mark E. Anderson (Bar No. 15764)
manderson@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Phone: 919.755.6600
Fax: 919.755.6699