# Exhibit A

No. 23-60167

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ILLUMINA, INC., AND GRAIL, INC.,
*Petitioners*,

v.

FEDERAL TRADE COMMISSION,
*Respondent.*

PETITION FOR REVIEW OF
AN ORDER OF THE FEDERAL TRADE COMMISSION

*AMICUS* **BRIEF OF INDIANA AND UTAH, ALASKA, ARKANSAS, GEORGIA, IDAHO, IOWA, KENTUCKY, LOUISIANA, NEBRASKA, SOUTH CAROLINA, AND VIRGINIA, IN SUPPORT OF PETITIONERS**

THEODORE E. ROKITA
Attorney General of Indiana

THOMAS M. FISHER
Solicitor General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

*Counsel for* Amici *States*
(Additional Counsel Below)

SEAN D. REYES
Utah Attorney General
State Capitol, Rm. 236
Salt Lake City, UT 84114-0810

JAMES A. BARTA
Deputy Solicitor General

MELINDA R. HOLMES
REBEKAH P. DURHAM
Deputy Attorneys General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF *AMICI* STATES ............................................................ 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ............................................................................................ 4

I.  Under *Jarkesy*, Congress's standardless delegation
    of power allowing FTC to choose whether it will file
    its cases in its own tribunals or in federal court
    *vio*lates Article I ............................................................................ 4

II.  The Commission's Structure Violates Article II ............................. 7

    A.  *Humphrey's Executor* does not shield FTC from
        accountability ........................................................................ 7

        1.  In 1935, FTC held amorphous capabilities to investigate
        and prevent "unfair methods of competition" ................... 8

        2.  The modern FTC exercises executive power beyond the
        President's control ............................................................ 12

    B.  Precedents since *Humphrey's Executor* undermine its
        validity and suggest removal protections violate
        Article II ............................................................................. 15

CONCLUSION ...................................................................................... 21

# TABLE OF AUTHORITIES

**CASES**

*Am. Power & Light Co. v. SEC,*
    329 U.S. 90 (1946) ........................................................ 5

*AMG Cap. Mgmt., LLC v. FTC,*
    141 S. Ct. 1341 (2021) ............................................. 12, 14

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021) ......................................... 16, 17, 18

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) ............................................ 15, 16, 17

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935) ................................................ *passim*

*J.W. Hampton, Jr., & Co. v. United States,*
    276 U.S. 394 (1928) ........................................................ 5

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ................................... *passim*

*Loving v. United States,*
    517 U.S. 748 (1996) ........................................................ 5

*Morrison v. Olson,*
    487 U.S. 654 (1988) ............................................ 15, 16, 17

*Myers v. United States,*
    272 U.S. 52 (1926) ........................................................ 4

*Nat'l Petroleum Refiners Ass'n v. FTC,*
    482 F.2d 672 (D.C. Cir. 1973) ........................................ 13

*Seila Law, LLC, v. CFPB,*
    140 S. Ct. 2183 (2010) ............................................ *passim*

*Wayman v. Southard,*
  23 U.S. (10 Wheat.) 1 (1825)................................................................5

**STATUTES**

5 U.S.C. § 7521 ......................................................................... 19, 20

15 U.S.C. § 18 ....................................................................................... 14

15 U.S.C. § 41 ......................................................................................... 7

15 U.S.C. § 45(b) ................................................................................... 6

15 U.S.C. § 53(b) ................................................................................... 6

15 U.S.C. § 78u-3a ................................................................................ 6

15 U.S.C. §§ 2301–2312 (2012) ........................................................ 13

Federal Trade Commission Act of 1914, Pub. L. No. 63-203,
  38 Stat. 717 ................................................................................... 8, 9

Magnuson-Moss Warranty-Federal Trade Commission Im-
  provement Act, Pub. L. No. 93-637, 88 Stat. 2183 (1975)................. 13

**OTHER AUTHORITIES**

Christine S. Wilson, Commissioner, U.S. Federal Trade
  Commission, *The Neo-Brandeisian Revolution: Unforced
  Errors and the Diminution of the FTC* (November 9, 2021) .............. 20

Crosby et al., *Early Detection of Cancer*, 375 SCIENCE 1244
  (2022)................................................................................................. 1

Daniel A. Crane, *Debunking Humphrey's Executor*, 83 GEO.
  WASH. L. REV. 1835 (2015)...................................................... 10, 11, 15

*Dissenting Statement of Commissioners Christine S. Wilson
  and Noah Joshua Phillips Regarding the Commission
  Statement on the Adoption of Revised Section 18 Rulemak-
  ing Procedures,* Federal Trade Commission (July 9, 2021). .............. 12

*Guide to Antitrust Laws: The Enforcers*,
   FEDERAL TRADE COMMISSION, https://www.ftc.gov/advice-
   guidance/competition-guidance/guide-antitrust-laws/en-
   forcers ............................................................................... 12, 13

THE FEDERALIST NO. 51 (James Madison) (New American Li-
   brary ed., 1961) ........................................................................ 1

JUSTICE & FED. TRADE COMM'N, *Vertical Merger Guidelines*
   (June 30, 2020) ....................................................................... 13

Steven G. Calabresi & Christopher S. Yoo, *The Unitary Exec-
   utive in Historical Perspective*, 31 ADMIN. & REGUL. L.
   NEWS 5 (2005) ........................................................................ 10

U.S. Const. Article I ....................................................................... 4

U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, *Horizontal
   Merger Guidelines* (Aug. 19, 2010) ...................................... 13

## INTEREST OF *AMICI* STATES

The States of Indiana and Utah, Alaska, Arkansas, Georgia, Idaho, Iowa, Kentucky, Louisiana, Nebraska, South Carolina, and Virginia respectfully submit this brief as *amici curiae* in support of Petitioners.

The Federal Trade Commission's decision to block the merger of Illumina, Inc., and Grail, Inc.—and thus delay novel, lifesaving cancer screening technology from entering the market—arises from an unconstitutional delegation of power to an agency having no political accountability. Unaccountable federal agency power undermines liberty, and overzealous, unfair agency enforcement impedes technological advancements benefitting citizens' wellbeing. As co-equal sovereigns charged with providing "double security" for individual liberty, THE FEDERALIST NO. 51, at 323 (James Madison) (New American Library ed., 1961), *amici* States have strong interests in preserving separation of powers and preventing federal agency overreach.

Moreover, early detection cancer screening technologies could save the lives of countless citizens. *See generally* Crosby et al., *Early Detection of Cancer*, 375 SCIENCE 1244 (2022). *Amici* States, who administer public healthcare programs, are interested in avoiding unjustified delay in

bringing to market breakthrough products that can detect cancer before it reaches more serious stages. This Court should vacate the Final Order and allow the Illumina-Grail merger to proceed.

## SUMMARY OF ARGUMENT

Six years ago, Illumina, a large life sciences company with expansive manufacturing and distribution capacity, spun off its subsidiary Grail so that it could independently research and develop promising early-detection cancer screening technology. Not long after, Grail announced Galleri, a test that can screen for more than fifty types of cancer in asymptomatic patients from one blood draw, but, realizing it lacked the manufacturing and distribution capacity to achieve wide-scale commercialization, sought assistance from Illumina. It ultimately agreed to be reacquired by Illumina to help bring Galleri to the market. The merger would streamline and reduce costs of production and distribution, while Grail management would retain full control of the company.

Now, however, the Federal Trade Commission, in an extraordinary move, has decided to blow up the deal and prevent Illumina from assisting Grail with bringing Galleri to the broader market. Even after losing its case in front of an administrative law judge (ALJ), the

2

Commission persisted in its agenda. To win, FTC complaint counsel brought the case to the friendliest tribunal possible—the FTC Board of Commissioners—which ordered divestiture of the two companies.

This case demonstrates alarming results of the excessive free rein enjoyed by FTC, an agency whose power has grown significantly since its inception in 1914. Congress has impermissibly delegated to FTC discretion to pick its forum—an Article III court or its own agency adjudicator—which mirrors the delegation to the Securities and Exchange Commission this Court already held unconstitutional in *Jarkesy v. SEC*, 34 F.4th 446, 461–63 (5th Cir. 2022). Congress's standardless forum-choice delegation to FTC must go the same way.

The structure of FTC itself is even more fundamentally problematic. FTC is an executive agency, so the Constitution requires that it be directly accountable to the President, meaning that its members must be subject to removal by him without cause. Instead, FTC is headed by a board of five commissioners who, being insulated from removal, can carry out their own policies and economic agendas without political accountability. Although the Supreme Court concluded in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), that FTC did

3

not exercise executive power when all it could do was advise Congress, subsequent enactments granting FTC enforcement power have made clear that it now executes laws that bind individual citizens.

This case highlights the harm caused by this structure: an agency committed to pursuing its own agenda has wielded significant federal power to impede the progress of a company seeking to develop life-saving cancer screening tests. The Court should rein in the "headless fourth branch" by eliminating the unconstitutional statutory haven that shields FTC Commissioners from political accountability.

## ARGUMENT

### I. Under *Jarkesy*, Congress's standardless delegation of power allowing FTC to choose whether it will file its cases in its own tribunals or in federal court violates Article I

"If there is a principle in our Constitution, indeed in any free Constitution more sacred than another, it is that which separates the legislative, executive and judicial powers." *Myers v. United States*, 272 U.S. 52, 116 (1926) (quoting 1 ANNALS OF CONGRESS, 581). To that end, Article I provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I. The Vesting Clause prohibits Congress from delegating its lawmaking responsibilities, but here Congress has granted FTC unfettered discretion to choose whether

4

to bring enforcement actions in its own administrative tribunals or in federal district court.

Article I grants legislative authority to Congress alone. Congress may not "delegate . . . powers which are strictly and exclusively legislative." *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42 (1825). Only by providing "an intelligible principle" binding executive discretion can Congress avoid "a forbidden delegation of legislative power." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928). In that regard, Congress must "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946); *see also Loving v. United States*, 517 U.S. 748, 771 (1996) (collecting cases where the Court has "struck down . . . delegations for lack of an intelligible principle.").

Applying the "intelligible principle" standard, this Court in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), held that agency enforcement proceedings were unconstitutional because the SEC's discretion to "bring an action in an agency tribunal instead of an Article III court" was an impermissible delegation of legislative power. *Id.* at 461. Critically, the

5

Court observed that the decision over which forum will host agency adjudication—fundamentally a determination of "which defendants should receive *certain legal processes*"—is a legislative, not executive, power. *Id.* at 462. From that premise, it concluded that Congress impermissibly afforded SEC "absolute discretion to decide whether to bring securities fraud enforcement actions within the agency instead of in an Article III court." *Id.*

Likewise, here, Congress has broadly empowered FTC to pick its forum as between its own administrative law judge and an Article III court. 15 U.S.C. §§ 45(b), 53(b). There is no daylight between Congress's delegation to the SEC on choice of forum struck down in *Jarkesy* and its delegation to FTC here. The Congressional grant of forum-selection discretion to the two agencies is substantively identical in its language. *Compare* 15 U.S.C. § 78u-3a (authorizing the SEC to bring administrative proceedings against "any person [who] is violating, has violated, or is about to violate" securities law), *with* 15 U.S.C. § 45(b) (authorizing the FTC to bring administrative proceedings against "any such person, partnership, or corporation [that] has been or is using any unfair method of competition").

6

Accordingly, under *Jarkesy*, the Court should vacate the Commission's decision because it arose from an unconstitutional delegation of legislative power. 34 F.4th at 462–63.

## II.   The Commission's Structure Violates Article II

FTC's "independent" structure violates Article II by shielding its commissioners, who manifestly exercise executive power, from removal by the President except for cause. 15 U.S.C. § 41 (permitting removal only for "inefficiency, neglect of duty, or malfeasance in office"). Although the Supreme Court once concluded that the President's "illimitable power of removal" did not extend to FTC as it existed in 1935, *Humphrey's Executor v. United States*, 295 U.S. 602, 629–30 (1935), subsequent additions to FTC's authority—as well as more recent doctrinal developments—undermine that decision's continued vitality.

### A.   *Humphrey's Executor* does not shield FTC from accountability

In *Humphrey's Executor*, the Supreme Court concluded that Article II did not require that the President enjoy plenary removal authority over FTC Commissioners because the agency was "wholly disconnected from the executive department" and "was created by Congress . . . as an agency of the legislative and judicial departments." 295 U.S. at 629–30. Removal

7

protections were not an "unconstitutional interference with the executive power of the President," the Court said, because FTC Commissioners were "officer[s] who occup[y] no place in the executive department and who exercise[] no part of the executive power vested by the Constitution in the President." *Id.* at 628. That may or may not have been an accurate description of the FTC in 1935, but it certainly is not today.

### 1. In 1935, FTC held amorphous capabilities to investigate and prevent "unfair methods of competition"

In the Federal Trade Commission Act of 1914, Congress "declared unlawful" "unfair methods of competition in commerce." Most significant, the Act "created and established . . . the Federal Trade Commission," which was "empowered and directed" "to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in commerce." Federal Trade Commission Act of 1914, Pub. L. No. 63-203, 38 Stat. 717, 717–19. The Act directed the Commission to carry out its mandate by "issu[ing] . . . a complaint stating its charges" of unfair methods of competition; conduct[ing] a "hearing" on those charges; and issu[ing] a "report" or "order" afterward. *Id.* at 719–20. The Act also granted to the Commission broad investigatory and equitable powers,

including to "gather and compile information" and "investigate" businesses and their practices on its own initiative or "[u]pon the direction of the President or either House of Congress"; and to "subpoena" witnesses and documents related to its investigations or proceedings. *Id.* at 720–23. The Act further empowered the Commission "[f]rom time to time to classify corporations and to make rules and regulations for the purpose of carrying out the provisions of this Act." *Id.*

The *Humphrey's* Court examined these various powers granted to FTC and concluded that it "c[ould not] in any proper sense be characterized as an arm or an eye of the executive." *Humphrey's Executor*, 295 U.S. at 628. The Court viewed FTC's powers as "quasi legislative" and "quasi judicial," *id.* at 624, namely "filling in and administering the details embodied by th[e] general standard" set out in the FTC Act, "making investigations and reports thereon for the information of Congress," and operating "as a master in chancery under rules prescribed by the court." *Id.* at 628. Accordingly, the Court discerned no Article II violation in the Act's protection of FTC Commissioners from presidential removal, as their functions were not exercises of "executive power in the constitutional sense." *Id.* at 628, 632.

9

Modern scholarship disputes the *Humphrey's* Court's claim that the FTC in 1935 held "no part of the executive power." According to Professors Steven Calabresi and Christopher Yoo, at its inception, "the Federal Trade Commission (FTC) Act reflected [President] Wilson's insistence that the FTC was 'an executive agency charged with executive and administrative duties' by specifically authorizing the President to direct the FTC's investigatory activities." Steven G. Calabresi & Christopher S. Yoo, *The Unitary Executive in Historical Perspective*, 31 ADMIN. & REGUL. L. NEWS 5, 6 (2005). Professor Daniel Crane has asserted "the Court's quartet of assumptions in *Humphrey's Executor* were . . . largely incorrect—or, at least, fail to capture the dominant character of the FTC over time." Daniel A. Crane, *Debunking Humphrey's Executor*, 83 GEO. WASH. L. REV. 1835, 1838 (2015).

For example, FTC's authority to issue substantive rules, a so-called "quasi-legislative" function, was unsettled at the time of *Humphrey's Executor*, as it was scarcely—if ever—used in FTC's early days and was not clarified until 1973 in the Magnuson-Moss Act. Crane, *supra*, at 1860–63. As for its rulemaking activity in the antitrust realm—the relevant

context in *Humphrey's Executor*—"the quasi-legislative claim has no historical support at all." *Id.* at 1863.

What is more, the Supreme Court itself recently acknowledged that "[p]erhaps the FTC possessed broader rulemaking, enforcement, and adjudicatory powers than the *Humphrey's* Court appreciated." *Seila Law, LLC, v. CFPB*, 140 S. Ct. 2183, 2200 n.4 (2010) (adding "[p]erhaps not"). But as it explains, "[e]ither way, what matters is the set of powers the Court considered as the basis for its decision." *Id.* The "present FTC" is "hardly a mere legislative or judicial aid," even if it was appropriately characterized as such in 1935. *Id.* at 2200 & n.4.

In short, two observations about FTC at the time *Humphrey's Executor* was decided are worthwhile: (1) its "powers," such as they were, lacked any form comparable to traditional executive powers, and (2) still, the Supreme Court in *Humphrey's Executor* misunderstood what FTC was doing. Both points undermine the ongoing vitality of *Humphrey's Executor*. Regardless, whatever FTC's powers were in 1935, its powers and practices today have expanded dramatically to encompass traditional executive authority that, under the Constitution, must be accountable to the President.

## 2. The modern FTC exercises executive power beyond the President's control

Congress amended the Federal Trade Commission Act in 1973, adding court-ordered permanent injunctions and civil penalties as remedies available for the Commission to seek against violators. *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1346 (2021). These changes, together with the Magnuson-Moss Act's addition of rulemaking powers in 1975, sent FTC into a "flurry of rulemaking activity that sought to regulate broad swaths of the economy in the wake of Magnuson-Moss." *Dissenting Statement of Commissioners Christine S. Wilson and Noah Joshua Phillips Regarding the Commission Statement on the Adoption of Revised Section 18 Rulemaking Procedures* 2, Federal Trade Commission (July 9, 2021).

Fifty years later, FTC is indistinguishable from any other executive branch agency either in its statutory mandate or in its practical execution of that mandate. The Commission itself made the point clear in its opinion below, asserting that it exercises "fundamentally an executive—not legislative—function" when it selects the forum to bring an action. Op. of the Commission at 88 (March 31, 2023).

FTC enforces federal antitrust laws through investigations, consent decrees, and administrative complaints. *Guide to Antitrust Laws: The*

12

*Enforcers*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/advice-guidance/competition-guidance/guide-antitrust-laws/enforcers.    Together with the Department of Justice, it issues vertical and horizontal merger guidelines that flesh out the two agencies' enforcement policies in a manner analogous to agency rulemaking. *See* U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, *Horizontal Merger Guidelines* (Aug. 19, 2010); U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, *Vertical Merger Guidelines* (June 30, 2020).

Further, FTC can promulgate substantive rules of business conduct under the FTC Act, and it has rulemaking authority under the Magnuson-Moss Act regarding its consumer protection duties. *See Nat'l Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672, 673 (D.C. Cir. 1973) (citing 15 U.S.C. 46(g)); Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, Pub. L. No. 93-637, 88 Stat. 2183 (1975) (codified as amended at 15 U.S.C. §§ 2301–2312 (2012)).

FTC is tasked with enforcement of the Federal Trade Commission Act and the Clayton Act, and it is authorized to commence administrative proceedings against private actors, issue cease and desist orders, obtain permanent injunctions and seek civil penalties against violators. *See*

13

*AMG Cap. Mgmt.*, 141 S. Ct. at 1346. FTC's most direct analog is to the DOJ's Antitrust Division, with which it shares enforcement authority on civil antitrust law. *See* 15 U.S.C. § 18.

These responsibilities point to an agency that broadly exercises executive power, comparable to, for example, the Consumer Financial Protection Bureau, which the Supreme Court described as "vested with significant executive power" because it possessed "significant administrative authority," including "the power to seek daunting monetary penalties against private parties . . . in federal court." *Seila Law,* 140 S. Ct. at 2200–01. Specifically, that "significant administrative authority" consisted of the ability to "issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties." *Id.* at 2203–04. FTC is the same.

FTC is no longer limited to "making investigations and reports thereon for the information of Congress," *Humphrey's Executor*, 295 U.S. at 628. Scholars and courts alike have observed that "the FTC is very far from the quartet of qualities announced in *Humphrey's Executor*"; today, its "predominant character is executive, with an increasing amount of the Commission's effort dedicated to consent decrees and federal district

14

court enforcement." Crane, *supra*, at 1869. Accordingly, the reasoning of *Humphrey's Executor* cannot extend to the modern FTC.

### B.  Precedents since *Humphrey's Executor* undermine its validity and suggest removal protections violate Article II

More recent Supreme Court decisions have diverged significantly from the *Humphrey's Executor*'s "quasi-legislative" and "quasi-judicial" analysis. They recognize that, because Article II places both executive power and executive accountability solely with the President, the President must possess "the authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010); *see also Morrison v. Olson*, 487 U.S. 654, 705 (1988) (Scalia, J., dissenting) ("'The executive Power shall be vested in a President of the United States.' . . . [T]his does not mean *some of* the executive power, but *all of* the executive power.").

At the heart of the separation of powers doctrine is accountability: "The purpose of the separation and equilibration of powers in general, and of the unitary Executive in particular, was not merely to assure effective government but to preserve individual freedom." *Morrison*, 487 U.S. at 727 (Scalia, J., dissenting). Preventing the President from firing

15

agency official without "cause" limits the President's ability to control the actions of officials exercising the executive power vested solely in him. Restrictions on removal also threaten the balance of separated powers of government and, by implication, individual liberty. *Id.*

As Congress has created more independent agencies to add to the "vast and varied federal bureaucracy," the danger that authority "may slip from the Executive's control, and thus from that of the people" has become real. *Free Enter. Fund*, 561 U.S. at 499. "[B]ecause the President, unlike agency officials, is elected, this control is essential to subject Executive Branch actions to a degree of electoral accountability." *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021).

*Humphrey's Executor* and *Morrison*, which permitted "good cause" removal protections for independent counsel because the protections did not "impermissibly burden[] the President's power to control or supervise" "inferior officers," 487 U.S. at 691–92, represented "the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 140 S. Ct. at 2199. Since *Morrison*, the Supreme Court has not endorsed any additional restrictions on

16

the executive removal power—and indeed has declared that "an independent agency that wields significant executive power and is run by a single individual who cannot be removed by the President . . . violates the separation of powers." *Id.* at 2192.

Recently, the Supreme Court has recognized a robust removal power and created distance from *Humphreys' Executor* and *Morrison*. In *Free Enterprise Fund*, the Court determined that members of the Public Company Accounting Oversight Board, which operates under the Securities and Exchange Commission, exercised executive power in their statutory charge to enforce the Sarbanes-Oxley Act, securities laws and rules, and professional accounting standards. 561 U.S. at 485, 498. It held that insulating SEC board members behind two layers of removal protections—requiring an SEC Commission finding of "cause" for a board member's removal, and the Commissioners' own for-cause protection from removal by the President, *id.* at 486–87—rendered them unconstitutionally unaccountable in their exercise of executive power. *Id.* at 498, 513–14.

And in *Collins v. Yellen*, the Court similarly struck down a for-cause requirement to remove the single-director head of the Federal Housing

Finance Agency. 141 S. Ct. at 1771, 1784. In so doing, it expressly rejected arguments that removal restrictions are constitutional if they are "modest" or if the executive agency in question is relatively small and "administers only 1" statute. *Id.* at 1784–87.

These cases illustrate two critical decision-making dynamics: First, the Court has refused to extend *Humphrey's Executor* and generally has been bolstering executive removal power; second, the Court has determined removal protections for agencies exercising executive power trigger constitutional concern, even where those exercises are of a smaller degree.

As for FTC, the Supreme Court has acknowledged that its 1935 "conclusion that the FTC did not exercise executive power has not withstood the test of time." *Seila Law*, 140 S. Ct. at 2198 n.2. To be sure, the Court modestly suggested that perhaps *Humphrey's Executor* can be salvaged by reference to FTC's multi-member directorship (as distinct from agencies with a single director). *Id.* at 2204 ("[T]he agency's single-Director structure means the President will not have the opportunity to appoint any other leaders—such as a chair or fellow members of a Commission or Board—who can serve as a check on the Director's authority and

18

help bring the agency in line . . . .”). But the existence of multiple board members directing an agency does not make that agency any more accountable to the people; it only divides power among multiple unaccountable peers.

Exacerbating the problem, not only are FTC Commissioners protected from removal (except for cause), but another layer of removal protection shields FTC ALJs, who may only be removed “for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board.” 5 U.S.C. § 7521(a). *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), is relevant on this point as well. There, this Court held that the double layer of for-cause protections that shielded SEC ALJs from the presidential removal power was unconstitutional. *Id.* at 465. “SEC ALJs perform substantial executive functions,” as they “exercise considerable power over administrative case records by controlling the presentation and admission of evidence; they may punish contemptuous conduct; and often their decisions are final and binding.” *Id.* at 463–65. Thus, “[t]he President . . . must have sufficient control over the performance of their functions, and, by implication, he must be able to choose who holds the positions.” *Id.* at 463.

19

FTC ALJs perform similar "substantial executive functions," and the same statute that had protected SEC ALJs also applies to FTC ALJs, *see* 5 U.S.C. § 7521, casting serious doubt on whether any agency that employs ALJs pursuant to 5 U.S.C. § 7521 may also protect its directors with removal restrictions.

***

This case underscores the dangers of an unaccountable FTC taking significant, unguided actions under the banner of its mandate. Without having to answer to the President or the American people, the FTC acts on its own agenda. In recent years, Commissioner Christine Wilson expressed deep concern about "the FTC's disregard for statutory language, actual evidence of harm, and the Constitution." Christine S. Wilson, Commissioner, U.S. Federal Trade Commission, *The Neo-Brandeisian Revolution: Unforced Errors and the Diminution of the FTC* (November 9, 2021). A return to first principles and rigorous accountability for so-called "independent agencies" is needed to rein in federal overreach, preserve the separation of powers, and allow the free market to flourish for the benefit of both businesses and the American people.

20

# CONCLUSION

The Court should vacate the decision of the FTC Commissioners.

Respectfully submitted,

SEAN D. REYES
Utah Attorney General
State Capitol, Rm. 236
Salt Lake City, UT 84114-0810

THEODORE E. ROKITA
Attorney General of Indiana

<u>/s/ Thomas M. Fisher</u>
THOMAS M. FISHER
Solicitor General

JAMES A. BARTA
Deputy Solicitor General

MELINDA R. HOLMES
REBEKAH P. DURHAM
Deputy Attorneys General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

# ADDITIONAL COUNSEL

TREG TAYLOR
Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL LABRADOR
Attorney General
State of Idaho

BRENNA BIRD
Attorney General
State of Iowa

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

JEFF LANDRY
Attorney General
State of Louisiana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

ALAN WILSON
Attorney General
State of South Carolina

JASON MIYARES
Attorney General
State of Virginia

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Fed. R. App. P. 27(d)(2)(A) and 29(a)(5) because it contains 3,841 words as measured by Microsoft Word software. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

Dated: June 12, 2023            /s/ Thomas M. Fisher
                                Thomas M. Fisher

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in this case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated:  June 12, 2023          /s/ Thomas M. Fisher
                               Thomas M. Fisher