# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC., <br><br> Defendants. | Case No. 1:22-cv-00828-TDS-JEP <br><br><br> **PLAINTIFFS' RULE 26(F) REPORT** |

Plaintiffs the Federal Trade Commission ("FTC") and states of California, Colorado, Illinois, Indiana, Iowa, Minnesota, Nebraska, Oregon, Tennessee, Texas, Washington, and Wisconsin, acting by and through their respective Attorneys General, have met and conferred with Defendants Corteva, Inc. ("Corteva") and Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC (collectively, "Syngenta," and together with the Plaintiffs and Corteva, the "Parties") to address the topics covered by Federal Rule of Civil Procedure 26 and Local Civil Rule 16. Because the Parties have been unable to reach agreement on a discovery plan, the Parties are submitting separate Rule 26(f) Reports pursuant to Local Civil Rules 16.2 and 16.3. Plaintiffs hereby submit this Rule 26(f) Report.

## Preliminary Statement Regarding Coordination

The Parties have reached agreement on a number of topics. But the overarching area of dispute is whether, and to what extent, the case schedule and discovery plan in this action should be tied to that in *In re Crop Protection Products Loyalty Program Antitrust Litigation*, 1:23-md-3062-TDS-JEP (M.D.N.C.) (the "MDL Action"). Throughout the Rule 16 conferences and in the drafting of these separate Rule 26(f) reports, Defendants have insisted that Plaintiffs agree to a bevy of coordination procedures that are both premature and inappropriate for this case. Plaintiffs understand that Defendants may even file their Rule 26(f) report simultaneously in this case and the MDL Action—even though the MDL motion to dismiss briefing is still in process and the

2

Court has not set any scheduling conference or requested any Rule 26(f) reports in that case.

As Plaintiffs have repeatedly stated to the Court and Defendants, Plaintiffs do not oppose appropriate coordination of discovery with the MDL Action, so long as such coordination does not unreasonably impede the progress of this case. *See, e.g.*, Non-Party Government Plaintiffs' Notice Regarding Coordination of Discovery, No. 1:23-md-3062-TDS-JEP (March 23, 2023) (MDL Action Doc. 19). The Court has indicated it agrees that this action is separate from, and should remain separate from, the MDL Action. *See* Transcript of Status Conference at 27:3–7, 1:23-md-3062-TDS-JEP (Apr. 6, 2023) (MDL Action) ("And there will need to be some necessary coordination action between the cases, but they are separate cases. I intend to treat them separately. So the government's case will proceed on its own schedule, at least that's my intention.").

Defendants' attempts to shoehorn coordination proposals into this Rule 26(f) process is procedurally inappropriate, and as discussed below, their specific proposals are wholly unreasonable and prejudicial to the Plaintiffs.[1] This action has not been and should not be consolidated with the MDL Action. Although reasonable coordination with the MDL Action can and should be addressed for the convenience of witnesses and the Court, and in furtherance of the goals of judicial economy and efficiency, it is premature

---

[1] For example, under the guise of coordination, Defendants have proposed that this action and the MDL Action be effectively consolidated for discovery purposes: that Plaintiffs in this action must share discovery limits with plaintiffs in the MDL Action (the "Private Plaintiffs") and adhere to a common fact discovery schedule.

3

to do so in this Rule 26(f) report, which applies to and is filed in this action only. (*See* Notice of Initial Pretrial Conference Hearing, Doc. 171.) Rather, Plaintiffs propose to negotiate a separate, joint proposed coordination order to provide for the production of discovery materials across actions and establish protocols for coordinating the depositions of witnesses noticed in both actions. Plaintiffs have conveyed these views to Defendants. For example, Plaintiffs have suggested that a Coordination Order might include provisions allowing for the coordination of written discovery, the production of documents across both related actions, notice requirements and opportunities for non-noticing counsel to ask questions at depositions, provisions allowing deposition testimony to be used across actions, and a process for determining time allocations for depositions noticed by multiple parties, as has been done in other cases. *See* Maltas Decl. Ex. 1 (Discovery Coordination Order (Doc. 207) at 3–5, *FTC v. Qualcomm Inc.*, No. 17-cv-00220 (N.D. Cal. Sept. 22, 2017) ("*Qualcomm* Order")); Maltas Decl. Ex. 2 (Order Regarding Coordination of Discovery (Doc. 251) at 7–10, *United States v. Google LLC*, No. 23-cv-00108 (E.D. Va. June 5, 2023) ("*Google* Order")).

Importantly, these specific coordination procedures need not be put in place prior to commencement of discovery in this government enforcement action. *See* Maltas Decl. Ex. 1 (*Qualcomm* Order) (providing for coordination between government and MDL actions months after discovery in government case had commenced); Maltas Decl. Ex. 2 (*Google* Order) (entering coordination order after discovery commenced). Plaintiffs are willing and ready to begin negotiating such provisions.

4

1. **Rule 26(f) Meetings**. Pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.1(b), the Parties held telephonic Rule 26(f) meetings on February 21, 2024, March 12, 2024, April 3, 2024, April 4, 2024, April 11, 2024, and April 12, 2024. Participants in some or all of those conversations included Joseph Baker, Wesley Carson, Elizabeth Gillen, Michael Turner, Philip Kehl, and Allyson Maltas for the FTC; Stephen Smerek for the State of California; Conor May and Aric Smith for the State of Colorado; Paul Harper for the State of Illinois; Christi Foust for the State of Indiana; Katherine Moerke for the State of Minnesota; Colin Snider for the State of Nebraska; Tim Smith for the State of Oregon; Tate Ball and Hamilton Millwee for the State of Tennessee; William Shieber and Luke Woodward for the State of Texas; Laura McFarlane for the State of Wisconsin; Lumi Nodit for the State of Washington; Mark Anderson, David Marriott, Benjamin Bauer, and Maximilian Auerbach for Defendant Corteva; and Patrick Kane, Paul Mishkin, James McClammy, Benjamin Miller, and David Toscano for Defendant Syngenta. Representatives for parties in other, related cases, including the Private Plaintiffs and representatives of the State of Arkansas, also attended various calls.

2. **Discovery Plan**. Plaintiffs propose to the Court the following discovery plan. As indicated below, Plaintiffs understand the Parties to have reached agreement on many matters, but several remain in dispute:

   a. <u>Discovery Commencement</u>. The Parties have agreed that discovery will commence on the date of the Court's entry of an initial scheduling order.

5

b.     Document Preservation and Retention. The Parties have discussed issues relating to document preservation and retention. Plaintiffs requested information regarding Defendants' systems and/or protocols in place for document retention with respect to collaborative and ephemeral messaging. Plaintiffs also requested that Defendants confirm that they have disabled automatic deletion of documents by messaging programs, and that employees with responsive documents have ensured that personal devices used for business are retaining communications.

c.     Initial Disclosures. The Parties have agreed to exchange Initial Disclosures pursuant to Rule 26(a) on April 19, 2024.

d.     Topics on Which Discovery is Needed. Plaintiffs anticipate the subjects of discovery will include factual and expert discovery regarding the respective claims and defenses of the parties, including: (1) the relevant antitrust markets, competitive conditions in those markets, and Defendants' power in those markets; (2) Defendants' agreements with distributors, including loyalty-program agreements; (3) Defendants' agreements with each other, including supply agreements; (4) Defendants' efforts to police and ensure compliance with loyalty agreements; (5) the alleged anticompetitive and procompetitive effects, including any harm to competitors and consumers, of the conduct alleged; (6) the impact of Defendants' conduct on generic manufacturers' entry, expansion, and access to efficient distribution in the relevant markets; and (7) appropriate remedies and relief.

e.     <u>Case Management Track</u>. The Parties have agreed that the appropriate track (with stipulated modification by the Parties as set out below) is that designated in LR 26.1(a) as Exceptional, although the Parties propose to further extend discovery limitations in certain instances as reflected below and in the attached proposed schedule (found at Exhibit A).

      i.     <u>Depositions.</u>

The Parties have agreed to the following:

      a.  Plaintiffs may take up to 30 depositions of third-party witnesses, not including former employees of Defendants.[2]

      b.  Defendants may take up to 30 depositions of third-party witnesses.

      c.  The Parties may further depose witnesses whose testimony was taken in investigational hearings during the FTC's pre-complaint investigation, with any such depositions to count against the number of depositions described above and to be ordered by the Court (see below).

      d.  The Parties will negotiate a deposition protocol that will govern further deposition logistics and coordination, including deposition time limits and depositions of the same individual being noticed by multiple parties in this action and/or the MDL Action, and including coordination of

---

[2] Defendants propose that Plaintiffs' deposition limits be shared with plaintiffs in the MDL Action. Plaintiffs object to this for the reasons stated below in Part 5(a).

scheduling and allocation of time between multiple parties noticing the
same deposition.

e.  Depositions of the Parties' designated expert witnesses do not count
against the above deposition limits.

**Disputed Issue No. 1: Number of Defendant Depositions**

The Parties disagree as to how many depositions Plaintiffs may take of Corteva
and Syngenta witnesses. Plaintiffs propose that they be permitted to take 20 fact
depositions of each Defendant,[3] while Defendants propose that the Court limit Plaintiffs
to 10 depositions per Defendant.[4]

**Plaintiffs' Position:** Plaintiffs' proposal is necessary to allow Plaintiffs the
opportunity to develop evidence in this significant antitrust enforcement action and is
consistent with (indeed more conservative than) deposition limits in other government
antitrust enforcement actions. *See, e.g.*, Maltas Decl. Ex. 3 (Order Regarding Deposition
Limits (Doc. 166) at 1, *FTC v. Amazon.com, Inc.*, No. 23-cv-01495 (W.D. Wash. Feb. 20,
2024)) (permitting 80 party and 70 non-party depositions per side); Maltas Decl. Ex. 4
(Joint Scheduling Order (Doc. 103) at 4, *FTC v. Meta Platforms, Inc.*, No. 20-cv-03590
(D.D.C. Mar. 3, 2022)) (840 deposition hours per side); Maltas Decl. Ex. 1 (*Qualcomm*
Order at 4) (no limit on depositions); Maltas Decl. Ex. 5 (Case-Management Order (Doc.

---

[3] Plaintiffs reserve the right to seek additional depositions based on Defendants' initial
disclosures.
[4] Defendants propose that Plaintiffs' deposition limits be shared with plaintiffs in the
MDL Action. Plaintiffs object to this for the reasons stated below in Part 5(a).

8

177) at 1, *United States v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14155 (E.D. Mich. May 29, 2012)) (170 depositions per side).

Plaintiffs' proposal is reasonable and tailored to ensure that they can depose necessary witnesses from two different Defendants related to the implementation and maintenance by each Defendant of loyalty contracts with multiple major distributors over decades and exclusionary contracts entered directly between the defendants. And at least six separate active-ingredient markets are implicated. Plaintiffs expect to seek testimony from employees in a variety of roles within each Defendant, including account managers responsible for relationships with distributors; product marketing leads and managers responsible for the six active ingredients at issue; marketing personnel responsible for product lifecycle management and post-patent strategy; field sales managers responsible for implementation of loyalty thresholds and allocation of supply; finance personnel responsible for loyalty program calculations and payments; and senior executives responsible for business planning, decision-making, and negotiation of contracts between the Defendants. For each or any of the above roles, the long duration of Defendants' conduct and the time that has elapsed since the initial filing of the complaint may necessitate depositions of multiple individuals who held the relevant role at different points in time.

Defendants may argue that the fact that Plaintiffs conducted a pre-complaint investigation entitles Plaintiffs to fewer depositions. That argument would be wrong. While much of the pre-complaint investigation is of course relevant to and can be used as

9

evidence in this litigation, Plaintiffs cannot be limited to or by that prior work. Pre-complaint investigations often cover a broader or different range of conduct, in less depth, than litigation discovery.

Courts have long recognized that government investigations serve a purpose different from post-complaint discovery and cannot serve as a substitute for litigation discovery. *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("There is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case." (cleaned up)); *Abrams v. U.S. Dep't of Treasury*, 458 F. Supp. 2d 304, 308–09 (N.D. Tex. 2006) ("The purpose of an administrative investigation 'is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the Administrator's judgment, the facts thus discovered should justify doing so.'" (quoting *Genuine Parts Co. v. FTC*, 445 F.2d 1382, 1388 (5th Cir. 1971)). Pre-complaint discovery is "under no obligation to propound a narrowly focused theory of a possible future case," *CFTC v. Ekasala*, 62 F. Supp. 3d 88, 93 (D.D.C. 2014) (quotation omitted), while civil litigation discovery is "designed to define and clarify the issues" relevant to the causes of action. *United States v. Duke Energy Corp.*, No. 1:00-cv-1262, 2012 WL 1565228, at *7–8 (M.D.N.C. April 30, 2012) (quotation omitted).

Plaintiffs conducted pre-complaint discovery, including by taking investigational hearings, to determine whether to bring an enforcement action and on what basis. Now Plaintiffs have a different burden, and the depositions will elicit testimony to help

10

establish at trial the specific facts pled in the Complaint. In light of these considerations, and by comparison to the above antitrust case precedents, Plaintiffs' proposed limit of 20 depositions per Defendant is more than reasonable.

### Disputed Issue No. 2: Plaintiff Depositions

The Parties also disagree as to whether the Defendants should be entitled to take 10 depositions of Plaintiffs or whether, instead, Defendants should be entitled to take depositions of Plaintiffs only if they are shown to be needed through the discovery process. Plaintiffs propose that given Plaintiffs' positions as government agencies and offices, Defendants must show good cause to take any depositions of Plaintiffs.

**Plaintiffs' Position:** Plaintiffs do not believe that any party depositions of Plaintiffs will be warranted in this case. Plaintiffs are government agencies and offices acting in their law enforcement capacity, and the individuals with knowledge of this case are attorneys, economists, and other experts acting at the direction of counsel. Plaintiffs do not have fact witnesses with relevant personal knowledge of this matter who are likely to testify at trial. As a result, any depositions of Plaintiffs, including depositions of office holders or staff, would be the practical equivalent of an examination of opposing counsel. *See SEC v. Jasper*, No. 07-06122, 2009 WL 1457755, at *2–3 (N.D. Cal. May 26, 2009); *FTC v. U.S. Grant Resources, LLC*, No. 04-cv-596, 2004 WL 1444951, at *9–11 (E.D. La. June 25, 2004). Such depositions are disfavored, and generally permitted only upon a showing that "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation

11

of the case." *Jasper*, 2009 WL 1457755, at *2 (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Depositions of counsel of record are similarly disfavored within this district. *See Smith v. City of Greensboro*, No. 1:19-cv-386, 2021 WL 10280229, at *3 (M.D.N.C. Aug. 2, 2021) (finding the *Shelton* standard applies to active litigation attorneys appearing as counsel of record).

Defendants have offered no explanation nor shown good cause for seeking depositions of Plaintiffs. They merely contend that they must preserve the right to take depositions of government party witnesses because they have no current knowledge of what they will uncover upon reviewing the investigative file from Plaintiffs' pre-suit investigation. To the extent that is true, that does not counsel providing Defendants with the unfettered right to take 10 depositions just in case. Instead, Defendants should seek permission to take such depositions when they can articulate a specific need for them; the Court can consider that request, and Plaintiffs' response to it, at that time. It is inappropriate and unnecessary at this stage of the case to assign a fixed number of government plaintiff party depositions, and the Court need not address this issue at this time.

ii. <u>Interrogatories.</u> The Parties have agreed that Syngenta and Corteva may each serve up to 30 interrogatories, including discrete subparts, to the Plaintiffs

Case 1:22-cv-00828-TDS-JEP   Document 183   Filed 04/15/24   Page 12 of 24

collectively. Correspondingly, Plaintiffs collectively may serve up to 30 interrogatories, including discrete subparts, to each of Syngenta and Corteva.[5]

       iii.       <u>Requests for Admission.</u> The Parties have agreed that Syngenta and Corteva may each serve up to 30 requests for admission to the Plaintiffs collectively. Correspondingly, Plaintiffs collectively may serve up to 30 requests for admission to each of Syngenta and Corteva.[6]

       iv.       <u>Proposed Schedule.</u> The Parties have substantially agreed on a schedule through potential briefing on motions for summary judgment and *Daubert* motions. The Parties' joint proposed schedule is set out in Exhibit A. The schedule set forth in Exhibit A is redlined to show changes proposed by Plaintiffs from Defendants' proposed schedule, which generally relate to the disagreement between the Parties as to the appropriate nature and degree of coordination between this action and the MDL Action at this time.

       v.       <u>Rule 26 Disclosures.</u> The Parties have agreed that reports required by Rule 26(a)(2)(B) and disclosures required by Rule 26(a)(2)(C) (as modified herein) are due during the discovery period, as set forth in Exhibit A. Supplementations will be as provided in Rule 26(e) or as otherwise ordered by the Court.

---

[5] After close of business on the deadline for filing this Report, Defendants informed Plaintiffs that they now propose that Plaintiffs' limits be shared with MDL plaintiffs. Plaintiffs object to this for the reasons stated below in Part 5(a).

[6] After close of business on the deadline for filing this Report, Defendants informed Plaintiffs that they now propose that Plaintiffs' limits be shared with MDL plaintiffs. Plaintiffs object to this for the reasons stated below in Part 5(a).

13

3. **Mediation**. Pursuant to LR 83.9b(a), "cases wherein the United States is a party . . . are not included within this automatic selection for mediation." Plaintiffs have informed Defendants that Plaintiffs remain open to exploring settlement possibilities. The Parties have met and conferred regarding mediation, however, and have agreed that mediation is unlikely to be productive at this time.

4. **Preliminary Deposition Schedule**. The Parties will meet and confer regarding a schedule for depositions to be conducted during the discovery period. The Parties have agreed that no individual will be required to be deposed more than once.

5. **Other Items**

    a. <u>Coordination of Discovery</u>.

**<u>Disputed Issue No. 3: Coordination with MDL Action</u>**

As set out above, the Parties agree that there will be some degree of coordination with the MDL Action but disagree as to the manner and extent of coordination between this case and the MDL Action. Plaintiffs do not oppose coordination of discovery with the MDL Action, so long as such coordination does not unreasonably impede the progress of this case. While Plaintiffs believe that it is premature and procedurally inappropriate to discuss proposals for coordination with the MDL Action in the Rule 26(f) Reports for this case, Plaintiffs also take issue with the specific proposals that Defendants improperly include.

***First***, while Plaintiffs take no position on the actual schedule in the MDL Action, including the deadline for fact discovery, Plaintiffs do not agree that the schedules in the

14

two cases must be identical. In Plaintiffs' experience, effective coordination can take place even though discovery in a government enforcement action may begin and end earlier than discovery in related private litigation. *See, e.g.*, Maltas Decl. Ex. 2 (*Google* Order at 2) (acknowledging that government case is proceeding in parallel with the MDL, but with an earlier fact discovery cutoff). It is up to the MDL plaintiffs and Defendants to determine the parameters of their discovery schedule but under no circumstance should resolution of those issues impede or delay the Government Plaintiffs' timely prosecution of this case. *See United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999) ("[C]lear public policy" favors the "prompt resolution of Government antitrust claims to provide expeditious relief to the public[.]"). Indeed, coordination of discovery between government enforcement actions and private litigation is not required. *See, e.g.*, *United States v. Google LLC*, 661 F. Supp. 3d 480, 490 (E.D. Va. 2023) (declining to transfer a government antitrust case for the purposes of coordination with a pending MDL because such transfer would "subvert Congress's intent to eliminate unnecessary delay caused by coordination with private antitrust litigation").

***Second***, Plaintiffs also object to Defendants' attempt to artificially limit the scope of Plaintiffs' discovery in this case by proposing that the Government and MDL plaintiffs share deposition and other discovery limits. These cases are not consolidated and each set of Plaintiffs is entitled to conduct the discovery that is reasonably necessary to prove the elements in their separate cases. While Plaintiffs intend to work cooperatively with the MDL plaintiffs and Defendants to reduce duplication and the burden on witnesses, third

15

parties, and the Court, that coordination cannot prejudice Plaintiffs' ability to prosecute their claims as necessary.

b. <u>Protective Order</u>. The Parties have agreed to submit a proposed Protective Order on or before April 30, 2024.

c. <u>Stipulations</u>. The Parties have agreed to submit a proposed Stipulated Order regarding the Discovery of Electronically Stored Information on or before April 30, 2024. The Parties anticipate filing other stipulated orders relating to remote depositions and expert discovery as needed.

d. <u>Deadline for Amendment of Pleadings</u>. The Parties have agreed to the following proposal: the Parties may request leave to amend pleadings or add additional parties until July 19, 2024. Thereafter, the Parties may seek to amend the pleadings by motion pursuant to Fed. R. Civ. P. 15 and the Court will consider, *inter alia*, whether the granting of leave would delay trial.

e. <u>Consent to Magistrate and Appointment of Special Master</u>. The Parties have discussed special procedures for managing the Action, including reference of either case to a Magistrate Judge on consent of the parties under 28 U.S.C. §§ 636(c), or appointment of a special master. The Parties do not agree to refer either Action to magistrate judge civil trial jurisdiction under 28 U.S.C. § 636(c).

16

f.    <u>Confidential and sealed documents</u>. The Parties have agreed that this action will likely involve confidential or sealed documents and have concurrently filed a LR 5.5 Report.

g.    <u>Service By Email</u>. The Parties propose that service of any documents not filed via ECF, including pleadings, discovery requests, subpoenas for testimony or documents, expert disclosure, and delivery of all correspondence, whether under seal or otherwise, shall be by email to all attorneys for the receiving party then appearing on the ECF docket, at the email addresses listed thereon. In the event the volume of served materials is too large for email, the serving party may accomplish service using electronic data transfer by file transfer protocol or a similar technology. For purposes of calculating response times under the Federal Rules of Civil Procedure, electronic delivery shall be treated the same as hand delivery.

h.    <u>Document Subpoenas to Non-Parties.</u> In the interest of coordination, the Parties agree as follows with respect to non-parties producing materials in response to Rule 45 subpoenas in this action. The party who served a Rule 45 subpoena shall request that the recipient of the subpoena produce materials responsive to the subpoena to all Parties. In the event that the non-party does not produce responsive material to all Parties, the party that served a Rule 45 subpoena shall produce a copy of all materials that a non-party produces in response to that Rule 45 subpoena within five (5) business days after receipt of the materials from the non-party.

17

    i. <u>Privilege Logs</u>. The specific deadline for privilege log production is detailed in the agreed-upon schedule at Exhibit A.

    j. <u>Length of Trial</u>. The Parties have agreed that determining a precise trial length in either Action would be premature at this time.

    k. <u>Jury Trial</u>. A jury trial has been demanded by Corteva in this action. Plaintiffs have moved to strike Corteva's demand as untimely. Counsel for Syngenta communicated to Plaintiffs that Syngenta will not seek a jury trial.

Dated:  April 15, 2024          Respectfully submitted,

 /s/ Allyson M. Maltas
ALLYSON M. MALTAS
Senior Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov

KARNA ADAM
JOSEPH R. BAKER
WESLEY G. CARSON
ELIZABETH A. GILLEN
PHILIP J. KEHL
MICHAEL J. TURNER
JAMES H. WEINGARTEN

*Attorneys for Plaintiff Federal Trade Commission*

/s/ Nicole S. Gordon
NICOLE S. GORDON
Deputy Attorney General
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94610
Telephone: (415) 510-4400
Email: nicole.gordon@doj.ca.gov

*Attorney for Plaintiff State of California*

/s/ Conor J. May
JAN M. ZAVISLAN
Senior Counsel
CONOR J. MAY
Assistant Attorney General
Colorado Department of Law
Office of the Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Jan.Zavislan@coag.gov
        Conor.May@coag.gov

*Attorneys for Plaintiff State of Colorado*

19

/s/ Paul J. Harper
PAUL J. HARPER
Assistant Attorney General, Antitrust
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3000
Email: paul.harper@ilag.gov

*Attorney for Plaintiff State of Illinois*

/s/ Matthew Michaloski
MATTHEW MICHALOSKI
CHRISTI FOUST
Deputy Attorneys General
SCOTT BARNHART
Chief Counsel and Director of Consumer
Protection
Office of the Indiana Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 234-1479
Email: matthew.michaloski@atg.in.gov
           christi.foust@atg.in.gov
           scott.barnhart@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

/s/ Noah Goerlitz
NOAH GOERLITZ
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 725-1018
Email: noah.goerlitz@ag.iowa.gov

*Attorney for Plaintiff State of Iowa*

/s/ Katherine Moerke
KATHERINE MOERKE
JASON PLEGGENKUHLE
ELIZABETH ODETTE
Assistant Attorneys General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Telephone: (651) 296-3353
Email: katherine.moerke@ag.state.mn.us
           jason.pleggenkuhle@ag.state.mn.us
           elizabeth.odette@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

/s/ Colin P. Snider
COLIN P. SNIDER
Office of the Attorney General of
Nebraska
2115 State Capitol Building
Lincoln, NE 68509
Telephone: (402) 471-3840
Email: Colin.Snider@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

/s/ Timothy D. Smith
TIMOTHY D. SMITH
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us

*Attorney for Plaintiff State of Oregon*

/s/ Hamilton Millwee
HAMILTON MILLWEE
Assistant Attorney General
TATE BALL
Assistant Attorney General
Office of the Attorney General of
Tennessee
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
          Tate.Ball@ag.tn.gov

*Attorneys for Plaintiff State of Tennessee*

/s/ William Shieber
JAMES LLOYD
Chief, Antitrust Division
TREVOR YOUNG
Deputy Chief, Antitrust Division
WILLIAM SHIEBER
Assistant Attorney General
Office of the Attorney General of Texas
300 West 15th Street
Austin, TX 78701
Telephone: (512) 936-1674
Email: William.Shieber@oag.texas.gov

*Attorneys for Plaintiff State of Texas*

/s/ Luminita Nodit
LUMINITA NODIT
Assistant Attorney General,
Antitrust Division
Washington State Office
of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104
Telephone: (206) 254-0568
Email: Lumi.Nodit@atg.wa.gov

*Attorney for Plaintiff State
of Washington*

/s/ Laura E. McFarlane
LAURA E. MCFARLANE
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us

*Attorney for Plaintiff State of Wisconsin*

21

**EXHIBIT A**

Plaintiffs' Proposed Schedule

| Event | ~~Defendants' Revised Position~~ Date |
|---|---|
| Initial Pretrial Conference | ~~The Court's~~ April 18, 2024 ~~Initial Pretrial Conference will cover scheduling for both Actions~~ |
| Rule 26(a)(1) Initial Disclosures | April 19, 2024 |
| Deadline for all Parties to agree, or else for parties to move, on proposed protective order and ESI protocol | April 30, 2024 |
| Deadline for Plaintiffs to produce investigative file(s) to Defendants | 14 days after entry of protective order |
| Deadline for Parties to propound Requests for Production[7] | 45 days after the Plaintiffs' production of the investigative file(s) |
| Deadline for ~~Plaintiffs and Defendants~~ Parties to propose custodians and search or TAR protocols | 30 days after service of Requests for Production |

---

[7] The Parties ~~in the FTC Action~~ agree that they will endeavor to serve comprehensive Requests for Production by this date, but this deadline shall not apply to, nor is it intended to preclude, discrete, additional requests served at a reasonable later date within the fact discovery period. The requesting Party shall articulate its good faith basis for making any such supplemental request(s) at the time of service. The Parties further agree to produce documents responsive to Requests for Production on a rolling basis.

This deadline shall not apply to non-party subpoenas under Fed. R. Civ. P. 45.

22

| Event | ~~Defendants' Revised Position~~ **Date** |
|---|---|
| Deadline for ~~Plaintiffs and Defendants~~ Parties to agree or ~~for parties~~ to move to compel on custodians and search or TAR protocols | 60 days after service of Requests for Production |
| Deadline for all Parties to substantially complete the production of data and documents in response to all Requests for Production received by the deadline ~~for Plaintiffs~~ to propound Requests for Production (45 days after Plaintiffs' production of the investigative file(s)) | January 22, 2025 [3 months prior to close of fact discovery] |
| Deadline for all Parties to provide privilege logs | February 21, 2025 [30 days after substantial completion deadline and 2 months prior to fact discovery deadline] |
| Deadline for all Parties to notice fact depositions | February 21, 2025 [30 days after substantial completion deadline and 2 months prior to fact discovery deadline] |
| Close of Fact Discovery | April 22, 2025 |
| Expert Reports on Plaintiff's Claims and on Counterclaims and Affirmative Defenses as to which Defendants Bear the Burden of Proof | June 6, 2025 [45 days after the close of fact discovery] |
| Plaintiffs' and Defendants' Rebuttal Expert Reports | August 5, 2025 [60 days after opening reports] |
| Plaintiffs' and Defendants' Reply Expert Reports | September 4, 2025 [30 days after rebuttals] |
| Close of Expert Discovery | October 2, 2025 [28 days after replies] |

23

| Event | ~~Defendants' Revised Position~~ **Date** |
|---|---|
| Last day to file Summary Judgment and *Daubert* Motions | November 18, 2025 [47 days after close of expert discovery] |
| Summary Judgment and *Daubert* Oppositions | January 23, 2026 [66 days after motions] |
| Summary Judgment and *Daubert* Replies | February 20, 2026 [28 days after oppositions] |