# Exhibit A

State of Minnesota, by its Attorney General, Keith Ellison,

                Court File No. 27-CV-19-16424

      Plaintiff,

vs.                    **ORDER FOR BENCH TRIAL**

Steven Meldahl and S.J.M. Properties, Inc.,

      Defendants.

---

The above-entitled matter came before the undersigned Judge of the District Court on April 19, 2021, upon Defendants' motion for a jury trial and the parties' cross-motions relating to the temporary injunction in this matter. The other cross-motions raised at the hearing will be addressed by separate order(s).

Assistant Attorney Generals Katherine Kelly, Esq., and Adam Welle, Esq., appeared on behalf of the State of Minnesota ("the State").

David Shulman, Esq., appeared on behalf of Defendants Steven Meldahl ("Meldahl") and S.J.M. Properties, Inc. ("SJM").

Based upon the evidence adduced, arguments of counsel, and all of the files, records, and proceedings herein,

## **DISCUSSION**

### I.    PROCEDURAL BACKGROUND

1. This case is an action brought by the State of Minnesota through the Attorney General against Defendants, pleading various causes of action relating to Defendants' conduct in leasing out rental homes in Minneapolis.

2. The State's Complaint asserts four causes of action: Count I (Consumer Fraud Act – Minnesota Statute Section 325F.69 ("CFA")); Count II (Uniform Deceptive Trade Practices Act – Minnesota Statute Section 325D.44 ("DTPA")); Count III (Covenants of Landlord – Minnesota Statute Section 504B.151); and Count IV (Late Fees – Minnesota Statute Section 504B.177 ("Late Fees")). The State asserts these claims pursuant to its *parens patriae* power authorizing it "to act on behalf of all Minnesotans harmed by a pattern and practice of fraudulent conduct" and to "seek

equitable restitution." *State v. Minn. Sch. of Bus.*, 935 N.W.2d 124, 133-34 (Minn. 2019). The Complaint states the action is to "enforce Minnesota's consumer-protection laws, including laws protecting consumers in the residential rental market, and . . . to enjoin Meldahl's violations described herein and remediate his victims." (Compl. ¶ 1.)

3. On February 24, 2021, the Court issued its Order on Cross-Motions for Summary Judgment ("Summary Judgment Order"). In the Summary Judgment Order, the Court granted the State summary judgment on Count IV (Late Fees), indicating a permanent injunction would be granted in the final Order, with monetary penalties and restitution to be determined following trial. The Court granted Defendants summary judgment on Count III (Covenants of Landlord). The Court denied both sides' motions for summary judgment on Count I (CFA) and Count II (DTPA).

4. On March 18, 2021, this Court issued an Order for Trial. The trial was set on call for a ten-day trial scheduled on the May 17, 2021, through June 11, 2021 trial block. This case was designated the first case on call.

5. Pursuant to the Administrative Order for the Chief Justice ADM20-8001, dated March 22, 2021, in-person civil jury trials remain prohibited through June 13, 2021, due to the COVID-19 pandemic. Limited exceptions remain for (1) an in-person exception process, as well (2) remote civil jury trials. Given the anticipated length of the case and number of witnesses, the Court does not find that this case would be appropriate for the in-person exception process or the pilot remote civil jury trial process.

II. ANALYSIS

6. *Jury Trial as of Right.* Defendants now take the position that they are entitled to a jury trial as a matter of right. The right to a jury trial in state court must be found either in the Minnesota Constitution or in statute. *Schmitz v. U.S. Steel Corp.*, 852 N.W.2d 669, 673 (Minn. 2014). The Minnesota Constitution only provides a right to a jury trial if "the claim is an action at law, for which the Constitution guarantees a right to a jury trial," rather than an "action in equity, for which there is no constitutional right to a jury trial." *Id.*

7. The Minnesota Court of Appeals has issued a published decision specifically addressing whether claims brought by the Attorney General to enforce consumer-protection statutes were subject to a jury trial right. In *State by Humphrey v. Alpine Air Products*, the Court of Appeals considered an appeal from a bench trial by a defendant in an enforcement action by the Attorney General under state consumer-protection statutes, including specifically the CFA and DTPA. 490 N.W.2d 888 (Minn. Ct. App. 1992), *aff'd*, 500 N.W.2d 788 (Minn. 1993). The Court of Appeals affirmed the bench trial, noting that such an action—which included pursuit of injunctive relief, restitution, and penalties—was "entirely equitable in nature." *Id.* at 895.

8. Similar to *Alpine Air*, the State's primary objective here is "to obtain injunctive relief and put an end to [Defendants'] conduct." *Id.* Restitution is also recognized as a "traditional equitable remedy." *Id. Alpine Air* also similarly involved a claim for civil penalties and attorney's fees and costs. *Id.* at 891. The nature of such claims was determined in *Alpine Air* to be "entirely equitable." *Id.* at 895; s*ee also State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 139 (Minn.

2

2019) (Attorney General action seeking restitution is equitable remedy to force wrongdoer to divest improper gains and prevent wrongdoing from misdeeds).

9. Defendants assert that the civil penalties in this case create a different outcome requiring a jury trial. *Alpine Air* does not support an argument that the amount of potential civil penalties creates a right to a jury trial where one would not exist otherwise. In any event, "the type of remedy sought is not determinative of [a] party's right to a jury trial." *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 154 (Minn. 2001). "The question is to be determined by looking to the character of the issues to be tried as made by the pleadings." *Id.* (quoting *Coughlin v. Farmers & Mechanics Sav. Bank of Minneapolis*, 272 N.W. 166, 167 (Minn. 1937))

10. Civil penalties in Section 8.31 are included in the "injunctive relief" provision. Minn. Stat. § 8.31, subd. 3 ("[T]he courts of this state are vested with jurisdiction to prevent and restrain violations of those laws, to require the payment of civil penalties, to require payment into the general fund, and to appoint administrators as provided in subdivision 3c."). The amount of potential civil penalty for a violation is to be determined by the Court, not to exceed $25,000 per violation. *Alpine Air Prods., Inc.*, 490 N.W.2d at 896 (holding that "[t]he State is entitled to civil penalties up to $25,000 for each violation").

11. The Supreme Court of Minnesota's subsequent decision in *Alpine Air* did not consider the Court of Appeal's affirmation of the use of a bench trial. 500 N.W.2d 788 (Minn. 1993). Still, it offered instructive guidance. The Supreme Court noted that the ordered payment of penalties in the case could be viewed "as serving nonpunitive purposes." *Id.* at 792. Rather, the penalties were part of the equitable action to enjoin violative conduct because "it lowers the incentive to engage in consumer fraud and thus aids the state in enforcement of the statute."[1] *Id.*

12. Defendants assert the Court could nonetheless find persuasive the decision in *Tull v United States*, 481 U.S. 412 (1987). *Tull* is a case considering the trial right under federal law and involving claims under the Clean Water Act. *Id.* at 414. The Supreme Court had to consider the legislative history of that specific statute—involving a "separate and distinct statutory provision" regarding civil penalties—and the legislative intent for district courts to consider the need for "retribution" and "to impose punishment." *Id.* at 425. Here, civil penalties are *included* in the "injunctive relief" provision of Section 8.31, not a distinct separate provision. *Tull* is therefore not persuasive authority to these circumstances and Defendants are not entitled to a jury trial as a matter of right.

13. *Discretionary Use of Advisory Jury.* Defendants alternatively argue that the Court should exercise its discretionary authority under Minnesota Rule of Civil Procedure 39.02 to

---

[1] The Supreme Court in *Alpine Air* noted the amount of the penalties in that case were "minimal" in comparison to the amount of restitution awarded. *Alpine Air*, 500 N.W.2d at 793. Defendants suggest this means that the Supreme Court created some sort of unspecified ceiling above which amounts of potential civil penalty exposure triggers a jury trial right. The Court of Appeals decision, which actually addressed the jury trial right issue, did not indicate such a ceiling or impermissible amount or ratio of potential penalty exposure. 490 N.W.2d 888. That the State could potentially seek penalties in the total of millions of dollars speaks to the size of the underlying alleged conduct it seeks to enjoin and number of individuals potentially affected by it. Whether an action is equitable is determined by the "nature and character of the controversy as determined from the pleadings." *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip.*, LLC, 813 N.W.2d 49, 53-54 (Minn. 2012) (quoting *Abraham v. Cnty of Hennepin*, 639 N.W.2d 342, 353 (Minn. 2002)).

impanel an advisory jury. Advisory jury matters still require the Court to make findings. Minn. R. Civ. P. 52.01. "[A] trial court retains responsibility for factual determinations" in such circumstances. *Shea v. Hanna Min. Co.*, 397 N.W.2d 362, 370 (Minn. Ct. App. 1986).

14. This action was commenced in September 2019. Use of a discretionary advisory jury could substantially delay the trial in this proceeding, as the return date for in-person civil jury trials is unknown. Even when in-person civil jury trials are allowed, Court resources may be prioritized for the backlog in criminal jury cases with pending trial demands, as well as the potential for a phased approach to the return to pre-pandemic absence of social distancing requirements. In addition, future high-profile proceedings this year may impact the ability to hold in-person civil jury trials in the Hennepin County Government Center, even if pandemic restrictions are removed.

15. As to Defendants' suggestion that this Court is "not an impartial fact-finder," the fact that the undersigned has presided in this case and been required to make prior rulings does not establish a basis to create a right or expectation to use of a jury trial where one would not otherwise exist. The Court's decision in the Summary Judgment Order reflected that has made rulings for both parties in part in previous decisions. Adverse rulings are not sufficient to demonstrate bias for the purpose of the removal of a judge. *Olson v. Olson*, 392 N.W.2d 338, 341 (Minn. Ct. App. 1986). In any event, Defendants are not even asking for removal. Absent matters in which disqualification is required, the Court bears a duty to hear and decide matters assigned to it. Minn. Code Jud. Conduct R. 2.7.

16. *A Remote Trial Does Not Deny Due Process.* Defendants express concern that a remote civil bench trial would deny them due process. The Chief Justice's latest pandemic-related Order, ADM20-8001, sanctions the use of remote civil proceedings to continue the ongoing work of the Court. In this case alone, multiple remote motion hearings have been held. Remote bench trial proceedings over Zoom afford the ability of parties to appear, witnesses to testify, and exhibits to be submitted.[2]

## **ORDER**

1. Defendants' motion for a jury trial is DENIED.

2. This matter shall be scheduled for a 10-day, date certain court trial beginning on **Monday, May 17, 2021, at 9:00 a.m.** Counsel shall be prepared to try the case over Zoom.

    a. Parties and counsel shall appear for trial over Zoom. Log-in information will be provided by Court staff.

    b. Arranging for witnesses to appear over Zoom shall be the responsibility of the party intending to call the witness. Counsel may arrange to have witnesses appear by Zoom from their offices. Counsel is expected to ensure

---

[2] Defendants assert that the volume of witnesses in this matter made it cost-prohibitive for Meldahl to take the depositions of his former tenants prior to trial, and as such Meldahl will cross-examine these witnesses for the first time at trial. Defendants assert that they should be entitled to do that in person, not by Zoom. This argument is unavailing, given that depositions themselves have been undertaken by Zoom in many cases throughout the pandemic.

that testifying non-party witnesses are in a separate physical location in the office from counsel, in order to prevent audio feedback and to avoid potential coaching during testimony.

c. Parties shall fully cooperate to determine a prospective schedule for non-party witnesses.

d. All anticipated potential exhibits shall be exchanged in electronic format, and shared with the Court, in advance of trial pursuant to the timelines in the Order for Trial. All other deadlines and requirements under the Order for Trial relating to a court trial via Zoom shall remain in effect.

e. All witnesses must be provided a copy of all exhibits to view independently at their own location during the Zoom court trial. The Court will not be displaying exhibits within the Zoom feed, with the exception of any video exhibits.

BY THE COURT:

Robben, Patrick
Jud District Court Judge
Apr 22 2021 2:41 PM

Dated: April 22, 2021

_____
The Honorable Judge Patrick Robben
Judge of District Court