<pre>
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2

 3  FEDERAL TRADE COMMISSION, et al.,) CASE NO. 1:22CV828
                                    )
 4          Plaintiff,              )
                                    )
 5          vs.                     )
                                    )
 6  SYNGENTA CROP PROTECTION AG,    )
    SYNGENTA CORPORATION, SYNGENTA  )
 7  CROP PROTECTION, LLC, and       )
    CORTEVA, INC.                   )
 8                                  )
            Defendants.             )
 9  _____ )

10

11  IN RE:  CROP PROTECTION         )   CASE NO. 1:23MD3062
    PRODUCTS LOYALTY PROGRAM        )
12  ANTITRUST LITIGATION            )
                                    )   Winston-Salem, NC
13  This transcript relates to:     )   April 18, 2024
    ALL ACTIONS.                    )
14  _____ )

15

16       TRANSCRIPT OF THE **INITIAL PRETRIAL CONFERENCE**
             BEFORE THE HONORABLE JOI E. PEAKE
17              UNITED STATES MAGISTRATE JUDGE

18

19  APPEARANCES:

20  For the FTC Plaintiffs:    ALLYSON M. MALTAS, ESQ.
                               ELIZABETH GILLEN, ESQ.
21                             WESLEY CARSON, ESQ.
                               FEDERAL TRADE COMMISSION
22                             400 7th Street SW
                               Washington, DC 20024
23

24

25
</pre>

```
 1  APPEARANCES: (Continued)

 2  For the State Plaintiffs:   PAUL HARPER, ESQ.
                                ILLINOIS ATTORNEY GENERAL'S OFFICE
 3                              100 W. Randolph Street
                                Chicago, Illinois 60601

 4

 5  For the MDL Plaintiffs:     MARGARET C. MACLEAN, ESQ.
                                LOWEY DANNENBERG P.C.
 6                              44 South Broadway, Suite 1100
                                White Plains, New York 10601

 7
                                RICHARD l. PINTO, ESQ.
 8                              PINTO COATES KYRE & BOWERS, PLLC
                                3203 Brassfield Road
 9                              Greensboro, North Carolina 27410

10
    For the Defendants:
11  Syngenta:                   JAMES McCLAMMY, ESQ.
                                CHARGLES DUGGAN, ESQ.
12                              DAVIS POLK & WARDWELL, LLP
                                450 Lexington Avenue
13                              New York, NY 10017

14                              PATRICK M. KANE, ESQ.
                                FOX ROTHSCHILD LLP
15                              230 N. Elm Street, Suite 1200
                                Greensboro, North Carolina 27401
16
    Corteva:                    DAVID MARRIOTT, ESQ.
17                              CRAVATH, SWAINE & MOORE, LLP
                                825 Eighth Avenue
18                              New York, NY 10019

19                              MARK E. ANDERSON, ESQ.
                                MCGUIREWOODS LLP
20                              501 Fayetteville Street, Suite 500
                                Raleigh, North Carolina 27601

21

22  Transcriber:                BRIANA L. CHESNUT, RPR
                                Official U.S. Court Reporter
23                              P.O. Box 20991
                                Winston-Salem, North Carolina 27120

24

25
```

P R O C E E D I N G S

**THE COURT:** All right. I'm going to ask my law clerk to call the first case on the calendar, just the FTC case at this point.

**LAW CLERK:** The matter now before the Court is Federal Trade Commission, et al. versus Syngenta Corporation, et al, Case No. 1:22CV828. This matter is on for an initial pretrial conference.

**THE COURT:** Okay. Very good.

All right. And so in this FTC case, what I'm going to do first is just ask the folks who are appearing and intending to be heard in that case this morning to just stand and identify yourselves for me and for the record.

The case manager probably mentioned to you that we're recording rather than having a court reporter. So it's going to be hard for her to keep track -- or him, whoever ends up transcribing this, if we need it transcribed -- to be able to keep up with who is talking when. So I'm going to ask you to introduce yourselves now, but then please be repetitive on that so that anytime you're standing up to speak again, if you could reintroduce yourself just for the record. I think that would be helpful.

So let me start with the FTC, if you want to introduce who is here for you and who is going to be speaking or handling this.

22cv828 FTC v Syngenta -- Initial Pretrial conf. -- 4/18/24

1              **MS. MALTAS:**  Good morning, Your Honor.  I'm Allyson

2    Maltas from the Federal Trade Commission on behalf of the

3    Government Plaintiffs.

4              **THE COURT:**  Okay.

5              **MS. MALTAS:**  And I'm joined by my colleagues, Wesley

6    Carson and Elizabeth Gillen, who may also speak today.

7              **THE COURT:**  So it's Mr. Carson and Ms. Gillen.

8              And, Ms. Maltas, you'll be handling most of the

9    matters; is that correct?

10             **MS. MALTAS:**  Yes, Your Honor.  I believe if there are

11   any questions specifically for the State Plaintiffs --

12             **THE COURT:**  Right.

13             **MS. MALTAS:**  -- Paul Harper from the State of

14   Illinois will be addressing those.

15             **THE COURT:**  And that's collectively for the State

16   Plaintiff's; is that correct?

17             **MS. MALTAS:**  Yes, Your Honor, for more State-specific

18   issues.

19             **THE COURT:**  Okay.  All right.

20             And then for the Defendants, who have we got?

21             **MR. MARRIOTT:**  Good morning, Your Honor.  David

22   Marriott for Corteva.  And with me, of course, is Mark

23   Anderson.

24             **MR. ANDERSON:**  Good morning, Your Honor.

25             **THE COURT:**  Good morning.

1          **MR. ANDERSON:**  Mark Anderson from McGuireWoods.

2          **THE COURT:**  Very good.  Good to see you this morning.

3          **MR. ANDERSON:**  Good to see you.

4          **THE COURT:**  Help me with your name again.  I don't

5    have the list.

6          **MR. MARRIOTT:**  David Marriott and Mark Anderson.

7          **THE COURT:**  Yes.

8          **MR. MARRIOTT:**  Thank you, Your Honor.

9          **THE COURT:**  All right.  Very good.

10         All right.  Yes, sir.

11         **MR. KANE:**  Good morning, Your Honor.  Patrick Kane,

12   Fox Rothschild, for the Syngenta Defendants.  With me is James

13   McClammy and Charles Duggan.  Mr. McClammy will be doing the

14   majority, if not all, of the speaking for the Syngenta

15   Defendants today.

16         **THE COURT:**  So it's Mr. McClammy?

17         **MR. McCLAMMY:**  McClammy, yes, Your Honor.

18         **THE COURT:**  All right.  And Mr. Duggan; is that

19   right?

20         **MR. KANE:**  Duggan.

21         **THE COURT:**  D-U-G-G-I-N [sic].

22         And I know we have the official record.  I am going

23   to just try to make sure I've got my notes of who I am going to

24   be hearing from primarily.

25         Thank you, Mr. Kane.

Case 1:22-cv-00828-TDS-JEP    Document 212    Filed 05/22/24    Page 5 of 66

1          **MR. KANE:**  Thank you, Your Honor.

2          **THE COURT:**  All right.  So the matter is here for an

3   initial pretrial conference and entry of a scheduling order.  I

4   understand there are differences in the Rule 26(f) reports.  I

5   understand also, of course, that some of those overlap with the

6   MDL.

7          As I indicated in my text order yesterday, I am not

8   intending the call the MDL case for an initial pretrial

9   conference.  They need more notice on that, and that's not what

10  we're here for today.  But since we're going to be talking

11  about that case, I want to be able to hear from them and also

12  have that on the record as well in that case.

13         So I'll hear from you if there are any objections,

14  but what I would intend to do is go ahead and ask the clerk to

15  call the MDL case as well so that we're on record in both

16  cases, and then that way I can hear from whoever needs to be

17  heard if there's issues in that case that I need to address as

18  well.

19         Proceeding that way, Ms. Maltas, is there any

20  objection to that?

21         **MS. MALTAS:**  No objection, Your Honor.

22         **THE COURT:**  All right.  And any objections from the

23  Defendants on that.

24         **MR. MARRIOTT:**  None here, Your Honor.

25         **MR. McCLAMMY:**  No, Your Honor.

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1          **THE COURT:** Okay. And that's Mr. Marriott and

2  Mr. McClammy; is that correct?

3      (Indiscernible cross-talk.)

4          **THE COURT:** All right. So I am going to ask my

5  clerk, if you would, to call the MDL case as well.

6          **THE CLERK:** The matter before the Court is Case

7  1:23MD3062, Crop Protection Products Loyalty Program Antitrust

8  Litigation.

9          **THE COURT:** All right. And as to the MDL case, we

10 have some lead Plaintiff or attorneys who have been designated

11 for that role?

12          Yes, ma'am?

13          **MS. MACLEAN:** We do, Your Honor. My name is Margaret

14 MacLean from Lowey Dannenberg for the private Plaintiffs.

15          **THE COURT:** Okay.

16          **MR. PINTO:** And Richard Pinto for the private

17 Plaintiffs.

18          **THE COURT:** Good to see you, Mr. Pinto.

19          All right. It's Ms. MacLean; is that right?

20          **MS. MACLEAN:** That's right.

21          **THE COURT:** Are you going to be handling things for

22 the MDL Plaintiffs this morning?

23          **MS. MACLEAN:** Yes, ma'am.

24          **THE COURT:** And then for the Defendants,

25 Mr. Marriott, are you appearing in that case as well?

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

 1          **MR. MARRIOTT:**  I am, Your Honor, as is Mr. Anderson.

 2          **THE COURT:**  And then for Syngenta, Mr. Kane,

 3 Mr. McClammy, and Mr. Duggan, are you all appearing in that as

 4 well?

 5          **MR. KANE:**  All the same, yes.

 6          **THE COURT:**  Anyone else appearing for Defendants in

 7 the MDL?

 8          All right.  So what I would intend to do is hear from

 9 you generally.  Of course, I've read the reports and position

10 papers, and so I have some sense; but I want to make sure

11 everybody has a chance to be heard on all of the issues before

12 we start getting into the weeds about what we're going to do or

13 how we're going to set things up.

14          Ms. Maltas, I am going to start with you and let you

15 just give a general overview.

16          And, as is my ordinary practice, I will go through

17 the room until everyone has had a chance to be heard and

18 respond to anything they want to on that.

19          **MS. MALTAS:**  Thank you so much, Your Honor.

20          So, obviously, we're here on the Government case, as

21 directed by Your Honor, for the Rule 26 conference so that we

22 can enter the scheduling order in this case and get discovery

23 started.

24          We do have an agreed schedule with the Defendants,

25 and that's found at Appendix A of the Government Plaintiff's

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1   26(f) report.  We respectfully request that the Court go ahead

2   and enter that schedule today, and I understand that we do have

3   Defendants' agreement on that as well.

4        There's also a few issues of coordination that came

5   up through this process and then the 26(f) reports.

6   Plaintiff's position is that we should table all coordination

7   issues and allow the parties in the Government Plaintiff's case

8   as well as the MDL case and the Defendants to draft a separate

9   coordination order.  This type of thing is done really commonly

10  in cases where you have a government case with a follow-on

11  private plaintiff suit.  We attached a couple of examples at

12  Exhibits 1 and 2 of our 26(f) order.  And that's exactly what

13  we're contemplating in this case.

14       It would cover, you know, how documents should be

15  produced to everyone and how they can be used and how they can

16  be admitted.  It would cover deposition limits, time for

17  depositions, for overlapping depositions in the case, just

18  anything where it would be more efficient for the Court and the

19  witnesses and third parties to have coordination between the

20  two cases.

21       And we definitely feel very strongly that we should

22  have our scheduling order issued first and then the

23  coordination order to follow so that we can go ahead and get

24  started with discovery in our case.  We also understand that

25  Defendants agree with that, though, we will, of course, give

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  them an opportunity to confirm that.

2          There are two issues of dispute in terms of the

3  discovery limits that have been raised between our two reports,

4  and those both deal with deposition limits, how many

5  depositions can be taken of each Defendant by the Government

6  Plaintiffs in our case and then also whether or not there

7  should be any sort of preemptive limit or ability by the

8  Defendants to take depositions of the Government Plaintiffs.

9          We understand from talking to Defendants earlier

10 today that they no longer feel that we are at an impasse on

11 that issue and that they would like to continue to meet and

12 confer.  We're, of course, open to doing that.  We don't want

13 to bother Your Honor with a dispute that's not really a

14 dispute.  However, we feel very comfortable with the request

15 that we've made for 20 depositions per Defendant and to not

16 have any ruling at this time as to whether or not there could

17 be depositions of the Government Plaintiffs.  So we may be back

18 here with you at some point to talk about those, but at this

19 point, if they are willing to keep talking, so are we.

20          **THE COURT:**  Okay.  One minor difference I noticed as

21 well, in addition to the numbers, was whether former employees

22 would count or which group former employees would count,

23 whether they counted as third party or whether they counted

24 with the Defendants' number.

25          I don't know.  Was that resolved, or do you have a

  22cv828 FTC v Syngenta  -- Initial Pretrial conf. -- 4/18/24

1  position on that?

2          MS. MALTAS:  I think we both agree that the former

3  employees should come out of the Defendants' number and should

4  not be third parties, but I'll definitely ask the Defendants to

5  confirm that as well.

6          THE COURT:  Okay.  All right.  I will hear from them

7  and then come back if there is anything else.

8          MS. MALTAS:  Thank you, Your Honor.

9          THE COURT:  Very good.

10          Yes, sir, Mr. Marriott, are you going to start us

11  out?

12          MR. MARRIOTT:  I am, Your Honor.

13          THE COURT:  Okay.

14          MR. MARRIOTT:  David Marriott for Corteva.

15          So as counsel for FTC, and, I believe, in that

16  respect also the States, Your Honor, says, the parties have

17  spent a lot of time meeting and conferring, and we've actually

18  come to a lot of agreements and I think more or less come to an

19  understanding as to what at least we propose the Court do

20  today.

21          And so with respect to the schedule, we do agree with

22  Plaintiffs in this case that the schedule that has been

23  proposed and agreed upon informally by the parties should

24  become the schedule entered by the Court.  And we're happy to

25  have that be entered today at the Court -- or at the Court's

    22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1 earliest convenience, whether today or some other day.  So we

2 are agreed on a schedule, Your Honor.  And you'll find that,

3 just for example, in Exhibit A to the Plaintiffs' 26(f)

4 statement.  They've got a black line there that basically does

5 the same thing as ours.  So we're fine with that as the

6 schedule.

7          With respect to depositions, Your Honor, there are,

8 as set out in the papers, some present disagreements.  But as

9 counsel says, I do think there is reason here for further

10 meeting and conferring on this.  We had made a proposal for a

11 compromise as it related to both of the cases, but we heard

12 loud and clear Your Honor's order of yesterday that they will

13 be done separately.

14          With that in mind, with that guidance, I think it

15 would be beneficial for us now to spend a little bit more time

16 talking with one another and seeing if we can't come to a

17 resolution that avoids a need for the Court to do anything in

18 that respect.  So I would propose, as has been suggested, that

19 we come back to the Court at some future time.

20          For what it's worth, under the schedule to which the

21 parties have agreed, depositions won't take place for many,

22 many months.  And so there's no risk of there being any delay

23 associated with our having a little bit more time to decide

24 that question.

25          **THE COURT:**  So certainly that makes sense as to this

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  issue of deposing the Plaintiffs or not deposing the Plaintiffs

2  or working that out.

3        As to the number of depositions for the Defendants,

4  are you all in agreement on that or where --

5        **MR. MARRIOTT:**  We're not yet in agreement, Your

6  Honor.  I think we have some form of disagreement there.  We

7  think we ought to defer that question.  We have not yet, for

8  example, exchanged 26(a)(1) disclosures.  So we don't know who

9  they have in mind as their witnesses.  They don't really know

10 who we have in mind for ours.  We are still seeking at some

11 level to coordinate with the private Plaintiffs.

12       We think there is a relationship there between those

13 cases.  The Plaintiffs in the Government action don't

14 necessarily have that view.  But we think there is reason to

15 continue to talk about that, Your Honor.

16       And, again, since depositions are so far off, there

17 doesn't seem, in our view, to be any reason now to upset

18 basically what the default says.  There's plenty of time for

19 somebody to come in and say, I need more depositions; it ought

20 to be something different from what it is.

21       And we understand the Government, and probably also

22 the private Plaintiffs in the MDL, want more depositions than

23 the default would permit, and we're totally open to having a

24 conversation to try to find some common ground as to between

25 the two.

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1          **THE COURT:**  Okay.  And just to wrap up that last

2    maybe minor piece, are former employees, in your view, included

3    within the number of the Defendants' depositions?

4          **MR. MARRIOTT:**  Yes, we agree with the Government,

5    Your Honor.  They are counted as Defendant depositions.

6          **THE COURT:**  Okay.  All right.

7          Then let me go to Mr. McClammy.

8          Are you handling things for Syngenta?

9          **MR. McCLAMMY:**  Yes.  Good morning, Your Honor.  Jim

10   McClammy of Davis Polk & Wardwell for Syngenta.

11          I think, as was mentioned by the Government and

12   Mr. Marriott, we are all in general agreement with respect to

13   having the schedule entered by this Court as soon as the Court

14   is able and then having continued discussions about the number

15   of depositions so that we can come back to Your Honor.

16          I do think, as was mentioned, it will be important to

17   understand that one of the factors there will be can we have

18   discussions with the private Plaintiffs in the MDL sooner

19   rather than later to try to really expedite getting to

20   agreement on coordination.

21          I don't think there is any disagreement at all as to

22   the fact that we are amenable to having discovery start in the

23   MDL, even though the motions to dismiss are pending.  I believe

24   that they are amenable to receiving that discovery starting

25   sooner.

1    So we would then propose that if Your Honor is

2 amenable to the concept of these cases, you know, attempting to

3 coordinate, that we should at least think about having a date

4 set for pretrial conference there and having the Rule 26(f)

5 process begin sooner so that we can come back to the Court in a

6 reasonable amount of time.

7         **THE COURT:**  Okay.  All right.  That's helpful.

8         Before I get into that MDL issue, let me come back to

9 Ms. Maltas on the question of whether I set a number for

10 depositions of Defendants' employees or whether I leave that

11 open.

12         **MS. MALTAS:**  So, as we said, we're willing to

13 continue to negotiate.  We think 20 depositions per Defendant

14 is more than reasonable, given the decades that this conduct

15 has been ongoing, the way that the companies are structured and

16 the number of employees who, for example, handle communications

17 with distributors, or marketing, the number of executives.

18         So, you know, we have put a lot of thought into the

19 fact that we think that 20 per Defendant, including former

20 employees, is more than reasonable.  And, as I said, if we're

21 no longer at an impasse because Defendants are also willing to

22 consider that, then we'll continue to discuss with them.

23         **THE COURT:**  So I don't want to leave it completely

24 open, although I understand the idea that it will be some time

25 before the depositions actually begin.

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1     Let me come back to Defendants and see if there is

2 anything else to add on anything else.

3     **MR. MARRIOTT:**  Well, Your Honor, I would say that I

4 think it makes sense to continue to have a conversation.  We

5 certainly have a different view, in full candor, from the

6 Government about the appropriate number of depositions.

7     As, undoubtedly, Your Honor knows better than any of

8 us, the default, of course, is there be 10 depositions

9 basically a side, and what the Government has proposed here is

10 that there be 20 of Corteva and 20 of Syngenta, so for a total

11 of 40.  So they want 40 just from the parties, though the rule

12 would say they get 10 for the entire side.  And so we think

13 that number is well beyond what has been shown to be justified

14 at this point in the case, right.  The default rule is those

15 are -- you get 10 a side.  And then a party, if they need more,

16 under appropriate circumstances, they show that they need more.

17     It's true that some of the conduct that's alleged

18 here goes back in time, Your Honor.  But what's also true here

19 is that in a lengthy investigation, the Government took nine --

20 they are not called depositions -- investigative hearings, but

21 effectively depositions.  They took nine of Corteva.  They took

22 ten of Syngenta.  And we don't know the number they took of

23 third parties, but our best estimate is that it's at least 15

24 or so, based on something we thought we heard the Government

25 say previously.  So they've had the benefit of 30-plus

1  depositions already, which, at least as we understand the

2  Government's position, they would intend to use in this case.

3          So in view of that and just generally what the

4  default rules are, our view is that it's just premature to now

5  be deciding that the rules that govern generally should be

6  basically blown up, and we should multiply many fold the number

7  of depositions.

8          That said, we haven't got their 21(a) -- their

9  26(a)(1) disclosures.  We haven't had a chance to fully

10  collaborate with the private Plaintiffs.  And I think there is

11  opportunity to find a potential middle ground.  But at the

12  moment at least, we do have a different view of what's

13  appropriate, and I didn't want to not say that to the Court.

14          **THE COURT:**  All right.  I think that's helpful.

15          Mr. McClammy, anything you needed to add on that?

16          **MR. McCLAMMY:**  Nothing much to add to that, Your

17  Honor.  Again, Jim McClammy for the record.

18          I think, given the parties' willingness to discuss

19  these matters, if we stayed with the local rules at least for

20  now, without prejudice, obviously, to the parties' ongoing

21  discussions, that would be fine.

22          We do believe that, you know, we've made a reasonable

23  compromise in light of efforts to try to coordinate between the

24  two actions of extending that to the 10, but I don't think that

25  imposing now a number of 20 would be appropriate based on the

1 record that is set.  But, again, we are willing to have these

2 discussions with the Government.

3        **THE COURT:**  All right.  I was going to come back to

4 Ms. Maltas, but if you wanted to add something first,

5 Mr. Marriott.

6        **MR. MARRIOTT:**  Thank you.  David Marriott.

7        So I think our notion would be not that we have this

8 drag on forever and not that we would necessarily argue it now,

9 but that we endeavor quickly to coordinate with the Plaintiffs

10 in the MDL.  We're ready to do that conference as soon as they

11 and the Court are prepared to have it set.

12        That will allow us to at least have that inform the

13 discussion, because while we may not all see eye to eye on what

14 coordination ought to look like, I think everybody has agreed

15 there should be some form of coordination.  So sorting out the

16 form of coordination, in our minds, has an impact on what the

17 appropriate number of depositions in the case is.

18        And we're prepared to do that with them as quickly as

19 they and the Court are able.  We could do it next week if

20 everybody were ready to do it.  And then we could do the

21 meet-and-confer on this deposition issue and also get back to

22 the Court soon.

23        So when we talk about suggesting there be more time,

24 we're not talking about a long time.  We'll do it as quickly as

25 the Court wants us to do it.  That's the point I want to make

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  sure is understood.  We're not talking about delaying this a

2  very long time, Your Honor.

3          **THE COURT:**  Okay.  All right.

4          Ms. Maltas?

5          **MS. MALTAS:**  So I guess what's just important for us

6  to convey, because I think maybe what I'm hearing from

7  Defendants now is a little bit different from what I heard from

8  them before we walked in here, is we, as the Government

9  Plaintiffs, in our case need 20 depositions each of Syngenta

10  and Corteva.  And I know that they would like for us to share

11  our depositions in some way with the MDL Plaintiffs, and that's

12  not something that we are willing to do.  We have our case to

13  prosecute.  We have our own facts, our own evidence that we

14  need to develop.  We're happy to coordinate how those

15  depositions go forward, and we're definitely happy to have a

16  coordination order that provides for more depositions,

17  potentially, so that there can be that coordination.

18          But if what we're really driving towards here is a

19  coordination order that gives us 15 depositions to be shared

20  between the Government Plaintiffs and the MDL Plaintiffs, we're

21  not going to agree to that at any point.  And so it might make

22  more sense for Your Honor just to order that we, as the

23  Government, can have 20 depositions guaranteed of each of

24  Syngenta and Corteva, and then we can figure out the

25  coordination further after that.

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1          I mean, I'll just say that, you know, we understand
2    their position that we have a precomplaint investigation.  The
3    case law is very clear that doing a precomplaint investigation
4    does not restrict the Government from having the discovery that
5    it needs in the case, because what we're doing here is very
6    different than what we did in the investigation.  And we
7    attached a number of cases to our 26(f) that show that what
8    we're asking for is actually significantly less than the FTC
9    and the States and the DOJ did in other similar cases, and, in
10   fact, significantly less.  So I think our request is very
11   reasonable.

12         We're happy to keep talking if there is a place to
13   go.  I'm not hearing maybe that there actually is as much
14   movement as I thought there was going to be.  So if there's
15   not, then we would just request the 20 depositions per
16   Defendant for us.

17         **THE COURT:**  Okay.  Do you have sort of an outline of
18   who those 20 would be just so I know?

19         If I'm just picking a number, I will split the
20   difference and call it 15; but if you've got something that you
21   can outline for me where that 20 comes from, then that would be
22   helpful in knowing, you know, why or where that's coming from.

23         **MS. MALTAS:**  Of course.  If Your Honor doesn't mind,
24   I would like to turn this over to my colleague, Mr. Carson, who
25   is more familiar with the details?

    22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1          **THE COURT:**  Sure.

2          **MR. CARSON:**  Yes, Your Honor.  Wesley Carson on

3  behalf of Plaintiffs.

4          So I think the number that we have landed on, 20

5  depositions, is based on, you know, our knowledge of the

6  Defendants' structure as well as the conduct involved in the

7  case.

8          So just by way of example, without getting into

9  specific names, in Corteva there are a number of individuals

10  responsible for the overall direction/strategy of a loyalty

11  program.  So we believe there's an individual in charge of the

12  overall direction as well as three individuals responsible for

13  loyalty programs for the 3A Corteva AIs at issue.  There are

14  individuals responsible for the technical implementation of the

15  loyalty programs, along with a number of support staff that

16  support that.  There is --

17          **THE COURT:**  So you're talking about then doing the

18  person who is in charge of the technical implementation, but

19  also all their support staff as well?

20          **MR. CARSON:**  Not all the support staff, Your Honor,

21  but there may be a need, depending on discovery, that we

22  obtain -- if there are individuals who are more involved in one

23  aspect than another, that we would perhaps have one or two

24  support staff that would be deposed in that -- in the course of

25  the depositions.

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1          There are also a number of individuals responsible

2   for Corteva's distributor relationships, both at the national

3   level -- so there are a number of large distributors that

4   participate in these loyalty programs.  I believe in our papers

5   we said seven or eight of the largest distributors account for

6   approximately 90 percent of the market, or something along

7   those lines.  So there are individuals at the national level

8   responsible for those distributor relationships as well as

9   regional individuals who have direct communications with those

10  distributors on issues such as loyalty, compliance, and supply

11  allocation.

12          **THE COURT:**  Is there one per distributor, or there's

13  one national and some regional that oversee all of those

14  distributors?

15          **MR. CARSON:**  It kind of varies depending on the

16  region.

17          **THE COURT:**  Right.

18          **MR. CARSON:**  At national, we believe that there is

19  one individual responsible for national accounts in general as

20  well as individuals under that individual that are responsible

21  for relationships with specific distributors.  And then within

22  the regions, it kind of depends.  I believe there are kind of

23  buckets of distributors that are assigned to various

24  individuals in those regions.

25          There's the Western region and then there is a

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1 Midwest region and the Eastern region.  So there are a number
2 of regions around the country.
3      **THE COURT:**  Okay.
4      **MR. CARSON:**  There are also executives that are
5 responsible for overall strategy in terms of sales, marketing,
6 et cetera, for all of Corteva's products.  And that's just for
7 Corteva, Your Honor.
8      **THE COURT:**  But you're asking for 20 on each; right?
9 So this would be -- so that's where you get the 20?
10      So the -- I've got maybe four in the direction,
11 strategy, and loyalty; maybe two in the technical
12 implementation, and then maybe another one or two, depending on
13 discovery; the distributor relationship overseer, one national,
14 three regional, and maybe some additional assigned to specific;
15 and then some number of executives regarding strategy and
16 sales?
17      **MR. CARSON:**  For the distributor relationships, we
18 believe there are multiple individuals on the national level
19 that are responsible for relationships with the different
20 distributors.
21      **THE COURT:**  How many of those?
22      **MR. CARSON:**  We don't know the exact number, Your
23 Honor.  Our discovery stopped around two or three years ago.
24 So we're not sure of the exact structure, but we believe there
25 are a number of individuals in those roles.

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1        **THE COURT:**  Okay.  And what about number of

2   executives?

3        **MR. CARSON:**  So we know there's at least one

4   individual responsible for crop protection products in general.

5   We know there's another individual, again at the time of the

6   investigation -- so we don't know the exact current state of

7   it -- that was responsible for kind of overall loyalty strategy

8   in general separate from strategy related to specific AIs.  So

9   there are a number of executives within the corporate structure

10  at Corteva that we think would have relevant discoverable

11  information in this case.

12       **THE COURT:**  Okay.  Did you want to talk to me about

13  Syngenta as well?

14       **MR. CARSON:**  Yeah.  So Syngenta has, I think, a

15  similar structure.  There are different key account managers

16  for each major distributor, and we do believe that there are

17  eight or nine individuals that were responsible for the largest

18  distributors in the country at the national level.  So there --

19  we do know there's one specific individual for each distributor

20  in Syngenta.  That may be the case for Corteva as well.  We are

21  not exactly sure of the structure there.

22       There are also separate employees that are

23  responsible for managing the retail loyalty program that

24  Syngenta has as well as a separate marketing group that

25  includes individuals responsible for life cycle and post-patent

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

management planning, including loyalty programs.  And these
marketing personnel, again, are specific AI individuals.  So
there are three Corteva active -- or Syngenta active
ingredients, and there are those three individuals that were
responsible for each of the active ingredients or portfolios
including those active ingredients.  Again, you know, as before
with Corteva, there are potential support staff that work under
these individuals that may have relevant and unique
information.

        **THE COURT:**  Okay.

        **MR. CARSON:**  Again, with Syngenta, there are also
regional individuals, so field staff, that have direct
relationships with the distributors, including the head of
sales and one field sales rep that we had an IH of, but there
are additional individuals that are throughout the country.

        Finally, there are individuals with Syngenta that are
in the Swiss headquarters that negotiated the contract that's
referenced in the complaint between Corteva and Syngenta that
we would like to have depositions of as well.

        And, Your Honor, one thing to keep in mind in all of
these kind of individuals I'm talking about is these are just
roles.  And the conduct here spans, I would say -- you know, in
Corteva's case, the loyalty programs, the earliest ones came
in, I think, in 2016 and Syngenta was all the way back to 2004.
So there are potentially for each of these roles multiple

    22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1 individuals that would be responsible for the active

2 ingredients, the distributor relationships at any given time.

3          We know for Corteva, for instance, at least four of

4 the individuals that have roles that we took investigational

5 hearings of we believe have left the company.  So there are new

6 individuals that we don't know who they are, what kind of

7 information they have.  So given the kind of, I think, the time

8 period that we're looking at here, there's potential for

9 multiple depositions of a similar role because they would have

10 unique information, given the important time period that they

11 were at the company.

12          **THE COURT:**  Okay.  All right.  I am going to let them

13 respond.  And then if there is anything else you wanted to add,

14 I will come back to you.

15          **MR. CARSON:**  Yes, Your Honor.

16          **THE COURT:**  Yes, sir, Mr. Marriott?

17          **MR. MARRIOTT:**  Thank you, Your Honor.

18          Again, respectfully, we would submit that there's not

19 sufficient showing at this time to decide to exceed the default

20 rule.

21          What counsel said, Your Honor, could be said in

22 virtually every case.  In virtually every case where there's a

23 challenge to a policy, there's somebody who is responsible for

24 the policy.  There's somebody who is responsible for the

25 implementation.  There's an executive involved.  In any

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1 decent-sized company, there's going to be a regional person

2 here and a national person there.

3          I would submit, Your Honor, that generalized of a

4 showing, which is for the first time now being made to us as we

5 sit here, is not enough to justify at this stage of the case

6 more than, what, nine months or so away from taking any

7 depositions that we ought to just decide that they get

8 necessarily in the abstract more depositions.

9          I want to make sure that we put in context the

10 request, because while they are saying 20 depositions for

11 Corteva and 20 for Syngenta, they are really saying that they

12 want at least 50 depositions, because what they're proposing is

13 20 from us, 20 from them, and 30 from the third parties, so 50,

14 which is five times the presumptive limit.

15          And then, of course, if you take into account the

16 other depositions -- and while it's true that they get to take

17 discovery in this case, and we're not trying to suggest that

18 they shouldn't get to take discovery in this case, what we're

19 saying is the amount of discovery they get here ought to be

20 based on all the facts and circumstances, and all the facts and

21 circumstances include that they have taken, by our estimate, 34

22 depositions of other people that allows them to say some of the

23 things you heard here today.  They have taken nine of us, ten

24 of them, and a whole bunch of third-party depositions.

25          So in your minds, Your Honor, it may be we can't

22cv828 FTC v Syngenta  -- Initial Pretrial conf. -- 4/18/24

1  ultimately reach an agreement, but I don't see any reason not

2  to give it a shot, especially when we can do it in some form of

3  coordination, because I do think the private Plaintiffs in the

4  MDL are going to presumably be interested in some of the same

5  people.  And as we figure out numbers, I think it's going to be

6  easier to do that when we have a sense of how it all fits

7  together.

8          And we totally get that each side has got their

9  separate case.  No one has ever questioned that they have their

10 separate case.  But what we do think is important is not to

11 lose sight of what the judicial panel on multidistrict

12 litigation said when it sent it here, which is, to quote

13 them -- or paraphrase them, they sent it here so that there

14 could be, in their words, close coordination between the cases.

15          And just sort of charting off with an absolute 20

16 irrespective of what's actually needed or showing that it's

17 required and having presumably the same thing happen in the

18 case is, in our minds, not the best way to do it when there is

19 no reason to do it, you know, any sooner than perhaps, you

20 know, a month or so from now when we've got -- each got a

21 little bit more information.  When they see our list of the

22 people under 26(a) that we say we're going to rely upon, when

23 we see theirs, when we have a sense from the private Plaintiffs

24 of who they are going to rely upon, it gets a little easier to

25 think about what really is, in fairness, the right way to split

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1 | this baby.

2 |        **THE COURT:** Okay.

3 |        **MR. MARRIOTT:** Thank you, Your Honor.

4 |        **THE COURT:** All right. Let's go down the line.

5 |        Mr. McClammy?

6 |        **MR. McCLAMMY:** Thank you, Your Honor. For the

7 | record, Jim McClammy on behalf of Syngenta.

8 |        I would echo what Mr. Marriott said. I think it's

9 | just too early at this stage and an insufficient justification

10 | for the number of 20, which I believe far exceeds what the

11 | local rules would contemplate even for an exceptional case.

12 |        And we've been flexible. We have suggested that for

13 | now it would make sense to have that number be set at 10 for

14 | each of Corteva and Syngenta; but in the hope of reaching a

15 | compromise, we would be willing to say not to have that set

16 | yet. But if the Court is desirous of setting something now, we

17 | think that we should start at the 10 number. And that's

18 | without prejudice to their right to come back to the Court,

19 | after having the benefit of our 26 (a)(1) disclosures, after us

20 | having the benefit of seeing their disclosures, so that we can

21 | have a more informed discussion about who these particular

22 | individuals might be.

23 |        But I agree with Mr. Marriott, the idea that -- as

24 | this case proceeds, that those numbers wouldn't more

25 | appropriately be narrowed. I think starting out more narrowly

1  now would benefit, you know, the efficiencies of this case

2  going forward rather than starting at the number of 20 and then

3  saying that we might even hear from them that we want to go

4  even farther than that.

5          **THE COURT:**  Mr. Carson?

6          **MR. CARSON:**  Yes, Your Honor.  Wesley Carson for the

7  Plaintiffs.

8          Plaintiffs believe that their request is, in fact,

9  already narrow.  We did not choose a number like these other

10 cases that we cite in our 26(f) report, some cases allowing 80

11 party depositions, 70 nonparty depositions, unlimited

12 depositions, 170 depositions.  We actually sat down, and we

13 thought about how many depositions do we need to prove the

14 claims in this case.

15         And this is a complicated case, involving two

16 defendants, six or more active-ingredient product markets.  In

17 general, antitrust cases involve additional proof that are not

18 present in other cases that may be contemplated by the local

19 rules here.

20         So I think, given those facts and also in the facts

21 that we cite in our 26(f) report -- they also had precomplaint

22 investigations.  So, you know, the fact that the courts ordered

23 these hundreds and hundreds of depositions, we're not asking

24 for that here.  What we're asking for is 20 depositions per

25 Defendant and 30 third-party depositions, which would put us at

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  70, which is less than any of the other cases that we cited

2  involving recent large antitrust government actions.

3          **THE COURT:**  All right.  So anything else that anybody

4  needs to be heard on?

5          **MR. MARRIOTT:**  No, thank you, Your Honor.

6          **THE COURT:**  All right.  So what I would intend to do

7  is I want to go ahead and adopt a schedule and parameters for

8  the FTC case while we're here today.  So because there's this

9  dispute, what I'm going to do is -- you know, I said I will

10 split the difference.  But, actually, looking at the number and

11 what you've indicated here, it seems like there is more than

12 10, but I don't count to 20 yet, other than maybe folks that

13 may be identified based on discovery.

14          In light of that, I think it is a reasonable

15 conclusion to go with the number in between where you all think

16 you most definitely need to be.  And so that would be 15.  So

17 what I am going to do is for now set it at 30 third-party

18 depositions that you all agreed to, plus experts, plus the 15

19 each for Corteva and Syngenta.

20          I will just signal that I am open to that being 20.

21 I mean, I think that it's reasonable in a case of this size

22 with the number of distributors you have and the number of --

23 or the time period that you're looking at that that's entirely

24 possible.  But if we're going to keep inching up, I want to

25 know who it is that needs to be deposed and why they couldn't

  22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  be covered in the number that you've got.

2          And so -- and then as to the deposition of the

3  Plaintiffs, it sounds like you all have reached an agreement.

4  At this point I'm not going to set a number for depositions of

5  the Plaintiffs, but I'm also open to that if -- it's not a

6  number issue.  I think the issue is is there anything that is

7  properly subject to a deposition.

8          And so on that, if you all can reach an agreement,

9  then that's certainly within the scope of discovery.  You don't

10 need to come back and ask for permission to add a deposition of

11 the Plaintiff.  I'm just not going to set a specific number or

12 a limit, but I think the issue there is whether those are

13 appropriate or not.  I am going to trust you all to try and

14 work that out.

15         I'm not going to do depositions of counsel.  I think

16 you all can anticipate that we're not going to go down that

17 road.  But if there is some basis whether it would be

18 appropriate to have a deposition or you can't cover it with

19 written discovery, then I'll let you all try to reach an

20 agreement on that; and if you can't, then you all can bring it

21 before me.  Whether you do it as a motion to quash or a motion

22 for leave, however you want to present it to the Court, you can

23 do that, and I'll deal with that as a particular issue.  Again,

24 that's not to be a scope of discovery or the extent of the

25 number that I might include.  It's more a particular issue,

1  depending on what the particular deposition is.

2        So that's what I would intend to do.  What I think

3  might be helpful is for me just to run through then what that

4  looks like as an overall schedule, and then I'm going to take

5  up the separate question of whether and how we coordinate and

6  what we do with the MDL folks.

7        Before I do that, is there anything you all need to

8  be heard on before I start this with the FTC folks?

9        **MS. MACLEAN:**  No, Your Honor, nothing from MDL

10  Plaintiffs on those specific issues.

11        **THE COURT:**  All right.  So let's run through this

12  then.

13        I tried to make a chart based on what I understood

14  your positions to be.  So I'm going to run through this list;

15  and then if I have something that is not what you all agreed to

16  or I have missed something, please let me know.

17        So the track is going to be exceptional.  The date to

18  close discovery will be April 22, 2025, for fact discovery and

19  October 2, 2025, for all discovery.  The discovery will

20  commence on entry of the scheduling order.  We'll go ahead and

21  say discovery can commence today in the FTC case.  Again, all

22  of these are just for the FTC case, and we'll take up the MDL

23  case separately.  So it would be commencing discovery today.

24        The initial disclosures are due April 19, 2024.  The

25  interrogatories and requests for admission, Defendant Syngenta

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  and Defendant Corteva may each serve up to 30 interrogatories

2  and 30 requests for admission to the Plaintiffs collectively,

3  and the Plaintiffs may serve up to 30 interrogatories and 30

4  requests for admission on Syngenta and 30 on Defendant Corteva.

5          As to document retention, you all have requested

6  retention and confirmation, that there is no auto delete and

7  employees with personal devices used for business are retaining

8  any information.

9          With respect to depositions, as to third parties,

10  Plaintiffs may take 30 depositions of third parties.  That does

11  not include former employees of the Defendants.  The Defendants

12  may also take 30 depositions of third parties.  You may depose

13  witnesses from the prior investigative hearings.  We will let

14  you all continue to meet and confer regarding protocol for time

15  limitations for those.  And the deposition of experts do not

16  count in that limit of 30.

17          In addition to that 30, the Plaintiffs may take 15

18  depositions of each Defendant, Syngenta -- 15 of Syngenta and

19  15 of Corteva, and that includes current and former employees.

20          With respect to depositions of the Plaintiffs, I'm

21  not going to set any particular number on that, but I will

22  leave it to the parties to bring that before me if there are

23  any issues or disputes if they can't agree.  If there's a

24  deposition notice, then that needs to be resolved further.

25          The proposed protective order and ESI order would be

22cv828 FTC v Syngenta  -- Initial Pretrial conf. -- 4/18/24

1  submitted to the Court by April 30, 2024.  After we enter that

2  order, the Plaintiffs would need to produce their investigative

3  file within 14 days thereafter.  And then 45 days after

4  production, the parties will send their requests for

5  production.  They may supplement that later if there's good

6  cause, but that would be the substantial exchange at that

7  point.

8        And then 30 days after service of those requests for

9  production would be the deadline for proposing custodians and

10  search terms.  And then within 30 days after the proposals,

11  there would be an agreement or a motion to compel as to the

12  custodians and search terms.

13        That gets us roughly into the fall.  So my thought

14  would be to set this for a status conference in October, which

15  would essentially leave it to you all between now and October

16  to go through that process of exchanging the investigative

17  file, doing your requests for production, agreeing on search

18  terms, and then come back here before we start the next round

19  of things.

20        And so my pretrial conference day in October is

21  October 24.  So you all can go ahead and at least tentatively

22  set that for a hearing on October 24, and we'll just call it a

23  status conference or hearing to see where we are and make sure

24  there are not any issues with discovery at that point.

25        And then the document production will begin on a

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

rolling basis, substantially complete by January 22, 2025.

The deadline for producing a privilege log would then be February 21, 2025.

The deadline to notice fact depositions would be for February 21, 2025.

Again, it may be appropriate then to have another status conference in February. I'll wait and set that. But just so you all have it on your radar screen, we'll anticipate coming back as we need to check in on these things.

The close of fact discovery would be April 22, 2025.

Expert reports from both sides are June 6, 2025, with rebuttals August 5 and replies September 4. The close of expert discovery is October 2.

And then one other date I had was to request leave to amend the pleadings or add parties. I don't anticipate that we're going to go through another round of that, but to the extent that we needed to, the deadline for requesting leave would be July 19, 2024.

I understood that you all didn't believe mediation would be helpful now. What I would like to do is go ahead and include that by October 2, 2025. I think it would be helpful to at least have you meet with the mediator to see where you are when you get later in the process. So at some point between now and October 2, 2025, whenever you all think it may be most helpful and at least by that fall of 2025, that you go

Case 1:22-cv-00828-TDS-JEP   Document 212   Filed 05/22/24   Page 36 of 66

1  ahead and meet with a mediator.

2          You all can agree on a mediator; or if you don't

3  agree within, say, three weeks, the clerk will just select a

4  mediator from the court's panel.  My guess is that you all

5  would probably be able to find someone that you can agree who

6  would have some degree of expertise in this area that might be

7  helpful.  If not, then we'll just choose somebody on the

8  court's regular panel of mediators here.

9          And I know that this is not automatically selected

10 for mediation, but I think it might be helpful to include it

11 here.  And so we'll just do that at some point during the

12 discovery period.

13         And then dispositive motions and *Daubert* motions

14 would be November 18; responses, January 23, 2026; and replies,

15 February 2, 2026 -- February 20, 2026.

16         That is an extraordinarily long discovery period.  I

17 understand why you're asking for that much time, given the

18 volume of discovery.  That's part of the reason why I'm

19 exceeding even the exceptional number of depositions and why we

20 have the volume that we do.  But I can't imagine a scenario

21 where then we come back and say, Let's keep extending this

22 further.  So given how long the discovery period is that we're

23 setting here, I'm anticipating that you all will stay with

24 that.

25         And just to forecast a bit here, while I think we may

1  be able to coordinate some discovery, I'm not intending to

2  necessarily include the same time limits.  And so if there is

3  some additional discovery that needs to happen in the MDL case,

4  then the FTC case can still stay on the track that it's on, or

5  at least that would be my intent going into this.

6          So you all in this case have your scope, your

7  schedule.  This is what you should be working with.  And then

8  we'll talk about -- to the extent it's helpful and efficient to

9  coordinate, then maybe we can do that.  And, certainly, I think

10 that's in Defendants' interest -- it's in everyone's interest

11 to do that, to the extent possible.  But I'm not anticipating

12 that we will need to extend these deadlines in the FTC case,

13 just to go ahead and give everyone that initial thought.

14         So before I then turn over to the MDL case, anything

15 that I missed?  Anything I need to correct?  Or anything else

16 you wanted to be heard further?

17         Ms. Maltas?

18         **MS. MALTAS:**  No, Your Honor.

19         **THE COURT:**  All right.  Mr. Marriott?

20         **MR. MARRIOTT:**  Your Honor, I think we just were

21 asking one another whether it's clear what the interrogatory

22 limit is as it relates to the States.  I think what we need is

23 the States and the FTC together.

24         **THE COURT:**  Together, yes.  My understanding would

25 be -- let me make sure I articulate that right, but my

understanding was that the Plaintiffs collectively, and that
would include the FTC and the States together, could serve 30
interrogatories and 30 requests for admission on Syngenta and
30 interrogatories and 30 requests for admission on Corteva.

          **MR. MARRIOTT:**  That's our understanding.  Thank you,
Your Honor.

          **THE COURT:**  And, Ms. Maltas, is that your
understanding as well?

          **MS. MALTAS:**  Yes, Your Honor, that's our
understanding.

          **THE COURT:**  All right.  I should ask, Mr. Harper,
anything you needed to add or correct as to any of those things
for the States.

          **MR. HARPER:**  No, that's fine.  Thank you, Your Honor.

          **THE COURT:**  All right.  And, Mr. McClammy, for
Syngenta?

          **MR. McCLAMMY:**  For Syngenta, Jim McClammy.

          Could I just ask Your Honor one question?

          **THE COURT:**  Of course.

          **MR. McCLAMMY:**  Which is I know Your Honor mentioned
including something with respect to the document preservation.

          **THE COURT:**  Right.

          **MR. McCLAMMY:**  I just would ask for clarity as to
that.

          **THE COURT:**  Okay.  So I noted in the Plaintiffs'

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1   request that they had asked -- let's see.  And this is at page

2   6, subparagraph 2(b).  It says:  "The Parties have discussed

3   issues relating to document preservation and retention.

4   Plaintiffs requested information regarding Defendants' systems

5   and/or protocols in place for document retention with respect

6   to the collaborative and ephemeral messaging.  Plaintiffs also

7   requested the Defendants confirm they have disabled automatic

8   deletion of documents by messaging programs and that employees

9   with responsive documents have assured that personal devices

10  used for business are retaining communications."

11          I think it was that second sentence there that I

12  read, that there's no longer any automatic deletion of

13  documents happening and that employees are retaining

14  communications.

15          Is there any issue with that, Mr. McClammy?

16          MR. McCLAMMY:  No, Your Honor.  I think the -- just

17  so that we can make sure that we're compliant with the order or

18  directive of the Court.  We, for sure, have policies in place

19  and have directions in place that these are not to be deleted.

20          THE COURT:  Right.

21          MR. McCLAMMY:  And, you know, we don't want to run

22  afoul of the Court's order --

23          THE COURT:  Right.

24          MR. McCLAMMY:  -- if, inadvertently, an employee had

25  done something.  And so the ability to say that we've ensured

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  it -- we've taken every possible measure to make sure we are

2  compliant --

3          **THE COURT:**  I got you.

4          **MR. McCLAMMY:**  -- but I just don't want to fall

5  short --

6          **THE COURT:**  So the only sort of issue you're raising

7  is with the word "ensured" on employees; it's not -- no issue

8  with the disabling automatic deletion?

9          **MR. McCLAMMY:**  Exactly, Your Honor.

10         **THE COURT:**  Deletion.  It's just with employees.  And

11 to the extent you can't control everything they might do with

12 their personal device, you've done everything that you can to

13 communicate the policies and that they shouldn't be deleting

14 any communications?

15         **MR. McCLAMMY:**  That's absolutely right, Your Honor.

16         **THE COURT:**  Mr. Marriott?

17         **MR. MARRIOTT:**  Yeah.  I appreciate counsel raising

18 this issue.  I think that we had -- certainly, counsel for the

19 Government asked these questions, and I believe what was said

20 by all of the Defendants is that we believe that the clients

21 and the companies were taking steps to preserve documents that

22 they recently believed were potentially responsive.

23         What -- I guess I'm mindful a little bit of this idea

24 that that doesn't necessarily mean that every single employee

25 in the company is under a hold order.  What one does in these

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  circumstances is figure out who are the people from whom it

2  appears they want documents, and efforts are made to suspend

3  the automatic deletion as to those individuals, not necessarily

4  in a company that is going to have tens of thousands of people.

5  So I think flagging that that -- that we aren't necessarily now

6  going to be under an order that says within the company,

7  broadly speaking, thou shall not.

8         **THE COURT:**  Right.

9         **MR. MARRIOTT:**  And so we took this as a good-faith

10  effort on the part of the Government to just remind us of the

11  obligation.  We believe our clients have fulfilled that

12  obligation.  We would suggest that any kind of actual order on

13  this is better reserved to the ESI order, which the parties are

14  separately negotiating, and that it's there that we imagine

15  this would be turned into -- that this expression of concern

16  would be turned into an order.

17         **THE COURT:**  All right.  I think that's fair.  I don't

18  need to include that in the scheduling order.  I think that it

19  is certainly expected or anticipated that any automatic

20  deletion has been turned off for documents that aren't

21  potentially relevant or related and that employees reasonably

22  believed to have responsive documents have been directed not to

23  delete any communications, but I'll leave the specifics of the

24  language for that for the ESI order.

25         Ms. Maltas, any concern on that?

Case 1:22-cv-00828-TDS-JEP   Document 212   Filed 05/22/24   Page 42 of 66

1          **MS. MALTAS:**  No, no concern on that.

2          I mean, we did -- in addition to what Your Honor

3    pointed out, we did specifically include collaborative and

4    ephemeral messaging.  That's just become a very hot topic in

5    cases like this recently.  We've seen a lot of defendants who

6    don't preserve that type of information.  So we do just want to

7    make sure that we are, and I believe Syngenta and Corteva are

8    on notice that that is something that needs to be retained and

9    that that's a critical piece of discovery.

10          **THE COURT:**  All right.  To the extent it's

11   potentially responsive or relevant to the issues in this case?

12          **MS. MALTAS:**  Yes, Your Honor.

13          **THE COURT:**  Okay.  All right.  So I'm not going to

14   include anything specifically in the scheduling order on that,

15   but, Mr. McClammy and Mr. Marriott, you all both sort of

16   understand generally what the Government is requesting and what

17   your obligations would be on that?

18          Mr. McClammy?

19          **MR. McCLAMMY:**  Absolutely, Your Honor.

20          **THE COURT:**  Mr. Marriott?

21          **MR. MARRIOTT:**  I believe so, Your Honor.

22          **THE COURT:**  All right.  Very good.

23          Mr. McClammy, anything else?

24          **MR. McCLAMMY:**  I think the last thing is just another

25   point of clarification just on the number of interrogatories

1  and requests for admission --

2        **THE COURT:**  Right.

3        **MR. McCLAMMY:**  -- that those numbers are for each of

4  Syngenta and Corteva?

5        **THE COURT:**  Right.  And I think that's what I

6  intended, and I think it's always good to clarify.  So my

7  intent on that is Syngenta and -- Syngenta may serve 30

8  interrogatories and 30 requests for admission to the Plaintiffs

9  collectively.  So that includes the States as well.  So you've

10 got 30.  And then Corteva has 30 interrogatories and 30

11 requests for admission to the Plaintiffs collectively.

12        Is that your understanding?

13        **MR. McCLAMMY:**  Yes, we're all on the same page there

14 then.  Thank you, Your Honor.

15        **THE COURT:**  Absolutely.

16        And, Ms. Maltas, is that your understanding as well?

17        **MS. MALTAS:**  Yes, that's our understanding as well.

18        **THE COURT:**  Okay.  All right.  So I think we've

19 clarified -- we set out all of the deadlines, and we've

20 resolved the issues on that.

21        So before I turn to the issue of the MDL case and the

22 possible coordination issues, anything else, Ms. Maltas, we

23 need to address for the FTC scheduling order?

24        **MS. MALTAS:**  No, Your Honor.

25        **THE COURT:**  Okay.  And, Mr. Marriott, anything for

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  the FTC scheduling order?

2          **MR. MARRIOTT:**  No, Your Honor.

3          **THE COURT:**  Mr. McClammy?

4          **MR. McCLAMMY:**  No, Your Honor.

5          **THE COURT:**  Okay.  All right.  So now I want to open

6  up this separate issue with the MDL case and so we can talk

7  about coordination.

8          Essentially, this is where we are:

9          The Defendants requested a stay of discovery, which

10  is understandable because the motions to dismiss were pending.

11  The district judge entered an order staying discovery, which

12  means I'm not going to just implicitly or informally start

13  discovery without some clear direction that you all are in

14  agreement and that the district judge has authorized that.  So

15  that's where we are.

16          And if we do start discovery, then we need to decide

17  are we going to set a scheduling order and actually -- or an

18  initial pretrial conference so we can do a full scheduling

19  order, or are we just going to have some discovery to the

20  extent that it overlaps.

21          So what I may do is -- let me start with the MDL

22  Plaintiffs.  So you can just tell me where you are with the

23  discovery, and then I will hear from the Defendants on that.

24          **MS. MACLEAN:**  Thank you.  Margaret MacLean for the

25  private Plaintiffs.  I appreciate the opportunity to be heard

    22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  here today.

2          **THE COURT:**  Sure, absolutely.

3          **MS. MACLEAN:**  So we are in agreement with the

4  Defendants that discovery should start.  We would be happy to

5  get going with the 26(f) conference procedure, but we are very

6  much at an informational disadvantage here.  We haven't seen

7  even the unredacted complaint in this action, let alone the

8  materials that Defendants produced to the FTC and let alone the

9  investigative file.

10         So from our perspective, receiving those materials

11  would be the number one thing that would help us get a sense of

12  what would be an appropriate schedule for this case where

13  efficiencies could be realized as far as discovery.  So that's

14  our number one priority.  To the extent that the Court's

15  inclined to allow us to commence discovery, which we would very

16  much encourage and hope for, that's where we would like to

17  start, Your Honor.

18         **THE COURT:**  Okay.  So, essentially, you're requesting

19  to go ahead and begin discovery.  You would request first to

20  get a copy of the investigative file, and then you would

21  request to go ahead and set it for an initial pretrial

22  conference after you have the investigative file so that you

23  can prepare a discovery plan?

24         **MS. MACLEAN:**  That's correct, Your Honor.

25         **THE COURT:**  All right.  That's helpful.  Thank you.

    22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1      All right.  So I'm going to go to the Defendants now.

2      Mr. Marriott, I can start with you again in terms of

3 where we are now for Defendants with discovery in the MDL.

4      **MR. MARRIOTT:**  Sure, Your Honor.

5      So, as we've said, we're eager to see these cases

6 coordinated.  We've now had a conference and an initial hearing

7 here with the Court in the FTC and the States/Government

8 action.  We would like to see that happen at the earliest

9 opportunity with the private Plaintiffs.  We see no reason to

10 delay that when we ordinarily wouldn't have the production of

11 any documents in anticipation of having that conference.  So we

12 can have that conference right away.

13      We don't actually control the FTC's investigative

14 file in any case.  That's something we don't even have.  So

15 that's something that has a whole process associated with it.

16 So we don't think having an initial conference should be

17 delayed in view of that.

18      We made an effort --

19      **THE COURT:**  Well, I will -- I'm going to put sort of

20 a little bit of an extra thought on that --

21      **MR. MARRIOTT:**  Sure.

22      **THE COURT:**  -- because my recollection, at least, was

23 that they've requested that, and you all opposed that.

24      **MR. MARRIOTT:**  We opposed the production of our own

25 production to the FTC.

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1          **THE COURT:**  Okay.

2          **MR. MARRIOTT:**  We didn't oppose because we don't -- I

3  mean, I don't recall opposing, but we wouldn't have had -- we

4  don't have it anyway.  So we weren't in a position to produce

5  the Government's investigative file.  So we don't have that.

6          We certainly opposed the commencement of discovery

7  before the pleadings were set and the motion to dismiss had

8  taken place.  We acknowledge that.  We did that.  I believe

9  that's the practice --

10          **THE COURT:**  Right.

11          **MR. MARRIOTT:**  -- and the district judge ordered

12  that.

13          **THE COURT:**  Right.

14          **MR. MARRIOTT:**  So that we opposed.

15          We're simply saying now there's no reason that in the

16  private case we shouldn't get going, just as we've gotten going

17  in this case.  We had this conference today without there being

18  any separate discovery in this litigation by the FTC of us, and

19  they haven't gotten the production relating specifically to

20  this case here.  We had the conference, as you would do anyway.

21  You have the conference.  As of the conference, discovery would

22  start.  They'll serve their discovery requests.  They'll serve

23  their interrogatories.  We'll respond to them in due course.

24          What we're saying had to happen, Your Honor, is -- we

25  began the process already, right.  We failed, but we tried to

    22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  bring the parties together to see if we could get one schedule

2  for everybody.  So while we failed -- and we totally understand

3  why we failed, Your Honor -- the process has begun.  We've

4  shared our schedule.  We've shared our thoughts.  Plaintiffs

5  have shared their thoughts, right.  We haven't officially done,

6  as, I suppose, technically what the rules require there.

7          So what we would suggest is we simply now complete

8  that process.  We can do it very promptly.  If the Court will

9  give us a date as to when we can come back and do this for the

10 private case, everything will cascade off of that date, and we

11 can be here and we can get underway.

12         Controlling the investigative file is not something

13 that we control.  We don't have that.  And as soon as we get

14 it, I understand what has to happen is a protective order has

15 to be entered.  Then notice has to be given to the people --

16 the third parties who made information available to the

17 Government.  When that notice period has run, the Government

18 can then give the file to us.  Then there is an issue of

19 whether we give it to the private Plaintiffs, whether the FTC

20 gives it to the private Plaintiffs.

21         But I would hold up --

22  **THE COURT:**  So -- because our order we just adopted

23 said I will get the protective order and the ESI order by

24 April 30, and then 14 days after entry is the deadline for them

25 to produce the investigative file to you.

1          Is that right, or you think there's other notice and

2    periods of delay on that?

3          Ms. Maltas, I will let you --

4          **MS. MALTAS:**  That notice is baked into the 14 days,

5    Your Honor.

6          **THE COURT:**  Okay.

7          **MS. MALTAS:**  And, also, if it would just be helpful

8    to clarify when --

9          **THE COURT:**  Sure.

10         **MS. MALTAS:**  -- we talk about the investigative file,

11    a vast majority of the investigative file is Syngenta and

12    Corteva's documents --

13         **THE COURT:**  Right.

14         **MS. MALTAS:**  -- we will not be producing back to

15    them.  They are free to produce them to the private Plaintiffs

16    if they would like to.  They are their documents.

17         The issue on the notice is the third parties.  So we

18    will give the proper notice to the third parties once the

19    protective order is entered, produce those documents to

20    Syngenta and Corteva.  We're not really allowed to produce them

21    directly to the private Plaintiffs because we're not in the

22    same case.  But then at that point, Syngenta and Corteva can

23    also let the third parties know, Hey, we're going to give those

24    documents to the private Plaintiffs, too, and they will get

25    those.

1        But those really are just the third-party documents.

2   And Syngenta and Corteva -- my understanding is, I believe,

3   they are free to do whatever they would like with their

4   documents.

5        **THE COURT:**  Okay.  So when you talk about the

6   investigative file, essentially what you contemplate is the

7   third-party documents and then maybe a list of the documents

8   that were provided to you by Syngenta and Corteva, since they

9   already have those documents, just confirming, and it includes

10  all of the documents that they provided to you?

11       **MS. MALTAS:**  Yes, Your Honor.  I believe we'll have

12  in the protective order some provisions that say, essentially,

13  that anything produced by Syngenta and Corteva in the -- in the

14  investigation will then be part of this case.  They don't have

15  to reproduce anything to us either if it were to be responsive

16  to our new RFPs.  I'm trying to be efficient.

17       **THE COURT:**  All right.  So, Mr. Marriott, I'll let

18  you jump back in with where you were then.

19       **MR. MARRIOTT:**  So, Your Honor, again, we're happy to

20  get it going.  Obviously, we want to coordinate this.  So if we

21  don't get this going, we can't really coordinate.

22       **THE COURT:**  Right.

23       **MR. MARRIOTT:**  So I think the incentive is pretty

24  straightforward.

25       **THE COURT:**  Right.

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1    **MR. MARRIOTT:**  So we're now on a path.  Your Honor

2  will enter the order that you laid out today.

3         **THE COURT:**  Right.

4         **MR. MARRIOTT:**  We would like to meet and confer with

5  the private Plaintiffs to see if we can't get an agreement as

6  to what the dates are.  Whether they are the exact same dates

7  or not, only the meet-and-confer will tell.

8         **THE COURT:**  Right.

9         **MR. MARRIOTT:**  But they will be whatever they will

10 be.  If we reach an agreement, great.  If not, we would like to

11 get in front of this Court as soon as we can to have Your Honor

12 decide what the schedule is.  And a protective order can be

13 entered in that case, as it's being entered in this case.  And

14 with the protective order entered, we can begin to share

15 documents.

16        **THE COURT:**  So it sounds like at least the bulk of

17 the investigative file or a large or important part of it would

18 be you all's documents that were the source of the -- or the

19 subject of the prior request that was opposed.

20        Are you agreeing now that you would produce those

21 documents to --

22        **MR. MARRIOTT:**  Yeah.  I mean, I don't know what

23 proportion it is because I haven't seen it.  I would imagine

24 it's a big chunk of it.  We are prepared to produce our

25 documents upon the entry of a protective order.

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1    **THE COURT:**  Okay.  All right.  So once the protective

2    order is entered, then you would be able to do that not only to

3    Plaintiffs, but then to the MDL Plaintiffs as well?

4         **MR. MARRIOTT:**  Correct.

5         My point simply, Your Honor, is what we don't want to

6    see happen is, you know, the protective order gets entered.  We

7    produce the documents.  And then we wait six months while we

8    have a discussion about what a schedule should look like.  In

9    our minds, that's essentially a guarantee there won't be

10   coordination.

11        **THE COURT:**  Right.

12        **MR. MARRIOTT:**  So I'm happy to coordinate and do it

13   early if it means that we're actually proceeding to get

14   coordination.  But if we're not proceeding to coordination,

15   what's the point in our sharing it early?

16        **THE COURT:**  Right.  No, I understand, although, you

17   know, I think for the Court's purposes -- and, again, I

18   understand why you didn't want to start discovery while there

19   were motions to dismiss pending.  But it is a pivot on all

20   fronts in terms of going ahead and now shifting gears on that.

21        What I can tell you is that the next possible day

22   that we would do this was in -- it would be in May for my

23   pretrial motion day in May.  I'm looking to see if I have that.

24   So I think May 23rd.  And the case manager is going to look and

25   let me know for sure.

     22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1    And so it's not going to happen before then, but I
2  guess the question is -- and I will come back to the MDL
3  Plaintiffs as well -- whether you can get them enough
4  information for them to be able to have a reasonable
5  meet-and-confer and be able to come back here for the next May
6  23rd pretrial motion date?

7    Although, again, I think that before I actually have
8  that pretrial conference, you all need to file a joint motion
9  to lift the stay of discovery.  And then it will be up to the
10  district judge.  He may refer it to me.  But if he wants to
11  consider whether to change his order on that or whether to ask
12  you all to address further why it's before him that way, I
13  think that's a procedural step you all need to do first,
14  because --

15         MR. MARRIOTT:  Understood.

16         THE COURT:  -- as a technical and substantive matter,
17  I think discovery has been stayed by the district judge's
18  order.  So you all need to file a joint request, explain why
19  you changed your position on that, ask it to be set for a
20  pretrial conference.  And then, again, if the district judge
21  refers it to me, I can do that; but if he wants to take it up
22  himself, then he can consider it that way as well.

23         MR. MARRIOTT:  Thank you, Your Honor.  I understand.

24         THE COURT:  Yes, sir, Mr. McClammy?

25         MR. McCLAMMY:  Thank you, Your Honor.

1          Just to pick up, I guess, where Your Honor left off,

2    we are certainly amenable and, indeed, want to move forward as

3    quickly as we possibly can here.

4          I think with respect to the documents issue, I would

5    like to --

6          (Indiscernible cross-talk.)

7          **THE COURT:**  Right.

8          **MR. McCLAMMY:**  -- earlier request, there's two pieces

9    of this.  And I don't believe it was our opposing the

10   precomplaint discovery that has led to kind of the departure

11   from these cases being on a much more similar track.  It was

12   understood at the time, I think, that the motions to dismiss

13   would actually be heard at the same time.  I believe it was the

14   Plaintiffs' request that they actually await a decision on the

15   FTC's motions to dismiss that has resulted in the motions to

16   dismiss being heard on a different schedule.

17          Given where we are now, though, and with the fact

18   that the -- there's such an overlap here in the underlying

19   facts and the witnesses and the documents, it really, I think,

20   is impossible for these cases to be anything other than

21   coordinated.

22          In light of that, we would like to start -- we

23   understand the Plaintiffs in the MDL action would like to start

24   the discovery to allow for that possibility.  I think it is a

25   little bit asking for something that they would not normally

      22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  have the benefit of to say that they can't make a decision now

2  on what their schedule might look like.

3           As Your Honor has noted, this is already a fairly

4  lengthy schedule.  The case is certainly complex.  But the idea

5  that parties that are used to being in complex cases wouldn't

6  be able to work out a schedule before they had the opportunity

7  to review every document, I don't think that's what we normally

8  do.  We're typically in the situation where we're thinking

9  about the number of depositions, how long it would take for

10 discovery.  And they don't have to live with what would usually

11 be the case, coming up with a deadline for the end-of-fact

12 discovery when they haven't received the document yet, haven't

13 even started to think about search terms and custodians.  What

14 they are going to get here is the benefit of the FTC's

15 investigation.  So they're going to have a bunch of documents

16 that they will be able to start the kickoff.  We should be able

17 to move even quicker in a case like this than what might be the

18 normal case where we're starting from scratch.

19           **THE COURT:**  So if the Court were to lift the stay of

20 discovery and let it proceed, and if I was then able to set

21 this for a pretrial conference on May 23rd, and if the

22 protective order is entered May 1, once the proposal is

23 submitted -- or at least, you know, very early in May -- then

24 is there any reason why you couldn't go ahead and produce your

25 investigative file or the information that you have that you

1 previously produced to the Government to the MDL Plaintiffs

2 before May 23rd to go ahead and move that process forward

3 faster so that we don't have to set it out for another later

4 day?

5           **MR. McCLAMMY:** No, Your Honor. If there is a

6 protective order entered and then governing the MDL matter, we

7 would be prepared to make the production of the Syngenta

8 documents upon the entry of that order as long as the discovery

9 has been lifted. I would hope we would be able to do that

10 consensually with the Plaintiffs with the understanding that

11 we're working towards a schedule.

12           **THE COURT:** Right.

13           **MR. McCLAMMY:** And if, for example, FTC is able to

14 give us the identities of the third parties that we would need

15 to contact and notice, we will even work to provide notice to

16 those third parties in advance of us even receiving these

17 materials so that we can have the notice period start to run as

18 quickly as possible. And as soon as we receive things, we can

19 also turn them over to the class Plaintiffs.

20           **THE COURT:** All right. I think that's helpful. I

21 think the more you all do quickly on that, if the discovery

22 stay is lifted, the more likely that we could set this case for

23 May 23rd and actually proceed on a schedule at that point.

24           But let me come back to Ms. MacLean, and let you tell

25 me for the MDL Plaintiffs where you are in response to

     22cv828 FTC v Syngenta -- Initial Pretrial conf. -- 4/18/24

1 everything that's been added here.

2          **MS. MACLEAN:**  Sure.  Thank you.  Margaret MacLean

3 again.

4          So, yes, I take Mr. McClammy's point that we wouldn't

5 ordinarily have access to all of those materials to set a

6 schedule, but, here, the Defendants are wanting to coordinate.

7 And so in order for us to be able to coordinate, we need to

8 know what we are, in fact, coordinating, what has been done,

9 and what's left to be done.

10          And as I understand it, it's a fairly voluminous

11 amount of documents we're dealing with here.  It's not two

12 pages and I flip through it and I understand.  So I think there

13 will be a certain amount of digestion period.

14          That said, we're looking to go forward as soon as

15 possible.  To the extent that the Defendants are able to make

16 their production immediately or even sooner than contemplated,

17 that would go a long way.  We're not looking to delay here, but

18 we are looking to at least have -- be on an equal informational

19 footing before we start trying to coordinate something we don't

20 know what it is.

21          **THE COURT:**  Okay.  All right.  I think that's

22 helpful.

23          Mr. Marriott, anything else you need to add on that?

24          **MR. MARRIOTT:**  I think I have said my piece.  Thank

25 you.

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1          **THE COURT:**  Mr. McClammy?

2          **MR. McCLAMMY:**  Nothing further, Your Honor.

3          **THE COURT:**  All right.  For the Government in the FTC

4 case, anything you needed to add as to what they may have

5 discussed on the MDL case?

6          **MS. MALTAS:**  No, Your Honor.

7          **THE COURT:**  Okay.  So this is my thought for you all.

8          I think the first thing you need to do is file a

9 joint motion to lift the stay of discovery and request that the

10 case be set for an initial pretrial conference.  You need to

11 include in there why you are now agreeing to that or what has

12 changed and why that would be helpful and worthwhile to do,

13 even while the motions to dismiss are pending.

14          That may go to the district judge, who will then

15 consider it, because it was his order to stay discovery.  If he

16 refers it to me, then I can go ahead and move on that, based on

17 the information you presented; but it needs to go to him first

18 so he can make the decision about whether to address that or

19 whether to refer it to me.

20          If discovery is then allowed to proceed, if the stay

21 is lifted, then I would intend to set it for the next available

22 pretrial conference day just so you all will have it on your

23 calendar.  That's May 23.

24          I am going to ask my folks to confirm that.

25          **THE CLERK:**  Yes, ma'am.

    22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1        **THE COURT:** Okay. So on May 23.

2        And then if that -- if that order has been entered

3  for the stay of discovery to be lifted, then in anticipation of

4  the pretrial conference, once a protective order is entered in

5  the FTC case, and that includes, to the extent appropriate, the

6  MDL Plaintiffs, then you all can go ahead and make that initial

7  disclosure of those documents that were previously produced in

8  the investigation or in the prior Government proceeding so that

9  there's additional information that the MDL Plaintiffs have in

10  order to be able to discuss coordination.

11        So that, I think, would be essentially the option for

12  you all going forward, to get the stay lifted. And then, if

13  it's lifted, to go ahead and proceed with disclosing the

14  information that was already provided that's part of the

15  investigative file, or at least that Syngenta and Corteva

16  provided to the Government as part of that proceeding, so that

17  the MDL Plaintiffs have it, to the extent possible prior to the

18  pretrial conference, so that that can be at least maybe moving

19  the discussion forward and we don't have to continue it out

20  another month while they're reviewing that and taking that into

21  account.

22        In terms of coordination, even if the stay of

23  discovery is lifted, these are still separate cases. I think

24  the district judge has made that clear. I'm not going to try

25  to consolidate them in any way, but we can coordinate. And so

22cv828 FTC v Syngenta  -- Initial Pretrial conf. -- 4/18/24

1  I'm very interested in coordination, to the extent that can be

2  efficient, but not to the extent that it would delay the FTC

3  case or, for that matter, the MDL case.

4        And so I would intend to adopt separate discovery

5  limits for the MDL case.  And then what the coordination should

6  or could include would be where depositions, for example, are

7  cross-noticed, then they can count for both sides.  If they are

8  not cross-noticed, then there may need to be good cause before

9  that individual is deposed again, along the lines that we avoid

10 some duplicative discovery by precluding a second deposition of

11 the same person, unless there was a good cause or good reason

12 for not having cross-noticed and participated in the deposition

13 the first time.

14        So if the same discovery limits were applied in the

15 MDL case, you may end up with them all cross-noticed and having

16 exactly the same number that way; but if either side wants to

17 pass on one of the depositions to take someone else, then

18 that's an option that they would reserve as well.

19        Those are the kinds of things you all can discuss,

20 but that's the general sense of how we can still have discovery

21 proceeding in each case on its own schedule and its own scope

22 but with coordination so that we don't unnecessarily duplicate,

23 certainly, depositions but also written discovery, to the

24 extent that you all want to try to address that.

25        That maybe helps -- hopefully helps a little bit in

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  terms of advancing the discussions that you may have.

2          Let me ask -- I'll start with you, Ms. MacLean.

3  Anything else that would be helpful in terms of where we

4  proceed in this case today?

5          **MS. MACLEAN:**  No, Your Honor, I think that that was

6  clear and that was helpful.

7          **THE COURT:**  All right.  Very good.

8          Mr. Marriott?

9          **MR. MARRIOTT:**  All good, Your Honor.  Thank you.

10         **THE COURT:**  Okay.  And, Mr. McClammy?

11         **MR. McCLAMMY:**  Nothing further.  Very helpful, Your

12  Honor.

13         **THE COURT:**  Okay.  All right.  Very good.

14         And then, Ms. Maltas, I will come back to you, too.

15  Anything else you would need to add for the FTC?

16         **MS. MALTAS:**  Nothing else, Your Honor.

17         **THE COURT:**  All right.  So what I am going to do

18  is -- actually, what I may do is ask you all to submit to me

19  now a proposed scheduling order that includes all of those

20  things we just discussed.  I think it looks like your joint

21  proposal, except with just a few minor modifications that I've

22  made.  But it would be helpful to me for you all to submit that

23  to make sure that I've covered everything and that we've

24  included -- and I want you all -- I don't want just an order

25  from one side.  I want you all to talk to each other so that

   22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  it's clear that -- I obviously understand you didn't reach an

2  agreement that 15 was the limit, that that was imposed by the

3  Court.  But, otherwise, that it's agreed in terms of what all

4  the provisions are.

5          **MR. MARRIOTT:**  This is David Marriott.

6          I'm confident we can submit an agreed-upon order,

7  Your Honor.

8          **THE COURT:**  That will be helpful to me.  And then as

9  soon as you submit that, I can turn around and get that filed

10 so it's part of the record.

11         Ms. Maltas?

12         **MS. MALTAS:**  We can also do that.

13         I did just want to confirm, though, for the record

14 that we have in our scheduling order that discovery will open

15 upon the issuance of the scheduling order, but that has been

16 amended.  Discovery opens now; correct?

17         **THE COURT:**  That's correct.  We'll go ahead and open

18 discovery now so that nothing about getting that entered delays

19 the start of discovery or the dates that we've otherwise set.

20 But it would still be helpful if you all can go ahead and do

21 that sooner rather than later so we can get that entered.  So

22 if you can do that here in the next day or two, get it

23 submitted as a proposed order, and then I can get it entered

24 for you.

25         **MS. MALTAS:**  Wonderful.  Thank you, Your Honor.

Case 1:22-cv-00828-TDS-JEP   Document 212   Filed 05/22/24   Page 63 of 66

1          **THE COURT:**  Very good.

2          And so with respect to the FTC case, the minute entry

3   will just note that we had the initial pretrial conference and

4   that any disputes were resolved, and the Court will enter a

5   scheduling order, and the parties will submit their joint

6   proposed order after the hearing.

7          With respect to the MDL case, we'll include a minute

8   entry, since we've had the proceeding here, that if the parties

9   are in agreement, they'll file a joint motion to lift the stay

10  of discovery for consideration by the Court and that if the

11  case is ready to proceed with discovery and the stay is lifted,

12  then it can be potentially set for a pretrial conference on

13  May 23rd.

14         All right.  I think that takes care of everything.

15  As I said, my practice is to go around the room until no one

16  has anything left to say.  So I'm going to do it one last time.

17         Ms. Maltas, anything else for the FTC?

18         **MS. MALTAS:**  No, thank you, Your Honor.

19         **THE COURT:**  I'm actually going to ask Mr. Harper,

20  too.

21         Mr. Harper, anything else for the States?

22         **MR. HARPER:**  No, Your Honor.

23         **THE COURT:**  And then, Mr. Marriott?

24         **MR. MARRIOTT:**  Nothing further Your Honor.  Thank

25  you.

     22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

```
 1          THE COURT:  Mr. McClammy?

 2          MR. McCLAMMY:  No, Your Honor.

 3          THE COURT:  All right.  And, Ms. MacLean?

 4          MS. MACLEAN:  No, Your Honor.

 5          THE COURT:  Very good.  Thank you all.

 6          I will note for the FTC folks, you're certainly

 7  invited to come for the initial pretrial conference in the MDL

 8  case.  So in the same way, if there is anything that needs to

 9  be addressed or heard, I'll just put you on notice that you're

10  included in that as well.

11          MS. MALTAS:  Thank you, Your Honor.  I'm sure we'll

12  send a representative.

13          THE COURT:  Very good.

14          We'll go ahead and adjourn court.

15       (END OF PROCEEDINGS.)

16

17                         ******

18

19

20

21

22

23

24

25
```

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF TRANSCRIBER

4

5          I,  Briana L. Chesnut, Official United States Court

6  Reporter, certify that the foregoing transcript is a true and

7  correct transcript of the proceedings produced solely from an

8  audio recording to the best of my ability in the above-entitled

9  matter.

10         Dated this 22nd day of May 2024.

11

12

13                    _Briana L. Chesnut_

14         _____

15         Briana L. Chesnut, RPR
           Official United States Court Reporter

16

17

18

19

20

21

22

23

24

25

22cv828 FTC v Syngenta  -- Initial Pretrial conf.  -- 4/18/24