<pre>
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2

 3  IN RE:  CROP PROTECTION        )   CASE NO. 1:23MD3062
    PRODUCTS LOYALTY PROGRAM       )
 4  ANTITRUST LITIGATION           )
                                   )
 5  This transcript relates to:    )
    ALL ACTIONS.                   )
 6

 7
    FEDERAL TRADE COMMISSION, et al.,)  CASE NO. 1:22CV828
 8                                   )
             Plaintiff,             )
 9                                   )
             vs.                    )
10                                   )
    SYNGENTA CROP PROTECTION AG,    )
11  SYNGENTA CORPORATION, SYNGENTA  )
    CROP PROTECTION, LLC, and       )
12  CORTEVA, INC.                   )
                                   )   Winston-Salem, NC
13           Defendants.           )   May 23, 2024
    _____

14

15

16          TRANSCRIPT OF THE **INITIAL PRETRIAL CONFERENCE**
               BEFORE THE HONORABLE JOI E. PEAKE
17               UNITED STATES MAGISTRATE JUDGE

18

19  <u>APPEARANCES:</u>

20  For the FTC Plaintiffs:    ALLYSON M. MALTAS, ESQ.
                               ELIZABETH GILLEN, ESQ.
21                             FEDERAL TRADE COMMISSION
                               400 7th Street SW
22                             Washington, DC 20024

23

24

25
</pre>

```
 1  APPEARANCES: (Continued)

 2  For the MDL Plaintiffs:      MARGARET C. MACLEAN, ESQ.
                                 LOWEY DANNENBERG P.C.
 3                               44 South Broadway, Suite 1100
                                 White Plains, New York 10601

 4
                                 CHRISTOPHER M. BURKE, ESQ.
 5                               KOREIN TILLERY, PC
                                 707 Broadway, Suite 1410
 6                               San Diego, California 92101

 7                               RICHARD l. PINTO, ESQ.
                                 PINTO COATES KYRE & BOWERS, PLLC
 8                               3203 Brassfield Road
                                 Greensboro, North Carolina 27410

 9

10  For the Defendants:
    Syngenta:                    JAMES McCLAMMY, ESQ.
11                               DAVIS POLK & WARDWELL, LLP
                                 450 Lexington Avenue
12                               New York, NY 10017

13                               PATRICK M. KANE, ESQ.
                                 FOX ROTHSCHILD LLP
14                               230 N. Elm Street, Suite 1200
                                 Greensboro, North Carolina 27401

15
    Corteva:                     JESSE WEISS, ESQ.
16                               CRAVATH, SWAINE & MOORE, LLP
                                 825 Eighth Avenue
17                               New York, NY 10019

18                               MARK E. ANDERSON, ESQ.
                                 MCGUIREWOODS LLP
19                               501 Fayetteville Street, Suite 500
                                 Raleigh, North Carolina 27601

20

21  Transcriber:                 BRIANA L. CHESNUT, RPR
                                 Official U.S. Court Reporter
22                               P.O. Box 20991
                                 Winston-Salem, North Carolina 27120

23

24

25
```

```
 1                    P R O C E E D I N G S
 2          THE COURT:  All right.  Good morning, everyone.
 3          I'm going to ask my law clerk to call the two cases
 4   that are on first this morning that are related.
 5          LAW CLERK:  The Court calls Case No. 1:22CV828,
 6   Federal Trade Commission, et al., versus Syngenta Crop
 7   Protection AG, et al.
 8          The Court also calls Case No. 1:23MD3062, In re:
 9   Crop Protection Products Loyalty Program Antitrust Litigation.
10          THE COURT:  All right.  Very good.  Thank you.
11          All right.  As is my normal practice, I'm going to go
12   ahead and start with asking the folks who are here to introduce
13   themselves, who they're representing, and who will be primarily
14   speaking or handling things today just so I know who to direct
15   myself to.
16          And then if someone else needs to join in at some
17   point, of course, that's fine.  We can do that.  But just,
18   generally speaking, so I know how we've got everyone organized
19   here.
20          So I'm going to start here and then work my way
21   around so I know where everybody is.
22          Yes, sir.
23          MR. PINTO:  Rick Pinto, Your Honor, Pinto Coates Kyre
24   & Bowers, representing the Plaintiff in the crop protection
25   litigation.
```

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

| | |
|---|---|
| 1 | **THE COURT:** And when you say "the crop protection," |
| 2 | you are in the MDL; is that right? |
| 3 | **MR. PINTO:** The MDL. |
| 4 | **THE COURT:** I am just going to make sure I am not |
| 5 | confusing any of these things. |
| 6 | Yes, sir. |
| 7 | **MR. BURKE:** Good morning, Your Honor. Chris Burke |
| 8 | from Korein Tillery, also representing the MDL Plaintiffs. |
| 9 | **THE COURT:** Okay. |
| 10 | **MR. BURKE:** And I will be addressing a number of the |
| 11 | issues this morning involving the schedule and coordination, |
| 12 | along with Ms. MacLean. |
| 13 | **MS. MACLEAN:** Good morning, Your Honor. I'm Margaret |
| 14 | MacLean from Lowey Dannenberg for the MDL Plaintiffs. |
| 15 | **THE COURT:** Okay. Very good. So I have Mr. Burke |
| 16 | and Ms. MacLean mainly handling things here. |
| 17 | And then, Mr. Pinto, if we need anything for local |
| 18 | counsel's sake, then you're here to take care of that as well; |
| 19 | is that right? |
| 20 | **MR. PINTO:** Yes, ma'am. |
| 21 | **THE COURT:** Okay. Perfect. |
| 22 | And I will come over here. |
| 23 | Yes, sir. |
| 24 | **MR. WEISS:** Good morning, Your Honor. Jesse Weiss |
| 25 | from Cravath, Swaine & Moore on behalf of Corteva. |

23MD3062 -- Initial Pretrial conf. -- 5/23/24

1          **THE COURT:**  All right.

2          **MR. WEISS:**  And I'll be doing the talking on behalf

3  of Corteva this morning.

4          **THE COURT:**  Okay.  Perfect.

5          **MR. WEISS:**  And with me is Mark Anderson.

6          **MR. ANDERSON:**  Good morning, Your Honor.  Good to see

7  you.

8          **THE COURT:**  Very good to see you as well.

9          Yes, sir.

10          **MR. McCLAMMY:**  Good morning, Your Honor.  Jim

11  McClammy of Davis Polk on behalf of the Syngenta Defendants,

12  and I will be doing most of the speaking on behalf of the

13  Syngenta Defendants.  And with me is Pat Kane.

14          **THE COURT:**  All right.  Good morning, Mr. Kane.

15          All right.  And so it's Mr. Weiss and Mr. McClammy.

16          And then over here?

17          **MS. MALTAS:**  Good morning, Your Honor.

18  Allyson Maltas for the Federal Trade Commission.

19          **MS. GILLEN:**  Good morning, Your Honor.  Elizabeth

20  Gillen for the Federal Trade Commission.

21          **THE COURT:**  All right.  It's Gillen?

22          **MS. GILLEN:**  Gillen, yes.

23          **THE COURT:**  Okay.  Perfect.

24          **MS. MALTAS:**  And we'll both be speaking as needed on

25  behalf of the Government Plaintiffs.

         23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1           **THE COURT:**  All right.  Very good.

2           Let me make sure I have myself organized here before

3  we get underway.

4           All right.  So I have the information on the Rule

5  26(f) reports filed by the MDL folks as well as the

6  coordination proposals that were filed in both cases.

7           What I would like to do is just hear from everybody

8  regarding the issues that you want to raise just so that I have

9  a chance to hear from you.

10           I have reviewed the proposals; but before I start

11  diving in on the specifics, I think it might be helpful to just

12  let you all present your arguments and to make sure everybody

13  has a chance to be heard on that.  I might have some questions

14  for you.

15           And then what I would intend to do is go ahead and

16  give you some initial guidance or thoughts.  Depending where we

17  are at that point, I might take a break to let you all have a

18  discussion to see if there are other issues that I need to

19  address in light of that or if there are other concerns that

20  might be raised or agreements that you all might want to

21  present or propose.  And then we'll come back and actually

22  finalize what the plan is going to be.

23           So, as always, I am going to go around until everyone

24  has had a chance to let me know everything that they want to

25  say.  So I'll go in order, but I will come back around to make

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  sure everybody has had a chance to be heard.

2          Again, just going through sort of where we've got

3  everybody seated, I am going to start over here with the MDL

4  Plaintiffs.  And then we'll go to the Defendants.  And then

5  we'll go to the FTC folks.  And then come back around again to

6  let everybody respond.

7          So are we starting with you, Mr. Burke, or

8  Ms. MacLean?

9          **MS. MACLEAN:**  Sure, Your Honor, just to set the table

10  when it comes to the schedule --

11          **THE COURT:**  Okay.

12          **MS. MACLEAN:**  -- when we were here last month, you

13  will recall we talked a little bit about the importance for the

14  MDL Plaintiffs of receiving the FTC's investigative file to

15  help us get on a more informationally even footing with the

16  Defendants and with the Government.  And that still has not

17  taken place, Your Honor.

18          And the reason for that has been a dispute over the

19  protective order that the Defendants have insisted that they

20  need in order to produce the documents and a single provision

21  in that protective order, which pertains to whether or not our

22  clients, the named Plaintiffs, the farmers -- individual

23  farmers who have filed this action, can see highly confidential

24  materials.

25          So, again, we're starting out here and we still have

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  not seen the FTC's investigative file.  They are continuing to

2  serve new discovery all the time, which would probably at least

3  even double in volume from the millions of pages that they have

4  already gathered in their investigation.

5          **THE COURT:**  Okay.

6          **MS. MACLEAN:**  So we're getting further and further

7  behind.

8          **THE COURT:**  So who's serving additional discovery?

9          **MS. MACLEAN:**  The FTC.

10          **THE COURT:**  Okay.  So they are providing more

11  additional information, or they are serving more discovery

12  requests?

13          **MS. MACLEAN:**  Upon the Defendants, I meant, Your

14  Honor, in the sense that more and more information -- we're

15  getting further and further behind with the Government is what

16  I am trying to express.

17          **THE COURT:**  So the FTC is providing more and more

18  discovery or more and more documents to the Defendants?

19          **MS. MACLEAN:**  Or is requesting more and more

20  documents from them that we'll have to review.

21          **THE COURT:**  They are requesting more documents --

22  they haven't been produced yet, but they are requesting more

23  documents?

24          **MS. MACLEAN:**  That's right, Your Honor.

25          **THE COURT:**  Okay.  All right.  The main thing that we

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1   were looking at originally was the FTC's original file; is that

2   right?

3           **MS. MACLEAN:** That's right, Your Honor, and that's

4   what we have not received yet either.

5           **THE COURT:** Okay.

6           **MS. MACLEAN:** So despite that, we've been trying to

7   negotiate a schedule, even without that information. And we

8   brought it down to, I think, the tightest that it could

9   possibly be, which is just three months behind where the FTC

10   is. We think that's, again, very reasonable in light of the

11   significant amount of information that we're going to need to

12   digest. We're talking about millions of pages of data that

13   we're going to need to ingest over here in order to even begin

14   to try to catch up with the schedule that the FTC is on.

15           **THE COURT:** All right. So with regard to the

16   protective order, I don't think that I have seen that dispute

17   come to me yet.

18           Is that something that you need resolution of? Can

19   you agree in the short term to let the production be attorneys'

20   eyes only and then come back to me for resolving the dispute on

21   that?

22           **MS. MACLEAN:** We are happy for that. We had proposed

23   initially that we should just simply agree attorneys' eyes only

24   among ourselves. The Defendants had wanted a formal protective

25   order entered.

1          We are willing to do an interim protective order.  We

2    were just hopeful that we would not burden the Court with two

3    separate orders; but if that's the Court's preference, we are

4    happy to do that.

5          **THE COURT:**  Whatever we need to do to get you what

6    you need to go ahead and get things moving I think would be the

7    thing to do.  And so if we need to address something, we could.

8    If not, certainly to go ahead and get a protective order in

9    place, or I can go ahead and order it pursuant to the terms of

10   the protective order you all have otherwise agreed to but

11   leaving it attorneys' eyes only and then -- until a formal

12   order is entered, if that would be sufficient in the case.

13          **MS. MACLEAN:**  That would be fine by us, Your Honor.

14          **THE COURT:**  All right.  So I see Mr. McClammy is

15   standing up.

16          Do you need to jump in, Mr. McClammy?

17          **MR. McCLAMMY:**  If it might be helpful, Your Honor, I

18   have a couple points that may be worth addressing on this.

19          The Defendants did, in fact, when we were not able to

20   kind of come to full resolution on the protective order, offer

21   to have an interim order entered.  We proposed that and thought

22   that would be easy to submit to Your Honor.  We are, in fact,

23   still waiting for the Plaintiffs to actually submit that to the

24   Court.

25          The one real --

1       **THE COURT:**  Well, regardless of where that is --

2       (Indiscernible cross-talking.)

3       **MR. WEISS:**  -- exactly.

4       The one real issue, Your Honor -- sorry.  The one

5   real issue is not just the turning over of our documents, but

6   to be able to get the third-party documents turned over to the

7   Plaintiffs as quickly possible, we need to notice the third

8   parties and to tell the third parties what protections will be

9   provided to those documents in the interim and to have that

10  kind of, like, clearly ordered.

11      So an agreement just between us that was off the

12  record wasn't going to be sufficient in order for us to do

13  that, which is why we wanted to have something entered by the

14  Court.  I do believe the quickest way for that to happen is to

15  have the interim protective order issued, and then we can come

16  back to Your Honor if there still remains a dispute with

17  respect to a final protective order.  I'm hopeful that we can

18  work out the -- work out those issues, though, with a little

19  bit more time.

20      **THE COURT:**  Okay.  All right.  So whether I do it

21  orally now pursuant to the agreement you all have otherwise

22  reached or just ask you to submit the interim protective order,

23  it would be with the understanding that there's still a

24  potential dispute regarding whether that information should be

25  provided or shared to the individual Plaintiffs in the MDL; but

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 until that issue is resolved, this is in place so that the

2 documents can go ahead and be turned over to the attorneys for

3 the MDL Plaintiffs.

4          Is that accurate, Mr. McClammy?

5       **MR. McCLAMMY:** I believe that should work. As long

6 as we have a clear order that we can point to so that we can

7 facilitate the process with the third parties, I think that

8 should be fine.

9       **MR. BURKE:** That's fine with the Plaintiffs, Your

10 Honor.

11       **THE COURT:** All right. So I guess we'll go ahead and

12 take these things as they arise.

13          On that issue, what I will do is go ahead and ask the

14 Plaintiffs to submit the interim protective order that includes

15 the agreed terms and the provisions that would provide for

16 attorneys' eyes only for the highly confidential information,

17 but understanding that that's being reserved for additional

18 further resolution, to the extent that there remains a dispute

19 on that point.

20          And whether we take that up on a document-by-document

21 or group-of-document-by-group-of-document case, I think it may

22 be easier to address that once you have the documents.

23          Mr. Pinto, do you have something that might be

24 helpful for me here?

25       **MR. PINTO:** It's a question. Do you want it in the

23MD3062 -- Initial Pretrial conf. -- 5/23/24

1  form of a motion and proposed order or just submission of a

2  proposed order?

3          **THE COURT:**  A motion will actually help the clerk's

4  office, even though we've talked about it here.  So if you

5  submit it with a motion with the proposed order, then they can

6  refer it over to me, and I can go ahead and adopt it that way.

7          **MR. PINTO:**  Thank you.

8          **THE COURT:**  Mr. Burke, did you have something else on

9  that?

10          **MR. BURKE:**  Would you like the disputed areas

11  red-lined for the Court so you know what's in dispute, or how

12  should we handle that?

13          **THE COURT:**  I think -- why don't you put that in the

14  motion that goes with it.  So you can include that separately

15  in the motion.  So then the proposed order that I am going to

16  sign is the interim protective order that is in place, and then

17  you can preserve the issue that's still in dispute in the cover

18  motion that goes with it.

19          **MR. BURKE:**  Thank you, Your Honor.

20          **THE COURT:**  All right.  So I'm going to ask my clerk

21  to note the first thing that we need to include or designate

22  here is that the Plaintiffs will submit their motion and their

23  interim protective order -- when can you do that by, Mr. Burke?

24          **MR. BURKE:**  We'll get that in tomorrow, Your Honor.

25          **THE COURT:**  So that would be by May 24th.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          And then I will get that protective order entered.

2   And then I would anticipate the Defendants will go ahead and

3   provide that to -- all of the documents that they have that

4   were part of the FTC investigation, including the third-party

5   documents, will be provided to the Plaintiffs on an

6   attorneys-eyes-only basis.

7          Mr. McClammy, do we need a time frame on that, or how

8   quickly can that happen?

9          **MR. McCLAMMY:**  I believe we can get that done in a

10  matter of a day or two after we have the order entered.

11         **THE COURT:**  Do you need some time --

12         **MR. McCLAMMY:**  I'm sorry.  With respect to the

13  Syngenta documents.

14         **THE COURT:**  Right.

15         **MR. McCLAMMY:**  We will have to provide 14 days'

16  notice to the third parties before we'll be able to turn over

17  their documents.

18         **THE COURT:**  So I would say then by the middle of the

19  next week.  Let's say by May 29th you'll have provided the

20  Syngenta and the Corteva documents.

21         And, Mr. Weiss, does that work for you as well?

22         **MR. WEISS:**  That works for Corteva, Your Honor.

23         **THE COURT:**  Okay.  And then we'll give you two weeks,

24  which takes us to the next week.  So let's say June 5th to

25  provide the third-party documents.

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1    **MR. McCLAMMY:**  And with that, Your Honor, I would

2    just ask that that be clear that we would provide them to the

3    extent that there have been no objections raised by the third

4    parties.

5         **THE COURT:**  And then we'll need to resolve -- I

6    assume that you all have a provision for letting Plaintiffs

7    know if there's objections by the third parties so that that

8    can then be addressed or brought to the --

9         **MR. McCLAMMY:**  Exactly, Your Honor.

10        **THE COURT:**  All right.  So by June 5th, you'll

11   provide the third-party documents on an attorneys-eyes-only

12   basis unless there are objections that should be brought to the

13   Court's attention.

14        **MR. McCLAMMY:**  Thank you, Your Honor.

15        **THE COURT:**  Okay.  So, Ms. MacLean, I'm going to come

16   back to you then.

17        So I understand the first issue is trying to make

18   sure you get those documents.  So, hopefully, we have a plan in

19   place to make sure that you get those documents now.  And I

20   appreciate that you all come up with a schedule the best that

21   you can without actually having those documents.  And so I

22   think that's helpful.

23        Now let's talk about sort of either the next issue or

24   the schedule, or however you want to present that for me next.

25        **MS. MACLEAN:**  Sure.  So I think Your Honor will have

                23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  seen there's really two dates of dispute when it comes to the

2  schedule.  There's the deadline for substantial completion of

3  documents and which the Defendants have proposed the same date

4  as the D.C. action of January 22nd.  And we've proposed

5  April 23rd, which -- and then, relatedly, the deadline for us

6  to notice Defendants' depositions -- or notice Defendants'

7  witnesses depositions, which Defendants have provided for a

8  deadline of February 21st, which is just one month out from

9  their proposed substantial completion deadline, which, from our

10  view, is simply not practical.  Image a million-page document

11  deadline, January 22nd, that we have to review and still not

12  be -- have only one month in order to figure out who to notice

13  on the Defendants' end.

14        And so that just seemed to us overly aggressive,

15  again, given where we are, given the amounts of documents that

16  we're going to have to be receipting, ingesting, digesting, and

17  using in order to reach those deadlines, especially mindful of

18  the Court's instructions last time that we not come back asking

19  for additional time.

20        **THE COURT:**  All right.  So I have the chart here, I

21  think, with the competing dates.  But just to make sure that

22  we've got them all clear, your proposal is the deadline to

23  notice fact depositions would be June 13th --

24        **MS. MACLEAN:**  That's right, Your Honor.

25        **THE COURT:**  -- rather than February 21st?

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

```
 1            MS. MACLEAN:  That's correct.

 2            THE COURT:  And the deadline for partially

 3   completing -- or for substantially completing production is

 4   April 23rd.

 5            So you gave yourself an extra couple weeks in

 6   there --

 7            MS. MACLEAN:  That's correct, Your Honor.

 8            THE COURT:  -- from their proposal.

 9            Okay.  And so you said that was -- or those are the

10   dates that are in dispute, the date for the substantial

11   completion of the production and the date for noticing the

12   witnesses.  And that's really the primary issue that you've got

13   in terms of the schedule; is that correct?

14            MS. MACLEAN:  That's correct, Your Honor.

15            THE COURT:  Okay.  All right.  As far as the

16   coordination, because I am going to go through -- what are the

17   main issues that you want to highlight for the coordination?

18            MS. MACLEAN:  I think Mr. Burke is going to take that

19   one.

20            THE COURT:  Okay.  All right.

21            MR. BURKE:  Sure.  Maybe I could, in a nutshell,

22   describe what we believe additional coordination would mean

23   here.

24            THE COURT:  Okay.

25            MR. BURKE:  So documents produced in the FTC case get
```

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1   produced here.  Documents produced in the MDL case get produced

2   in the FTC action.

3           **THE COURT:**  Uh-huh.

4           **MR. BURKE:**  In terms of written discovery,

5   interrogatories, responses in the FTC action, they are

6   obviously going to get that.  We get the responses, too.  What

7   we can do with those responses is going to be governed by the

8   Federal Rules of Evidence.

9           Same thing with the requests for admission:  Issue

10  the requests for admission; to the extent we can use them, they

11  are going to be delimited -- our use is going to be delimited

12  by the federal rules.

13          Then we get to depositions.  They have 15 party

14  depositions to take of Corteva, 15 party depositions to take of

15  Syngenta.  We have the same.  If they notice a deposition and

16  we notice a deposition, it comes off of each of our respective

17  numbers.  We spend that.

18          We may not be up to speed and know whether we can

19  notice a deposition at a certain point in time.  They take it

20  because we're still ingesting documents to get our arms around

21  the case.  We may not come back and take that deposition.  If

22  not, we can still use that testimony under, presumably,

23  804(b)(1), sworn testimony in another action.  So our use is

24  delimited by the federal rules.

25          If we do want to try and take somebody twice, our

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  proposal is --

2           **THE COURT:**  Real quick, if you were under that first

3  scenario, where it's the other action and you just use it that

4  way, then I'm assuming you're not present at that deposition;

5  you don't have any ability to ask any questions or be there?

6           **MR. BURKE:**  We would have the ability to attend.  We

7  wouldn't be asking any questions.

8           **THE COURT:**  And why would you have the ability to

9  attend?

10          **MR. BURKE:**  It's just simply how we set the

11 coordination order up.

12          **THE COURT:**  Okay.  But that may be.  If you really

13 are not going to participate in that one and it's another

14 action, then --

15          **MR. BURKE:**  But --

16      (Indiscernible cross-talking.)

17          **MR. BURKE:**  -- admissibility --

18          **THE COURT:**  -- to be consistent, yeah, you don't get

19 to be there.

20          **MR. BURKE:**  And that may be our choice.

21          **THE COURT:**  Right.  If you want to be there, then you

22 got to cross-notice it to get to be there.

23          **MR. BURKE:**  Correct.

24          **THE COURT:**  All right.  Okay.

25          **MR. BURKE:**  And, now, let's take the example of they

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  notice somebody --

2          **THE COURT:**  "They," the other Plaintiff, FTC?

3          **MR. BURKE:**  I'm sorry.  FTC has noticed somebody or

4  the States --

5          **THE COURT:**  Right.

6          **MR. BURKE:**  -- prior to December 6th -- and we came

7  up with that date, December 6th, because we felt like by that

8  time we'll have our arms around at least the initial FTC

9  production and perhaps some additional materials -- or we won't

10  have our arms around that until around December 6th.  After

11  that date, we would.

12          So if the deposition is noticed before then, we would

13  be able to take that deposition, if we choose, of that person

14  at a later date.

15          **THE COURT:**  Right.  That's the proposal?

16          **MR. BURKE:**  Correct.

17          **THE COURT:**  Do you have any understanding from your

18  discussions -- and I will get to the FTC -- but whether they

19  are intending to start taking depositions before December 6th?

20          **MR. BURKE:**  We don't know when FTC is going to be

21  taking depositions.  And this may be a moot point --

22          **THE COURT:**  Right.

23          **MR. BURKE:**  -- because if they start after

24  December 6th, then we would have to show good cause to take

25  somebody twice.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **THE COURT:**  Right.

2          **MR. BURKE:**  And we're fine with that.

3          **THE COURT:**  Right.  Okay.

4          So let's -- after your December 6th, or whatever --

5  the date we end up using, under the ordinary sort of situation,

6  what are you proposing?

7          **MR. BURKE:**  After December 6th --

8      (Indiscernible cross-talking.)

9          **THE COURT:**  Uh-huh.

10         **MR. BURKE:**  -- in an ordinary situation, they notice

11  somebody.  If we wanted to take them, we'd cross-notice them.

12         **THE COURT:**  Uh-huh.

13         **MR. BURKE:**  Okay.  If we felt like at that time we

14  weren't sure but later on we come across documents that say,

15  oh, we need to take this person for different reasons -- for

16  instance, we have additional AI, active ingredients, in our

17  case, our case is broader --

18         **THE COURT:**  Right.

19         **MR. BURKE:**  -- we have to get over class

20  certification, so we need to show commonality, adequacy,

21  typicality, numerosity, predominance -- all those types of

22  things --

23         **THE COURT:**  Okay.

24         **MR. BURKE:**  -- we have to demonstrate impact, fact of

25  injury on a class basis -- we may need to take somebody twice.

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

```
 1              THE COURT:  Okay.
 2              MR. BURKE:  And then we would go back to Syngenta or
 3    Corteva and explain this is what we want to do.  If they agree,
 4    fine.  If not, we bring the motion to Your Honor.
 5              THE COURT:  And so that's the good cause to try to
 6    have a second deposition?
 7              MR. BURKE:  Correct.
 8              THE COURT:  Okay.  And so in your scenario where
 9    you've cross-noticed the deposition --
10              MR. BURKE:  Uh-huh.
11              THE COURT:  -- what's your proposal for how the time
12    is allocated?
13              MR. BURKE:  Well, in practical terms, we and FTC will
14    work cooperatively to break up the time.
15              THE COURT:  Okay.
16              MR. BURKE:  We'll have a total of 14 hours or 13
17    hours?  I think it's 13 hours for party, 14 hours for nonparty
18    if we notice the same nonparty.
19              THE COURT:  Okay.  To the extent you're working
20    together, that does seem like -- I mean, we're not really
21    saving a lot of time on that if we're just doubling it.  But I
22    understand that's your proposal.  It may be something that we
23    look at.
24              And, yes, ma'am, do you want to jump in?
25              MS. MALTAS:  I just want to clarify.
```

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

```
 1              THE COURT:  Okay.

 2              MS. MALTAS:  So if we were both, the Government

 3     Plaintiffs and the class Plaintiffs, to notice a Defendant

 4     deposition, then that would be 13 hours.  I believe that for

 5     the third-party depositions, you would really only get up to 14

 6     hours if all four of us were cross-noticing a third party.

 7              THE COURT:  Okay.  So what I may do is go through and

 8     let everybody explain, and then we'll see where we are with how

 9     it all breaks out.

10              So you're adding either an additional six or seven

11     hours for the cross-notice situation?

12              MR. BURKE:  Correct.

13              THE COURT:  Okay.  And is -- how do you allocate the

14     Defendants' time in that?

15              MR. BURKE:  Well --

16              THE COURT:  I mean, all of that is Plaintiffs' time.

17              MR. BURKE:  Well, the Defendants are going to have an

18     opportunity -- if it's a party deposition?

19              THE COURT:  Sure.  Right.

20              MR. BURKE:  Sure.  The Defendants -- in my

21     experience, the Defendants either ask no questions or, at most,

22     they have an hour --

23              THE COURT:  Right.

24              MR. BURKE:  -- of questioning.

25              THE COURT:  So what if it's -- they don't
```

1  cross-notice it, but it's just a third-party deposition?

2          **MR. BURKE:**  They're still going to have time to ask

3  questions in third-party depositions.  The non-noticing party

4  will still have time.

5          **THE COURT:**  Right.  So same thing, an hour of the

6  time?

7          **MR. BURKE:**  Correct.

8          **THE COURT:**  Okay.  All right.  And then if the --

9  again, under your prior scenario, if it's not cross-noticed,

10 then that party may have to choose not to attend at all.

11 Certainly, can't ask any questions.

12         **MR. BURKE:**  That's right.

13         **THE COURT:**  You would just use it the way you would

14 any other separate-case deposition would be your proposal?

15         **MR. BURKE:**  That's right.

16         **THE COURT:**  Okay.  And so with respect to

17 depositions, I think you've covered everything.

18         It looked like you all agreed on the numbers; is that

19 right?

20         **MR. BURKE:**  We have.

21         **THE COURT:**  That was 15 and 40; is that right?

22         **MR. BURKE:**  Yes.

23         **THE COURT:**  All right.  Mr. Weiss?

24         **MR. WEISS:**  Your Honor, Jesse Weiss for Corteva.

25         I just want to clarify we did agree on the numbers,

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  and we'll come to this when we talk about coordination and our

2  perspective on it.

3           **THE COURT:**  Right.

4           **MR. WEISS:**  But those numbers that we agreed to we

5  think are baked in kind of the coordination framework that we

6  think should apply here because our concern, which we'll

7  address more, is that the framework that they're looking to

8  apply is going to result in them getting a lot more than those

9  numbers.

10           **THE COURT:**  And I will -- I understand.  So I will

11  come to you on that.  I understand --

12           **MR. WEISS:**  I just want --

13           **THE COURT:**  -- the agreement may be conditioned on

14  how it gets divided up?

15           **MR. WEISS:**  That's right, Your Honor.  Exactly.

16           **THE COURT:**  All right.  Mr. Burke, I think that

17  covers the written discovery and the depositions.

18           Was there anything else in terms of the coordination

19  that might be helpful?

20           **MR. BURKE:**  No, I can come back to things if they get

21  raised.

22           **THE COURT:**  Okay.  All right.  And you've highlighted

23  the main issues in terms of where the disputes are that you

24  wanted to highlight; is that right?

25           **MR. BURKE:**  That's right.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          THE COURT:  Okay.  All right.  So I am going to come

2     over here.

3          Mr. Weiss, did you want to pick this up in terms of

4     Defendants' perspective?

5          MR. WEISS:  Yes, thank you, Your Honor, happy to do

6     that.

7          Jesse Weiss for Corteva.

8          THE COURT:  Yes.

9          MR. WEISS:  We can start on the schedule.

10          THE COURT:  Okay.

11          MR. WEISS:  So we think it's really important that

12     there's some alignment on certain aspects of the schedule in

13     order to facilitate coordination.  If they are three months

14     behind on everything, it's going to make coordination, I think,

15     very difficult.

16          THE COURT:  Uh-huh.

17          MR. WEISS:  So we had sought to strike a compromise.

18     Originally, we had proposed the dates that were aligned with

19     the FTC's schedule in order to facilitate that coordination.

20     We now are just aligning really two dates that we think are

21     very important:  One is substantial completion of party

22     discovery, and the other is the date on which to notice party

23     depositions.  And for third parties, if they need more time,

24     that's incorporated into our schedule.

25          THE COURT:  Just to make sure we're talking about the

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  same dates, you're talking about -- I think Ms. MacLean

2  highlighted the January 22nd production date and the

3  February -- was it the February 21st date for noticing fact

4  depositions?  Are those the same two dates that you're talking

5  about, or which dates are you looking at?

6          **MR. WEISS:**  That's correct, Your Honor.  Under our

7  schedule, it would be January 22nd for all parties to

8  substantially complete production of documents and data.

9          **THE COURT:**  Okay.  And that's the one that they want

10  April 23rd on, and that's just the production of written

11  discovery essentially, is that right, or production of --

12          **MR. WEISS:**  And documents and data.

13          **THE COURT:**  Okay.  Right.

14          **MR. WEISS:**  That's right.  That's their April 23rd

15  date.  And January 22nd is our proposal, which is aligned with

16  the schedule in the FTC case.

17          **THE COURT:**  Right.  Okay.

18          **MR. WEISS:**  And then the deadline to notice party

19  depositions would be February 22nd in our proposal, which is

20  the same date -- the same deadlines to notice all depositions

21  in the FTC case.

22          And June 13th for nonparty depositions, which is

23  the -- June 13th is the date that they proposed for all -- as

24  the deadline for noticing all depositions.

25          **THE COURT:**  Does having that extra time give you

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 extra time to depose the Plaintiffs?  Is that -- or what's

2 happening, in your perspective, during that time from

3 February -- because if it's -- are we talking just Defendants

4 by February 21st or all parties, or who is it that you're

5 anticipating is happening between February 21st and June 13th?

6       **MR. WEISS:**  Our anticipation is that that is mainly

7 for third party -- that's for third-party discovery.

8       **THE COURT:**  Okay.  Third-party discovery but that the

9 FTC hasn't already taken, essentially?

10       **MR. WEISS:**  Correct.

11       **THE COURT:**  Because if the FTC has taken it and it's

12 either -- it's been cross-noticed or it's a second deposition

13 situation, there would have to be good cause to take it if

14 they've already taken it.

15       **MR. WEISS:**  That's correct, Your Honor, absent a

16 showing of good cause or by Your Honor --

17       **THE COURT:**  Right.  Then it would be only third

18 parties that the FTC hasn't already taken --

19       **MR. WEISS:**  That's correct, Your Honor.

20       **THE COURT:**  -- at that point during that period of

21 time.

22       All right.  So that's your position on the dates.

23       I'm presuming that the main dispute or the main

24 driving force for the January 22nd is that you only have to do

25 one search term run; is that right?  Or what is the issue?

1           **MR. WEISS:**  It's really just to -- it's to align

2  discovery and create incentives and allow for coordination

3  between the actions on the common issues and the common facts

4  and the common witnesses.  And, you know, our main concern is

5  the Defendants' witnesses.

6           And so it facilitates, you know, the coordination

7  between the FTC and the private Plaintiffs, so aligning on

8  dates that they will notice party depositions.  If they're

9  three months behind, it makes that coordination much more

10 difficult.

11          And with respect to the documents, you know, they

12 want to have a procedure where they can come back to the Court

13 and say, If we have good cause, we can take a second

14 deposition.  If there are more documents being produced, you

15 know, three months more of discovery, it just creates an

16 unnecessary risk for us that they're going to come back and

17 say, Here's three more documents that are produced in this

18 additional three-month window that we don't see as necessary.

19 Now there's good cause, and now our witnesses are getting

20 deposed a second time.

21          **THE COURT:**  Okay.

22          **MR. WEISS:**  So it just creates all, you know, the

23 wrong incentives, and we think it's the wrong framework to

24 apply.

25          **THE COURT:**  All right.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **MR. WEISS:**  We also don't quite understand their

2    justification.

3          The investigative file, we'll be producing it very

4    soon pursuant to -- once the protective order is entered.

5    That's -- you know, the time between that production and the

6    deadlines that we propose here is about nine months.  That's a

7    long period of time.  In a normal case, nine months would be a

8    long period of time.  In this case, the fact that there's this

9    investigative file shouldn't result in a delay.  It should

10   actually accelerate things.  In a normal case, they wouldn't

11   have that investigative file.  So we don't quite understand the

12   logic there.

13         Ms. MacLean noted that the FTC has issued new, you

14   know, discovery requests.  Those were issued in April.  We just

15   served our responses and objections.  We met and conferred over

16   it.  But those are documents that aren't going to be produced

17   for some time.  So we don't think that that puts them further

18   behind.  They will get those documents when we produce them.

19   We believe that a coordination order should have that

20   provision.  So we assume they'll get those documents as well.

21         So we think that those two dates need to be aligned.

22         Now, we recognize that for coordination it may be

23   that the deadline for noticing depositions could be maybe two

24   weeks later.  There's -- in our proposal there's 10 days to

25   cross-notice.  So maybe we bake in those 10 days or 14 days in

     23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  order for them to see, oh, the FTC has noticed these

2  depositions right at the deadline.  We need an additional 10

3  days to coordinate our cross-notice.  You know, we can imagine

4  that being in there.

5       But if the dates aren't substantially aligned, we

6  think that coordination here is going to be really difficult,

7  and it creates these unnecessary risks for the Defendants.

8       **THE COURT:**  Okay.  And, actually, before we go to

9  you, Mr. McClammy, Mr. Weiss, did you want to speak to the

10 coordination as well in terms of the proposal that Mr. Burke

11 gave me?

12      **MR. WEISS:**  I do want to speak to that.  I'm happy to

13 give Mr. McClammy an opportunity just to quickly address the

14 schedule so we can put that issue to the side and then keep

15 moving on to the other issues.

16      **THE COURT:**  All right.  That's fine, however you all

17 want to do that.

18      Mr. McClammy?

19      **MR. McCLAMMY:**  Thank you, Your Honor.  Jim McClammy

20 again for the Syngenta Defendants.  I'll be brief because I

21 think Mr. Weiss covered a good portion of it.

22      I do think that as the Defendants are looking at

23 this, we would like to have the schedule in the MDL action be

24 such that coordination, which everybody, I think, has agreed is

25 something that we should be working towards, is, in fact,

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  possible.

2          With respect to the substantial completion date, I
3  think the one thing that -- the one portion of the Plaintiffs'
4  response to that that I would take issue with is there may be
5  millions of documents coming in on, like, the very last day.
6  One, we would work obviously to not have that happen.  But,
7  two, they're getting a good portion of it right up front and
8  much quicker than we would get in a normal case.  They are
9  having the benefit of the investigative file.  So they'll have
10 that.  They will process it.

11         And I'm hopeful that they will be coordinating with
12 us as we're talking with the FTC about additional searches and
13 custodians that may be done for the production of documents so
14 that we're running that all at the same time.  And then they
15 will be receiving these documents at the same time as the FTC.

16         And as Your Honor has already found, you know, the
17 dates are workable for substantial completion in January with
18 noticing at the very least of the party Defendants -- the
19 defense, you know, witnesses in February.  So we would propose
20 that same kind of, like, reasonable standard there.

21         And then as -- as Mr. Weiss has noted, allowing for a
22 little bit of extra time for them to the extent that they may
23 have one of their third parties that they would like to take
24 and to have some additional time on the back end, you know, to
25 have that all happen so that the schedule here is a little bit

 1  extended beyond what is in the FTC's action, you know, the

 2  Defendants are agreeable to that.

 3       **THE COURT:**  Okay.  And that may be something I take

 4  up with the FTC folks, because I think there is this issue

 5  about closing discovery and when discovery closes and how that

 6  works and whether there would be anything that would actually

 7  be taken during that period of time after what you would

 8  propose would be February 21st for the notice and, I guess,

 9  ultimately the difference between April 22nd and July 25th for

10  getting all of those done.  Right?

11       **MR. McCLAMMY:**  That's correct.

12       **THE COURT:**  All right.  Anything else you wanted to

13  add?

14       **MR. McCLAMMY:**  That's all for now, Your Honor.

15       **THE COURT:**  All right.  Mr. Weiss, did you want to

16  come back to address the coordination issues?

17       **MR. WEISS:**  Yes, thank you, Your Honor.  Jesse Weiss

18  for Corteva.

19       So, you know, as we see it, the key issue here is

20  coordination should facilitate efficiency, reduce duplicative

21  discovery.  It shouldn't be added into the discovery limits

22  that the Court's order, that we're aligned on with the MDL

23  Plaintiffs, set out -- what's been ordered in the FTC action.

24       Their proposal does that.  It does it in a couple of

25  ways.  One with -- and Mr. Burke said that the discovery will

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  be used pursuant to the Federal Rules of Evidence and the

2  Federal Rules of Civil Procedure.  Our understanding is that

3  for a lot of discovery that means it's effectively, you know,

4  in their action.  And so their order -- you know, their

5  coordination order would set up a framework where they're

6  participating in -- or they're sitting in depositions, but it

7  doesn't count against them.

8          I understand Your Honor asked, well, will you sit in

9  the depositions?  We understand their proposal be that they

10  can.

11      **THE COURT:**  So let's assume then I say they can't.

12  If they don't cross-notice it, they can't be there; but if

13  they're not there, then I think the ordinary rules would apply.

14  And you can argue whether it's admissible or what it should be

15  admissible for, like you would any other deposition in a

16  separate action; right?

17      **MR. McCLAMMY:**  I think that's right, Your Honor.

18  Then we're not really talking about coordination, I think.  If

19  we're -- if they are -- either these are separate actions

20  without coordination or they are separate actions with

21  coordination; in which case, we think it makes sense that they

22  can sit in on depositions and they're sharing of discovery, but

23  it should just count against the limits, or the limits should

24  reflect that they are separate actions without coordination.

25      **THE COURT:**  Well, you know, the limits are what they

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  are, which are obviously higher than what would be in an

2  ordinary case, but each one on its own sort of is a complex

3  case.

4          The coordination, though, essentially requires them

5  to count it as one of theirs if they want to participate in it.

6  So if they want to come and be there at all, let alone ask

7  questions, then they have to count it as their one.  If they

8  don't, then they don't.  It doesn't count as their one.  And

9  then to the extent -- I mean, they still can see it, like they

10 would -- anybody could see a copy of it.  And then it would be

11 ultimately up to the Court how or whether you use it like you

12 would any other testimony from some other case.

13         I am concerned about some sort of idea where I would

14 impose some preclusion now on them being able to use something

15 that they're not even there for or that they've made the

16 decision not to participate in that then becomes preclusive

17 just as a scheduling or as a management issue.

18         **MR. WEISS:**  That's understood, Your Honor.

19         I think the -- there is coordination happening.

20         **THE COURT:**  Right.

21         **MR. WEISS:**  It's in the joint coordination order.  So

22 there is coordination happening.

23         **THE COURT:**  Right.

24         **MR. WEISS:**  And I think as a practical matter, there

25 will continue to be coordination.  It's why we're all in this

1  courtroom.

2         **THE COURT:**  Right.

3         **MR. WEISS:**  And so, you know, for us, we think that's

4  going to result in the type of coordination we're concerned

5  about, which is inefficient and adds to their discovery and not

6  the type of coordination that I think is intended by a

7  coordination order, which is to eliminate duplicative

8  discovery, not create an imbalance and add to the discovery

9  that each party gets.

10        **THE COURT:**  But at this point if the order says, you

11  know, if you want to participate, you have to cross-notice it

12  and the same witness can't be deposed twice without good cause,

13  then essentially all you're really concerned about is the total

14  number being high; is that right?  I mean, that's really it;

15  right?

16        **MR. WEISS:**  That's it, Your Honor, exactly.  It's the

17  limits.  Do those limits bake in coordination?  In which case,

18  I think the limits are -- the limits that have been set are

19  high.  Our understanding of the limits set in the FTC action

20  were in contemplation that there would be coordination, but

21  there would be efficiencies to reduce duplicative discovery.

22  And that's reflective in our proposal -- in our 26(f) report as

23  well with the MDL Plaintiffs.

24        **THE COURT:**  So if I said 15 per Syngenta and Corteva,

25  which is already kind of adjusted based on who they had

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 anticipated -- and I think this one actually may be 40 for

2 third parties, rather than 30 -- if it should be 30 instead,

3 with the idea or understanding that there's still the rule that

4 second deposition requires good cause -- and I'll take up

5 separately this issue of when things get scheduled or how that

6 might affect it, but second deposition requires a showing of

7 good cause, and if you want to be there and participate, then

8 you have to cross-notice, then is it just an issue of okay,

9 well, then if that's the case, we want 30 instead of 40

10 third-party depositions here or some other adjustment on that?

11     **MR. WEISS:**  I think in principle that's right.  We

12 proposed a framework and a mechanism to allow for coordination

13 without increasing the limits.  If that mechanism doesn't work,

14 another mechanism that could work is to reduce the numbers, the

15 specific numbers.

16         I think we'd have to -- that wasn't our proposal and

17 not the mechanism that we proposed.  It is a mechanism also

18 that can work to address our concern that there will be

19 coordination, whether -- that isn't the type of coordination

20 that we think, you know, is going to facilitate efficiency here

21 and is going to result in more discovery than the limits

22 provide.

23     **THE COURT:**  I think the issue I have is trying to put

24 in place preclusion orders now precluding use of depositions

25 that are being taken in another case.  It has a lot of

1  ramifications that may need to be considered or addressed and

2  really doesn't seem like the best way now to address the limit

3  issue.

4        And so if the issue with that -- the reason that you

5  want to preclude that is because you figure there are too many,

6  then we can look at, okay, well, what's the too many number,

7  rather than trying to come up with some sort of other rules

8  that may have substantive impact later in terms of not being

9  able to use depositions that otherwise you're allowed to use

10  under the federal rules, creating unnecessary complications for

11  us down the line.  So that's why I'm headed in that direction

12  or looking at it in that way.

13        One thing I also wanted to clarify -- and I think

14  everybody understands or understood this, but just to make

15  sure, my assumption is that if the Defendants notice a

16  deposition, that the Plaintiffs don't have to cross-notice it

17  to be there to participate and to have, as Mr. Burke would say,

18  maybe an hour or at least the ability to be present and have

19  what would ordinarily be in a deposition just the follow-ups

20  that you might do as defending the -- even if you're not --

21  even if it's a third party, as opposed to, no, I want a chance

22  to actually have a substantive share of the time, so I am going

23  to cross-notice it, too, for this third party.

24        So that's my -- that was my intent when I talked

25  about cross-noticing.  I wouldn't expect that if Defendants

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 notice someone, that the Plaintiffs have to cross-notice it or

2 can't attend or -- I think the same rule would apply for not

3 having a second deposition.  You can't do a second deposition

4 without good cause, but that they would be able to attend and

5 have their sort of 30 minutes or an hour at the end if the

6 Defendants are the ones that are noticing it.

7          **MR. WEISS:**  And we agree with that, Your Honor.

8          **THE COURT:**  Okay.

9          **MR. WEISS:**  And if this were just one case, that's

10 the rule that would apply.

11          **THE COURT:**  Right.

12          **MR. WEISS:**  In the FTC case --

13          **THE COURT:**  Right.

14          **MR. WEISS:**  -- you know, you would have that rule

15 apply.

16          In the MDL case --

17          **THE COURT:**  Right.

18          **MR. WEISS:**  -- the question is, if the MDL Plaintiffs

19 are sitting in a deposition that they didn't notice that's

20 happening in FTC case, what are the implications of that?

21          We're okay if we have a coordination framework that

22 works that doesn't create the issues that we've outlined.

23          **THE COURT:**  Okay.  So just thinking through that, so

24 the Defendants have noticed it.  I assume that the Defendants

25 will want the option to use it in both cases.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          Will the -- that the Plaintiffs for both cases would
2    be able to attend, maybe collectively have an hour -- 30
3    minutes each or an hour, however they choose to divide up their
4    time between them.  But then that's counting for Defendants.
5    It's not counting for Plaintiffs.  Right?
6          **MR. WEISS:**  That's exactly right.  If we notice a
7    deposition in both actions, the Plaintiffs in both actions can
8    attend and, you know, participate in that way --
9          **THE COURT:**  Right.
10          **MR. WEISS:**  -- as they would if it were just one
11    action.
12          **THE COURT:**  Right.  Okay.  I think everybody is on
13    the same page with that then.  I just wanted to clarify and
14    make sure.
15          So we've talked about depositions.  Anything else you
16    wanted to talk about with depositions or how those are
17    coordinated?
18          **MR. WEISS:**  I think a couple of things.
19          On the burden shifting, Your Honor, that's a standard
20    that doesn't make sense to us or really work.  If there's good
21    cause to take a second deposition, it's in a situation where
22    there would be because there's going to be a lot of discovery,
23    you know, on the same timetable as the FTC.  But if there is
24    good cause, they can come and seek relief from the Court.
25    Putting the burden on us at any point in time doesn't make

              23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  sense.

2          **THE COURT:**  Okay.  Go ahead.

3          **MR. WEISS:**  Thank you.

4          And the deposition -- I'm happy to address any

5  questions on that particular point.

6          **THE COURT:**  Go ahead and you can finish.  I do have

7  one other thing I was going to follow up on, but you may be

8  getting ready to address it.

9          **MR. WEISS:**  Yeah, on deposition time?

10          **THE COURT:**  Yeah, that's it, yes.

11          **MR. WEISS:**  Exactly.  We proposed nine hours, they

12  proposed 13 for party depositions.

13          **THE COURT:**  Uh-huh.

14          **MR. WEISS:**  I think what their proposal essentially

15  says is that there is one hour of, you know, common issues, and

16  then there are basically two separate depositions.  And that

17  doesn't -- I mean, that's just not the reality of this case,

18  and it doesn't make sense to us and is not an efficient

19  process.

20          Nine hours, if everyone has got the stamina, it can

21  be done in a day.  It's a long day, but at least it leaves open

22  that possibility.  And we think that given the substantial

23  overlap in issues -- there are some differences, but given the

24  substantial overlap in issues, that that's going to -- you

25  know, that's an equitable way to coordinate around, you know, a

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1   party deposition and the number of hours that is there.

2           And we see a precedent they've cited.  You know,

3   there's some with ten and some with 11.  There's -- you know,

4   there are different ways to do this in different cases.  We

5   think nine hours has the benefit of at least opening the

6   possibility of at least doing it in a day, and there's really

7   substantial overlap that we think makes that a workable number.

8   Thirteen to us, if that's two depositions --

9           **THE COURT:**  Right.  Just to tell you sort of my

10  initial impression on that, I think that if I were -- and I'll

11  hear from everybody.  I'm not making a decision on that.  But

12  my initial thought on that was 11 hours might make sense.  An

13  hour of that is the Defendants'.  If you want to give up your

14  hour and push through with a 10-hour day, you know, more power

15  to you.  Otherwise, you know, it limits itself to a day and a

16  half which then can stagger with another day-and-a-half

17  deposition and get you at least some efficiencies that way.

18          I think that would be sort of just a general thought

19  in terms of the times that you all are talking about, but we

20  can come back to that certainly as well.

21          Anything else that you wanted to add?

22          **MR. WEISS:**  There were -- yeah.  Thank you, Your

23  Honor.  I think there were a couple of other issues flagged as

24  disputed issues.  I don't know if Mr. Burke covered all of

25  them.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **THE COURT:**  Did you want to talk about written

2   discovery?

3          **MR. WEISS:**  Sure, Your Honor.

4          So on written discovery, I think the same kind of

5   principles and framework that we have been discussing apply.

6   We have the same concern, right.  They have effectively 16

7   interrogatories in one case, 16 interrogatories in another.  We

8   have 16 interrogatories in one case, 16 interrogatories in

9   another.  As we understand the proposal, it's up to 120, and

10  120 on each side.  So we were proposing a mechanism to not have

11  that imbalance.

12         Another way to achieve that, I think, as Your Honor

13  suggested, would be to reduce the numbers that --

14         **THE COURT:**  See, on that one it is a little different

15  because you're essentially within what the local rules would

16  have for an exceptional case.  We're not doing such huge

17  increases as compared to -- or the way we are with the

18  deposition numbers.  And so my concern on that is that may

19  require a lot of micromanaging even on my part in terms of

20  which ones count or which ones don't count or which ones are

21  the same or not the same, where, if everybody wants to just

22  propose their -- or submit your interrogatories and their

23  requests for admission, you all answer them.  If they are

24  similar, then your answer can be used again for all of them.

25  And then each side gets their own, but copies of the others to

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1　use like you would in some other separate case so that we don't

2　get bogged down in reviewing interrogatories.

3　　　　　That's -- that's at least my thought on that.

4　　　　　**MR. WEISS:**  Yeah.  That's understood, Your Honor.  I

5　think two things.  One is the -- I mean, the similarities with

6　our -- that's the kind of coordination that we want.

7　　　　　**THE COURT:**  Right.

8　　　　　**MR. WEISS:**  It's more, as a practical matter, whether

9　it's expressed or just -- it's just a natural way -- you know,

10　thing to do is -- if the FTC issues, you know, 15

11　interrogatories, and the MDL Plaintiffs see that those are

12　well-formulated questions or those are questions that we would

13　ask, we're not going to have to dip into our count for that.

14　　　　　So it leads to getting a lot more interrogatories

15　across the two actions than the exceptional case would give

16　them.  So it does inflate their numbers well beyond, I think,

17　what the limits are in an exceptional case and what we think is

18　equitable here.

19　　　　　**THE COURT:**  Okay.  All right.  So that's something to

20　think about or take into account as well.

21　　　　　Anything else you wanted to address?  Any other

22　issues?

23　　　　　**MR. WEISS:**  I think just a minor issue on deposition

24　scheduling.  It's technically a disputed issue.  I don't think

25　this is a significant one, but -- or one that we probably

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  couldn't get alignment on with more meet-and-confers.  It's the

2  question of just how -- you know, when they notice a

3  deposition, what is the process of, you know, getting a date

4  that's mutually convenient for everyone.

5          **THE COURT:**  Right.

6          **MR. McCLAMMY:**  Their proposal -- and it's really just

7  the language here.  It's "shall within three business days of

8  receiving notice provide one alternative date."  I expect that,

9  you know, everyone will move promptly to provide alternative

10  dates if the date doesn't work, and it will be -- there will be

11  cooperation on that.  But being under a court order to provide

12  a date within three days, it strikes us, A, as unnecessary and,

13  B, just --

14          **THE COURT:**  Sometimes not practical.

15     (Indiscernible cross-talking.)

16          **MR. McCLAMMY:**  -- schedule --

17          **THE COURT:**  Right.  Dependent on getting ahold of the

18  individual and the client to be deposed.

19          I think while it makes more sense to add a little

20  time in, you know, that within a week, but maybe offer a couple

21  of days instead of just one alternative date so, you know, we

22  increase the odds that we're going to find an option that works

23  for everybody.

24          And I think that the primary coordination is going to

25  need to be between the noticing party and the recipient,

1  whether it's a party or a third party.  There are lots of

2  lawyers here who can adjust their schedules to be present, and

3  so I assume that we're not going to get hang-ups for scheduling

4  things because a particular attorney needs to be present or we

5  can't find somebody else to cover it, but that there's going to

6  be some cooperation between the noticing party and whoever the

7  recipient is to try to get that scheduled.

8          **MR. WEISS:**  I think we see it as exactly the same

9  way.  I think there will be that cooperation.  I think we're

10 really talking about the parties -- you know, the witnesses'

11 schedule --

12         **THE COURT:**  Right.

13         **MR. WEISS:**  -- and just being under an order to

14 provide an alternative within three -- our proposal was, you

15 know, use best efforts and no party may unreasonably delay.

16 And I think that that, you know, solves concerns about, you

17 know -- which we never do, but strategically, like, trying to

18 push things around.

19         So that's -- I think that's the only other standing

20 issue on the coordination order.

21         **THE COURT:**  And it may be we -- it's ordinarily or

22 the expectation is that within a week alternative dates would

23 be provided, or something that gives you all what I expect is

24 the freedom to be able to work cooperatively and to do what you

25 need to do to get things scheduled, but also some indication of

what the expectation is so that everybody understands when it

comes back that I might have concerns if it's -- hasn't been

tracking along what would ordinarily be expected on that.

                    **MR. WEISS:**  That seems sensible, Your Honor.

                    **THE COURT:**  All right.

                    **MR. WEISS:**  Thank you.

                    **THE COURT:**  Anything else, Mr. Weiss?

                    **MR. WEISS:**  I think that's it.

                    **THE COURT:**  All right.  Mr. McClammy, anything else

you needed to follow up on any of those things?

                    **MR. McCLAMMY:**  Again, for the record, Jim McClammy on

behalf of the Syngenta Defendants.

                    Not much to add, Your Honor.  I think Syngenta's

position all along has been that we would like to have a

schedule and a coordination order that really incentivizes and

promotes coordination where it's possible and where it makes

sense in these actions.  And I think having, as we talked

about, the schedule match up a bit on parts of it will help

with that.

                    And I think our concern when we saw the Plaintiffs'

proposal was that it created a situation where they may have

the benefits of all of the discovery from the various actions

without actually having to count it towards what they wanted to

do.

                    So on the depositions, as I think Your Honor is there

1 already, that if they were able to sit in, they could influence

2 the questioning in those depositions without actually having to

3 take it and having it count, and they could have, you know, the

4 benefit of 30.

5          If it was requests for admissions or interrogatories,

6 if they are not coordinating in advance of serving them and

7 they just serve their own, then maybe that's fine to have, you

8 know, what would be 30 and 30.  But if they are coordinating in

9 advance and one side is saying here's our 30 questions, do you

10 have 30 more questions, that's not the situation we want to be

11 in when we were thinking of working towards coordination.

12          So I think, you know, with that, I join in what

13 Mr. Weiss is saying.

14          **THE COURT:**  Okay.  All right.  That's helpful.  Thank

15 you.

16          All right.  Let me come over to the FTC.

17          **MS. MALTAS:**  Thank you, Your Honor.  Allyson Maltas

18 from the FTC but on behalf of all Government Plaintiffs.

19          **THE COURT:**  Okay.  Very good.

20          **MS. MALTAS:**  So just running through everything,

21 first of all, on the issue of the schedule for the MDL case,

22 obviously, we take no position.  I did just have some

23 information that I thought just might be relevant to Your Honor

24 thinking through the disputes.

25          As Defendants noticed, we have served requests that

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  are more comprehensive requests for documents and data to both

2  Defendants.  Their responses and objections were served on

3  Monday.  And we will be meeting and conferring with them about

4  custodians, search terms, and their objections next week.

5          **THE COURT:**  Okay.  So a couple of things on that.

6          These are not yet interrogatories or requests for

7  admission, just requests for production?

8          **MS. MALTAS:**  Yes.

9          **THE COURT:**  Okay.  I thought search terms were

10 happening later, and we were going to come back around.

11 There's a separate deadline for when you all discuss and agree

12 and have to move to compel on search terms.

13          **MS. MALTAS:**  So that actually is baked into that part

14 of it.  So they -- the Defendants provided their search

15 terms/custodians -- and, I believe, Corteva is suggesting

16 TAR -- proposal along with their responses and objections.  And

17 so our deadline to move to compel on everything is June 19th.

18          **THE COURT:**  So I'm looking at your schedule, though,

19 and just thinking about lining everybody up, because the

20 motions to compel regarding custodians and search terms was

21 August 30th and proposing custodians and search terms July 31st

22 when we count dates from when the protective order was entered.

23          So your Exhibit A had dates from when the protective

24 order was entered.  And that would give you a deadline for

25 propounding requests for production -- let's see where I am

                23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  getting these from.

2         **MS. MALTAS:**  So, Your Honor, I believe that the

3  deadline for parties to agree or move to compel on custodians

4  and search terms and TAR protocols is 60 days after the service

5  of the requests for production.  So since we served our

6  requests for production the day after we were last here, we

7  calculate that as being due on June 18th.

8         **THE COURT:**  Okay.  And I think where I may have

9  gotten a different calculation is I used the deadline for the

10  parties to propound requests for production as the deadline

11  governing everything.  So I'm -- are you going to do any more

12  requests for production?  I'm assuming you're not doing

13  multiple rounds of search terms for them; right?

14         **MS. MALTAS:**  So our agreement with the Defendants and

15  the way that it's set out is that we have a deadline to submit

16  all of our comprehensive requests for production and data.

17         **THE COURT:**  Right.

18         **MS. MALTAS:**  We have the right to, and both sides, do

19  follow-up --

20         **THE COURT:**  Right.

21         **MS. MALTAS:**  -- if interesting things are found, but

22  we kind of need, like, a good cause to do that.

23         So we have served our comprehensive requests.

24         **THE COURT:**  So I had a -- the date, just based on the

25  deadlines for parties to propose requests for production, was

1  45 days after production of the investigative file, which was

2  14 days after the entry of the protective order, which is where

3  I just assumed --

4          **MS. MALTAS:**  Okay.

5          **THE COURT:**  -- that date became July 1st for your

6  deadline for requests for production.

7          You've already done that?

8          **MS. MALTAS:**  Yes.

9          **THE COURT:**  Okay.  So -- and that was -- when was

10  that?

11          **MS. MALTAS:**  April 19th.

12          **THE COURT:**  April 19th.  Okay.  And then the proposal

13  for custodians and search terms came back to you then already?

14          **MS. MALTAS:**  Yes.

15          **THE COURT:**  When did that come back?

16          **MS. MALTAS:**  That came back on May 20th, so this past

17  Monday.

18          **THE COURT:**  Okay.  And so any motions to compel

19  regarding custodians and search terms would then be due another

20  30 days.  So June 20th or so?

21          **MS. MALTAS:**  18th, 19th, somewhere around there.

22          **THE COURT:**  Okay.

23          **MS. MALTAS:**  And that was just one point.

24          I kind of wanted to pick up from something

25  Mr. McClammy said which was a surprise to me.  The MDL

1 Plaintiffs are not involved in this.  These are ours.  We were

2 told by Your Honor, told by Judge Schroeder our case should not

3 be slowed down by the MDL case.  It's not been.  We served

4 these.

5          So the MDL Plaintiffs are not coming to our search

6 term negotiations next week.

7          **THE COURT:**  Right.

8          **MS. MALTAS:**  So, again, we take no position on what

9 their schedule should be, but just in terms of what Your

10 Honor's expectations are, the MDL Plaintiffs are not involved

11 in this.

12          **THE COURT:**  Okay.  And based on that time frame,

13 clearly could not be.  I mean, there's no way for them to get

14 involved.  So it's necessarily going to involve a separate

15 round of searching if there are other search terms that they

16 want for their requests for production.

17          **MS. MALTAS:**  Yes, Your Honor.

18          **THE COURT:**  Okay.

19          **MS. MALTAS:**  They will, of course, have the benefit

20 of everything that's produced by the Defendants.

21          **THE COURT:**  Right.

22          **MS. MALTAS:**  That is one thing we agree on in the

23 coordination order.

24          **THE COURT:**  Right.  So it would just be to the extent

25 there are other things that they are requesting that were not

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1    already covered by what you all have done?

2            **MS. MALTAS:**  Yes, Your Honor.

3            **THE COURT:**  Okay.  That's helpful, and it does change

4    what my assumption was based on the dates that you all had set

5    out in your Exhibit A.  Essentially, you're going faster than

6    what you had anticipated?

7            **MS. MALTAS:**  Yes, Your Honor.

8            **THE COURT:**  Okay.

9            **MS. MALTAS:**  We basically served them the second you

10   said we could.

11           **THE COURT:**  Which is fine.  It helps me, though, to

12   know, in terms of the schedule, there's not any issue now with

13   trying to coordinate search terms or anything like that?  We're

14   now looking just forward from there?

15           **MS. MALTAS:**  Yes, Your Honor.

16           **THE COURT:**  Okay.  Now, we had set this for a hearing

17   to address those things or to check in in October.  If you all

18   are going faster, is there a need to maybe set that sooner than

19   October, or what's your thought on that?

20           **MS. MALTAS:**  Well, my hope would be we don't have to

21   move to compel anything --

22           **THE COURT:**  Right.

23           **MS. MALTAS:**  -- that we can agree.  I do think that

24   if we do file motions to compel and given their response date,

25   we may need to come in in August to argue.

           23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **THE COURT:**  Right.  Okay.  We can see -- so it's

2    possible we may need to set something sooner than August --

3    than October 24th, but we'll see if we need to do that.

4          **MS. MALTAS:**  That's right, Your Honor.

5          **THE COURT:**  Okay.  All right.  Now, there was no

6    discussion about December 6th and depositions before

7    December 6th.

8          Are you all taking depositions?

9          **MS. MALTAS:**  So we don't know.  I mean, I'll also say

10   as a data point we have served 95 percent of the third-party

11   subpoenas that we plan to serve.  Obviously, we could learn

12   about new third parties during the course of discovery and

13   serve subpoenas, but we served quite a few, 30-some odd,

14   subpoenas, again, shortly after discovery opened in our case.

15         So we don't have a plan for when depositions could

16   be.  There certainly could be a third party who gets their

17   documents in very quickly, and we decide that just for our own

18   ease of schedule we want to go ahead and take them early.  It's

19   hard to tell.  It really just depends on when we start to see

20   substantial productions from the third parties and, frankly,

21   from the Defendants, because a lot of the issues here do relate

22   to their agreements with the third parties, you know,

23   communications.  Maybe we're going to need to see the other

24   side of the conversation and some internal Defendant issues and

25   documents in order to really plan for third parties.

          23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          So that's not a satisfactory answer.  It's sort of a

2    TBD.

3          **THE COURT:**  Right.

4          **MS. MALTAS:**  We are not -- we have no internal

5    deadline when we're going to start depositions.  We're going to

6    start them as soon as it makes practical sense for our case.

7          **THE COURT:**  I think that's fair.  I think we said all

8    along that you all can go ahead and move forward.  But looking

9    at this coordination, it does sort of raise the question in

10   terms of whether there is at least some process that we could

11   go through if you're looking to take depositions, say, sooner

12   rather than later just so that we can determine, okay, how do

13   we coordinate in that situation so that the Plaintiffs -- the

14   MDL Plaintiffs have enough chance to get up to speed to decide

15   whether they want to participate in that.

16         And so it wouldn't be a matter of precluding you from

17   proceeding.  I'm not -- I think that I'm still going to have

18   some question about taking a second deposition.  And so if

19   that's the case, then I need to make sure that they are at a

20   point where they can choose whether to participate or not.  And

21   it may just mean, okay, you don't take it before the October

22   24th hearing that's set.  And then when we come in on October

23   24th, we can make some determination as to -- or hear from you

24   if there's folks that you want to go ahead and start on before

25   December 6th or not.

                23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          If we say, okay, you'll hold off until October and

2 then we'll take up that question, or would that create an issue

3 for you based on what you're planning?

4          **MS. MALTAS:**  I do not think that sort of informally

5 holding off on taking depositions until October would be a

6 problem --

7          **THE COURT:**  Okay.

8          **MS. MALTAS:**  -- for what we're internally planning

9 just in terms of what we're going to have.  I mean, I'm a

10 little hesitant to sort of be officially --

11          **THE COURT:**  Right.

12          **MS. MALTAS:**  -- precluded from doing that.

13          **THE COURT:**  Right.

14          **MS. MALTAS:**  I would like the opportunity to come

15 back --

16          **THE COURT:**  Exactly.

17          **MS. MALTAS:**  -- and say something.

18          **THE COURT:**  Right.

19          **MS. MALTAS:**  And we also -- you know, we do take

20 coordination seriously.  We're happy to stay close with

21 everyone.  We're not going to just notice a deposition in

22 September and just say -- with no warning or not tell anyone

23 what's coming if that's something that we decide to do.

24          **THE COURT:**  Right.  And I think that's what I would

25 anticipate is if there is some need to come back to ask for

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  something before October 24th, something arises that you

2  weren't anticipating or things change, I'm not intending to

3  preclude you from coming back to ask that.  It would just be

4  for planning purposes today.  To the extent there may be some

5  need to determine coordination for depositions after Plaintiffs

6  have had a chance to get up to speed, could we take that

7  question up when we come back on October 24th?

8          Just anticipate that -- at least for now, you're not

9  anticipating any depositions prior to the 24th?

10         **MS. MALTAS:**  Yes.  That makes sense to us.

11         **THE COURT:**  Okay.  I'm going to let you address all

12  of the things; but while we're just talking about it generally,

13  I think one of the things that I noticed that was a primary

14  issue that you all had raised was this idea of still getting

15  the discovery or maybe even participating in discovery after

16  the close of discovery.

17         And that may be one of those things where, you know,

18  it is what it is in terms of the way the local rules work,

19  because if you want the earlier close of discovery date, close

20  of discovery ordinarily means you don't get anything else and

21  you're done, and, you know, you proceed with that.

22         Now, I don't think it would necessarily preclude you

23  from getting copies of what may still be happening, but I don't

24  think you could still be participating in depositions or

25  otherwise doing any discovery -- conducting any discovery after

1   your close of discovery date.

2           **MS. MALTAS:**  Okay.  So I think -- I mean, I think

3   Your Honor sort of hit the nail on the head generally with your

4   discussions with everyone else.  Our main concern is being

5   precluded from accessing information and from being able to

6   admit information that's otherwise admissible under the Federal

7   Rules of Evidence and Civil Procedure with regard to

8   depositions.

9           So we're really not trying to expand our discovery.

10  We're really trying to just have what we would ordinarily be

11  able to have.  And so I do think that with regard to the end of

12  the discovery period, we would ask, to the extent that the MDL

13  Plaintiffs and the Defendants are continuing to exchange

14  written discovery, continuing to produce documents, that those

15  would come to us.

16          So our discovery is closed in April; but if

17  Defendants make a large production of documents or if there is

18  a large production of third-party materials, our expectation

19  would be we could still access those.

20          Now, given our schedule, would we really be able to

21  get them into our summary judgment or our expert reports?  I

22  don't know.  But that we would have the opportunity to see

23  those and we would have the opportunity to use them as

24  admissible under the rules at trial.

25          I think that's slightly separate than attending

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 depositions.

2          **THE COURT:**  Right.

3          **MS. MALTAS:**  But I think just the first step is

4 physical paper -- transcripts, rogs, RFAs, documents -- we

5 would ask that we continue to receive those throughout the

6 course of these cases.

7          **THE COURT:**  And it may actually be something that we

8 have to take up at the end.  I think -- I can tell you pretty

9 clearly that you wouldn't be able to keep attending

10 depositions.

11          **MS. MALTAS:**  Okay.

12          **THE COURT:**  I think that once discovery is closed,

13 it's closed.  Now, we may be able to get everybody on the same

14 schedule so that that's not an issue, but I think you're done

15 once you've closed your discovery period.

16          Now, if you need to revisit that today, I mean, I

17 think we're still at the now is the chance to set the schedule

18 if we need to revisit or address it, because once everybody is

19 underway, then we're not going to change any schedule.  If that

20 affects what they agree or what we set in that case affects

21 what you all want to do, then let's consider all of that today.

22          I would say what you continue to get after the close

23 of discovery, I mean, there may be some issue of, you know, is

24 this still supplementation, supplementing prior requests that

25 should still continue, or is it otherwise available in a way

          23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  that you can access it and still be able to use it?  And it may

2  be that we have to kind of take that up more on a case-by-case

3  or look at it where we stand at the close of discovery.

4          So if you're counting on getting that information,

5  then it may be something we need to address now in terms of the

6  schedule or getting everybody on the same schedule.  If

7  you're -- if you're comfortable with we'll close discovery so

8  we can get on with our dates and whatever happens with them

9  continuing happens with them, then we can do it that way.

10         But just in terms of the decision you all may need to

11 make, that -- I can't tell you right now that you would still

12 get access to all of that or that I would have them still

13 producing to you; but if it's available otherwise, then it's

14 one of those things that you could use it the same way you

15 could under the Rules of Civil Procedure for something else

16 that you would otherwise have access to.

17         So I'm not going to preclude how you would use it,

18 but whether you would still get the -- privy to additional

19 productions or copies of things that you otherwise wouldn't if

20 you're not participating in the discovery, then I think we have

21 to address that --

22             MS. MALTAS:  Okay.

23             THE COURT:  -- separately or later.

24             MS. MALTAS:  And so that would just be sort of from a

25 going-forward basis at the April 22nd -- whatever our deadline

1   is, there is a possibility that we would not have access to

2   discovery documents, deposition transcripts that are produced

3   past that point?

4            **THE COURT:**  Past that point.  Right.  Right.  Right.

5            I think, ordinarily, you would not, and so we would

6   need to take that up or consider that.

7            **MS. MALTAS:**  Right.

8            **THE COURT:**  I'm not -- as I said, I'm not going to

9   preclude you or -- preclude you from using something that you

10  do have access to --

11           **MS. MALTAS:**  Right.

12           **THE COURT:**  -- or that you get, but whether you

13  should still keep getting productions after your close of

14  discovery deadline, ordinarily, you would not.  You know,

15  whether we have to look and see whether that's a supplement

16  that would fall within 26(e) and should still be provided after

17  the close of discovery, we can look at that and see.

18           But that would be the analysis that I would be

19  looking at when we get to that point.

20           **MS. MALTAS:**  And I think, as part of that analysis,

21  what we would just ask is sort of the goose-gander rule.  So

22  Defendants are in, you know -- they don't consider it to be an

23  enviable position to be in two lawsuits, but they do have a big

24  leg up on us because they have access to everything, and they

25  can see it.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          So what we would ask is, you know, if Your Honor is
2    inclined to say that written discovery, and particularly maybe
3    third-party documents are going to be the main ones we care
4    about, are produced past our close of discovery, they can't use
5    it either.  So they can't come in at trial with third-party
6    productions from the MDL case and use them against us but we've
7    never seen them before.
8          **THE COURT:**  So the proposal they have -- I guess
9    Defendants have includes all other witnesses June 13th.  And I
10   know your expert reports start June 6th.  But, you know, you're
11   still within the discovery period at that point.
12          It may be that you all can reach some sort of
13   agreement where everybody is stopping party discovery at the
14   April date, but everybody is still continuing on the
15   third-party discovery until some later date in June so that --
16   and, again, I'm not intending to preclude you from keeping on
17   whatever schedule you want to keep on; but if you want to
18   preserve that opportunity, then if you want to just keep some
19   of those internal deadlines that may keep everybody then on the
20   same schedule, that may be a way to do it and avoid all of that
21   issue that we're now talking about --
22          **MS. MALTAS:**  Okay.
23          **THE COURT:**  -- as well.
24          **MS. MALTAS:**  Yes, that makes sense, Your Honor.
25          **THE COURT:**  Okay.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **MS. MALTAS:**  And I do think from our perspective --

2     and I think Your Honor has made the decision that it sounds

3     like we would be very happy with -- we just don't want to be

4     precluded from using things that we are ordinarily -- you know,

5     there's actually three cases.  Arkansas is the third case.

6          **THE COURT:**  Right.

7          **MS. MALTAS:**  And so the coordination order, as

8     Defendants have written it, would put us in a worst position

9     here than we would be with Arkansas, because I can just serve

10    subpoenas all day to them and to the State of Arkansas and get

11    all of that stuff in their case and I can use it.  Here,

12    they're saying, oh, it has to count as a rog.

13         **THE COURT:**  Right.

14         **MS. MALTAS:**  So that is sort of the primary issue for

15    us, which I think it sounds like it's going to be fairly

16    addressed.  And we can think about the end-of-fact discovery

17    period and how we want to handle that.

18         **THE COURT:**  Right.

19         **MS. MALTAS:**  Maybe that's something we can talk about

20    more, again, just as long as it is that the Defendants can't

21    carry on in the MDL case gathering evidence that they can use

22    against us --

23         **THE COURT:**  Right.

24         **MS. MALTAS:**  -- but we've stopped.

25         **THE COURT:**  Right.  And I think that, as we're

1 talking through it now, my inclination would be for you all to

2 then come up with some consistent dates, because that seems

3 like a mess for us to try to sort out with really no benefit.

4 I mean, that's a lot of discovery dispute and coordinating

5 happening over discovery that's happening during that period of

6 time when really there doesn't need to be. We just set a date

7 that then lets everybody have equal access to that information.

8            **MS. MALTAS:** Right. And potentially hypothetical,

9 right, because --

10            **THE COURT:** Right.

11            **MS. MALTAS:** -- we don't know what discovery is

12 actually going to happen during --

13            **THE COURT:** Right.

14            **MS. MALTAS:** We could be all very concerned about

15 discovery that those --

16            **THE COURT:** Right.

17            **MS. MALTAS:** -- that is not new discovery --

18            **THE COURT:** Right.

19            **MS. MALTAS:** -- to that extent.

20            **THE COURT:** Right. Right.

21            So anything else that you wanted to address or raise

22 regarding the coordination or the schedule or anything else?

23            **MS. MALTAS:** I will turn it over to my colleague

24 Ms. Gillen, who I think just has a few points on some of the

25 smaller issues.

    23MD3062 -- Initial Pretrial conf. -- 5/23/24

1          **THE COURT:**  Okay.  All right.

2          **MS. GILLEN:**  Good morning, Your Honor.  Elizabeth

3    Gillen of the FTC on behalf of the Government Plaintiffs.

4          I just want to offer a little more color on some of

5    the questions of hourly deposition limits that we've been

6    talking about.

7          **THE COURT:**  Okay.

8          **MS. GILLEN:**  So as Your Honor noted, Plaintiffs have

9    proposed that Defendant depositions be limited to 13 hours.

10   We've cited several examples of similar coordination orders of

11   other government antitrust cases with the related MDL

12   proceeding.  These have all allowed for Plaintiff depositions

13   of 11 to 13 -- something in the 11- to 13-hour range.

14         You know, I just want to note that, absent

15   coordination, the MDL Plaintiffs said the Government Plaintiffs

16   would each be entitled to seven separate hours on the record.

17   So we do believe that we're giving up an hour of deposition

18   time we would otherwise be entitled to.

19         I also want to note that we do have 12 State

20   co-Plaintiffs who will also be, you know, participating in

21   these depositions.  It may be that for some Defendant

22   witnesses, States have specific questions that they want to ask

23   about their state-specific claims and statutes.

24         So we think that our proposal is reasonable.

25         **THE COURT:**  And I mentioned 11.  I will give you my

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  thought process on that.

2          So if seven hours ordinarily, and an hour of it would

3  be for the Defendants to have for their own witness just

4  ordinarily, so just as a general ballpark, you would have about

5  six hours that you're ordinarily questioning.

6          My thought was if you give up an hour of that, then

7  you get five.  The other Plaintiffs get five.  Everybody is

8  giving up essentially an hour of what they would get, and I

9  give the Defendants their hour back, and that's how I get to

10 11.  So if everybody is essentially giving up an hour of what

11 they would get, then I think it recognizes that there is some

12 overlap in terms of what the questions might be and helps to

13 then make it more feasible to do these in a day and a half.

14 Or, as I said, you know, if you've got a witness who is willing

15 and you want to try -- and Defendants want to give up an hour

16 and you want to try to do a 10-hour deposition in a day, then,

17 you know, that's certainly something I'm not going to preclude.

18          But, otherwise, ordinarily, it would be an hour and a

19 half -- I mean, a day and a half, and then you could fit

20 another day and a half in there together to try and get these

21 done in a shorter period of time.

22          That was my thought process going in for how to

23 balance those things.

24          Again, I want to hear and make sure I'm not missing

25 something in terms of how we come at that.

1          MS. GILLEN:  No, thank you, Your Honor.  That sounds

2   reasonable.  I think, you know, Plaintiffs are just concerned

3   if we -- we don't want to give, you know, up too much of our

4   deposition time simply because Defendants are in two separate

5   litigations.  We're certainly willing to work with all parties

6   to work out something to that extent.

7          THE COURT:  Okay.  All right.

8          Anything else on that matter or another issue that

9   you wanted to raise?

10         MS. GILLEN:  That's all I have on that.  I would like

11  to also talk about nonparty depositions as well.

12         THE COURT:  Okay.

13         MS. GILLEN:  Plaintiffs have proposed that if the

14  deposition of a nonparty is noticed by multiple parties that no

15  party would oppose an extension of time up to 14 hours.  I

16  believe Defendants have suggested that nonparty depositions

17  should be limited to nine hours.

18         First, you know, practically speaking, I just want to

19  clarify that, you know, we're not suggesting that we spend 14

20  hours on the record with all nonparties.  It was simply an

21  upper limit that we proposed.

22         I think, you know, we include the language no party

23  would oppose a request to extend fact deposition up to 14

24  hours.  But, practically speaking, this is something that we'll

25  negotiate with the third party themselves.

         23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1         **THE COURT:** I was going to say I am going to expect

2 or anticipate I am going to get some motions to quash by some

3 third parties if I include something like that.

4         **MS. GILLEN:** Correct. I mean, for each individual

5 third party, this will be a very fact-specific determination

6 based on a number of circumstances. Just to offer one example,

7 there could be some key third parties, for example, the

8 distributors, where the deposition is noticed by the MDL

9 Plaintiffs, the Government Plaintiffs, Corteva and Syngenta.

10 In that case, there would be sort of a four-way split of the

11 time.

12         **THE COURT:** Uh-huh.

13         **MS. GILLEN:** And, there, I don't believe nine hours

14 would be sufficient. But, you know, there may be other third

15 parties where that's not the case.

16         So just to be clear, we're suggesting sort of an

17 upper limit here to be negotiated on a case-specific basis.

18         **THE COURT:** Okay. So if we had, say, same kind of

19 range, 11, maybe 12 just so it's a little more easily

20 divisible, but if for consistency I kept them 11, then

21 essentially you split them in half between Plaintiffs and

22 Defendants and then make some coordination among yourselves

23 about how you wanted to use that time so everyone still has,

24 you know, five and a half hours in terms of -- per side, and

25 then you make some determination in terms of how best to use

      23MD3062 -- Initial Pretrial conf. -- 5/23/24

1  that time.

2          Is that workable at least, unless you come back and

3  ask for more for a particular situation?

4          **MS. GILLEN:**  I think that's workable.  Hopefully, we

5  won't be back before Your Honor requesting that, but --

6          **THE COURT:**  Right.

7          **MS. GILLEN:**  -- I think as long as there's the

8  freedom and flexibility to sort of decide on an individual

9  nonparty basis, that's sort of the goal for us.

10         **THE COURT:**  I think the idea would be we'll just keep

11 it consistent across the board for everybody.  The third party

12 still has the ability to come back and request the limitation

13 to seven hours, and I can consider that.  And the parties also

14 have the ability to come back and request something more than

15 11 if they can't -- if it's noticed by both sides or by more

16 than two parties.

17         And then let me think about how -- it would need to

18 be noticed by both sides and at least three parties but in a

19 way that then says, okay, this is going to be one that needs to

20 be divided more than just among one side.  If that's the case,

21 you can come back and -- let me know if you really have a

22 reason you think 11 is not going to do it.

23         And I think the order should preserve in there so

24 it's clear to the third party and their attorney that they have

25 the ability to come back and ask for a limit of seven hours if

          23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1   it can otherwise be agreed with counsel.

2            Does that address those things at least reasonably

3   enough?

4            **MS. GILLEN:** Yes. Thank you, Your Honor.

5            **THE COURT:** All right.

6            **MS. GILLEN:** I believe Your Honor touched on this

7   earlier, too, but we already -- we've addressed the posture

8   where if one side, either Plaintiffs or Defendants, notice a

9   nonparty deposition and the other side chooses not to

10   cross-notice, that they would still get an hour of deposition

11   time.

12            I believe everyone -- it seems like everyone is in

13   agreement on that point.

14            **THE COURT:** And just to -- right. So just to clarify

15   again, so if Defendants notice it, then Plaintiffs can attend

16   and have an hour. If they want to actually be able to have

17   more than an hour, then they would need to cross-notice it. If

18   you don't cross-notice on the same side -- so if Plaintiffs --

19   MDL Plaintiffs notice it and the FTC Plaintiffs don't

20   cross-notice it, then the FTC Plaintiffs don't get to attend.

21   To attend for one on your side, you have to cross-notice it,

22   but not for one on the other side. If it's not on the other

23   side, you can attend, but you only get an hour divided among

24   your side, Plaintiffs. So if you and the MDL Plaintiffs don't

25   agree, you get 30 minutes, essentially, for the ones that

1  Defendants notice.

2          Is that your understanding?

3          **MS. GILLEN:**  Yes, thank you, Your Honor.

4          **THE COURT:**  Okay.

5          **MS. GILLEN:**  And I believe the only remaining issue

6  is the dispute with respect to deposition scheduling.  I think

7  the process that Your Honor explained sounds reasonable.  I

8  believe you suggested a week for proposing alternative

9  deposition dates.  That's fine for the Government Plaintiffs.

10         I think, you know, we're just looking for a process

11 that will make this efficient and avoid delay in scheduling

12 depositions.

13         **THE COURT:**  Right.  I think, as I said, maybe let's

14 make it expectation as opposed to mandatory so that I give you

15 all the flexibility that I think you've shown you can use, but

16 we'll make the expectation that you're providing alternative

17 dates, and that would be more than just one alternative date.

18 I think it would be helpful -- if you can't do the date that

19 they are giving you, then propose at least two others so that

20 they can choose from on that.

21         Okay.  I think we're good on that.

22         Anything else that you wanted to ask?

23         **MS. GILLEN:**  Nothing else.  Thank you, Your Honor.

24         **THE COURT:**  Okay.  So let me come back around to the

25 Plaintiffs.  We've covered a lot of ground.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          Ms. MacLean, I'll let you just respond to anything
2     that's been raised or raise anything else that we might need to
3     consider or address.

4          **MS. MACLEAN:**  Sure.  Thank you, Your Honor.

5          Just on the schedule, just to emphasize, again, we
6     are a bigger and more complex action than the Government
7     action, and it's not just a matter of the timing of our receipt
8     of documents from the Government action but also to review
9     those millions of pages of documents that we haven't even
10    started to review and to understand them and then to be able to
11    issue our own nonduplicative requests for the additional
12    materials that are specific to our case and then to be able to
13    review and analyze those.  And then it's -- we simply -- we
14    believe it cannot happen on the same schedule as the
15    Government.

16         We started out proposing six months to the Defendants
17    and worked our way back to three, but we really think that's as
18    far back as we can possibly go and meet our obligations in
19    prosecuting the case.

20         As far as noticing Defendant depositions, those are
21    really in a lot of ways the heart of your case.  That's some of
22    the most important depositions that there are.

23         **THE COURT:**  So maybe it helps to sort of think
24    through, because, as I was looking at the schedule, I will tell
25    you this:  I noticed, you know, there was a lot of time --

              23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  extended time baked in there for responding to requests for

2  production in terms of proposing custodians and proposing

3  search terms in the FTC case that we could do on a more

4  expedited basis if we needed to in order to get you all of the

5  production of documents by January so that we could be on a

6  similar type of schedule.

7          Now, whether we extend all other witnesses out some

8  or give you some, you know, extended time there, that may be

9  something that the FTC is interested in as well, so along the

10 lines of what the Defendants proposed, so that you have until

11 June for some of the other witnesses.

12         But I'm wondering, if we compress some of the time

13 for getting the search terms coordinated and issues on that

14 resolved, whether there wouldn't be a way to still get you all

15 the documents by January 22nd.

16         **MS. MACLEAN:**  I understand what you're saying, Your

17 Honor.  So just to reiterate, again, the FTC has been at this

18 for years and just has an understanding of the documents, an

19 understanding of the story that we don't have that we're --

20 even if we receive all of the documents on that timeline, it's

21 a matter not just of our receiving them, but meaningfully

22 analyzing them.

23         **THE COURT:**  True, although at this point we're

24 talking about eight, nine months to just have the documents

25 before even having to start doing any of the depositions, if

1   we're talking about depositions, you know, starting after you

2   have the documents, say, in January.

3           Mr. Burke, did you need to address that?

4           **MR. BURKE:**  If I could, sure.

5           So I tried to sketch out just how long it would take

6   to get our arms around the production in the FTC case.

7           **THE COURT:**  Uh-huh.

8           **MR. BURKE:**  So about a million pages in the preceding

9   investigation.  I spoke with FTC.  They expect about another

10  million from this tranche.

11          In a similar case, it took us with 35 to 40 reviewers

12  working full-time two years to get through 6 million documents.

13  So that's a third of that.

14          Let's suppose we can work faster, you know, working

15  faster than in that case, that's going to be five months.  So

16  that takes up to about November to get our arms around what's

17  been produced in FTC.

18          We're also going to be at the same time trying to

19  figure out what is it that we need in our case.  We have

20  additional active ingredients we have to prosecute.  We have to

21  think about, okay, additional information we're going to need

22  to demonstrate impact on a common basis, come up with a common

23  damages formula.  Our pleadings aren't even set.  We may be

24  bringing in additional parties as defendants.

25          There's a lot of things that go into what our

1  requests for production are going to look like.  And to think

2  that we're going to get -- if everything goes right, everything

3  falls into place and we get the production from the Defendants

4  by January, February, next year is, I think, optimistic.

5          **THE COURT:**  Well, so you'll get the first million in

6  the next week or two.  And so you'll have at least seven, eight

7  months for that, if we're talking about January 22nd as the

8  date.  And so then if you get the other requests for production

9  that it looks like they're going to continue providing, and I

10  guess that's all the way up to January 22nd, but hopefully

11  before then, then you'll have them on the same time frame that

12  the FTC folks have them; right?

13          **MR. BURKE:**  And then we're going to need to get our

14  own RFPs out.

15          **THE COURT:**  So that would be -- I guess the question

16  of -- if you've got requests for production yourself, which,

17  again, are in addition to whatever the search terms are that

18  they are already running for the FTC and providing by

19  January 22nd, and your notion was that you could get those by

20  November 15th, then what I am looking at is, okay, well, what

21  if we do a quick turnaround then on addressing those and we

22  come back for a hearing, whichever those Fridays is not the

23  Friday after Thanksgiving, either the 22nd or the 29th, to work

24  out the search terms, any issues with those requests for

25  production, so that then they now have the same amount of time

1  or a similar time frame to go ahead and make your production by

2  January 22nd as well?

3          Essentially, it gets you on the same time frame that

4  the FTC has got.

5          **MR. BURKE:**  So they make the production.  Then we're

6  going to need to review these documents, obviously, before we

7  start taking depositions.

8          **THE COURT:**  Right.

9          **MR. BURKE:**  That's assuming nothing goes wrong and

10 there are no additional parties brought into our cases.

11         **THE COURT:**  But isn't that the same position that the

12 FTC is in as well?  I mean, you're getting most of those

13 documents or all of those documents on January 22nd.

14         **MR. BURKE:**  One of the big differences is the FTC has

15 been at this for a couple of years, and they already know

16 what's in a lot of these documents, and they have a sense of

17 where they want to go.

18         Sure, we have a sense of where we want to go, but not

19 nearly so well informed as the FTC.  And I don't think it's

20 practical to put us on the same track as FTC.  I don't think

21 it's fair to our clients, not in a class case.  Our case is

22 just that much more complex, and it's also broader.

23         **THE COURT:**  What -- just so you know sort of where

24 I'm headed, I think that in terms of coordination of discovery,

25 I am assuming the FTC is not going to depose or notice anybody

              23MD3062  -- Initial Pretrial conf.  -- 5/23/24

for deposition until after we meet again on October 24th.  At
that point you'll have had the chance to look at those things
and have them, what -- June, July, August, September,
October -- for several months, at least, to have some
opportunity to have reviewed all of those.

        And then at that point if they start noticing
depositions, if you need to do a second notice, we're going to
be under that good cause.  So there may be some second notice
that you need to do because it involves issues that are
different, the different composition or the class issues or the
other issues that you raised and noticed, which may be good
cause to include those people or have those people come back
for another deposition, but that you can go ahead and proceed
with the things that are covered by the FTC investigation and
the documents that you've already gotten so that we at least
have the benefit of the coordination for purposes of the
depositions.

        I'm not going to do sort of the -- micromanage the
interrogatories and the requests for admission.  I think those
are handled under the rules well enough, but I am very
interested in not duplicating depositions and in trying to get
the document productions up to speed.

        Now, you know, it's going to be Defendants' burden to
get that all turned around that fast, but their interest in
doing that is so that they have less risk that there might be a

1  duplicate deposition that they have to deal with.  And so if
2  the burden is on them to go ahead and get all that discovery on
3  a really fast turnaround, then we can do that so that then the
4  piece that's on you is to do whatever you need to do first in
5  order to be able to make decisions about those depositions as
6  they're coming.

7          Now, how we best do that with the time frame and
8  whether there is an interest in staggering it -- as I mentioned
9  to the FTC folks, you know, it may be in their interest to
10 stagger theirs to the later date for third-party depositions so
11 that you've got a little bit longer period of time to get all
12 of those depositions scheduled and you're prioritizing the
13 party depositions, or you all agree, you know, to give yourself
14 some flexibility there to intend to do party depositions, but
15 give yourself some room, if you need to, to schedule it through
16 June for doing the additional depositions.

17         It gives everybody a little more room there, because
18 there are a lot of depositions.  And so I think even the -- if
19 we were noticing them by June and closing them by July, it's
20 hard for me to imagine how you're getting all those depositions
21 fit into that time period.  And so my assumption is it's going
22 to be happening through the period from January.  And if it's
23 by April for most party depositions, unless they can't be
24 scheduled before then, and July for the third-party
25 depositions, and the FTC agrees to that, consistent with

whatever they do with their experts in order to be able to make

sure they've got access to everything, it seems like there may

be a way to do that that pushes the Defendants to get the

documents on a really fast turnaround and then give you a lot

of extra time you're looking for here but in a way that's --

anticipates that there's going to be some depositions to go

ahead and start getting scheduled in January and forward

because there's not going to be time if you don't do it that

way, really.

**MR. BURKE:** If -- the key here for us is when we get

the documents --

**THE COURT:** Okay.

**MR. BURKE:** -- in order to be able to take the

depositions.

**THE COURT:** Right.

**MR. BURKE:** And as Your Honor correctly noted, then

the burden is on Defendants. If you're going to set a mark for

them to meet and they don't meet that mark, well, then it's

only fair that we can kick out depositions because we wouldn't

have the materials we need to take them.

**THE COURT:** Right.

**MR. BURKE:** And if that's the regime we're going to

adopt, you know, we'll make our best efforts to meet those

dates.

I'm just -- having done this for a while, things

23MD3062 -- Initial Pretrial conf. -- 5/23/24

1  never proceed perfectly.  There's always -- to use a

2  colloquialism, there is always screwups.  There is always

3  mistakes, and people fight over stuff they shouldn't fight

4  about.  That's just human nature.

5          And I have my doubts as to whether we're going to

6  have the documents that we need to take depositions -- sorry --

7  that we're going to have these documents in hand by January,

8  not in this type of case with everything that needs to happen

9  to fall into place.  That's just being candid.

10         **THE COURT:**  Right.

11         **MR. BURKE:**  And as a matter of fairness, we'll put

12  the bodies on that we need to put the bodies on to get up to

13  speed.  But we felt like the schedule we proposed was a modest

14  schedule in terms of what we have to do to get this case ready

15  to get certified and then get prepared for trial in terms of

16  discovery.

17         **THE COURT:**  And I think that what I'm sort of

18  contemplating as we're talking through is using some of the

19  dates that you proposed.  You said November 15th is when you'll

20  be ready to do requests for production.  So we'll use your

21  November 15th date.  But then we're going to put a, you know,

22  two-week turnaround on finalizing -- from your requests to the

23  point where we're finalizing term searches.  And so that's a --

24  you know, requires -- is going to require everybody to have

25  some intense focus during that time frame to get to the point

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  where within those two weeks you've got the search terms and

2  then for them to get their production so that production is all

3  happening on a similar time frame for -- by the January 22nd

4  date so that then depositions can be scheduled together.

5        And if the issue is between the January 22nd

6  production date and April 22nd you can't get all the

7  depositions scheduled, I mean, I think that's going to be a

8  problem for everybody if we're trying to figure out, okay, when

9  do we provide the last date for noticing depositions and when

10 do we get them scheduled.

11       And that may be something that if I were to going to

12 tier yours to give you a little bit of extra time after the

13 party discovery, that the FTC folks are interested in doing

14 something similar, too.  And so then you prioritize the

15 depositions for the parties and then have your later date for

16 finishing everything to give you a little more time and

17 flexibility in that.

18       It, I think, uses the dates that you had but maybe

19 imposes some tighter turnaround on getting the documents

20 produced so that the discovery -- or the depositions can be all

21 set by cross-notice, and we don't have the issue of the good

22 cause being, well, we didn't get the documents until later or

23 we're three months behind.

24       Now, if the good cause is a completely different

25 issue here -- these are class certification issues; these are a

1  whole different active ingredient issue -- then that can be

2  something that we address and consider.

3          Now, I'll tell you when we're talking about third

4  parties, I'm going to have to also consider the interests of

5  the third party and whether they are telling me now this has

6  become unduly burdensome or how we adjust and address that.

7          But those are all things we can take up on a

8  case-by-case.  I'm going to assume that the third parties that

9  you can cover you'll go ahead and take care of by

10  cross-noticing so that you don't burden them unless it's

11  necessary to do that as well.

12          **MR. BURKE:**  Yes, Your Honor.

13          **THE COURT:**  So that's where I'm headed.  And as I

14  said, what I'm anticipating doing is actually maybe taking a

15  break and letting you all have some more discussion while

16  everybody is here anyway to see if you all can agree on

17  something.  If you can't, where the points of disagreement are.

18          And I can sort of run through again some of my

19  thoughts on this, but I think I have given you some idea so

20  that maybe we're at the point where you all can at least narrow

21  down what it is that you might need me to address.

22          But is there anything else before I go back through

23  and check in with everybody else?

24          **MR. BURKE:**  No, Your Honor, thank you.

25          **THE COURT:**  Okay.  All right.  Mr. Weiss, anything

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 else that you wanted to respond to?

2      **MR. WEISS:**  Yes, thank you, Your Honor.  Jesse Weiss

3 for Corteva.

4      I think what I understand is we'll have an

5 opportunity to come back after we've had a discussion with all

6 the parties?

7      **THE COURT:**  Right.

8      **MR. WEISS:**  So I don't think I need to go through all

9 the issues here.  Maybe some of them will be resolved --

10      **THE COURT:**  Right.

11      **MR. WEISS:**  -- in those discussions.

12      I would just note, you know, on the issue of -- like

13 discovery started in the MDL case in April.

14      **THE COURT:**  Uh-huh.

15      **MR. WEISS:**  In a normal case you wouldn't have an

16 investigative file.  I think we made this point before.  You

17 wouldn't have an investigative file.  You would issue RFPs and

18 then responses and objections and productions.

19      So it's not clear to us why a deadline to propound

20 requests for production would be set November 15th.  In the

21 Arkansas action, they didn't have our investigative file.  They

22 served RFPs.  That process is underway.

23      So I guess we just want to mentally see if the

24 existence of the investigative file has, you know,

25 diametrically opposite ways or diametrically opposite

1  implications, so we can move promptly in our document

2  productions.  But if we get document productions on our RFPs --

3  all the RFPs on November 15th, that's a different scenario.

4  There is no reason for that because we're in discovery now.

5  They can issue RFPs, and they can craft them in a way that

6  says -- you know, that ensures there is not redundancy between

7  what's already been requested or what they are already going to

8  get.

9          So I just make that point.

10         **THE COURT:**  So the -- for these FTC requests that

11  you've gotten that you've worked out search terms, so tell me

12  timeline-wise where are those productions going to happen?

13  This January 22nd date, is that just your final date to get

14  these produced or what's your schedule here?

15         **MR. WEISS:**  Yeah, January 22nd is the final date to

16  be produced.  I don't know exactly when we'll be able to

17  produce the documents that will be responsive to the -- our

18  RFPs that we recently received, but it will be before

19  January 22nd.  That's the cutoff.  That's the deadline.

20         **THE COURT:**  Right.

21         **MR. WEISS:**  And I think we have an obligation to make

22  rolling productions, and we intend to do that.

23         **THE COURT:**  And all of those rolling productions are

24  going to be provided to the MDL Plaintiffs as well?

25         **MR. WEISS:**  Under a coordination --

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **THE COURT:**  Under a coordination order, right, where

2  we're sharing all the written discovery --

3          **MR. WEISS:**  Yes, Your Honor.

4          **THE COURT:**  -- and productions.

5          And as I'm thinking about -- you know, I'm using

6  October 24th as that date we set, what I may be inclined to

7  do -- and I'll come back around to you, Mr. Burke -- is give

8  you a month less than you asked for and then hear from

9  everybody on October 24th if there are disputes on that so that

10  we'll see where we are at that point, but that the requests for

11  production would be, say, October 15th.  That's a -- yeah,

12  October 15th.  And then if they give you requests for

13  production October 15th, then you all need to have figured out

14  your objections and your proposed search terms, negotiated with

15  them on search terms, and be ready to talk to me about search

16  terms at the hearing on October 24th so that if there are any

17  other searches that need to happen from them that haven't

18  already happened before then, we get that taken care of on the

19  24th so that your document productions can then be provided to

20  them by January 22nd as well.

21          Now, it does -- yeah, it's a tight time frame.  I'm

22  going to put this back on the Defendants again to some extent,

23  because we could have had them with the copy of all the

24  investigative file a year ago and had this a little more spread

25  out.  And so I'm aware of that for the MDL Plaintiffs' position

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1   that some of the burden -- or the bulk of the burden on doing

2   this on this quick turnaround, getting the documents produced,

3   taking care of things, is and should be on Defendants because

4   of where we are with that.  So, I mean, I think I got to take

5   that into account as well.

6           So it may be a relatively quick turnaround from

7   October, November, and getting all the documents produced that

8   they want to in January, but I think that is the only way that

9   then gets us to your requests, which is then to have everybody

10  on a similar track for noticing depositions as well.

11          I think that may be where the push comes for the

12  Defendants on that.

13          **MR. WEISS:**  That's understood, Your Honor.  And I

14  think, you know, there's a deadline that can be set for, you

15  know, having RFPs.  The only thing I would note is that, you

16  know, it's May, and I guess I don't see any reason why they

17  can't issue -- you know, start issuing their discovery requests

18  on a faster time frame.

19          **THE COURT:**  Well, I mean, certainly they could, but

20  I'm giving them time to also review.  So there may be some that

21  come sooner rather than later, but the deadline for that is not

22  until October because I'm giving them those months to be able

23  to review the investigative file that they didn't have access

24  to before.  If there is some issue on that, I think it is what

25  it is on that.

1     **MR. WEISS:** Understood, Your Honor. I think we're
2 just talking about the difference between supplementation and,
3 like, the bulk of what they are going to be requesting.

4     You know, we understand there may need to be some
5 supplementation up to the deadline. We would expect that
6 that's not the date on which they are going to propound all
7 their discovery requests. Again, we got the RFPs in the
8 Arkansas action weeks ago. They didn't have an investigative
9 file. In a normal case where there is no investigative file,
10 RFPs would be issued a lot sooner. Discovery commenced in
11 April. It's May.

12     **THE COURT:** I understand. I'm, again, trying to
13 balance the concerns that they have with the amount of
14 documents that they are going to get that they need to review
15 and look at. There may not be many requests for production
16 that are left that they need to ask for once they review all of
17 those things and all the things that the FTC provided. There
18 may be very little left that you haven't already produced or
19 that wouldn't resolve or address their requests.

20     But I think I'm going to consider shortening the time
21 that they have asked by a month to take them to October -- you
22 know, they were asking for November on that -- in order to get
23 us on a schedule that lets me resolve it when we come back for
24 the hearing on 24th but with a -- that is going to give you
25 then a turnaround from the 24th. These are the search terms.

1 Now you need to go run them and do the production and do them

2 by January 22nd.

3          I don't think that's an unreasonable request in order

4 to be able to do the coordination that you're wanting to do for

5 the documents and also it sounds like the witness depositions,

6 which was the primary concern, it sounds like.

7          So if -- that's, at least, tentatively the way to get

8 everybody on a similar schedule.  It pushes the Plaintiffs to

9 review the file, make any determinations that they want in

10 terms of what discovery to request, but it gives them the

11 October 15th date, which is a month less that they wanted, but

12 lets us get that resolved at the hearing that's already set on

13 the 24th, and then gives the Plaintiffs another three months to

14 run the search terms and get the documents produced that

15 haven't already been produced in all of the other productions

16 that have already happened.

17          And so -- and then that gets everybody on the same

18 time frame, although I am going to ask everybody to take a look

19 at the number of depositions that they're looking at scheduling

20 and the time frame they've got, and that includes in the FTC

21 case as well, considering potentially a tiered or a phased

22 schedule that may put party depositions sooner, unless the

23 parties can't fit them in and agree to do them later, but gives

24 a later date for the third party.  That doesn't necessarily

25 change any of the expert dates or certainly the closing date

1  for the FTC, but that would get everybody on the same schedule

2  so that the FTC doesn't have the concern or the issue with

3  regard to discovery that might happen after the -- at the close

4  of fact discovery that was already set.

5       So I would like to keep everybody on the -- a

6  schedule that avoids unnecessary discovery disputes but doesn't

7  prolong or delay anything, particularly delaying the

8  dispositive motion briefing and trial that's already set for

9  the FTC folks.

10       And then what -- and, Mr. Weiss, was there anything

11  else you wanted to address?  And then let me go around and make

12  sure there is not anything else before I kind of summarize or

13  run through.

14       **MR. WEISS:**  Thank you, Your Honor.

15       There is one more issue --

16       **THE COURT:**  Sure.

17       **MR. WEISS:**  -- just in case there is guidance for

18  when we confer --

19       **THE COURT:**  Sure.

20       **MR. WEISS:**  -- on it that we didn't discuss, which is

21  in their proposal they had a requirement that expert reports

22  and materials and unredacted briefs would be served on the

23  other side, which, you know, to us, it kind of just traces the

24  same action.  There is --

25       **THE COURT:**  Right.

1          **MR. WEISS:** -- not coordination.  I think we've

2     addressed that in our submission.

3          **THE COURT:**  And I will tell you what I would be

4     inclined to do with that.  I think that I would anticipate that

5     we're setting this back for another proceeding in June or July

6     and that we can address then what's happening.

7          My understanding is in the MDL case at that point we

8     would be looking at setting a schedule for class certification,

9     expert discovery, and ultimately summary judgment that would be

10    on a separate schedule different from the schedule that the FTC

11    folks have already set.  And so I would not assume or presume

12    to make any determination about access to expert reports now.

13    I don't think there is any reason to.

14          At this point everybody -- when they do get an

15    expert -- or have an expert report, you can just treat it as

16    you would in an ordinary case.  And then if we need to address

17    what expert reports could or should be shared, I think we are

18    going to be in a lot better position to make that analysis once

19    we're to the other side of discovery and actually know who

20    those experts are going to be and what we're even talking about

21    rather than just purely hypothetical on that.

22          Does that address the expert issue for where you are

23    now?

24          **MR. WEISS:**  It does, Your Honor.

25          **THE COURT:**  All right.  Anything else, Mr. Weiss?

         23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **MR. WEISS:**  Not from me.

2          **THE COURT:**  Mr. McClammy?

3          **MR. McCLAMMY:**  Thank you, Your Honor.

4          For the record, Jim McClammy on behalf of the

5    Syngenta Defendants.

6          I think just briefly, Your Honor -- and I, for sure,

7    have heard Your Honor with respect to the schedule.  I just

8    wanted to say I think from the Defendants' perspective we stand

9    ready to engage with the Plaintiffs now on things like

10   custodians and search terms, to the extent that they may not be

11   completely just supplementary.

12         I think that we have trouble with the idea that they

13   may wait five months to serve us with RFPs, with requests for

14   production, and then leave us three months to produce the

15   documents when they'll have the benefit of the search terms and

16   custodians that underlie the investigation materials, and

17   they'll have the benefit of seeing the requests that the FTC

18   has recently done, the search terms and custodians that we're

19   proposing, and what we may ultimately work out.

20         I think that is a huge leg up to say, okay -- I'm

21   sure they have already a sense of the documents that they would

22   like to have requested.  In any case that I have been in with

23   counsel for the Plaintiffs, nearly day one of discovery, they

24   have served us with requests for production and started that

25   process without having to go through and review files.  So I

         23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  think they have a sense of at least the universe or the nature

2  of documents that they would want, and they will be informed by

3  the custodians and the search terms that we've already had so

4  that we can at least get this process started now.

5      **THE COURT:**  So what I may say is this.  It's not an

6  issue of you have a certain number of requests for production

7  or some issue like that.  And so I understand that you're

8  working out with the FTC and making some arrangements and

9  agreement on that.  It makes sense to me that you would share

10  that with the Plaintiffs to see if they have any preliminary

11  sort of requests or input.  I'm not going to hold that against

12  them later if they then on October 15th come back and say,

13  okay, now we've had a chance to review everything.  This is

14  what we want.

15      So it wouldn't preclude them for asking for something

16  later, but I would certainly hope that you're including them in

17  the discussion as to what search terms you're using.  If there

18  is anything they know off the bat that they want to go ahead

19  and add and request, then they can do that, that this isn't a

20  situation where I'm expecting that they're going to wait until

21  the 15th in order to spring everything on you in order to make

22  it more difficult for you, but I'm also understanding that

23  they've got a lot to review.  And so what they asked for at the

24  beginning may be different than what they did decide they need

25  or want to add on the 15th, and I'm not going to preclude them

1  from doing that just because it's at the 15th.

2          MR. McCLAMMY:  Completely understood, Your Honor.

3  And I'm sure, based on prior experience, that if we have active

4  engagements starting now on things like this, I think we'll be

5  able to preclude having that kind of a springing of, you know,

6  completely substantive and broad kind of, like, discovery

7  requests on the 15th.

8          THE COURT:  So I don't know if you all are regularly

9  meeting.  I could have you come back here, but that seems like

10  maybe the least efficient way to do it for everyone to fly to

11  North Carolina every month.  But if you all can give yourselves

12  a regular monthly Zoom meeting to talk about these things, I

13  think that that would be appropriate and helpful.  And so I'm

14  going to include that it's my expectation that you all are

15  meeting regularly by Zoom or by telephone in order to stay

16  engaged on these issues throughout the process on a -- what I

17  would anticipate is a roughly monthly basis, that everyone is

18  getting ready to talk about those things, not just by email,

19  but actually engaging with each other.

20          Again, it seems like everyone is interested in

21  working together on those things, and I don't need to have you

22  fly back here for me to preside over that kind of discussion,

23  that you all can make progress on that and then come back to me

24  in October.  But if you're hitting a snag, I can set you for my

25  monthly pretrial day any month along the way.  And so I'll just

          23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  add you to the calendar if you all think that it would be

2  helpful to get folks here.

3          And while I certainly appreciate everybody being

4  here, you can also just send one or two if you need to just for

5  a check-in.  And, you know, if other folks need to then have a

6  chance to still be heard further, we can work that out as well.

7          So I think that's something that I would appreciate

8  you all baking into your coordination order as well.

9          Let me finish coming around.

10          Yes, ma'am.

11          **MS. MALTAS:**  Yes, Your Honor.  So completely

12  understood on the coordination.  I feel like in that

13  conversation there was a lot of "we"s, and I'm not exactly sure

14  who is in the "we"s.  And I just do want to be clear and make

15  sure that I understand, Your Honor.

16          We do have meet-and-confers scheduled next week on

17  our search terms and the custodians.  I'm not anticipating the

18  MDLs attending --

19          (Indiscernible cross-talking.)

20          **THE COURT:**  Right.

21          **MS. MALTAS:**  -- adding search terms.  They get to do

22  their own.

23          **THE COURT:**  Right.

24          **MS. MALTAS:**  So I just wanted to clarify that so

25  there is not an issue when we come to you.

1          **THE COURT:** Right.

2          **MS. MALTAS:** We are negotiating our RFPs. And if

3 they would like to have conversations in order to advance their

4 discovery --

5          **THE COURT:** Right.

6          **MS. MALTAS:** -- in advance, then that's --

7          **THE COURT:** And I think that's what I would

8 anticipate would be you all are -- you, meaning the FTC and the

9 Defendants, are working out the search terms and coming to an

10 agreement on that. I am anticipating that they will be able to

11 share with the MDL Plaintiffs the search terms that they are

12 running for you and that the MDL Plaintiffs may add additional

13 terms. They are not going to change anything that you all have

14 agreed to. So all of those get run. But the MDL Plaintiffs

15 may want to go ahead and suggest additional terms. And I would

16 certainly encourage them to do that, to the extent that they do

17 have any that they want to go ahead -- again, without

18 precluding them from serving whatever additional requests they

19 want to make along the way up until the 15th. And then we

20 can -- I can resolve all of their issues, to the extent there

21 are any, by the 15th.

22          So I think that's consistent with what your

23 understanding is as well.

24          **MS. MALTAS:** Thank you, Your Honor.

25          **THE COURT:** Okay. Anything else you wanted to add?

23MD3062 -- Initial Pretrial conf. -- 5/23/24

1          **MS. MALTAS:**  Nothing else.  Thank you.

2          **THE COURT:**  All right.  So I am -- I actually -- I

3    think there is one other case that was on for pretrial

4    conference.  What I'm inclined to do is let you all stay in

5    this courtroom, and I'm going to go over to Courtroom 3 and

6    hear that case so we can be on the record there, and you all

7    can stay where you are here in this space and just use this

8    courtroom to talk to each other.  And then I am going to come

9    back over here -- what time is it?

10         So I could also give you a lunch -- time for lunch

11   and ask you to meet and confer here either before or after

12   lunch, and then we'll come back, say, at 2:00.  I know that

13   there may be issues with folks for travel, and I don't want to

14   interfere with that.  So if it's better to do it shorter, I can

15   make it 1:00 and come back.  But what I want to do is have you

16   all have some discussion while you are here so that if there

17   are other issues I need to resolve, I can do that while you're

18   here.

19         I think we've talked about the timing, what I'm

20   anticipating is the timeline that we talked about for providing

21   the file, which would be May 29th for Syngenta and Corteva's

22   information and June 5th for the third-party information; that

23   the Plaintiffs in the MDL case will then begin discovery and

24   can go ahead and start discussions regarding search terms and

25   requests for production, but that the deadline for propounding

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1   requests for production would be October 15th.  And then the

2   parties will engage in meet-and-confers to resolve those

3   requests and those search terms so that if there are any

4   disputes on that, they would be presented at the hearing on

5   October 24 with the expectation then that all of the document

6   production will be made by Defendants by January 22nd.

7           And then with regard to the deadline for noticing

8   fact depositions, the fact depositions would then be

9   proceeding, but that to the extent it may make sense to phase

10  or tier, that there would be Defendant witnesses sooner,

11  third-party Defendants later.  And then it may be appropriate,

12  at least for the MDL case, to extend that out until July.  And

13  if that's the case, the -- or June/July, and if that's the

14  case, then the FTC folks may want to also extend their fact

15  discovery to that same time frame so that everyone is

16  participating in fact discovery.

17          I am going to include mediation for the MDL, and so

18  that would be the close of fact discovery.  I'm going to

19  include a mediation by the close of fact discovery.  I know

20  everyone said they didn't think it would be productive, but

21  that's still part of the local rules that everybody

22  participates in a mediation.  So I am going to include that as

23  well.

24          And you all would need to either agree on a mediator

25  or the Court will select -- the clerk's office will just select

1  the next mediator on the list.  So if you all can agree on

2  someone who you think would be good or has some expertise in

3  these kind of cases, then that might be more useful to you so

4  you all can do a mediation.

5          And then we'll reconvene with regard to expert

6  reports.  The FTC will stay on their schedule unless they want

7  to propose some intermediate changes to that schedule, but the

8  deadline for the FTC case will remain the same, the close of

9  expert discovery being October 2nd, and I'm not intending to

10  change that.  And I will leave it up to you all whether you

11  want to make any other intermediate changes.

12          But the expert discovery in the MDL case we will take

13  up separately when we come back after the close of fact

14  discovery.

15          With respect to written discovery, I would assume I'm

16  operating under the proposal that everyone serves their own

17  written discovery.  You provide copies, if requested, for

18  production in the other case, but they are just sort of treated

19  as documents from another case.  So I would not intend to get

20  into a situation where we're cross-designating written

21  discovery or interrogatories.

22          But with respect to that, I would also anticipate

23  that then the Plaintiffs between the cases are not coordinating

24  with each other to expand their number of interrogatories that

25  way.  And so there may need to be some assurance that there is

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1   not some coordination of the interrogatories in a way that

2   doubles the number of interrogatories.  And as long as each

3   side is just doing their own interrogatories, then we'll just

4   treat the interrogatories and the requests for admission

5   separately for each case.

6           On subpoenas, I will just ask, to the extent you can,

7   to try to work together to avoid burdens on third parties.  So

8   I don't know if there is a way to do that.  I'm not going to

9   include a specific order on that.  But if I get a third party

10  who is coming here moving to quash because of the burden, then

11  I'm going to take into consideration the extent to which you

12  all have been able to coordinate that or avoid burdening third

13  parties, to the extent possible.

14          We talked about depositions.  I'm going to include

15  that individuals may not be deposed more than once other than

16  by agreement of the parties or an order showing good cause, but

17  that's also with the understanding that the FTC is not

18  intending to notice any depositions before October 24th.  And

19  then we'll come back and address those on the 24th.

20          We've talked about this, and so I won't repeat all of

21  that, but, generally speaking, if the Defendants notice the

22  deposition, the Plaintiffs have an hour and can be there.  If a

23  Plaintiff notices a deposition, they need to cross-notice it in

24  order to be there.  And I'm using 11 hours as the presumption

25  if the deposition is cross-noticed with the understanding that

1  the opposing side will have an hour of that.  And I think we've

2  talked about that.  If there are questions about that or you

3  all have some different understanding of what I've covered,

4  then that's part of what I want to make sure we address.  And

5  then, of course, there is good cause in order to be able to do

6  a second deposition, which that may be appropriate as to some

7  individuals.

8          And the FTC fact discovery is going to stop at the

9  close of fact discovery for them.  So if they want to have the

10 assurance of being able to -- certainly to participate but also

11 to know that they'll have copies and can use copies of the

12 discovery after that, I think the way to do that is to set the

13 fact discovery deadline the same date as the MDL fact discovery

14 deadline.  And you can do that even if your expert discovery is

15 ongoing.  Those are all intermediate deadlines.  And so you can

16 do expert reports while you still have your fact discovery

17 going as long as everyone is in agreement on that.  So I am

18 just going to leave it to you to look at how you want to do

19 that or when you want to set your close of fact discovery

20 deadline.

21          **MS. MALTAS:**  Thank you, Your Honor.  I guess all we

22 would ask, as we're considering what we want to do, is that,

23 again, the rule would be that it's not just that the FTC can't

24 use anything --

25          (Indiscernible cross-talking.)

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **THE COURT:**  Right.

2               **MS. MALTAS:**  -- also Defendants.

3          **THE COURT:**  Right.  I think that's true.  It's

4    just -- discovery closes in that case the date the fact

5    discovery closes.  And, again, my interest, though, is not

6    unnecessarily overmanaging the intermediate discovery

7    deadlines.  And so if discovery is still happening and the

8    Defendants have it, then I think the way to make sure you have

9    it is to just set your fact discovery deadline whenever their

10   fact discovery deadline is, even if you don't change any of the

11   other deadlines in your case.

12              **MS. MALTAS:**  Yes, Your Honor.

13         **THE COURT:**  Okay.  And then it looks like -- there

14   was also a local Rule 5.5 report that looks fine to me.  My

15   understanding of that is the public redacted version is going

16   to be filed within three days of the sealed version being filed

17   in all cases.  And that redacted version -- that public version

18   should include a footnote, the note that a motion to seal is

19   going to be filed at the conclusion of the briefing so that

20   we've got public notice that the -- that there is information

21   that's been filed under seal and that a motion to seal is going

22   to be filed so that then I'll wait and let you file the motion

23   in the briefing on that at the conclusion of the briefing of

24   the underlying dispute -- or motion.

25              I think that covers the issues that I saw, but what I

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  would like to do is kind of take a break so I can review and

2  make sure I've hit everything that you all had raised and also

3  for you all to discuss those things to see if you can nail down

4  if there is agreement on what those dates are going to be and

5  if there are any issues while you're all here that you need me

6  to address.

7          I'm going to turn it over to each of you to tell me

8  whether you want to just take an hour or whether you want to go

9  ahead and take a lunch break and come back at 2:00, depending

10  on everybody's schedule, and then also to tell me if there is

11  anything else that you want me to address or that I have missed

12  before I give you that chance to speak to anybody.

13          So, Mr. Burke?

14          **MR. BURKE:**  Sure.  I would prefer to come back at

15  1:00 --

16          **THE COURT:**  Okay.

17          **MR. BURKE:**  -- to keep this moving.

18          **THE COURT:**  Okay.

19          **MR. BURKE:**  And try to get back to the West Coast.

20          **THE COURT:**  I understand.  Right.  It gets harder the

21  later it gets.  I understand.

22          **MR. BURKE:**  The one -- my one request is that the

23  Court consider moving back the date that good cause needs to be

24  shown to a date after the Defendants' production to the MDL

25  Plaintiffs is due so that we're not put in a position of having

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 to choose whether to notice somebody without all the documents

2 that we think we need and take that person because we're not

3 sure we can satisfy good cause later on.

4     **THE COURT:**  So all the way after January 22nd?

5     **MR. BURKE:**  Yes.

6     **THE COURT:**  Okay.  So I think what I am going to do

7 is -- well, the original proposal was December 6th, which was

8 still several months before you would have had the documents.

9 So I think I'm not going to go the other direction on that, but

10 what I will say is this:  I think on the 24th we can address if

11 the FTC is intending to start setting depositions or noticing

12 depositions and where we are in terms of that.

13     I'm hopeful that the Plaintiffs are going to be able

14 to get up to speed and have enough information by that point to

15 be able to make those decisions to know whether you want to

16 participate in those -- any depositions that the FTC may set

17 after that point or not.  But I'll -- like I said, I'm not

18 going to go the other direction to set it out even later, but

19 I'm not going to make any decision about October 24th until

20 December 6th at this point.  We'll wait and see when we get to

21 that hearing on the 24th.

22     **MR. BURKE:**  Thank you, Your Honor.

23     **THE COURT:**  All right.  Ms. MacLean, anything that

24 you wanted to add for the Plaintiffs?

25     **MS. MACLEAN:**  No, Your Honor.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          THE COURT:  Mr. Weiss?

2          MR. WEISS:  Thank you, Your Honor.  We're fully in

3  agreement that an hour should --

4          THE COURT:  Okay.  I can do that.

5          MR. WEISS:  Thank you, Your Honor.

6          THE COURT:  Mr. McClammy?

7          MR. McCLAMMY:  Nothing from here.

8          THE COURT:  All right.  Ms. Maltas, anything else you

9  needed to address?

10          MS. MALTAS:  1:00 p.m. sounds great.

11          THE COURT:  Okay.  All right.  So let's adjourn here

12  until 1:00.  And then you are free to leave, if you want to, to

13  get something to eat, but I'm expecting you to use the time to

14  discuss among yourselves, and you can use this space to do it,

15  so that when we come back, we know if there is anything else

16  that needs to be resolved before everybody leaves today.

17          All right.  Let's go ahead and adjourn until 1:30 --

18  excuse me -- 1:00.

19      (Proceedings recessed.)

20      (Proceedings resumed.)

21          THE COURT:  All right.  We are back on the record in

22  the FTC case, which is 22CV828, as well as the MDL, which is

23  23MD3062.

24          Just to confirm where we are, if there are any

25  remaining disagreements or any guidance that I can give to

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 further address the 26(f) scheduling in the FTC -- excuse me --

2 in the MDL case as well as the coordination orders in both

3 cases.

4        And so let me start with you, Mr. Burke or

5 Ms. MacLean, in terms of where we are for Plaintiffs, is there

6 anything else that you all are still in disagreement about or

7 anything else that I would need to address today for the

8 Plaintiff?

9        **MS. MACLEAN:**  Not really, Your Honor.  We did reach

10 agreement on the 11-hour limit per deposition.

11        **THE COURT:**  Okay.  As far as the other issues, do you

12 need me to go ahead and issue a ruling?  Do you have some

13 sufficient guidance for where we are now, or what's the

14 Plaintiff looking for for that?

15        **MS. MACLEAN:**  As far as the schedule you mean, Your

16 Honor?

17        **THE COURT:**  Yes.

18        **MR. BURKE:**  I think it might assist the parties to

19 have maybe a draft order, because I think we know where we all

20 ended up, but that would, I believe, abbreviate the discussions

21 back and forth.

22        **THE COURT:**  Okay.  So that you all propose an order,

23 or you would like a Court -- order from the Court?

24        **MR. BURKE:**  We were trying to keep our notes as best

25 we could.  My guess is the Court knows where the Court ended up

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  better than we do.

2          **THE COURT:**  That's fair.  And I think what I am

3  looking for is if there are particular areas of disagreement on

4  that or areas where you're not sure, then those are the things

5  I can clarify further, but I can also just go through as I was

6  summing up at the end where I was.

7          **MR. BURKE:**  That would be fine.  Thank you, Your

8  Honor.

9          **THE COURT:**  Okay.  Do you have other particular areas

10  of disagreement that you wanted me to highlight or that you

11  noticed?  And I'll go back through.  I don't know if there is

12  something -- I can go through if it's easier for me to go to

13  Mr. Weiss next.

14          **MR. BURKE:**  We were in the conference room together,

15  and the tenor was that we think we understand where the Court's

16  at.  We all think we're fine with where the Court ended up.  We

17  reached agreement on a lot of it.

18          **THE COURT:**  Okay.

19          **MR. BURKE:**  Maybe it makes sense to run through

20  things once more.

21          **THE COURT:**  And then just make sure that everybody is

22  on the same page with everything?

23          **MR. BURKE:**  Yes, Your Honor.

24          **THE COURT:**  Okay.  All right.

25          **MR. WEISS:**  Jesse Weiss for Corteva, Your Honor.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1        We're in agreement on that being a sensible process.

2        **THE COURT:**  All right.  Very good.

3        **MR. WEISS:**  Thank you, Your Honor.

4        **THE COURT:**  All right.  Mr. McClammy, I can run

5    through if that seems appropriate for you as well.  If there is

6    anything else you want to highlight before I do that?

7        **MR. McCLAMMY:**  Yes.  I think we are in agreement with

8    that process, and that process sounds perfect.

9        I think in the discussion, which was productive, we

10   also discussed, in addition to the 11 hours, the idea that we,

11   both sides, Plaintiffs and Defendants, would be starting to

12   talk about, you know, things related to the requests for

13   productions and would be relevant to requests for productions

14   starting immediately so that we can work on getting that done

15   quickly and in a way that won't infringe on our ability to get

16   things done by January.

17       **THE COURT:**  Okay.  All right.  I think that's very

18   helpful.  That's good, and I'm glad that you're doing that.

19       For the FTC, particularly as to the coordination and

20   the dates you all have, is there anything that you wanted to

21   add or update me on that?

22       **MS. MALTAS:**  Yes, Your Honor.  So we discussed with

23   Defendants and we've agreed with Defendants that we would like

24   to table the issue of whether or not Defendants and the

25   Government Plaintiffs would be willing to extend the fact

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  discovery schedule.

2          **THE COURT:**  Okay.

3          **MS. MALTAS:**  And when we come back in October, we'll

4  let you know, because then that way we'll have some time to see

5  how discovery is playing out and if that's something where the

6  Government Plaintiffs and Defendants together would want to

7  have an extension in order to deal with the use of discovery in

8  the MDL case.

9          **THE COURT:**  And then the piece that leaves, I guess,

10  less settled for me is if you're staying on a February 21

11  deadline for the close of discovery, then the proposal, at

12  least for Defendants, is February 21, 2025, for the close of

13  fact discovery as to the Defendants' witnesses and then all

14  other witnesses June 13, 2025, in that case.

15          Is that your understanding on that?

16          **MS. MALTAS:**  So our close of fact discovery date is

17  April --

18          **THE COURT:**  April 22.  Right.  I'm using the

19  designation date.  April 22 and July 25th; right.  July 25th

20  would be the date that their fact discovery closes.

21          **MS. MALTAS:**  Sure.

22          **THE COURT:**  Right.  Right.  Right.

23          **MS. MALTAS:**  Ours will stay April 22nd, but we will

24  let you know in October, once discovery has started to come in,

25  where we're feeling about that.

         **THE COURT:**  Okay.  All right.  And then I think
that's clarified.  So for -- it would be April 22nd was the
deadline for witnesses -- for depositions of the Defendants'
witnesses.  But in the MDL case, they would have an additional
period of time through July 25, 2025, to complete additional
discovery and that -- what I would intend to do is to the
extent that there may be good cause to include a Defendants'
witness after the April 22, 2025, date, then I can consider
that as well.

         So we'll use the same sort of standard as we're using
for second depositions.  So a second deposition of the same
person for good cause and a deposition of a Defendants' witness
after April 22, 2025, would also be allowed if there's good
cause.

         Essentially, I am going to build in some flexibility
there for you all to use the period from April 22nd to
July 25th, but with the presumption that you're going to try to
get all of the defense witnesses deposed and coordinate the
depositions with the FTC depositions during the time period
prior to April 22nd.  And I think I had not completely nailed
that down because I wasn't sure what the FTC was intending to
do or what that was going to look like, but that would be how I
would nail that down or confirm that.

         So I can run through what my notes look like, and if
they are different than what you all understood or something

                23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  else that we need to address, then now is the time to do it.

2  So initial disclosures are going to be May 31st.  And

3  this is the schedule for the MDL case that I'm starting with.

4  The track is exceptional.  The deadline for an ESI

5  agreement and a protective order -- I believe I already have

6  the ESI agreement that's been submitted.  The deadline for

7  submitting the protective order will be tomorrow, May 24th.

8  And in addition to the initial disclosures, the

9  deadline is May 29th for Syngenta and Corteva to provide their

10 documents from the FTC investigation.  And the deadline is

11 June 5th for Syngenta and Corteva to provide the third-party

12 documents from the FTC investigation, unless there are

13 objections.  And for those, they should notify the Plaintiffs

14 so that the Court can resolve those objections as necessary.

15 With regard to the deadline to propound requests for

16 production, I would anticipate that the Plaintiffs are

17 proceeding with discovery, including requests for production

18 and, to the extent possible, weighing in on search terms and

19 custodians early as a preliminary matter, but that's without

20 prejudice to them ultimately completing requests for production

21 by October 15th.

22 And then between October 15th and October 22nd, say,

23 that the parties will address any objections to the requests

24 for productions, propose custodians and search terms, and meet

25 and confer to discuss and resolve any disputes regarding

1  custodians and search terms so that they can file a joint

2  report by the end of the day on the 22nd letting me know what

3  disputes, if any, remain.  And those will be heard at the

4  hearing that's already set for October 24th.

5       That is obviously a very short turnaround for

6  resolving all of those disputes and issues, but that's where

7  we're going to borrow a lot of time.  So we'll just do an

8  intense meet-and-confer process to get all of those issues

9  resolved.  And then if there are any disputes, we'll take care

10  of those on October 24th.

11       With regards to depositions, there is -- I'm not

12  going to include a switching the burden as of a particular

13  date, but at this point the FTC is not intending to depose any

14  individuals, whether parties or nonparties, prior to the

15  hearing on October 24th.  So we can address that issue further

16  as may be appropriate on the 24th, but I'm going to adopt the

17  general provision that a deposition may not be taken of the

18  same person twice in the two cases unless there's good cause

19  shown.  And, again, if we need to address that further

20  regarding the timing of that, we can do that when we come on

21  the 24th.

22       As far as interrogatories and requests for admission,

23  each side has 30.  So the Plaintiffs may serve 30 to the

24  Defendants collectively, and the Defendants may each serve 30

25  to the Plaintiffs collectively.  And that would -- and I

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  believe that's my understanding of how you all had proposed

2  that.

3          Is that -- or was that to each?  Mr. Burke?

4          **MR. BURKE:**  It was collectively, Your Honor.

5          **THE COURT:**  It is collectively.  Okay.  I am just

6  making sure I'm not inadvertently changing what you all had

7  proposed.

8          And that's fine as far as the numbers there.

9          The deadline then for the parties to substantially

10 complete production of data and documents in response to all

11 requests for production of documents would be January 22, 2025.

12         The -- yes.  Okay.

13         **MR. BURKE:**  It's 30 on Syngenta and 30 on Corteva.

14         **THE COURT:**  Okay.

15         **MR. BURKE:**  I was thinking the other way around in

16 terms of the Plaintiffs.

17         **THE COURT:**  Okay.

18         **MR. BURKE:**  Yes.

19         **THE COURT:**  So it will be interrogatories and

20 requests for admission would be Plaintiffs collectively may

21 serve 30 on Syngenta and 30 on Corteva.

22         Is that Defendants' understanding?  I'm trying to not

23 change anything at this point.

24         **MR. WEISS:**  I believe that's correct, Your Honor.

25         **THE COURT:**  All right.  And then the Defendants may

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1   each serve 30 to the Plaintiffs collectively.

2           And then, again, the deadline for the parties to

3   complete production of data and documents and respond to all

4   requests for production that were addressed by those deadlines

5   and specifically that were propounded by October 15th would be

6   January 22, 2025.

7           Again, that's, I understand, a short turnaround for

8   the Defendants, and the hope is that a lot of that can be taken

9   care of earlier in the process as the parties are getting

10  familiar with the information and have some initial indication

11  as to what they might be requesting.  But to the extent that's

12  tight on the Defendants, that's a result of the Plaintiffs not

13  having that FTC investigation material earlier, and I will find

14  that's appropriate, particularly in light of the Defendants'

15  interest in having all of the depositions proceed together or

16  be coordinated to the extent possible.

17          So I understand it's a tight turnaround, but I am

18  still going to hold the Defendants to that January 22nd date in

19  this case as well as the FTC case.

20          I have a deadline for privilege logs from the FTC

21  case as February 21st.  And so I would anticipate that that's

22  going to be the same since the documents are now being produced

23  by January 22nd; but if there is some particular issue with

24  regard to privilege logs, then we can address that.

25          The deadline to notice fact depositions for the

1   Defendants' witnesses, it will be February 21st, 2025.  All

2   other witnesses, June 13, 2025.  But if there is good cause for

3   noticing a Defendants' witness after February 21st and before

4   June 13th, then I'll consider that the same way I would a

5   second deposition so that we'll have a little flexibility in

6   there.  And, of course, the parties can agree, if you want to

7   agree, to a Defendants' witness between February 21st and

8   June 13th.  Then certainly you could do that by agreement as

9   well.  So my dates are not precluding you all from making an

10  agreement there.

11          You will note -- I'm sure your local counsel will let

12  you know.  Otherwise, once we set deadlines, and particularly

13  the deadline for the close of discovery, then the parties can't

14  agree to do discovery after the close of discovery.  So even if

15  you all agree, if it's close of discovery, you need to get a

16  court order to allow you to complete -- or continue discovery

17  after the deadline for the close of discovery.

18          Intermediate deadlines you all can address.  So 30

19  days to respond to written discovery.  You all can agree among

20  yourselves to extend that time as long as it doesn't extend you

21  past the deadline for the close of discovery.  And, again, I'm

22  sure your local counsel will make sure you're aware of that;

23  but just so that I forecast that for you, no agreements to

24  extend discovery without a Court order, because the day we have

25  set for the close of discovery should be the date everything is

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  done, and the Court is going to operate off of that.

2         With regard to the close of fact discovery then, that

3  will be April 22nd still for the FTC case but July 25, 2025,

4  for the MDL case.  And we'll leave open the question of whether

5  the FTC folks want the option of extending their fact discovery

6  period to also be able to participate in discovery through

7  July 25, 2025.

8         The mediation will need to be completed by close of

9  fact discovery.  So that will be July 25, 2025.

10        Parties will need to meet and confer at the

11 conclusion of fact discovery and then file competing proposals

12 for schedule regarding expert discovery, summary judgment, and

13 class certification.  So what I would anticipate is 30 days

14 after the close of fact discovery that you all will give me a

15 joint status report that would set out your plan either jointly

16 or individually.  What I would prefer is a joint report, and

17 where there are disagreements, you let me know what the

18 disagreements are in terms of what you propose for experts, for

19 class certification, and for summary judgment.

20        I would expect that there may still be issues

21 regarding sharing expert discovery.  I'm not going to make a

22 ruling on that now.  So you wouldn't need to include that in

23 your order.  My expectation is that ordinarily we're going to

24 treat these cases separately, but there may be some reasons why

25 there may be particular expert reports or information that

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  would be appropriate to share here.  And so I'm going to wait

2  until I know what the actual expert reports are that we're

3  talking about or what the issues are that we might need to

4  consider.  So I'm not going to make a determination regarding

5  expert reports sort of on a hypothetical.  I don't think that's

6  going to be an issue until we actually get the expert discovery

7  in the FTC case, in any event.

8          And then we talked about -- as far as coordinating or

9  consolidating written discovery, each case is going to involve

10 serving its own written discovery.  I'm doing that, though,

11 with the assumption and the understanding that the Plaintiffs

12 in the two cases are not coordinating their written discovery.

13 So each Plaintiff's group is serving its own written discovery

14 for interrogatories and requests for admission and so -- as

15 well as the production of documents.

16          We talked about documents that are produced in either

17 case can be shared.  And you all can come up with numbering

18 conventions, if you want to do that, so that you don't have to

19 renumber things.  In fact, I would ask that you not renumber

20 things.  It's much easier, I think, for everybody to keep track

21 of numbering if there is a number for documents that's

22 consistent across.  So, to the extent possible, if you all can

23 use the same Bates numbering or numbering conventions in a way

24 that lets us know it's a Defendant document, it's a MDL

25 Plaintiff document, or a FTC document, but something that we

1  can use consistently so we're not calling the same document two

2  or three different things, that would be helpful.

3           But documents produced could be and should be shared

4  across all the cases, and written discovery responses should be

5  shared across the cases but are not counted towards the other

6  Plaintiff's numbers, again, with the understanding and

7  assumption that there's not any coordinating on that, that each

8  Plaintiff's group is just doing its own written discovery

9  requests.

10          On subpoenas, I think that everybody agreed that the

11  requests to the subpoena recipient would be that they would

12  provide the documents to all of the parties in both cases.

13  And, certainly, you all can request that.  Again, I would ask

14  everyone to work together to reduce the duplication burden on

15  subpoenas to third parties.  I sort of have some concern that

16  there's lots of third-party discovery that's going to happen

17  there, and the third parties aren't here to request some

18  limitations or some accommodations on that, and so I'm going to

19  be tuned to their concerns of burden if they come back to me.

20          And so one of the ways that I can weigh that burden

21  is looking at how well you have done in trying to not duplicate

22  requests to the same third party or narrow those things to

23  avoid the burden and certainly to avoid the duplication.  I'm

24  not going to give you a specific scenario of how you have to do

25  that.  I think it may depend on who the third party is and what

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  the relationship is for each of the different groups here.  I'm

2  just going to encourage you to do that to the extent you can.

3         And then as far as depositions, we talked about those

4  at length.  The parties may not be deposed more than once --

5  individuals -- any deponent may not be deposed more than once

6  other than by agreement of the parties or an order showing good

7  cause.  But to the extent there may still be issues in the

8  period between October 24th and December 6th, we can take that

9  up at the hearing on the 24th.

10        We talked about the Plaintiffs will have an hour in

11  any depositions noticed by the Defendant, and that would be 30

12  minutes each, unless otherwise agreed.  Defendants will have an

13  hour in depositions noticed by either Plaintiff.  And then if

14  Plaintiff notices and the other Plaintiff cross-notices, then

15  we had four hours to make it 11 hours total.  We count that

16  towards the deposition limits for both, and one of those hours

17  is still for the Defendants.  And so that would be 10 hours

18  that the Plaintiffs would either split equally at five each or

19  could choose to allocate by agreement otherwise.

20        With respect to that for third parties, I will still

21  entertain any requests by a third party to limit that further,

22  and so particularly down to seven hours.  So if there is a

23  third party that's got a concern, I certainly would encourage

24  you to work cooperatively with that third party or their

25  attorney because I'm going to be sensitive to their requests or

1  concern if there's not a real reason or need to do more than

2  seven hours for a particular third party.  But I will let you

3  work that out on an individual basis.

4         Same way, if there is a particular third party that

5  needs additional time for a particular reason, then I'll

6  certainly entertain a request.  You all can either agree to

7  that with the third party and with each other, or you can come

8  back to the Court and request that if you need me to do that.

9         If the deposition is not cross-noticed, then the --

10  if it's noticed by a Plaintiff and not cross-noticed by the

11  other Plaintiff's group, then the non-noticing group can't

12  participate.  So if you want to be there, you need to

13  cross-notice and have it counted for one of your depositions.

14  But if you're not there, it's treated like a deposition in

15  another case, and you can still get copies of that as part of

16  the discovery and then use it to the extent that would be

17  otherwise allowed by the Rules of Civil Procedure.  So I'm not

18  going to make any particular rule excluding those or letting

19  you use them.  We're going to treat that like you would any

20  other deposition from another case, and the ordinary rules

21  would apply.

22         We talked about for the FTC case the discovery stops

23  at the deadline for close of discovery, and so that would be

24  that April 22, 2025, date.  And that would be -- for both

25  sides, that would be the deadline for the close of all fact

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  discovery in that case.  And if there are particular issues on

2  that, we can address and consider them or the parties can

3  decide if they want to extend fact discovery until July 25th,

4  with or without changing their expert dates, in order to take

5  advantage of any discovery that might continue in the MDL case

6  during that time period.

7           With regard to the local Rule 5.5 report, that's

8  fine, and I'll adopt that.  Again, the public redacted version

9  needs to be filed within three days so that there's something

10 showing on the docket, the public version, and the Court knows

11 that that's there and the public can see that, with the note

12 that the motion to seal will be filed at the conclusion of the

13 briefing, which should, in any event, be within 60 days so that

14 the public is aware and so that we get motions filed.  And then

15 the motions to seal generally need to comply with local Rule

16 5.4(c) in terms of the support for filing documents under seal.

17          So that includes not just assertions in a brief, you

18 actually need an affidavit and supporting information as to why

19 the document should be sealed.  And it needs to comply with the

20 Fourth Circuit's standards and give us what we need in order to

21 make the findings to be able to justify sealing the documents

22 under the standards the Fourth Circuit is going to apply.  And

23 so I think that's an important part of making sure as much of

24 this is public as can be and any redactions are narrowly

25 tailored.

```
 1              If something doesn't have to be filed, don't file it.
 2     So if something has got confidentiality claims on it and you
 3     can proceed without filing that document, just don't file it.
 4     And then we don't have to make further findings and
 5     determinations.  Or if you can file the document with
 6     redactions because the Court doesn't need the redacted parts,
 7     just file it with redactions, and then that's the only copy.
 8     It's redacted for everybody.  And as long as you're not filing
 9     anything with the Court that the public is not seeing, then we
10     don't have to address the issues that come up in a motion to
11     seal.
12              So I would just encourage you to narrow as much as
13     possible what you actually need to file with the Court when
14     it's -- particularly when it's something that's got
15     confidentiality claims on it so that we're not having to do a
16     motion-to-seal analysis, unless it's something that is
17     necessary or critical to be considered by the Court.
18              So those are the notes that I have.  Are there other
19     things that I missed or issues that I didn't resolve or
20     questions that you have?
21         MR. BURKE:  Your Honor, we proposed a number of
22     depositions for the parties and for third parties.  Are you
23     adopting the proposals of the parties or --
24         THE COURT:  Oh, you all were in agreement on that;
25     right?
```

1      **MR. BURKE:**  Yes, Your Honor.

2      **THE COURT:**  Yes.  So I will adopt the agreement on

3  that, and I had that note here that I didn't mention.  So that

4  would be 15 of Syngenta, 15 of Corteva, and 40 of the third

5  parties, although I had mentioned that I would consider a

6  request to reduce that if that was appropriate, given the way

7  we're doing the depositions.

8      I do know that there are some other issues that the

9  parties in the MDL will have that they will need to address,

10  and so I can hear from Defendants on that.  But I would intend

11  to adopt the 15 of Corteva and 15 of Syngenta by the

12  Plaintiffs -- MDL Plaintiffs collectively and also the

13  provision that the Defendants can take two of each Plaintiff

14  and the same number of third parties as we set for the

15  Plaintiffs to take.

16      Mr. Weiss?

17      **MR. WEISS:**  Thank you, Your Honor.

18      We -- at least I had understood, and perhaps I

19  misunderstood, from the earlier discussion that the Court had

20  in mind a reduced number if this other framework was going to

21  apply.

22      **THE COURT:**  So I think, as I'm looking at my notes,

23  my assumption was it was going to be the same as the FTC case.

24  So it would be 15, 15, and 30.  That would be 30 for you all as

25  well.  So that's reducing your number of third-party

1  depositions down as well.  I don't think I had finalized a

2  determination on that, but that's what I was initially heading

3  towards.

4          I can hear from you on that.

5          **MR. WEISS:**  Understood, Your Honor.  We're fine with

6  30 on the Defendants' side.  We had understood -- or at least I

7  had understood that the principle of not having coordination

8  result in added discovery potentially would be resolved with a

9  lower number on the depositions.

10          Also, on the interrogatories, I understand the Court

11 put in -- has in mind 30.  That was just my understanding.

12          **THE COURT:**  Right.  No --

13      (Indiscernible cross-talking.)

14          **MR. WEISS:**  -- the mechanisms --

15          **THE COURT:**  Right.

16          **MR. WEISS:**  -- going back to an equitable kind of --

17          **THE COURT:**  Well, and what -- I think that's the

18 number that is in FTC.  It's the -- it does reflect some

19 reduction down to the extent the agreement might have been

20 based on a different understanding of how they would be shared.

21 And I would still, as I did in the FTC case, note that if we

22 get to the point where the Plaintiffs have taken their 30

23 depositions, and they've got another ten that they can tell me

24 why they need to take who they are, then I can do that in a

25 less hypothetical way and a more concrete way in terms of who

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  it is and that there is an appropriate basis to include them as
2  well.

3          So that's usually how I would do that.

4          **MR. WEISS:**  That approach makes sense to have that
5  kind of cap and if there is good cause to -- as is always the
6  case, if there is good cause to add more discovery, then that
7  can be brought before the Court.

8          **THE COURT:**  All right.

9          **MR. WEISS:**  On the --

10         **THE COURT:**  Before we move to something else,
11 Mr. Burke, did you want to respond to that further?

12         **MR. BURKE:**  Sure.  I can get you up to 40 even 50
13 pretty quickly.

14         **THE COURT:**  No, I'm sure you could.

15         **MR. BURKE:**  It's because we have a different case
16 than FTC, and we have issues concerning antitrust standing on
17 the Clayton Act and the Sherman Act directly involving the big
18 seven distributors.  So we're not just going to take one.  We
19 plan on taking multiple depositions of each of those.

20         We also have antitrust state requirements in some of
21 the state antitrust statutes.  So we will be taking
22 (indiscernible).  Between our consumer protection and antitrust
23 state claims, we have 38 states implicated.  Plus, we want to
24 take competitors.  Plus, we want to take generics.  So I'm way
25 past 30.  And this is all necessary to build out our case.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 This isn't (indiscernible).  This is what we need to be able to

2 prove up our case and certify a federal case and certify state

3 law claims as well.

4      **THE COURT:**  So what I am thinking about at this point

5 is I'm going to -- I think it makes sense to set it at 30 for

6 now, but for everybody to understand that I am likely to add at

7 least ten.  That way you all can operate under the assumption

8 that if you come back and show me ten, not that are duplicative

9 of the issues that have already been addressed, but ten that

10 involve the issues that you need to address that are different

11 in the MDL case, I'm anticipating that you would probably need

12 those and that it will be -- it would be appropriate to add ten

13 on those issues.

14      It would just be helpful for me to do that.  And we

15 can even do that when we come back in October.  But it would be

16 helpful for me to do that once we've gotten a little further in

17 so we know how the coordination is going.  I think it will

18 depend, too -- if you're using yours on cross-noticing

19 depositions, that's great.  That's the whole point of this is

20 to cross-notice as much as possible.  And then, in that

21 scenario, you would need another ten to address the issues that

22 weren't covered by the ones that were addressed by the FTC.

23      And so I'm going to set it at 30 to start with,

24 because I did that in the FTC case, and that's already a

25 substantial and really significant increase in what the

1  ordinary number of depositions would be.  But I understand the

2  basis for that.  And I'll just go ahead and forecast now that I

3  would anticipate adding another ten that are unique to the MDL

4  issues, but I would like to do that as a separate determination

5  when it's not quite so hypothetical and when we have a little

6  bit more understanding.

7           And I'll put it this way, too.  You all can always

8  agree to go ahead and do that.  And so I'm giving you that

9  forecast of what's likely to happen so that when you all are

10  having these discussions and negotiations, if you can narrow it

11  down to these ten are the ten that we need that are different

12  issues, then it's likely reasonable that the Defendants could

13  agree to that without having to come back to me.  But if you

14  need to, then I am giving you some forecast of what I would

15  intend to do or what is likely.

16           But we're going to control it a little bit more so

17  it's either by agreement or coming back to me so that we know

18  that these are the ten that can address those additional issues

19  that are relevant to the MDL case separate from what's already

20  being addressed in the FTC-related issues.

21           **MR. BURKE:**  Thank you, Your Honor.

22           **MR. WEISS:**  That's understood.

23           **THE COURT:**  Okay.

24           **MR. WEISS:**  And one -- just one other point of

25  clarification.  There was -- in the coordination frameworks

         23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  there was kind of a mechanism that written discovery would just

2  be automatically shared and the responses would be

3  automatically shared.  I don't know if that -- I heard Your

4  Honor say just now that written discovery will be shared.

5          I guess the coordination framework is kind of

6  triggering discovery in that way as though they are kind of the

7  same action?

8          **THE COURT:**  So I don't think you would necessarily do

9  it as if they're the same action.  What I would anticipate is

10 that you each do a request for production for the discovery

11 responses in the other case, and then that would be continually

12 supplemented as the case is going on so that it's not shared as

13 part of the same case or as if they are a consolidated case,

14 but it's shared as a discovery response that is supplemented as

15 the case is going on.

16         **MR. WEISS:**  Understood, Your Honor.  Thank you for

17 that clarification.

18         **THE COURT:**  Sure.

19         All right.  Yes, sir.

20         **MR. McCLAMMY:**  Jim McClammy again for the record.

21         Just one thing I wanted to note.  I think with the

22 setting of the mediation deadline --

23         **THE COURT:**  Right.

24         **MR. McCLAMMY:**  -- we should have also, I believe,

25 probably a deadline for the selection of the mediator.

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          **THE COURT:**  Right.

2          **MR. McCLAMMY:**  I believe we agreed with the FTC that

3    we do it in that case by January 22nd.

4          **THE COURT:**  Okay.

5          **MR. McCLAMMY:**  I think with the -- I think that date

6    should also work probably here to have the parties trying to

7    agree to a mediator by January 22nd.

8          **MR. BURKE:**  We agree.

9          **THE COURT:**  Okay.  Very good.  All right.  So let's

10   include January 22nd as the date to agree to a mediator.  If

11   not, then the Court will select a mediator.  Again, I think you

12   all probably have a lot better sense as to who might be

13   somebody that would be helpful to you all.  And then the

14   deadline for conducting the mediation would be the July 25,

15   2025, date.  So that should give you time to get on the

16   mediator's calendar in time.

17         All right.  So any other questions or any other

18   pieces that folks want to raise or address or anything I missed

19   that was a subject of dispute that I didn't cover?

20         I'm looking at the proposals to see if there are any

21   other issues, and I'll invite you all to do the same, if there

22   is anything else that you all -- or you can discuss with each

23   other if there is anything else.

24         We did talk about scheduling depositions.  Certainly,

25   I would anticipate you all are working together to schedule

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  those.  That's primarily going to be between the noticing party

2  and the recipient of the deposition notice.  And what I would

3  anticipate in terms of timing is that if the date that's

4  proposed isn't workable, then certainly for parties that,

5  within a week, you provide more than one alternative, and then

6  the parties try to work together, to the extent possible,

7  again, noting that if there are other folks who just need to

8  attend -- I'm hopeful that with the number of attorneys that

9  you all can find an attorney to cover it and so that attorney

10  availability doesn't become an issue with discovery scheduling

11  and that you're just looking at the available dates for the

12  deponent to try and make sure we get all of those scheduled.

13          I think, with regard to confidential information, I

14  had also noted that the Plaintiffs will provide their motion

15  for an interim protective order by May 24th and reserving the

16  question of what information that is designated as attorneys'

17  eyes only should also be provided to the individual Plaintiffs.

18  And I can take that up later or separately to the extent the

19  parties aren't able to address or work that out.

20          It may be that there are particular documents that

21  are all part of the designation of attorneys' eyes only but

22  that you all can agree can still be shown to the individual

23  Plaintiffs, rather than trying to do that as a whole category.

24  And so it may be helpful for you all to look at the documents

25  and then be able to make a decision as to that.

1          But let's at least get the interim protective order
2     in place, but that's without prejudice to further consideration
3     of that issue in terms of who gets to see documents that might
4     be designated attorneys' eyes only, whether as a group or
5     particular documents that are identified.
6          And, Mr. Burke, does that address that issue that you
7     had raised as well?
8          **MR. BURKE:**  It does, Your Honor.
9          Just for context --
10         **THE COURT:**  Sure.
11         **MR. BURKE:**  -- we're not providing our clients, the
12    farmers, access to a relativity database where they are going
13    to be rifling through (indiscernible).  This is more in the
14    nature of this is the complaint we're filing with your name on
15    it.  We would like to explain it to you.
16         I don't want to be in a position where I have
17    redacted things in that --
18         **THE COURT:**  Right.
19         **MR. BURKE:**  They have an oversight function towards
20    us, and we have a fiduciary duty to class.  They need to see
21    these things.  That's all this really is about.
22         **THE COURT:**  Well, and I think that's -- as I said,
23    what I would anticipate is that your protective order may
24    include some provision where the parties can meet and confer
25    and agree that particular documents, even if designated as

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

attorneys' eyes only, can be provided to the individual

farmers.  It doesn't otherwise change the designation except

that they're subject to whatever agreement or whatever proposed

order then is included that they've signed and that they're

agreeing and subjecting themselves to the contempt authority of

the court, and then they agree to keep that confidential.

But it does -- I would anticipate that there are

going to be some documents, including at least some more

narrowly redacted version of the complaint or some other

limited group of documents, that there is a particular reason

to show to the individual Plaintiffs and that the Defendants

can agree to, again, on a more limited basis.

And so what I would suggest is, as you're working

this out, you can include this in the interim protective order

if you're ready to do that, if you all agree to it, but some

provision that the parties can agree to share

attorneys-eyes-only documents with the individual Plaintiffs,

subject to their agreement to the order that they have signed.

And then if there's not agreement on that, then you can bring

it to the Court.

And that may be enough to address the issue.  If not,

you can still hold the issue, whether you come back with a

revised protective order or just a separate motion to challenge

the confidentiality designation, and then we can take that up.

But I'll let you all try to work that out.  I'm

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1 hoping that the Defendants can -- even if they still categorize

2 it as attorneys' eyes only, can agree that some particular

3 documents can be shared with the individuals.

4          MR. BURKE:  Thank you, Your Honor.

5          THE COURT:  All right.  Yes, sir.

6          MR. McCLAMMY:  Jim McClammy for the record.

7          I think we're happy to do that.  I think the best

8 thing would be to get the interim order in so that we make sure

9 we have the investigatory files kind --

10          THE COURT:  Right.

11          MR. McCLAMMY:  -- of produced as quick as we can.

12          THE COURT:  Right.

13          MR. McCLAMMY:  And the only other thing I would

14 remind the Court of is that it's not simply just the

15 Defendants' documents that will be covered by this highly

16 confidentiality -- highly confidential issue --

17          THE COURT:  Right.

18          MR. McCLAMMY:  -- we have to make sure that we're

19 drafting it to protect the interests of the third parties as

20 well who will have a say as to whether they're documents that

21 are --

22          THE COURT:  Right.

23          MR. McCLAMMY:  -- attorneys' eyes only should be

24 shown.

25          THE COURT:  And so in the -- I agree.  Give me an

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  interim protective order tomorrow so that we can get the FTC

2  files turned over.  I think that's the most important thing.

3  But if we're looking at a revised protective order or some

4  provision for how you manage it, it may be appropriate that the

5  parties and, in addition, any party claiming confidentiality

6  can agree -- and so that if it's some other party claiming

7  confidentiality, then they actually also have to be part of the

8  agreement -- to provide those to the individual Plaintiffs, and

9  then you can address it on a document-by-document basis that

10 way instead.

11           MR. McCLAMMY:  Thank you, Your Honor.

12           THE COURT:  All right.  And as I mentioned, I think I

13 have the ESI order, and it didn't look like there were any

14 issues with that.

15           Anything I would need to know before I adopt the ESI

16 order for the Plaintiff?

17           Mr. Burke, anything on that?

18           MR. BURKE:  No, Your Honor.

19           THE COURT:  Okay.  Anything, Mr. Weiss, for the

20 Defendants?

21           MR. WEISS:  No, Your Honor.

22           THE COURT:  Okay.  All right.  So I think those are

23 the issues, but I'm going to go back around again just to make

24 sure there is not anything else that you all need me to

25 clarify, any other issue I missed, any other dispute that we

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  haven't resolved, or anything else that came up in your

2  discussions that maybe you need me to elaborate further.

3           Mr. Burke, for the MDL Plaintiffs?

4           **MR. BURKE:**  No.  Plaintiffs thank you for your time

5  and your graciousness.

6           **THE COURT:**  Absolutely.  I'm glad we could work

7  through all of this.

8           Mr. Weiss, anything for Corteva?

9           **MR. WEISS:**  Nothing further, Your Honor.  Thank you

10 for spending so much time with us today.

11          **THE COURT:**  Absolutely.

12          All right.  Mr. McClammy, for Syngenta?

13          **MR. McCLAMMY:**  No, also nothing further, Your Honor.

14 Thank you.

15          **THE COURT:**  All right.  And, Ms. Maltas, for the FTC?

16          **MS. MALTAS:**  Nothing further.  Thank you, Your Honor.

17          **THE COURT:**  Okay.  Very good.

18          Well, I am also going to just again recommend/ask

19 that you meet once a month or so on an actual -- not just

20 email.  You can choose whether you're doing it by video or by

21 telephone, but that you actually talk to each other and have

22 those kinds of ongoing communications so that if there is an

23 issue that's bubbling up, you can ask to be put on the pretrial

24 conference day for that month so we can go ahead and get you

25 scheduled quickly.

        23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1          And, usually, what I'll do is if you're asking for

2    that, I will just tell you to file a joint report two or three

3    days ahead of time so you can tell me what the dispute is about

4    so I have some idea of what we're getting into coming into it,

5    and then I'll just add you to the calendar.

6          I may next time put you behind whoever else is here

7    for their initial pretrial conference, but we'll go ahead and

8    set you, if we need to, on whatever that month's pretrial

9    conference day is.

10         And then if there are any other issues that come up,

11   then you're all on for October 24th, and so I will see you back

12   on that pretrial conference day in a few months.

13         So I appreciate everybody's time.  I hope you're able

14   to catch your flights this afternoon.

15         And we'll go ahead and adjourn.

16      (END OF PROCEEDINGS.)

17

18                        * * * * * *

19

20

21

22

23

24

25

23MD3062  -- Initial Pretrial conf.  -- 5/23/24

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF TRANSCRIBER

4

5          I,  Briana L. Chesnut, Official United States Court

6  Reporter, certify that the foregoing transcript is a true and

7  correct transcript of the proceedings produced solely from an

8  audio recording to the best of my ability in the above-entitled

9  matter.

10          Dated this 29th day of May 2024.

11

12

13

14  _____
          Briana L. Chesnut, RPR
15          Official United States Court Reporter

16

17

18

19

20

21

22

23

24

25

23MD3062  -- Initial Pretrial conf.  -- 5/23/24