# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

FEDERAL TRADE COMMISSION,
STATE OF CALIFORNIA, STATE OF
COLORADO, STATE OF ILLINOIS,
STATE OF INDIANA, STATE OF IOWA,
STATE OF MINNESOTA, STATE OF
NEBRASKA, STATE OF OREGON,
STATE OF TENNESSEE, STATE OF
TEXAS, STATE OF WASHINGTON, and
STATE OF WISCONSIN,

        Plaintiffs,

    v.

SYNGENTA CROP PROTECTION AG,
SYNGENTA CORPORATION,
SYNGENTA CROP PROTECTION, LLC,
and CORTEVA, INC.,

        Defendants.

Case No. 1:22-cv-00828-TDS-JEP

**PLAINTIFFS' MEMORANDUM IN
SUPPORT OF THEIR MOTION TO
COMPEL DISCOVERY OF
SYNGENTA DEFENDANTS**

**[TEMPORARY PUBLIC
REDACTED VERSION]**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

RELEVANT PROCEDURAL BACKGROUND.................................................. 3

ARGUMENT...................................................................................................... 4

I.    DEFENDANT SYNGENTA CROP PROTECTION AG MUST
PRODUCE RELEVANT MATERIALS .................................................... 5

    A.    This Court Considered and Rejected All of Syngenta's
Relevance Objections Through Its Decision on the Motion To
Dismiss ........................................................................................ 5

    B.    The Targeted Discovery that Plaintiffs Request from Syngenta
Crop Protection AG Is Relevant and Proportional to the
Needs of the Case ......................................................................... 7

    C.    Syngenta's Boilerplate and Unsubstantiated Burden
Objections Fail ............................................................................ 11

II.    PLAINTIFFS ARE ENTITLED TO A REASONABLE SEARCH
TO CAPTURE DOCUMENTS RELATED TO SYNGENTA'S KEY
AI LOYALTY PROGRAM AND CROP PROTECTION BUSINESS ................ 12

III.    PLAINTIFFS ARE ENTITLED TO COMPLETE DATA
PRODUCTIONS .................................................................................. 17

IV.    PLAINTIFFS ARE ENTITLED TO DISCOVER THE RECORDS
OF ROBERT (ANDREW) FISHER .................................................... 21

CONCLUSION .................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfadda v. Fenn*,
    149 F.R.D. 28 (S.D.N.Y. 1993) .............................................................................. 12

*Bank of Mongolia v. M & P Global Financial Svcs.*,
    258 F.R.D. 514 (S.D. Fla. 2009) ........................................................................... 20

*Family Wireless #1, LLC v. Automotive Techs., Inc.*,
    No. 3:15-cv-01310, 2016 WL 2930887 (D. Conn. May 19, 2016) ................. 10, 22

*FDIC v. RBS Acceptance, Inc.*,
    No. 14-cv- 00418, 2016 WL 11778627 (D. Colo. Dec. 27, 2016) ........................ 10

*Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*,
    246 F.R.D. 522 (S.D. W. Va. 2007) ....................................................................... 11

*Gerling Int'l Ins. Co. v. C.I.R.*,
    839 F.2d 131 (3d Cir. 1988) .................................................................................. 12

*Hall v. Sullivan*,
    231 F.R.D. 468 (D. Md. 2005) ............................................................................... 11

*In re Chevron Corp.*,
    633 F.3d 153 (3d Cir. 2011) .................................................................................... 4

*In re Plastics Additives Antitrust Litig.*,
    MDL No. 1684, 2009 WL 10741541 (E.D. Pa. Oct. 29, 2009) ............................ 19

*In re Plastics Additives Antitrust Litig.*,
    No. Civ. A. 03–2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) ....................... 4

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    335 F.R.D. 1 (E.D.N.Y. 2020) ............................................................................... 18

*In re Uranium Antitrust Litig.*,
    480 F. Supp. 1138 (N.D. Ill. 1979) ......................................................................... 7

*Kinetic Concepts, Inc. v. ConvaTec Inc.*,
    268 F.R.D. 226 (M.D.N.C. 2010) ........................................................................... 5

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
No. 10-cv-5711, 2012 WL 4498465 (N.D. Ill. Sept. 28, 2012) ........................ 22, 23

*Little Hocking Water Ass'n, Inc. v. E.I. DuPont De Nemours & Co.*,
No. 2:09-cv-1081, 2013 WL 608154 (S.D. Ohio Feb. 19, 2013) .......................... 22

*Louen v. Twedt*,
236 F.R.D. 502 (E.D. Cal. 2006) ........................................................................ 10

*N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*,
666 F.2d 50 (4th Cir. 1981) .................................................................................. 4

*Ohio v. Arthur Anderson & Co.*,
570 F.2d 1370 (10th Cir. 1978) ........................................................................... 12

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) .............................................................................................. 4

*SEC v. Sargent*, 229 F.3d 68 (1st Cir. 2000) ......................................................... 16

*Societe Internationale Pour Participations Industrielles Et Commerciales, S.A.*
*v. Rogers*, 357 U.S. 197 (1958) ........................................................................... 12

*Syngenta Crop Protection, LLC v. Atticus, LLC*,
No. 5:19-cv-00509-D, Doc. 443 (E.D.N.C. Jan. 12, 2022) .................................. 12

*Syngenta Crop Protection, LLC v. Willowood, LLC*,
No. 1:15-cv-274, 2016 WL 6783691 (M.D.N.C. Oct. 6, 2016) .......................... 4, 5

*United States v. Dentsply Int'l, Inc.*,
No. 99-cv-5, 2000 WL 654286 (D. Del. May 10, 2000) ......................................... 4

*United States v. Vetco, Inc.*,
691 F.2d 1281 (9th Cir. 1981) ............................................................................. 12

## Statutes

15 U.S.C. § 53(b) ................................................................................................... 16

## Rules

Fed. R. Civ. P. 26(b)(1) ................................................................................................... 4

Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015) ............................................. 11

Fed. R. Civ. P. 34(a) ......................................................................................................... 6

Fed. R. Civ. P. 34(b)(2)(B) ............................................................................................. 11

iv

## PRELIMINARY STATEMENT

This Court denied Syngenta's[1] Motion to Dismiss, holding that Plaintiffs[2] had sufficiently alleged that each of the Syngenta Defendants engaged in a long-running, anticompetitive scheme to foreclose and harm competition. This scheme involves the use of both (i) so-called "Key AI loyalty programs" with distributor customers and (ii) horizontal supply agreements between Syngenta and its rival Corteva. Plaintiffs are entitled to discovery from each Syngenta Defendant on the issues that are relevant to Plaintiffs' case. Plaintiffs and Syngenta have reached agreement on many of Plaintiffs' document and data requests. However, Syngenta refuses to provide certain relevant discovery to Plaintiffs, ignoring the scope of Plaintiffs' case to artificially narrow discovery and relying on arguments that this Court rejected in denying the Motion to Dismiss.

Plaintiffs therefore move to compel Syngenta (1) to produce files from Syngenta Crop Protection AG; (2) to run appropriate search terms to capture documents related to Syngenta's "Key AI" loyalty program and its crop protection product business generally; (3) to make an appropriate production of data related to Syngenta active ingredients ("AIs") other than azoxystrobin, mesotrione, and metolachlor; and (4) to search the

---

[1] Defendants Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Crop Protection, LLC (collectively, "Syngenta" or the "Syngenta Defendants").

[2] Federal Trade Commission and the states of California, Colorado, Illinois, Indiana, Iowa, Minnesota, Nebraska, Oregon, Tennessee, Texas, Washington, and Wisconsin, acting by and through their respective Attorneys General ("Plaintiffs").

custodial files of one additional U.S.-based custodian for responsive documents. Specifically, Plaintiffs seek an order with four components. As reflected in Plaintiffs' Proposed Order, Plaintiffs respectfully request that the Court order Syngenta to:

1. Produce Syngenta Crop Protection AG documents and information as follows:

    a. Search, and produce responsive documents from, the custodial files of the following Syngenta Crop Protection AG custodians: Jon Parr, Jeff Rowe, and David Scott.

    b. Conduct a reasonable search for any central repositories of responsive material within Syngenta Crop Protection AG, and produce responsive files from those central repositories.

2. Modify Syngenta's proposed search protocol to add Plaintiffs' search terms to the first stage of the protocol, as set forth in Part II below.

3. With respect to RFPs 27–29 and 32(a)–(b), produce data related to Syngenta products containing active ingredients, or active ingredients themselves, that are marketed as fungicides or herbicides, and products containing the active ingredients abamectin and lambda cyhalothrin (or the active ingredients themselves). For the active ingredients metolachlor, abamectin, and lambda cyhalothrin, the time period of this production should run from January 1, 2002, to December 31, 2023. For other active ingredients, the time period of production should run from January 1, 2012, to December 31, 2023.

4.  Search, and produce responsive materials, from the custodial file of Andrew Fisher for the period January 1, 2015, to April 19, 2024.

## RELEVANT PROCEDURAL BACKGROUND

On April 19, 2024, Plaintiffs served their First Set of Requests for Production to Syngenta. As contemplated by the Court's Scheduling Order (Doc. 195 at 6 n.1), those requests are designed to cover the vast majority of data and documentary material that Plaintiffs will seek from Syngenta in this action. *See* Ex. A (Plaintiffs' First Set of Requests For Production).[3] Syngenta served its Objections and Responses to these Requests on May 19, 2024. Ex. B.

The parties met and conferred about those requests via videoconference on multiple occasions, including on May 22, June 11, June 20, and June 24, 2024. The Court's scheduling order provides that the deadline for parties to agree or move to compel on custodians and search protocols is 60 days after service of Requests for Production, (Doc. 195 at 6). Plaintiffs and Syngenta, by mutual agreement, extended that deadline from June 18 to June 25, 2024, to continue discussions in a further effort to resolve their disputes. The parties have reached agreement on many issues, but have now reached impasse on the issues that are the subject of this motion.

---

[3] The cited exhibits are attached to the Declaration of Allyson M. Maltas filed concurrently with this memorandum.

## ARGUMENT

Under Federal Rule of Civil Procedure 26(b)(1), Plaintiffs are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir. 1981) ("relevant evidence" is "discoverable"); *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) ("[R]elevant evidence is presumptively discoverable."). Rule 26 relevance is "construed broadly[.]" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Syngenta Crop Protection, LLC v. Willowood, LLC*, No. 1:15-cv-274, 2016 WL 6783691, at *1 (M.D.N.C. Oct. 6, 2016) ("Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted."). The needs of the case are likewise construed broadly when the case implicates the public interest. *See* Fed. R. Civ. P. 26(b)(1) ("needs of the case" must "consider[] the importance of the issues at stake in the action"). And the public interest is doubly implicated where, as here, the plaintiffs seek to vindicate the public policy objectives of the antitrust and unfair competition laws. *See In re Plastics Additives Antitrust Litig.*, No. Civ. A. 03–2038, 2004 WL 2743591, at *14 (E.D. Pa. Nov. 29, 2004) ("It is well-settled that courts presiding over antitrust cases generally take a liberal view of relevance in determining scope of discovery." (citation omitted)); *United States v. Dentsply Int'l, Inc.*, No. 99-cv-5, 2000 WL 654286, at *5 (D. Del. May 10, 2000) (observing a "general policy of allowing liberal discovery in antitrust cases").

4

As "the party resisting discovery," Syngenta "has the burden of persuasion to show that the discovery should not be allowed." *Willowood*, 2016 WL 6783691, at *1; *see Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243–44 (M.D.N.C. 2010) (same).

## I. DEFENDANT SYNGENTA CROP PROTECTION AG MUST PRODUCE RELEVANT MATERIALS

Plaintiffs' document and data requests are targeted at each of the three Syngenta Defendants, including Syngenta Crop Protection AG, a Swiss company. Although Syngenta negotiated and ultimately agreed to produce some discovery from the other two Defendant entities, Syngenta has categorically refused to produce ***any*** documents or data from Syngenta Crop Protection AG. Syngenta again argues that Syngenta Crop Protection AG is not sufficiently relevant to this case, despite the Court's clear ruling that it is an appropriate Defendant (and thus subject to discovery). Syngenta also claims without substantiation that any production from Syngenta Crop Protection AG would be unduly burdensome. Each of these arguments fails, and the Court should order Syngenta Corp Protection AG to produce the documents and data requested by Plaintiffs.

### A. This Court Considered and Rejected All of Syngenta's Relevance Objections Through Its Decision on the Motion To Dismiss

Syngenta categorically refuses to provide any document and data discovery from Syngenta Crop Protection AG, claiming that this entity is exempt from discovery because ███████████████████████████████████ Ex. C (June 7, 2024 letter from Syngenta (B. Miller) to Plaintiffs (P. Kehl)) at 8. Syngenta further claims that none of

5

Syngenta Crop Protection AG's employees or executives have any relevant information

because ███████████████████████████████████████████████████

███████████████████████████████████ *Id.*

This Court has already rejected these exact same arguments in denying Syngenta's

motion to dismiss. *See* Doc. 160 at 68, 71–72. There, Syngenta argued that Syngenta

Crop Protection AG is not "involved in designing or implementing the U.S. rebate

program," and that allegations about the Syngenta-Corteva mesotrione agreement are

"not a basis for antitrust liability." Syngenta's Mem. In Supp. of Its Mot. To Dismiss

(Doc. 102) at 36–37; *see also* Syngenta's Reply In Supp. of Its Mot. To Dismiss (Doc.

132) at 18 (same). The Court rejected each of these arguments, finding instead that

Plaintiffs alleged sufficient facts that Syngenta Crop Protection AG directs and oversees

Syngenta's loyalty program, approves Syngenta's U.S. budget, provides "generic

defense" strategy, and was "directly involved in the negotiation" of the Syngenta-Corteva

mesotrione supply agreement. Doc. 160 at 68, 71–72.

Syngenta's recycled arguments are no more persuasive today than when the Court

rejected them six months ago. Syngenta Crop Protection AG is an appropriate Defendant

in this case. And because Syngenta Crop Protection AG remains a defendant, it is

obligated to respond to proportional discovery requests. *See* Fed. R. Civ. P. 34(a) ("A

party may serve on any other party a request within the scope of Rule 26(b) . . . .")*;*

Scheduling Order  (Doc. 195) at 6 (ordering the "***Parties*** to propose custodians and

search or TAR protocols" (emphasis added)).

6

**B.** **The Targeted Discovery that Plaintiffs Request from Syngenta Crop Protection AG Is Relevant and Proportional to the Needs of the Case**

Syngenta also has no basis for its objection that Plaintiffs' targeted and proportional discovery requests to Syngenta Crop Protection AG are somehow irrelevant or overly burdensome. Through negotiation, Plaintiffs have agreed to limit Syngenta Crop Protection AG's production to responsive, non-privileged documents from (1) centrally stored records of Syngenta Crop Protection AG (which Syngenta suggests may be in Switzerland) and (2) a limited custodial collection from the following three individuals with involvement in relevant aspects of Syngenta's conduct: John Parr, Jeff Rowe, and David Scott.

Defendant Syngenta Crop Protection AG plays a key and demonstrated role in Syngenta's conduct and the claims in this matter, and Plaintiffs' modest discovery proposal is manifestly proportional to the needs of this case. Syngenta Crop Protection AG █████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. D (excerpts from ████████████) (CX2293); *see* Am. Compl. (Doc. 81) ¶¶ 36, 65. According to Vern Hawkins, a U.S. executive Syngenta proposed as a document custodian, Syngenta has "a global strategy philosophy" that is set by Syngenta Crop Protection AG in Switzerland and effectuated through "local implementation and execution implementation plan[s]." Ex. E (November 9, 2010 Deposition of Vernon Richard Hawkins) at 32; *see also In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1153 (N.D. Ill. 1979) (granting motion to compel foreign parent corporation because of its "responsibility for" U.S. subsidiary's

7

operations). Finally, Syngenta Crop Protection AG employees were the lead participants in negotiating and entering the horizontal supply agreements that the Complaint alleges are an element of Syngenta's anticompetitive conduct. Am. Compl. (Doc. 81) ¶¶ 108–112, 122, 164, 197–198, 208.

Additionally, each of the three Syngenta Crop Protection AG custodians whose files Plaintiffs seek is clearly involved in Syngenta's conduct:

**Jon Parr** (former President, Syngenta Crop Protection AG). Jon Parr is the "President of Global Crop Protection" referred to in Paragraph 111 of Plaintiffs' Complaint. Am. Compl. (Doc. 81) ¶ 111. Mr. Hawkins, the top U.S. executive whom Syngenta disclosed (*see* Ex. F at 3) and proposed as a custodian, ███████████████ ████████████████ *See* Ex. G (Hawkins investigative hearing testimony) at 12–13. The government's investigative record makes clear Mr. Parr's relevance. Mr. Parr describes ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████ Ex. H (email from J. Parr to V. Hawkins) at CX2456-002, 003. ████████ ████████████████████████████████████████████ *See id.* ████████████████████████████████████████ ████████████████ *See* Ex. G at 81 (████████████████████ ████████████████████████████); Am. Compl. (Doc. 81) ¶¶ 108–112, 197–198. Mr. Parr's ████████████████████ indicates that his

8

custodial file will be a vital source of information on a variety of issues relevant to

Plaintiffs' case.

**Jeff Rowe** (President, Syngenta Crop Protection AG). Syngenta produced emails

during the investigation showing that ███████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ *See, e.g.*, Ex. I (email from Mr. Hawkins to

Messrs. Rowe and Parr ██████████████████████████) at 2–3; Ex. J (email from Mr.

Rowe to Mr. Hawkins ███████████████████████████████████).

**David Scott** (former Head, Third Party Relations, Crop Protection). David Scott is

the "Syngenta Crop Protection AG[ ] Head of Third Party Relations" referred to in

Paragraph 111 of Plaintiffs' Complaint. Am. Compl. (Doc. 81) ¶ 111. Mr. Scott's

responsibilities include ██████████████████████████████████████

████████████████████████████████. *See* Ex. G (██████████

█████████████████████) at 59. Among other things, Mr. Scott ███████████████

██████████████████████████████, *see* Ex. K at 1, 19, ████

███████████████████████, *see* Ex. L at CX2063-001, 002.

Syngenta argues that Plaintiffs do not need this discovery because the Syngenta

Crop Protection AG custodians ████████████████████████████

██████████████████████████████████████████ *See* Ex. C

at 8. That is wrong. These three custodians almost certainly created or possessed

responsive documents, or had responsive conversations, that were not shared with a

9

custodian from a U.S. subsidiary, and Syngenta cannot credibly argue otherwise. "Plaintiffs are presumptively entitled to search" custodial files where it is recognized those files contain relevant information, even if there may be a high degree of overlap with other custodial files. *Family Wireless #1, LLC v. Automotive Techs., Inc.*, No. 3:15-cv-01310, 2016 WL 2930887, at *3 (D. Conn. May 19, 2016) (cleaned up). Mere speculation about overlap between those files and files from other custodians cannot overcome Plaintiffs' interest in reviewing those files. *See FDIC v. RBS Acceptance, Inc.*, No. 14-cv- 00418, 2016 WL 11778627, at *2 (D. Colo. Dec. 27, 2016) (rejecting the exclusion of custodians for this reason); *Family Wireless*, 2016 WL 2930887, at *3 (similar).

Moreover, Plaintiffs are not asking Syngenta to produce records from Switzerland if copies of the same records are produced from the U.S. entities. They simply ask Syngenta to search for additional documents from the files of key Syngenta Crop Protection AG employees that are not contained within U.S.-based central files. In the unlikely event that there really are no such documents, Syngenta Crop Protection AG will bear little or no burden to confirm it has nothing to produce. But Syngenta's speculation that there may not be additional responsive records does not excuse it from investigating. *See Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006) ("Even if there are no documents responsive to a request for production, the requesting party is entitled to a response pursuant to Fed. R. Civ. P. 34(b).").

### C. Syngenta's Boilerplate and Unsubstantiated Burden Objections Fail

Finally, Syngenta resorts to boilerplate, unexplained claims that Swiss law prevents discovery of documents held in Switzerland, where Syngenta Crop Protection AG is located. Ex. C at 9. Initially, Syngenta did not even mention Swiss law in its May 20 objections—let alone the specific reasons why Swiss law affects Syngenta Crop Protection AG's search for and production of responsive records—as required by the Rules. Fed. R. Civ. P. 34(b)(2)(B) (a party "must state with specificity the grounds for objecting to the request, including the reasons."); Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015) (explaining that it is not sufficient to make "[a] boilerplate objection that [the request] is not proportional."). Nor has Syngenta substantiated this burden claim during the parties' multiple rounds of discovery conferences and letter correspondence, not even to identify any specific statute, law, rule, or code at issue.

Syngenta merely offers that it is still "evaluat[ing] the specific applicability and impact of these laws." Ex. C at 9. That fails Rule 34's requirements and Syngenta's objection is thus presumptively waived. *See, e.g.*, *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005) ("[T]he burden of avoiding waiver must rest with the party that failed to particularize its objections."); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528 (S.D. W. Va. 2007) ("[B]oilerplate objections in response to a Rule 34 request for production of documents are widely rejected.").

While Plaintiffs are left to guess at Syngenta's arguments that Swiss law prevents production, case law indicates that there is no blanket Switzerland exception to

11

responding to a request for production. *See, e.g.*, *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204–05 (1958) (Swiss law irrelevant under Rule 34); *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 139–40 (3d Cir. 1988) ("The location of the documents, whether within the territorial jurisdiction of the court or not, is irrelevant" under Rule 34). In fact, Syngenta was ordered to produce discovery from its Swiss entities in a case involving one of the same products at issue here (azoxystrobin). *See* Ex. M (*Syngenta Crop Protection, LLC v. Atticus, LLC*, No. 5:19-cv-00509-D (E.D.N.C. Jan. 12, 2022), Doc. 443) at 1; *see also Atticus*, No. 5:19-cv-00509-D (E.D.N.C.), Docs. 73–74 (motion to compel and memorandum in support). Syngenta's burden to sustain its objections to Plaintiffs' requests is the same for records held abroad as it is for domestic records. *See United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981) ("The party relying on foreign law has the burden of showing that such law bars production."); *Ohio v. Arthur Anderson & Co.*, 570 F.2d 1370, 1374 (10th Cir. 1978) (same); *Alfadda v. Fenn*, 149 F.R.D. 28, 34–35 (S.D.N.Y. 1993) (same). Syngenta has not met that burden.

## II. PLAINTIFFS ARE ENTITLED TO A REASONABLE SEARCH TO CAPTURE DOCUMENTS RELATED TO SYNGENTA'S KEY AI LOYALTY PROGRAM AND CROP PROTECTION BUSINESS

Plaintiffs seek to end Syngenta's unlawful loyalty program, which blocks generic access to the traditional distribution channel and thereby raises pesticide prices for farmers. Naturally, Plaintiffs have requested documents related to the operation, origins, purpose, and implementation of Syngenta's loyalty program, and documents related to

12

Syngenta's crop protection business more broadly, including business plans and financials. *See, e.g.*, Ex. A RFP Nos. 13, & 17. All of these documents are relevant to Plaintiffs' claims that Syngenta monopolized the markets for azoxystrobin, mesotrione, or metolachlor (the three AIs alleged as product markets in the complaint) through use of the Key AI loyalty program.

However, Syngenta intends to apply search terms to its document collection in a manner that will predictably exclude responsive documents relating to the Key AI Program, as well as relevant strategic planning and financial documents crucial to assessing the impact of the program. Accordingly, Plaintiffs request that this Court order Syngenta to apply search terms designed to reasonably identify responsive documents related to Syngenta's Key AI program, finances and business planning.[4] *See* Ex. N at 4

---



(June 4, 2024 letter from Plaintiffs (P. Kehl) to Syngenta (B. Miller)); Ex. O (Plaintiffs' redline of Syngenta's "Product Terms").

Plaintiffs have requested documents related to Syngenta's Key AI program generally, and documents related to its financials and business planning. *See, e.g.*, Ex. A RFP No. 1 (seeking, by reference to prior subpoena, documents relating to strategy, business planning, profit and loss, budgets, and competitive conditions in the manufacture of crop-protection products); RFP No. 9 (competitive conditions in the distribution or sale of crop-protection products); RFP No. 10 (documents related to the effect of loyalty programs on distributor businesses); RFP No. 13 (assessments, analyses and strategic plans related to any consideration of terminating any loyalty program); RFP No. 17 (documents related to any Syngenta loyalty program, including documents related to "the effects" of the loyalty program or the "purpose" of the program); *see also* Ex. P (May 26, 2020 Subpoena Duces Tecum to Syngenta referenced in RFP No. 1). But Syngenta intends to review those documents <u>only</u> if they also include Product Terms related to azoxystrobin, mesotrione, or metolachlor (the three AIs alleged as product markets in the complaint). Ex. B (Syngenta Resps. & Objs.) at Appendix A.

Syngenta claims that because Plaintiffs assert relevant markets of azoxystrobin, mesotrione, or metolachlor (and products containing those AIs), only documents that explicitly reference those AIs are relevant. That is not reasonable and is not consistent with the scope of Plaintiffs' actual case.

14

First, all documents related to the creation, implementation, and effects of Syngenta's loyalty program, how and why certain AIs are or are not included in the program, and how that program is implemented and imposed on Syngenta's customers are relevant and responsive here. These documents tell the full story of Syngenta's Key AI program and are important to understand how Syngenta has used the program to monopolize the markets for azoxystrobin, mesotrione, or metolachlor and to harm farmers who are overcharged for those products. While many relevant documents may explicitly refer to products containing azoxystrobin, mesotrione, or metolachlor, more general documents that do not explicitly mention those product names are still relevant. Moreover, Plaintiffs' case challenges the legality of, and seeks to enjoin, Syngenta's entire loyalty program, root and branch, and documents about the program are clearly relevant to that claim and requested remedy.

Second, and as in any antitrust case, the scope of relevant documents is not limited to the particular restraint at issue, but also extends to more generalized financial and business planning documents, which provide important information about competitive conditions in the marketplace and the effects of the challenged conduct. There is no reason to expect that relevant financial and business planning documents will contain the specific product names that Syngenta proposes to require as a filter. Finally, Syngenta has asserted that the markets at issue should be defined as broader than the particular AIs on which the complaint focuses. Limiting discovery as proposed by Syngenta would impair Plaintiffs' ability to test that defense.

In fact, many of the terms proposed by Plaintiffs were used by Syngenta to identify documents in its pre-Complaint investigation production. Ex. Q (Dec. 17, 2020 Letter from Syngenta to FTC) at 1–2 & Appendix A. Syngenta claims that those investigation terms are unreasonably broad now because litigation discovery should be narrower than Plaintiffs' pre-complaint investigation. Syngenta's premise is wrong. The FTC may bring a suit pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act") where it has "reason to believe" a corporation "is violating, or is about to violate, any provision of law enforced" by the FTC. 15 U.S.C. § 53(b). But once Plaintiffs bring a suit, they must ***prove*** the elements of the violations alleged in the Complaint. Accordingly, ***broader*** not ***narrower*** discovery on the allegations in the Complaint is appropriate during litigation. *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("There is no authority which suggests that it is appropriate to limit the [the Government's] right to take discovery based upon the extent of its previous investigation into the facts underlying its case." (cleaned up)).

Finally, Syngenta has not substantiated the burden of adding these additional search terms. It has not explained, for instance, how many additional documents the terms will add to its review, nor has it explained why collection of those documents is disproportionate. The terms subject to this motion (at footnote 4) will be applied in the first stage of Syngenta's search term protocol. Syngenta will then apply additional "Request Terms" to the document population that hit on Plaintiffs' terms or Syngenta's "Product Terms." Ex. B (Syngenta Resps. & Objs.) at Appendix A; *see also* Ex. R

16

(agreed-upon set of "Request Terms"). This will narrow the scope of the review pull significantly, thus reducing Syngenta's burden.

## III. PLAINTIFFS ARE ENTITLED TO COMPLETE DATA PRODUCTIONS

Plaintiffs have requested that Syngenta produce data relating to its sales of products containing certain active ingredients additional to azoxystrobin, mesotrione, or metolachlor. RFPs 27–29, 32(a)–(b).[5] Following Syngenta's initial responses and objections, Plaintiffs agreed to limit the data production for these RFPs to Syngenta products containing active ingredients, or active ingredients themselves, that are marketed as fungicides or herbicides, and products containing the active ingredients abamectin and lambda cyhalothrin (or the active ingredients themselves). In general, Plaintiffs propose that Syngenta pull data for the period from January 1, 2012, forward. For the active ingredients metolachlor, abamectin, and lambda cyhalothrin, Plaintiffs propose that Syngenta pull data for the period from January 1, 2002, forward. Syngenta refuses to produce any data beyond data addressing the three AIs (azoxystrobin, mesotrione, or metolachlor), or any data from before 2015, arguing that products not containing these AIs are not relevant to this case and that the time period requested is unduly burdensome. Each of these arguments fail.

*First*, Syngenta has argued that the AIs azoxystrobin, mesotrione, and metolachlor each compete in relevant antitrust markets that that are broader than the AI-based markets

---

[5] Plaintiffs have accepted Syngenta's proposal for production in response to RFP 32(c)-(d), so those subparts are not part of this motion.

alleged in the Complaint. Although Syngenta has not yet articulated what it believes to be the appropriate product markets in which to assess the competitive impact of its conduct, it has suggested that the appropriate markets should include products containing other AIs with "overlapping uses," and it points to prior market definitions used to assess mergers, such as "pre-emergent herbicides" and "foundational herbicides." Syngenta Mem. In Supp. of Mot. To Dismiss (Doc. 102) at 30, 32–33; *see* Syngenta Ans. to Am. Compl. (Doc. 173), Second Defense (contesting market definition). Having made such claims, Syngenta should not be permitted to resist discovery of a broader set of AIs. Sales, margin, and other data related to other Syngenta herbicides and fungicides are plainly relevant to the product market definition, and these broader datasets may be necessary to demonstrate Plaintiffs' alleged product markets, and/or to test the markets that later are proposed by Syngenta.

***Second***, Plaintiffs' experts may use information on a broad group of AIs to demonstrate anticompetitive effects caused by Syngenta's conduct and to calculate damages. Those other AIs may serve as benchmarks with which to demonstrate elevated prices for products containing AIs encumbered by Syngenta's loyalty program. *Cf. In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 15 (E.D.N.Y. 2020) (finding class-wide impact inquiry satisfied with reference to "the actual prices and quantities that occurred in a similar market that was not affected by defendant's behavior"). Or other AIs could be benchmarks to calculate an overcharge relevant to damages claims. *See In re Plastics Additives Antitrust Litig.*, MDL No. 1684, 2009 WL

10741541 (E.D. Pa. Oct. 29, 2009) (granting motion to compel transaction data for use as damages benchmark). These types of expert analyses are commonplace and accepted in the antitrust context, and they are useful for this industry. █████████████████

████████████████████████████████████████████████████

███████ *See* Ex. S at CX2336-021, -022 (████████████████████

████████████████████████████); Ex. T at CX2034-011 (█████████

████████████████████████████████████████

█████████████████████████████). 

     ***Third***, Syngenta has access to all the data, and refuses to commit that its own expert or other advocacy will not rely on data analyses involving AIs other than azoxystrobin, mesotrione, and metolachlor. *See* Ex. U at 3 (June 18 email from Syngenta (B. Miller)) ("To the extent Syngenta may rely on additional data for its own analyses, Syngenta will provide such data to Plaintiffs as required by applicable rules."). Since Syngenta itself may rely on data involving other AIs, Plaintiffs' ability to perform similar analyses or respond to Syngenta's analyses should not be hamstrung by a lack of access to complete data.

     ***Fourth***, with respect to the time period, Plaintiffs' request for data back to 2002 for metolachlor, abamectin, and lambda cyhalothrin is targeted and appropriate because those products were off-patent and in Syngenta's loyalty program in the 2000s. *See* Syngenta Ans. to Am. Compl. (Doc. 173) ¶ 115; Ex. V at 6–7 (███████████████

████████████████████████████████████████

19

██████████). Plaintiffs' request for other data back to 2012 is targeted and appropriate,

███████████████████████████████████████████████

██████████████████████████████ *See* Ex. C at 1–2 (███████████

██████████). Syngenta also argues that it should not have to produce SAP data prior to

2015 because it "may" be incomplete, inconsistent, or inaccurate due to system

conversions. Ex. U at 2 (June 18 email from Syngenta (B. Miller)). That this information,

as it is currently kept in the ordinary course, may have flaws is not a valid reason to resist

discovery. Syngenta cannot simply assert that there are imperfections in its internal data,

and use that naked contention to justify withholding the data from discovery. These

limitations may be an appropriate topic for expert cross-examination, but they do not

excuse withholding relevant information. To the extent that Syngenta's argument is that it

may need to process the data to make it usable for Plaintiffs, Syngenta's concerns are

unwarranted—Plaintiffs will accept the data as it exists in Syngenta's system.

In sum, with regard to the data regarding additional AIs and the time period before

2015, Syngenta makes only unsubstantiated and generalized claims of burden. *See Bank
of Mongolia v. M & P Global Financial Svcs.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009)

(noting that a party "must explain the specific and particular way in which a request is . . .

unduly burdensome," demonstrated by "a statement (generally an affidavit) with specific

information"). Considering the needs of the case and the clearly articulated rationale for a

broader data pull, Plaintiffs' compromise proposal on Syngenta's data pull is reasonable

and proportionate.

## IV. PLAINTIFFS ARE ENTITLED TO DISCOVER THE RECORDS OF ROBERT (ANDREW) FISHER

Finally, this Court should order Syngenta to produce a refreshed production of documents from the files of **Robert (Andrew) Fisher** (Commercial Unit Head, Southern & East Coast; Former Commercial Unit Head, West; Former Product Lead (Azoxystrobin)). Mr. Fisher was a custodian in the investigation, and his files contain highly relevant documents, including ███████████████████████████

████████████████████████████████████████████████████

Ex. W at CX2273-003. During Mr. Fisher's time as a product lead for azoxystrobin, he

████████████████████████████████████████████

███████████████████████████ Ex. X at CX2432-003. █████████████████

████████████████████████████████████████████████████

███████████████ *Id.* at CX2432-002. Finally, Syngenta itself has recognized Mr. Fisher's breadth of knowledge for azoxystrobin, calling him as a witness in another litigation and representing that he has responsibility for "manag[ing] everything around the [azoxystrobin] brand, from the budget, setting pricing, volume, advertising, and promotion . . . [and] post-patent strategy . . ." Ex. Y (*Syngenta Crop Protection, LLC v. Willowood, LLC*, No. 1:15-cv-274 (M.D.N.C.), Sept. 7, 2017 Transcript of Jury Trial) (Syngenta_FTC_01025018) at 77–81.

Syngenta refuses to produce additional documents and information from Mr. Fisher's files, claiming during discovery conferences that, since his superiors (such as Jeff Cecil) will be custodians with more decision-making authority, Mr. Fisher's files are

unnecessary. Even if it were true that Mr. Fisher merely implemented Syngenta's anticompetitive scheme, he is nonetheless a source of relevant, responsive information, and Syngenta does not argue otherwise. *See, e.g.*, *Family Wireless*, 2016 WL 2930887, at *3 (granting motion to compel custodian who was not "considered a decision-maker" because "lower-level employees may discuss execution of policies amongst themselves and with third parties other than their superiors"); *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10-cv-5711, 2012 WL 4498465, at *15 (N.D. Ill. Sept. 28, 2012) (similarly granting motion to compel "lower level employees"). Syngenta also argues that Mr. Fisher is an inappropriate custodian because his time as a regional Commercial Unit (sales organization) Head is not relevant. Ex. C at 8. Although Plaintiffs have, in the interest of compromise, agreed not to seek each and every Commercial Unit Head's custodial file, Commercial Unit Heads are a source of highly relevant documents and some search of them is reasonable and proportionate. For example, ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. Z at 14.

Finally, even with the addition of Mr. Fisher as a custodian, Plaintiffs have appropriately targeted their proposal and seek substantially fewer custodians than are typically agreed upon by large corporate Defendants in complex cases. *See, e.g.*, *Little Hocking Water Ass'n, Inc. v. E.I. DuPont De Nemours & Co.*, No. 2:09-cv-1081, 2013 WL 608154, at *5 (S.D. Ohio Feb. 19, 2013) (119 Dupont custodians); *Kleen Prods.*,

22

2012 WL 4498465, at *6 (Defendants originally proposed 109 document custodians).

Plaintiffs, by contrast and aside from this dispute regarding Mr. Fisher, have agreed that

Syngenta will search the files of sixteen U.S. "custodial roles" (involving a search of the

files of each individual who occupied the role during a specified time period), plus four

additional individual custodial files. *See* Ex. AA at 1-2 (June 24, 2024 Email from

Syngenta (B. Miller).

## <u>CONCLUSION</u>

Plaintiffs' motion to compel should be granted.

Dated: June 25, 2024           Respectfully submitted,

                      /s/ Allyson M. Maltas
                      ALLYSON M. MALTAS
                      Senior Trial Counsel
                      Federal Trade Commission
                      Bureau of Competition
                      600 Pennsylvania Avenue, NW
                      Washington, DC 20580
                      Telephone: (202) 326-3646
                      Email: amaltas@ftc.gov

                      KARNA ADAM
                      JOSEPH R. BAKER
                      WESLEY G. CARSON
                      ROBERT Y. CHEN
                      ELIZABETH A. GILLEN
                      PHILIP J. KEHL
                      MICHAEL J. TURNER

                      *Attorneys for Plaintiff Federal Trade Commission*

/s/ Nicole S. Gordon           /s/ Conor J. May
NICOLE S. GORDON            JAN M. ZAVISLAN
Deputy Attorney General          Senior Counsel
Office of the California Attorney General   CONOR J. MAY
455 Golden Gate Avenue, Suite 11000    Assistant Attorney General
San Francisco, CA 94610         Colorado Department of Law
Telephone: (415) 510-4400       Office of the Attorney General
Email: nicole.gordon@doj.ca.gov    Ralph L. Carr Judicial Center
                              1300 Broadway, 7th Floor
*Attorney for Plaintiff State of California*  Denver, CO 80203
                              Telephone: (720) 508-6000
                              Email: Jan.Zavislan@coag.gov
                                     Conor.May@coag.gov

                              *Attorneys for Plaintiff State of Colorado*

/s/ Paul J. Harper
PAUL J. HARPER
Assistant Attorney General, Antitrust
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3000
Email: paul.harper@ilag.gov

*Attorney for Plaintiff State of Illinois*


/s/ Noah Goerlitz
NOAH GOERLITZ
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 725-1018
Email: noah.goerlitz@ag.iowa.gov

*Attorney for Plaintiff State of Iowa*


/s/ Colin P. Snider
COLIN P. SNIDER
Office of the Attorney General of
Nebraska
2115 State Capitol Building
Lincoln, NE 68509
Telephone: (402) 471-3840
Email: Colin.Snider@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

/s/ Matthew Michaloski
MATTHEW MICHALOSKI
CHRISTI FOUST
Deputy Attorneys General
SCOTT BARNHART
Chief Counsel and Director of Consumer
Protection
Office of the Indiana Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 234-1479
Email: matthew.michaloski@atg.in.gov
        christi.foust@atg.in.gov
        scott.barnhart@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


/s/ Katherine Moerke
KATHERINE MOERKE
JASON PLEGGENKUHLE
ELIZABETH ODETTE
Assistant Attorneys General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Telephone: (651) 296-3353
Email: katherine.moerke@ag.state.mn.us
        jason.pleggenkuhle@ag.state.mn.us
        elizabeth.odette@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

/s/ Hamilton Millwee
HAMILTON MILLWEE
Assistant Attorney General
TATE BALL
Assistant Attorney General
Office of the Attorney General of
Tennessee
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
        Tate.Ball@ag.tn.gov

*Attorneys for Plaintiff State of Tennessee*


/s/ Luminita Nodit
LUMINITA NODIT
Assistant Attorney General,
Antitrust Division
Washington State Office
of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104
Telephone: (206) 254-0568
Email: Lumi.Nodit@atg.wa.gov

*Attorney for Plaintiff State
of Washington*

/s/ Timothy D. Smith
TIMOTHY D. SMITH
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us

*Attorney for Plaintiff State of Oregon*

/s/ William Shieber
JAMES LLOYD
Chief, Antitrust Division
TREVOR YOUNG
Deputy Chief, Antitrust Division
WILLIAM SHIEBER
Assistant Attorney General
Office of the Attorney General of Texas
300 West 15th Street
Austin, TX 78701
Telephone: (512) 936-1674
Email: William.Shieber@oag.texas.gov

*Attorneys for Plaintiff State of Texas*

/s/ Laura E. McFarlane
LAURA E. MCFARLANE
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us

*Attorney for Plaintiff State of Wisconsin*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) in that it

contains fewer than 6,250 words, excluding the exempted portions, as reported by word

processing software.


Dated:  June 25, 2024                     /s/ Allyson M. Maltas

ALLYSON M. MALTAS
Senior Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov