# Exhibit N



Philip Kehl
Anticompetitive Practices I Division
Federal Trade Commission
202.326.2559
pkehl@ftc.gov

UNITED STATES OF AMERICA
# FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

June 4, 2024

**VIA ELECTRONIC MAIL**

Ben Miller
Davis Polk & Wardwell LLP
901 15th Street, NW
Washington, D.C. 20005
benjamin.miller@davispolk.com

Re:   *FTC et al. v. Syngenta Crop Protection AG et al.*, No. 1:22-cv-00828-TDS-JEP (M.D.N.C.)

Dear Ben,

On May 29 and May 31, 2024, Plaintiffs and Syngenta met and conferred regarding Plaintiffs' First Set of Requests for Production to Syngenta in the captioned action ("RFPs"), and Syngenta's Responses and Objections thereto. This letter summarizes those discussions, further explains our position on certain disputed issues, and, in some cases, offers compromises to resolve certain issues.

***Syngenta Crop Protection AG***. Syngenta's General Objection 6 objects to the production of ESI that is stored outside of the United States. You confirmed during our conferences that this means that Syngenta will not produce material from Defendant Syngenta Crop Protection AG. You also claimed that Syngenta Crop Protection AG does not possess any unique relevant information, and that all documents responsive to Plaintiffs' RFPs can be produced by Syngenta's U.S. subsidiaries.

We do not agree to exclude Syngenta Crop Protection AG from discovery. The Court denied Syngenta's motion to dismiss Syngenta Crop Protection AG. (Doc. 160 at 72). Syngenta Crop Protection AG is a party to this case, and Plaintiffs are entitled to discovery from it, including as to Syngenta's loyalty program and generic defense strategy, and the relevant supply agreements between Syngenta and Corteva, among other issues. (*See id.*). Syngenta's refusal to produce information from Syngenta Crop Protection AG will impermissibly preclude Plaintiffs from obtaining critical discovery as to the development and implementation of Syngenta's post-patent strategy and is an inappropriate end-run around the Court's decision rejecting Syngenta's motion to dismiss.

Consistent with the Complaint's allegations of Syngenta Crop Protection AG's oversight of Syngenta's post-patent strategy and supply contracts, we have proposed collection of a limited number of Syngenta Crop Protection AG custodians: Erik Fyrwald, Jon Parr, Jeff

Highly Confidential – Outside Counsel Eyes Only

Rowe, and David Scott.[1] █████████████████████████████████
████████████████████████████████████████████

- **David Scott** (Former Head, Third Party Relations, Syngenta Crop Protection AG): ████████████████████████████████████████████

- **Jon Parr** (Former President, Syngenta Crop Protection AG): ████████████████████████████████████████████

- **Jeff Rowe** (CEO Syngenta Group; President, Syngenta Crop Protection AG): ████████████████████████████████████████████

- **Erik Frywald** ████████████████████████████████████████████

These individuals' ████████████████████████████████████████████, suggests that their custodial files will contain further substantive, unique documents related to Syngenta's crop protection business in the United States, including ████████████████████████████████████████████

Although you recognize that these custodians possess responsive, relevant information, you argued that there is no relevant *unique* information in their custodial files that would not be captured by the U.S.-based custodians you have already proposed. But it is simply not credible to assert that none of these four proposed custodians ever created or possessed a responsive document, or had a responsive conversation, that was not shared with custodian from a U.S.

---

[1] Because Syngenta Crop Protection AG provides oversight to the U.S. crop protection business, a narrow custodial pull from Syngenta Crop Protection AG will necessarily involve high-level executives.

Highly Confidential – Outside Counsel Eyes Only

subsidiary. Syngenta is not entitled to shield itself from discovery based on a purported claim of custodial overlap. "Plaintiffs are presumptively entitled to search" custodial files where it is recognized those files contain relevant information, even if there may be a high degree of overlap with other custodial files. *Family Wireless #1, LLC v. Automotive Techs., Inc.*, No. 3:15-cv-01310, 2016 WL 2930887, at *3 (D. Conn. May 19, 2016) (cleaned up). Mere speculation about overlap between those files and files from other custodians cannot overcome Plaintiffs' interest in reviewing those files. *See FDIC v. RBS Acceptance, Inc.*, No. 14-cv-00418, 2016 WL 11778627 at *2 (D. Colo. Dec. 27, 2016) (rejecting the exclusion of custodians for this reason); *Family Wireless #1*, 2016 WL 2930887, at *3 (similar).

Finally, you briefly raised Swiss Data Privacy laws as an issue with producing material from Syngenta Crop Protection AG custodians, but did not provide any detail about these laws. Indeed, nowhere in your Responses and Objections to Plaintiffs' RFPs do you raise Swiss Data Privacy laws. You also appeared to acknowledge that these concerns are not a valid defense to production of responsive materials, and we expect that Syngenta will be able to comport with these laws while complying with its discovery obligations.

Please confirm that Syngenta will search for and produce responsive documents from Syngenta Crop Protection AG, including from the custodial files of Erik Fyrwald, Jon Parr, Jeff Rowe, and David Scott, or whether we are at impasse on this issue.

***Time Period.*** Syngenta objected to the time periods requested in Plaintiffs' RFPs, but did not provide in your objections any proposal for the Relevant Period for production. During our conversation you initially suggested that Syngenta would supplement its prior production by producing documents from the time of Syngenta's final production in the investigation to the present. You then said you will discuss this issue with your client and come back with an alternative proposal. We look forward to receiving that proposal.

***Products Covered and "Product Terms" in Search Protocol***. Syngenta has objected to producing documents or data related to any Crop Protection Products that contain active ingredients other than azoxystrobin, mesotrione, and metolachlor, because, in your view, only those active ingredients are relevant. You further stated your view that Plaintiffs' requests are burdensome because the term "Loyalty Products" is unbounded and ill-defined. We understand that Syngenta plans to run search terms related to azoxystrobin, mesotrione, and metolachlor over the documents pulled for review, and only then run further search terms on and review documents that hit those "product terms."

Syngenta's position is not reasonable and is not consistent with the scope of Plaintiffs' actual case. Plaintiffs' case challenges the legality of Syngenta's entire loyalty program. Therefore, all documents related to the creation and implementation of Syngenta's loyalty program generally, how and why certain AIs are or are not included in the program, and how that program is implemented and imposed on Syngenta's customers are all relevant and responsive here, even if they do not explicitly relate products containing azoxystrobin, mesotrione, or metolachlor. Additionally, discovery on products with active ingredients both within and now removed from Key AI is relevant and appropriate—it will allow comparison to show how product markets function for active ingredients in Key AI and active ingredients not included in Key AI. Finally, as in any antitrust case, the scope of relevant documents is not

Highly Confidential – Outside Counsel Eyes Only

limited to the particular restraint at issue, but also extends to more generalized financial and business planning documents. To take just one example, Syngenta has asserted that the markets at issue are properly defined to be broader than the particular AIs on which the complaint focuses. Limiting discovery as proposed by Syngenta would impair Plaintiffs' ability to test that defense.

However, in the interest of compromise, we propose the following search protocol to address Syngenta's scope objections as they relate to the products covered.

This proposal starts with an expansion of the terms included in Syngenta's proposed initial screen of search terms. We are considering Syngenta's general search protocol, which starts with an initial screen of certain "Product Terms." But both to ensure robustness of the protocol and to capture additional products covered by the RFPs, the initial screen of product terms should be expanded in the following ways:

*First*, you should add the "Crop Protection Terms," also used during the Pre-Complaint investigation, to the Product Terms that are first applied to the collection as an initial screen. These terms would better capture financial planning, strategic planning, and competitive position documents that are responsive to the RFP but may not expressly refer to individual product terms. These terms are contained in an appendix to Jesse Solomon's December 17, 2020 letter to Kent Cox. Further, these "Crop Protection Terms" should be amended to include the following additional terms related to Syngenta's Key AI Program: [REDACTED]

*Second*, you should add Product Terms related to the following active ingredients: abamectin, lambda cyhalothrin, and paraquat. This should include both permutations and abbreviations of the active ingredient itself, and brands containing the active ingredient (consistent with the contemplated approach for the Product Terms related to other active ingredients).

*Third*, after application of the search protocol, you should mark responsive and produce (to the extent not privileged) all documents that are responsive to any RFP, even if they do not relate directly to azoxystrobin, mesotrione, or metolachlor.

This compromise approach appropriately balances the burden of Syngenta's review with Plaintiffs' need for information relevant to our claims.

Relatedly, we are reviewing your list of search terms more generally, and will follow up in a separate communication with proposed additions.

[REDACTED] Although we accept this representation, we reiterate that to the extent that you find any responsive, non-privileged documents related to any Loyalty Programs (as defined in the RFPs) other than Key AI, those documents must be produced.

**U.S.-Based Custodians**. We have met and conferred about our proposed additional custodians and custodial roles (identified in my May 22, 2024 letter). In general, you argue that

our proposed custodians are not appropriate because these custodians do not have decision-making authority with respect to Syngenta's Key AI programs. As described in greater detail below, many of these custodians appear to have more than ministerial involvement in Syngenta's Key AI program, in addition to possessing other types of information relevant to Plaintiffs' claims. But even if—as you say—these custodians' only function is to implement the decisions of others with respect to Key AI, search of these files is nonetheless appropriate to capture admissible evidence related to how Syngenta's conduct plays out in practice. *See, e.g., Family Wireless #1*, 2016 WL 2930887, at *3 (granting motion to compel custodian "not . . . considered a decision-maker" because "lower-level employees may discuss execution of policies amongst themselves and with third parties other than their superiors"); *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10-cv-5711, 2012 WL 4498465, at *15 (N.D. Ill. Sept. 28, 2012) (similarly granting motion to compel "lower level employees"). There is simply no bright-line rule that only employees with so-called decision making power are appropriate for custodial searches. Syngenta's own documents and testimony demonstrate that these custodians possess documents and information that go to the core of Plaintiffs' claims.

After hearing from you on the custodians, we reiterate our request that Syngenta include the following custodians and custodial roles in the collection (in addition to the Syngenta Crop Protection AG custodians and roles identified above):

- **Robert (Andrew) Fisher** (Commercial Unit Head, Southern & East Coast; Former Product Lead (Azoxystrobin)). Mr. Fisher was a custodian in the investigation, and his files contain highly relevant documents, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Fisher should be a custodian, and his files from his time as both a CU Head and a Product Lead should be searched.

- **Product Lifecycle Management**

    o **Charles Flippin** (Head, Crop Protection Product Lifecycle Management). Syngenta's Key AI Program is a component of what Syngenta calls product lifecycle management, and, as such, Mr. Flippin is a crucial custodian. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ You suggested that Mr. Flippin's role is not strategic or impactful on the company, and that he lacks decision-making authority. But ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And even if Mr. Flippin's role is not strategic, that does not rule him out as an appropriate custodian. As you recognized, there will be unique, responsive documents within Mr. Flippin's files.

    o **Mark McAuley** (Post-Patent Strategy Manager). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This suggests that his role is more

substantive that merely receiving direction from Mr. Cecil and others. In any event, Syngenta's post-patent strategy goes to the core of the Plaintiffs' case, and an individual with the role of post-patent strategy manager should thus be a custodian, even if that role involves more tactical implementation than setting strategic direction.

- **Chip Garman** (Former Key Account Management Alternate Brand Lead) and **Gerry Paoli** (Operations Analyst, Key Account Management and Customer Support). You stated that these roles have now merged. Although neither Mr. Garman nor Mr. Paoli were custodians in the investigation, it is clear they have relevant documents. ███████ His files will therefore be an important source of documents ███████ Finally, Mr. Garman ███████ As such, Mr. Garman appears to have a role that extends beyond a mere data repository, as you described it on our call. Mr. Paoli, for his part, ███████ His files will therefore be an important source of information.

- **Product Marketing Heads**

  o **Kevin Gesse** (Head, Product Marketing (Herbicides)); **Ken Fister** (Former Head, Herbicide Product Marketing). You stated that product marketing heads report into Jeff Cecil, and they do not have a strategic impact on Syngenta's decision-making. Even if this is true, these marketing heads are at the very least responsible for implementing strategic plans, and their files will thus contain important documents addressing Syngenta's business goals. (*See, e.g.,* ███████ ).
  o For the same reasons, product marketing heads for fungicides, including **Lisa Moricle** and **Christian Lippuner**, should also be included.

- **Product Marketing Leads**

  o **Brett Johnson** (Former Product Marketing Lead (Fungicides). Mr. Johnson is an appropriate custodian. ███████

Highly Confidential – Outside Counsel Eyes Only

- o **Steve Gomme** (Former Product Marketing Lead (Herbicides). Mr. Gomme is likewise an appropriate custodian, to address the product marketing lead role related to herbicides like mesotrione and metolachlor.

- **John Goggin** (Former Head, Business Planning and MaSE). You stated that Mr. Goggin is involved in training Syngenta's sales staff, and that this training includes discussion of best practices for dealing with customer accounts (including as to Key AI). Mr. Goggin is an appropriate custodian to efficiently obtain information related to Syngenta's sales practices for crop-protection products, without necessitating a custodial search of many sales representatives.

- **Jennifer Jackson** (Former Head of Finance, Syngenta North America); **Lars Oestergard** (Head of Finance, North America). The head of finance for North American is an appropriate custodian. The RFPs calls for production of financial information (*see, e.g.,* RFP No. 17(c), (f), and (g)). A response to the RFPs will require custodial documents addressing these requests.

- **Justin Kraskouskas** (Controller, Partner Rewards, Key Account Management). As with Ms. Jackson and Mr. Oestergard, appropriate custodial representative of financial information relevant to the operation of Syngenta's Key AI program is necessary for a complete response to the RFPs. Mr. Kraskouskas

- **Brent Lackey** (Former Head of Marketing to Settlement for U.S. Crop Products) and **Brad Johnson** (Head, Marketing Programs and Payments). You stated that the role of Head, Marketing to Settlement for U.S. Crop Protection Products that had been held by Mr. Lackey is now called Marketing Programs and Payments, and is held by Brad Johnson. But whether or not the role is purely operational or ministerial, Mr. Lackey and Mr. Johnson clearly possess relevant information within their custodial files, and

Highly Confidential – Outside Counsel Eyes Only

will provide important visibility how payments work in Syngenta's Key AI program, including Syngenta's retail Key AI Program.

- **Rex Wichert** (Commercial Unit and Marketing Manager (Southern and East Coast); Former Post-Patent Strategy Manager). We maintain that Mr. Wichert is an appropriate custodian from his time both as a commercial unit manager and his time as a post-patent strategy manager. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- **Corey Huck** (Former Head, US. Crop Protection Sales and Former Head, National Accounts and Customer Service). Mr. Huck is an appropriate custodian both as a predecessor in key sales and national accounts roles ████████████████████████████████████████████████████████████████████████████

In the interest of compromise, and based on your representations regarding their responsibilities, we will drop our request that Syngenta include the following custodians: Bobby Bachman (Head, Western Commercial Unit); Paul Backman (Former Commercial Unit Head, West Heartland); Teresa McNeal (Commercial Unit Head, West Heartland); James Peters (Commercial Unit Head, East Heartland); Steve Eury (Head of Strategic Marketing; Former Strategic Marketing Manager).

Additionally, please include predecessor and successor files to these custodians in your search. Please also respond to my question in my May 22, 2024 letter about whether particular predecessor files will be included in your search. Finally, please confirm, as raised in my May 22, 2024 letter, that **Jamie Eichorn's** files from his time as Head of the Commercial Unit for the Southern and East Coast (and any other relevant prior roles) will be searched. Although we are willing to forgo a search of the files of each and every Commercial Unit Head, Mr. Eichorn is listed on your initial disclosures, and so we will need a complete production of his custodial documents. *See United States ex rel. Bonzani v. United Techs. Corp.*, No. 3:16-cv-01730, 2020 WL 7339916 at *9 (D. Conn. Dec. 14, 2020) ("The Court finds that the forty-five custodians listed in Defendant's initial disclosures are subject to an ESI document search . . . [as] the very individuals identified by Defendant as likely to support its claims or defenses.") (cleaned up).

***Non-custodial Searches for Responsive Documents***. You stated that to the extent you identify a shared site with potentially responsive documents, you will collect that shared site. You also stated that you will search the central files and shared sites you searched for responsive documents during the pre-Complaint investigation. We explained that, for certain requests in the RFPs, Syngenta's response should also involve an inquiry into where potentially responsive files are located, and a search for those files on a "go-get" basis to collect the specific documents requested. This includes RFP No. 4; RFP No. 17 (copies of any responsive

Highly Confidential – Outside Counsel Eyes Only

Loyalty Programs); RFP Nos. 22 and 23 (responsive Agreements); and RFP No. 24 (responsive versions of the "Post-patent Strategy: Product Handbook").

*Discussion of Particular RFPs.*

- **RFP No. 5**: You confirmed that Syngenta will produce documents in response to this RFP, governed by the coordination order that will soon be entered.
- **RFP No. 6**: We explained that, although there may be many privileged documents responsive to this request, you should nonetheless produce any non-privileged material that hits upon the agreed-upon search protocol. Please confirm that Syngenta will produce non-privileged documents responsive to RFP No. 6.
- **RFP No. 7**: You stated that you will produce any business documents you intend to rely upon at trial as part of your response to the RFPs, and will otherwise produce any responsive material as required by the Federal Rules of Civil Procedure, Federal Rules of Evidence, or other applicable rules.
- **RFP No. 14**: You stated your position that a request calling for production of scientific data submitted when registering a Crop Protection Product is not tailored to the litigation, and that you will respond to RFP No. 15. We do not agree to this proposal. The scientific data called for by RFP No. 14 is potentially relevant to market definition issues, and Syngenta should submit a response to this RFP. This response can be made pursuant to an agreed-upon search protocol. Please confirm that Syngenta will produce documents responsive to RFP No. 14.

We also discussed your vagueness objections, which you made to terms used by several RFPs. You stated that you will not withhold documents on the basis that they may contain information implicating terms you object to as vague. Rather, you stated that you will apply reasonable definitions of these terms to your review, informed as appropriate by how those terms are used within Syngenta's business.

Please let us know your response to these items.

Sincerely,

*/s/ Philip Kehl*
Philip Kehl

cc: Patrick Kane, Fox Rothschild
Paul Mishkin, Davis Polk
James McClammy, Davis Polk
Charles Duggan, Davis Polk
David Toscano, Davis Polk
Daniel Thomson, Davis Polk
Chui-Lai Cheung, Davis Polk

Highly Confidential – Outside Counsel Eyes Only