# Exhibit P



# SUBPOENA DUCES TECUM

| 1. TO | 2. FROM |
|---|---|
| Syngenta Crop Protection, LLC<br>410 Swing Rd<br>Greensboro, NC 27409<br>ATTN: Alan Nadel<br>Senior Litigation Counsel | **UNITED STATES OF AMERICA**<br>**FEDERAL TRADE COMMISSION**<br><br>2a. MATTER NUMBER   FTC File No. 191-0031 |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described in Item 6.

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>400 Seventh Street, SW<br>Room CC-5540A<br>Washington, DC  20024 | No appearance required<br><br>5. DATE AND TIME OF HEARING OR DEPOSITION<br>June 30, 2020 at 5:00pm |

6. SUBJECT OF INVESTIGATION

See attached Resolution, FTC File No. 191-0031

7. RECORDS YOU MUST BRING WITH YOU

See attached Definitions, Instructions & Specifications

| 8. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 9. COMMISSION COUNSEL |
|---|---|
| Geoffrey Green, Assistant Director<br>Mark Woodward, Deputy Assistant Director | Kent Cox<br>Federal Trade Commission<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br>(202)-326-2058 or kcox@ftc.gov |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 5/26/2020 | *Christine Wilson* |

## INSTRUCTIONS AND NOTICES

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply. This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

## PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service, or, if the return date is less than 20 days after service, prior to the return date. The original and twelve copies of the petition must be filed with the Secretary of the Federal Trade Commission, and one copy should be sent to the Commission Counsel named in Item 8.

## YOUR RIGHTS TO REGULATORY ENFORCEMENT FAIRNESS

The FTC has a longstanding commitment to a fair regulatory enforcement environment. If you are a small business (under Small Business Administration standards), you have a right to contact the Small Business Administration's National Ombudsman at 1-888-REGFAIR (1-888-734-3247) or www.sba.gov/ombudsman regarding the fairness of the compliance and enforcement activities of the agency. You should understand, however, that the National Ombudsman cannot change, stop, or delay a federal agency enforcement action.

The FTC strictly forbids retaliatory acts by its employees, and you will not be penalized for expressing a concern about these activities.

## TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel. Witness travelers can contact the FTC travel office for guidance at (202) 326-3299 or travel@ftc.gov.  PLEASE NOTE:  Reimbursement for necessary transportation, lodging, and per diem expenses cannot exceed the maximum allowed for such expenses by an employee of the federal government.

A copy of the Commission's Rules of Practice is available online at http://bit.ly/FTCsRulesofPractice. Paper copies are available upon request.

FTC Form **68-B** (rev. 09/19)

**RETURN OF SERVICE**

*I hereby certify that a duplicate original of the within subpoena was duly served:*   (check the method used)

○  *in person.*

○  *by registered mail.*

○  *by leaving copy at principal office or place of business, to wit:*

_____

_____

_____

_____

*on the person named herein on:*

_____
(Month, day, and year)

_____
(Name of person making service)

_____
(Official title)

**SUBPOENA *DUCES TECUM* ISSUED TO**

**SYNGENTA CROP PROTECTION, LLC**

**File No. 191-0031**

**SPECIFICATIONS**

1.  Submit one copy of each organizational chart and personnel directory for the Company as a whole and for each of the Company's parents, subsidiaries, facilities, or divisions engaged in any activity Relating to the production or sale of any Crop Protection Product.

2.  Submit a current Data Map for the Company.

3.  Submit the final (or the most current) draft of all regularly prepared strategy, business, marketing, and financial Documents Relating to any Crop Protection Product, including, but not limited to, all:

    a.  financial and profit and loss statements, budgets, cost center and profitability reports for the Company as a whole and for each of the Company's subsidiaries, research, manufacturing, or distribution facilities, sales offices, and divisions engaged in any activity Relating to any Crop Protection Product;

    b.  Documents Relating to strategic planning for the Company as a whole and for each of the Company's subsidiaries, research, manufacturing, or distribution facilities, sales offices, and divisions engaged in any activity Relating to any Crop Protection Product, including, but not limited to, strategy reviews, business reviews, and similar Documents;

    c.  Documents submitted to the Board of Directors, Executive Committee, or individual officers or directors of the Company Relating to Crop Protection Products; and

    d.  annual or multi-year marketing plans, business plans, strategic plans, and forecasts for future sales Relating to any Crop Protection Product.

4.  Submit all Documents Relating to the Company's Plans Relating to any Relevant Product or Related Product, including, but not limited to, all:

    a.  business Plans, short-term and long-range strategies and objectives, expansion or retrenchment plans, and research and development efforts;

    b.  presentations and submissions to management committees, executive committees, and boards of directors; and

1

c. budgets and financial projections.

5. Submit all Documents Relating to any actual or contemplated Conditional Pricing that includes any Relevant Product, including, but not limited to, all:

a. Documents that set forth, discuss, or describe the terms of any such Conditional Pricing;

b. Documents Relating to the actual, expected, contemplated, or potential effects of any such Conditional Pricing on competition, prices (including, but not limited to, prices to distributors, retailers, and growers), performance, output, revenues, and costs of any Relevant Product or Related Service;

c. Documents Relating to the effects of any such Conditional Pricing on the sale of Relevant Products in comparison to the sale of Relevant Products in geographies or time periods without Conditional Pricing;

d. Documents Relating to the negotiation of any such Conditional Pricing; and

e. Documents Relating to any Communication with any actual or potential Customer or Competitor Relating to any such Conditional Pricing.

6. Submit all offers to and Agreements with any Customer, distributor, retailer, or grower that include or impact (i) terms and conditions of sale of any Relevant Product or Related Service; or (ii) rebates or discounts associated with the purchase of any Relevant Product or Related Service, including, but not limited to, all:

a. Distributorship and Marketing Services Agreements;

b. Local Partner Investment Offers;

c. Marketing Agreements;

d. Distributor Marketing Incentive Offers; and

e. Early Purchase Cash Discount Offers.

7. As to any Conditional Pricing that includes any Relevant Product, submit all Documents, regardless of date, Relating to:

a. the origin, purpose, objective, or intent of such Conditional Pricing;

b. any disputes with any actual or potential Customer concerning eligibility, receipt of a Benefit, or violation of a term; or

2

c. any grant of an exception to a market share or volume requirement or a waiver of a purchase condition that results in the grant or payment of a Benefit to a Customer or any other Person who would not otherwise be eligible for such Benefit.

8. Submit all Documents Relating to the calculation or award of any Benefit based on purchases or sales of any Relevant Product or Related Product pursuant to Conditional Pricing, including, but not limited to:

   a. all Communications with any Customer, distributor, retailer, other reseller, or grower Relating to the calculation or award of any Benefit under Conditional Pricing;

   b. all Documents Relating to the Company's record-keeping for and accounting treatment of rebates, discounts or Benefits associated with Conditional Pricing; and

   c. all internal Company Communications Relating to any dispute concerning any Person's eligibility for a Benefit or the amount of any Benefit under Conditional Pricing.

9. Submit all marketing materials Relating to each Relevant Product, including all current selling aids and promotional materials.

10. Submit all documents Relating to competition in the manufacture or sale of any Relevant Product, including, but not limited to, market studies, forecasts and surveys, and all other Documents Relating to:

    a. the sales, market shares, and business performance of the Company or any of its Competitors;

    b. the effect of white label products and "fighting brands" on the sale of Relevant Products;

    c. supply and demand conditions;

    d. Crop Protection Products not produced or sold by You and that have a chemical composition that differs from Your Relevant Products, but that are used on the same crops or that target the same pests; or

    e. attempts to win Customers from other Persons and losses of Customers to other Persons.

11. Submit all Documents Relating to competition from generic versions of Relevant Products, including, but not limited to, all Documents Relating to:

3

a.  actual or projected effects of generic competition on the sale of Relevant Products, including effects on prices and quantities sold;

b.  any plans or efforts by any purchaser of Crop Protection Products to introduce or promote competition from generic versions of Relevant Products; or

c.  actions the Company has taken or contemplated to respond to competition from generic versions of Relevant Products.

12. Submit all Documents Relating to the competitive position or relative strength and weakness (including any SWOT matrices) of the Company and each of its actual or potential Competitors in the production and sale of Crop Protection Products.

13. Submit all Documents Relating to the competitive position or relative strengths and weaknesses of distributors or retailers in the sale of Crop Protection Products, including, but not limited to, Documents relating to market share, competitive position, market studies, plans, forecasts, surveys, actual and likely entry or exit, and supply and demand conditions respecting any distributor or retailer.

14. Submit all Documents Relating to allegations that the Company or any other Person has engaged in anticompetitive or unfair conduct in the manufacture or sale of Crop Protection Products, including, but not limited to, complaints from actual or potential Customers or Competitors; threatened, pending, or completed lawsuits; and federal and state investigations.

15. Submit all Documents Relating to the Company's or any other Person's price lists, pricing plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, and pricing decisions Relating to any Relevant Product, including, but not limited to, studies, analyses, or assessments of the pricing or profitability of any Relevant Product produced or sold by the Company.

16. Submit all Documents prepared, created, or distributed by any person other than the Company that reports sales statistics, data, or market analysis for any Relevant Product, including, but not limited to, documents prepared by Electronic Data Interchange, AgData, Fanwood, and Kynetec.

17. For each Relevant Product, submit all Documents Relating to barriers to entry or expansion in the manufacture, distribution, or sale, including, but not limited to, all Documents Relating to current and future requirements for:

a.  research and development, planning and design;

b.  production, distribution systems (including any requirements for multi-area, multi-plant, multi-product, or vertically integrated operations or distribution);

4

c.  patents, licenses, registrations, and any necessary governmental and Customer approvals, (including the cost and time necessary to obtain);

d.  sales, marketing, and service activities; and

e.  any other factors required to attain any available cost savings or other efficiencies necessary to compete profitably or efficiently.

18.  Submit a complete Data Set for each electronic database used or maintained by the Company in connection with any Relevant Product and Related Product that contains information concerning the Company's (i) products; (ii) facilities; (iii) production; (iv) shipments; (v) bids or sales proposals; (vi) sales; (vii) prices; (viii) margins; (ix) costs, including, but not limited to, production costs, distribution costs, standard costs, expected costs, and opportunity costs; (x) patents or other intellectual property; (xi) research or development projects; or (xii) customers. If not already captured in the above Data Set(s), submit complete Data Sets for each electronic database that includes:

a.  transaction-level Sales data by revenue and unit volume, including, but not limited to, Customer name, Customer address, product code, product description, and transaction date;

b.  discount requests or approvals (including rebates and other promotions);

c.  sales personnel call reports;

d.  meeting competition requests or approvals;

e.  win/loss reports;

f.  prices, quotes, estimates, or bids submitted to any Customer;

g.  the results of any bid or quote submitted to any Customer or prospective Customer;

h.  Customer relationships; and

i.  for each Data Set provided in response to this Specification, provide a data dictionary that includes:

(i)  a list of field names and a definition for each field contained in the Data Set;

(ii)  the meaning of each code that appears as a field value in the Data Set; and

(iii)  the primary key in the Data Set or table that defines a unique observation.

For each Data Set submitted, identify the (i) database type, i.e., flat, relational, or

5

enterprise; (ii) fields, query forms, and reports available or maintained; (iii) software product(s) or platform(s) required to access the database. The Company should consult Instructions H.1 and L regarding the inclusion of Sensitive Personally Identifiable Information or Sensitive Health Information in a Data Set(s) responsive to this specification.

19.   Submit all Documents Relating to any complaint, concern, or negative report about the quality, performance, or availability of any Relevant Product produced, offered, or sold by the Company.

You may omit from Your response to this specification complaints or Communications regarding safety or environmental impacts of the active ingredients that are not uniquely focused on Your Relevant Products.

20.   Submit all Documents Relating to any actual, threatened, or anticipated stoppage, reduction, or delay in the Company's supply of any Relevant Product or Related Product, or any actual, threatened, or anticipated refusal to sell or take orders for any Relevant Product or Related Product, to any current or former Customer, including documents sufficient to show:

a.   the date(s) on which the Company stopped, reduced, or delayed supply;

b.   the date(s) on which the Company Communicated to the Customer that it may stop, reduce, or delay supply;

c.   the date(s), if applicable, on which the Company resumed full supply;

d.   the reason(s) the Company stopped, reduced, or delayed supply; and

e.   the reason(s) the Company Communicated to the Customer that it may stop, reduce or delay supply.

The Company need not submit Documents relating solely to instances in which the Company stopped, reduced, or delayed supply, or Communicated to a Customer that it may stop, reduce, or delay supply, solely because of a Customer's non-payment or delinquent payment for any Relevant Product.

21.   Submit Documents sufficient to show the Company's policies and procedures Relating to the retention and destruction of Documents.

22.   Identify the person(s) responsible for preparing the response to this subpoena. For each Specification, identify the individual(s) who assisted in the preparation of the response and list the persons (identified by name and corporate title or job description) whose files were searched.

Case 1:22-cv-00828-TDS-JEP   Document 219-17   Filed 06/28/24   Page 9 of 27

# **DEFINITIONS**

For the purposes of this Subpoena, including the Instructions, the following definitions apply:

A. "**Company**," "**the Company**," "**Syngenta**," "**You**," or "**Your**" shall mean **Syngenta Crop Protection, LLC,** and its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents (including, but not limited to, Syngenta AG and China National Chemical Corporation), predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures.

B. "**Active ingredient**" or "**AI**" shall mean an ingredient, chemical, or molecule in a pesticide product that kills, controls, prevents, mitigates, or repels pests.

C. "**Agreement**" or "**Contract**" shall mean any oral, written, or implied contract, arrangement, understanding, or plan, whether formal or informal, between two or more Persons, together with all modifications or amendments thereto.

D. "**And**," as well as "**Or**" shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any Specification all information that otherwise might be construed to be outside the scope of the Specification.

E. "**Any**" shall be construed to include "all," and "**All**" shall be construed to include "any."

F. "**Benefit**" shall mean any price or non-price benefit or consideration, including, but not limited to, price discounts; rebates; supply preferences or assurances; and technical or engineering support.

G. "**Communication**" or "**Communicate**" shall refer to any transmittal, exchange, transfer, or dissemination of information, regardless of the means by which it is accomplished, and includes all communications, whether written or oral, and all discussions, meetings, telephone communications, text messages, instant messenger messages, or email messages.

H. "**Competitor**" shall mean any Person, other than Company, that produces, manufactures, formulates, or imports any Crop Protection Product for sale within the United States, and includes both generic pesticide companies and branded pesticide companies.

7

I. "**Conditional Pricing** " shall mean any offer, Agreement, or program in which the price (inclusive of any rebates and discounts) or supply of any product, or any combination of products, is explicitly or effectively contingent upon the purchase or sale of a specified volume or share of a Customer's total purchases or sales of any product or combination of any products in any geographic area. Conditional Pricing includes, but is not limited to, any offer, Agreement, or program that includes an exclusivity or loyalty requirement, market share discount, loyalty discount, bundled discount, volume discount, or volume commitment.

J. "**Crop Protection Product**" shall mean any pesticide product, formulated product, or technical Active Ingredient, including, but not limited to, any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment or plant growth regulator. Crop Protection Product includes, but is not limited to, each Relevant Product.

K. "**Customer**" shall mean any Person that purchases or has purchased any Crop Protection Product directly from You.

L. "**Data Map**" shall mean an organized list, schematic, diagram, or other representation sufficient to show where and how the Company stores all physical and electronic information in its possession, custody, or control, including, but not limited to, information systems (*e.g.*, electronic-mail messages, voice-mail messages, communication logs, enterprise content management, instant messaging, database applications); locations where information is stored (*e.g.*, physical Company facility, third-party vendor location, cloud); and the physical and logical network topology of the Company's computer systems.

M. "**Data Set**" means data held by, or accessible to, the Company in the ordinary course of business that is provided by the Company to respond to any Specification in this Subpoena, in the form and with the accompanying information called for in Instruction E.

N. "**Documents**" shall mean all written, recorded, transcribed, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated, or made, including, but not limited to, Communications, analyses, letters, memoranda, reports, contracts, books, accounts, statements, studies, surveys, pamphlets, notes, charts, maps, plats, tabulations, graphs, tapes, data sheets, data processing cards, printouts, net sites, microfilm, indices, calendar or diary entries, manuals, guides, outlines, abstracts, histories, agendas, minutes or records of meetings, conferences, electronic mail, text messages, instant messages via chat programs (such as Slack, Cisco Jabber, Microsoft Teams, Google Hangouts Chat, or Cisco WebEx Teams) or mobile applications (such as

8

WhatsApp, iMessage, Signal, Telegram, or Zoom), voice messages, recordings of meetings, telephone, or other conversations or Communications, as well as films, tapes, or slides, and all other data compilations in the possession, custody, or control of the Company, or to which the Company has access.

The term "Document" includes the complete original document (or a copy thereof if the original is not available), all drafts (whether or not they resulted in a final document), and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original.

The term "other data compilations" includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all other material necessary to use or interpret such data compilations as set out in Attachment 1.2.

If the name of the Person or Persons who prepared, reviewed, or received the document and the date of preparation, review, or receipt are not clear on the face of any document, such information should be provided separately.

Unless otherwise specified, the term "Document" excludes bills of lading, invoices, purchase orders, customs declarations, and other similar documents of a purely transactional nature.

Documents shall be produced in accordance with the instructions set out in Attachment 1.2.

O. "**Documents sufficient to show**" or "**Documents sufficient to identify**" shall mean both Documents that are necessary and Documents that are sufficient to provide the specified information.

P. **Each**" shall be construed to include "every," and "**Every**" shall be construed to include "each."

Q. "**Person**" includes the Company, and shall mean any natural person, corporate entity, partnership, association, joint venture, governmental entity, trust, or any other organization or entity engaged in commerce.

R. "**Plans**" means tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

S. "**Relate(s) to**" or "**Relating to**" shall mean, in whole or in part, constituting, containing, concerning, embodying, reflecting, discussing, explaining, describing, analyzing, identifying, stating, reporting, forecasting, referring to, dealing with, or in any way pertaining to.

9

T.    "**Related Service**" shall mean any technical, promotional, marketing, consulting, physical storage, distribution, or other support service Relating to a Relevant Product that is offered or provided to a Customer, distributor, retailer, or grower.

U.    "**Related Product**" shall mean any product that consists of, includes, or contains an Active Ingredient that is expressly named in Conditional Pricing, the purchase or sale of which affects the extent or value of any Benefit conferred by Company when a Customer purchases azoxystrobin, mesotrione, or metolachlor (including s-metolachlor (s-moc)).

V.    "**Relevant Product**" shall mean any product that consists of, includes, or contains any of the following active ingredients: azoxystrobin, mesotrione, or metolachlor (including s-metolachlor (s-moc)).

W.    "**Technology Assisted Review**" shall mean any process that utilizes a computer algorithm to limit the number of potentially responsive Documents subject to manual review. A keyword research of Documents with no further automated processing is not a Technology Assisted Review.

X.    The singular form of a noun or pronoun includes its plural form, and vice versa; and the present tense of a verb includes the past tense, and vice versa.

Case 1:22-cv-00828-TDS-JEP   Document 219-17   Filed 06/28/24   Page 13 of 27

# INSTRUCTIONS

The response to this Subpoena shall be submitted in the following manner:

A.  Unless otherwise indicated, each specification in this Subpoena covers Documents and information dated, generated, received, or in effect from January 1, 2015, to thirty days before the day when the Company provides the Commission with its final Document submission, the executed certification form, and other compliance-related Documents described in Instruction M. The Company shall preserve Documents responsive to this Subpoena created or received after the issuance of this Subpoena until a Commission representative notifies the Company that the investigation has ended.

B.  Documents supplied in response to one specification or subpart need not be supplied again in response to a subsequent specification or subpart. However, the responses shall be clearly marked as to which specification(s) the Document relates.

C.  If You believe that this Subpoena's specifications can be narrowed consistent with the Commission's need for information, we encourage You to discuss possible modifications with a Commission representative at the earliest possible date. Note that an Assistant Director of the Bureau of Competition must agree in writing to any modifications to this Subpoena. All inquiries about this Subpoena and modification requests should be directed to attorney **Kent Cox** at **202-326-2058**, or at **kcox@ftc.gov**.

D.  Except for privileged material, the Company shall produce each responsive Document in its entirety by including all attachments and all pages, regardless of whether they directly relate to the specified subject matter. The Company shall submit any appendix, table, or other attachment by either attaching it to the responsive Document or clearly marking it to indicate the responsive Document to which it corresponds. Except for privileged material, the Company shall not redact, mask, cut, expunge, edit, or delete any responsive Document or portion thereof in any manner.

E.  Submit each Data Set as a separate Microsoft Excel spreadsheet or delimited text formats, with all underlying data unredacted and all underlying formulas and algorithms intact. All terms, allocations, calculations, and methods of calculation must be clearly explained and defined; costs must be disaggregated to the lowest level of detail possible and fully allocated. Further, for each Data Set, identify the specific Company databases from which these data were obtained and provide (1) a list of field names and a definition for each field contained in the Data Set; (2) the meaning of each code that appears as a field value in the Data Set; (3) the primary key in the Data Set or table that defines a unique observation; and (4) any programming code used to calculate any of the data provided.

    **All data provided in response to any Specification must otherwise be submitted in**

11

**an electronic format agreed upon by a Commission representative in writing prior to the submission in order to assure that the FTC has the capability of reading and using the data.**

F.    Compliance with this Subpoena requires a search of all Documents in the possession, custody, or control of the Company including, but not limited to, those Documents held by any of the Company's officers, directors, employees, agents, representatives, or legal counsel, whether or not such Documents are on the premises of the Company. If any person is unwilling to have his or her files searched, or is unwilling to produce responsive Documents, the Company must provide the Commission with the following information as to each such person: his or her name, address, telephone number, and relationship to the Company. In addition to hard copy Documents, the search must include all of the Company's Electronically Stored Information.

G.    Form of Production. The Company shall submit all Documents as instructed in **Attachment 1.2**.

H.    All Documents responsive to this Subpoena:

    1.    Shall be produced in complete form, unredacted unless privileged or containing Sensitive Personally Identifiable Information or Sensitive Health Information, and in the order in which they appear in the Company's files;

    2.    Shall be marked on each page with corporate identification and consecutive Document control numbers when produced in image format;

    3.    Shall be produced in color where necessary to interpret the Document (if the coloring of any Document communicates any substantive information, or if black and white photocopying or conversion to TIFF format of any Document (e.g., a chart or graph) makes any substantive information contained in the Document unintelligible, the Company must submit the original Document, a like-color photocopy, or a JPEG format image);

    4.    Shall be accompanied by an affidavit of an officer of the Company stating that the copies are true, correct, and complete copies of the original Documents; and

    5.    Shall be accompanied by an index that identifies (i) the name of each person from whom responsive Documents are submitted; and (ii) the corresponding consecutive Document control number(s) used to identify that person's Documents. The Commission representative will provide a sample index upon request.

I.    If the Company withholds any responsive Document or masks or redacts any portion of any responsive Document based on a claim of privilege or work-product immunity, the

Company must provide the Commission with a log describing the privilege claim and all facts supporting the claim sufficient to comply with Federal Trade Commission Rule of Practice § 2.11. 16 C.F.R. § 2.11.

For each Document withheld, masked, or redacted, the log shall list the following: (a) specific grounds for claim of privilege or immunity, (b) type of Document, (c) title, (d) author(s), (e) date, (f) addressees and recipients of the original Document or any copy thereof (including persons "cc'd" or "blind cc'd"), (g) a description of the subject matter, with sufficient detail to assess the claim of privilege, (h) a description identifying each attachment to the Document, (i) the size or page length of the Document, (j) the relevant specification(s), and (k) the Document control number. Additionally, for each Document withheld under a claim of attorney work-product immunity, the log will list: (l) whether the Document was prepared in anticipation of litigation or for trial, (m) the other parties or expected other parties to the litigation and whether that party is adverse, (n) case number, (o) complaint filing date, and (p) court name.

For each person listed, the log will include the person's full name, address, job title, and employer or firm; for each non-Company recipient, include such additional description sufficient to show that individual's need to know the information contained in the Document. Denote all attorneys with an asterisk ("*").

**<u>The privilege log shall be submitted as a Microsoft Excel or other native file.</u>**

An attachment to a Document must be entitled to privilege in its own right. If an attachment is responsive and not entitled to privilege in its own right, it must be provided. The Company must provide all non-privileged portions of any responsive Document for which a claim of privilege is asserted, noting where redactions in the Document have been made. With respect to Documents withheld on grounds of privilege that discuss or describe any U.S. or foreign patent, each individual patent identified in the withheld Document must be specified by its patent number.

J.  Documents written in a language other than English shall be translated into English, with the English translation attached to the foreign language Document.

K.  Do not destroy or dispose of Documents responsive to this Subpoena, or any other Documents relating to the subject matter of this Subpoena. The destruction or disposal of such Documents during the pendency of this investigation may constitute a felony in violation of 18 U.S.C. § 1505 and 18 U.S.C. § 1512.

L.  Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") prior to discussing the information with a Commission representative. If any Document responsive to a particular specification

13

contains unresponsive Sensitive PII or SHI, redact the unresponsive Sensitive PII or SHI prior to producing the Document. The term "Sensitive PII" means an individual's Social Security Number alone or an individual's name, address or phone number in combination with one or more of the following: date of birth; driver's license number or other state identification number, or a foreign country equivalent; passport number; financial account number; or credit or debit card number. The term "SHI" includes medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

M.    The Company must provide the Commission with a statement identifying any electronic production tools or software packages utilized by the Company in responding to this Subpoena for: keyword searching, Technology Assisted Review, email threading, de-duplication, global de-duplication or near-de-duplication, and

    1.    if the Company utilized keyword search terms to identify Documents and information responsive to this Subpoena, provide a list of the search terms used for each custodian;

    2.    if the Company utilized Technology Assisted Review software;

        (i)    describe the collection methodology, including: how the software was utilized to identify responsive Documents; the process the Company utilized to identify and validate the seed set Documents subject to manual review; the total number of Documents reviewed manually; the total number of Documents determined nonresponsive without manual review; the process the Company used to determine and validate the accuracy of the automatic determinations of responsiveness and nonresponsiveness; how the Company handled exceptions ("uncategorized Documents"); and if the Company's Documents include foreign language Documents, whether reviewed manually or by some technology-assisted method;

        (ii)    following completion of the Company's Document review process, (a) conduct a manual review of a statistically significant representative sample of those Documents that were collected by the Company but determined, on the basis of Technology Assisted Review and without manual review, to be nonresponsive (or to be insufficiently likely to be responsive to justify manual review); (b) identify and submit Documents determined to be responsive through such manual review; and (c) describe the process used to conduct such sampling, including the total number of Documents in the pool that was sampled, the method used to derive a random sample, the total number of

14

Documents manually reviewed, and the responsiveness and privilege rates resulting from the manual review; and

(iii) provide all statistical analyses utilized or generated by the Company or its agents related to the precision, recall, accuracy, validation, or quality of its Document production in response to this Subpoena; and identify the person(s) able to testify on behalf of the Company about information known or reasonably available to the organization, relating to its response to this specification;

3. if the Company intends to utilize any de-duplication or email threading software or services when collecting or reviewing information that is stored in the Company's computer systems or electronic storage media in response to this Subpoena, or if the Company's computer systems contain or utilize such software, the Company must contact a Commission representative to determine, with the assistance of the appropriate government technical officials, whether and in what manner the Company may use such software or services when producing materials in response to this Subpoena.

N. Compliance with this Subpoena requires the Company to submit to the Commission, on or before the due dates indicated, all responsive Documents, data, and information, and the following:

1. the attached certification form, executed by the official supervising compliance with this Subpoena, and notarized;

2. Privilege Log conforming to Instruction I, if any responsive Documents are withheld or redacted;

3. List of any persons (by name, address, telephone number, and relationship to the Company) whose files have not been searched according to Instruction H;

4. For each Document submitted, information sufficient to identify the name of the person from whose files the Document was obtained (Document custodian), according to Instruction H.5; and

5. Statement of the procedures used by the Company to comply with this Subpoena, according to Instruction M.

O. Company shall contact **Kent Cox** at **202-326-2058**, or at **kcox@ftc.gov**, to obtain instructions on where and how to produce responsive materials.

15

## **CERTIFICATION**[1]

This response to the subpoena issued on _____, 2020 by the Federal Trade Commission to Syngenta Crop Protection, LLC (the "Company"), together with any and all appendices and attachments thereto, was prepared and assembled under my supervision in accordance with instructions issued by the Commission.

I hereby certify that all of the Documents and information required by the subpoena demand that are in the possession, custody, or control of the Company have been submitted to a designated Commission custodian.

If a Document responsive to the subpoena has not been submitted, the objection to its submission and the reasons for the objection have been stated.

The information is, to the best of my knowledge, true, correct, and complete. Where copies rather than original Documents have been submitted, the copies are true, correct, and complete. If the Commission uses such copies in any court or administrative proceeding, the Company will not object based on the Commission not offering the original Document.

I declare under penalty of perjury that the foregoing is true and correct.


_____
(Signature)

_____
(Type or Print Name and Title)


Subscribed and sworn to before me at the City of _____, State of _____, this ____ day of _____, 2020.


_____
(Notary Public)

---

[1] In the event that more than one person is responsible for complying with this subpoena, the certificate shall identify the Documents for which each certifying individual was responsible. In place of a sworn statement, the certificate may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

Case 1:22-cv-00828-TDS-JEP   Document 219-17   Filed 06/28/24   Page 19 of 27

**Attachment 1.2 – Format of Production**

1)    Form of Production:  The Company shall submit documents as instructed below absent written consent.

    (a)    Documents stored in electronic or hard copy formats in the ordinary course of business shall be submitted in the following electronic format provided that such copies are true, correct, and complete copies of the original documents:

        (i)    Submit Microsoft Excel, Access, and PowerPoint files in native format with extracted text and metadata.

        (ii)    Submit emails in TIFF (Group IV) format with extracted text and the following metadata and information:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the email. |
| Bates End | Bates number of the last page of the email. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of the person from whom the email was obtained. |
| Email BCC | Names of person(s) blind copied on the email. |
| Email CC | Names of person(s) copied on the email. |
| Email Date Received | Date the email was received.  [MM/DD/YYYY] |

17

| Metadata/Document Information | Description |
| --- | --- |
| Email Date Sent | Date the email was sent. [MM/DD/YYYY] |
| Email From | Names of the person who authored the email. |
| Email Message ID | Microsoft Outlook Message ID or similar value in other message systems. |
| Email Subject | Subject line of the email. |
| Email Time Received | Time email was received. [HH:MM:SS AM/PM] |
| Email To | Recipients(s) of the email. |
| Email Time Sent | Time email was sent. [HH:MM:SS AM/PM] |
| Page count | Number of pages in record |
| File size | Size of document in KB |
| File Extension | File extension type (e.g., docx, xlsx) |
| Folder | File path/folder location of email. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |

(iii)     Submit email attachments other than those described in subpart (a)(i) in
          TIFF (Group IV) format.  For all email attachments, provide extracted text

18

and the following metadata and information as applicable:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of person from whom the file was obtained. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY] |
| Page count | Number of pages in record |
| File size | Size of document in KB |
| File Extension | File extension type (e.g., docx, xlsx) |
| Filename with extension | Name of the original native file with file extension. |

19

| Metadata/Document Information | Description |
| --- | --- |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Native Link | Relative file path to submitted native or near native files.<br><br>Example: \NATIVES\001\FTC0003090.xls |
| Parent ID | Document ID or beginning Bates number of the parent email. |
| Text Link | Relative path to submitted text file.<br>Example: \TEXT\001\FTC0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

(iv) Submit all other electronic documents, other than those described in subpart (a)(i), in TIFF (Group IV) format accompanied by extracted text and the following metadata and information:

| Metadata/Document Information | Description |
| --- | --- |
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |

20

| Metadata/Document Information | Description |
|---|---|
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of the original custodian of the file. |
| Date Created | Date the file was created.  [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY HH:MM:SS AM/PM] |
| Page count | Number of pages in record |
| File size | Size of document in KB |
| File Extension | File extension type (e.g., docx, xlsx) |
| Filename with extension | Name of the original native file with file extension. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| File Path | File path of the file as it resided in its original environment. |

21

| Metadata/Document Information | Description |
|---|---|
| Native Link | Relative path to submitted native or near native files.<br><br>Example: \NATIVES\001\FTC0003090.xls |
| Text Link | Relative path to submitted text file.<br>Example: \TEXT\001\FTC-0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

(v)    Submit documents stored in hard copy in TIFF (Group IV) format accomplished by OCR with the following information:

| Metadata/Document Information | Description |
|---|---|
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Bates number of the last page of the document. |
| Custodian | Name of person from whom the file was obtained. |

(vi)    Submit redacted documents in TIFF (Group IV) format accompanied by OCR with the metadata and information required by relevant document type in subparts (a)(i) through (a)(v) above. For example, if the redacted file was originally an attachment to an email, provide the metadata and information specified in subpart (a)(iii) above. Additionally, please provide a basis for each privilege claim as detailed in Instruction I(6).

(b)    Submit data compilations in electronic format, specifically Microsoft Excel spreadsheets or delimited text formats, with all underlying data un-redacted and all underlying formulas and algorithms intact. Submit data separately from document productions.

(c)     Produce electronic file and TIFF submissions as follows:

  (i)     For productions over 10 gigabytes, use hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in USB 2.0 or 3.0 external enclosure.

  (ii)    For productions under 10 gigabytes, CD-ROM (CD-R, CD-RW) optical disks and DVD-ROM (DVD+R, DVD+RW) optical disks for Windows-compatible personal computers, and USB 2.0 Flash Drives are acceptable storage formats.

  (iii)   All documents produced in electronic format shall be scanned for and free of viruses prior to submission.  The Commission will return any infected media for replacement, which may affect the timing of the Company's compliance with this Request.

  (iv)    Encryption of productions using NIST FIPS-Compliant cryptographic hardware or software modules, with passwords sent under separate cover, is strongly encouraged.

(d)     Each production shall be submitted with a transmittal letter that includes the FTC matter number; production volume name; encryption method/software used; list of custodians and document identification number range for each; total number of documents; and a list of load file fields in the order in which they are organized in the load file.

(e)     If the Company intends to utilize any de-duplication or email threading software or services when collecting or reviewing information that is stored in the Company's computer systems or electronic storage media, or if the Company's computer systems contain or utilize such software, the Company must contact a Commission representative to determine, with the assistance of the appropriate government technical officials, whether and in what manner the Company may use such software or services when producing materials in response to this Request.

Case 1:22-cv-00828-TDS-JEP   Document 219-17   Filed 06/28/24   Page 26 of 27

# UNITED STATES OF AMERICA
## FEDERAL TRADE COMMISSION

**COMMISSIONERS:**      **Joseph J. Simons, Chairman**
**Noah Joshua Phillips**
**Rohit Chopra**
**Rebecca Kelly Slaughter**
**Christine S. Wilson**

## RESOLUTION AUTHORIZING USE OF
## <u>COMPULSORY PROCESS IN NONPUBLIC INVESTIGATION</u>

**File No.  191 0031**

Nature and Scope of Investigation:

To determine whether Corteva, Inc., Syngenta Crop Protection, LLC, any of their affiliates, any other producer of pesticides, or any other person has engaged or is engaging in any violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended, or Section 3 of the Clayton Act, 15 U.S.C. § 14, through the use of exclusive dealing arrangements, loyalty rebates, bundled pricing contracts, or related conduct affecting the use, distribution, or sale of pesticides.

The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10 and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, and 57b-1, as amended; Section 11 of the Clayton Act, 15 U.S.C. § 21, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1., *et. seq.* and supplements thereto.

By direction of the Commission.

April J. Tabor
Acting Secretary

**Dated:  April 27, 2020**