# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN, | Case No. 1:22-cv-00828-TDS-JEP |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY OF DEFENDANT CORTEVA, INC.** |
| v. | **[TEMPORARY PUBLIC REDACTED VERSION]** |
| SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC., | |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT PROCEDURAL BACKGROUND .................................................. 2

ARGUMENT ....................................................................................................... 3

I.     PLAINTIFFS ARE ENTITLED TO THE REQUESTED DATA ............................. 3

II.    CORTEVA HAS FAILED TO SUBSTANTIATE ANY UNDUE
BURDEN FOR PRODUCING THE REQUESTED DATA .................................... 9

CONCLUSION ................................................................................................... 11

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Bank of Mongolia v. M & P Global Financial Svcs.*,
    258 F.R.D. 514 (S.D. Fla. 2009) ............................................................... 10

*Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*,
    246 F.R.D. 522 (S.D. W. Va. 2007) ......................................................... 10

*Hall v. Sullivan*,
    231 F.R.D. 468 (D. Md. 2005) ................................................................. 10

*Kinetic Concepts, Inc. v. ConvaTec Inc.*,
    268 F.R.D. 226 (M.D.N.C. 2010) ......................................................... 3, 9

*N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*,
    666 F.2d 50 (4th Cir. 1981) ....................................................................... 3

*In re Peanut Farmers Antitrust Litig.*,
    No. 2:19-cv-00463, 2020 WL 9216019 (E.D. Va. July 24, 2020) ........................... 4

*In re Plastics Additives Antitrust Litig.*,
    MDL No. 1684, 2009 WL 10741541 (E.D. Pa. Oct. 29, 2009) ............................. 5

*In re Polyester Staple Antitrust Litig.*,
    MDL No. 3:03CV1516, 2007 WL 2111380 (W.D.N.C. July 19, 2007) ................. 5

*In re Rail Freight Surcharge Antitrust Litig.*,
    292 F. Supp. 3d 14 (D.D.C. 2017) ............................................................. 8

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    335 F.R.D. 1 (E.D.N.Y. 2020) ................................................................... 5

*Syngenta Crop Protection, LLC v. Willowood, LLC*,
    1:15-cv-274, 2016 WL 6783691 (M.D.N.C. Oct. 6, 2016) ................................. 3, 9

## Rules

Fed. R. Civ. P. 26(b)(1) ........................................................................................ 3

Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015) ................................ 10

Fed. R. Civ. P. 34(b)(2)(B) ................................................................................ 10

## Other Authorities

Orley C. Ashenfelter, Daniel Hosken & Matthew Weinberg, *Generating Evidence To Guide Merger Enforcement* 8–9 (Nat'l Bureau of Econ. Rsch., Working Paper No. 14,798, 2009) ............................................................................ 5

Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ................................ 4, 8

## PRELIMINARY STATEMENT

Plaintiffs challenge Corteva's unlawful loyalty programs for agricultural pesticides, which Corteva and its predecessors have wielded for many years to maintain monopoly shares and profits, to keep prices to farmers high, and to exclude smaller competitors. Corteva's loyalty programs offer payments to its distributors conditional on such distributors limiting their purchases of particular pesticide active ingredients ("AIs") from generic competitors—that is, all significant distributors must purchase very high shares only from Corteva. Three of those AIs (acetochlor, oxamyl, and rimsulfuron) are specifically identified and addressed in the Complaint, but over the years Corteva has included in its loyalty program (and it currently includes) many more.

To support their claims, Plaintiffs seek from Corteva historical, product data of the kind routinely produced in complex antitrust cases like this one. In an effort to resolve Corteva's objections, Plaintiffs have agreed to narrow their data requests (RFP Nos. 27–33), but Corteva still refuses to produce the reasonable and necessary set of data that Plaintiffs seek. Plaintiffs therefore move to compel Corteva to produce manufacturing, margin and cost, sales, loyalty calculation, and other data for Corteva's crop protection products containing herbicide or insecticide/nematicide AIs (which include acetochlor, oxamyl, and rimsulfuron, among others) for the period 2012 to present (2010 to present for rimsulfuron). Corteva has not ruled out using any of this data to support its defense, even as it fights to withhold this data from Plaintiffs. Plaintiffs are fully entitled to

discover and use this targeted set of data, which will enable economic case studies and

analyses to support Plaintiffs' affirmative case and to respond to Corteva's defenses.

## RELEVANT PROCEDURAL BACKGROUND

On April 19, 2024, Plaintiffs served on Corteva their First Set of Requests for

Production. As contemplated by the Court's Scheduling Order (Doc. 195 at 6 n.1), those

requests are designed to cover the vast majority of data and documentary material that

Plaintiffs will seek from Corteva in this action. *See* Ex. A (Plaintiffs' First Set of Requests

For Production).[1] Corteva served its Objections and Responses on May 20, 2024. Ex. B.

The parties met and conferred via videoconference on multiple occasions,

including on May 29, June 5, June 19, June 25, June 27, June 28, and July 10, 2024. The

Court's Scheduling Order (Doc. 195) provides that the deadline for parties either to reach

agreement or move to compel on custodians and search protocols is 60 days after service

of Requests for Production. *Id.* at 6. Plaintiffs and Corteva, by mutual agreement,

extended that deadline from June 18 to June 28, 2024, and then to July 12, 2024, to

continue discussions in a further effort to resolve their disputes. The parties have reached

agreement on most issues. But they have now reached impasse on the scope of data

productions that is the subject of this motion.

---

[1] The cited exhibits are attached to the Declaration of Allyson M. Maltas filed
concurrently with this memorandum.

## ARGUMENT

Under Federal Rule of Civil Procedure 26(b)(1), Plaintiffs are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir. 1981) ("relevant evidence" is "discoverable"). As "the party resisting discovery," Corteva "has the burden of persuasion to show that the discovery should not be allowed." *Syngenta Crop Protection, LLC v. Willowood, LLC*, 1:15-cv-274, 2016 WL 6783691, at *1 (M.D.N.C. Oct. 6, 2016); *see Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243–44 (M.D.N.C. 2010) (same). Here, both the time period and the scope of products for which Plaintiffs request data discovery are relevant and proportional to the needs of this case, and Corteva cannot meet its burden to show that they are not.

## I. PLAINTIFFS ARE ENTITLED TO THE REQUESTED DATA

Plaintiffs seek certain data regarding AIs falling in the same broad categories as rimsulfuron, oxamyl, and acetochlor (herbicides and insecticides/nematicides), which Plaintiffs understand include approximately sixty AIs. Corteva's position is that it will produce responsive data for rimsulfuron, acetochlor, and oxamyl only, and that it will produce data only for the period from 2016 to the present. It makes the repeated boilerplate objection that the data requests are "overly burdensome, disproportionate to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence," and that information regarding AIs other than rimsulfuron, acetochlor, and

3

oxamyl is irrelevant to the case. Ex. B (Corteva Resps. & Objs.) Responses to RFP Nos.

28–33; Ex. C (July 8, 2024 Email from Corteva (M. Auerbach) to Plaintiffs (W. Carson)).

And while Corteva has made limited attempts to compromise by offering a few additional

products to its data production,[2] those limited offers do not provide the scope of data that

Plaintiffs need to prosecute this case, and that Corteva concedes it may use to defend it.

The data Plaintiffs seek are relevant and proportional to the needs of the case, and

Corteva's proposal and compromise proposal are insufficient, for at least four reasons.

*First*, sales and other data are vital evidence in an antitrust litigation, particularly one

where unlawful conduct has resulted in higher prices, and where monetary damages are

being sought. *See* Am. Compl. (Doc. 81) ¶¶ 190–202, 227, 248. Under these

circumstances, data about products other than those alleged in the complaint are regularly

used for, among other things, performing comparative (or "benchmark") studies to show

damages or anticompetitive effects, and such studies are commonly accepted by courts.

*See, e.g.*, *In re Peanut Farmers Antitrust Litig.*, No. 2:19-cv-00463, 2020 WL 9216019,

*2 (E.D. Va. July 24, 2020) ("[Benchmarking] analysis has been utilized and is a

generally accepted methodology for computing damages in an antitrust case.") (citation

omitted); *see also* Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 392d

---

[2] Corteva offered, for the purposes of compromise only, to include data related to eight additional active ingredients (chlorimuron, cloransulam, methomyl, methoxyfenozide, spinosad, oxyfluorfen, penoxsulam, and propyzamide) because Corteva had produced this data in the pre-complaint investigation. *See* Ex. C (July 8, 2024 Email from Corteva (M. Auerbach) to Plaintiffs (W. Carson)). While data for these active ingredients is relevant and should be produced, as discussed below that limited production remains insufficient.

(studying markets not affected by anticompetitive restraint relevant to determining harm of restraint).

In this case, Plaintiffs' experts intend to analyze a broad group of AIs (both subject to and not subject to loyalty agreements) to demonstrate anticompetitive effects such as elevated prices or margins or reduced output caused by Corteva's loyalty programs. *Cf. In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 15 (E.D.N.Y. 2020) (finding class-wide impact inquiry satisfied with reference to "the actual prices and quantities that occurred in a similar market that was not affected by defendant's behavior"). During Plaintiffs' pre-complaint investigation, Corteva itself presented advocacy that ███████████████████████████████████████████ ███████████████████████████████████████████████████. Ex. D (Corteva April 1, 2022 White Paper) at 54–55.

The data may also provide benchmarks to calculate the overcharge relevant to damages claims. *See In re Plastics Additives Antitrust Litig.*, MDL No. 1684, 2009 WL 10741541 (E.D. Pa. Oct. 29, 2009) (granting motion to compel transaction data for use as damages benchmark); *see also In re Polyester Staple Antitrust Litig.*, MDL No. 3:03CV1516, 2007 WL 2111380, at *28 (W.D.N.C. July 19, 2007) (noting that benchmarking analyses have been successfully used "numerous" times to show "damages in the antitrust context"). Finding appropriate comparator products can be complex depending on the factors involved. *See, e.g.*, Orley C. Ashenfelter, Daniel Hosken & Matthew Weinberg, *Generating Evidence To Guide Merger Enforcement*, 8–9 (Nat'l

5

Bureau of Econ. Rsch., Working Paper No. 14,798, 2009), https://www.nber.org/system/ files/working_papers/w14798/w14798.pdf (describing factors in an econometric analysis of different products to show price effects). For this reason, having access to a number of potential comparator products permits selection of more appropriate benchmarks. Data regarding Corteva's herbicides and insecticides/nematicides both subject to and not subject to loyalty restrictions provides Plaintiffs' experts the highest likelihood of finding good comparator products, because the three named AIs in Plaintiffs' complaint fall into these two broad categories. Corteva's offer of data for eight additional AIs is inadequate because it is insufficient to ensure the scope of comparators necessary to conduct these analyses. Further, all eight additional AIs ████████████████████████████ ██████████ This is inadequate because any benchmarking analysis would require data from AIs that ████████████████████████████

 ***Second***, AIs other than acetochlor, oxamyl, and rimsulfuron are not merely relevant as comparators or benchmarks—they have been placed at issue by Corteva's own proposed market definition. Corteva has argued that acetochlor, oxamyl, and rimsulfuron compete in relevant antitrust markets that that are broader than the AI-based markets alleged in the Complaint. Corteva Mem. In Supp. of Mot. To Dismiss (Doc. 98) at 13–14. Corteva has not articulated what it believes to be the outer boundaries of the product markets in which to assess the competitive impact of its conduct. But in its motion to dismiss, Corteva non-exclusively compared other herbicides and an insecticide as potential substitutes for the three named AIs. Corteva Mem. In Supp. of Mot. To

6

Dismiss (Doc. 98) at 13–14. And Corteva has expressly sought to reserve the right to propose a market definition that includes AIs for which it is withholding data. *See* Ex. C (July 8, 2024 Email from Corteva (M. Auerbach) to Plaintiffs (W. Carson)) (describing Corteva's offer to provide limited additional data as being made "without prejudice to any position Corteva might take later in the litigation with respect to the proper market definition"). In brief, Plaintiffs should be allowed discovery into additional herbicide and insecticide AIs in order to respond to Corteva's anticipated defense.

**Third**, with regard to time period, Plaintiffs allege that Corteva and its predecessors have operated unlawful market-share-based loyalty programs for many years (*see* Am. Compl. (Doc. 81) ¶ 80), and Corteva's predecessors certainly operated loyalty programs ████████████████ *See* Ex. E (excerpts from Dec. 8, 2010 Dow Presentation: ████████████████████████████) at CX1540-001, 014–016 (█████████████████████████████████████████). Corteva admits—and Corteva's documents confirm—that ████████████████ ████████████████████████████ Ex. F (June 18, 2024 Letter from Corteva (M. Auerbach) to Plaintiffs (W. Carson)) at 2. Corteva documents show that its loyalty programs were also ████████████████████████ ████████████████████ *See* Ex. G (excerpts from ███████████████ ███████████████) at CX1498-002, -083–085 (███████████████████ █████████████████████████████████████████ █████████████████████████████████████████).

Further, active ingredients ████████████████████████████ in Corteva's

loyalty program were ██████████████████████████ *See, e.g.*, Ex. H (███

████████████████████████████████████████████████) at

CX1084-001, -006 (██████████████████████████████████████

████████████████████████████).

Additionally, the effect of generic entry on market dynamics has been recognized

by the Court as relevant to establishing Plaintiffs' market definition (Doc. 160 at 31–32).

Data prior to and after entry will clearly be necessary to perform such market definition

analyses. For rimsulfuron, ██████████████████████████████████████

██████████████████████████████ Ex. I (excerpts from ███████████

████████████████████████) at CX1553-014–015 (██████████████

████████████████████).

Thus, data from that time period is relevant for assessing effects, market

definition, and market power as products transition from lawful monopoly (patent and

regulatory exclusivity) to unlawful monopoly (loyalty programs). *See* Philip E. Areeda &

Herbert Hovenkamp, Antitrust Law ¶ 392d (studying the market before and after

anticompetitive restraint is imposed is relevant to determine harm). Data from other AIs

back until 2012 is also appropriate to allow for effective benchmarking and to control for

other non-loyalty factors that could affect market conditions during that time period. *See*

*In re Rail Freight Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 118 (D.D.C. 2017)

8

("testing only limited sets of data based on short-term periods reduces the variation in the data that is required for the model to generate accurate estimations").

*Finally*, Corteva has access to all of its data, and refuses to commit that its own expert or other advocacy will not rely on data analyses involving AIs other than acetochlor, oxamyl, and rimsulfuron (or the eight AIs in Corteva's compromise offer). Ex. C (July 8, 2024 Email from Corteva (M. Auerbach) to Plaintiffs (W. Carson)). This would enable Corteva's experts to cherry-pick the data and AIs that are helpful to Corteva's case as the basis for their opinions while leaving Plaintiffs in the dark regarding all other data. Even if Corteva produces those unrepresentative data during the expert discovery period, Plaintiffs' ability to perform similar or competing analyses or to respond to Corteva's analyses would be hamstrung by a lack of access to data for other AIs.

Plaintiffs' data requests are thus relevant and reasonably proportional to the needs of the case.

## II. CORTEVA HAS FAILED TO SUBSTANTIATE ANY UNDUE BURDEN FOR PRODUCING THE REQUESTED DATA

Since the data that Plaintiffs request are relevant and proportional, Corteva must show that producing that data would be unduly burdensome. *See Willowood*, 2016 WL 6783691, at *1; *Kinetic Concepts*, 268 F.R.D. at 243–44. With respect to burden, Plaintiffs have diligently sought to understand the basis of Corteva's objection to data production and to reach a reasonable compromise. Ex. J (June 10, 2024 Letter from Plaintiffs (W. Carson) to Corteva (B. Bauer)) at 3 ("With respect to the data

specifications, you said that you were considering your position on an appropriate time period."); Ex. K (June 21, 2024 letter from Plaintiffs (W. Carson) to Corteva (B. Bauer)) at 3 ("We await Corteva's updated proposal for data collection and production (RFPs 27 – 33), which you said on our June 20 call was forthcoming.").

Corteva has failed to provide specific information regarding the burden of providing the requested data, apart from naked assertions that providing such data is "unduly" or "overly" burdensome. Ex. C (July 8, 2024 Email from Corteva (M. Auerbach) to Plaintiffs (W. Carson)); Ex. B (Corteva Resps. & Objs.) Responses to RFP Nos. 28–33. This plainly does not meet the requirements of Rule 34, putting Plaintiffs in the unfair position of guessing at what responsive data Corteva can reasonably provide. *See* Fed. R. Civ. P. 34(b)(2)(B) (a party "must state with specificity the grounds for objecting to the request, including the reasons."); Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015) (explaining that it is not sufficient to make "[a] boilerplate objection that [the request] is not proportional."); *see also Bank of Mongolia v. M & P Global Financial Svcs.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) (stating that a party "must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome").

Accordingly, Corteva has waived its objection. *See Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005) ("[T]he burden of avoiding waiver must rest with the party that failed to particularize its objections."); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528–29 (S.D. W. Va. 2007) (rejecting boilerplate

objections because they were not "stated with specificity"). And even if Corteva has not waived its objection, given the relevance and importance of the data that Plaintiffs are requesting, Corteva will be unable to show that Plaintiffs' requests are disproportionate absent some yet-to-be-disclosed extreme burden in collecting and producing the requested data.

## <u>CONCLUSION</u>

Plaintiffs' motion to compel should be granted.

Dated: July 12, 2024         Respectfully submitted,

 /s/ Allyson M. Maltas
ALLYSON M. MALTAS
Senior Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov

KARNA ADAM
JOSEPH R. BAKER
WESLEY G. CARSON
ROBERT Y. CHEN
ELIZABETH A. GILLEN
PHILIP J. KEHL
LAUREN B. PATTERSON
MICHAEL J. TURNER

*Attorneys for Plaintiff Federal Trade Commission*

/s/ Nicole S. Gordon              /s/ Conor J. May
NICOLE S. GORDON           JAN M. ZAVISLAN
Deputy Attorney General      Senior Counsel
Office of the California Attorney General  CONOR J. MAY
455 Golden Gate Avenue, Suite 11000  Assistant Attorney General
San Francisco, CA 94610       Colorado Department of Law
Telephone: (415) 510-4400     Office of the Attorney General
Email: nicole.gordon@doj.ca.gov   Ralph L. Carr Judicial Center
                       1300 Broadway, 7th Floor
*Attorney for Plaintiff State of California*  Denver, CO 80203
                       Telephone: (720) 508-6000
                       Email: Jan.Zavislan@coag.gov
                            Conor.May@coag.gov

                       *Attorneys for Plaintiff State of Colorado*

/s/ Paul J. Harper
PAUL J. HARPER
Assistant Attorney General, Antitrust
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3000
Email: paul.harper@ilag.gov

*Attorney for Plaintiff State of Illinois*


/s/ Noah Goerlitz
NOAH GOERLITZ
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 725-1018
Email: noah.goerlitz@ag.iowa.gov

*Attorney for Plaintiff State of Iowa*


/s/ Colin P. Snider
COLIN P. SNIDER
JUSTIN C. MCCULLY
Office of the Attorney General of
Nebraska
2115 State Capitol Building
Lincoln, NE 68509
Telephone: (402) 471-3840
Email: Colin.Snider@nebraska.gov
        Justin.McCully@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*


/s/ Matthew Michaloski
MATTHEW MICHALOSKI
CHRISTI FOUST
Deputy Attorneys General
SCOTT BARNHART
Chief Counsel and Director of Consumer
Protection
Office of the Indiana Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 234-1479
Email: matthew.michaloski@atg.in.gov
        christi.foust@atg.in.gov
        scott.barnhart@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


/s/ Katherine Moerke
KATHERINE MOERKE
JASON PLEGGENKUHLE
ELIZABETH ODETTE
Assistant Attorneys General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Telephone: (651) 296-3353
Email: katherine.moerke@ag.state.mn.us
        jason.pleggenkuhle@ag.state.mn.us
        elizabeth.odette@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

/s/ Hamilton Millwee
HAMILTON MILLWEE
Assistant Attorney General
TATE BALL
Assistant Attorney General
Office of the Attorney General of
Tennessee
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
        Tate.Ball@ag.tn.gov

*Attorneys for Plaintiff State of Tennessee*


/s/ Luminita Nodit
LUMINITA NODIT
Assistant Attorney General,
Antitrust Division
Washington State Office
of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104
Telephone: (206) 254-0568
Email: Lumi.Nodit@atg.wa.gov

*Attorney for Plaintiff State
of Washington*

/s/ Timothy D. Smith
TIMOTHY D. SMITH
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us

*Attorney for Plaintiff State of Oregon*

/s/ William Shieber
JAMES LLOYD
Chief, Antitrust Division
TREVOR YOUNG
Deputy Chief, Antitrust Division
WILLIAM SHIEBER
Assistant Attorney General
Office of the Attorney General of Texas
300 West 15th Street
Austin, TX 78701
Telephone: (512) 936-1674
Email: William.Shieber@oag.texas.gov

*Attorneys for Plaintiff State of Texas*

/s/ Laura E. McFarlane
LAURA E. MCFARLANE
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us

*Attorney for Plaintiff State of Wisconsin*

<u>**CERTIFICATE OF WORD COUNT**</u>

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) in that it contains fewer than 6,250 words, excluding the exempted portions, as reported by word processing software.

Dated:  July 12, 2024            /s/ Allyson M. Maltas

ALLYSON M. MALTAS
Senior Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov