# Exhibit J



UNITED STATES OF AMERICA
# FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Wesley Carson
Anticompetitive Practices I Division
Federal Trade Commission
202.326.3743
wcarson@ftc.gov

June 10, 2024

**VIA ELECTRONIC MAIL**

Ben Bauer
Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
bbauer@cravath.com

Re: *FTC et al. v. Syngenta Crop Protection AG et al.*, No. 1:22-cv-00828-TDS-JEP (M.D.N.C.)

Dear Ben,

On May 29 and June 5, 2024, Plaintiffs and Corteva met and conferred regarding Plaintiffs' First Set of Requests for Production to Corteva in the captioned action ("RFPs"), and Corteva's Responses and Objections thereto. This letter summarizes those discussions and further explains our position on certain issues.

***Products Covered***. Corteva initially objected to producing certain documents related to Crop Protection Products that contain active ingredients other than acetochlor, oxamyl, and rimsulfuron, because, in your view, only those three active ingredients are relevant. On our June 5 call, you clarified that Corteva would agree to mark as responsive (for TAR purposes) and produce all documents relating to Corteva's loyalty programs—whether or not those documents expressly refer to acetochlor, oxamyl, or rimsulfuron. We understand this would include, among other categories, documents involving the creation and implementation of Corteva's loyalty programs, how and why certain AIs are or are not included in the program, how Corteva's loyalty programs are implemented and imposed on Corteva's customers, and the intended or actual effects of Corteva's loyalty programs.

For document requests, you contend that non-loyalty documents regarding active ingredients other than the three named above would not be relevant. We disagree. Documents related to pricing, competition, and general strategy for products with active ingredients both currently in, once in, and never in Corteva's loyalty programs are relevant for many reasons, including to allow comparisons of market conditions and Corteva performance for active ingredients in loyalty and active ingredients not included in loyalty. More generally, as in any antitrust case, the scope of relevant documents is not limited to the particular restraint at issue, but also extends to more generalized financial and business planning documents. For instance, Corteva has asserted that the markets at issue are properly defined

Highly Confidential – Outside Counsel Eyes Only

to be broader than the particular AIs on which the complaint focuses. Limiting discovery as proposed by Corteva would impair Government Plaintiffs' ability to test that defense.

With respect to the data specifications, you said that you were considering your position on the appropriate active ingredient scope. Please provide a proposal no later than June 12, 2024.

**Time Period.** Corteva objected to the time periods requested in Plaintiffs' RFPs, and initially proposed collecting documents and data from January 1, 2016, through December 30, 2022. As to the end date, during our conversations you agreed that Corteva would produce documents up until the date of Plaintiffs' RFPs (April 19, 2024), and supplement responses as required by the Federal Rules of Civil Procedure.

Regarding the start date, you stated that you have not changed your proposal to collect, review, and produce documents beginning January 1, 2016, which you justified based on the dates that acetochlor, oxamyl, and rimsulfuron were added to Corteva loyalty programs. We explained that the earlier time period called for by the RFPs[1] is appropriate for several reasons. For a majority of the RFPs, our disagreement is only over a year of documents (January 1, 2015, compared with January 1, 2016). The time period proposed by Plaintiffs is clearly proportional to the needs of this case and any burden to Corteva to expand its search protocol for most documents by one year is outweighed by the relevance and importance of the documents to Plaintiffs' case, as evidenced by the fact that the FTC and Corteva agreed during the investigation to a collection date beginning January 1, 2015. You have not articulated why that time period is inappropriate for most of the document requests in Plaintiffs RFPs.

January 1, 2016, is also an insufficient beginning collection date to cover the three active ingredients named above, and the time period for documents related to those active ingredients should begin two years before they were added to Corteva loyalty program. For example, Corteva documents and testimony indicated that rimsulfuron was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* FTC-CTVA_00371800, at pp. 13–14; Swanson (Corteva) IH at 86:7–87:10. Corteva's own documents and testimony also show that planning decisions regarding loyalty programs are made ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, FTC-CTVA_01089774 at -776, slide 2 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); FTC-CTVA_00195826, slides 3, 6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Finally, Plaintiffs' case challenges the legality of Corteva's entire loyalty program. Therefore, all documents related to the creation and implementation of Corteva's (and its predecessors') loyalty programs generally are relevant. Thus, the limited requests in RFPs 17 and 18 for documents related to

---

[1] For document requests, the requested time periods are: (1) January 1, 2015, for most requests; (2) for documents concerning acetochlor, oxamyl, and rimsulfuron, a period beginning 24 months before each of acetochlor, oxamyl, and rimsulfuron were first added to loyalty programs; and (3) January 1, 2002, for two RFPs focused on the creation, purpose, and implementation of loyalty programs (RFPs 17 and 18).

Highly Confidential – Outside Counsel Eyes Only

these loyalty programs back until 2002 is reasonable and proportionate. Plaintiffs would be willing to discuss ways to reduce any burden on Corteva of collecting and producing documents responsive to RFPs 17 and 18 that would not otherwise be covered by the time periods discussed above, including by limiting the number of custodians for earlier document collection and allowing for "go-get" manual collection and production of certain types of responsive documents.

With respect to the data specifications, you said that you were considering your position on an appropriate time period. Please provide a proposal no later than June 12, 2024.

***Programs other than Key AI***. Corteva objected to the definition of "Loyalty Program" in the RFPs and stated that you were unaware of any Loyalty Programs apart from Corteva's Crops, Range & Pasture and Industrial Vegetation Management (IVM) Loyalty Program (the "CRPIVM") and Corporate Distributor Offer ("CDO"). We reiterate that to the extent that you find any responsive, non-privileged documents related to any Loyalty Programs (as defined in the RFPs) other than the CPRIVM and CDO, those documents must be produced.

***Custodians and Orginzational Charts***. Plaintiffs requested that Corteva produce "each organizational chart and personnel directory for the Company as a whole and for each of the Company's parents, subsidiaries, facilities, or divisions engaged in any activity Relating to the production or sale of any Crop Protection Product" in RFP 1 (incorporating Specification 1 of the FTC's May 26, 2020, Subpoena *Duces Tecum*). I reiterated that request in my email of May 21, 2024, and our calls on May 29 and June 5, explaining that Plaintiffs needed current copies of Corteva's organizational charts for employees involved in Crop Protection Products to assess and negotiate appropriate custodians. On our call of June 5, 2024, you confirmed that Corteva maintains such organizational charts in the ordinary course of business, and that you were working with Corteva to determine which organizational charts to provide. As requested by RFP 1, please provide organizational charts for each of Corteva's "parents, subsidiaries, facilities, or divisions engaged in any activity Relating to the production or sale of any Crop Protection Product" no later than June 12, 2024 to allow for meaningful discussion about custodians.

We have conferred about our initial proposed list of additional custodians and custodial roles (identified in my May 27, 2024, letter). You stated that Corteva was considering Plaintiffs' requested custodians. As discussed, this initial list of custodians will likely need further supplementation after obtaining current organization charts from Corteva, including for individual involved in managing distributor relationships in National Account and Regional Area Leader and Account Executive roles. On our June 5 call, I also requested that Cindy Loy be added as a custodian, who we understand is Corteva's Global Data Compensation and Business Development Leader (along with any predecessors and successors in her role).

***Non-custodial Searches for Responsive Documents***. You stated that to the extent you identify a shared site or folder with potentially responsive documents, you will collect that shared location. On our call of May 29, 2024, I emphasized, as requested in Plaintiffs' RFPs, that this search should include ephemeral messaging and document applications, such as Google Docs. We discussed that for certain requests in the RFPs, Corteva's response should also involve an inquiry into where potentially

Highly Confidential – Outside Counsel Eyes Only

responsive files are located, and a search for those files on a "go-get" basis to collect the specific documents requested. This includes RFPs No. 4, 5, 17 (copies of any responsive Loyalty Programs); 22, 23, and 24 (responsive Agreements); 25 (responsive drafts, versions of, and inputs to the "Black Friday" report); and 26; as well as Specifications 3, 5, and 6 of the FTC's December 4, 2021, Civil Investigative Demand, and Specifications 1, 3, and 6 of the FTC's May 26, 2020, Subpoena *Duces Tecum*.

**Vagueness Objections**. We also discussed your vagueness objections, which you made to terms used by several RFPs. Based on our discussion, we understand that you will not withhold documents on the basis that they may contain information implicating terms you object to as vague.

**TAR Protocol.** As requested by my May 28, 2024, letter, Corteva provided additional information regarding its proposed technology assisted review ("TAR") protocol on June 4, 2024. On our June 5, 2024, call, you stated that while your June 4, 2024, proposal represented Corteva's best estimation of targeted metrics for TAR review, you reserved the right to revisit those metrics once documents were collected and reviewed. Corteva's May 20, 2024, and June 4, 2024, proposals do not provide all of the information required by Paragraph 5.3 of the Parties' Electronic Stored Information ("ESI") Order, including all of the "the types of metrics available during the training, overview of the review and training workflow, quality control, and validation processes." There are also a number of open questions regarding Corteva's TAR protocol raised in a June 7, 2024, email from counsel for the State of Arkansas in *State of Arkansas v. Syngenta Crop Protection AG*, No. 4:22-cv-1287-BSM (E.D. Ark.). Please provide Plaintiffs with your responses to those questions.

In any event, Plaintiffs lack information they need to evaluate Corteva's proposal due to your position that it is premature for Corteva to commit to metrics. In light of the unresolved questions about Corteva's TAR protocol, please confirm that Corteva will not oppose Plaintiffs' ability to challenge this protocol once these questions are resolved, notwithstanding the June 19, 2024, deadline for motions to compel in the Scheduling Order.

Finally, please provide information regarding the identities and the roles of individuals who will be involved in training the TAR model by June 12, 2024.

Please let us know your response to these items.

Sincerely,

*/s/ Wesley Carson*
Wesley Carson

Highly Confidential – Outside Counsel Eyes Only