# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| STATE OF CALIFORNIA, ) | |
| STATE OF COLORADO, ) | |
| STATE OF ILLINOIS, ) | |
| STATE OF INDIANA, ) | |
| STATE OF IOWA, ) | |
| STATE OF MINNESOTA, ) | |
| STATE OF NEBRASKA, ) | |
| STATE OF OREGON, ) | |
| STATE OF TENNESSEE ) | |
| STATE OF TEXAS, ) | |
| STATE OF WASHINGTON, ) | |
| and ) | |
| STATE OF WISCONSIN, ) | Case No. 1:22-cv-00828-TDS-JEP |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| SYNGENTA CROP PROTECTION AG, ) | |
| SYNGENTA CORPORATION, ) | |
| SYNGENTA CROP PROTECTION, LLC, ) | |
| and ) | |
| CORTEVA, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## SYNGENTA DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY OF SYNGENTA DEFENDANTS

## [TEMPORARY PUBLIC REDACTED VERSION]

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT.................................................................................................................... 2

I.      Plaintiffs Are Not Entitled to Irrelevant, Duplicative, and Burdensome Discovery
        from Swiss Entities that Puts Syngenta, its Employees, and its Counsel at Risk of
        Criminal Punishment ............................................................................................ 3

        a.      The Motion to Dismiss Decision Did Not Decide This Discovery
                Dispute ...................................................................................................... 3

        b.      Plaintiffs' Overbroad Ex-U.S. Discovery Requests Seek Irrelevant,
                Duplicative Information ............................................................................. 4

        c.      Discovery from SCPAG Would Be Immensely Burdensome And Risks
                Criminal Charges ...................................................................................... 9

II.     Plaintiffs Are Not Entitled to Unfettered Discovery ........................................ 13

        a.      Plaintiffs' Search Terms Lack An Adequate Nexus to Plaintiffs'
                Allegations .............................................................................................. 14

        b.      Overly Burdensome Search Terms ........................................................... 16

III.    Plaintiffs Seek Irrelevant, Incomplete, and Inaccurate Data that Lack Nexus to the
        Allegations........................................................................................................... 17

        a.      Plaintiffs' Requests Are Not Tailored to This Litigation............................ 17

        b.      Plaintiffs Inappropriately Seek Decades of Unreliable Data ...................... 20

IV.     Andrew Fisher Is An Inappropriate Custodian..................................................... 22

CONCLUSION ............................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>PAGE(S)</u>

*Bank of Mongolia v. M & P Glob.l Fin. Servs.*,
258 F.R.D. 514 (S.D. Fla. 2009) .................................................................. 20

*CSX Transp., Inc. v. Peirce*,
2012 WL 12892735 (N.D.W. Va. July 18, 2012) ....................................... 2

*Doma Title Ins., Inc. v. Avance Title, LLC*,
2022 WL 2668530 (D. Md. July 11, 2022) ................................................. 14

*Elsayed v. Fam. Fare LLC*,
2019 WL 8586708 (M.D.N.C. Oct. 31, 2019) ........................................... 18

*Eshelman v. Puma Biotechnology, Inc.*,
2018 WL 1702773 (E.D.N.C. Apr. 6, 2018) .............................................. 14

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) ................................................................. 2

*Galloway v. Martorello*,
2023 WL 5229231 (E.D. Va. Aug. 14, 2023) ........................................... 10

*Gerling Int'l Ins. Co. v. C.I.R*,
839 F.2d 131 (3d Cir. 1988) ....................................................................... 9

*Jones v. Varsity Brands, LLC*,
2021 WL 5889984 (W.D. Tenn. Dec. 13, 2021) ....................................... 7

*King v. McCown*,
831 F.2d 290 (4th Cir. 1987) ..................................................................... 14

*McDougal-Wilson v. Goodyear Tire and Rubber Co.*,
232 F.R.D. 246 (E.D.N.C. 2005) ............................................................... 7

*In re Meta Pixel Healthcare Litig.*,
2023 WL 5767460 (N.D. Cal. Sept. 6, 2023) ............................................ 3

*Nicholas v. Wyndham Int'l, Inc.*,
373 F.3d 537 (4th Cir. 2004) ..................................................................... 2

*OptoLum, Inc. v. Cree, Inc.*,
2018 WL 6834608 (M.D.N.C. Dec. 28, 2018) .......................................... 2

iii

*Owen v. Elastos Found.*,
343 F.R.D. 268 (S.D.N.Y. 2023) .................................................................... 12

*In re Plastics Additives Antitrust Litig.*
2009 WL 10741541 (E.D. Pa. Oct. 29, 2009) ............................................. 19

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
335 F.R.D. 1 (E.D.N.Y. 2020) .................................................................... 19

*Roach v. T.L. Cannon Corp.*,
2012 WL 13201834 (N.D.N.Y. Aug. 1, 2012), *aff'd*, 2012 WL 13201835
(N.D.N.Y. Oct. 10, 2012) ........................................................................... 21

*Rotstain v. Trustmark Nat'l Bank*,
2020 WL 12968653 (N.D. Tex. Feb. 19, 2020) ..................................... 9, 10

*Seaman v. Duke Univ.*,
2018 WL 1441267 (M.D.N.C. Mar. 21, 2018) ....................................... 2, 16

*Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*,
357 U.S. 197 (1958) .................................................................................... 9

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
482 U.S. 522 (1987) .................................................................................. 10

*In re Uranium Antitrust Litig.*,
480 F. Supp. 1138 (N.D. Ill. 1979) .............................................................. 8

*Virginia Dep't of Corr. v. Jordan*,
921 F.3d 180 (4th Cir. 2019) ................................................................. 2, 22

<u>S</u><u>TATUTES</u> & <u>R</u><u>ULES</u>

Fed. R. Civ. P. 26(a)(2)(B)(ii) ....................................................................... 19

Fed. R. Civ. P. 26(b)(1) ................................................................................. 2

<u>O</u><u>THER</u> <u>A</u><u>UTHORITIES</u>

8 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2014 (3d ed.1998).......... 21

Data Protection Act Art. 6 ............................................................................. 11

Data Protection Act Art. 62 ........................................................................... 11

Decision (Swiss) Fed. Ct. 130 II 87 ............................................................... 11

iv

Decision (Swiss) Fed. Ct. 131 I 223 ................................................................... 11

High Ct. of the Canton of Geneva, Case Reference ACJC/1529/2015, 7.2.2. ................... 12

Swiss Fed. Ct., Case Reference 6B_216/2020 .................................................... 10

Swiss Fed. Crim. Ct., Case Reference CA.2019.6, 1.1.3.5.2.4. ........................................ 10

Swiss Penal Code Art. 271 ......................................................................... 9, 10

## PRELIMINARY STATEMENT

Plaintiffs' claims against Syngenta—asserted after years of wide-ranging discovery—concern one U.S.-only rebate and three active ingredients ("AIs"). Plaintiffs' motion ("Motion") seeks discovery beyond these narrow confines of their Amended Complaint ("Complaint"). In pursuit of that goal, Plaintiffs distort the nature of this Action and the Parties' negotiations, and ignore the substantial burden their demands impose. The Motion should be denied.

First, Plaintiffs' demand for foreign discovery—of limited, if any, relevance and duplicative of discovery from U.S. sources—places burdens on Syngenta, including those posed by Swiss criminal law, that far outweigh this litigation's needs.

Second, Plaintiffs' demanded search terms touching every corner of Syngenta's business are beyond the Complaint's scope and ignore the burdens of exponentially expanding Syngenta's review without discernible benefit to identification of relevant documents.

Third, Plaintiffs' data demands encompass nearly Syngenta's entire crop protection business for over a decade, even though the data's completeness, accuracy, and reliability cannot be verified.

Fourth, Plaintiffs' demand for another U.S. custodian is unjustified; there is no indication this custodian has unique, relevant information.

## ARGUMENT

Plaintiffs' Motion ignores that discovery must be "proportional to the needs of the case." *Seaman v. Duke Univ.*, 2018 WL 1441267, at *3 (M.D.N.C. Mar. 21, 2018); *see also* Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(1) "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document," by "requir[ing] courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019); *see also OptoLum, Inc. v. Cree, Inc.*, 2018 WL 6834608, at *3 (M.D.N.C. Dec. 28, 2018). This protects litigants from the burdens of reviewing and producing "a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." *Jordan*, 921 F.3d at 188-89.

"Even assuming that th[e] information is relevant (in the broadest sense), the simple fact that requested information is discoverable ... does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). "[C]ourt[s] must limit the frequency and extent of discovery otherwise allowed by these rules ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit." *CSX Transp., Inc. v. Peirce*, 2012 WL 12892735, at *5 (N.D.W. Va. July 18, 2012). Accordingly, duplication of information among "cumulative" custodians is inappropriate. *Jordan*, 921 F.3d at 188-89; *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) ("[P]laintiffs must demonstrate that the additional requested custodians would provide unique relevant

2

information not already obtained."); *In re Meta Pixel Healthcare Litig.*, 2023 WL 5767460, at *2 (N.D. Cal. Sept. 6, 2023).

Plaintiffs' demands ignore these fundamental discovery principles.

## I.     Plaintiffs Are Not Entitled to Irrelevant, Duplicative, and Burdensome Discovery from Swiss Entities that Puts Syngenta, its Employees, and its Counsel at Risk of Criminal Punishment

The rebate at issue is a U.S. rebate (¶ 82)[1] and the products at issue are "sold and regulated" at a national level (¶ 159).  Syngenta thus has agreed to search for documents from thirty-four U.S.-based custodians (and dozens of U.S.-based central repositories).  Yet Plaintiffs insist that Syngenta collect and search files of three Syngenta Crop Protection AG ("SCPAG") custodians located outside the U.S. (Jon Parr, Jeff Rowe, and David Scott) and from ex-U.S. repositories (Mot. 7-10), despite the limited potential relevance and considerable burden.  This broad ex-U.S. discovery is not proportional to the needs of this case, and should be denied.

### a.     The Motion to Dismiss Decision Did Not Decide This Discovery Dispute

Syngenta has never claimed that SCPAG "is exempt from discovery."  Mot. 5. Rather, Syngenta opposes the discovery requested *here* because it promises little benefit while creating enormous burden.  Accordingly, Plaintiffs' claim that the motion to dismiss ruling—holding only that Plaintiffs adequately pled involvement by SCPAG—resolves this dispute (Mot. 5) is misplaced.

---

[1] Citations to "¶_" refer to the Complaint.

b.    **Plaintiffs' Overbroad Ex-U.S. Discovery Requests Seek Irrelevant, Duplicative Information**

Plaintiffs demand that Syngenta collect, review, and produce nearly 10 *years* of documents from three employees and from repositories of Swiss entity SCPAG. Because these employees have broad-ranging, globally-focused responsibilities, the volume of documents will be substantial.  The same is true of SCPAG's central documents, given its global reach.  Plaintiffs' proposed search protocol[2]—lacking any way to filter Syngenta's review population to documents concerning *U.S.* operations relevant to this Action—will not mitigate Syngenta's burden.  Plaintiffs support their requests with only: (1) identification of a tangential intersection between the proposed custodians and supply agreements alleged in the Complaint; and (2) flawed assertions that SCPAG "plays a key and demonstrated role in Syngenta's conduct and the claims in this matter," supported only by vague references to reporting lines and a nearly twenty-year-old document unfamiliar to Syngenta's U.S. custodians.  Mot. 7-10.

This litigation focuses on these supply agreements' relation to a rebate offered *in the U.S.* for product sales *in the U.S.  See, e.g.*, ¶ 109.  These agreements—and particularly the portions relevant to the U.S.—are developed with the involvement and input of U.S. employees *who are custodians* (e.g., Vern Hawkins, Jeff Cecil).  ███████████████

███████████████████████████████████████████████████

---

[2] Plaintiffs' Motion also exacerbates the burden related to these disputed custodians (and all agreed custodians) by expanding the scope of Syngenta's search to touch on all aspects of its crop protection business, rather than only those relevant to Plaintiffs' claims.  *See* Section II, *infra*.

4

███████ Ex. J[3], which makes them—not the ex-U.S. individuals—the appropriate custodians on this topic. Indeed, where a supply agreement pertains only to the U.S.—including the alleged Corteva s-metolachlor agreement (¶ 122)—it is signed by U.S. custodians. Ex. 1 (signed by U.S. custodial role, Head, Crop Protection Marketing). Thus, even if potentially relevant, the ex-U.S. documents sought would duplicate information already being produced.

Plaintiffs' assertions about the proposed custodians do not challenge this conclusion:

**Jon Parr:** Plaintiffs claim that Parr's ████████████████████████ ████████████████████ indicates that his custodial file will be a vital source of information." Mot. 8. But the cited documents confirm that █████████████████ ████████████████████████████████████████ Exhibit H shows ██████████ ████████████████████████████████████████████████ Exhibit I shows ████████ ████████████████████████████████████████████ It does not show any unique or substantive involvement by anyone not already a custodian. Finally, ████ ██████████████████ (Mot. 8) does not mean Parr has relevant involvement with Key



---

[3] Plaintiffs' exhibits are labeled with letters (*e.g.*, Ex. A). Syngenta's are numbered (*e.g.*, Ex. 1) and attached to the Miller Declaration.

AI (or the U.S. business generally)—and Plaintiffs do not cite any documents showing he does.

**Jeff Rowe:** Plaintiffs assert that Rowe ██████████████████████████ ████████████████████████████████████████████████ ███████████████████████ Mot. 9. But nothing shows Rowe's involvement in the Key AI elements of that agreement, or any other U.S. business issues relevant here. While Plaintiffs cite Exhibit I, this does not show any unique or substantive involvement by any non-U.S.-custodian. Plaintiffs have not shown Rowe contributing to any discussion of U.S. issues. Similarly, Exhibit J does not mention supply agreements or Key AI—not surprising, as Rowe's role at Syngenta during agreement negotiations was President of Global *Seeds*, a wholly-separate business from the at-issue crop protection business.

**David Scott:** Scott's signature on a global agreement—███████████████—does not make Scott relevant to this litigation about only certain **U.S. aspects** of the agreement.[4] Ex. K. The cited documents do not suggest Scott played a substantive role in **any** U.S. aspects of the agreement. While Plaintiffs assert that Hawkins' testimony shows that Scott's ████████████████████████████████████████ ████████████ Hawkins' only testimony about Scott does not support this. *See* Ex. G at 59:1-4 ██████████████████████████████ ████████████ Nothing suggests Scott was involved in directing or overseeing the U.S.



---

[4] ████████████████ (Ex. L) is irrelevant; it features nowhere in Plaintiffs' allegations.

business, generally or with respect to Key AI. To the contrary, Scott's role would not have such involvement.

In contrast to the limited value of these proposed custodians, Plaintiffs' ex-U.S. discovery proposal is far from "targeted" or "modest." Mot. 7. Plaintiffs' requests go far beyond the topics of purported relevance in their Motion, both in scope and time. Ex. A. And Plaintiffs have not narrowed their requests to documents discussing U.S. operations, or to account for information available from the agreements' counterparty Corteva (which does not face the substantial ex-U.S. collection and production barriers Syngenta faces). *See McDougal-Wilson v. Goodyear Tire and Rubber Co.*, 232 F.R.D. 246, 252 (E.D.N.C. 2005) (limiting geographic scope of discovery to avoid burden); *Jones v. Varsity Brands, LLC*, 2021 WL 5889984, at *4 (W.D. Tenn. Dec. 13, 2021) (denying request to add duplicative custodian).

Plaintiffs' discussion of SCPAG's supposed ███████████████████████ ██████ (Mot. 7) does not support their demands for substantial additional discovery. The notion that SCPAG directs or oversees U.S. conduct relevant to this Action is disproven by the very documents Plaintiffs cite:

██████████ Plaintiffs do not tie this two-decades-old ████████ to the individuals from whom Plaintiffs demand discovery. Indeed, statements directly from the ████████ negate Plaintiffs' characterization of it. ████████████████████ ████████████████████████████████████████████ ████████████████████████████ Ex. D at 4 (emphasis added). ██ ████████████████████████████ *Id.* (cleaned up) (emphasis added).

Senior U.S. employees *have no familiarity with the document*.  The head of the U.S. business ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 2 at 125:25-126:25

(Vern Hawkins IH Tr.).  The Crop Protection Product Lifecycle Management Head also

████████████████████████████████████████████████████ Ex. 3

at 182:13-25 (Charles Flippin IH Tr.); *see also* Ex. 4 at 196:2-5 (Rex Wichert IH Tr.) ████

███████████████████████████████████████████████████████████

█████████████████

*Hawkins Deposition*:  Hawkins' fourteen-year-old deposition (Ex. E) also does not

support Plaintiffs' discovery demands.  Plaintiffs miss the import of their own cite—that

strategic decisions are made through "local implementation and execution." (Mot. 7).  U.S.

individuals make U.S. decisions; and information used by them to make those decisions—

even if informed by global discussions—will be reflected in the U.S. custodians'

documents.  Plaintiffs omit the remainder of Hawkins' testimony that confirms this: the

"[U.S. entity] is accountable for the local implementation.  And the global strategy aspect

is about *getting the best input* from all parts of the company *to make the best decision*"

for the U.S. business.  Ex. E at 32:9-11 (emphasis added).[5]

---

[5] In *In re Uranium Antitrust Litigation* (Mot. 7), the Northern District of Illinois compelled foreign discovery on a showing that the foreign employees "at all pertinent times *acted in behalf of [the U.S. entity]* and had responsibility for [the relevant] activities."  480 F. Supp. 1138, 1152 (N.D. Ill. 1979) (emphasis added).  Plaintiffs do not make such showing here.

### c. Discovery from SCPAG Would Be Immensely Burdensome And Risks Criminal Charges

While the non-cumulative relevance of SCPAG documents is low, several Swiss laws that combine to sharply restrict discovery of Swiss documents make the burden of producing such documents exceptionally high.

**Swiss Penal Code Article 271.**[6] Carrying out or facilitating activities on behalf of a foreign state on Swiss territory without lawful authority, when such activities would, in Switzerland, be the responsibility of a public authority or official, is a crime under Swiss Penal Code Article 271—for anyone involved, worldwide. This applies to taking evidence for a foreign proceeding, as is the situation here.[7] Switzerland views "the taking of evidence [as] essentially a domestic judicial function" and "has long maintained that a United States court order, backed with its coercive powers and requiring a party to produce evidence from Switzerland violates Swiss sovereignty and international law, even when the United States court has personal jurisdiction." *Rotstain v. Trustmark Nat'l Bank*, 2020 WL 12968653, at *9 (N.D. Tex. Feb. 19, 2020).

On November 1, 2021, the Swiss Federal Court ruled that, outside of administrative or judicial assistance channels, a company may only produce information that it can freely

---

[6] Syngenta agrees there is no blanket exception to Swiss discovery. Mot. 11-12 (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958)). Rather, as *Rogers* observed, the application of Swiss law to U.S. discovery is context-specific. *Rogers*, 357 U.S. at 205-06. The nature of this litigation (including that it is a "government enforcement" from the Swiss perspective) and the posture of this dispute (including that an order granting Plaintiffs' Motion would create a threat of sanction) trigger Article 271's bar on discovery. Similarly, *Gerling Int'l Ins. Co. v. C.I.R.* (Mot. 12) does not address the question this Court faces—and in any event held that the lower court *erred* in requiring production. 839 F.2d 131, 139-40 (3d Cir. 1988).

[7] Under Swiss law, this litigation is a "government enforcement," not an ordinary civil litigation, because SCPAG never agreed to litigate this case in this forum. Therefore, Article 271 applies.

dispose of; any non-public information about third parties (including employees) does not meet this requirement. *See Swiss Fed. Ct., Case Reference 6B_216/2020.*

Article 271 allows production in a foreign proceeding only if, among other things, it occurs voluntarily and in the *absence* of threat of sanction related to discovery.[8] Swiss Penal Code Art. 271. To comply with Article 271, Syngenta would also need to redact information that identifies any third party—including Syngenta employees—unless the third party has consented to disclosure. That consent must be well informed, fully voluntary, and explicit. *Swiss Fed. Crim. Ct., Case Reference CA.2019.6, 1.1.3.5.2.4.* Swiss law is hesitant to deem an employee's consent voluntary—because the power imbalance of the employment relationship could cause the employee to feel pressure, negating voluntariness. Ex. 5 (Swiss government guidance regarding employer data processing).

**Swiss Penal Code Articles 162 and 273.** Swiss companies must prevent unauthorized disclosure of business or manufacturing secrets entrusted to them by others. Failure to comply is a crime under Swiss Penal Code, Article 162. Unauthorized disclosure

---

[8] If this Court grants Plaintiffs' Motion and requires SCPAG to produce documents under threat of contempt, *any* such production would be forbidden under Swiss law and considered a criminal offense. Syngenta's compliance with that order would entail an "actual conflict" of law, because it will be "impossible for [Syngenta] to comply with both American and [Swiss] law." *Galloway v. Martorello,* 2023 WL 5229231, at *8 (E.D. Va. Aug. 14, 2023). A comity analysis governs such a conflict, and requires courts to consider five factors: (1) the importance of the information to the litigation; (2) the specificity of the request; (3) whether the information originated in the U.S.; (4) whether alternative means of securing the information are available; and (5) the extent to which non-compliance would undermine important U.S. interests, or compliance would undermine important foreign interests. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa,* 482 U.S. 522, 544 n.28 (1987); *see also Galloway,* 2023 WL 5229231. For the reasons discussed, each factor weighs strongly ***against discovery***. In particular, Swiss interests are extremely strong. Article 271, as explained, is central to Swiss sovereignty—as shown by its stringent restrictions and severe, criminal consequences for non-compliance. *See also Rotstain,* 2020 WL 12968653, at *9 ("Switzerland also has substantial interests at stake. The Swiss place great importance on the sovereign independence of the nation and individual autonomy.") (cleaned up).

of a Swiss company's business secrets to a foreign recipient can be considered economic espionage, resulting in criminal charges under Swiss Penal Code Article 273. Accordingly, any documents produced from SCPAG would require additional review to ensure business secrets are redacted. Often, non-disclosure or confidentiality agreements protecting companies' documents do not include an exemption for unrelated foreign proceedings. If the agreements do, disclosure is often permitted only by court order—which triggers Article 271.

**Data Protection Act ("DPA").** Switzerland's DPA makes it a crime to disclose to a third party—here the Parties and the Court—non-generally available personal data (including of employees) that has been obtained, and is required, for professional purposes in violation of a secrecy obligation. DPA Art. 62 ¶ 1. The DPA permits SCPAG to produce such information only if, among other things, disclosure is necessary for the intended purpose and there is a proportionate relationship between the disclosure and the interference with the individual's privacy. DPA Art. 6 ¶ 2; *see also Decision (Swiss) Fed. Ct. 131 I 223, 232*; *Decision Fed. Ct. 130 II 87, 96*; Ex. 6 at 9, 14 (Swiss government guidance regarding data processing). Application of this statute generally requires redactions of personal data in produced documents—including private data, health data, and HR data—regardless of any protective order.

**Code of Obligations Article 328.** Swiss employment law requires employers to protect employees' privacy, personality, and well-being. This includes not exposing employees to potential harm without justification (determined from a Swiss perspective). Code of Obligations Article 328. An example of such potential harm is the risk of an order

requiring the employee, under a threat of sanction, to travel to the U.S. and testify against the employee's wishes, as a consequence of the disclosure of the employee's name in a U.S. proceeding. *Cf. High Ct. of the Canton of Geneva, Case Reference ACJC/1529/2015, 7.2.2.*

Plaintiffs' argument that Syngenta failed to preserve its burden objections (Mot. 11) is false. First, Syngenta's Responses and Objections include objection to disclosure of information "***to which Syngenta owes a duty of nondisclosure to a third party, or as to which disclosure is restricted by the laws of any nation, state, or subdivision thereof, including, without limitation, laws relating to personal data and privacy***." Ex. B (emphasis added). Second, Syngenta told Plaintiffs about the burdens accompanying SCPAG discovery, including with specific reference to Swiss statutes and cases, during the meet-and-confers.[9] On June 11, Syngenta explicitly stated that it faced blocking statute issues (the colloquial name for Swiss Criminal Code, Article 271). On June 20, Syngenta again conveyed this point and that a November 2021 decision from Switzerland's highest court further increased the applicability and complications of the blocking statute.[10]

Plaintiffs' claim that "Syngenta was ordered to produce discovery from its Swiss entities in" *Syngenta Crop Protection, LLC v. Atticus, LLC*, No. 5:19-cv-00509-D (E.D.N.C.) (Mot. 12) is false. The *Atticus* court merely required the production of

---

[9] Plaintiffs are correct that as of June 7 Syngenta was "continuing to evaluate the specific applicability and impact of [Swiss] laws." Mot. 11; Ex. C. Upon concluding that analysis, at the next opportunity, Syngenta was unequivocal about Swiss law's applicability.

[10] ***Even if*** Syngenta had failed to object (which it did not), it would not constitute waiver. *See Owen v. Elastos Found.*, 343 F.R.D. 268, 283 (S.D.N.Y. 2023) (holding that company and co-founders did not waive objection that Chinese law barred production by failing to raise in their original responses or by raising only generally in amended responses).

12

organizational charts showing the Syngenta Group structure.  The production of custodial documents from SCPAG was not before the court and the court did *not* order Syngenta to produce discovery from Swiss entities.  Ex. 7 at 11 (*Syngenta Crop Protection, LLC v. Atticus, LLC*, No. 5:19-cv-00509-D (E.D.N.C. Sep. 15, 2021), Doc. 362-3).  Plaintiffs misstate the court's ruling because they overlook the magistrate judge's order, which actually discusses the issue, and instead cite the order affirming the magistrate judge's order without discussion.

## II.  Plaintiffs Are Not Entitled to Unfettered Discovery

Plaintiffs' proposed search term additions would bring in all aspects of Syngenta's crop protection business without ***any*** tailoring to Plaintiffs' allegations or ***any*** justification why particular additional AIs are appropriate.  This imposes on Syngenta an enormous burden to review numerous documents irrelevant to Plaintiffs' allegations—vastly disproportionate to any benefit.

To summarize Syngenta's search protocol: "Product Terms" will first be applied to identify documents related to the three alleged AIs (azoxystrobin, mesotrione, and metolachlor (the "Relevant AIs")).  "Request Terms" will be applied to documents and family members that hit on any "Product Term."  The resulting documents will be reviewed for responsiveness.  During review, a document that relates to any RFP will be coded responsive even if it does not discuss a Relevant AI.  This compromise addresses Plaintiffs' concerns without straying too far from the allegations.  While still burdensome, Syngenta will assume this burden.  Yet Plaintiffs remain unsatisfied, and continue to demand a full sweep of Syngenta's crop protection business, without legitimate justification.

13

Plaintiffs demand the "Product Terms" include four categories of irrelevant terms, related to (1) loyalty programs generally, beyond Key AI[11]; (2) company-wide financial and business planning generally; (3) board or leadership teams generally, including unrelated to this Action; and (4) Syngenta's or others' competitive position generally.

### a. Plaintiffs' Search Terms Lack An Adequate Nexus to Plaintiffs' Allegations

"It is axiomatic that the scope of discovery is guided by the allegations in the Complaint." *Doma Title Ins., Inc. v. Avance Title, LLC*, 2022 WL 2668530, at *6 (D. Md. July 11, 2022); *see also King v. McCown*, 831 F.2d 290 (4th Cir. 1987) (limiting discovery guided by the "gist of [the] complaint" and noting that "[t]he need for discovery can be demonstrated by showing its relevancy to the cause of action"); *Eshelman v. Puma Biotechnology, Inc.*, 2018 WL 1702773, at *4 (E.D.N.C. Apr. 6, 2018) ("the complaint and its claims determine relevancy with respect to discovery").

Plaintiffs had years of unlimited discovery, yet limited their allegations to the Relevant AIs. Ex. C (discussing the multiple investigation discovery requests, including AIs subsequently ***specifically excluded*** from the investigation subpoena, subsequent requests, and the Complaint). The Complaint is clear: these three AIs are the "relevant" ones and "are the primary focus." ¶ 89.[12] Plaintiffs' search terms would far exceed these

---

[11] Plaintiffs' Motion includes ███████ a term not included in prior proposals. Syngenta assumes Plaintiffs intended ██████ which was previously included. *See* Ex. O.

[12]
███████████ Lambda-cyhalothrin is an alleged AI in the MDL. Consolidated Class Action Complaint, *In re Crop Protection Prods. Loyalty Program Antitrust Litig.*, No. 1:23-MD-3062-TDS-JEP (Sept. 5, 2023). Under this Court's coordination order, Plaintiffs will receive information regarding lambda-cyhalothrin (as well as AIs paraquat and fomesafen) that is produced to the MDL plaintiffs (if that case is not dismissed as Syngenta asserts it should be).

14

three AIs, covering *all* of Syngenta's ***more than sixty*** currently-offered AIs, i.e., over twenty times broader than Plaintiffs' allegations. All these AIs, in turn, amount to many ***hundreds*** of products.[13] This does not even include the AIs and products Syngenta no longer sells.

Plaintiffs claim they seek documents about the creation, implementation, and effects of Key AI and the inclusion of AIs in the program (Mot. 15). But that does not justify their unfocused search terms. The Complaint acknowledges that Key AI rebates are AI-specific. ¶¶ 67-68. Limiting the search terms to those AIs will give Plaintiffs documents about the creation, implementation, and effects as relevant to this litigation.[14] Plaintiffs do not, and cannot, explain *why* they need documents pertaining to other AIs—or general business or financial documents ***unrelated to any AI***—to "understand how Syngenta has [allegedly] used the program to monopolize the markets for azoxystrobin, mesotrione, or metolachlor." Mot. 15. Syngenta produced over 300,000 documents during the investigation, yet Plaintiffs have not cited a single one that they claim is relevant but does not reference a Relevant AI or a product containing a Relevant AI.

That Syngenta asserts that relevant markets include more than a single AI does not justify unfocused search terms. AIs that compete with a Relevant AI would be discussed in documents concerning the Relevant AI. (A document describing azoxystrobin's

---

[13] *Explore all crop protection products*, SYNGENTA, https://www.syngenta-us.com/crop-protection/all-products (listing Syngenta branded products, but not private label or other relevant products).

[14] Syngenta has agreed to provide documents from 2002 regarding Key AI's first use—when s-metolachlor was included. Therefore, Syngenta's proposal to limit search terms to the Relevant AIs will capture documents about Key AI's original creation and implementation.

15

competitive landscape would include azoxystrobin.)  Further, from Syngenta's numerous

investigation submissions, Plaintiffs should know what AIs compete with the Relevant AIs.

*E.g.*, Ex. 9 (FTC-Syngenta-00000144) (listing competitors to Syngenta's Relevant AI

products).  Yet Plaintiffs make no attempt to reasonably limit the AIs subject to discovery.

Plaintiffs' argument that some—but not all—of their proposed terms were used

during the investigation (Mot. 16) is unavailing.  Syngenta's argument is that ***the specific***

***allegations Plaintiffs chose to make*** limit Plaintiffs' discovery.  The investigation was

broad by design, covering purported ███████████████████████████████████████

███████████████████████████████ Ex. 10 (FTC Resolution, File No. 191-0031

(Apr. 27, 2020)).  This litigation's scope is much narrower—focusing on one rebate[15] and

three AIs, and discovery should be similarly focused.

Plaintiffs try to justify their unbounded demands by pointing to the fact that this is

an antitrust case.  Mot. 15, 19.  But there is no "antitrust exception" to fundamental

principles of discovery.  *See Seaman*, 2018 WL 1441267, at *4-5 (discovery requests in

antitrust case were overbroad and unduly burdensome where not limited to subject matter

of allegations).

### b.    Overly Burdensome Search Terms

Plaintiffs' proposal imposes burden disproportionate to the needs of this case.  For

example: Plaintiffs' demand would require Syngenta to search all documents that mention

████████ within three words of ███████; all documents that mention ██████████ or ███████

---

[15] Even the allegations regarding the Corteva supply agreements focus on Key AI.  ¶¶ 108-112, 122.

16

within three words of ███; and all documents that include ████ regardless of what is being compared. Mot. 13. Syngenta tested these terms, and the results prove the undue burden: the term ████████ yields approximately 26,000 documents for further search and review; ██████████ yields approximately 22,000; ████████████ yields approximately 14,000; and █████ yields almost 15,000. The search string regarding loyalty programs alone yields almost *239,000* documents![16] Miller Declaration, ¶ 3.

Plaintiffs fault Syngenta for not knowing every detail about the scope of document review more than six months before the deadline to substantially complete productions. Mot. 16-17. But to articulate the burden as Plaintiffs suggest is needed, Syngenta would need to *incur* that burden. No such obligation exists.

## III. Plaintiffs Seek Irrelevant, Incomplete, and Inaccurate Data that Lack Nexus to the Allegations

### a. Plaintiffs' Requests Are Not Tailored to This Litigation

Plaintiffs' demand for data unrelated to the Relevant AIs far exceeds the scope of the Complaint. While the Complaint focuses on three AIs, Plaintiffs' data demands cover **over fifty AIs** Syngenta currently offers amounting to *hundreds* of products, with each product having multiple SKUs for which data would need to be identified.[17] This does not include the AIs or products Syngenta no longer offers that would become subject to

---

[16] That "Request Terms" may narrow the population does not negate this burden, because the resulting set of documents that may need to be reviewed will still be unduly broad and burdensome, and will touch on irrelevant aspects of Syngenta's business.

[17] *See supra* note 13.

discovery.  Plaintiffs enjoyed unfettered access during the investigation, and should not be given such access again, particularly without justification.  *Elsayed v. Fam. Fare LLC*, 2019 WL 8586708, at *3 (M.D.N.C. Oct. 31, 2019) (discovery request without "nexus to the issues in [the] case" constituted "blatant fishing expedition").

On AI-scope, Plaintiffs again assert that Syngenta's proposed market definition warrants discovery of nearly Syngenta's entire portfolio.  Mot. 18.  However, the AIs against which the Relevant AIs primarily compete are those of other competitors—not Syngenta.  Plaintiffs know this.  Syngenta's submissions during the investigation specifically described such information.  *See, e.g.*, Ex. 11 at 1 (Syngenta_FTC_00129730) (promotional material comparing Acuron crop yields against competitors' products based on AIs different from those in Acuron); Ex. 12 at 2 (BASF, Technical Information Bulletin) (competitor describing its product's benefits compared to Syngenta products based on different AIs); Ex. 13 at 2 (Corteva, Approach Prima) (same); Ex. 14 (FMC, Technical Bulletin) (same).

Plaintiffs argue that such access is necessary for benchmarking or other analyses Plaintiffs' experts "***may***" do.  Mot. 18-19 (emphasis added).  The mere ***potential*** that an expert ***might*** want to conduct certain analyses does not justify limitless discovery.  Just as Plaintiffs must live with their Complaint, so must their experts.  Plaintiffs seek an unbounded excursion for data on nearly all Syngenta AIs.  That demand is not a reasoned proposal intended to identify discoverable information.  Plaintiffs' citations do not suggest otherwise.  Exhibit S ███████████████████████████████████████

███████████████████████████████████████████████████████—highly

different products.  Exhibit T, ███████████████████, is inapposite. *See supra* note 12.

The cases Plaintiffs cite (Mot. 18-19) also do not help them.  In *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, no generic Restasis was on the market; thus no data were available. 335 F.R.D. 1, 15 (E.D.N.Y. 2020).  Because the expert lacked data on generic Restasis, the expert had to rely on data from a similar market not alleged to be affected by the defendant's conduct.  *Id.*  Here, generics are on the market; Plaintiffs will have access to volumes of data about them.  In *In re Plastics Additives Antitrust Litigation*, plaintiffs requested eight months of additional data regarding the relevant product, for which defendants had already produced some data.  2009 WL 10741541, at *1 (E.D. Pa. Oct. 29, 2009).  Here, Plaintiffs' request is not for a small window of additional data about Relevant AIs, but instead for more than a decade of data about AIs nowhere in the allegations.

Plaintiffs assert that Syngenta ***may*** rely on its own data.  But hypotheticals cannot support unbounded discovery.  If Syngenta considers data on different AIs, that will be because such AIs were identified as appropriate comparators—something Plaintiffs have not done.  And if that occurs, Syngenta will provide Plaintiffs any data "considered by [its experts] in forming [their opinion]," as required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii).  Syngenta need not produce all company-wide data that ***could conceivably***—but ***might not actually***—be considered by its experts.  Such limitless and unjustified intrusion would only expand the issues.

### b.     Plaintiffs Inappropriately Seek Decades of Unreliable Data

Plaintiffs assert that Syngenta made "naked contention[s]" or "generalized claims" as to the unreliable nature of certain pre-2015 data. Mot. 20. But Syngenta clearly explained:



Ex. U.  During meet-and-confers, Syngenta elaborated on the problems and burdens accompanying Plaintiffs' demand for pre-2015 SAP data, and their impact on discovery and future data use. For instance,



[18]  This detailed, substantive engagement is not like the defendant's boilerplate "objection as too vague and burdensome." in *Bank of Mongolia v. M & P Global Financial Services, Inc.*, 258 F.R.D. 514, 516 (S.D. Fla. 2009). Regardless, Syngenta need not know now every conceivable problem existing with the data, nor the exact extent of the burden required to overcome those problems.

---

[18] Five of the six RFPs requesting internal Syngenta data require SAP data, showing the magnitude of this issue.

20

Information that is unreliable because of inaccuracy or incompleteness is inappropriate for discovery. Discovery helps litigants and the Court learn facts and narrow issues. *See* 8 Wright & Miller, Federal Practice and Procedure § 2014 (3d ed. 1998) ("[T]he purpose of the discovery rules is … to narrow and define the issues."). Incorrect data risk taking the Court *away* from the truth and are therefore irrelevant to proving any claim. *See Roach v. T.L. Cannon Corp.*, 2012 WL 13201834 (N.D.N.Y. Aug. 1, 2012) (denying discovery for records that were inaccurate and would not help establish pertinent issues), *aff'd*, 2012 WL 13201835 (N.D.N.Y. Oct. 10, 2012).

Plaintiffs contend these data issues are for expert testimony. Mot. 20. Not so. Plaintiffs' demand expands, not narrows, the scope of disputes **for this Court to resolve.** Judicial efficiency requires Plaintiffs' demand be denied.

The burdens of collection, verification, and review of pre-2015 SAP data significantly outweigh any benefits. This case is about one rebate—but the demanded SAP data ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████ As such, Plaintiffs' demand puts the date range of SAP data in noted contrast with other data being provided. For these reasons, any limited benefit of pre-2015 SAP data does not match the substantial burden created by producing it.

## IV.    Andrew Fisher Is An Inappropriate Custodian

Information in Fisher's possession as Product Marketing Lead that might impact business operations would be in the files of the multiple layers of individuals above the Product Marketing Lead—who are all custodians.  The burden of a duplicative custodian outweighs any benefit.  *See Jordan*, 921 F.3d at 188-89 (proportionality protects parties from "cumulative" discovery even if "relevant in some way to the parties' dispute").

The documents Plaintiffs cite related to this role do not support the need for another custodian.  Exhibit W, ████████████████████ do not show he had responsibility for the ████ contents.  Instead, that content is duplicative of an earlier-dated document that identifies the ██████████████████████████████

██████████████████████████████ Ex. 8 (CX2045).  ██████

██████████████████████████ Ex. 4 at 34:17-23 (Rex Wichert IH Tr.).

Wichert's testimony cited by Plaintiffs ██████████████. Ex. N.  ████████

████████████████████████████████████████

████████ Ex. X at 1.  ████████████████████████████

██████████████████████████████ *Id.*

Fisher's cited testimony supports Syngenta's position: "Jeff Cecil's the head of crop protection marketing, and then there's a level of managers underneath Jeff, … and then under him would have been my role and the other product leads."  Ex. Y at 80:9-13.  Cecil sits below the head of the U.S. business, Vern Hawkins (another custodian).  Ex. 15 (organizational chart).  Plaintiffs thus demand an individual ***multiple levels below those with decision-making authority***—without showing that they have seen anything to suggest

22

that Fisher possesses unique, relevant information.  Generic statements about "manag[ing]" or being "involved in" certain topics, about which Fisher states he would "not be the expert," do not justify Fisher's inclusion.  Ex. Y.

Fisher's Commercial Unit ("CU") Head role also does not make him an appropriate custodian.  This role is unlikely to be "a source of highly relevant documents."  Mot. 22.  Otherwise, Plaintiffs would not have offered to drop the other CU Heads as custodians, and Plaintiffs offer no basis for treating Fisher in his role as CU Head any differently from the other CU Heads. Plaintiffs' only citation to support this inclusion is fewer than ten words containing a vague reference to ███████████████████████████████ ████████████████████ in one document (out of almost 27,000 documents with Fisher as a custodian produced to the investigation).  Ex. Z.

Plaintiffs would also have Syngenta produce documents from Fisher's time as Digital Ag Solutions Marketing Manager, a role unrelated to Plaintiffs' allegations.  Plaintiffs provide no justification for this and, as such, Plaintiffs' proposal is not "appropriately targeted."  Mot. 22.

That other cases have more custodians is irrelevant.  The scope of discovery is based on the issues in ***the present case***.  Here, the issues are narrow—related to only one rebate offer and three AIs.

## CONCLUSION

Plaintiffs' Motion should be denied.

Date: July 16, 2024

*/s/ Patrick M. Kane*

Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone:  (336) 378-5200
Facsimile:  (336) 378-5400

James I. McClammy*
james.mcclammy@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4584
Facsimile: (212) 701-5584

*Specially appearing under L.R. 83.1(d)

*Attorneys for Defendants Syngenta Crop
Protection AG, Syngenta Corporation,
and Syngenta Crop Protection, LLC*

24

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) in that it does not exceed 6,250 words, excluding the exempted portions, as reported by word processing software.

/s/ *Patrick M. Kane*
Patrick M. Kane

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Patrick M. Kane*
Patrick M. Kane
