# EXHIBIT 7

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-509-D

SYNGENTA CROP PROTECTION, LLC,      )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )
                                    )        **ORDER**
ATTICUS, LLC,                       )
                                    )
        Defendant.                  )


This matter is before the court on the following motions, which have been

referred for disposition pursuant to 28 U.S.C. § 636(b)(1)(A) by the Honorable James

C. Dever III, United States District Judge:

      1.     Plaintiff's First Motion to Compel Discovery [DE #50];

      2.     Defendant's Motion to Compel Discovery [DE #73];

      3.     Plaintiff's Motion to Grant Access to Confidential Materials [DE #89];

      4.     Defendant's Second Motion to Compel Discovery [DE #91];

      5.     Plaintiff's Motion for Protective Order to Prohibit Depositions
[DE #127];

      6.     Plaintiff's Second Motion to Compel Discovery [DE #135];

      7.     Defendant's Third Motion to Compel Discovery [DE #143];

      8.     Defendant's Fourth Motion to Compel Discovery [DE # 148];

      9.     Defendant's Fifth Motion to Compel Discovery [DE #198];

      10.    Defendant's Sixth Motion to Compel Discovery [DE #220];

11. Defendant's Seventh Motion to Compel Discovery [DE #235]; and

12. Defendant's Eighth Motion to Compel Discovery [DE #241].

The parties have fully briefed the issues, and a joint status report was filed by the parties on July 21, 2021. A hearing was held on the motions on July 28, 2021, and July 30, 2021. The motions are therefore ripe for decision.

## BACKGROUND

This is an action for alleged infringement of U.S. Patent Nos. 8,124,761 ("the '761 Patent") and 8,552,185 ("the '185 Patent") (collectively "the Patents-in-Suit"), which disclose methods for making the agricultural fungicide azoxystrobin. Syngenta Crop Protection, LLC ("Syngenta") filed this action against Atticus, LLC ("Atticus") alleging that Atticus imports, uses, offers for sale, and sells in the United States azoxystrobin technical that is made by third parties using the claimed methods of the Patents-in-Suit, as well as various end-use products that are formulated using the patented methods. Atticus denies infringement and asserts the Patents-in Suit are invalid. Atticus has filed counterclaims seeking declaratory judgments of noninfringement and invalidity of the Patents-in-Suit and asserting claims against Syngenta for anticompetitive practices in violation of Section 2 of the Sherman Act, defamation, and unfair or deceptive acts or practices in violation of North Carolina law. Presently before the court are various discovery motions filed by the parties.

## DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Relevance is "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *EEOC v. Sheffield Fin., LLC*, No. 1:06-CV-00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007). Generally, "[t]he party seeking discovery has the burden to establish its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted." *Bost v. Wexford Health Sources, Inc.*, No. 1:15-CV-3278-ELH, 2020 WL 1890506, at *8 (D. Md. Apr. 15, 2020) (first citing *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018); and then citing *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005)).

Rule 26 requires the court to limit the frequency or extent of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or the discovery sought is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). The rule also authorizes the court to impose appropriate limitations on discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

3

Such protective orders may include, *inter alia*, provisions "forbidding the disclosure or discovery"; "specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery"; "prescribing a discovery method other than the one selected by the party seeking discovery"; or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A)–(D).

## I.    Syngenta's First Motion to Compel Discovery [DE #50]

At the motions hearing held July 28, 2021, Syngenta represented that only two issues raised in its first motion to compel remain—(1) whether Atticus should be required to produce documents containing factual information about a third-party vendor's process for making azoxystrobin; and (2) whether Atticus should be required to produce unredacted versions of documents submitted by Atticus to the U.S. Environmental Protection Agency ("EPA"). Atticus objects to the discovery sought by Syngenta's first motion to compel.

### A.    Third-Party Vendors' Processes for Making Azoxystrobin

Atticus represents it has provided Syngenta with samples of azoxystrobin technical manufactured by its third-party vendors so that Syngenta could conduct its own testing to determine whether the azoxystrobin used in Atticus' products was made using the methods claimed by the Patents-in-Suit. Atticus further argues that information concerning the catalyst used by its third-party vendor is protected work product, as it was obtained by Atticus' outside counsel pursuant to a confidentiality agreement for the purpose of investigating Syngenta's claims and has not been shared

with Atticus. Moreover, Atticus asserts, Syngenta is aware of the identity of the third-party vendor and has not shown it is unable to obtain the information directly from the third-party vendor.

Based upon Atticus' representations, the court finds that this information is protected work product. As Syngenta has not demonstrated "a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship," *Smith v. Scottsdale Ins. Co.*, 621 F. App'x 743, 746 (4th Cir. 2015) (unpublished) (per curiam) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)), the court denies its motion to compel Atticus' outside counsel to produce the information.

### B. Atticus' EPA Submissions

As to its EPA submissions, Atticus represents that information redacted from the documents provided to Syngenta concerns Atticus' proprietary formulation of its end-use products and not the components used in its third-party vendors' manufacture of azoxystrobin. Additionally, Atticus maintains it has offered to provide Syngenta with samples of its end-use products from its toll manufacturers so that Syngenta can conduct its own testing to determine whether the azoxystrobin used in Atticus' products infringes the Patents-in-Suit.

The information sought from Atticus' EPA submissions does not appear relevant to the claims or defenses raised, and given the proprietary nature of the information, Syngenta's requests in this regard are not proportional to the needs of this action. *See* Fed. R. Civ. P. 26(b)(1) (outlining factors to consider in determining

proportionality of discovery sought). Syngenta's motion to compel production of unredacted copies of Atticus' EPA submissions is therefore denied.

## II.    Syngenta's Motion to Grant Access to Confidential Materials [DE #89]

On September 15, 2020, a Protective Order was entered in this case. Upon the parties' agreement, a provision was included in the order restricting access to information designated as "Highly Confidential – Outside Counsel Only" by the parties or non-parties, such as third-party vendors. (Protective Order [DE #47] § 5.3, at 9.) Pursuant to Section 5.4(d) of the Protective Order, Syngenta requests that its Senior Assistant General Counsel Mark Smith be allowed access to information designated by Atticus as "Highly Confidential – Outside Counsel Only." Syngenta asserts that Smith is not involved in competitive decision-making and his duties have recently become focused solely on day-to-day litigation management.

Atticus objects to Smith having access to information designated as "Highly Confidential – Outside Counsel Only." Alternatively, if Syngenta's request is allowed, Atticus requests that one of its corporate representatives be granted similar access to information designated by Syngenta as "Highly Confidential – Outside Counsel Only."

The parties having agreed upon the protection afforded by the designation of material as "Highly Confidential – Outside Counsel Only" and Syngenta having made no showing for the need of blanket access by its in-house counsel, Syngenta's motion is denied. In the event Syngenta is able to identify particular information that it

6

requests in-house counsel access, it may make such a request pursuant to Section 5.4 of the Protective Order.

## III.    Syngenta's Motion to Prohibit Depositions [DE #127]

Syngenta also seeks to prohibit Atticus from deposing Syngenta's President, Vern Hawkins, and Syngenta's Assistant General Counsel James Cueva. (Pl.'s Mot. Protective Order Regarding Improper Depos. [DE #127].)

### A.    Deposition of Syngenta's Assistant General Counsel

Although not prohibited by the Federal Rules, the deposition of an opposing party's attorney is a drastic and highly disfavored measure. *CTB, Inc. v. Hog Slat, Inc.*, No. 7:14-CV-157-D, 2016 WL 1244998, at *6 (E.D.N.C. Mar. 23, 2016); *Am. Heartland Port, Inc. v. Am. Port Holdings, Inc.*, No. 5:11-CV-50, 2014 WL 12605549, at *2 (N.D.W. Va. Apr. 7, 2014). Thus, the burden in such instances does not lie with the party opposing the deposition. Instead, a party seeking to depose an opposing party's attorney must "establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome." *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C. 1987). To meet this burden, the party must show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (citation omitted); *accord CTB, Inc.*, 2016 WL 1244998, at *6; *Am. Heartland Port, Inc.*, 2014 WL 12605549, at *2–3.

7

Atticus has failed to meet this burden. Atticus has not demonstrated that Cueva possesses relevant information that cannot be obtained by other means. Moreover, to the extent Atticus seeks to depose Cueva regarding his involvement in ███████████ ████████████████████████ such information appears to be protected work product. Atticus having failed to demonstrate "a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship," *Smith*, 621 F. App'x at 746 (quoting *Chaudhry*, 174 F.3d at 403), it has not overcome the work-product privilege. Accordingly, Atticus has not met its heightened burden to justify the deposition of Cueva.

## B. Deposition of Syngenta's President

To ensure that the "liberal rules of procedure for depositions are used only for their intended purpose" and not for purposes of harassment or to inflate discovery costs, courts generally impose a heightened burden to justify the deposition of an opposing party's high-ranking corporate executives. *Performance Sales & Mktg., LLC v. Lowe's Companies, Inc.*, No. 5:07-CV-140-RLV, 2012 WL 4061680, at *3–4 (W.D.N.C. Sept. 14, 2012) (discussing courts' application of a "rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or . . . constitutes 'good cause' for [a protective] order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)"). This heightened standard, known as the apex doctrine, requires a party seeking to depose a corporate party's high-ranking officer to show "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for

8

obtaining the information sought have been exhausted." *Id.* (quoting *Wal-Mart Stores, Inc. v. Vidalakis*, No. 5:07-CV-39, 2007 WL 4591569, at *1 (W.D. Ark. Dec. 28, 2007)).

Here, Atticus seeks to depose Vern Hawkins. While Atticus argues Syngenta has not established Hawkins is an apex officer, a declaration submitted by Mark Smith, Senior Assistant General Counsel for Syngenta, demonstrates otherwise. According to Smith, Hawkins is "the senior most business executive of the Syngenta North America Crop Protection business group," serves as a Director and Chairman of Syngenta's Board of Directors, and as Syngenta's President has "ultimate responsibility for [Syngenta's] business operations in North America." (Decl. Mark Smith, Ex. 8 to Mem. Supp. Mot. Protective Order [DE #129-9] ¶ 4.) Syngenta did not list Hawkins in its initial disclosures or in discovery responses as an individual with information relevant to the case. That Hawkins may have spoken with Syngenta employees regarding Syngenta's business operations or that he may have signed, on Syngenta's behalf, one or more contracts ███████████████ does not establish that he has unique or special knowledge of facts that would warrant his deposition. Nor has Atticus shown that it has exhausted other, less burdensome avenues for obtaining the information it seeks from Hawkins. Accordingly, Atticus has not met its heightened burden to depose Hawkins.

## IV. Syngenta's Second Motion to Compel [DE #135]

With regard to Syngenta's Second Motion to Compel, the parties have resolved their disputes, with the exception of Atticus' failure to produce one document from ██

█████████████████████████████████████████

████████████████. At the motions hearing, Atticus explained that the companies had previously been parties to a confidentiality agreement, so Atticus included the document on its privilege log and requested that Syngenta confirm with ██████ that the document could be produced to ensure Atticus was not violating any privilege, protective order, or confidentiality agreement. The document does not contain any legal advice of Atticus' attorneys or any legal advice directed toward Atticus. Accordingly, Atticus has not shown that the document is privileged and should be required to produce the document to Syngenta.

## V.    Atticus' First Motion to Compel Discovery [DE #73]

Atticus' first motion to compel concerns Syngenta's discovery obligations with respect to its corporate affiliates. Atticus contends that documents responsive to its discovery requests reside with related Syngenta entities within Syngenta's control but that Atticus is unable to determine the extent of discovery deficiencies because Syngenta refuses to disclose its corporate structure.

Syngenta asserts that counsel for the parties met and conferred on a number of occasions and reached an agreement that Syngenta would produce documents regarding licensing, research and development, and the investigation of potential infringement in the possession of Syngenta or its affiliated entities, notwithstanding the lack of any legal right to the documents sought by Atticus. While Syngenta has produced information regarding its corporate structure, it does not appear to have

10

produced information concerning the corporate structure of the Syngenta Group umbrella and the relationships among its business entities.

At the motions hearing, Atticus represented that as to its first motion to compel it was asking only that Syngenta produce an organizational chart of the Syngenta Group entities so Atticus could meet and confer with Syngenta regarding any alleged deficiencies in Syngenta's discovery responses. Documentation concerning the corporate structure of the Syngenta Group appears relevant and proportional to the needs of the case and should therefore be produced.

## VI. Atticus' Second and Sixth Motions to Compel Discovery [DE ## 91 & 220]

Atticus' second and sixth motions to compel concern Syngenta's internal



Syngenta asserts it has provided Atticus with information concerning ███████████████████████████████████████ As to ███████████████████████████████████████████████████ ████████████ Syngenta contends the discovery sought is not relevant to any claim or defense and is protected work product. (Pl.'s Mem. Opp. Defs.' 2d Mot. Compel [DE #98] at 5.) In support of its work-product claim, Syngenta has submitted a declaration from in-house counsel James Cueva averring that ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ (Decl. James Cueva Supp. Pl.'s Opp. Defs.' 2d Mot. Compel [DE #98-2] at ¶¶ 4, 6.) He states that the ████████ ████████████████████████████████████████████████ and [are] not

11

used for Syngenta's marketing, research and development, or other business operations." (*Id.* ¶ 7.)

Syngenta has made a sufficient showing that the ████████████ ████████████████████████████████████ is conducted in anticipation of litigation and is therefore protected by the work-product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A) (protecting "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative"). However, Syngenta should not be permitted to use the results of ████████ as both a sword and a shield. To the extent Syngenta's expert witnesses rely upon ████████ or Syngenta otherwise places ████████ at issue by, for example, claiming there are no reasonable alternatives to the azoxystrobin processes claimed by either of the Patents-in-Suit or that the burden of proving infringement should be shifted pursuant to 35 U.S.C. § 295 because Syngenta "has made a reasonable effort to determine the process actually used in the production of [Atticus'] product and was unable to so determine," 35 U.S.C. § 295, it would be incumbent upon Syngenta to disclose its ████████ so that Atticus can attempt to refute Syngenta's claims. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (authorizing discovery of work product where a "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").

## VII.  Atticus' Third Motion to Compel [DE #143]

In its third motion to compel, Atticus seeks an order compelling Syngenta to search any chatter group databases on its Salesforce.com platform for information

responsive to Atticus' first set of discovery requests. Syngenta argues Atticus' motion is moot as Syngenta has since searched for, collected, and produced all but two privileged documents from the ████████ chatter group, which is the target of Atticus' motion. As to this motion, the court denies Atticus' motion to compel disclosure of the two documents withheld as privileged and orders Syngenta to provide supplemental discovery responses with appropriate declarations as to any databases searched and the results thereof.

## VIII.   Atticus' Fourth Motion to Compel [DE #148]

In its fourth motion to compel, Atticus asserts that Syngenta's privilege log is deficient in that Syngenta has refused to document allegedly privileged documents withheld, such as ████████ claimed to be work product. While this information may be privileged, *see supra*, it is relevant to the claims or defenses raised in this action. Accordingly, the court orders Syngenta to supplement its privilege log in accordance with the parties' Rule 26(f) report adopted by the court.

## IX.   Atticus' Fifth Motion to Compel [DE #198]

Atticus' fifth motion to compel relates to information regarding ████████ ████████████████████████████████████████████████████████ ████████ Atticus asserts the information is relevant to its counterclaims asserting unfair competition and antitrust violations, including sham litigation and violation of the Sherman Act, as well as to Syngenta's damages claim. Syngenta claims the request is premature because it has moved to dismiss Atticus' antitrust

claims and to stay discovery as to those claims. It further argues that information

concerning  is not relevant to Syngenta's damages claim.

While information gleaned from ████████████ may not be admissible

at any trial of this case, evidence that Syngenta ████████████████████

████ may lead to evidence relevant not only to Atticus' counterclaims but also the

valuation of Syngenta's patented invention and thus the issue of a reasonable royalty.

Syngenta should therefore be required to disclose information regarding ████████

████████████████████████████████████████

████████████

## X.    Atticus' Seventh Motion to Compel [DE #235]

Between June 7 and June 12, 2021, Syngenta clawed back 195 documents that

it claimed were privileged and had been inadvertently produced on May 27, 2021.

Atticus seeks to compel Syngenta's disclosure of these documents, arguing Syngenta

has (i) failed to provide any facts to meet its burdens of establishing privilege and

inadvertence in its disclosure of the documents; and (ii) waived any claim of privilege

by failing to produce an adequate privilege log.

Consistent with Fed. R. Evid. 502(d), the Protective Order and E-Discovery

Order entered in this case explicitly address inadvertent disclosures, such as at issue

here. Section 8 of the Protective Order provides as follows:

> If a Producing Party inadvertently discloses to a Receiving Party
> information that is privileged or otherwise immune from discovery, the
> Producing Party shall promptly upon discovery of such disclosure so
> advise the Receiving Party in writing and request that the item or items
> of information be returned or destroyed, and no party to this action shall
> thereafter assert that such disclosure waived any privilege or immunity.

14

The Receiving Party will immediately return the item or items requested (including any copies thereof as well as any notes or other materials reflecting the content of any such item) and refrain from any use of such information. The party having returned such inadvertently produced item or items of information may, however, without asserting waiver because of inadvertent production, seek production of any such documents in accordance with the Federal and Local Rules of Civil Procedure.

(Protective Order [DE #47] at 13.) Likewise, the E-Discovery Order provides that "[p]ursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged or work-product protected ESI is not a waiver in the pending case or in any other federal or state proceeding." (E-Discovery Order [DE #48] at 5, ¶ 8.)

In support of its position, Syngenta has submitted a declaration of counsel that the documents clawed back are privileged or protected work product. Counsel further attests that "Syngenta did not intend to produce or otherwise disclose any of the 195 documents that Syngenta clawed back or any other document that is privileged or protected work product. The inclusion of those documents in the May 27 production was not purposeful." (Decl. Patricia A. Carson [DE #246] ¶ 17.) Syngenta further represents that it has since amended its privilege log to include the documents clawed back.

Based upon the claw-back provisions contained in the Protective Order and E-Discovery order, the court finds that Syngenta acted promptly and has not waived any privilege as to the documents clawed back. The fact that Atticus filed one of the documents with the court prior to Syngenta's claw back and no action had been taken to request removal of the document does not operate as a waiver of Syngenta's

privilege. Accordingly, Atticus' motion to compel disclosure of the documents is denied.

## XI.    Atticus' Eighth Motion to Compel [DE #241]

Atticus' eighth motion to compel concerns email discovery provided by Syngenta. The E-Discovery Order entered in this case provides that email production requests "shall only be propounded for specific issues, rather than general discovery of a product or business" and, absent agreement of the parties, shall be limited to a total of ten search terms per custodian, up to seven custodians per producing party. (E-Discovery Order ¶¶ 4(b)–(d).) The order further provides that the court may allow five additional search terms per custodian upon a party's showing of "a distinct need based on the size, complexity, and issues of this specific case." (*Id.* ¶ 4(d).)

Atticus argues it provided Syngenta with reasonably limited search terms for emails of five custodians and that Syngenta has refused to conduct those searches based on unsupported, boilerplate objections and without first inquiring about the number of potential hits. It contends that Syngenta's email production of its three key custodians (34 emails over a five-year term) is unreasonable and that Atticus has a distinct need for further email discovery from these witnesses. Atticus further contends that Syngenta should be compelled to search the emails of Syngenta's President, Vern Hawkins, and Robert Sardzik, who has been identified as the employee who developed Syngenta's process for ████████████████████ ████████████████████

Syngenta contends that Atticus has not carried its burden of showing a distinct need for further email discovery. Syngenta asserts that Atticus' email requests are unjustified general discovery prohibited by the E-Discovery Order (not tailored to the specific issues in the case) and that Syngenta searched the identified custodians' emails using reasonable search terms agreed upon by the parties. Relying upon the apex doctrine, Syngenta opposes any search of Vern Hawkins' emails. It further objects to searching for emails of Robert Sardzik on the ground that the process for ████████████████████████ is not relevant to the claims or defenses in the action.

As discussed above, the apex doctrine is aimed at preventing a party from using the discovery rules as a tactic to harass or unduly increase litigation costs through the deposition of high-ranking corporate executives who have no direct knowledge of the facts involved in the case. It does not apply to other forms of discovery, such as email production requests.

Atticus' request that Syngenta search the emails of two additional custodians, Vern Hawkins and Robert Sardzik, is permitted under the terms of the E-Discovery Order which permits the identification of up to seven custodians. The court further finds that emails of these individuals may contain information relevant to the claims or defenses raised and Atticus' request is proportional to the needs of the case. Accordingly, the court directs the parties to work together to develop reasonable terms for the search of emails involving these two individuals. Atticus' motion to compel is otherwise denied, the court finding that Atticus has not shown a distinct need for further email discovery as required by the E-Discovery order.

## CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

1.  Plaintiff's First Motion to Compel Discovery [DE #50] is DENIED;

2.  Defendant's Motion to Compel Discovery [DE #73] is GRANTED as more fully set forth above;

3.  Plaintiff's Motion to Grant Access to Confidential Materials [DE #89] is DENIED;

4.  Defendant's Second Motion to Compel Discovery [DE #91] IS DENIED as more fully set forth above;

5.  Plaintiff's Motion for Protective Order to Prohibit Depositions [DE #127] is GRANTED;

6.  Plaintiff's Second Motion to Compel Discovery [DE #135] is GRANTED IN PART and DISMISSED AS MOOT IN PART;

7.  Defendant's Third Motion to Compel Discovery [DE #143] is DENIED, and Plaintiff is ORDERED to supplement its discovery responses as more fully set forth above;

8.  Defendant's Fourth Motion to Compel Discovery [DE # 148] is GRANTED as more fully set forth above;

9.  Defendant's Fifth Motion to Compel Discovery [DE #198] is GRANTED;

10. Defendant's Sixth Motion to Compel Discovery [DE #220] is DENIED as more fully set forth above;

11.    Defendant's Seventh Motion to Compel Discovery [DE #235] is DENIED; and

12.    Defendant's Eighth Motion to Compel Discovery [DE #241] is GRANTED IN PART and DENIED IN PART as more fully set forth above.

The clerk is directed to provisionally seal this Order. The parties shall have until September 30, 2021, to file any motion to seal this Order. In the event no such motion is filed, the clerk shall unseal this Order without further direction from the court.

This 15th day of September 2021.

KIMBERLY A. SWANK
United States Magistrate Judge