**TEMPORARY PUBLIC REDACTED VERSION**
**FILED PURSUANT TO LOCAL RULE 5.5 ALTERNATIVE PROPOSAL**

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>STATE OF CALIFORNIA,<br>STATE OF COLORADO,<br>STATE OF ILLINOIS,<br>STATE OF INDIANA,<br>STATE OF IOWA,<br>STATE OF MINNESOTA,<br>STATE OF NEBRASKA,<br>STATE OF OREGON,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS,<br>STATE OF WASHINGTON, and<br>STATE OF WISCONSIN,<br><br>        Plaintiffs,<br><br>   v.<br><br>SYNGENTA CROP PROTECTION AG,<br>SYNGENTA CORPORATION,<br>SYNGENTA CROP PROTECTION, LLC,<br>and<br>CORTEVA, INC.,<br><br>        Defendants. | Case No. 1:22-cv-00828-TDS-JEP |

## DEFENDANT CORTEVA INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

# Table of Contents

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................... 1
ARGUMENT ......................................................................................................................... 2
I.   PLAINTIFFS' DATA REQUESTS ARE NEITHER RELEVANT NOR
     PROPORTIONAL TO THE NEEDS OF THE CASE. ............................................. 3
II.  PLAINTIFFS' DATA REQUESTS ARE UNDULY BURDENSOME .................. 9
CONCLUSION .................................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Mongolia v. M & P Glob. Fin. Svcs.*,
   258 F.R.D. 514 (S.D. Fla. 2009) .............................................................................................10

*Cook v. Howard*,
   484 F.App'x 805 (4th Cir. 2012) ...............................................................................................2

*Cuomo v. Clearing House Assn., LLC*,
   557 U.S. 519 (2009) ................................................................................................................2, 3

*Dickman v. Banner Life Insurance Co.*,
   No. RDB-16-192, 2017 WL 4342064 (D. Md. Sept. 28, 2017) ...........................................4, 5

*FTC v. Syngenta Crop Protection AG*,
   No. 1:22CV828, 2024 WL 149552 (M.D.N.C. Jan. 12, 2024) ..................................................7

*In re Asacol Antitrust Litig.*,
   No. 15-12730-DJC, 2017 WL 11476172 (D. Mass. Jan. 3, 2017) ...........................................8

*In re WorldWide Language Res., LLC*,
   No. 5:22-MC-00005-RN, 2022 WL 2443437 (E.D.N.C. July 5, 2022) ...................................5

*J & J Sports Prods., Inc. v. Wofford*,
   No. 6:13-CV-02403-GRA, 2014 WL 2980250 (D.S.C. June 30, 2014)...................................2

*Nicholas v. Wyndham Int'l, Inc.*,
   373 F.3d 537 (4th Cir. 2024) ......................................................................................................2

**Statutes & Rules**

Fed. R. Civ. P. 26(a)(2)(B)(ii) ..........................................................................................................9

Fed. R. Civ. P. 26(b)(1) ....................................................................................................................2

Fed. R. Civ. P. 26(b)(2)(ii) ...............................................................................................................2

**Other Authorities**

*Crop Protection Products Finder*, CORTEVA, https://www.corteva.us/products-and-
   solutions/crop-protection/product-finder.html (last visited July 26, 2024) ...............................4

## PRELIMINARY STATEMENT

Plaintiffs have selectively challenged the rebate programs of Defendant Corteva, Inc. ("Corteva")—and those of co-Defendant Syngenta—despite the fact that these programs are ubiquitous in the crop protection product industry, embraced by customers, and reflect the very price competition between manufacturers that the antitrust laws were designed to promote. Given the loyalty programs' inherent procompetitive nature, Plaintiffs cannot challenge the programs writ large, so they instead challenge the programs "as applied" to three active ingredients ("AIs")—namely, acetochlor, oxamyl, and rimsulfuron (the "Relevant AIs").

After imposing years of onerous pre-Complaint investigation and compulsory process on Corteva, its co-Defendant, and countless third parties, across a wide range of crop protection products, Plaintiffs filed a Complaint focused on three AIs, and the deadline to amend that Complaint to add more AIs has passed.[1] Yet Plaintiffs now move to compel Corteva to produce data concerning *any* "crop protection products containing herbicide or insecticide/nematicide AIs … for the period 2012 to present (2010 to present for rimsulfuron)." (Mot. at 1.) Plaintiffs assert that beyond the Relevant AIs "identified and addressed in the Complaint … over the years Corteva has included in its loyalty program (and it currently includes) many more." (*Id*.)

---

[1] The deadline for Amended Pleadings ordered by this Court has passed. (Dkt. 195 at 4 (setting a deadline for Amendment of Pleadings of July 19, 2024).)

1

But that is not how discovery works. Plaintiffs already subjected Corteva to years of invasive investigation, with which Corteva dutifully complied.[2] Plaintiffs received significant volumes of documents and data. Plaintiffs had ample opportunity to expand the scope of their investigation and this action but failed to do so. Now is not the time for a fishing expedition on 20 times the number of AIs that Plaintiffs decided to challenge, but rather to hold Plaintiffs to the case they themselves decided to bring.

## ARGUMENT

Discovery must be "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Even assuming that th[e] information is relevant (in the broadest sense), the simple fact that requested information is discoverable … does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2024). The Court may limit discovery, including when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]" Fed. R. Civ. P. 26(b)(2)(ii). "[A] party may not merely assert that requested materials may lead to the discovery of admissible evidence without presenting any intelligible explanation of how that is so." *J & J Sports Prods., Inc. v. Wofford*, No. 6:13-CV-02403-GRA, 2014 WL 2980250, at *2 (D.S.C. June 30, 2014) (*citing Cook v. Howard*, 484 F.App'x 805, 813 (4th Cir. 2012)); *see also Cuomo v. Clearing House Assn., LLC*, 557

---

[2] In like fashion, Corteva has cooperated with Plaintiffs' First Request for Production, already making several major concessions, as Plaintiffs themselves acknowledge. (Mot. at 2 ("The parties have reached agreement on most issues. But they have now reached impasse on the scope of data productions that is the subject of this motion.").)

U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through … records for evidence of some unknown wrongdoing.").

Plaintiffs' demand for data across nearly all of Corteva's crop protection business runs roughshod over these principles. Despite characterizing its request as seeking a "targeted set of data," (Mot. at 2) Plaintiffs' data request includes the whole of Corteva's crop protection business save fungicides, which is by far the smallest product category in the business. Both the time period and the scope of products for which Plaintiffs request data go far beyond the scope of their earlier investigation and the specific allegations of their Amended Complaint. These demands are irrelevant, disproportionate, and unduly burdensome. They should be denied.

## I. PLAINTIFFS' DATA REQUESTS ARE NEITHER RELEVANT NOR PROPORTIONAL TO THE NEEDS OF THE CASE.

Plaintiffs' data requests are irrelevant, disproportionate, and not needed for the prosecution of their case. Plaintiffs admit that their data request includes "approximately sixty AIs" (Mot. at 3), even though the Amended Complaint challenges only three Relevant AIs. In seeking such an expansive set of AIs, Plaintiffs request data for nearly the entirety of Corteva's crop protection business. Indeed, even putting aside several dozen products that Corteva marketed during Plaintiffs' responsive period but no longer markets, Plaintiffs' request for all herbicides, insecticides, and nematicides seeks

3

data for 72 herbicide products and 14 insecticide/nematicide products.[3] Of those 72 herbicide products, only 18 contain acetochlor or rimsulfuron, and of the 14 insecticide/nematicide products, only 2 contain oxamyl. Plaintiffs' "concession" to exclude fungicides from their request is really no concession at all, as fungicides account for only 12 of Corteva's current products and have no relationship to the herbicides, insecticides, and nematicides at issue.[4] What is more, Plaintiffs' alleged justification for requesting data beyond the Relevant AIs primarily rests on abstract speculation about the potential work of its and Corteva's experts. Such considerations are incompatible with relevant and proportional discovery.

Courts rightfully deny discovery requests that exceed the bounds of a complaint's allegations. In *Dickman v. Banner Life Insurance Co.*, Plaintiffs moved to compel discovery in relation to claims for breach of contract and fraud in the sale of life insurance policies. No. RDB-16-192, 2017 WL 4342064, at *3 (D. Md. Sept. 28, 2017). The court examined "these two claims in order to evaluate whether all of the requested information in Plaintiffs' Motion to Compel [we]re first and foremost—relevant." *Id*. Noting that the defendant, Banner Life Insurance Co., sold "many different life insurance products and more than 99% of those products are not in any way relevant[,]" the court

---

[3] *See Crop Protection Products Finder*, CORTEVA, https://www.corteva.us/products-and-solutions/crop-protection/product-finder.html (last visited July 26, 2024) (applying "Herbicide", "Insecticide" and "Nematicide" filters).

[4] *See id.* (applying "Fungicide" filter).

reasoned that "the only relevant products are those specifically identified in Plaintiffs' complaint that were also affected by [alleged conduct]." *Id*. The court elaborated:

> Applying the "yardstick of proportionality" test to Plaintiffs' motion to compel, the only relevant policies are those described above in Plaintiffs' complaint. Therefore any discovery is limited to only those policies. If Defendant was an automobile manufacturer and produced 100 different types of vehicles and Plaintiffs alleged defects in two of those 100, Plaintiffs would not be entitled to discovery on the other 98 since they would not be relevant to Plaintiffs' claims. In this case it is not difficult to understand and appreciate Defendant's argument that producing discovery on all of its policies (with no limiting time period) would be unduly burdensome, expensive and time consuming since all of the other products are not relevant to Plaintiffs' claims of breach of contract and fraud. The Court agrees with Defendant that any discovery shall be limited to only the affected policies.

*Id.* at 4; *see also In re WorldWide Language Res., LLC*, No. 5:22-MC-00005-RN, 2022 WL 2443437, at *2 (E.D.N.C. July 5, 2022) (Courts will deny discovery "when discovery sought pertains to conduct that has not been specifically alleged in the complaint.").

Like in *Dickman*, Plaintiffs claim they are entitled to discovery on nearly all of Corteva's crop protection business despite alleging claims against only three Relevant AIs. And just as the *Dickman* court concluded, this Court should find that ordering Corteva to produce data for **at least** 66 products containing no Relevant AIs would be "unduly burdensome, expensive and time consuming since all of the other products are not relevant to Plaintiffs' claims[.]" 2017 WL 4342064, at *4.

To justify their request for discovery concerning nearly every Corteva AI, Plaintiffs offer two primary arguments: (1) that a broader scope of AIs is necessary for "benchmarking" (Mot. at 4-5), and (2) that Corteva's market definition necessitates a broad

5

scope of AIs (Mot. at 6-7). Both arguments fall short of establishing the relevance or proportionality of Plaintiffs' data request.

*First*, Plaintiffs argue that "sales and other data are vital evidence in an antitrust litigation, particularly one where unlawful conduct has resulted in higher prices, and where monetary damages are being sought." (Mot. at 4.) Corteva does not dispute that such data can be relevant in antitrust litigation; however, the issue here is one of the appropriate scope of requested data. As Plaintiffs acknowledge, Corteva offered data for eight additional AIs that were the subject of the FTC's pre-complaint investigation—nearly triple the number of AIs challenged—for the period from January 1, 2015 onward. (Mot. at 4 n.2.) Plaintiffs have made no showing as to why this additional data production, which served the Commission's purposes during its pre-Complaint investigation, is "insufficient" for purposes of benchmarking, comparison, establishing alleged damages, or otherwise. (*Id.*) Plaintiffs claim the datasets are needed to provide their "experts the highest likelihood of finding good comparator products" (Mot. at 6), but do not justify their tautological assertion that the group of eight additional AIs offered by Corteva "is inadequate because it is insufficient to ensure the scope of comparators necessary to conduct these analyses" (*id.*) Plaintiffs have provided no evidence in this regard (including any supporting declaration from its proposed expert(s)).[5]

---

[5] Among the eight additional AIs offered by Corteva ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Such products could therefore function as a comparator product for purposes of assessing the effects of loyalty programs. Plaintiffs ignore this. Likewise, Corteva's compromise proposal below (*see infra* p. 7) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Second*, Plaintiffs assert that Corteva's market definition warrants production of data covering nearly all of Corteva's crop protection business. (Mot. at 6-7.) True enough, Corteva rejects Plaintiffs' alleged market definition, which does not comport with the reality of competition in the marketplace. But at the motion to dismiss stage, Corteva only argued that Plaintiffs' allegations had not adequately excluded products with similar uses, chemical make-ups, and modes of action. *See FTC v. Syngenta Crop Protection AG*, No. 1:22CV828, 2024 WL 149552, at *8 (M.D.N.C. Jan. 12, 2024). Corteva did not purport to define a market at the motion to dismiss stage; nor was it obligated to. However, even to the extent Corteva identified substitute AIs in the same mode of action group (Dkt. 125 at 2-3) and labeled for the same uses (Dkt. 95 at 13-14) as the Relevant AIs, Corteva never suggested that *every* herbicide, insecticide, and nematicide is in the same market(s) as the Relevant AIs. Based on Corteva's prior representations and at this early stage, the relevant market is fairly construed as no narrower than all AIs in the same mode of action groups and used to treat the same crops and pests as the Relevant AIs. Corteva is prepared to produce datasets for Corteva AIs meeting these criteria.

Nevertheless, Plaintiffs seek discovery on all herbicides, insecticides, and nematicides, without any principled limitation. Plaintiffs' failure to offer any meaningful distinction between pesticide products illustrates another failure in their market-definition argument for expanded discovery: whereas Plaintiffs' request seeks discovery on virtually the entirety of Corteva's portfolio, discovery limited to the substitute AIs described above would primarily encompass AIs manufactured by Corteva's competitors. Accordingly, third parties, not Corteva, would possess the data Plaintiffs seek.

7

For example, in Corteva's advocacy to the FTC, on which Plaintiffs rely (Mot. at 5), Corteva demonstrated that ███████████████████████████████ ███████████████████████████████████████ (*See* Ex. 1 (Corteva April 1, 2022 White Paper) at 33-34.)[6] Those competitors include ████████████ █████████████████████████ about which Plaintiffs will receive significant information through party discovery alone. Corteva's advocacy on rimsulfuron and oxamyl similarly illustrates that ████████████████████████████ ████████████████ (*See id.* at 36, 41.) Corteva should not be compelled to produce documents on the basis of a market definition encompassing nearly all AIs that neither party endorses, particularly when a more appropriate market definition requires discovery primarily from Corteva's competitors. *See In re Asacol Antitrust Litig.,* No. 15-12730-DJC, 2017 WL 11476172, at *1 (D. Mass. Jan. 3, 2017) (denying motion to compel because "the relevant product market is not appropriately decided in the context of the instant motion to compel" and the information on interchangeable products sought by the requesting party was "unlikely to be obtained from information that is in the [counterparty's] possession").

Plaintiffs' other arguments are inherently speculative and premised on analyses that Plaintiffs feel they *may* need and data that *might* be supportive of their arguments. Such hypotheses do not justify the burdensome, nearly unlimited data request

---

[6] The exhibits cited as "Ex. _" are attached to the Declaration of Maximilian Auerbach filed concurrently with this memorandum.

that Plaintiffs seek to impose on Corteva. Additionally, should Corteva rely on its own data beyond the Relevant AIs, which Plaintiffs misrepresent as inappropriate or unfair, Corteva will be required to produce any such data "considered by [its experts] in forming [their opinion,]" consistent with Federal Rule of Civil Procedure 26(a)(2)(B)(ii). In light of this foundational discovery obligation, there is no basis to require Corteva, on an *ex ante* basis, to produce data it *could* use, encompassing nearly the entirety of its crop protection business.

Finally, Plaintiffs not only seek data of disproportionate product scope, but also for a disproportionate time period. Plaintiffs demand data "for the period 2012 to present (2010 to present for rimsulfuron)" (Mot. at 1)—a near fifteen-year time period. Yet Plaintiffs articulate no reason why having over a decade's worth of data is relevant or proportional to proving their case, other than noting the existence of Corteva "loyalty programs ▆▆▆▆▆▆▆▆." (Mot. at 7.) While data beyond the period offered by Corteva could theoretically be relevant "for assessing effects, market definition, and market power" (Mot. at 8), that does not establish that Plaintiff's request is proportional to the needs of their case.

For the reasons stated above, Plaintiffs' data requests are neither relevant nor reasonably proportional to the needs of this case.

## II. PLAINTIFFS' DATA REQUESTS ARE UNDULY BURDENSOME.

Plaintiffs claim that Corteva has failed to substantiate any undue burden associated with producing the requested data and that Corteva has therefore waived the objection. (Mot. at 9-10.) The burden here is obvious: Plaintiffs request that Corteva

9

produce data for a period of nearly 15 years and for 20 times the number of Relevant AIs. This proposal is necessarily more burdensome than the eight-year period and three AIs proposed in Corteva's Responses and Objections, wherein Corteva specifically identified its concerns with the burden of Plaintiffs' request. (*See, e.g.*, Dkt. 227-3 (Corteva's Resps. & Objs.) Response to Request No. 27 (objecting to "the time period for which this request seeks documents—namely, the period from January 1, 2002 to the present—as overly burdensome"); Objection to Definition Nos. 6-7 (objection to definitions of "Covered Crop Protection Product" and "Crop Protection Product" as not limited to the Relevant AIs); General Objection No. 9 (objecting to production beyond the Relevant AIs); Objection to Instructions, Production Format and Relevant Time Period No. 2 (objecting to time period of January 2015 to present).) Corteva therefore sufficiently explained its objections and did not waive them. *See Bank of Mongolia v. M & P Glob. Fin. Svcs.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) (involving objections that "were entirely conclusory and contained no explanation as to why Defendants viewed [the request] as 'vague or burdensome.'").

Even to the extent more specific information is required, Plaintiffs already have that information. Correspondence between Plaintiffs and Corteva during the investigation explains in significant detail the availability and limitations of the "manufacturing, margin and cost, sales [and] loyalty calculation" datasets sought here. (Mot. 1.) For example, Corteva explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ex. 2 (Letter from M. Segall to M. Turner, dated October 2, 2020) at 2); that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at 2-3); ▮▮▮▮▮

10

███████████████████████████████████████████████████████████

████████████████████ (*id.* at 4); and that ████████████████

███████████████████████████████████████████████████████████

████████████████████████████████ (Ex. 3 (Letter from M. Segall to M. Turner, dated October 14, 2020) at 2-3.) Despite expressly acknowledging many of these limitations during the investigation, Plaintiffs now claim complete ignorance as to the availability of these data sources. (*See* Ex. 4 (Letter from M. Turner to N. Peles, dated August 4, 2020) at 1 ("█████████████████████████████████████

██████████████████████████").)

In any event, and as stated above, Corteva is not opposed to some expansion of the datasets at issue, including to capture Corteva AIs in the same mode-of-action group and used on the same pests/crops as the Relevant AIs. However, any expansion must be reasonable and proportionate to the needs of the case. Plaintiffs' request for data on almost every Corteva AI for a period of almost 15 years is neither reasonable nor proportionate.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied.

DATED this 26th day of July, 2024.

/s/ *Mark E. Anderson*
Mark E. Anderson
N.C. State Bar No. 15764
manderson@mcguirewoods.com
MCGUIREWOODS LLP
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Phone: 919.755.6600

/s/ *David R. Marriott*
David R. Marriott*
dmarriott@cravath.com
Margaret T. Segall*
msegall@cravath.com
Jesse Weiss*
jweiss@cravath.com
Benjamin J. Bauer*
bbauer@cravath.com
Maximilian J. Auerbach*
mauerbac@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Specially appearing (L.R. 83.1(d)).
*Attorneys for Defendant Corteva, Inc*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) in that it does not exceed 6,250 words, excluding the exempted portions, as reported by word processing software.

/s/ <i>Mark E. Anderson</i><br>
Mark E. Anderson