# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN, | Case No. 1:22-cv-00828-TDS-JEP |
| Plaintiffs, | **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY OF SYNGENTA DEFENDANTS** |
| v. | |
| SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC., | **[TEMPORARY PUBLIC REDACTED VERSION]** |
| Defendants. | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT.................................................................................................................. 1

I.      SYNGENTA CROP PROTECTION AG MUST PRODUCE
        RELEVANT MATERIALS ................................................................................ 1

        A.      Syngenta's Relevance Arguments Fail ................................................. 1

        B.      Syngenta Does Not Substantiate a Conflict with Swiss Law
                or Undue Burden .................................................................................. 3

                1.      Syngenta Fails to Show an "Actual Conflict" with
                        Swiss Law ................................................................................. 4

                2.      Syngenta's Burden Arguments Are Unavailing ................................. 6

II.     PLAINTIFFS HAVE IDENTIFIED REASONABLE SEARCH
        TERMS................................................................................................................ 7

III.    SYNGENTA FAILS TO REBUT THE NEXUS BETWEEN THE
        REQUESTED DATA AND PLAINTIFFS' CASE................................................. 9

IV.     SYNGENTA FAILS TO REBUT MR. FISHER'S RELEVANCE ....................... 12

CONCLUSION ............................................................................................................ 13

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bank of Mongolia v. M & P Global Financial Svcs.*,
    258 F.R.D. 514 (S.D. Fla. 2009)................................................................. 11

*Belparts Group v. Belimo Automation AG*,
    No. 3:21-CV-00334, 2022 WL 1223018 (D. Conn. Apr. 26, 2022) .................... 4, 5

*Collins v. Quinn, Collins, Gipson & Arquitt, D.D.S., P.S.*,
    No. 08-03451-CV-S-REL, 2011 WL 13177168 (W.D. Mo. Apr. 28, 2011).......... 11

*Cratty v. City of Wyandotte*,
    296 F. Supp. 3d 854 (E.D. Mich. 2017) .................................................... 11

*EFG Bank AG v. AXA Equitable Life Ins. Co.*,
    No. 17-CV-4767, 2018 WL 1918627 (S.D.N.Y. Apr. 20, 2018) ............................. 4

*FTC v. Am. Screening, LLC*,
    No. 4:20-CV-1021, 2021 WL 2823176 (E.D. Mo. July 7, 2021)........................... 11

*Pub. Institution for Social Sec. v. Al Wazzan*,
    [2023] EWHC 1065 (Comm)).................................................................... 5

*Rotstain v. Trustmark Nat'l Bank*,
    No. 3:09-CV-2384-N-BQ, 2020 WL 12968653 (N.D. Tex. Feb. 19, 2020)............. 4

Swiss Fed. Crim. Ct., Case Ref. CA.2019.6.......................................................... 5

Swiss Fed. Ct., Case Ref. 6B_216/2020................................................................. 5

**Rules**

Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015)............................................ 11

LR7.2(c)........................................................................................................ 5

LR7.2(d) ....................................................................................................... 5

## Other Authorities

(Swiss) Fed. Dep't of Justice & Police,
    *International Judicial Assistance in Civil Matters: Guidelines* (2024) ................... 4

Swiss Penal Code Art. 271 ........................................................................... 3, 4, 5

## PRELIMINARY STATEMENT

Syngenta's opposition fails to rebut Plaintiffs' showing that the discovery requested by Plaintiffs is relevant and proportional to the needs of this case. Instead, Syngenta's opposition distorts the Federal Rules' proportionality standard by presuming a cramped view of relevance and by advancing burden arguments that are largely devoid of specifics or support. Further, Syngenta asks the Court to assume various factual predicates, including that Syngenta's U.S. business operates without supervision from its Swiss parent. This and other factual claims advanced by Syngenta are subjects for discovery and then for trial—and certainly are not a proper basis for denying discovery.

Plaintiffs have shown that discovery is appropriate for the issues in Plaintiffs' motion to compel. That motion should be granted.

## ARGUMENT

## I. SYNGENTA CROP PROTECTION AG MUST PRODUCE RELEVANT MATERIALS

### A. Syngenta's Relevance Arguments Fail

Syngenta opposes *any* discovery from the files of Syngenta Crop Protection AG ("SCPAG"); it has not offered to produce a single document. And yet, Syngenta insists that it has "never claimed that SCPAG 'is exempt from discovery.'" Opp. 3. This sleight of hand is based on the notion that the specific discovery requested by Plaintiffs "promis[es] little benefit while creating enormous burden." *Id*. at 3. Importantly, though, the relevance objections that Syngenta makes here are the ***very same*** arguments rejected by the Court in ruling on Syngenta's motion to dismiss. *Compare* Opp. 4 (disputing that

"SCPAG 'plays a key and demonstrated role in Syngenta's conduct and the claims in this matter'") *with* Doc. 160 at 67–72 (rejecting Syngenta's argument that the complaint's allegations "'do not cognizably connect Syngenta Corporation or Syngenta Crop Protection AG to the challenged rebate program'"). Thus, when Syngenta argues that only U.S. employees are "appropriate custodians" because █████████████ █████████ it is ignoring the fact that SCPAG's role is itself at issue—Syngenta is essentially trying to relitigate the motion to dismiss through custodial disputes. Opp. 4–5. Having made allegations that the Court deems sufficient—if proven—to impose liability on SCPAG, Plaintiffs are entitled to discover the evidence needed to prove those allegations.

Plaintiffs have shown that the requested SCPAG records are relevant and proportional, and Syngenta fails to rebut this showing.

Syngenta faults Plaintiffs for citing documents that "do[] not show unique or substantive involvement" by anyone not already a custodian. Opp. 5–6. But Plaintiffs cannot cite "unique" documents from SCPAG custodians because Plaintiffs do not have access to these files. In the meantime, Plaintiffs have made a robust showing of relevance with what they do have: documents available from *other* custodial files and testimony from *other* witnesses. Mot. 7–9.

Syngenta also ignores Plaintiffs' evidence that the proposed SCPAG custodians in fact play unique roles. For example, Mr. Parr ████████████████████████ ████████████████████████████████████████████████████ Mot. 8. That

2

evidence highlights SCPAG's oversight and direction of Syngenta's U.S. post-patent strategy. *Id*.

Syngenta urges that ██████████████ "disprove[s]" SCPAG's oversight of U.S. loyalty programs ████████████████████████████████ ████████████████████████████ Opp. 7–8. To the contrary, ████████ ██████████████████████████████████ ██████████████████████████ Ex. D (Doc. 218-5) at 4.

Syngenta also argues that ████████ should be disregarded because some U.S. employees are not familiar with this document. Opp. 8. That says nothing about the existence of ***other*** SCPAG documents detailing SCPAG's oversight of U.S. post-patent strategy and underscores why discovery from SCPAG is crucial. *See* Ex. D (Doc. 218-5) at 5 (██████████████████████████████ ███████████████████████████████ ████ ).

At trial, Syngenta is free to advance factual arguments minimizing the ***extent*** of SCPAG's oversight of the U.S. loyalty program for pesticides. But the rules of discovery do not permit Syngenta to decide for itself that SCPAG's documents are irrelevant.

**B. Syngenta Does Not Substantiate a Conflict with Swiss Law or Undue Burden**

Syngenta acknowledges that Swiss law permits discovery under the Federal Rules. Syngenta agrees that "there is no blanket exception to Swiss discovery" (Opp. 9 n.6); that "Article 271 allows production in a foreign [U.S.] proceeding," subject to some

3

limitations (at 10); and that Swiss trade secret and data protection laws permit production with appropriate redactions (at 10–11). Syngenta does not argue that Swiss employment law prohibits producing documents (at 11–12). Syngenta has not met its burden to show a conflict with Swiss law.[1] *See* Mot. 11–12 (collecting cases).

1.     *Syngenta Fails to Show an "Actual Conflict" with Swiss Law*

Syngenta argues that "Article 271 allows production in a foreign proceeding only if . . . it occurs voluntarily[.]" Opp. 10. But "'***voluntary***' *is defined broadly*" under Swiss law "to include the production of discovery so long as the party faces only procedural consequences rather than criminal sanctions for its failure to produce." *EFG Bank AG v. AXA Equitable Life Ins. Co.*, No. 17-CV-4767, 2018 WL 1918627, at *2 (S.D.N.Y. Apr. 20, 2018) (emphasis added); *see Belparts Group v. Belimo Automation AG*, No. 3:21-CV-00334, 2022 WL 1223018, at *5 (D. Conn. Apr. 26, 2022) (same); (Swiss) Fed. Dep't of Justice & Police, *International Judicial Assistance in Civil Matters: Guidelines* 20 (2024)[2] (Swiss corporations can comply with document requests—even if refusal to cooperate is sanctionable—so long as sanctions are "of a procedural nature (e.g. a factual claim of the other party is accepted as true or the loss of the right to prove the claim at a later stage")). Syngenta nowhere argues that it would face criminal sanctions in the U.S.

---

[1] Syngenta relies (at 11) on *Rotstain v. Trustmark National Bank*, No. 3:09-CV-2384-N-BQ, 2020 WL 12968653 (N.D. Tex. Feb. 19, 2020). *Rotstain* is irrelevant: It concerns whether deposition notices should issue via Hague Convention procedures, not whether Swiss law bars production of documents. *Id.* at *1.

[2] https://www.rhf.admin.ch/dam/rhf/en/data/zivilrecht/wegleitungen/wegleitung-zivilsachen-e.pdf.download.pdf/wegleitung-zivilsachen-e.pdf.

for failing to comply with an order granting Plaintiffs' motion. Thus, there is no conflict with Article 271.

Syngenta next suggests that a 2021 Swiss decision (*Swisspartners*) bars production of "non-public information about" SCPAG employees. Opp. 9–10.[3] However, Syngenta has not carried its burden of showing that is true. It has not submitted an affidavit by a Swiss law expert interpreting that decision—"'the minimal formal requirement[]'" for arguing "'that ordering discovery would violate foreign law.'" *Belparts*, 2022 WL 1223018, at *4. And it has not furnished Plaintiffs and the Court with a copy of *Swisspartners*, as is required by Local Rules 7.2(c) and (d), or provided a certified translation of that decision, which was rendered in German.

It is doubtful that Syngenta could meet its burden regardless. *Swisspartners* does not involve employee records at all. Rather, it concerns a bank's disclosure of records of non-party ***clients***—to whom it owed "obligations of bank secrecy"—without the clients' knowledge or permission. Maltas Reply Decl. Ex. AB (*Pub. Institution for Social Sec. v. Al Wazzan*, [2023] EWHC 1065 (Comm)) ¶¶ 111–112 (discussing *Swisspartners*)). That is

---

[3] Swiss Federal Court, Case Reference 6B_216/2020 (Opp. 10) appears to be the Swiss Supreme Court's decision in *Swisspartners*. Maltas Reply Decl. Ex. AC. Swiss Federal Criminal Court, Case Reference CA.2019.6, appears to be the lower-court decision in *Swisspartners*.

5

very different from the disclosure at issue here, which would be limited to production of SCPAG's records, as maintained by its employees.[4]

### 2. *Syngenta's Burden Arguments Are Unavailing*

At most, Syngenta's Swiss law arguments address the burden of producing material from Switzerland. Those burdens may justify production of SCPAG documents with redactions of certain information or in another form that complies with Swiss law, and Plaintiffs would not categorically oppose such measures. But the obligation to comply with Swiss law cannot justify Syngenta's blanket objection to all discovery from SCPAG, nor Syngenta's failure to provide any specific information about the cost, time, or effort required to make a production consistent with Swiss law.

Finally, Syngenta claims burden based on the time period and document repositories implicated by Plaintiffs request of SCPAG, and because "Plaintiffs' proposed search protocol" fails to alleviate that burden. Opp. 4, 7. These arguments require substantiation. Yet, Syngenta has provided ***no information*** about the volume of Swiss documents at issue. Nor has Syngenta entertained negotiating reduced time periods or a modified search protocol for Swiss documents. Rather it has chosen to stand on its position that it will produce no SCPAG documents.

---

[4] Syngenta concedes that any "Swiss interests" in limiting Plaintiffs' requested discovery are relevant only if there is "an 'actual conflict' of law." Opp. 10 n.8. Because Syngenta fails to show an actual conflict, the Court need not consider Swiss interests here.

## II.     PLAINTIFFS HAVE IDENTIFIED REASONABLE SEARCH TERMS

Syngenta makes hyperbolic claims that Plaintiffs seek "unfettered" discovery without any "tailoring" or "justification." In truth, Syngenta proposed—and Plaintiffs accepted—a two-step search that substantially limits the scope of Syngenta's document review (to documents that hit on both steps). The present dispute is only whether Syngenta should be allowed to further constrict its review by narrowing the step-one terms so that the only documents to reach step two are those that specifically reference one of the three AIs alleged by Plaintiffs as antitrust product markets.

Syngenta claims that only documents mentioning one of the three AIs have an "adequate nexus" to Plaintiffs' allegations. Opp. 14–15. But limiting the search in this manner promises to exclude many important documents. Documents containing Plaintiffs' proposed additional step-one terms (█████████████████████ █████) may discuss the operation, origins, purpose, and implementation of Syngenta's Key AI loyalty program, and highly relevant business planning, without specific reference to the three AIs.[5] Syngenta offers no substantiation for its speculation (at 15) that all relevant documents addressing the Key AI program necessarily will refer to one of the three AIs, and that is unlikely to be true as a matter of common sense. Plaintiffs'

---

[5] Syngenta faults Plaintiffs for not citing documents excluded for failing to reference a Relevant AI. Opp. 15. But not all of Plaintiffs' proposed additions were used as search terms in the investigation; crucially, the first-level search string related to Syngenta's loyalty program was not used. Here, too, Syngenta ignores that as the party resisting discovery, it bears the burden to show discovery should not be allowed. Mot. 5.

ability to obtain a crucial document should not depend on it expressly referencing one of three particular products. Mot. 14–15.

Syngenta further argues that Plaintiffs' proposed terms are "overly burdensome" because ███████████████████████████████████████████████████████

███████████████████████████████████████████[6] Opp. 16–17. That again ignores Syngenta's two-step search protocol: Documents that hit on step-one search terms then have *additional* step-two search terms applied, and Syngenta will only engage in human review of documents that hit on both searches. Opp. 13. And the search terms will not be run on all of Syngenta's files. They will be applied across only custodial and central files that are likely to contain responsive materials.

Syngenta's hit counts demonstrate the harm of *not* running the search terms. Opp. 17. For example, unless Plaintiffs' additional search terms are run, 239,000 documents likely relevant to the Syngenta loyalty program at the core of the case will be cut from the review queue.[7] Opp. 17. This document count—which is substantial, but well within the norms of antitrust litigation—highlights the importance of the loyalty program to Syngenta's business and the need to run Plaintiffs' proposed terms. That Syngenta will need to review documents likely to be highly relevant is not an undue burden that justifies curtailing Plaintiffs' discovery.

---

[6] Notably, these search terms were initially proposed, and used, by Syngenta in Plaintiffs' pre-Complaint investigation.

[7] Syngenta is correct that Plaintiffs' intended to include ███████████████████████
██████ as part of this search string. Opp. 14 n.1.

### III.    SYNGENTA FAILS TO REBUT THE NEXUS BETWEEN THE REQUESTED DATA AND PLAINTIFFS' CASE

Plaintiffs request data on Syngenta herbicide and fungicide AIs (█████████████

████████████████). Those datasets are proportional because (i) they are

relevant at least to Plaintiffs' benchmarking and market definition analyses, and (ii) if

Syngenta is already pulling some data on herbicides (like mesotrione and metolachlor)

and fungicides (like azoxystrobin), it is unlikely to be burdensome to produce more of the

same kind. Syngenta's burden arguments to the contrary are unsubstantiated.

A key issue in this antitrust case is market definition. Syngenta asserts broad but

yet-to-be-defined herbicide and fungicide markets. Consequently, Plaintiffs seek data on

Syngenta herbicide AIs and fungicide AIs. Syngenta now hedges on whether certain

herbicide and fungicide AIs are in its markets by asserting that "the AIs against which the

Relevant AIs primarily compete are those of other competitors."[8] Opp. 18. But Syngenta

never affirmatively states that the AIs for which Plaintiffs seek data are not in the relevant

markets, and it never sought to negotiate a more limited set of AIs that it contends may be

in the markets.

In any event, Plaintiffs also need those data sets to benchmark the competitive

effects of Syngenta's conduct. Syngenta acknowledges that comparing products in the

relevant markets to pesticide products outside the relevant markets is appropriate, but

---

[8] Data on Syngenta herbicide AIs may also be relevant to the case against Corteva, which also asserts broad but yet-to-be-defined herbicide markets.

fault Plaintiffs for seeking too many potential benchmarks. Opp. 18–19. Yet, Plaintiffs

have already limited their proposed additional AIs: to fungicides, herbicides, and ███

██████████████████████████ Mot. 17. It is premature for Plaintiffs to further

limit their request because they will need to study the data before determining which AIs

they will use as comparators.[9] That analysis could include factors such as geography of

sales, volume of sales, whether and when the AI was subject to Syngenta's loyalty

program, pricing trends, and an overall assessment of the quality of the data as to

particular AIs. The analysis could also depend on competitive conditions, such as whether

generics have entered. Syngenta faults Plaintiffs for explaining they "may" perform

particular benchmarking analyses. Plaintiffs do not need to guarantee they will perform

specific assessments in order to obtain discovery; it is sufficient that Plaintiffs have

pointed to analyses they intend to perform.

Essentially, Syngenta wants to withhold the data as not relevant and proportional,

while also retaining the right to examine the entirety of company data; identify particular

data helpful to Syngenta; and produce only that self-serving data with its expert

disclosures. Opp. 19. Syngenta's proposed approach is obviously unfair. And late-stage

---

[9] Syngenta asserts that Plaintiffs had "unfettered" access to data in the pre-complaint
investigation. Opp. 18. ██████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

10

disclosure of cherry-picked data relied upon by Syngenta's experts will not cure that unfairness.[10]

As to burden, Syngenta briefly explains that expanding its data pull will require locating "hundreds of products" and "multiple SKUs" for each. But Syngenta provides no concrete information on the costs or time required to do this. Opp. 17. Syngenta "must provide evidence regarding the time or expense required to comply with the requests" because "'[a] party claiming undue burden or expense ordinarily has far better information . . . with respect to that part of the [proportionality] determination.'" *FTC v. Am. Screening, LLC*, No. 4:20-CV-1021, 2021 WL 2823176, at *1, *2 (E.D. Mo. July 7, 2021) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015)). Syngenta's generalized, unsupported claim of burden is insufficient. *See id.*; *see also Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 860 (E.D. Mich. 2017) (party resisting discovery "must meet its burden of explaining how costly or time-consuming responding to a set of discovery requests will be"); *Bank of Mongolia v. M & P Global Financial Svcs.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) (requiring "specific and particular" articulation of burden).

---

[10] If this Court denies Plaintiffs' motion as to the scope of Syngenta's data production, Plaintiffs ask that Syngenta be prohibited from using any data that it does not now produce. *See, e.g.*, *Collins v. Quinn, Collins, Gipson & Arquitt, D.D.S., P.S.*, No. 08-03451-CV-S-REL, 2011 WL 13177168, at *2 (W.D. Mo. Apr. 28, 2011) (party "judicially estopped" from using evidence it refused to produce).

Syngenta's arguments as to data time frame are likewise short on specifics. Syngenta argues that pre-2015 data are incomplete or inaccurate, and it supports this only with the vague assertion that ███████████████████████████████████ ████████████████ Opp. 20 (emphasis added). This assertion implies that other █████████ within the scope of Plaintiffs' request *are* complete and accurate. And Plaintiffs seek sales, price, margin, and other data that do not directly include such ████████ *See* Ex. A (Doc. 218-2) RFP Nos. 27–29. Syngenta identifies no problems with those pre-2015 data fields.

The pre-2015 data Plaintiffs seek will capture sales, cost, and performance data for the time periods before and after Syngenta added the AIs to its loyalty program— information that is highly relevant to proof of antitrust markets and the effects of Syngenta's loyalty program. *See* Mot. 19–20. Syngenta cannot justify withholding this relevant discovery by simply reciting "burden" and vaguely alluding to potential problems, while declining to quantify the burden or to articulate all the supposed issues it has in mind.

## IV.    SYNGENTA FAILS TO REBUT MR. FISHER'S RELEVANCE

Syngenta argues that Mr. Fisher is unlikely to possess sufficiently relevant documents. Opp. 22–23. Syngenta indicated the opposite in a trial in this Court, where it called Mr. Fisher to testify about "'manag[ing] everything around the [azoxystrobin] brand, [including] post-patent strategy[.]'" Mot. 21. Syngenta nowhere addresses its previous admission that Mr. Fisher is knowledgeable enough to be a key witness.

Syngenta claims that Mr. Fisher's time as a Commercial Unit Head is irrelevant because Plaintiffs dropped their requests for other employees in similar roles. Opp. 23. But Plaintiffs dropped those other requests while maintaining that this Commercial Unit Head should be a custodian, and their willingness to compromise is not an admission that a category of custodians is irrelevant.

Syngenta claims that Mr. Fisher's records are "duplicative" of his superiors' records. Opp. 22. That is backed only by Syngenta's say-so. Mere speculation about some duplication is insufficient to withhold Mr. Fisher's file, particularly considering the evidence of relevance that Plaintiffs have offered. Mot. 10, 22 (collecting cases).

## CONCLUSION

Plaintiffs' motion to compel should be granted in full.

13

Dated:  July 29, 2024                    Respectfully submitted,

                                 /s/ Allyson M. Maltas
ALLYSON M. MALTAS
Senior Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov

KARNA ADAM
JOSEPH R. BAKER
WESLEY G. CARSON
ROBERT Y. CHEN
ELIZABETH A. GILLEN
PHILIP J. KEHL
LAUREN B. PATTERSON
MICHAEL J. TURNER

*Attorneys for Plaintiff Federal Trade Commission*

/s/ Nicole S. Gordon
NICOLE S. GORDON
Deputy Attorney General
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94610
Telephone: (415) 510-4400
Email: nicole.gordon@doj.ca.gov

*Attorney for Plaintiff State of California*

/s/ Conor J. May
JAN M. ZAVISLAN
Senior Counsel
CONOR J. MAY
Assistant Attorney General
Colorado Department of Law
Office of the Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Jan.Zavislan@coag.gov
          Conor.May@coag.gov

*Attorneys for Plaintiff State of Colorado*

/s/ Paul J. Harper
PAUL J. HARPER
Assistant Attorney General, Antitrust
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3000
Email: paul.harper@ilag.gov

*Attorney for Plaintiff State of Illinois*


/s/ Noah Goerlitz
NOAH GOERLITZ
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 725-1018
Email: noah.goerlitz@ag.iowa.gov

*Attorney for Plaintiff State of Iowa*


/s/ Colin P. Snider
COLIN P. SNIDER
JUSTIN C. MCCULLY
Office of the Attorney General of
Nebraska
2115 State Capitol Building
Lincoln, NE 68509
Telephone: (402) 471-3840
Email: Colin.Snider@nebraska.gov


*Attorneys for Plaintiff State of Nebraska*

/s/ Matthew Michaloski
MATTHEW MICHALOSKI
CHRISTI FOUST
Deputy Attorneys General
SCOTT BARNHART
Chief Counsel and Director of Consumer
Protection
Office of the Indiana Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 234-1479
Email: matthew.michaloski@atg.in.gov
         christi.foust@atg.in.gov
         scott.barnhart@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


/s/ Katherine Moerke
KATHERINE MOERKE
JASON PLEGGENKUHLE
ELIZABETH ODETTE
Assistant Attorneys General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Telephone: (651) 296-3353
Email: katherine.moerke@ag.state.mn.us
         jason.pleggenkuhle@ag.state.mn.us
         elizabeth.odette@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

/s/ Hamilton Millwee
HAMILTON MILLWEE
Assistant Attorney General
TATE BALL
Assistant Attorney General
Office of the Attorney General of
Tennessee
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
        Tate.Ball@ag.tn.gov

*Attorneys for Plaintiff State of Tennessee*


/s/ Luminita Nodit
LUMINITA NODIT
Assistant Attorney General,
Antitrust Division
Washington State Office
of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104
Telephone: (206) 254-0568
Email: Lumi.Nodit@atg.wa.gov

*Attorney for Plaintiff State
of Washington*

/s/ Timothy D. Smith
TIMOTHY D. SMITH
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us

*Attorney for Plaintiff State of Oregon*

/s/ William Shieber
JAMES LLOYD
Chief, Antitrust Division
TREVOR YOUNG
Deputy Chief, Antitrust Division
WILLIAM SHIEBER
Assistant Attorney General
Office of the Attorney General of Texas
300 West 15th Street
Austin, TX 78701
Telephone: (512) 936-1674
Email: William.Shieber@oag.texas.gov

*Attorneys for Plaintiff State of Texas*

/s/ Laura E. McFarlane
LAURA E. MCFARLANE
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us

*Attorney for Plaintiff State of Wisconsin*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) in that it does not exceed 3,125 words, excluding the exempted portions, as reported by word processing software.

Dated: July 29, 2024          /s/ Allyson M. Maltas

ALLYSON M. MALTAS
Senior Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov