# Exhibit AC



Zurück

Bundesgericht
Tribunal fédéral
Tribunale federale
Tribunal federal



**6B_216/2020**

**Urteil vom 1. November 2021**

**Strafrechtliche Abteilung**

Besetzung
Bundesrichterin Jacquemoud-Rossari, Präsidentin,
Bundesrichter Denys,
Bundesrichter Muschietti,
Bundesrichterin Koch,
Bundesrichter Hurni,
Gerichtsschreiberin Andres.

Verfahrensbeteiligte
A._____,
vertreten durch Rechtsanwalt Dr. Lorenz Erni,
Beschwerdeführer,

*gegen*

Bundesanwaltschaft,
Guisanplatz 1, 3003 Bern,
Beschwerdegegnerin.

Gegenstand
Verbotene Handlungen für einen fremden Staat
(Art. 271 StGB), Umfang der Bindungswirkung
eines Rückweisungsentscheids,

Beschwerde gegen das Urteil des Bundesstrafgerichts, Berufungskammer, vom 5. Dezember 2019 (CA.2019.6).

**Sachverhalt:**

**A.**

**A.a.** Der Verwaltungsrat der B._____ AG, einer in Zürich domizilierten Vermögensverwaltungsgesellschaft, liess im Zuge des Steuerstreits zwischen der Schweiz und den USA die Kundenbeziehungen überprüfen. Die Prüfung ergab, dass die B._____ AG und ihre Tochtergesellschaften zwischen 2002 und 2012 über eine gewisse Zahl von Kunden verfügten, die sich in den USA eventuell nicht regelkonform versteuert hatten. In der Folge beauftragte A._____ in seiner Funktion als Verwaltungsratspräsident der B._____ AG eine Anwaltskanzlei sowie einen Mitarbeiter der B._____ AG, Dossiers von in den USA mutmasslich steuerpflichtigen Kunden zusammenzustellen. Im Oktober 2012 reichte A._____ eine Selbstanzeige beim amerikanischen Justizdepartement (Departement of Justice; nachfolgend: DoJ) ein. Dieses lehnte ein Gesuch um Herausgabe der betreffenden Kundendossiers auf dem Rechts- und Amtshilfeweg ab. Im Hinblick auf ein sog. Non Prosecution Agreement (nachfolgend: NPA) reiste A._____ schliesslich Mitte November 2013 in die USA und liess dem DoJ - ohne über eine Bewilligung im Sinne von Art. 271 Ziff. 1 StGB zu verfügen - durch einen Rechtsanwalt einen USB-Stick mit insgesamt 109 Kundendossiers der B._____ AG sowie deren Tochtergesellschaften übergeben.

**A.b.** Am 28. April 2015 erstattete die Eidgenössische Finanzmarktaufsicht (FINMA) bei der Bundesanwaltschaft Anzeige gegen die Verantwortlichen der B._____ AG sowie allfällige weitere involvierte Personen.
Die Bundesanwaltschaft verurteilte A._____ mit Strafbefehl vom 19. September 2017 wegen verbotener Handlung für einen fremden Staat (Art. 271 Ziff. 1 Abs. 1 StGB) zu einer bedingten Geldstrafe von 160 Tagessätzen zu Fr. 1'650.-- und zu einer Busse von Fr. 10'000.--.
Auf Einsprache von A._____ hin erhob die Bundesanwaltschaft am 17. November 2017 Anklage.

**A.c.** Die Strafkammer des Bundesstrafgerichts sprach A._____ am 9. Mai 2018 frei.

**A.d.** Das Bundesgericht hiess die von der Bundesanwaltschaft erhobene Beschwerde in Strafsachen am 4. Dezember 2018 gut, hob das Urteil des Bundesstrafgerichts vom 9. Mai 2018 auf und wies die Sache zur neuen Entscheidung an die Strafkammer des Bundesstrafgerichts zurück (Verfahren 6B_804/2018).

**B.**

**B.a.** Die Strafkammer des Bundesstrafgerichts verurteilte A._____ am 2. Mai 2019 wegen verbotener Handlung für einen fremden Staat zu einer Busse von Fr. 10'000.-- und auferlegte ihm die Verfahrenskosten.

**B.b.** Die Berufungskammer des Bundesstrafgerichts wies am 5. Dezember 2019 die von A._____ erhobene Berufung ab, bestätigte das erstinstanzliche Urteil und auferlegte ihm die Verfahrenskosten.

**C.**
A._____ beantragt mit Beschwerde in Strafsachen, das Urteil der Berufungskammer des Bundesstrafgerichts sei aufzuheben und er sei vom Vorwurf der verbotenen Handlungen für einen fremden Staat freizusprechen. Eventualiter sei das Urteil aufzuheben und die Sache sei zum Freispruch an die Berufungskammer des Bundesstrafgerichts zurückzuweisen.

**Erwägungen:**

**1.**

**1.1.** Der Beschwerdeführer wendet sich gegen den Schuldspruch und rügt, der objektive Tatbestand von Art. 271 Ziff. 1 Abs. 1 StGB sei nicht erfüllt. In tatsächlicher Hinsicht macht er geltend, die Kundendossiers der ausländischen Tochtergesellschaften der B._____ AG seien im Ausland aufbewahrt worden und hätten zur Aufarbeitung in die Schweiz gebracht werden müssen. Auch die 33 Kundendossiers der B._____ AG seien nicht nur in der Schweiz, sondern auch im Fürstentum Liechtenstein elektronisch vorhanden gewesen. Die Strafkammer des Bundesstrafgerichts habe dies in ihrem ersten Urteil vom 9. Mai 2018 gestützt auf seine Ausführungen als erstellt erachtet. Indem die Vorinstanz ausführe, es sei fraglich, ob sämtliche Daten im Ausland erhältlich gewesen wären, und diese Frage offen lasse, verkenne sie, dass die genannten Feststellungen der Strafkammer in ihrem ersten Urteil auch nach der Rückweisung des Bundesgerichts verbindlich seien. In rechtlicher Hinsicht rügt der Beschwerdeführer, Daten, die sich bestimmungsgemäss auch im Ausland befänden und nicht erst im Hinblick auf die Übergabe an eine ausländische Behörde ins

Ausland verbracht würden, könnten nicht Tatobjekt von Art. 271 Ziff. 1 Abs. 1 StGB sein, da damit keine Umgehung der Amts- bzw. Rechtshilfe vorliege. Die Lieferung von sich bestimmungsgemäss auch im Ausland befindlichen Daten verletze die schweizerische Souveränität nicht. Er sei daher freizusprechen.

**1.2.** Die Vorinstanz setzt sich zunächst ausführlich mit der Frage auseinander, ob sie nach dem Rückweisungsentscheid des Bundesgerichts den objektiven Tatbestand noch prüfen muss bzw. darf. Sie gelangt zum Schluss, dass das Bundesgericht den objektiven Tatbestand (mangels eines entsprechenden Antrags der Bundesanwaltschaft, die im Rückweisungsverfahren die Beschwerde geführt hat, bzw. mangels Legitimation resp. Beschwer des Beschwerdeführers) nicht überprüft hat und dieser von ihr noch beurteilt werden kann. Gebunden sei sie hingegen grundsätzlich hinsichtlich des Sachverhalts und der Frage des subjektiven Tatbestands sowie des vermeidbaren Verbotsirrtums (Urteil S. 7 ff.). Gegenstand des Verfahrens sei die Herausgabe der zusammengestellten Kunden-Dateien an die amerikanischen Behörden (Urteil S. 17). Diesbezüglich hält die Vorinstanz fest, es seien auf einem USB-Stick in 105 pdf-files Daten von 109 Kunden abgespeichert worden. Die Daten seien zuvor von den Cayman Islands, dem Fürstentum Liechtenstein und der Schweiz zusammengetragen worden und seien auch in der Schweiz auf Servern abgelegt gewesen. Damit seien auch jene Daten, die gemäss Präsentation über die Rechtshilfe auf den Cayman Islands und im Fürstentum Liechtenstein hätten erhältlich gemacht werden sollen, von der B._____ AG privat - ohne staatliches Ersuchen - zusammengestellt worden. Gemäss der vorinstanzlichen Auswertung hätten sich die zusammengestellten schweizerischen Bankunterlagen aufgrund der vertraglichen Verpflichtungen im Falle von 117 Konti ausschliesslich in der Schweiz, im Falle von 155 Konti auch in der Schweiz und im Falle von 35 Konti nicht in der Schweiz befunden. Dabei seien betreffend Kunden, die nachweisbar bereits individuell beim Fiskus ein Offenlegungsverfahren ausgelöst hätten, sog. "reduced files" eingegeben worden. Bei den übrigen Klienten sei das sog. "full file" eingereicht worden, was bedeute, dass zusätzlich die gesamten Bankunterlagen beigelegt worden seien (Urteil S. 25). Weiter ergab die Auswertung der Vorinstanz, dass bei 32 Kunden die Bankunterlagen gemäss Anweisung ausschliesslich in der Schweiz zu lagern waren und bei 74 Kunden jedenfalls auch in der Schweiz. Lediglich bei drei Kunden seien die Bankunterlagen ausschliesslich im Ausland zu lagern gewesen (Urteil S. 27 f.). In rechtlicher Hinsicht erwägt die Vorinstanz, die übergebenen Daten enthielten ausschliesslich Unterlagen betreffend Kunden der B._____-Gruppe, die potenziell steuerrechtlich relevant seien; die Dateien seien bewusst unter diesem Fokus zusammengestellt worden. Es handle sich klarerweise um identifizierende Unterlagen, die Dritte betreffen, über welche die B._____ AG auch im innerstaatlichen Bereich im Rahmen eines Verfahrens nicht frei hätte verfügen können. Dies gelte insbesondere für die Bankunterlagen der Kunden, welche von der B._____ AG im Rahmen der vertraglichen Beziehung erhältlich gemacht worden seien. Diese seien der B._____ AG als Vermögensverwalterin originär in der Schweiz von den Banken in Kopie zur Verfügung gestellt worden. Die Bankunterlagen seien der B._____ AG, wie die entsprechenden Vermögenswerte, unter klaren Vertragsbedingungen anvertraut worden. Die Übergabe der fremden Unterlagen an die US-Behörden habe das Risiko von Steuer (straf) verfahren für die Klienten beinhaltet. Die Herausgabe erfülle damit das Tatbestandselement der Vornahme von Handlungen, die einer Behörde oder einem Beamten zukomme. Hätten die US-Behörden ein Gesuch um Rechts- bzw. Amtshilfe stellen müssen, hätten die Schweizer Behörden entscheiden können, welche Unterlagen mit welchen Auflagen, insbesondere dem Spezialitätsvorbehalt, an die US-Behörden übergeben werden. Auch hätten die betroffenen Klienten prozessuale Rechte erhalten. Das DoJ sei sich bewusst gewesen, dass im Rahmen eines Ersuchens das Risiko bestanden hätte, dass nur die unter "fraud and the like" fallenden Dossiers, nicht aber jene der "gewöhnlichen" Steuerhinterzieher relativ kurzfristig für die US-Behörden erhältlich gewesen wären. Daraus ergebe sich auch, dass die Handlung im Interesse der ausländischen Behörde erfolgt sei, welche diese im NPA honoriert habe, insofern der Beitrag der B._____ AG als "extraordinary" qualifiziert worden sei. Mit der Einreichung der Dateien habe der Beschwerdeführer im Ergebnis eine den schweizerischen Behörden vorbehaltene Rechtshilfe- bzw. Amtshandlung vollzogen. Diese sei zugunsten einer ausländischen Behörde erfolgt. Der Reiseantritt in der Schweiz sei mit dem Ziel der Übergabe der Dateien an die US-Behörden erfolgt, womit die Tathandlung als Gesamtes auch den notwendigen Binnenbezug (auf schweizerischem Gebiet) aufweise. Der Beschwerdeführer habe zudem ohne staatliche Bewilligung gehandelt (Urteil S. 29 f.).
Die Vorinstanz setzt sich in der Folge mit den Argumenten des Beschwerdeführers auseinander und gelangt zum Schluss, dass sein Einwand, es liege keine Umgehung der schweizerischen Rechts- bzw. Amtshilfe vor, da die Dateien bestimmungsgemäss auch im Ausland vorhanden und damit erhältlich gewesen seien, nicht zutreffe. Sie hält fest, damit könne offenbleiben, ob sämtliche Dateien auch im Ausland erhältlich gewesen wären - was aufgrund der Notwendigkeit, die Daten vorgängig zusammenzutragen, bereits fraglich sei. Sie erwägt, die zu beurteilende Konstellation illustriere, dass die Lehrmeinung, die bei Vorliegen der Daten in zwei Staaten den Schluss der straffreien alternativen Eingabemöglichkeit ziehe, nicht überzeuge. Sei zur Übermittlung der Akten in jedem Land Rechts- oder Amtshilfe notwendig - was der Regelfall sei - würde die erwähnte Lösung im Ergebnis dazu führen, dass Akten immer aus einem der betroffenen Staaten unter Umgehung sämtlicher Regeln herausgegeben werden könnten. Gerade in der heutigen Zeit der weltweiten Datenlagerung würde damit jeglicher durch die Rechts- und Amtshilfegesetze sichergestellte

Rechtsschutz der Privatautonomie überlassen. Die im Weiteren vom Beschwerdeführer angeführten Äusserungen in der Lehre würden sich auf die Beweiserhebung beziehen und die Ausführungen stünden in Zusammenhang mit der Frage der territorialen Anwendbarkeit des StGB. Diese Lehrmeinung sei somit im vorliegenden Kontext unbehelflich, sei doch die Datensammlung als solche nicht geahndet worden, und es bestehe ein wesentlicher Unterschied zwischen der Datensammlung, bei welcher die Information jeweils in ein- und demselben Geheimnisbereich verbleibe, und der Herausgabe, die diesem Schutz (bereich) ein Ende setze (Urteil S. 30 ff.). Die Vorinstanz verwirft auch das Argument des Beschwerdeführers, da er die Daten den US-Behörden freiwillig eingereicht habe und die Betroffenen eingewilligt hätten, entfalle seine Strafbarkeit. Sie erwägt, die Frage der Freiwilligkeit bedürfe vorliegend keiner Antwort, da selbst Lehrmeinungen, welche die Freiwilligkeit als tatbestandsausschliessendes Kriterium anwenden wollten, dies zu Recht auf Konstellationen beschränkten, in welchen keine Drittdaten herausgegeben würden, was vorliegend gerade der Fall sei. Unzutreffend sei das Vorbringen, die Dritten, d.h. die Kunden, hätten konkludent in die Herausgabe eingewilligt; die Anforderungen an eine gültige Einwilligung seien nicht erfüllt (Urteil S. 32 ff.).

In subjektiver Hinsicht - so die Vorinstanz weiter - habe das Bundesgericht entschieden, dass der Beschwerdeführer mit Vorsatz gehandelt habe. Rechtfertigungsgründe lägen keine vor. Jedoch habe das Bundesgericht verbindlich festgestellt, dass der Beschwerdeführer in einem vermeidbaren Verbotsirrtum gehandelt habe, was strafmildernd zu berücksichtigen sei.

Zusammenfassend habe sich der Beschwerdeführer der verbotenen Handlungen für einen fre mden Staat im Sinne von Art. 271 Ziff. 1 Abs. 1 StGB schuldig gemacht (Urteil S. 38 ff.).

**1.3.**

**1.3.1.** Im Falle eines bundesgerichtlichen Rückweisungsentscheids hat die mit der neuen Entscheidung befasste Instanz ihrem Urteil die rechtliche Beurteilung, mit der die Rückweisung begründet wird, zugrunde zu legen. Jene bindet auch das Bundesgericht, falls ihm die Sache erneut unterbreitet wird. Aufgrund dieser Bindungswirkung ist es den erneut mit der Sache befassten Gerichten wie auch den Parteien - abgesehen von allenfalls zulässigen Noven - verwehrt, der Überprüfung einen anderen als den bisherigen Sachverhalt zugrunde zu legen oder die Sache unter rechtlichen Gesichtspunkten zu prüfen, die im Rückweisungsentscheid ausdrücklich abgelehnt oder überhaupt nicht in Erwägung gezogen worden sind. Die neue Entscheidung der unteren Instanz ist demnach auf diejenige Thematik beschränkt, die sich aus den bundesgerichtlichen Erwägungen als Gegenstand der neuen Beurteilung ergibt. Das Verfahren wird nur insoweit neu in Gang gesetzt, als dies notwendig ist, um den verbindlichen Erwägungen des Bundesgerichts Rechnung zu tragen (vgl. **BGE 143 IV 214** E. 5.2.1; **135 III 334** E. 2; Urteile 6B_59/2020 vom 30. November 2020 E. 2; je mit Hinweisen). Rügen, die schon gegen das erste Urteil der unteren Instanz hätten vorgebracht werden können und deren Geltendmachung den Parteien nach Treu und Glauben auch zumutbar war, können nach der Rechtsprechung gegen das zweite Urteil nicht mehr vorgebracht werden (vgl. **BGE 117 IV 97** E. 4a; Urteile 6B_824/2016 vom 10. April 2017 E. 6.2, nicht publ. in: **BGE 143 IV 214**; 6B_51/2016 vom 3. Juni 2016 E. 2.4; je mit Hinweisen).

**1.3.2.** Das Bundesgericht hatte im Urteil 6B_804/2018 vom 4. Dezember 2018 lediglich die von der Bundesanwaltschaft (nachfolgend: Beschwerdegegnerin) aufgeworfenen Rechtsfragen zu beurteilen. Diese wandte sich einzig gegen die Beurteilung des subjektiven Tatbestands durch das Bundesstrafgericht. Hingegen hatte sie keinen Anlass, die Beurteilung des objektiven Tatbestands und die dieser zugrunde liegenden tatsächlichen Feststellungen als rechtswidrig bzw. willkürlich zu rügen, da das Bundesstrafgericht den objektiven Tatbestand als erfüllt erachtete. Das Bundesgericht schloss einen Sachverhaltsirrtum aus und bejahte einen vermeidbaren Verbotsirrtum. An diese rechtliche Beurteilung und den dieser zugrunde liegenden Sachverhalt sind das Bundesstrafgericht und auch das Bundesgericht gebunden, was nicht bestritten wird. Hingegen hat das Bundesgericht im Rückweisungsentscheid mangels eines entsprechenden Vorbringens der Beschwerdegegnerin nicht geprüft, ob das Verhalten des Beschwerdeführers auch den objektiven Tatbestand von Art. 271 Ziff. 1 Abs. 1 StGB erfüllt. Ebenso wenig war der hierfür relevante Sachverhalt Gegenstand der bundesgerichtlichen Beurteilung. Die Vorinstanz wie auch die Parteien gehen zutreffend davon aus, dass die Frage der Erfüllung des objektiven Tatbestands nicht von der Bindungswirkung des Rückweisungsentscheids erfasst wird und daher von der Vorinstanz noch geprüft werden darf bzw. muss. Sie scheinen jedoch zu übersehen, dass auch die für die rechtliche Beurteilung des objektiven Tatbestands relevanten Sachverhaltsfeststellungen des Bundesstrafgerichts im Urteil vom 9. Mai 2018 nicht Gegenstand des bundesgerichtlichen Rückweisungsentscheids waren und damit nicht von dessen Bindungswirkung erfasst werden. Mit anderen Worten umfasst die Bindungswirkung des bundesgerichtlichen Rückweisungsentscheids nur den damals für die Beurteilung des Sachverhalts- bzw. Verbotsirrtums rechtserheblichen Sachverhalt.

Damit erweist sich die Rüge des Beschwerdeführers, indem die Vorinstanz die Frage offen lasse, ob sämtliche Daten im Ausland erhältlich gewesen wären, verkenne sie, dass das Bundesstrafgericht die Frage in seinem Urteil vom 9. Mai 2018 bereits (aufgrund des Rückweisungsentscheids des Bundesgerichts)

verbindlich bejaht habe, als unzutreffend. Zwar ist das vorinstanzliche Urteil insofern etwas unklar, als die Vorinstanz zunächst ausführt, hinsichtlich des Sachverhalts sei sie gebunden (Urteil S. 17), bei der Zusammenfassung des zu subsumierenden Sachverhalts festhält, die zusammengestellten schweizerischen Bankunterlagen hätten sich aufgrund der vertraglichen Verpflichtungen im Falle von 117 Konti (32 Kunden) ausschliesslich in der Schweiz, im Falle von 155 Konti (74 Kunden) auch in der Schweiz und im Falle von 35 Konti (drei Kunden) nicht in der Schweiz befunden (Urteil S. 25 und S. 27 f.), um schliesslich bei der rechtlichen Würdigung zu erwägen, es könne offenbleiben, ob sämtliche Daten im Ausland erhältlich gewesen wären (Urteil S. 30). Aufgrund der nachfolgenden rechtlichen Beurteilung ist einzig relevant, dass die Vorinstanz hinsichtlich der 35 Konti bzw. drei Kunden, deren Bankunterlagen ausschliesslich im Ausland zu lagern waren, den objektiven Tatbestand nicht als erfüllt erachtet (vgl. Urteil S. 43). Ob die in der Schweiz aufbewahrten Daten alle auch im Ausland verfügbar gewesen wären, kann indessen auch vorliegend offen bleiben, da dies angesichts der nachfolgenden rechtlichen Beurteilung nicht relevant ist. Im Übrigen macht der Beschwerdeführer nicht geltend, die Vorinstanz stelle den Sachverhalt willkürlich fest, womit bei der nachfolgenden rechtlichen Würdigung auf den von ihr festgestellten bzw. zusammengefassten Sachverhalt abzustellen ist.

**1.4.**

**1.4.1.** Gemäss Art. 271 Ziff. 1 Abs. 1 StGB wird bestraft, wer auf schweizerischem Gebiet ohne Bewilligung für einen fremden Staat Handlungen vornimmt, die einer Behörde oder einem Beamten zukommen. Durch die Bestimmung sollen die Ausübung fremder Staatsgewalt auf dem Gebiet der Schweiz verhindert und das staatliche Machtmonopol und die schweizerische Souveränität geschützt werden (Urteile 6B_804/2018 vom 4. Dezember 2018 E. 3; 6B_402/2008 vom 6. November 2008 E. 2.3.2 mit Hinweis; siehe auch Urteil 8G.125/2003 vom 9. Dezember 2003 E. 1.3; MARKUS HUSMANN, in: Basler Kommentar, Strafrecht, Bd. II, 4. Aufl. 2019, N. 6 zu Art. 271 StGB; GAUTHEY/MARKUS, Zivile Rechtshilfe und Artikel 271 Strafgesetzbuch, ZSR 134/2015 I S. 366; FISCHER/RICHA, in: Commentaire romand, Code pénal II, 2017, N. 8 zu Art. 271 StGB; YOLANDA MC GOUGH, Verbotene Handlungen für einen fremden Staat, 2018, S. 9 f. Rz. 18). Damit ist stets der Staat Träger des geschützten Rechtsguts; private Personen können nur indirekt betroffen sein (Urteil 8G.125/2003 vom 9. Dezember 2003 E. 1.3; HUSMANN, a.a.O., N. 6 zu Art. 271 StGB). Angegriffen wird mit einer Verletzung der Bestimmung der Anspruch der Schweiz, dass staatliches Handeln auf ihrem Gebiet allein durch ihre Institutionen vorgenommen wird. Im Fokus steht heute zumeist die Frage der Amts- und Rechtshilfebedürftigkeit von Handlungen in Zusammenhang mit ausländischen Rechtsordnungen und Verfahren (vgl. HUSMANN, a.a.O., N. 8 und N. 27 zu Art. 271 StGB; siehe E. 1.4.2). Eine einer Behörde oder einem Beamten zukommende Handlung ist - unbekümmert, ob ein Beamter dabei tätig wurde - jede Handlung, die für sich betrachtet, d.h. nach ihrem Wesen und Zweck sich als Amtstätigkeit charakterisiert. Entscheidend ist mithin nicht die Person des Täters, sondern der amtliche Charakter der Handlung (**BGE 114 IV 128** E. 2b mit Hinweisen; HUSMANN, a.a.O., N. 10, N. 12 und N. 23 zu Art. 271 StGB; DAMIAN K. GRAF, Mitwirkung in ausländischen Verfahren im Spannungsfeld mit Art. 271 StGB, Unter Berücksichtigung der jüngsten Bewilligungspraxis von EJPD und EFD, GesKR 2/2016 S. 171; OESTERHELT/FRACHEBOUD, in: Kommentar zum Schweizerischen Steuerrecht, Amtshilfe, 2020, § 29 N. 16 ff.; MC GOUGH, a.a.O., S. 47 ff. Rz. 103 ff.; DAVID ROSENTHAL, in: Handkommentar zum Datenschutzgesetz, Rosenthal/Jöhri [Hrsg.], 2008, N. 6 zu Art. 271 StGB). Die strafbare Handlung muss für einen fremden Staat, d.h. in dessen Interesse erfolgen (**BGE 114 IV 128** E. 3b; HUSMANN, a.a.O., N. 14 zu Art. 271 StGB; GRAF, a.a.O., S. 172; OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 26; DUPUIS ET AL., Petit commentaire, Code pénal, 2. Aufl. 2017, N. 14 zu Art. 271 StGB). Der Tatbestand erfasst nur diejenigen Handlungen, die ohne staatliche Bewilligung vorgenommen werden. Über entsprechende Bewilligungen nach Art. 271 Ziff. 1 StGB zur Vornahme von Handlungen für einen fremden Staat entscheiden die Departemente und die Bundeskanzlei in ihrem Bereich (Art. 31 der Regierungs- und Verwaltungsorganisationsverordnung vom 25. November 1998 [RVOV; SR 172.010.1; in der bis zum 31. Dezember 2013 geltenden Fassung]; GRAF, a.a.O., S. 172 f.; siehe ausführlich zu den Bewilligungen OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 34 ff.; HUSMANN, a.a.O., N. 78 ff. zu Art. 271 StGB; FISCHER/RICHA, a.a.O., N. 38 ff. zu Art. 271 StGB; MC GOUGH, a.a.O., S. 137 ff. Rz. 359 ff.). Die betreffende Handlung muss auf schweizerischem Gebiet stattgefunden haben. Dabei genügt es nach herrschender Lehre, dass nur ein Teil der strafbaren Handlungen in der Schweiz vorgenommen wurde (OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 22 ff. und N. 73; FISCHER/RICHA, a.a.O., N. 36 zu Art. 271 StGB; ROSENTHAL, a.a.O., N. 34 zu Art. 271 StGB; DUPUIS ET AL., a.a.O., N. 13 zu Art. 271 StGB).

**1.4.2.** Vorliegend ist unbestritten, dass die Handlung des Beschwerdeführers, das heisst, die Übergabe der Kundendossiers an das DoJ, im Interesse der USA und für einen fremden Staat, auf schweizerischem Gebiet und ohne Bewilligung erfolgte. Umstritten und damit zu prüfen ist, ob die Handlung einer Behörde oder einem Beamten vorbehalten ist, sie mit anderen Worten amtlichen Charakter hat. Die Qualifikation einer Handlung als Amtshandlung hat nach schweizerischer Rechtsauffassung zu erfolgen (vgl. **BGE 114 IV 128** E. 2c; GAUTHEY/MARKUS, a.a.O., S. 368; MC GOUGH, a.a.O., S. 48 Rz. 105; ROSENTHAL, a.a.O.,

N. 6 zu Art. 271 StGB; HUSMANN, a.a.O., N. 23 und N. 27 zu Art. 271 StGB; FISCHER/RICHA, a.a.O., N. 7 zu Art. 271 StGB; OESTERHELT/ FRACHEBOUD, a.a.O., § 29 N. 16). Für die Auslegung der Tathandlung ist das geschützte Rechtsgut massgebend. Bei der Bestimmung des strafbaren Charakters einer Handlung ist danach zu fragen, ob die betreffende Handlung geeignet ist, die "staatliche Herrschaftssphäre" zu gefährden (vgl. MC GOUGH, a.a.O., S. 75 Rz. 180; HUSMANN, a.a.O., N. 30 zu Art. 271 StGB). In der Doktrin werden die von der Rechtsprechung entwickelten Kriterien der verbotenen Handlung weiter konkretisiert (vgl. bspw. HUSMANN, a.a.O., N. 23 ff. zu Art. 271 StGB). Darauf braucht vorliegend jedoch nicht im Detail eingegangen zu werden, da in der Lehre weitestgehend unbestritten ist, dass eine Handlung, die mit einer Verletzung oder Umgehung des schweizerischen oder internationalen Amts- oder Rechtshilferechts einhergeht bzw. die gemäss Amts- und Rechtshilferecht im Zuständigkeitsbereich einer schweizerischen Behörde bzw. Amtsperson liegt, von Art. 271 Ziff. 1 StGB erfasst wird (HUSMANN, a.a.O., N. 27 und N. 31 zu Art. 271 StGB; OESTERHELT/FRACHEBOUD, a.a.O., § 29 N. 7 f.; ROSENTHAL, a.a.O., N. 1 zu Art. 271 StGB; CLAUDIO BAZZI, Internationale Wirtschaftsspionage, 2015, S. 186 ff. Rz. 368 ff.; GAUTHEY/MARKUS, a.a.O., S. 394 ff.; relativierend bezüglich Privatpersonen: MC GOUGH, a.a.O., S. 75 f. Rz. 181). Eine Umgehung der Amts- oder Rechtshilfe durch eine schweizerische Partei stellt kein Vorschubleisten i.S.v. Art. 271 Ziff. 1 Abs. 3 StGB, sondern die originäre Handlung i.S.v. Art. 271 Ziff. 1 Abs. 1 StGB dar (vgl. GRAF, a.a.O., S. 178 f.; HUSMANN, a.a.O., N. 40 zu Art. 271 StGB; GAUTHEY/MARKUS, a.a.O., S. 394 f.).

Wie die Vorinstanz zutreffend festhält, wird in der Lehre ausführlich darüber diskutiert, ob und inwieweit die Sammlung von Dokumenten im Hinblick auf ein ausländisches Verfahren und deren anschliessende Einreichung strafbar sein kann (vgl. Urteil S. 19 f.). Darauf, wie auf alle denkbaren Konstellationen braucht vorliegend nicht im Detail eingegangen zu werden. Massgebend ist, dass die Herausgabe von Informationen und Unterlagen, die in der Schweiz lediglich auf hoheitliche Anordnung hin rechtmässig herausgegeben werden können, das von Art. 271 StGB geschützte Rechtsgut tangiert (vgl. HUSMANN, a.a.O., N. 40 zu Art. 271 StGB; BAZZI, a.a.O., S. 188 Rz. 370). In sämtlichen Konstellationen dürfen nur Akten und Informationen herausgegeben werden, über die frei verfügt werden kann. Nur der Amts- oder Rechtshilfeweg bietet ein prozessuales Gefäss, in welchem Geheimhaltungs- und Offenlegungspflichten einander gegenübergestellt und der Spezialitätsgrundsatz gewährleistet werden können (GAUTHEY/ MARKUS, a.a.O., S. 396; HUSMANN, a.a.O., N. 45 zu Art. 271 StGB; BAZZI, a.a.O., S. 189 f. Rz. 373). Nicht frei verfügt werden kann über nicht öffentlich zugängliche, identifizierende Informationen über Dritte (HUSMANN, a.a.O., N. 45 zu Art. 271 StGB; vgl. die bei GRAF, a.a.O., S. 183 wiedergegebenen, unveröffentlichten Verfügungen des Eidgenössischen Finanzdepartements [EFD]; kritisch GRAF, a.a.O., S. 183 ff.).

**1.4.3.** Gemäss den vorinstanzlichen Feststellungen enthielten die vom Beschwerdeführer übergebenen Dateien ausschliesslich Unterlagen betreffend Kunden der B._____-Gruppe, die potenziell steuerrechtlich relevant sind. Die Bankunterlagen der Kunden wurden der B._____ AG als Vermögensverwalterin gestützt auf die vertragliche Beziehung originär in der Schweiz von den Banken in Kopie zur Verfügung gestellt. Die Bankunterlagen waren der B._____ AG unter klaren Vertragsbedingungen anvertraut (vgl. Urteil S. 29). Der Beschwerdeführer war folglich nicht berechtigt, die Drittpersonen betreffenden Unterlagen direkt an das DoJ zu übermitteln. Vielmehr hätte Letzteres den Amts- bzw. Rechtshilfeweg beschreiten und die Dateien über die zuständigen schweizerischen Behörden bei der B._____ AG als Informationsträgerin mit Sitz in der Schweiz herausfordern müssen. Indem der Beschwerdeführer dem DoJ die Unterlagen in Umgehung des Amts- bzw. Rechtshilfewegs direkt übermittelte, nahm er eine Handlung für einen fremden Staat vor, die den schweizerischen Behörden vorbehalten war.

Inwiefern der Umstand, dass die Daten bestimmungsgemäss auch in einem Drittstaat gespeichert waren, zu einer anderen Beurteilung führen soll, ist nicht ersichtlich. Der Beschwerdeführer übersieht bei seiner Argumentation, dass bei der Bestimmung des strafbaren Charakters seiner Handlung nach dem Gesagten nicht die Natur der Daten, sondern die Wahrung des staatlichen Machtmonopols zu berücksichtigen ist. Der Beschwerdeführer hat ihm bzw. der B._____ AG anvertraute, Drittpersonen betreffende Daten, die sich zumindest auch in der Schweiz befanden, direkt an das DoJ geliefert, wobei er seine Reise in der Schweiz angetreten hat. Damit verletzte er die schweizerische Souveränität, da die aus der Schweiz stammenden Daten von der Schweiz aus nur von den schweizerischen Behörden über den Amts- bzw. Rechtshilfeweg unter Einhaltung der einschlägigen rechtlichen Bestimmungen hätten weitergegeben werden dürfen. Ob es dem Beschwerdeführer auch möglich bzw. ob es zulässig gewesen wäre, die sich in einem Drittstaat befindenden Daten vom Drittstaat aus an das DoJ zu übermitteln, ist vorliegend nicht relevant. Etwas anderes ergibt sich auch nicht aus der vom Beschwerdeführer zitierten E-Mail des Bundesamts für Justiz (Beschwerde S. 10), da es im dort beurteilten Fall um Daten gegangen zu sein scheint, die sich bereits in den USA befanden und den dort zuständigen Behörden hätten herausgeben werden sollen. Vorliegend befanden sich die Daten unbestrittenermassen nicht in den USA, sondern neben der Schweiz (teilweise) auch in einem Drittstaat (vgl. auch Urteil S. 31 f.).

Auch die vom Beschwerdeführer zitierten Literaturstellen können so verstanden werden, dass darin jeweils davon ausgegangen wird, dass sich die Daten (neben der Schweiz) auch in dem Land befinden, in dem das Verfahren geführt wird, in das sie eingebracht werden sollen. So schreibt GRAF: "Befinden sich die im ausländischen Verfahren offenzulegenden Informationen nun bereits im Ausland [...], so können sie schrankenlos zur Verfügung gestellt werden. In diesem Fall müssen die Unternehmen die Unterlagen nach vorliegender Auffassung sogar wahlweise aus dem Ausland oder aus der Schweiz liefern können, falls die Informationen [...] in beiden Staaten verfügbar sind, denn solche Daten sind vom Schutzzweck von Art. 271 StGB nicht mehr gedeckt." (GRAF, a.a.O., S. 179). Hinweise darauf, dass mit "Ausland" ein anderer Staat gemeint ist, als der in dem das Verfahren geführt wird, ergeben sich nicht. Zudem begründet GRAF seine Einschätzung nicht näher. Gleich können grundsätzlich auch die Lehrmeinungen von ROSENTHAL und HUSMANN interpretiert werden. Während HUSMANN - ebenfalls ohne weitere Begründung - vorwiegend auf GRAF und ROSENTHAL verweist (HUSMANN, a.a.O., N. 72 zu Art. 271 StGB), beschäftigt sich ROSENTHAL an der vom Beschwerdeführer zitierten Stelle mit dem Binnenbezug bzw. der Frage, ob die Handlung auf schweizerischem Gebiet stattgefunden hat. Er vertritt die Ansicht, dass eine Beweiserhebung von sich in der Schweiz befindlichen Beweismitteln dann nicht in der Schweiz stattfindet, wenn diese Beweismittel bzw. Inhalte aufgrund ihrer Bestimmung ohnehin auch im Ausland verfügbar sind und daher im Rahmen der konkreten Beweiserhebung im Ausland darauf zurückgegriffen werden kann (ROSENTHAL, a.a.O., N. 35 zu Art. 271 StGB). Von diesem Beispiel unterscheidet sich der vorliegende Sachverhalt in zweierlei Hinsicht: Einerseits geht es hier nicht um die Beweiserhebung, sondern die direkte Herausgabe von Daten an eine Behörde eines fremden Staates. Andererseits wurde nicht im Ausland auf die Daten zugegriffen, sondern die Daten wurden von der Schweiz ins Ausland gebracht. Folglich vermögen die vom Beschwerdeführer angeführten Lehrmeinungen an der obgenannten Beurteilung, wonach er eine Handlung vornahm, die den schweizerischen Behörden vorbehalten war, nichts zu ändern, weshalb darauf nicht näher eingegangen werden muss (vgl. hierzu auch die zutreffenden Ausführungen der Vorinstanz, Urteil S. 30 ff.).

**1.5.** Zusammenfassend verletzt die Vorinstanz kein Bundesrecht, indem sie auch das Tatbestandselement der Vornahme von Handlungen, die einer Behörde oder einem Beamten zukommen, bejaht und den objektiven Tatbestand von Art. 271 Ziff. 1 Abs. 1 StGB insgesamt als erfüllt betrachtet. Da der Beschwerdeführer zudem vorsätzlich handelte (vgl. Urteil S. 38), erweist sich der Schuldspruch wegen verbotener Handlungen für einen fremden Staat als bundesrechtskonform.

**2.**
Die Beschwerde ist abzuweisen. Bei diesem Ausgang des Verfahrens sind die bundesgerichtlichen Kosten dem Beschwerdeführer aufzuerlegen (Art. 66 Abs. 1 BGG).

**Demnach erkennt das Bundesgericht:**

**1.**
Die Beschwerde wird abgewiesen.

**2.**
Die Gerichtskosten von Fr. 3'000.-- werden dem Beschwerdeführer auferlegt.

**3.**
Dieses Urteil wird den Parteien und dem Bundesstrafgericht, Berufungskammer, schriftlich mitgeteilt.

Lausanne, 1. November 2021

Im Namen der Strafrechtlichen Abteilung
des Schweizerischen Bundesgerichts

Die Präsidentin: Jacquemoud-Rossari

Die Gerichtsschreiberin: Andres

