# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# WINSTON-SALEM DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN,<br><br>Plaintiffs,<br><br>v.<br><br>SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC.,<br><br>Defendants. | Case No. 1:22-cv-00828-TDS-JEP<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY OF CORTEVA, INC.**<br><br>**[TEMPORARY PUBLIC REDACTED VERSION]** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................... 1
ARGUMENT.......................................................................................................................... 1
I.   CORTEVA FAILS TO REBUT THE RELEVANCE OF THE
     REQUESTED DATA ............................................................................................... 1
II.  CORTEVA DOES NOT SUBSTANTIATE ANY UNDUE BURDEN
     OF PRODUCING THE REQUESTED DATA ....................................................... 7
CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Zurich Ins. Co.*,
    667 F.2d 1162 (4th Cir. 1982)..................................................................................... 4

*In re Asacol Antitrust Litig.*,
    No. 15-cv-12730-DJC, 2017 WL 11476172 (D. Mass. Jan. 3, 2017)...................... 6

*Bank of Mongolia v. M & P Global Financial Svcs.*,
    258 F.R.D. 514 (S.D. Fla. 2009)................................................................................ 8

*Collins v. Quinn, Collins, Gipson & Arquitt, D.D.S., P.S.*,
    No.: 08–03451–CV–S–REL, 2011 WL 13177168 (W.D. Mo. Apr. 28, 2011) ........ 4

*Cratty v. City of Wyandotte*,
    296 F. Supp. 3d 854 (E.D. Mich. 2017) .................................................................... 8

*Dickman v. Banner Life Ins. Co.*,
    No. RDB-16-192, 2017 WL 4342064 (D. Md. Sept. 28, 2017)............................... 2

*FTC v. Am. Screening, LLC*,
    No. 4:20-CV-1021, 2021 WL 2823176 (E.D. Mo. July 7, 2021).............................. 8

*Nicholas v. Wyndham Int'l, Inc.*,
    373 F.3d 537 (4th Cir. 2004) ..................................................................................... 7

*In re Peanut Farmers Antitrust Litig.*,
    No. 2:19-CV-00463, 2020 WL 9216019 (E.D. Va. July 24, 2020) .......................... 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    No. 07-489 (PLF/JMF/AK), 2009 WL 3443563 (D.D.C. Oct. 23, 2009)................ 3

*United States ex rel. Poehling v. UnitedHealth Grp., Inc.*,
    No. CV 16-8697 MWF (SSX), 2018 WL 11350603 (C.D. Cal. Oct. 23,
    2018)............................................................................................................................ 2

*Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys.*,
    No. 1:05CV955, 2011 WL 2470460 (M.D.N.C. June 20, 2011).............................. 7

*In re WorldWide Language Res. LLC*,
    No. 5:22-MC-00005-RN, 2022 WL 2443437 (E.D.N.C. July 5, 2022).................... 2

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 2, 7

Fed. R. Civ. P. 26(b)(1), advisory committee's note (2015) ................................................ 8

Fed. R. Civ. P. 26(b)(2) ................................................................................................... 7

# PRELIMINARY STATEMENT

Corteva fails to establish that the herbicide, insecticide, and nematicide data requested by Plaintiffs is irrelevant or disproportionate to the needs of this case. To the contrary, this data is relevant to proving the existence and extent of anticompetitive harm (through benchmarking exercises), relevant to quantifying damages (also through benchmarking exercises), and relevant to addressing arguments that Corteva has made in its defense (through market definition analyses). Corteva concedes that the data may be relevant for such purposes, and responds merely with bald assertions that the scope of the data that Plaintiffs seek is too broad. Corteva has failed to demonstrate that it is unduly burdensome to produce data for the requested scope of AIs and the requested time frame, and indeed provides no concrete information regarding the cost or difficulty of producing the discovery sought.

At the same time, Corteva reserves the right to comb through all of its data, whether or not produced to Plaintiffs, and much later to produce only the cherry-picked examples most helpful to its defense. Corteva's position requires that Plaintiffs obtain relevant data regarding Corteva's herbicides, insecticides, and nematicides to avoid being left in the dark about data to which Corteva has unfettered access.

# ARGUMENT

## I. CORTEVA FAILS TO REBUT THE RELEVANCE OF THE REQUESTED DATA

Corteva's main argument against producing the requested herbicide, insecticide, and nematicide active ingredient data appears to be that Plaintiffs request data concerning

sixty AIs and that "large" number somehow renders Plaintiffs' request irrelevant and disproportionate on its face. Opp. 3–4. But that is not the standard for discovery. Plaintiffs are entitled to discovery that is relevant and proportional to the needs of ***this*** case. Federal Rule of Civil Procedure 26(b)(1); *see also United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697 MWF (SSX), 2018 WL 11350603, at *6 (C.D. Cal. Oct. 23, 2018) ("[T]he larger and more complex the case, the more even relatively voluminous discovery may be considered proportionate.").

Corteva then pivots to arguing that the only AIs relevant for Plaintiffs' discovery are those constituting the antitrust product markets pled in the complaint: acetochlor, rimsulfuron, and oxamyl. Opp. 5. That is not the dispute here—Corteva has already offered discovery on more AIs (Opp. 4–5) and has argued that the relevant markets contain additional AIs. Opp. 7.

In any event, the two cases that Corteva cites do not involve antitrust claims and are clearly distinguishable: Both had broad, fishing-expedition-style discovery request of products and subjects that were wholly unrelated to any party's claims or defenses. *See Dickman v. Banner Life Insurance Co.*, No. RDB-16-192, 2017 WL 4342064, at *4 (D. Md. Sept. 28, 2017) (rejecting discovery into life insurance products that were unrelated to the plaintiffs' claims of breach of contract and fraud); *In re WorldWide Language Res. LLC*, No. 5:22-MC-00005-RN, 2022 WL 2443437, at *2 (E.D.N.C. July 5, 2022) (rejecting discovery when qui tam plaintiffs sought discovery from a non-party regarding its affiliate relationship with the defendant in an effort to test an "alternative theory of

fraud . . . when no such allegation ha[d] been made."). In contrast, Plaintiffs here seek data directly relevant to proving anticompetitive harm and damages and to rebutting Corteva's yet-to-be-proposed market definitions—as is common in antitrust actions like this one. This is not a fishing expedition to establish a new theory of liability. Mot. 4–6; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-489 (PLF/JMF/AK), 2009 WL 3443563, at *4 (D.D.C. Oct. 23, 2009) (granting motion to compel and ordering production of data from other product markets because such data "might make the claim of damages from defendants' behavior more or less likely or might be relevant to show the effects of the anti-competitive conspiracy in restraining trade or commerce").

Indeed, Corteva fails to rebut Plaintiffs' clear showing that the data requested here is both relevant to Plaintiffs' and Corteva's claims and defenses and proportional to the needs of this large-scale antitrust case.

**First**, Corteva does not refute the relevance of data concerning other AIs—in fact, Corteva admits that it may well use in its own analysis the very data that it now refuses to produce to Plaintiffs. Opp. 9 (". . . should Corteva rely on its own data beyond the Relevant AIs . . ."). This fact alone justifies Plaintiffs' request for data related to Corteva's herbicides, insecticides, and nematicides. Corteva does not deny that it can and may examine and analyze all of the company's internal data, cherry-pick the active ingredient data that it believes will bolster its defenses, and withhold other active ingredient data that supports Plaintiffs' case. Corteva's proffered remedy is only that it will belatedly produce that defense-friendly data (but still no other data) to Plaintiffs with

3

its expert disclosures. Opp. 9. Corteva's approach disadvantages Plaintiffs, and late, limited disclosure of data handpicked by Corteva and its experts will not cure that unfairness.[1]

**Second,** Corteva does not dispute that using the requested data for benchmarking as Plaintiffs suggest can be useful, and acknowledges that the types of data requested are relevant. Opp. 6 ("Corteva does not dispute that such data can be relevant in an antitrust investigation."); *see also In re Peanut Farmers Antitrust Litig.*, No. 2:19-CV-00463, 2020 WL 9216019, at *2 (E.D. Va. July 24, 2020) (granting motion to compel data for products outside the named product markets and relevant time periods for benchmarking purposes). Corteva again only faults Plaintiffs for the scope of active ingredients they request. But the AIs that Plaintiffs target are the precise categories of active ingredients that acetochlor, rimsulfuron, and oxamyl belong to—herbicides or insecticides/nematicides. Corteva does not explain why any given active ingredient in these categories is an inappropriate comparator for benchmarking purposes. It would be premature for Plaintiffs to further limit their request at this stage because they will need to study the data before determining which AIs are best suited for use as comparators.

---

[1] If this Court orders discovery of data that is more limited than what Plaintiffs seek, Plaintiffs request that Corteva be prohibited from using any data that it does not now produce. *See, e.g., Collins v. Quinn, Collins, Gipson & Arquitt, D.D.S., P.S.*, No.: 08–03451–CV–S–REL, 2011 WL 13177168, at *2 (W.D. Mo. Apr. 28, 2011) (party "judicially estopped" from using evidence it refused to produce). Corteva should be barred from engaging in " 'intentional self-contradiction' " with respect to its data " 'as a means of obtaining unfair advantage.' " *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167–68 (4th Cir. 1982).

That analysis could include factors such as geography of sales, volume of sales, whether and when an AI was subject to Corteva's loyalty program, pricing trends, and an overall assessment of the quality and availability of data as to particular AIs. The analysis could also depend on competitive conditions, such as whether generic competitors have entered. And as noted, Corteva itself refuses to limit its benchmarking analyses to the active ingredient data it offers to produce.[2]

**Third**, Corteva has no answer for the fact that its own amorphous proposed market definition, with an undefined number of AIs, justifies Plaintiffs' requests. Corteva offers to provide datasets for Corteva AIs that are "in the same mode of action groups and [are] used to treat the same crops and pests as the Relevant AIs." Opp. 7.[3] Yet in its motion to dismiss Plaintiffs' Amended Complaint, Corteva compared acetochlor with flumetsulam (Doc. 98, at 13), which has a different mode of action and is in a different chemical family altogether. *See* Doc. 133, Ex. 7 (showing that acetochlor is a Seedling Shoot Growth Inhibitor Mode of Action in the Acetamide chemical family while flumetsulam is an Amino Acid Synthesis Inhibitor Mode of Action in the Triazolopyrimidine chemical family). These changing positions further demonstrate

---

[2] Even if Corteva's previous offer (Opp. at 6 n.5) to produce data for eight additional AIs ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were to provide sufficient scope to identify appropriate comparators for benchmarking analyses, the fact that Corteva reserves the right to perform analyses on other AIs would make Corteva's offer inadequate.

[3] Corteva does not provide a list of AIs that meet these criteria, but this offer may not meaningfully expand the scope of Corteva's production. *See* Opp. 7 ("the substitute AIs . . . would primarily encompass AIs manufactured by Corteva's competitors").

5

Plaintiffs' need for this data. Apparently, Corteva has not yet settled on the scope of the relevant market(s) for which it will advocate in its defense. ("Corteva did not purport to define a relevant market . . ." and "the relevant market is . . . *no narrower* than all AIs in the same mode of action groups"). Opp. 7 (emphasis added). As Corteva may argue for broader markets at trial, Plaintiffs need the requested active ingredient data from Corteva to respond to such arguments. And the fact that some of this data may reside with third parties does not negate the relevance of the data that Corteva possesses.

Corteva's reliance on *In re Asacol Antitrust Litigation* for the proposition that Plaintiffs are not entitled to data from Corteva relevant to market definition is misplaced. Opp. at 8. In *Asacol*, the court specifically relied on an expert declaration opining that the documents requested would not be relevant or useful for purposes of defining the relevant market, and that the materials sought were "cumulative of information more easily available from other sources." No. 15-cv-12730-DJC, 2017 WL 11476172, at *3 (D. Mass. Jan. 3, 2017). No such declaration is in evidence here. The court also was persuaded that the non-moving party had established undue burden. *Id*. Corteva has not made any such showing here.

**Finally**, Corteva takes issue with the date range of Plaintiffs' request, arguing that producing data from before 2015 is not proportionate. Opp. 9. This is incorrect. Pre-2015 sales, cost, and performance data is needed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This is highly probative evidence as to the effects of Corteva's loyalty program. Further, Plaintiffs require data

6

from before 2015 to analyze market definition, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Corteva admits that data from before 2015 could be "relevant 'for assessing effects, market definition, and market power.'" Opp. 9. And as discussed below, Corteva offers no argument as to the burden of producing data from an additional three-to-five-year period.

## II. CORTEVA DOES NOT SUBSTANTIATE ANY UNDUE BURDEN OF PRODUCING THE REQUESTED DATA

Even the cases that Corteva cites teach that relevant information is discoverable absent an appropriate reason to curtail such discovery, such as when the "burden or expense of the proposed discovery outweighs its likely benefit." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(2)); *see generally Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys.*, No. 1:05CV955, 2011 WL 2470460, at *2, *18 (M.D.N.C. June 20, 2011) (noting that "unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and granting motion to compel) (quoting Fed. R. Civ. P. 26(b)(1); cleaned up)). Corteva asserts that the burden of producing data for its approximately sixty herbicide, insecticide, and nematicides AIs other than acetochlor, rimsulfuron, or oxamyl is "obvious." Opp. 3–4, 9–10. This is obviously deficient. Corteva provides no concrete information on the costs or time to provide data for those products.

The party claiming undue burden "must provide evidence regarding the time or expense required to comply with the requests" because "'[that] party . . . has far better information . . . with respect to that part of the [proportionality] determination.'" *FTC v. Am. Screening, LLC*, No. 4:20-CV-1021, 2021 WL 2823176, at *1, *2 (E.D. Mo. July 7, 2021) (quoting Fed. R. Civ. P. 26(b)(1), advisory committee's note (2015)). That Plaintiffs' data request *may* be burdensome to collect relative to the discovery that Corteva would prefer to provide says nothing about whether such burden outweighs its likely benefit. Corteva's generalized, unsupported claim of burden is insufficient. *See id.* at *2; *see also Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 861 (E.D. Mich. 2017) (party resisting discovery "must meet its burden of explaining how costly or time-consuming responding to a set of discovery requests will be" (citation omitted)); *Bank of Mongolia v. M & P Global Financial Services*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) (requiring "specific and particular" articulation of burden).

The burden of providing the data that Plaintiffs seek may in fact be quite low. Corteva has agreed to collect data for certain active ingredients from company databases. Opp. 6–7. Upon accessing these databases, the burden of responding in full to Plaintiffs' request is likely as insignificant as performing queries for a few dozen additional active ingredients or product names.

Similarly, Corteva fails to provide any specific cost or burden information stemming from the additional three-to-five-year time period sought by Plaintiffs. There is likely no burden to adding additional time periods to a database search, as a data query

could simply be modified to encompass 2012 through 2024 instead of 2017 through 2024. If the process is any more complicated or burdensome than this, Corteva has not said so.

Corteva's only attempt to provide specific information comes when it argues that providing certain types of data, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is burdensome because some of this data does not exist for certain requested time periods. Opp. 10–11. Corteva's argument is puzzling. If certain data does not exist, that would *lessen* the burden of responding to Plaintiffs' requests, as there is no burden associated with collecting and producing data that does not exist. Regardless, Corteva has not claimed that the remainder of the categories of data that Plaintiffs request do not exist, and it should be required to produce the extant data.

## **CONCLUSION**

Plaintiffs' motion to compel should be granted in full.

Dated: August 2, 2024          Respectfully submitted,

        /s/ Allyson M. Maltas
ALLYSON M. MALTAS
Senior Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov

KARNA ADAM
JOSEPH R. BAKER
WESLEY G. CARSON
ROBERT Y. CHEN
ELIZABETH A. GILLEN
PHILIP J. KEHL
LAUREN B. PATTERSON
MICHAEL J. TURNER

*Attorneys for Plaintiff Federal Trade Commission*

/s/ Nicole S. Gordon
NICOLE S. GORDON
Deputy Attorney General
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94610
Telephone: (415) 510-4400
Email: nicole.gordon@doj.ca.gov

*Attorney for Plaintiff State of California*

/s/ Conor J. May
JAN M. ZAVISLAN
Senior Counsel
CONOR J. MAY
Assistant Attorney General
Colorado Department of Law
Office of the Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Jan.Zavislan@coag.gov
       Conor.May@coag.gov

*Attorneys for Plaintiff State of Colorado*

/s/ Paul J. Harper
PAUL J. HARPER
Assistant Attorney General, Antitrust
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3000
Email: paul.harper@ilag.gov

*Attorney for Plaintiff State of Illinois*


/s/ Noah Goerlitz
NOAH GOERLITZ
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 725-1018
Email: noah.goerlitz@ag.iowa.gov

*Attorney for Plaintiff State of Iowa*


/s/ Colin P. Snider
COLIN P. SNIDER
JUSTIN C. MCCULLY
Office of the Attorney General of Nebraska
2115 State Capitol Building
Lincoln, NE 68509
Telephone: (402) 471-3840
Email: Colin.Snider@nebraska.gov
          Justin.Mccully@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

/s/ Matthew Michaloski
MATTHEW MICHALOSKI
CHRISTI FOUST
Deputy Attorneys General
SCOTT BARNHART
Chief Counsel and Director of Consumer Protection
Office of the Indiana Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 234-1479
Email: matthew.michaloski@atg.in.gov
          christi.foust@atg.in.gov
          scott.barnhart@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


/s/ Katherine Moerke
KATHERINE MOERKE
JASON PLEGGENKUHLE
ELIZABETH ODETTE
Assistant Attorneys General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Telephone: (651) 296-3353
Email: katherine.moerke@ag.state.mn.us
          jason.pleggenkuhle@ag.state.mn.us
          elizabeth.odette@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

/s/ Hamilton Millwee
HAMILTON MILLWEE
Assistant Attorney General
TATE BALL
Assistant Attorney General
Office of the Attorney General of Tennessee
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
　　　　Tate.Ball@ag.tn.gov

*Attorneys for Plaintiff State of Tennessee*

/s/ Luminita Nodit
LUMINITA NODIT
Assistant Attorney General,
Antitrust Division
Washington State Office
of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104
Telephone: (206) 254-0568
Email: Lumi.Nodit@atg.wa.gov

*Attorney for Plaintiff State
of Washington*

/s/ Timothy D. Smith
TIMOTHY D. SMITH
Senior Assistant Attorney General
Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4400
Email: tim.smith@doj.state.or.us

*Attorney for Plaintiff State of Oregon*

/s/ William Shieber
JAMES LLOYD
Chief, Antitrust Division
TREVOR YOUNG
Deputy Chief, Antitrust Division
WILLIAM SHIEBER
Assistant Attorney General
Office of the Attorney General of Texas
300 West 15th Street
Austin, TX 78701
Telephone: (512) 936-1674
Email: William.Shieber@oag.texas.gov

*Attorneys for Plaintiff State of Texas*

/s/ Laura E. McFarlane
LAURA E. MCFARLANE
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-8911
Email: mcfarlanele@doj.state.wi.us

*Attorney for Plaintiff State of Wisconsin*

# **CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) in that it contains fewer than 3,125 words, excluding the exempted portions, as reported by word processing software.

Dated: August 2, 2024          /s/ Allyson M. Maltas

ALLYSON M. MALTAS
Senior Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov