1          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
2

3  IN RE:  CROP PROTECTION          )   CASE NO. 1:23MD3062
   PRODUCTS LOYALTY PROGRAM         )
4  ANTITRUST LITIGATION             )
                                    )
5  This transcript relates to:      )
   ALL ACTIONS.                     )
6

7
   FEDERAL TRADE COMMISSION, et al.,)   CASE NO. 1:22CV828
8                                   )
           Plaintiff,              )
9                                   )
           vs.                      )
10                                  )
   SYNGENTA CROP PROTECTION AG,      )
11 SYNGENTA CORPORATION, SYNGENTA    )
   CROP PROTECTION, LLC, and         )
12 CORTEVA, INC.                     )
                                    )   Winston-Salem, NC
13         Defendants.              )   October 24, 2024
   _____

14

15

16          TRANSCRIPT OF THE **STATUS CONFERENCE**
           BEFORE THE HONORABLE JOI E. PEAKE
17            UNITED STATES MAGISTRATE JUDGE

18

19 APPEARANCES:

20 For the FTC Plaintiffs:     ELIZABETH GILLEN, ESQ.
                              FEDERAL TRADE COMMISSION
21                            400 7th Street SW
                              Washington, DC 20024
22

23

24

25

```
 1   APPEARANCES: (Continued)

 2   For the MDL Plaintiffs:      MARGARET C. MACLEAN, ESQ.
                                  LOWEY DANNENBERG P.C.
 3                                44 South Broadway, Suite 1100
                                  White Plains, New York 10601
 4
                                  CHRISTOPHER M. BURKE, ESQ.
 5                                LABEAT RRAHMANI, ESQ.
                                  KOREIN TILLERY, PC
 6                                707 Broadway, Suite 1410
                                  San Diego, California 92101
 7
                                  LYN K. BROOM, ESQ.
 8                                PINTO COATES KYRE & BOWERS, PLLC
                                  3203 Brassfield Road
 9                                Greensboro, North Carolina 27410

10
     For the Defendants:
11   Syngenta:                    JAMES McCLAMMY, ESQ.
                                  DAVIS POLK & WARDWELL, LLP
12                                450 Lexington Avenue
                                  New York, NY 10017
13
                                  PATRICK M. KANE, ESQ.
14                                FOX ROTHSCHILD LLP
                                  230 N. Elm Street, Suite 1200
15                                Greensboro, North Carolina 27401

16   Corteva:                     DAVID MARRIOTT, ESQ.
                                  CRAVATH, SWAINE & MOORE, LLP
17                                375 Ninth Avenue.
                                  Two Manhattan West
18                                New York, NY 10001

19                                MARK E. ANDERSON, ESQ.
                                  MCGUIREWOODS LLP
20                                501 Fayetteville Street, Suite 500
                                  Raleigh, North Carolina 27601

21

22   Transcriber:                 BRIANA L. CHESNUT, RPR
                                  Official U.S. Court Reporter
23                                P.O. Box 615
                                  Welcome, North Carolina 27374
24

25
```

```
 1                      P R O C E E D I N G S
 2           THE COURT:  All right.  And I'm going to ask my law
 3   clerk to call the other cases on the calendar.
 4           And I believe we've organized everyone here before,
 5   and so if you all want to take your places the way we've
 6   organized folks previously.  And if I recall -- I'll let you
 7   decide how best you want to do that.
 8           Ms. Garrett, do we have a setup that would be what
 9   we've used in the past for this one?  We had the FTC folks --
10   how did you set them up?
11           Okay.  All right.  So we'll see if they remember how
12   they were set up.  If you need some recollection or direction,
13   then I'm happy to give that to you.
14           And we can use this table over here as well.  So this
15   table to the right, I believe we had one group of folks over
16   here.  That's our -- Syngenta and Corteva at this table.  And
17   then one group over here.
18           All right.  So I appreciate that.  You did very well.
19   Look at that.
20           So as is my usual practice, I'm just going to ask
21   everyone to identify themselves and announce their
22   representations for the record and then remind you again that
23   since we're recording by the FTR, we don't have a court
24   reporter here.  So it's helpful every time you stand and speak
25   that you also identify yourselves so that it's easier for a
```

23MD3062  -- Status conf.  -- 10/24/24

1  transcript to be made.

2          Yes, go ahead.

3          **LAW CLERK:**  The matters now before the Court are

4  Case No. 1:22CV828 FTC, et al. versus Syngenta Crop Protection

5  AG.  In addition, you have Case No. 1:23MD3062, In re:  Crop

6  Protection Products Loyalty Program Antitrust Litigation.

7          These matters are both before Your Honor for a status

8  conference.

9          **THE COURT:**  Okay.  Very good.  Thank you.

10          All right.  So I think we've got the MDL Plaintiffs

11  here.  So I'll ask you all to start, and then I'll work my way

12  around.

13          Yes, ma'am?

14          **MS. MacLEAN:**  Good morning, Your Honor.  Margaret

15  MacLean from Lowey Dannenberg for the MDL Plaintiffs.

16          **MR. RRAHMANI:**  Good morning, Your Honor.  Labeat

17  Rrahmani for the MDL.

18          **THE COURT:**  Rrahmani?

19          **MR. RRAHMANI:**  Rrahmani.

20          **THE COURT:**  Okay.

21          **MR. RRAHMANI:**  Of Korein Tillery.

22          **THE COURT:**  What's that?

23          **MR. RRAHMANI:**  Of Korein Tillery.

24          **THE COURT:**  Okay. Thank you.

25          **MR. BURKE:**  Good morning, Your Honor.  Chris Burke of

Korein Tillery for the Class Plaintiffs.

        **THE COURT:**  Okay.  And, Ms. Broom.

        **MS. BROOM:**  Good morning, Your Honor.  Lyn Broom with Pinto Coates Kyre & Bowers, local counsel for the Class Plaintiffs.

        **THE COURT:**  Okay.  Very good. Thank you.

        All right.  And, Ms. MacLean, are you handling things primarily for the Plaintiffs -- MDL Plaintiffs today?

        **MS. MacLEAN:**  I'll probably start us off, but then Mr. Rrahmani will handle the remainder of the hearing.

        **THE COURT:**  All right.  Very good.  Thank you.

        All right.  And for the Defendants, Mr. Marriott?

        **MR. MARRIOTT:**  Good morning, Your Honor.  Dave Marriott from Cravath, Swaine & Moore for Corteva.

        **THE COURT:**  Okay.

        **MR. ANDERSON:**  Good morning, Your Honor.  Mark Anderson from McGuireWoods also for Corteva.

        **THE COURT:**  All right.  Very good.  Thank you.

        **MR. McCLAMMY:**  Good morning, Your Honor.  Jim McClammy, Davis Polk & Wardwell, on behalf of the Syngenta Defendants.

        **MR. KANE:**  Good morning, Your Honor.  Patrick Kane with Fox Rothschild also for the Syngenta Defendants.

        **THE COURT:**  Okay.  Very good.

        All right.  And for the FTC?

1      **MS. GILLEN:** Good morning, Your Honor. Elizabeth

2  Gillen of the Federal Trade Commission on behalf of the

3  Government Plaintiffs.

4      **THE COURT:** All right. Very good.

5      And let me make sure I've got my chart here.

6      All right. So we are here for a status conference.

7  We set this months ago to be able to check in today. I think

8  it's good to do, and so I'm glad we've got it set.

9      It looks like most things have been resolved, but I

10  understand, to the extent there's things to address, it'll

11  primarily be with respect to the protective orders and, in

12  particular, the protective order in the MDL case and how that

13  relates to the protective order in the FTC case. And so I

14  intend to take that up.

15      We also have some outstanding motions to seal, and

16  we're going to have to work through all of those and make a

17  record of the basis for sealing. And so I'll intend to take

18  care of that.

19      Before I dive into those, I think it might help to

20  just get a bird's-eye view from each of you as to where we are

21  and if there are other matters that would be helpful to take up

22  today.

23      Again, the cases are not consolidated, but we are

24  coordinating them. And so what I'm going to do is hear from

25  everybody as we go through today just for status conference

1  purposes, but that's not an intent in any way to consolidate

2  the cases.  It's just for scheduling and status conference, as

3  we're trying to make sure the cases are both proceeding and as

4  we figure out how to coordinate that.

5          So, Ms. MacLean, just big picture, where are we, and

6  anything else we need to put on the agenda for today?

7          **MS. MacLEAN:**  Sure.  I will have Mr. Rrahmani

8  describe the status of discovery.

9          **THE COURT:**  Okay.

10         **MS. MacLEAN:**  But the main thing, from our

11  perspective, is that we have recently been told by Defendants,

12  or at least by Syngenta, that they consider us to be at impasse

13  when it comes to our questions about custodians, about the

14  individuals from whom documents will be searched for

15  production.  And so we'd like to just set a briefing schedule

16  for that because we anticipate a motion to compel.

17         **THE COURT:**  Okay.  That's helpful to know.

18         I can go ahead and get the big picture status from

19  Mr. Rrahmani as well.

20         Mr. Rrahmani, where are we, just generally, in terms

21  of status in your case?

22         **MR. RRAHMANI:**  We have issued our first RFPs on May

23  21, 2024.  We issued our second set of RFPs on July 25, 2024.

24  And then we've issued our third set of RFPs on October 15,

25  2024.

1       We received objections from both Syngenta and Corteva

2 on August 6. Corteva included a list of custodians in that set

3 of objections. And then Syngenta circulated proposed

4 custodians on October 4. We have requested additional

5 custodians from both sets on October 11.

6       We met and conferred with both sets of Defendants.

7 And up until the filing of the status report, we believe we

8 were making good progress and meeting and conferring in good

9 faith. As it stands today, I'm not sure what the status of

10 that is, and so we think that setting it for a motion to compel

11 is probably the best way to go.

12       **THE COURT:** Okay. So what I may do is -- let's put

13 that at the end of the agenda for today. And what I may do is

14 let you give me a general sense of what the disagreement is.

15 As is my practice, I'm not going to rule on that without

16 getting a briefing from you all, but I'm always happy to

17 provide some initial preliminary guidance, to the extent that

18 might be helpful and avoid the need for briefing. But I can --

19 just to get a general sense of what the dispute is, and then

20 that will also tell me how long we might need to set it for a

21 briefing schedule and when we can set it for a hearing.

22       Anything else just in terms of a bird's-eye view of

23 where things are?

24       **MR. RRAHMANI:** So we expect to have issues regarding

25 custodians. We are still negotiating the time frame with

1  Syngenta.  We're still negotiating search terms.  And then with

2  Corteva, we're still negotiating the parameters of their

3  technology-assisted review, TAR.

4          **THE COURT:**  Okay.  Anything else you want to

5  highlight?

6          **MR. RRAHMANI:**  We received, in response to our first

7  set of RFPs, productions of the FTC investigation file that

8  started rolling in in May and in June.  That's about

9  1,100,000-plus documents.  It's about three and a half million

10 pages of documents.  We're reviewing them.  We're making good

11 work and that we are nowhere near done.

12          And we've tried to do that simultaneously with

13 propounding our additional requests for discovery tailored to

14 our case.  And as you're not -- as Your Honor noted in the last

15 conference, these cases are different, and we believe that

16 we're entitled to this discovery.

17          **THE COURT:**  Okay.  I don't know how -- you're

18 entitled to which discovery?  So are there different discovery,

19 or is it a different schedule?  What was the issue there?

20          **MR. RRAHMANI:**  We're entitled to the discovery that

21 we've asked Defendants up until this point.  Our sense is that

22 they're only going to give us what they've agreed to give to

23 the FTC.

24          **THE COURT:**  Okay.  So there may be a dispute

25 regarding additional documents beyond what's been provided to

1  the FTC; is that right?

2        **MR. RRAHMANI:**  Additional documents and the files

3  that they're searching.

4        **THE COURT:**  Oh, so that goes back to the search

5  terms, custodians, parameters.  So is that the same issue that

6  you're talking about there?

7        **MR. RRAHMANI:**  Exactly.

8        **THE COURT:**  I gotcha.

9        So the issue on that is whether it's limited to what

10  they've done for the FTC or whether it should be broader?

11        **MR. RRAHMANI:**  Yes.

12        **THE COURT:**  Okay.  Okay.  And then you mentioned

13  getting the FTC file, the documents from that, making progress,

14  reviewing that.  I know one of the issues was making sure you

15  all got caught up so that we could coordinate these things for

16  depositions, in particular.

17        Is that on track at this point?

18        **MR. RRAHMANI:**  So we've put a lot of resources on

19  this.  We've staffed this with 40 full-time reviewers.  I think

20  we're making good progress, but getting just through those

21  documents is a tall order.  We're optimistic.

22        **THE COURT:**  Okay.  All right.  Well, and I think

23  we're in a good position then to at least be able to do the

24  coordination of depositions the way we had envisioned or

25  anticipated that.

1    **MR. RRAHMANI:**  Depending on how we land on

2  custodians, I believe we should be.

3         **THE COURT:**  Okay.

4         **MR. RRAHMANI:**  But I guess for purposes --

5         **THE COURT:**  And how does that affect the deposition

6  issue?

7         **MR. RRAHMANI:**  Typically, the documents you get from

8  custodians will inform depositions.  We've requested additional

9  custodians.  We think that there's good reason to depose those

10  folks that potentially have responsive information for our

11  case, and deciding that the custodians ought to be limited to

12  the set that they've agreed to with the FTC would hamper that

13  ability to depose those additional folks.

14         **THE COURT:**  Okay.  All right.  We can get into that

15  then a little bit more if we talk about the search terms and

16  custodians issue.  But it sounds like scheduling-wise things

17  are on track, as far as you're aware and concerned, other than

18  just getting the protective order issue worked out and the

19  search term and custodians issue worked out.

20         Is that accurate?

21         **MR. BURKE:**  Your Honor, we've received --

22         **THE COURT:**  Mr. Burke?

23         **MR. BURKE:**  I'm sorry, Your Honor.  Chris Burke from

24  Korein Tillery.

25         **THE COURT:**  Okay.

1          **MR. BURKE:**  We've received no additional documents

2   other than those that were produced to the Government.  If we

3   have a different case, a broader case, additional AIs, we have

4   to demonstrate impact and damages on a class basis.  We have a

5   broader case.  We have to prove things the Government doesn't

6   need to prove.

7          So I'm not sure that it's on track, and that's our

8   concern with respect to custodians, time frame, search terms,

9   and TAR.  We've received nothing, zero, in terms of responses

10  to the discovery we've propounded beyond the clone from the

11  Government's production.

12         **THE COURT:**  So -- and I'll come back around to those

13  arguments.

14         I think my point at this -- at this stage is just

15  that with respect to any discovery that you wanted to

16  undertake, coordinating it with the discovery that's happening

17  in the FTC case, to be able to do that.  If there's additional

18  discovery that you wanted to do at a later time frame -- I

19  think you've got a later close of fact discovery -- those are

20  things that you would still be able to do.

21         And, Mr. Burke, did you want to speak to that as

22  well?

23         **MR. BURKE:**  I would, Your Honor --

24         **THE COURT:**  Okay.

25         **MR. BURKE:**  -- because if we get additional documents

1  in from additional custodians or because our search terms are

2  different or our TAR metrics are different, we may be in the

3  position of having to come back to the Court and say we need to

4  depose somebody again.

5       **THE COURT:**  Well, and that's what I want to avoid.

6  And so I think that we'll take care of whatever we can with

7  your search terms and custodians, but I will also tell you that

8  I still think you need to take advantage of the depositions as

9  they're happening with the FTC case because I'm going to be

10  reluctant to come back again, except in some sort of

11  exceptional circumstance, to have somebody redeposed.

12       Does that make sense?  Do you understand the --

13       **MR. BURKE:**  Yeah, I understand the standard is for

14  good cause.

15       **THE COURT:**  Well, right.  And we'll take that up if

16  we have to.  I just want to make sure we're moving forward with

17  the ways that you can where the FTC also has -- folks that

18  they're deposing, that you have the documents for those folks,

19  since they're the ones that are included already within the

20  search terms and the custodians.

21       **MR. BURKE:**  Sure.  And we're not dragging our feet.

22  As Mr. Rrahmani just pointed out, we have 40 full-time

23  reviewers grinding away at this, in addition to TAR on our end,

24  to try to identify the documents that are important for our

25  case.

1    **THE COURT:**  Well, I'll put it this way:  If it's

2   going to create delay, I'm more likely to not expand it.  And

3   so if you're asking for me to expand it, then you're going to

4   have to figure out a way to do that without causing a delay.

5         So we'll come back around to that at the end.  But

6   just to highlight or preview that for me, those are going to be

7   sort of some competing things or things in contention.  And so

8   I think that's something you need to work out on your end, too,

9   to make sure that if you're asking me to expand it, that's not

10  going to create a delay.

11    **MR. BURKE:**  Well, we're going through the documents

12  that have been produced, and we're doing our level best to get

13  up to speed.  And I think a document review team of 40 is heavy

14  enough for this case, that that's reasonable.

15         But we are going to have to prove things the FTC

16  doesn't have to prove.  And we have a broader case.  We may

17  have to go look at state law issues that the FTC doesn't have

18  to deal with.  Obviously, impact and damages issues FTC doesn't

19  have to deal with.  We have AIs the FTC doesn't have to deal

20  with.

21         We need additional discovery or we're not going to be

22  able to prove our case up.

23    **THE COURT:**  And so what I'm indicating to you is --

24  if you need that additional discovery, part of what I'm going

25  to ask you to do is figure out how to make sure that doesn't

1  delay the deposition schedule.

2         And that's separate then from the 40 folks that

3  you've got reviewing FTC.  This is just on the issue of if

4  you're asking for some additional broader search terms and

5  additional broader discovery, that you tell me how that's going

6  to happen within the schedule that still works.

7         Again, we can come back around to that.  So we'll

8  come back around to sort of looking at the particulars and see

9  if I can give some guidance on that.  I'm just previewing for

10 you that I think if that's going to create delays, then I'm

11 less likely to expand them more broadly, just so you know, in

12 terms of things that I may be looking at and considering what

13 you might be asking for on that.

14         **MR. BURKE:**  We follow that 100 percent, Your Honor,

15 but we can't review what we don't have.

16         **THE COURT:**  So let's go -- let me switch back to my

17 bird's-eye view at this point, and then we'll work through the

18 issues and come back around to that.

19         Let me come over here to Mr. Marriott for Corteva.

20         Where are we generally in terms of issues?

21         What I've got now on the agenda are the motions to

22 seal, the protective order issue, and maybe some preview or

23 setting a schedule for addressing the search terms and

24 custodians for the MDL.  That's what I've got.

25         Where are you generally, and anything else you need

1  to add to that list?

2          **MR. MARRIOTT:**  Thank you, Your Honor.

3          I think in view of what we've heard today, that's a

4  good list.  I guess my overarching comment would be to say that

5  I'm quite surprised to hear what I just heard, in view of where

6  I believe the parties were coming into this hearing and, I

7  believe, as is reflected in the joint status reports that were

8  submitted to the Court.

9          You will recall there -- and I appreciate and we all

10  understand these are not coordinated -- these are not

11  consolidated cases.

12          **THE COURT:**  Right.

13          **MR. MARRIOTT:**  These are coordinated cases.  But Your

14  Honor went to great pains, I believe, at a prior hearing to get

15  a system in place, and that system is reflected in the Court's

16  scheduling order.  I will give you the exact date, Your Honor,

17  but it doesn't -- it doesn't leap out at me -- May 23, 2024.

18          The Court went to great pains in, I think, that order

19  to put these matters on coordinated schedules.  They have

20  basically the same deadline for the substantial completion of

21  discovery, and they have the same deadline, more or less, for

22  the completion of depositions.  And I said, I thought, until I

23  heard what I just heard, we were very much on

24  (inaudible/coughing) happen.

25          What Your Honor will recall was, and this is not

1  always the case, the parties had slightly different

2  perspectives about what these schedules ought to look like.

3  And Your Honor effectively came to a compromise view.  And what

4  Your Honor did, as is reflected in the order to which I just

5  referenced, is you basically said, look, we're going to have

6  all of the discovery requests themselves from both sides,

7  meaning the Defendants and the Plaintiffs and the FTC and the

8  States in their action, all by a date certain.  And then we're

9  going to have you back here on October 24th and we will, on

10 October 24th, raise whatever issue there is, and we will

11 resolve that day, because it will have been met and conferred

12 about, discussed and laid out in the joint status report,

13 whatever issues there are.

14        So we have received from the private Plaintiffs three

15 sets of discovery requests, as counsel laid out.  We have

16 served some discovery requests of our own.  We have served the

17 responses and objections to those.  We've said what it is we

18 were prepared to do, what it is we didn't believe made any

19 sense whatsoever to do.  And we've met and conferred on those

20 issues, and we've laid out, I think, in crystal clear terms

21 what we thought was feasible and not feasible, what was doable

22 and not doable.

23        And despite that, there's nothing in the joint status

24 report by Plaintiffs that say the Court, therefore, has to

25 resolve the following issues.  So from our perspective, the

1  Plaintiffs effectively chose not to pursue those issues.  Now

2  I'm hearing this morning that, in fact, they have a whole bunch

3  of custodians they want to pursue in a new time frame and a new

4  search protocol, which is basically, so far as we're

5  concerned -- so far as I'm concerned, because I haven't had a

6  chance now to discuss this with my colleagues because I'm just

7  hearing it, is effectively an effort to kind of blow up the

8  system that was set in place previously.

9        So we'll get to that issue when we get to it.  So --

10  but my overview is I thought we were great.  I thought we

11  really had no issues until I just heard what I heard.

12        We don't disagree that they have a different set of

13  elements to prove than does the FTC.  There's not any question

14  about that, but that doesn't change the scope of relevant

15  custodians.  The custodians who were involved in these

16  programs, the people who have the documents that are relevant

17  to them are the same people.

18        The FTC and the States were, from our perspective,

19  very aggressive in -- and, you know, I thought too aggressive,

20  but very aggressive in getting a very robust, big set of

21  custodians.  They've got them.  And from our view, there are no

22  additional custodians.

23        It may well be that we will produce from those

24  custodians some documents that really relate to their claims

25  and others that relate to their claims, but there's not, in our

1 mind, any need to be changing the custodians, certainly not to

2 be changing the TAR protocol and the search terms, which we've

3 now been working with for many, many months.

4         And so to hear that there's now some issue --

5 unidentified, unexplained issue, when everything was supposed

6 to be in the joint status report comes as a big surprise.

7         So that's, Your Honor, where we are at a high

8 Level.

9         **THE COURT:**  Okay.  All right.  I think that's

10 helpful.

11         Mr. McClammy?

12         **MR. McCLAMMY:**  Good morning, Your Honor.  For the

13 record, Jim McClammy, Davis Polk, on behalf of the Syngenta

14 Defendants.

15         I would echo a lot of what Mr. Marriott says.  I

16 think, you know, we have the same understanding of what Your

17 Honor accomplished with this group, as far as setting the

18 schedule, making sure that even with the October 15th deadline,

19 that we were going to be working towards getting things teed up

20 for this particular status conference, if there were going to

21 be things that needed to be decided.  And I don't believe

22 that's done.

23         And, yes, we do believe that there was a

24 late-arising, kind of difference as to whether or not, you

25 know, there should be additional custodians included in the

1  mix.  Our position is that we have more than covered a

2  reasonable and proportionate universe of custodians with what

3  we've done with the -- with what we've agreed to with the

4  Government Plaintiffs.

5       But, in addition to that, we have not ignored the

6  fact that their case had a broader set of AIs with respect to

7  Syngenta, for example, and we've expanded the scope of AIs that

8  are included.  Because of the coordination, we will be

9  producing things to all of the Plaintiffs:  The Government

10 Plaintiffs and the MDL Plaintiffs.

11      So there is no real distinction between -- you know,

12 when Mr. Burke is suggesting that, you know, we would only be

13 getting what's being provided to the Government Plaintiffs,

14 well, that is true, but what the Government Plaintiffs are

15 getting has been expanded to cover the universe of AIs that are

16 also at issue, for example, in the MDL action.

17      We are at a point where we have -- you know, we are

18 well underway.  We have over 30-plus custodians that we are

19 reviewing documents for.  We're reviewing over a million-plus,

20 you know, documents to get them out the door.  We have started

21 to make productions on a rolling basis in the Government action

22 where the protective order has been finalized.  We are awaiting

23 the finalization of the protective order so we can start to get

24 those additional documents to the Plaintiffs.

25      And as the Plaintiffs have said readily, they are

1  still working their way through the FTC production.  But as

2  soon as we have the issues resolved that will put a protective

3  order in place for productions beyond the investigative files,

4  we are ready to begin the rolling production with them as well.

5       We do have concerns that if we are opening things up

6  and experiencing the delays that may be incumbent upon a

7  further motion practice, that whatever comes after that could

8  interfere with the schedule that we've all agreed was a

9  workable one.

10       **THE COURT:**  Okay.  All right.  I think that's helpful

11  as well.

12       Yes, ma'am?

13       **MS. GILLEN:**  Good morning, Your Honor.  Elizabeth

14  Gillen from the FTC on behalf of the Government Plaintiffs.

15       Just to briefly provide an update on the Government

16  action, we are proceeding diligently with discovery.  As Your

17  Honor knows, Plaintiffs submitted motions to compel over the

18  summer against both Defendants that were argued here in August.

19  Per Your Honor's instructions, after that hearing, we continued

20  our negotiations and have now reached agreement on all issues

21  presented in the motions to compel.

22       With these issues resolved, we understand Defendants

23  either will or have begun producing data and documents on a

24  rolling basis.  I believe Syngenta began producing documents

25  this week, and I understand that Corteva will begin its rolling

1   productions soon.  Likewise, the Government Plaintiffs plan to

2   produce documents in response to Defendants' request for

3   production by November 15th.

4           There are no other outstanding issues from our

5   perspective with respect to party discovery at this time.  So

6   we will certainly update the Court if anything arises.

7           Your Honor mentioned the two protective order issues

8   that have presented a bit of a slowdown with respect to

9   third-party discovery.  I'm happy to talk about those now, or

10  if Your Honor intends to come back to them --

11          **THE COURT:**  Well, I'll take -- I think I'm going to

12  clean up the other motions first, and then we'll take up as

13  what I thought was sort of the issue that was -- the

14  substantive issue that we would need to address today.  And

15  then we can see where we are with any other final issues that

16  the MDL Plaintiffs are intending to raise.

17          **MS. GILLEN:**  Yes.  Thank you.

18          **THE COURT:**  All right.  Very good.

19          So while I've got you then, with respect to the

20  motions to compel, which was Nos. 217 and 224, those can both

21  be terminated as moot now.

22          Is that correct?

23          **MS. GILLEN:**  Yes, Your Honor.  I suppose the only

24  caveat there is we would hope that that would be without

25  prejudice to Plaintiffs refiling or reraising issues if, you

1  know, when we begin to review the documents that are produced,

2  we notice any issues there.

3         **THE COURT:**  Okay.  So if we need to take up something

4  further, we can do that.  But at least as presented, those have

5  been resolved by agreement of the parties.

6         Is that right?

7         **MS. GILLEN:**  That's correct, Your Honor.

8         **THE COURT:**  Okay.  So I'll let the clerk terminate

9  then Nos. 217 and 224, pursuant to the parties' agreement.

10        And, Mr. Marriott, is that accurate?

11        **MR. MARRIOTT:**  It is, Your Honor.  Thank you.

12        **THE COURT:**  And, Mr. McClammy?

13        **MR. McCLAMMY:**  Yes, Your Honor.

14        **THE COURT:**  All right.  And then there was also the

15 prior issue related to those regarding the Swiss law.  And it

16 looks like Notice Number 248 has been withdrawn.

17        Is that right, Mr. McClammy?

18        **MR. McCLAMMY:**  Yes, Your Honor.

19        **THE COURT:**  And so Number 248, Ms. Garrett, can show

20 as withdrawn.

21        And then the motion to strike, Number 252, can be

22 terminated as moot.

23        Is that accurate?

24        **MS. GILLEN:**  That's correct, Your Honor.

25        **THE COURT:**  All right.  So I think that takes care of

1  the pending motions that are still showing related to the prior

2  motions to compel.

3         And I'll just say, I appreciate you all taking the

4  discussion that we had and continuing to meet and confer and

5  discuss and work out those issues.  So I think that was

6  helpful. That's what I had hoped would happen, although, again,

7  if there are disputes that you can't resolve, I'm always happy

8  to take those up if we need to do that.

9         There are some related motions to seal.  The Fourth

10  Circuit has made it clear that even if the motions are

11  terminated or moot or not resolved by the Court, I still have

12  to address the motions to seal.  So I can't just treat all of

13  those things as moot as well.  So I need to go through the

14  actual sealing provisions and the showing for those.

15         And so I have those documents, and it looks like the

16  sealing requests come from Syngenta as the designated party and

17  Corteva.  And that's -- Syngenta's is Motion 249 and Corteva's

18  is 254.

19         Is that right?

20         **MR. McCLAMMY:**  Yes, Your Honor, I believe that's

21  correct.

22         **THE COURT:**  Okay.

23         And, Mr. Marriott?

24         **MR. MARRIOTT:**  I understand that.

25         **THE COURT:**  Okay.  And so I don't know if you all

1  have someone who can go through these with me so that I can

2  make the findings I need to make to be able to grant the

3  motions to seal on those, really just running through the

4  checklists that you all filed or the document or the motions to

5  seal, so we can make the record on those?

6          And I can give you a minute, if you need those.  And

7  I can go first with Syngenta or Corteva, whoever wants to go

8  first on that.

9          **MR. MARRIOTT:**  Candidly, Your Honor, I didn't,

10 frankly, appreciate this was on.  So I don't actually have the

11 piece of paper in front of me.

12         **THE COURT:**  Okay.

13         **MR. MARRIOTT:**  Maybe if we could come back to it, we

14 can probably get it and then do it, but I don't actually

15 physically have it here.

16         **THE COURT:**  Let me see if Mr. McClammy happens to

17 have his or can pull his checklist.

18         **MR. McCLAMMY:**  We have our checklist.

19         **THE COURT:**  Okay.

20         **MR. McCLAMMY:**  And if allowed to consult with folks

21 as well, I think we can get through it.

22         **THE COURT:**  Absolutely.  And this is not contested,

23 but I need to make the record in order to be able to make the

24 findings for sealing the documents.  And it is a much lower

25 standard.  I'll go ahead and note it's common law standard at

1  this point, since this just relates to your discovery

2  materials, as opposed to the First Amendment standard.  When

3  you start filing things related to dispositive motions, there's

4  going to be an even higher standard, and Judge Schroeder will

5  have to make that finding.

6         And so just for you all to appreciate the fact

7  that -- all those things we make you file, the checklist and

8  things, are because we have to go through and actually do this

9  process and then make the findings in order to satisfy our

10  obligation.

11         And since it's a discovery dispute, those are to me.

12  And so if we could go ahead and just run through those.

13         And so yours, Mr. McClammy, will be number -- it

14  would be the Syngenta motions, and so that would be Number 249.

15         Is that right?

16         **MR. McCLAMMY:**  I believe that's correct, Your Honor.

17         **THE COURT:**  Okay.  And so --

18         **MR. McCLAMMY:**  That's -- you're referring to our

19  checklist; correct?

20         **THE COURT:**  So your checklist --

21         **MR. McCLAMMY:**  I'm sorry.  That's our motion.

22         **THE COURT:**  That's your motion, right.

23         So I've got Number 249 as your motion to seal.

24  You're seeking to seal portions of Documents 218, 228, 229, and

25  239.

1          Is that right?

2               **MR. McCLAMMY:**  That is correct, Your Honor.

3               **THE COURT:**  All right.  And can you run through for

4    me, on your checklist or in those documents, what it is as to

5    each of those that you're seeking to seal so that I can make

6    the finding that those interests heavily outweigh the public

7    interest in access?

8               **MR. McCLAMMY:**  Certainly, Your Honor.

9          And I believe we can do this without discussing the

10   documents themselves --

11              **THE COURT:**  Exactly.

12              **MR. McCLAMMY:**  -- in detail so there's no need to

13   have anyone that's not subject to the protective orders --

14              **THE COURT:**  My preference would be that you let me

15   know.  And to the extent there's a declaration, I think that's

16   public.  But to the extent you need me to look at a particular

17   document, I can look at the document here without you making

18   some description that then requires any part of the transcript

19   to be sealed.

20              **MR. McCLAMMY:**  Certainly, Your Honor.

21              **THE COURT:**  Okay.

22              **MR. McCLAMMY:**  So I believe first, Your Honor, it

23   would be best to have certain information in Docket

24   Number 218 --

25              **THE COURT:**  Okay.

23MD3062  -- Status conf.  -- 10/24/24

       1          **MR. McCLAMMY:** -- sealed.  That is Plaintiffs'

       2   memorandum in support of their motion to compel.  It is

       3   information that was produced by Syngenta.  There was no

       4   opposition filed with respect to that.  And the information

       5   that we sought to include under seal there includes commercial

       6   and competitively sensitive information that would pose a risk

       7   of harm to Syngenta's competitive and financial interest.  And

       8   that is supported by the declaration of Mark Trigilio, which

       9   can be found at Docket Number 251.

      10          **THE COURT:**  All right.  And looking at Number 218, I

      11   would note, first, that there was a public version filed at 219

      12   with the redactions.

      13          Is that correct?

      14          **MR. McCLAMMY:**  That's correct, Your Honor.

      15          **THE COURT:**  And as to the brief itself, do you know

      16   where in that the sealed information is, because I don't know

      17   that I see it highlighted on the copy that I have.  And it may

      18   be attached to the motion to seal.

      19          **MR. KANE:**  Your Honor, I think all of the sealed

      20   documents are Docket Number 250.

      21          **THE COURT:**  Okay.  I see it.  And it looks like 250

      22   is everything except the things that are in full.

      23          Is that right?

      24          **MR. McCLAMMY:**  That's correct.

      25          **THE COURT:**  Okay.  I will say I appreciate everyone

1  following the procedure that you did under your Rule 5.5 order

2  so we have a complete public version and a redacted version.

3  So that's very helpful.

4          And then looking at 218 itself, the redactions relate

5  to only a few words on page 8 and a few words on page 19, pages

6  21 and 22 that would not prevent the public from understanding

7  the general briefing or the information presented there and

8  relate to patent information as well as other confidential

9  business and strategic information.

10          Is that accurate?

11          **MR. McCLAMMY:**  I would say that's accurate, Your

12  Honor.

13          **THE COURT:**  Okay.  All right.  And so then as to the

14  attachments to Number 218, it looks like -- you can tell me if

15  you have it.

16          Is 218-1 sealed in full, or is there just -- it looks

17  like maybe just highlighting sections on that one.

18          Is that right?

19          **MR. McCLAMMY:**  I believe it's just highlighted

20  sections in the declaration of Ms. Maltas.

21          **THE COURT:**  Okay.  And that, again, looks like just a

22  few specific words or designations that would protect

23  confidential business information but would not interfere with

24  general understanding of the information presented there.

25          Is that accurate?

1          **MR. McCLAMMY:**  That's correct, Your Honor.

2          **THE COURT:**  All right.  And then we've got 218-5.

3    And what I don't have here easily in front of me is something

4    that tells me whether that's just sections of 218-5 or the

5    whole thing.  If you can help me with that as we go through it.

6    It looks like maybe just sections.  And this is the Syngenta

7    post-patent strategy.

8          **MR. McCLAMMY:**  I believe that one may be the whole

9    thing, Your Honor.

10          **THE COURT:**  Okay.  All right.

11          **MR. McCLAMMY:**  That is the Syngenta post-patent

12   strategy product handbook.

13          **THE COURT:**  Okay.  And that is Exhibit D.  All right.

14   I think by its name we understand generally that it is a patent

15   strategy which would have confidential business and strategic

16   information.

17          **MR. McCLAMMY:**  Exactly, Your Honor.  And that is also

18   set out and supported by the declaration of Mr. Trigilio at

19   Docket Number 251.

20          **THE COURT:**  Okay.  I see that.  Then 218-8.  That

21   looks like a deposition.

22          **MR. McCLAMMY:**  That is it exactly.  That is the

23   transcript of February 4 of 2022 from the investigatory

24   hearing.  It's the testimony from Vern Hawkins.

25          **THE COURT:**  And is that a request to seal all of

1  that?

2          **MR. McCLAMMY:**  Yes, Your Honor.  I believe that's

3  something that we've requested to be entirely under seal.

4          **THE COURT:**  And with the transcript, I have to ask:

5  Is there -- all of it need to be sealed, or is there part of it

6  that needs to be sealed?  Or if we're going to seal the whole

7  transcript, maybe you can let me know what the rationale is on

8  that.

9          **MR. McCLAMMY:**  Sure, Your Honor.  I think as part of

10  the investigatory process, everything that was really the

11  subject of the focus of that deposition was commercially and

12  competitively sensitive information.

13          You know, there may be an item or two in going

14  through that process that could have been unredacted, but that

15  wouldn't have let it -- or shed any light on it -- on anything

16  of substance.  So we believe it would be proper to have that

17  entirely sealed here, Your Honor.

18          **THE COURT:**  All right.  So I would say for the

19  balancing test I'm doing today, I think that I can do that.

20  Just to forecast, anytime you're looking at a First Amendment

21  standard applying, I think it's going to have to be even more

22  narrowly redacted when you get to that point.

23          **MR. McCLAMMY:**  Understood, Your Honor.

24          **THE COURT:**  Okay.  All right.  What's -- let's see.

25  That was 218-8.

1          218-9 is -- looks like some emails that just have

2    redactions in them.

3          Is that right?

4          **MR. McCLAMMY:**  That's correct, Your Honor.

5          **THE COURT:**  Okay.  And those redactions relate to

6    forecasts and strategy.

7          Is that right?

8          **MR. McCLAMMY:**  Yes, Your Honor.

9          **THE COURT:**  All right.  And that's also supported by

10   the declaration.

11         Is that correct?

12         **MR. McCLAMMY:**  That's correct.  Supported by the same

13   declaration at Document 251.

14         **THE COURT:**  Okay.  Very Good.

15         And then Number 218-10, is that the entirety?

16         **MR. McCLAMMY:**  This is another set of email

17   correspondence.

18         **THE COURT:**  Right.

19         **MR. McCLAMMY:**  But let me just confirm whether or not

20   this one was done in its entirety.

21       (Counsel conferred.)

22         **MR. McCLAMMY:**  I believe this one may have been --

23   the request may have been to seal this one in its entirety,

24   Your Honor.

25         **THE COURT:**  All right.  And it looks like relates to

1  prices and volume as well as strategy.

2          I would again note that for purposes of this

3  proceeding, I can make that balancing determination.  But for

4  any of these, it may be that for future filings there's ways --

5  or might be ways that you could redact more narrowly, if

6  possible.  And so I'll just leave that with you on that one

7  again.

8          **MR. McCLAMMY:**  Thank you, Your Honor.  We will keep

9  that in mind going forward.

10          **THE COURT:**  All right.  218 -- are we at 218-11?  Is

11  that right?

12          **MR. McCLAMMY:**  We are, Your Honor.

13          **THE COURT:**  And that's Exhibit J, also just a minor

14  redaction in an email, it looks like there, very small -- few

15  words of an email.

16          Is that right?

17          **MR. McCLAMMY:**  Yes, Your Honor.

18          **THE COURT:**  Okay.  All right.  And that's related to

19  strategy or business development.

20          Is that right?

21          **MR. McCLAMMY:**  Yes, Your Honor.

22          **THE COURT:**  All right.  And then 28-12, is that one

23  sealed in its entirety?

24          **MR. McCLAMMY:**  This is the -- I believe the supply

25  and data access agreement --

```
1            THE COURT:  Okay.

2            MR. McCLAMMY:  -- between -- between Syngenta and one

3  of our -- one of our counterparties.  So this one, I do

4  believe, has been requested to be under seal in its entirety.

5            THE COURT:  All right.  And I can understand and make

6  that finding in light of the competitive issues involved in

7  disclosing other agreements or agreements with specific folks

8  that maybe -- or create competitive issues.

9            Is that accurate?

10           MR. McCLAMMY:  Exactly, Your Honor.  Thank you.

11           THE COURT:  All right.  And then 218-13, is that some

12  emails in total?

13           MR. McCLAMMY:  This is additional email

14  correspondence; correct, Your Honor.

15           THE COURT:  Okay.  And this relates to, it looks

16  like, a contract, terms of an agreement.

17           Is that right?

18           MR. McCLAMMY:  That's right, Your Honor.  And we

19  believe that we would be requesting to have it entirely under

20  seal.

21           THE COURT:  Entirely under seal.  Okay.

22           And, again, looks like disclosing the terms of the

23  agreement would have competitive disadvantage issues.

24           Is that right?

25           MR. McCLAMMY:  Exactly, Your Honor.
```

|       |
|-------|
| 1 |        **THE COURT:**  Okay.  All right.  And then 218-15.  And |
| 2 | this one was attached here and looks like it has just portions |
| 3 | to be redacted. |
| 4 |        Is that right? |
| 5 |        **MR. McCLAMMY:**  That's correct, Your Honor. |
| 6 |        **THE COURT:**  Okay.  Just logistically, I think some of |
| 7 | the attachments at 218 have the highlighting, and some, like |
| 8 | this one, do not.  The highlighting is just in the attachment |
| 9 | to the sealing. |
| 10 |        Was there a reason, one way or another, how that came |
| 11 | about? |
| 12 |        **MR. McCLAMMY:**  Perhaps oversight. |
| 13 |        **THE COURT:**  No, that's okay.  So it is helpful to |
| 14 | have it in the sealed version that's filed, in addition to the |
| 15 | one that's attached to the motion to seal, just for -- |
| 16 | actually, just -- the primary benefit is that then, if the |
| 17 | Court is using the sealed version in considering or drafting, |
| 18 | it's easy to tell which parts are sealed and shouldn't be |
| 19 | included in a public opinion that way. |
| 20 |        **MR. McCLAMMY:**  It makes some complete sense.  We'll |
| 21 | make sure to do that going forward. |
| 22 |        **THE COURT:**  Okay.  All right.  So that was -- |
| 23 |        **MR. KANE:**  Your Honor -- |
| 24 |        **THE COURT:**  Yes. |
| 25 |        **MR. KANE:**  -- if I may?  I'm looking at what we have |

1  as -- under 250, where we filed it under seal, and I am, in

2  fact, seeing the highlighting.

3          **THE COURT:**  It's highlighted in that one.  It's not

4  highlighted at 218-15, so where it's filed at the original

5  document itself.

6          Do you know what I mean?  If you look at 218 on the

7  docket --

8          **MR. KANE:**  So where it was filed under seal --

9          **THE COURT:**  Under seal.

10          **MR. KANE:**  -- with the -- okay.  I understand what

11  you're saying.

12          **THE COURT:**  Right.  Right.  Because that's the one

13  the Court's going to use --

14          **MR. KANE:**  Understood.

15          **THE COURT:**  -- the complete document there.  Right.

16  Right.

17          So let's see the highlighting on the 250 version that

18  I've got as well.

19          All right.  So -- and let me let you tell me about

20  218-15.  It looks like just a small portion of that in terms of

21  a summary of a letter, but you can let me know in terms of --

22  it looks like some strategy or discussions regarding business

23  agreements or strategies.

24          Is that right?

25          **MR. McCLAMMY:**  I think that's right, Your Honor.

1   That also flowed from, I believe, quotations from certain of

2   the -- certain of the testimony.

3           **THE COURT:**  Okay.

4           **MR. McCLAMMY:**  And, again, that's also, we believe,

5   supported by the declaration that's been submitted in support

6   of the sealing motion at Docket 251.

7           **THE COURT:**  Okay.  Very good.

8           All right. And then 218-16 is Exhibit O.  And that

9   one looks like sealed in its entirety and is related to search

10  term discussion.

11          Is that right?

12          **MR. McCLAMMY:**  Exactly, Your Honor.  That was a part

13  of our discussions with Plaintiffs and was a red-line from

14  Plaintiffs with respect to proposed search terms.

15          **THE COURT:**  All right.  Certainly not anything that

16  would ordinarily be something that public access would apply

17  to, given that it's just related to discussions with counsel

18  and then, in particular, includes discussions regarding

19  particular terms that may have business confidentiality

20  concerns.

21          **MR. McCLAMMY:**  Exactly, Your Honor.

22          **THE COURT:**  All right.  And then 218-18, Exhibit Q.

23  This one is then --

24          **MR. McCLAMMY:**  This, I believe, is the December 2020

25  letter from Syngenta to the FTC.

1          **THE COURT:** Okay. Again, to be sealed in full at

2    this point.

3          Is that right?

4          **MR. McCLAMMY:** Yes, Your Honor.

5          **THE COURT:** And I'll let you tell me based on what's

6    the -- oh, is that -- that's part of discussions back and forth

7    in terms of the search terms.

8          Is that right?

9          **MR. McCLAMMY:** That's exactly right, Your Honor.

10         **THE COURT:** All right. So the same -- same analysis

11   we just discussed.

12         And then we've got 219 and 220. 219 is --

13         **MR. McCLAMMY:** I believe this is similar to the prior

14   two, Your Honor. This is the request terms agreed upon by the

15   parties.

16         **THE COURT:** And so that same discussion would apply

17   there.

18         And then 220 is -- this looks like a slide. Is this

19   all sealed in full?

20         **MR. McCLAMMY:** Let me just check on that, Your Honor.

21   I believe this one is email correspondence between Syngenta

22   personnel.

23         **THE COURT:** This is, yeah, 218-20.

24         **MR. McCLAMMY:** Yes, this one would be in the

25   entirety, Your Honor.

| | |
|---|---|
| 1 | **THE COURT:** Okay. And that slide includes, looks |
| 2 | like, some market prediction and data. |
| 3 | Is that right? |
| 4 | **MR. McCLAMMY:** That's correct, Your Honor. |
| 5 | **THE COURT:** Okay. All right. And then 21 looks |
| 6 | similar. |
| 7 | Is that right? |
| 8 | **MR. McCLAMMY:** That's correct, Your Honor. |
| 9 | **THE COURT:** And 23 is a marketing agreement? |
| 10 | **MR. McCLAMMY:** This is a marketing agreement entered |
| 11 | into between Syngenta and another party. |
| 12 | **THE COURT:** All right. That would have adverse |
| 13 | competitive effects if it were disclosed. |
| 14 | Is that right? |
| 15 | **MR. McCLAMMY:** Exactly, Your Honor. |
| 16 | **THE COURT:** Okay. And then 24 is another email with |
| 17 | slides that look like market predictions and data. |
| 18 | Is that right? |
| 19 | **MR. McCLAMMY:** Exactly, Your Honor. |
| 20 | **THE COURT:** Okay. And then 25 is -- looks like a |
| 21 | strategy summary. |
| 22 | **MR. McCLAMMY:** Exactly. This is a presentation that |
| 23 | had been prepared in 2015 by Syngenta. |
| 24 | **THE COURT:** Right. And then 218-27 is -- looks like |
| 25 | another business plan. |

23MD3062 -- Status conf. -- 10/24/24

1          Is that right?

2          **MR. McCLAMMY:**  That's right, Your Honor, as part of

3    email correspondence between Syngenta folks.

4          **THE COURT:**  Okay.  Very good.

5          And then 228 is the memorandum.  It looks like the

6    public version is 231.

7          And I'm looking at 250 now to see where you had -- so

8    it looks like on page 6 and a few lines on page 8 --

9          **MR. McCLAMMY:**  That's right.

10         **THE COURT:**  -- identifying a particular AI on page

11   14, an AI on page 19, and a few lines -- or line on page 22.

12         Do you want to tell me about those redactions?

13         **MR. McCLAMMY:**  Certainly, Your Honor.  And, again,

14   this is, I think, targeted redactions to protect information

15   that would be either commercially or competitively sensitive.

16         As Your Honor noted, it's very limited.  And I do

17   believe, as Your Honor stated, with respect to the Plaintiffs'

18   brief, the redactions that were done there as well, that the

19   general public would be able to understand the substance of the

20   issues based on the publicly filed version.

21         And, you know, the additional support for keeping

22   that information confidential is provided in the declaration at

23   Docket Number 251.

24         **THE COURT:**  Okay.  Very good.

25         And then I have --

1           **MR. KANE:**  I also appreciate, Your Honor, that we did

2    also not highlight in this.

3           **THE COURT:**  Okay.  Right.

4           **MR. KANE:**  We will do that going forward.

5           **THE COURT:**  I think that would -- exactly.  It would

6    just be helpful to have that in the -- not only in the

7    attachment to the motion to seal, but also in the version

8    that's the sealed version.

9           **MR. KANE:**  Understood, Your Honor.

10          **THE COURT:**  Okay.  Thank you.

11          All right.  And then we've got 229, the declaration.

12   The public version is at 232.  And I'll let you address that

13   one for me.  It looks like just maybe some attachments to that;

14   is that correct?

15          **MR. McCLAMMY:**  That's right, Your Honor.

16          **THE COURT:**  And Exhibit 1 -- or 229-1 is --

17          **MR. McCLAMMY:**  That is one of our supply agreements.

18          **THE COURT:**  -- supply agreements.  Okay.

19          And 229-2 --

20          **MR. McCLAMMY:**  -- is the -- I believe this was also

21   discussed in connection with 218.  This is the same transcript

22   for Mr. Vern Hawkins.

23          **THE COURT:**  Okay.  Yep.

24          And then 229-3, a similar transcript?

25          **MR. McCLAMMY:**  Exactly.  And that one's from Charles

1  Flippin.

2          **THE COURT:**  And then 229-4, a similar transcript as

3  well?

4          **MR. McCLAMMY:**  Same, exactly, Your Honor.

5          **THE COURT:**  All right.  And I think, again, all of

6  those look like they relate to specific market information.

7  And to the extent they could be redacted more narrowly, that's

8  something that you could do in a -- if they're filed in

9  connection with summary judgment?

10          **MR. McCLAMMY:**  Yes, Your Honor.

11          **THE COURT:**  All right.  229-8, that looks like slides

12  again for market strategy.

13          Is that accurate?

14          **MR. McCLAMMY:**  That's correct, Your Honor.

15          **THE COURT:**  And 9 is a listing of particular products

16  and active ingredients, including other third-party

17  information.

18          Is that right?

19          **MR. McCLAMMY:**  That's exactly right, Your Honor.

20          **THE COURT:**  Okay.  And 229-15, an organizational

21  chart, can you tell me about the confidentiality of that?

22          **MR. McCLAMMY:**  Yes, Your Honor.  This is our internal

23  organizational chart.  And, you know, how the business is

24  organized, you know, who is serving in which positions to a

25  certain extent may be known to certain individuals, but it's

23MD3062  -- Status conf.  -- 10/24/24

1  not something that is a matter of the public record and

2  something that's been shared with a -- with the parties under

3  protective order.

4          **THE COURT:**  Okay.  So, again, at least for purposes

5  of more flexible balancing, that's the sort of information that

6  you may be -- or your client needs to seal just for general

7  business or internal business purposes.

8          Is that accurate?

9          **MR. McCLAMMY:**  Exactly, Your Honor.

10         **THE COURT:**  Okay.  All right.  And 239 is the last

11  one, and --

12         **MR. McCLAMMY:**  That is the reply memorandum, I

13  believe.

14         **THE COURT:**  And let's see.

15         **MR. McCLAMMY:**  And I believe that's reflecting

16  similar targeted redactions, reflecting the reference to or

17  inclusion of confidential information that was the subject of

18  the prior discussion.

19         **THE COURT:**  All right.  And I'm looking at this one

20  to see -- it looks like just some -- a few words redacted on

21  page 2.  Is that -- and that's it.

22         Is that right?

23         **MR. McCLAMMY:**  I believe that's right, Your Honor.

24         **THE COURT:**  Okay.  All right.  That's very helpful.

25  That is the sort of analysis that would take me and my law

1  clerk all afternoon to do if we had to sit and do this without

2  the benefit of you providing that for the record.  So I

3  appreciate that.

4        And I can find that the presumption of access has

5  been considered but can be rebutted by showing countervailing

6  interests heavily outweigh the public interest in access.  That

7  includes concerns about unfairly gaining a business advantage

8  and protection of confidential business information, including

9  trade information, agreements, pricing, and patent information.

10        The filings relate to a discovery dispute.  The

11 disclosure would not help the public understanding of an

12 important event.  The documents have not been made public.  And

13 there are important business reasons why confidentiality is

14 necessary to protect competitors from unfairly gaining a

15 business advantage.

16        The details have been presented in supporting

17 affidavits and covered here in court.  And, therefore, on

18 balance, the privacy concerns heavily outweigh the public

19 interest in access.

20        I think that takes care of Number 249, and so the

21 clerk can show Number 249 is granted for the reasons stated

22 here on the record.

23        Thank you, Mr. McClammy.

24        **MR. McCLAMMY:**  Thank you, Your Honor.

25        **THE COURT:**  All right.  And, Mr. Marriott, I

1  appreciate that you might not have been prepared to go through

2  all of that today.  If you've got somebody here --

3          **MR. MARRIOTT:**  I am prepared now, Your Honor.

4          **THE COURT:**  Okay.  I appreciate that.

5          All right.  Let me get these out of the way so I

6  don't mix these --

7          **MR. MARRIOTT:**  I am prepared, Your Honor, with the

8  caveat that the person who went through and highlighted the

9  documents is sitting right here.

10          **THE COURT:**  Excellent.

11      (Indiscernible cross-talk.)

12          **THE COURT:**  I'll let him identify himself for the

13  record, and then we'll take care of that.

14          Yes, sir.

15          **MR. AUERBACH:**  Good morning, Your Honor.  Maximilian

16  Auerbach for Corteva from Cravath, Swaine & Moore.

17          **THE COURT:**  Okay.  Very good.  It's Mr. Auerbach; is

18  that right?

19          **MR. AUERBACH:**  That's correct.

20          **THE COURT:**  Okay.  All right.

21          Mr. Marriott?

22          **MR. MARRIOTT:**  So if it helps to preview, Your Honor,

23  it looks like there's 16 documents that are at issue with

24  respect to the Corteva set of documents, just to make sure

25  we're on the same page.

1      **THE COURT:**  Okay.

2      **MR. MARRIOTT:**  From those 16, it appears that seven

3  of them are only partial redactions.

4      **THE COURT:**  Okay.

5      **MR. MARRIOTT:**  And the rationale for protection of

6  all of them -- and I appreciate we probably need to do this

7  document by document -- is that they reflect in some sense, at

8  least the redacted portions, competitively sensitive business

9  information of Corteva, and publicly disclosed could or would

10 give competitors an unfair advantage.

11     **THE COURT:**  Okay.  All right.  I think that's

12 helpful.

13     And this is now the motion to seal Number 254.  It's

14 seeking to seal parts of, it looks like, 225, 234, 236, and

15 243.  I have those documents here as well as the attached

16 highlighted section at Number 256.

17     Just going through the chart, it looks like the first

18 thing to seal is portions of number -- well, they -- there's a

19 publicly filed version of Number 225 at --

20     **MR. MARRIOTT:**  256, Your Honor.

21     **THE COURT:**  -- 256.  Okay.

22     **MR. MARRIOTT:**  And this is Plaintiffs' memorandum in

23 support of their motion to compel discovery.

24     **THE COURT:**  All right.  Let me make sure I'm straight

25 here.

1          Now, 256 is the attachment to the -- okay.  So 256 is

2    the attachment to the motion to seal, but isn't there a

3    publicly filed version at 227?

4          Is that right?

5          **MR. MARRIOTT:**  I thought the publicly filed version,

6    Your Honor, was at 225, and 256 was the highlighted version of

7    the -- of the publicly filed version showing what has been

8    sealed.

9          **THE COURT:**  So just to make sure -- and I don't have

10   all of the documents here, but let me look at the docket.

11         What we want to make sure is that at the time of

12   filing we've got a complete public set, and then we have a

13   sealed set that's got the redactions marked.

14         So 225 is the sealed brief.  So that's the one that

15   I've got here and that I would use.  Then 227 is the temporary

16   public redacted version.

17         **MR. AUERBACH:**  I believe that's right, Your Honor.

18         **THE COURT:**  Okay.  And so then the -- now, 225 may

19   not have the highlighting.  This is the same thing I mentioned

20   before just -- and, actually, this is a good time to do it

21   because you all are going to have a lot more filings in the

22   future.

23         And so, ideally, the sealed version that the Court

24   uses will then have a matching public version that's redacted.

25   So then if the Court is referring to a particular attachment,

1  then there's an analogous attachment or a placeholder in the

2  public version so that it all matches up.  And then if you go

3  ahead and highlight the sealed court version, then we'll know

4  which things to use or not to use in a public court filing so

5  we don't inadvertently use something that is -- or quote from

6  something on a brief that was intended to be sealed.

7          **MR. MARRIOTT:**  Makes sense, Your Honor.

8          **THE COURT:**  All right.  And I think, it looks like,

9  you all have the highlighting at 256?

10         **MR. MARRIOTT:**  Correct, Your Honor.

11         **THE COURT:**  Okay.  So we're just looking to make

12  sure.  Again, lots of documents.  We're trying to make sure

13  we're keeping it straight.

14        It looks like you have the highlighting at 256, which

15  is part of your 5.5 report, you know, attaching those things,

16  which is great for when we're just looking at the motion to

17  seal.  But if the sealed version itself when it gets filed also

18  has highlighting, then that helps for just court purposes as

19  well.

20        All right.  So it looks like -- and I can just go

21  through to make sure all of those -- so the public version of

22  225 is at 227.  And I'm showing the public version of 234 is at

23  237.  The public version of 236 is at 238.  And the public

24  version of 243 is at 244.  So there's a public version of each

25  of them.

1              **MR. AUERBACH:**  Your Honor, I believe that's correct.

2    I think a point of clarification that might be helpful --

3              **THE COURT:**  Sure.

4              **MR. AUERBACH:**  -- is I believe we ultimately moved on

5    fewer redactions than what you're likely seeing in the public

6    versions.

7              **THE COURT:**  Okay.

8              **MR. AUERBACH:**  So I think there might be some

9    differences between that and our motion to seal.

10             **THE COURT:**  That is understandable, and it's sort of

11   inherent in this process.  I think it's helpful to have a

12   public version as soon as possible.  So let's go ahead and file

13   a public version.  But if you need to file subsequently after

14   this hearing or maybe just as attachments a more complete

15   version, then as long as it's on a docket somewhere that way.

16             **MR. AUERBACH:**  Thank you.

17             **THE COURT:**  Okay.  All right.  Thank you.

18             All right.  So we've got 225.  It looks like you are

19   requesting to seal parts of that, and that's as designated in

20   256 with the highlighting on page 6, a few lines on page 7 and

21   8 related to specific AIs.  And that looks like it would be for

22   business strategy and competitive business purposes.

23             Is that right?

24             **MR. MARRIOTT:**  Correct, Your Honor.

25             **THE COURT:**  And then 256 -- or, excuse me, 255-1,

1   which is a declaration, and that one you have -- a few lines

2   are specifically identifying third parties.

3           Is that correct?

4           MR. MARRIOTT:  It is, Your Honor.  I'm just -- I'm

5   just puzzled because mine says 225-1.

6           THE COURT:  That is what I intended to say, 225-1.

7   Right.

8           MR. MARRIOTT:  Okay.  Fine.  Then we're on the same

9   page.

10          THE COURT:  Okay.  Yes.  I think 256 is where those

11  are highlighted.

12          MR. MARRIOTT:  Correct.  So those are highlighted in

13  256-1.

14          THE COURT:  But 225-1 is the particular documents

15  that are --

16          MR. MARRIOTT:  Correct --

17          THE COURT:  -- redacted --

18          MR. MARRIOTT:  -- that is partially redacted to

19  reflect competitiveness --

20      (Indiscernible cross-talk.)

21          THE COURT:  All right.  And then we've got 225-5.

22  And is that one to be sealed in its entirety?

23          MR. MARRIOTT:  It is, Your Honor.  And these are

24  excerpts of confidential white paper.

25          THE COURT:  Okay.  All right.

1           And then 225-6?

2           **MR. MARRIOTT:**  These are excerpts of an AgroSciences

3   presentation.

4           **THE COURT:**  All right.  Looks like related to new

5   business development and business strategy?

6           **MR. MARRIOTT:**  Correct.

7           **THE COURT:**  All right.  And then 225-7?

8           **MR. MARRIOTT:**  This one's to be partially redacted.

9           **THE COURT:**  Okay.

10          **MR. MARRIOTT:**  These are responses to a 610 letter

11  from the FTC.

12          **THE COURT:**  And it looks like those related to

13  particular strategies for specific active ingredients?

14          **MR. MARRIOTT:**  I believe that's correct, Your Honor.

15          **THE COURT:**  All right.  And then 225-8?

16          **MR. MARRIOTT:**  This is for forward action. These are

17  excerpts of a presentation on crop protection.

18          **THE COURT:**  Okay.  And looks like recap of strategic

19  decisions and discussions of summaries of strategy or business

20  planning.

21          Is that right?

22          **MR. MARRIOTT:**  I believe so, Your Honor, yes.

23          **THE COURT:**  All right.  And then 225-9?

24          **MR. MARRIOTT:**  This is an actual loyalty program

25  agreement, Your Honor.

1          THE COURT:  Okay.  All right.  And that would be with

2    a specific or particular third party then?

3          MR. MARRIOTT:  Correct.

4          THE COURT:  All right.  And 225-10?

5          MR. MARRIOTT:  These are excerpts of a presentation

6    on a portfolio strategy.

7          THE COURT:  Is 10 just excerpts or is it --

8          MR. MARRIOTT:  It is excerpts.  At least that's the

9    description we have in the table.

10          THE COURT:  Let's see.  I was looking for attachments

11    to 256.  In any event, it looks like slides of product

12    portfolio strategy with particular business information and

13    future strategy included in there?

14          MR. MARRIOTT:  That's correct.

15          THE COURT:  Okay.  All right.  And then the next one

16    is 225-11, which looks like a letter with just a few redactions

17    in it regarding time frames?

18          MR. MARRIOTT:  Yes, Your Honor.  The docket of the

19    sealed version of this one, I believe, is at 256-3.

20          THE COURT:  Is this -- this is the June 10, 2024,

21    letter; is that right?

22          MR. MARRIOTT:  It is.

23          THE COURT:  Okay.  Yes.  Uh-huh.

24          And then 225-12?

25          MR. MARRIOTT:  And the docket of the sealed version

1  for 225-12 is 256-4.

2          **THE COURT:**  And this one looks like it just has a

3  percent of market share redacted?

4          **MR. MARRIOTT:**  It's partially redacted; correct.

5          **THE COURT:**  Right.

6          And then that takes care of everything in 225.

7          And then you've got 234 with some partial redactions,

8  it looks like, just on page 6.

9          Is that right?

10         **MR. MARRIOTT:**  Yes, Your Honor, page 6, and then

11 there's a footnote which references the products currently in a

12 program.

13         **THE COURT:**  Okay.  Again, for competitive business

14 purposes at this point.

15         Is that right?

16         **MR. MARRIOTT:**  Yes, Your Honor.

17         **THE COURT:**  All right.  And then 236, declaration?

18         **MR. MARRIOTT:**  Excerpts of an economic white paper.

19         **THE COURT:**  And is 236 -- is this -- I'm trying to

20 find the excerpts.

21         Is all of this sealed?

22         **MR. MARRIOTT:**  It is, Your Honor.

23         **THE COURT:**  Okay.  Gotcha.  Because it's just the

24 white paper information with specific strategy and business and

25 market data.

1        Is that right?

2            MR. MARRIOTT:  Yes, exactly.

3            THE COURT:  Okay.  Okay.  And so that's all of 236,

4    including 236-1, -2, and -3.

5            And then you've got 243, which just looks like a few

6    redactions on there?

7            MR. MARRIOTT:  Correct.  Partial redactions from a

8    reply memo.

9            THE COURT:  All right.  And that includes, like, some

10   specific identification of AIs?

11           MR. MARRIOTT:  For example, Footnote 2, specific

12   identification of certain active ingredients.

13           THE COURT:  Okay.  All right.  And, again, as to all

14   of those things, that would be competitively sensitive business

15   information based on the declaration that you submitted.

16           Is that right?

17           MR. MARRIOTT:  Correct.

18           THE COURT:  Okay.  All right.  I would again find

19   that, after considering the presumption of public access, that

20   the countervailing interests heavily outweigh the public

21   interest in access.  Again, these are discovery disputes.  The

22   disclosure would not help public understanding.

23           The documents have been made -- have not been made

24   public, and there are important business reasons why

25   confidentiality is necessary to protect competitors from

unfairly gaining a business advantage and to protect the

confidential business information of the parties as well as

third parties.

And the details have been presented in supporting

affidavits and covered here in court. And on balance, the

privacy concerns heavily outweigh any public interest in

access.

I would also note, as to all of these, procedurally

the motions to seal have been filed on the docket publicly, and

no objection or other responsive motion has been filed

objecting to any sealing. And so based on that and the

findings we've made here, I will find that the motion to seal

should be granted. And so Number 254 can be granted as well.

And, Ms. Garrett, you can just show that on the

docket.

Again, I appreciate you all going through all of that

with me so that we could just take care of it while we're all

here and also so that we can make sure for future filings that

everything is logistically in place so that the district judge

will be able to review those things easily.

Of course, anything you can do to not have to seal

documents, I'm sure you all would appreciate it. I know we

would appreciate it. So to the extent you can narrow the

redactions or not seal things, please try to do that as much as

possible so that we don't have to go through this process for

1   documents, just to take care of those logistics for getting

2   things sealed and then also to address the larger substantive

3   issue, which is to make sure that the public has access, too,

4   as much as possible so that they understand what the Court is

5   doing and the business that we're about here.

6           All right.  That takes care of the first order of

7   business.  Why don't we take a 5-minute break just to give

8   everybody a chance to stretch a bit, and then we'll take up

9   what I thought was the only other issue, which is going to be

10  the motions for protective order.  And then we'll see where we

11  are in terms of addressing any other potential disputes or what

12  we need to do as to those issues that may have arisen.

13          Let's go ahead and take a 5-minute break.

14      (Proceedings recessed.)

15      (Proceedings resumed.)

16          **THE COURT:**  We are now back for the next item on the

17  agenda for today, which is addressing the issues regarding the

18  protective order that is primarily in the MDL case, although,

19  of course, I'm always interested in hearing the FTC's

20  perspective or how that relates to issues in that case as well.

21          I have the various options here as well as the

22  motions or cross-motions for the protective order.  It looks

23  like, for the clerk, this is going to be Document Number 137,

24  which is the Plaintiffs' motion for a protective order, and

25  140, which is Defendants' cross-motion for a protective order.

1           So I have the -- what I understand to be the four

2   potential proposals.  There's the FTC protective order, the

3   interim protective order, the Defendants' proposal, and the

4   Plaintiffs' proposal as the four possibilities.  What I'll do

5   is hear from Plaintiffs first and then from Defendants.

6           I understand from the clerk that there's a third

7   party here who may wish to be heard, and so I'll hear from

8   Mr. -- and that's Mr. Sutton for nonparty Wilbur-Ellis, if he

9   wants to be heard as well.  I'll get the FTC's perspective.  As

10  is my usual practice, I'll come back around and let everybody

11  respond, and then we'll see where we are in terms of what might

12  be appropriate to adopt.

13          So let me start.  Ms. MacLean, are you going to

14  handle that, or is it Mr. --

15          **MS. MacLEAN:**  Mr. Burke will.

16          **THE COURT:**  Oh, Mr. Burke.  Okay.

17          Mr. Burke.

18          **MR. BURKE:**  Chris Burke of Korein Tillery for the

19  Class Plaintiffs.

20          **THE COURT:**  Yes, sir.

21          **MR. BURKE:**  I believe there's only two issues

22  separating us from the Defendants.  One is whether we can show

23  our clients' documents that we file in their name and in the

24  class's name.  And obviously, as a lawyer, I'm used to being

25  able to show my clients' documents I file in their name,

1  whether it's a complaint, whether it's class certification

2  papers, whether summary judgment papers, things like that.

3          And class reps -- I know people take a jaundiced eye

4  sometimes about, well, how involved are they?  Well, they're

5  involved in my cases, I can assure you that.  And I go out of

6  my way to make sure class reps stay abreast, because they have

7  an obligation to the class.  They have a fiduciary obligation

8  to the class.  They -- Your Honor or the Article III judge is

9  going to have to determine whether they're adequate class reps.

10 So they have to proceed in a knowing fashion, and they have to

11 exercise some modicum of supervisory authority over the

12 lawyers.  You just -- this isn't just the lawyers.  It's on

13 behalf of these farmers.  That's the class reps' role.

14         And, certainly, there are cases where -- class cases

15 where the parties don't get to see the documents; but in my

16 experience, that's where we have institutional class reps with

17 in-house counsel, and we make a separate provision for in-house

18 counsel to see those documents, and we speak to them.

19         Here, these are small town -- or small-time farmers,

20 right, small operations.  We're not suggesting that they have

21 access to the relativity database, and they're tooling around

22 looking at highly confidential documents produced by Corteva or

23 Syngenta or third parties.  Nobody is suggesting that.  There

24 are going to be a limited number of documents, limited number

25 of filings in this case, where we're not -- we probably won't

1  even attach the entire document, right, in the pleadings.

2  We're going to characterize that document, but it will have

3  been -- it will have been marked "highly confidential," because

4  virtually everything is marked "highly confidential," and I

5  mean everything.

6          And I don't mean to be cynical about that, but we

7  could be, and we're not going to -- we're not going after them

8  about that aspect.  But class reps have to do their jobs, and I

9  have to do my job.  Ms. MacLean has to do her job.  And to be

10 able to confer openly with class reps about what's in a

11 document that's being filed in their name on behalf of a class

12 action in federal district court is not something I take

13 lightly, and I have ordinarily been able to confer with my

14 clients in that fashion without saying, I can't show you this

15 because it's redacted.

16         **THE COURT:**  Why could you not go through the process

17 of meeting and conferring on that?

18         **MR. BURKE:**  Well, let's say a brief is due on a

19 Tuesday.  You know how that is.  You're working into the last

20 minute about what goes in, what doesn't go in.  And

21 Mr. Marriott, he's a very reasonable lawyer, but he's looking

22 out for his client, too.  I don't want to have to say, Hey,

23 Dave, I'm thinking about showing these 10 documents -- portions

24 of these 10 documents to my clients.  I'm not really sure if

25 I'm going to get there yet.

1          I'm not used to affording defense counsel that type

2   of insight into my work product, why I'm trying to put

3   documents together.

4          **THE COURT:**  Well, under the local rules for sealed

5   documents, you would have to do that anyway for anything that

6   you're going to file in terms of proactively communicating in

7   terms of what you may be filing that otherwise would be under

8   seal --

9          **MR. BURKE:**  Correct.

10          **THE COURT:**  -- right?

11          **MR. BURKE:**  Right.

12          **THE COURT:**  So it's not unusual, at least in this

13   district, that you have an obligation to have those kinds of

14   discussions prior to filing a document in order -- where you've

15   got documents that have been designated as confidential --

16          **MR. BURKE:**  Right.

17          **THE COURT:**  -- right?

18          So that relates to the issue regarding the documents.

19          I think there were -- there are two parts:  Draft

20   documents that are confidential or documents that, you know,

21   aren't actually filed but are confidential, and then the highly

22   confidential documents, whether draft or actually filed.

23          Right?

24          **MR. BURKE:**  If I could just address Your Honor's

25   point about the sealing documents?

1          **THE COURT:**  Sure.  Sure.

2          **MR. BURKE:**  And that's -- and in the ordinary course,

3  that's handled smoothly by counsel.  But if, you know, I've got

4  a dozen different farmers who I want to show stuff to and, in

5  the ordinary course, what you're showing them is near final,

6  right, you're 98 percent of the way there, but it's near

7  final -- and there's a lot of bells and whistles that go into

8  getting something filed in these types of cases.  The documents

9  are exceedingly complex.  And I'm not sure when counsel is

10  going to get back to me.  And I'd rather it not be a

11  mother-may-I situation in terms of what I can show my client.

12          And, again, we're talking about showing the client

13  excerpts of material that's been designated as highly

14  confidential in documents going out in their name where they

15  have a responsibility to the class.  That doesn't seem like a

16  reach to me.  It really doesn't.

17          **THE COURT:**  All right.  And then the other issue was

18  the -- with respect to the clawback provision.

19          Right?

20          **MR. BURKE:**  In the clawback, the dispute only arises

21  in an instance where the receiving party has already seen the

22  document that has been designated as privileged, for whatever

23  reason.

24          And we're suggesting, okay, if we've already seen it,

25  and you try to claw back, we want to have two lawyers -- two

1  lawyers review that document to determine whether we're going

2  to dispute the claim of privilege.  And then we just can't put

3  that document into the public domain.  The only way we're able

4  to then disclose the contents of that document, if we choose to

5  dispute the claim of privilege, is through an in camera filing,

6  which, of course, would be sealed.

7        And so the concern there for somehow trampling on

8  common law privilege that's existed immemorial -- we've already

9  seen the document, right.  And, again, people in these cases

10 fight hard.  Have I seen the other party play games with

11 privilege?  Oh, yeah, a lot.  And that's -- that's why --

12 that's why we have this concern.  And this has a salutary

13 effect of keeping folks who would designate a document

14 privileged -- it has a salutary effect of keeping their

15 (indiscernible), if they know we can actually challenge that

16 claim by using the document.

17        **THE COURT:**  Okay.  What I'll do is hear from

18 everybody and then come back around.

19        Okay.  All right.  Mr. McClammy?

20        **MR. McCLAMMY:**  Thank you, Your Honor.  For the

21 record, Jim McClammy of Davis Polk for Syngenta Defendants, but

22 I'll speak on behalf of all Defendants, I think, on this issue.

23 Of course, Mr. Marriott may weigh in as well.

24        I guess, on the first point, I really am not sure I'm

25 understanding the grave level of concern that's being expressed

1    by Mr. Burke.  I think we've tried to strike a very reasonable

2    balance with respect to these issues, and I think it's maybe

3    even more relevant here where Mr. Burke is claiming, you know,

4    there isn't an in-house department or lawyers that may be

5    separated from the business here and that his clients are

6    all -- and I don't know that this is necessarily true, but

7    small farmers.

8            The fact is that these things that are being labeled

9    as confidential and highly confidential are being labeled that

10   reason for -- you know, being placed with those labels because

11   there's something either commercially or potentially

12   competitively sensitive.  You know, some of the information

13   that's being sought here is about pricing.  It's about deals

14   that are struck with particular parties.  It's how distribution

15   is being done.

16           And we're not just talking about information from the

17   Defendants.  We're talking about information from third

18   parties, including distributors and retailers and other

19   growers.

20           It cannot be the case that Plaintiffs can select, you

21   know, whatever bit of confidential or highly confidential

22   information and say that these participants in the market have

23   unfettered access because we've selected to use it in our

24   papers.  There are protections that need to be in place, and

25   they're there for a reason.

1          The class reps should not be getting a competitive

2     advantage solely because they're serving in the role as class

3     rep, and I believe it's fairly commonplace to have these

4     protections in place for that very reason.  And there's no

5     reason why we wouldn't be able to use a process that we

6     proposed in our orders and in our drafts of the protective

7     orders at paragraphs 6 and 7C, respectively, for confidential

8     and highly confidential information where you're consulting

9     with the party that's produced the document and seeing if you

10    can reach some agreement as to how much, what, whether any of

11    that information can be shared.

12          And if there's no agreement of having a process to

13    bring to the Court, I do not think that there is a reasonable

14    basis to say that Mr. Burke and his clients, the class reps,

15    won't be able to satisfy their duties with that kind of a

16    minimal hurdle, for lack of a better word, to overcome with

17    respect to the protection of the highly confidential

18    information and, I think, having the confidential information

19    and the highly confidential information in the hands of market

20    participants that could be used to gain advantage in

21    negotiations with the distributors or retailers or potentially

22    by knowing what other growers are doing or obtaining in the

23    market.

24          So that's -- so for those reasons, Your Honor, I

25    believe that what we've proposed is more than reasonable and

1  addresses the concerns that have been raised by Mr. Burke.  And

2  it's impossible to know at this time that it's going to truly

3  be a limited number of documents or that there's going to be,

4  you know, just summaries of things done.

5          I think this protective order has to address the

6  situation for everyone and at this early stage, not knowing

7  what it may be and because this is an issue that impacts not

8  only the Defendants here and because third parties have weighed

9  in and expressed concerns of having their information, you

10 know, put out there in a way that's not sufficiently protected

11 for them.  We also don't want this to, in any way, stand in the

12 way of moving forward with the third-party productions in this

13 matter.

14         With respect --

15 **THE COURT:**  On that, before you switch over to the

16 clawback provision, just to make sure I'm clear, in your

17 proposal or -- and I believe in the interim proposal that

18 everyone agreed to, anything that's actually filed and labeled

19 as confidential can be provided to the class reps.  It's only

20 the highly confidential that would not be or would need to go

21 through this separate process.

22         Is that right?

23 **MR. McCLAMMY:**  I think that was right with respect to

24 the information in the investigative file.

25 **THE COURT:**  Okay.  And that would still -- right.

1  That was in the interim order for the investigative file.

2          MR. McCLAMMY:  Right.

3          THE COURT:  But that would still be the case under

4  your proposal now.

5          Is that right?

6          MR. McCLAMMY:  With respect to confidential

7  information --

8          THE COURT:  Right.

9          MR. McCLAMMY:  -- I think we proposed a similar

10  conferral process in an effort to reach agreement on

11  disclosures with the next related Rule 37.1(b) resolution.

12          THE COURT:  Okay.  Let's -- let me look and make

13  sure.

14          So for -- because I have the red-line compared to the

15  interim protective order and number -- let's see.  Your

16  proposal -- so paragraph 6(c), name of class representatives,

17  provided that such confidential information is contained in or

18  attached to a court filing, disclosure is reasonable and

19  necessary, and they sign the acknowledgement.

20          So they can get the confidential information, but any

21  additional documents, which would include draft filings,

22  would -- or any documents outside the court filings would need

23  to be with the meet-and-confer and the Rule 37 process.  And

24  then for any documents that are highly confidential would need

25  to go through the meet-and-confer in 37(b) even if they are

23MD3062  -- Status conf.  -- 10/24/24

1  attached to an actual filing.

2          Is that right?

3          **MR. McCLAMMY:**  That's correct, Your Honor.

4          **THE COURT:**  Okay.  And I just want to make sure I'm

5  understanding.  And so that's what the interim proposal does.

6          And with respect to -- I think there was also

7  reference to the FTC proposal.  Of course, the FTC doesn't have

8  the class folks.  And I'll come back around to Ms. Gillen

9  ultimately to let her weigh in.  But some of the third parties

10 seem to be requesting that the FTC protective order be the one

11 that applies.

12         How would that be different on that disclosure of

13 confidential or highly confidential information?

14         **MR. McCLAMMY:**  I'm sorry?

15         **THE COURT:**  Sure.  So I've got four possibilities

16 here, right.  I've got the FTC proposal -- or the FTC

17 protective order, the interim protective order in this case

18 regarding the investigative file, I've got Defendants'

19 proposal, and I've got Plaintiffs' proposal.  Defendants'

20 proposal seems to match the interim protective order for filed

21 documents.

22         **MR. McCLAMMY:**  That's right.

23         **THE COURT:**  And then add this additional provision

24 for meeting and conferring for additional documents and for all

25 highly confidential documents.

1           **MR. McCLAMMY:**  That's right.

2           **THE COURT:**  So I'm wondering how the FTC protective

3    order would be the same or different on those provisions to the

4    extent third parties were asking for that.

5           Do you know?

6           **MR. McCLAMMY:**  I don't believe that that would apply

7    with respect to the FTC action.  This is really specific to the

8    information that would be accessible by the -- by the Class

9    Plaintiffs themselves.

10          **THE COURT:**  Right.  Right.

11          **MR. McCLAMMY:**  And to the extent the Class Plaintiffs

12   were looking to review, for example, redacted materials filed

13   by the FTC, I think our position would be that they would still

14   be obligated to proceed as though they are accessing that

15   material pursuant to the structure set out and in the order

16   that Your Honor enters with respect to the MDL.

17          **THE COURT:**  Okay.  And, I mean, of course, to the

18   extent we've got the coordination order in place, things that

19   are produced or were produced in the FTC case are then subject

20   to being produced to the parties -- or to Syngenta and Corteva.

21   It then becomes discovery to be produced in the MDL case.

22          **MR. McCLAMMY:**  That's right.

23          **THE COURT:**  And I think the concern or issue that

24   third parties may have had was that things that were produced

25   or could be produced or were part of the investigative file in

1 the FTC case now are subject to the MDL protective order and

2 whether that provides less protection than the protective order

3 in the FTC case.

4       **MR. McCLAMMY:**  That's right, Your Honor.

5       **THE COURT:**  Right.  And I think that to the extent

6 they may have said the FTC protective order should apply, I

7 can't actually adopt the FTC protective order in the MDL case.

8 It wouldn't fit.  I mean, it wouldn't work or make sense.  So

9 we're going to have to do something different here.

10       But I guess what I'm trying to get at is do you know

11 what it is that they might be asking for that's in the FTC

12 protective order that's not covered by your proposal here?

13       **MR. McCLAMMY:**  The only thing I can think of, Your

14 Honor, on that front, and I understand Your Honor better now,

15 is that they were concerned with their information going to the

16 class reps.

17       **THE COURT:**  Okay.

18       **MR. McCLAMMY:**  And that was their primary concern is

19 that --

20       **THE COURT:**  Right.

21       **MR. McCLAMMY:**  -- the Plaintiffs' proposal was

22 allowing that information to be used and shown to the class

23 reps, whether it would be highly confidential or confidential.

24       **THE COURT:**  Okay.

25       **MR. McCLAMMY:**  And in saying perhaps the FTC order --

1  protective order would apply, they would not have been a

2  permissible party to have seen the documents under the FTC

3  order.

4         **THE COURT:**  Okay.

5         **MR. McCLAMMY:**  So I do believe that what we have done

6  and struck a balance -- and one of the parties, I believe, is

7  here --

8         **THE COURT:**  Right.

9         **MR. McCLAMMY:**  -- and certainly can speak for

10 themselves.  But I believe that balance that we've tried to

11 strike will sufficiently protect, you know, the third parties

12 and alleviate concerns that they may have with respect to the

13 fact that documents that they've been producing to the FTC will

14 be made available in connection with the MDL.

15        **THE COURT:**  Because they will be part of a

16 meet-and-confer if they are the ones claiming confidentiality?

17        **MR. McCLAMMY:**  That's exactly right.

18        **THE COURT:**  I guess to the extent that you all have a

19 provision that filed documents can be shown to the class

20 representatives, then it may be appropriate to allow the third

21 parties to redesignate documents as highly confidential if they

22 felt like the class reps being able to see it, even with an

23 acknowledgement and confidentiality agreement, would not be

24 sufficient, and they'd want to designate it as highly

25 confidential.  That may essentially let your interim order or

1  your version of the order stay in place but still give the

2  third party the protection that they're looking for on that.

3          Would that be right?

4          **MR. McCLAMMY:**  That would be something that would be

5  amendable -- we would be amenable to.

6          **THE COURT:**  All right.  Then we're gonna move on to

7  the clawback.  Let me let you do that.

8          **MR. McCLAMMY:**  Yes, Your Honor.

9          I think -- with respect to the clawback, I believe

10 we've set it out fairly clearly in our -- in our papers, but

11 the entire purpose of the clawback provision is to make sure

12 that the protections over the attorney-client privilege are

13 maintained and respected, and at the core of that is

14 confidentiality.

15          The rule is there to address the fact that,

16 especially in the current era that we are in, things are moving

17 quickly.  The volume is greater than it's ever been.  There are

18 going to be inadvertent productions of privileged material.

19 When that information is noted and timely clawed back, we

20 believe that the rule should apply that should require

21 destruction, return, and no further review of that particular

22 document.

23          **THE COURT:**  Or sequestering?

24          **MR. McCLAMMY:**  Or sequestering, exactly, Your Honor.

25          **THE COURT:**  Right.

1          **MR. McCLAMMY:**  The ability to challenge that -- you

2    know, if it's a document they've already seen or if it's a

3    document they haven't already seen, and they wish to challenge

4    that, there's a process to do that.  And that's to come to this

5    Court, and this Court can review the document in camera.  And

6    if it's not privileged, then they'll have the ability to get

7    it.  If it's privileged, then they wouldn't have the ability to

8    get it.

9          **THE COURT:**  I wonder if there is some sort of

10   compromise provision that would allow them to automatically

11   request ex parte review of any clawed back -- without -- still

12   sequestering it, they can't review it, but so that they don't

13   have to make some showing of -- because they don't see the

14   document or know what the document is, so that to the extent

15   there's some maybe weight against the clawback, it would be

16   that they can automatically get an ex parte review on that, and

17   then also maybe that you all will be required to do a

18   meet-and-confer to determine if you could agree to allow two

19   attorneys to look at the documents without waiving

20   confidentiality or privilege, just for purposes of negotiating

21   whether in camera review is actually going to be necessary.

22          Those sorts of conversations you can have without

23   waiving your privilege.  Something along those lines, but you

24   wouldn't be required or would be entitled to do that, but you

25   would just have a framework for potentially agreeing, at least

1  to some documents, to allowing counsel to review them so that

2  you can narrow down what might need to be reviewed ex parte.

3      **MR. McCLAMMY:**  So I guess two responses to that, Your

4  Honor.

5      **THE COURT:**  Okay.

6      **MR. McCLAMMY:**  The first of which is if Your Honor is

7  willing to --

8      **THE COURT:**  Right.

9      (Indiscernible cross-talk/laughing into microphones.)

10     **MR. McCLAMMY:**  -- far be it for me to stand in front

11  of that.

12     **THE COURT:**  Right.  Right.

13     **MR. McCLAMMY:**  Having been involved in these cases

14  for a number of years, it's also been the case that we've been

15  able to resolve these things without having the need to come to

16  the Court.

17     **THE COURT:**  Right.

18     **MR. McCLAMMY:**  Clawbacks have happened -- clawbacks

19  have already happened in connection with this matter, and we're

20  not talking about just clawbacks from the Defendants.  We're

21  talking about potential clawbacks also from a numerous number

22  of third parties that are producing.

23     So my only concern there is that automatically coming

24  to the Court on an ex parte basis could --

25     **THE COURT:**  It would be a lot bigger than what we're

1 | otherwise anticipating --

2 |         **MR. McCLAMMY:**  Exactly.

3 |         **THE COURT:**  -- or what is necessary.

4 |         **MR. McCLAMMY:**  And the ability to have these

5 | discussions about these documents has always been there, and

6 | we're always open to the meet-and-confer.

7 |         I'm concerned with the idea that we could ever agree

8 | That they would be able to look at a document that we've made a

9 | determination of as being privileged and saying that, having

10 | affirmatively claimed privilege over something, we now agree

11 | that a party outside of the privilege can look at it.

12 |         **THE COURT:**  So I actually have done orders like that.

13 | And, you know, 502(d) is pretty broad in terms of, you know,

14 | what we can do.  It doesn't have to be inadvertent.  And so

15 | allowing -- and it more often happens in -- we're going to let

16 | you look at everything. You decide what you want, and then

17 | we'll decide if it's privileged or not.  So, you know, you

18 | turned over everything, put the burden on the other side to

19 | review it.  They pick what they want, and then you can still

20 | claim privilege over those things, even though you've turned it

21 | over to them, and/or having a discussion on a counsel-only

22 | basis to be able to address, you know, whether there's a reason

23 | to challenge or claim that.

24 |         So to the extent that you'll want the ability to do

25 | that, you know, I can include that as part of an order that

1 would let you still continue to claim privilege, even if it's

2 been turned over as part of a negotiation or discussion.

3       Otherwise, I'm not sure -- I mean, there still may be

4 issues that they'll have in terms of whether they have enough

5 information to be able to challenge the privilege.  And it may

6 be that I just have -- I still put the burden on the party

7 requesting ex parte review.  But if it's one that is subject to

8 a clawback, I'll just signal that I am understanding of the

9 position that they're in and may be willing to review those

10 broadly, to the extent I need to.

11       Any thoughts on that?

12       **MR. McCLAMMY:**  I think that can be a workable

13 solution, Your Honor.  But I do think that that process is the

14 one that is the appropriate process here to allow for the

15 clawbacks as the rules contemplate.  And if there is going to

16 be a more accepting, you know, ex parte in camera review of

17 these documents, I think we would be okay with that, with the

18 understanding that we would first, of course --

19       **THE COURT:**  Still try to work it out together.

20       **MR. McCLAMMY:**  -- meet and confer and see if we can

21 resolve the issue without troubling, Your Honor.

22       **THE COURT:**  Okay.  Would -- I did have one other

23 thought back on the first issue I wanted to ask you about.

24       Obviously, there are a lot of documents that are

25 designated as highly confidential documents.  My hope is that

1   even among that group of documents that you don't want publicly

2   filed, that you would still be able to narrow further if there

3   were a request in terms of documents that are being filed on

4   the docket for things that could be shown to the class

5   representatives and that there will be an even more narrow

6   portion of the documents with very -- with a much more specific

7   showing even in terms of specific information that could not be

8   provided to the class representatives.

9          Is that fair?

10         **MR. McCLAMMY:**  That is fair, Your Honor.  And I think

11  we're open to that throughout the process, right.  If they are

12  going through and they're reviewing the documents, not in the

13  context of a particular motion or deposition or anything, but

14  they're seeing a particular category of document that has been

15  labeled as highly confidential and, you know, would like us to

16  review it and see if we would be willing to de-designate it or

17  to change or downgrade the designation, we're happy to do that

18  throughout the process.

19         **THE COURT:**  Or to leave the designation as is, but

20  make its own category of ones that you'll agree to allow the

21  class representatives to see even -- either in full or on an

22  even more narrowed, redacted basis.

23         **MR. McCLAMMY:**  That's exactly right, Your Honor.  And

24  that, of course, is me speaking for the Defendants.

25         **THE COURT:**  Right.

1      **MR. McCLAMMY:**  I believe the Plaintiffs have to

2   understand that we're also seeking a lot of information from

3   third parties in this market.

4      **THE COURT:**  Right.

5      **MR. McCLAMMY:**  I believe that is a process that we

6   would have to go through with them as well.

7      **THE COURT:**  I mean, I think part of my concern here

8   is that if we do something that the third parties are not going

9   to be able to agree to or live with, then we're going to grind

10  this production to a halt, and I'm going to end up having

11  hearings as to each of the third parties who are objecting to

12  disclosure.  And so what I want to try and get to is something

13  that allows those documents to be produced so counsel can

14  review them and then address the confidentiality issues as we

15  need to.

16     **MR. McCLAMMY:**  I believe that's completely correct,

17  Your Honor.  And that's been one of our main concerns all

18  along, is that whatever solution we reach here has to be

19  something that we can get the third parties comfortable with

20  and not in any way delay this process.

21     **THE COURT:**  Okay.  All right.  Anything else?

22     **MR. McCLAMMY:**  That's all I have, Your Honor.

23     **THE COURT:**  Okay.  All right.  Mr. Marriott, was

24  there anything you wanted to add to any of that?

25     **MR. MARRIOTT:**  Your Honor, just briefly.

```
1        First, on the issue with respect to the protective
2  order, three quick points.
3        First, we're happy to meet and confer about issues of
4  highly confidential documents needing to be shown to a class
5  representative if and as that arises.  That's point one.
6        Point two is I don't think there's any support for
7  the idea that a class representative has to see the highly
8  confidential documents of a defendant in order to do that
9  person's job.  I've never actually had that asked for in any
10 case.  I've never seen any court do that.  And I don't think
11 there's a single case in which that's been held, that a class
12 representative, in order to do their job, has to have access to
13 the highly confidential documents of a defendant.  I don't
14 think so.  So I think that is, in fact, a very extraordinary
15 request to say that to do your job, you have to see the highly
16 confidential documents.
17        The third point, Your Honor, is we are, as
18 Defendants, if what they've asked for is allowed, going to be
19 in a very different and asymmetrical position.  The fact of the
20 matter is that our clients, even the in-house lawyers who get
21 access to highly -- they don't have access to the highly
22 confidential information at Corteva or Syngenta and vice versa.
23        So we do our jobs all the time as lawyers by giving
24 our clients advice around the particulars that are highly
25 sensitive.  Just as Your Honor spent a half hour with us going
```

through documents and creating a basis to create a record for
the Fourth Circuit, right, lawyers all the time say, look, I
can't describe the particulars of documents for you.  What I
can tell you is, and you give advice in that way.

          So I think the request is an extraordinary one, and I
would urge the Court not to (indiscernible/coughing into
microphones.)

          Thank you.

          **THE COURT:**  All right.  Thank you.

          All right.  I'm going to ask the FTC to, you know,
touch on a few things, including your protective order, but
just, in general, how this might relate to your case and any
insight you have as to the protective order issue.

          **MS. GILLEN:**  Thank you, Your Honor.

          So I guess I'll first talk about the MDL protective
order issue.  And just to clarify, the Government Plaintiffs,
you know, take no position on the disputed issues between the
Class Plaintiffs and Defendants that we've been discussing here
today.

          But I did want to give some color about how the MDL
protective order affects our case.

          **THE COURT:**  Okay.

          **MS. GILLEN:**  And I don't purport to speak for any
specific third parties, but we've heard third parties voice,
you know, concerns to us that they intend to wait until a final

1 protective order is entered in the MDL action before producing

2 any documents to the Government Plaintiffs.

3          You know, in response, we've pointed them to language

4 that appears in the discovery coordination order, which, you

5 know, specifies that, you know, an objection to any of the

6 protective order -- or to the MDL protective order is not, you

7 know, an excuse for withholding production to the Government

8 Plaintiffs in the first instance.  But, nevertheless, we're

9 simply hearing that they would prefer to wait.

10          So I think, you know, resolution of this issue would

11 be helpful.  As I've said, we don't take a position on what

12 that is, but I think that, you know, third parties have

13 suggested that, in order to move forward, they basically want

14 the opportunity to review a noninterim final protective order

15 in the MDL action.  So I think that that will help a lot in

16 moving things along.

17          **THE COURT:**  Okay.  As far as the particulars of that

18 and the third-party interest there, you know, I noted the

19 possibility that third parties could object to disclosure or

20 could redesignate as highly confidential in order to be

21 comfortable with the level of protection that they would have

22 and then have an opportunity to participate in the

23 meet-and-confer about further dissemination or filing of those

24 documents.

25          As far as you're aware, would that be workable,

1  appropriate, and address the third-party issues that you know

2  of?

3          **MS. GILLEN:**  I mean, sitting here today, that sounds

4  workable to me.  Again, you know, it probably depends on the

5  third party.

6          **THE COURT:**  Right.

7          **MS. GILLEN:**  I'm sure each third party has, you know,

8  different concerns.

9          **THE COURT:**  Right.

10         **MS. GILLEN:**  But that seems workable from my

11  perspective, at least, you know, in the abstract.

12         **THE COURT:**  Right.  Right.  Okay.  I appreciate that.

13         Anything else?

14         **MS. GILLEN:**  I also wanted to address an issue with

15  the protective order in the FTC case.

16         **THE COURT:**  Ah, okay.

17         **MS. GILLEN:**  And we previewed this for the Court in

18  our -- in our joint status report.  But a number of third

19  parties have voiced concerns that they are -- were -- are

20  refusing to provide documents in response to the Government

21  Plaintiffs' subpoenas on the basis that, you know, under the

22  terms of the coordination order, we're required to share those

23  productions with the Defendants.  They have cited concerns

24  that, you know, their documents are competitively sensitive,

25  and in some cases, there are, you know, commercial

1  relationships with Defendants.

2         You know, we have -- we have assured them that, you

3  know, the designations -- they can designate their documents,

4  you know, "Outside Counsel Eyes Only."

5         **THE COURT:**  Right.

6         **MS. GILLEN:**  And I believe they've still voiced

7  concerns that, you know, those documents could be viewed by

8  counsel or consultants for the Defendants who may play a role

9  in commercial negotiations.

10        And, you know, while we're sensitive to this issue,

11 we -- you know, we have simply made those third parties aware

12 of the process.  They can move to supplement or amend the

13 protective order.  And, you know, we've tried to be sensitive

14 to these issues, but it's holding us up in some instances.

15        And so, you know, we suggested one potential solution

16 in our joint status report, and, that is, that the Court could

17 set a deadline for third parties to move to amend or modify the

18 protective order.  We think that would be helpful.

19        **THE COURT:**  Right.  They may not need to move or

20 modify the protective order for everyone.  It would surely just

21 be a protective order for their documents in terms of the

22 additional rules that might apply for their documents that they

23 would produce --

24        **MS. GILLEN:**  Correct.

25        **THE COURT:**  -- right?  Okay.

1        **MS. GILLEN:** Correct. I think it would just help.

2  And, you know, it may be that if there's a deadline in place,

3  third parties can either choose to make such a motion, or they

4  may decide not to stand on their objections. I think it would

5  just help sort of move past this holding pattern that we're in.

6        **THE COURT:** I think there was also a reference there

7  to potentially duplicative subpoenas. And so what that -- if

8  we're setting a schedule -- and I'll come back around to

9  everybody to let them be heard on this. But if we're setting a

10 schedule that may be a schedule by which any subpoenas are

11 provided to third parties in the FTC action, and then, you

12 know, some two weeks later, the deadline for subpoenas in the

13 MDL action to believe -- to the extent they believe they're not

14 fully covered by what was included in the FTC action, and then

15 a deadline a couple weeks after that by which the third parties

16 have to either move to quash or move for additional protective

17 order on those subpoenas, would that satisfy the concerns and

18 be workable for you all?

19       **MS. GILLEN:** I think that makes sense. And,

20 obviously, we're open to, you know, a deadline that Your Honor

21 finds reasonable.

22       I think, you know, from the Government Plaintiffs'

23 perspective, many of our third-party subpoenas have been

24 outstanding for quite some time now.

25       **THE COURT:** Right.

1     **MS. GILLEN:**  So, you know, we would suggest, you

2  know, something in the relatively near future, maybe

3  mid-November.  November 15 is sort of, I think, a reasonable

4  date for the subpoenas that the Government Plaintiffs have

5  already issued.

6          **THE COURT:**  Well, it's true to a point, unless I

7  combine it with deadlines for you all to have served

8  everything, because we want to make sure that we're not coming

9  back for multiple defendants.

10          So while that may be workable if we didn't include

11  those deadlines, what I may want you to consider is, okay, what

12  deadline can you give me by which you'll have served all your

13  third-party subpoenas?  And then give them a couple weeks.  And

14  then after that couple weeks, knowing that most of those

15  third-party subpoenas have been pending for a long period of

16  time, they've had time to know or think about what they want to

17  do.  But we know that we're not going to -- we're not going to

18  have to come back multiple times for a particular third party,

19  and the third parties are not going to have to worry that

20  they're going to have to come back at particular times, or that

21  if they produce something, they've now lost their opportunity

22  to object to future.

23          So that would be the only piece I would interject on

24  your schedule that you might be looking at there.

25          **MS. GILLEN:**  No, thank you, Your Honor.

23MD3062  -- Status conf.  -- 10/24/24

1        I think -- just to clarify, I think that that

2 November 15th date that we threw out there would apply only to,

3 you know, the subpoenas that have already been served.

4        I think going forward -- you know, understanding that

5 Your Honor doesn't want to have multiple deadlines, I think,

6 you know, for subpoenas that have not yet been served, you

7 know, I think 30 days -- a deadline of 30 days after the

8 subpoena is received to move to quash or modify the protective

9 order could be helpful.

10     **THE COURT:**  So what if, though, I'm saying I'm not

11 going to have them move to quash or modify until they know for

12 sure that they've got the whole universe of subpoenas that

13 they're going to have to deal with?

14        And so by November 15th, you have served all of them,

15 and you let me and everyone else know, okay, this is it; we're

16 not going to serve any more third-party subpoenas, unless

17 there's some good cause, and we come back to the Court to

18 present some exceptional circumstance for why we didn't do it

19 before.

20        But under the ordinary course, you've done that.  And

21 then we give the folks in the MDL until -- and folks in the MDL

22 on the other side until, say, another two weeks, December 1st

23 or so, to follow up with any of their third-party subpoenas.

24 And then we're mid-December as the deadline for the third

25 parties to file any motion to quash or motion for protective

1  order.

2          On the one hand, that does push it out some, and, you

3  know, it's going to be maybe January before it's fully

4  resolved, but it does at least push them forward, but it gives

5  you time in there to have gotten the subpoenas served so we

6  know that the third parties are looking at the whole universe

7  of what they've got.

8          How does that relate to what you're asking for?

9  Would that be doable?

10         **MS. GILLEN:**  So I think what we're asking for is

11  limited to the subpoenas that have been served to date.  I

12  think, you know, I'm not in a position to commit to, you know,

13  not serving any more third-party subpoenas today.

14         **THE COURT:**  Right.  Right.

15         **MS. GILLEN:**  I don't think any of the other parties

16  here are either.  I think, you know, there's always the

17  possibility that, as documents start to roll in, we might, you

18  know, discover a new third party that we want to serve a

19  subpoena to.  So I think, you know, what we would be

20  comfortable with, at least for now, is setting a deadline for

21  those subpoenas that have already been served, and perhaps we

22  can revisit a second -- sort of another tier of those deadlines

23  going forward.

24         **THE COURT:**  Okay.  So what about this?  Let's set

25  aside separately the issue of third parties who have not been

Case 1:22-cv-00828-TDS-JEP    Document 262    Filed 10/28/24    Page 86 of 173

1  served any subpoena.  So they're not here or part of this at

2  all.  Third parties that you've served a subpoena, you confirm

3  that you're not going to serve any additional subpoenas or that

4  this is it that you want from them.  We give the MDL folks time

5  to follow up with those same third parties.  And so then those

6  third parties have their two weeks or so.  So we go ahead and

7  do that on a faster basis but not address the issue or include

8  in that same timeline third parties to whom you have not yet

9  served a subpoena.

10          MS. GILLEN:  Your Honor, thank you.  That's something

11  that we would be comfortable with.

12          THE COURT:  Okay.  All right.  So we'll see if that

13  works or how we can make that work with the MDL folks, also

14  making sure that if there's third -- if I give a deadline to

15  those third parties, that they know that they aren't also

16  looking at additional subpoenas in the MDL or from those folks

17  that are -- and then are going to have to come back again

18  another time to address this.

19          Okay?

20          MS. GILLEN:  Yes.

21          THE COURT:  Anything else that you wanted to add?

22          MS. GILLEN:  The only -- I guess I have a few other

23  minor third-party discovery issues.  But if you'd rather --

24          THE COURT:  Unrelated to the protective order?

25          Why don't you go ahead and tell me what they are so

1  we'll know.

2         **MS. GILLEN:**  So I just -- we previewed this in the

3  joint status report as well.  But, you know, we wanted to just

4  flag for the Court that, you know, we're pressing forward as

5  quickly as we can with third parties.  As Your Honor noted,

6  some of them have received multiple subpoenas.  And, you know,

7  we are -- we are sensitive to minimizing the burden on third

8  parties and negotiating those.

9         We just wanted to flag for Your Honor that it may --

10 you know, it may be necessary in the coming months to come back

11 to you and request some intermediate deadlines for third-party

12 discovery to sort of help move things along.  I don't think

13 we're there just yet, but we just wanted to flag the issue.

14 For now, we're content to, you know, keep pressing forward.

15        **THE COURT:**  And that's essentially separate from

16 having a deadline for them to object or move to quash or for

17 protective order.  You would want deadlines for them to

18 actually make their productions.

19        Is that the gist?

20        **MS. GILLEN:**  Potentially.  I think, you know, an

21 intermediate deadline that we were thinking about -- and we're

22 still thinking about exactly how this -- how this might work,

23 but, you know, potentially a deadline to conclude negotiations,

24 or something that would help the parties, you know, crystallize

25 disputes with third parties.

1       **THE COURT:**  I mean, I guess, in some ways the

2   deadline to move to quash a protective order does that

3   inherently to some extent.

4       Right?

5       **MS. GILLEN:**  Yes, that's right, Your Honor.  I think

6   that would be really helpful.

7       And, again, we're going to press forward and, you

8   know, keep -- keep plugging away.  But to the extent, you know,

9   there are some third parties that are difficult -- more

10  difficult to negotiate with, you know, it may be -- it may be

11  helpful to have that deadline for concluding negotiations.  It

12  could, you know, force everyone to come together in lieu of,

13  you know, burdening this Court and other courts with, you know,

14  multiple motions to compel.  It could be that a simple, you

15  know, intermediate deadline is helpful.

16      Again, I don't think we're there yet, but we wanted

17  to preview that issue.

18      **THE COURT:**  I guess there's also the issue that a

19  motion to quash or for a protective order on a subpoena is

20  technically going to go to the district where the subpoena is

21  directed, and they would have to transfer it here.  I presume

22  you would agree to transfer it here, but it's ultimately going

23  to be up to whether that third party agrees to transfer it here

24  as well.

25      Is that accurate?

1          **MS. GILLEN:**  Yes, that's right.

2          Again, I can't say how many of those motions there

3     actually will be, but I do think the deadline would be helpful

4     in moving things along.

5          **THE COURT:**  Okay.  Okay.  All right.

6          **MS. GILLEN:**  Thank you.

7          **THE COURT:**  Sure.  That's helpful.

8          All right.  Mr. Burke, let me come back around to you

9     on the protective order issues, if you wanted to respond to

10    those things.

11         **MR. BURKE:**  Thank you, Your Honor.

12         First of all, I appreciate that counsel may think

13    it's unprecedented, but courts do, in fact, permit class reps

14    in consumer-oriented type of cases -- and this is -- I realize

15    the farmers are businesses, but it's more akin to a consumer

16    than when you have large institutional clients who might have

17    in-house counsel.  Courts enter protective orders that permit

18    class reps to see highly confidential documents.

19         And I'm sure Mr. Marriott is not representing himself

20    as *Newberg on Class Actions*.  But I've been a class action

21    lawyer for 25 years, and I wouldn't want to stand up when I

22    have a settlement being challenged by Ted Frank and be able to

23    say, yeah, well, I didn't show my client everything; it's going

24    to have to trust me.  And that's not how the -- that's not how

25    it works.  That's not how it should work.  You should have

1  informed, participatory class reps who take their role

2  seriously, just like I take the role seriously and my role

3  seriously.

4          **THE COURT:**  Of course, you know, highly confidential,

5  outside-counsel-only documents -- I think Mr. Marriott or

6  Mr. McClammy raised the point that it is not unusual that you

7  have a corporate client whose representatives and officers are

8  not able to see the highly confidential documents because they

9  are outside counsel only because of those exact types of

10  competitive concerns.

11          **MR. BURKE:**  And you don't have the competitive

12  concerns here.  These farmers aren't going to compete with

13  Corteva or Syngenta.

14          **THE COURT:**  Well, they have, though, information that

15  they're dealing with other competitors of Syngenta and Corteva

16  that I think raises the concern there.

17          **MR. BURKE:**  They're bound by the protective order,

18  Your Honor.

19          Let's assume honesty.  Let's assume that they're

20  going to abide by the protective order.

21          **THE COURT:**  I think that --

22          **MR. BURKE:**  Start off with that --

23          **THE COURT:**  But I think, Mr. Burke, the same issue

24  applies for the folks that are in a company and where we're

25  trying to make sure that we can bind them by a protective

1  order, but we still have an additional layer of protection for
2  outside counsel only.

3         I'm also really concerned that our third parties are
4  then not going to provide any documents, and we're going to end
5  up without -- because if I have a third party here who's asking
6  for a protective order, I'm going to end up doing exactly what
7  is getting requested, which is, okay, well, maybe I'll provide
8  them to outside counsel but not to any individuals.

9         And so I'm not sure how to navigate that without, you
10 know, essentially creating multiple hearings where we're going
11 to end up doing it sort of on a piecemeal basis with the same
12 sort of result on that.

13         **MR. BURKE:**  Right.  Because the alternative, which is
14 that my clients are blind, is not acceptable either.  I think
15 we can all agree on that.

16         **THE COURT:**  Well, I think, if the alternative,
17 though, is a meet-and-confer and a Rule 37.1 telephone
18 hearing -- I mean, that's a 30-minute hearing where I'll get on
19 the phone, and we'll address it.  And so if there is something
20 that your clients need to see, we can take a look at and figure
21 out, you know, does this need to be filed.  Maybe it doesn't
22 need to be included, or it's not necessary for the filing or
23 the proceeding, or it is necessary; this is critical, and the
24 clients need to see it.  How can we narrow it further to
25 address the particular competitive concerns?

1          And we could -- to the extent you all aren't able to

2     work that out, then there's a procedure that is not -- built

3     into local rules that is adopted here as part of the proposal.

4          That seems to make sense to me for making sure -- I

5     mean, I want to protect that interest that you've got.  I just

6     want to make sure we're doing it in a way that also protects

7     and lets them address the confidentiality concerns, too.

8          And I think that it seems reasonable to make sure

9     everybody's aware of what documents are going to the class

10    representatives and that we've made sure they need to go, that

11    they need to be filed, and that the things that the clients

12    need to see can be provided to the clients that way.

13              **MR. BURKE:**  In terms of whether they need to go, I

14    mean, then you're, I think, invading the province of how I'm

15    writing my brief.

16              **THE COURT:**  Well, I mean, to some extent, that is the

17    way we look at this, right.  It's true for sealing documents,

18    too.  I can tell you, if you -- you know, if you're going to

19    provide a document that is -- got confidential material, then

20    some of those things the Court reserves the option of striking

21    because they didn't need to be included, and so I'm not going

22    to make a sealing determination on those.  I'm just going to

23    strike them.  And so that's something that we routinely do as

24    part of the sealing analysis as well.

25              So I think that all of the concerns -- the meeting

1  ahead of time, the negotiating ahead of time, restricting what

2  you file in order to not file confidential information where

3  you can -- those things are already all built into the local

4  rule structure when we're dealing with sealed documents or

5  documents that have been designated as confidential or highly

6  confidential.

7          **MR. BURKE:**  I guess I've just never had the

8  experience of having a judge tell me, take that out, Mr. Burke;

9  that's not necessary.

10          **THE COURT:**  We do.  Right.

11          **MR. BURKE:**  I've just never had it happen.

12          **THE COURT:**  Right.  We do.

13          **MR. BURKE:**  And I've been around a couple courts.

14          **THE COURT:**  Right.  Right.

15          **MR. BURKE:**  Now, in terms of process, I'm just

16  wondering how that would work with respect to dealing with the

17  class reps.  Now, we're not showing the class reps, probably,

18  documents.  What would -- the reason this comes up is -- let's

19  suppose you have a class certification motion, and in the

20  motion -- in the memorandum, you're quoting pieces of a

21  document.  There'd be an appendix with all the additional

22  documents there.  But time being what it is, we would probably

23  simply go over the memorandum with the client so they would

24  understand what we were filing and why.  So you talk about

25  excerpts of stuff.

1    So at that point, hey, we know we have -- and
2 everything is going to be marked "highly confidential."  So
3 there's going to be a lot of stuff, because it's not going to
4 be marked "confidential," you know, because nobody ever got
5 fired for a higher confidentiality designation over at the
6 defense shop.  They're looking to protect their client.  That's
7 how it works.  Everything's going to be marked "highly
8 confidential."

9    I asked Mr. Labeat -- Mr. Rrahmani, has anything been
10 labeled "confidential" so far?  He says, I'm not sure.
11 Everything he's seen is highly confidential.  That's the world
12 we're living in.

13    So I have, let's say, 40 things in my brief.  Do I
14 then call up Mr. Marriott, Mr. McClammy, and say, hey, this is
15 what I want to kind of go over with my clients?  Is that okay
16 with you?

17    **THE COURT:**  Well, you -- part of the meet-and-confer
18 is this is what I want to include in my brief.  You should
19 actually already be having that discussion as part of the
20 sealed document analysis to determine whether the claims of
21 confidentiality can be narrowed and what's included or not.

22    And so, I mean, I think that's -- that is already
23 part of what the expectation is where you're including things
24 in the brief that are highly confidential in order to reduce
25 the need to file things under seal.

1        **MR. BURKE:**  So I'm giving Defendants an editorial cut

2   on my briefing?

3        **THE COURT:**  That is exactly what the local rules

4   require, a two-day advance notice under local Rule 5.4 and 5.5.

5        **MR. BURKE:**  And, in practice, does that happen?

6   Plaintiffs come to you and say, hey, I tried to make this

7   argument.  I couldn't because the Defendants didn't want to let

8   me put that --

9        **THE COURT:**  No, it's the basis for the motion to

10  seal.

11       **MR. BURKE:**  That's a different -- that's different

12  than making an editorial decision on what you're going to put

13  in your brief.

14       **THE COURT:**  But the discussion ahead of time happens

15  as part of the motion to seal.  And so then --

16       **MR. BURKE:**  Of course.

17       **THE COURT:**  -- so then you will know what's

18  include -- what -- if they agree, okay, we're still claiming

19  highly confidential, but we're not going to preclude you from

20  showing that to your clients, then you can go ahead and show

21  your clients and file it.

22       If they say it's highly confidential and we have a

23  reason for not wanting you to show it to your clients, then

24  that's the basis that you then do the meet-and-confer process

25  and ask for a 37.1 hearing with the Court.  And you can go

ahead and file it if you want to file it as is, but then we'll

go ahead and have the conference with the Court on -- you know,

usually that same week or the next week.

MR. BURKE:  I'm sorry, Your Honor.  I just wasn't

tracking, apparently.

THE COURT:  Okay.

MR. BURKE:  I thought what you were saying was,

I've got a brief that's done, and my worthy adversaries don't

want me making certain arguments.  They're telling me to take

it out.

But you're not saying that?

THE COURT:  No.  No.  No, I'm not saying take it out.

I'm saying that --

MR. BURKE:  You can understand why I was confused.

THE COURT:  Okay.  So the conversation happens, and

then whether you file it under seal or not, whether they

(indiscernible/audio glitch) a claim of confidentiality, and,

in this scenario, whether you show your clients and that just

as a matter of then -- if it's a highly confidential document,

we have a 37.1 hearing, if they're still claiming

confidentiality.

MR. BURKE:  Sure.

THE COURT:  Yeah.  Yeah.

MR. BURKE:  Okay.

THE COURT:  Okay.  All right.  So that helps clarify

1  it then?

2           MR. BURKE:  Yes.

3           Now -- so in terms of -- because I'm trying to get to

4  a compromise, too.

5           THE COURT:  Right.

6           MR. BURKE:  What's the trigger into how fast do they

7  need to get back to me?  Because everybody wants, you know,

8  more than 24-hour days.  We wish we had 32-hour days.

9           THE COURT:  Right.

10          MR. BURKE:  We don't have them.

11          THE COURT:  Right.  So -- and I -- and so far in this

12  case, we have not put specific deadlines for turnarounds.  If

13  you all think we need to do that for this part of the

14  meet-and-confer process, then that's something that we can do,

15  or you all can talk about what that looks like.  I think you'd

16  need to include in there how far ahead of time your obligation

17  is to reach out to them and then their obligation in terms of

18  how quick a turnaround they get back to you.

19          And if you all want to put something like that in

20  there, then I think that's a discussion you could have.  I

21  mean, I think we've talked about that before in terms of

22  whether to put a 48-hour turnaround, which you can do if you

23  want to do that, or whether you want to wait and do that only

24  if it becomes a problem, which you could also do.  Either way,

25  I think it's something reasonable to discuss or figure out.

1          **MR. BURKE:**  Okay.

2          **THE COURT:**  Okay.

3          **MR. BURKE:**  Yeah.  Thank you.

4          **THE COURT:**  Okay.  Okay.  And then as far as the

5   clawback, I had some conversation with Mr. McClammy about the

6   idea that you all can agree to provisions under 502(d) that

7   would allow them to let attorneys review something without

8   waiving privilege or work-product production on a limited basis

9   just to try and address or resolve the dispute.  But if they're

10  not agreeing to that, then you wouldn't reserve the right to be

11  able to look at it.  It would be something that you would then

12  bring to the Court.

13         But I would signal to you that if it's a clawback, I

14  would be particularly willing to consider it ex parte.  And

15  maybe I'll put it this way.  If it turns out I look at it and

16  say, yeah, this is completely privileged, then I'm not going to

17  have any concern or issue about why you raised that, like why

18  did you file this.  It's going to be understandable.  It was a

19  clawback.  You wanted the Court to take a look at it.  And so

20  I'm happy to take a look at it and make a decision on that.

21         Does that help address the issue or the concern that

22  you've got there?

23         **MR. BURKE:**  Those two working in tandem.

24         **THE COURT:**  Right.

25         **MR. BURKE:**  Because I think the meet-and-confer

1  process is necessary to avoid burdening Your Honor.

2  **THE COURT:**  Right.  I would appreciate the extent

3  that you can do that, certainly, but -- and I also understand

4  sometimes you can't know, and so you have to bring it to the

5  Court for me to be able to review.

6  But I also -- I believe that I can include a

7  provision or that you all can put a provision that I approve

8  that lets them make not just inadvertent disclosures that they

9  can still claim as privilege, but intentional disclosures that

10  they still can claim as privilege.  So, essentially, that they

11  could agree to allow counsel to review the document after --

12  after it's been sequestered, after they've taken a look at it,

13  for you all to have a meet-and-confer and then to agree, okay,

14  yeah, we're not going to pursue that; that's not an issue.  But

15  it also still preserves for them the option to say, no, we

16  don't want counsel to see that, but you can ask the judge to

17  take a look at it.

18  **MR. BURKE:**  Right.

19  **THE COURT:**  Okay.  All right.  Okay.  So I think that

20  maybe helps address those issues.

21  Mr. McClammy, anything else?

22  **MR. McCLAMMY:**  No, Your Honor.  I think with that

23  clarification, that we would have the option under -- under

24  what your -- under your framework, and we can still make the

25  determination that the other side would not have the ability to

1  look at the document --

2          **THE COURT:**  Right.

3          **MR. McCLAMMY:**  -- at which point, they could seek

4  Court intervention --

5          **THE COURT:**  Right.

6          **MR. McCLAMMY:**  -- or we could have the discussion

7  without them actually looking at the document.  We give them

8  some sense without violating privilege.

9          **THE COURT:**  Right.

10          **MR. McCLAMMY:**  And then we could come -- yes, I think

11  that would work.

12          **THE COURT:**  Okay.

13          **MR. McCLAMMY:**  The only other thing, Your Honor,

14  I had heard that -- there had been mentioned that one of the

15  third parties that had joined may be present in the courtroom.

16  I don't know if they would like to be heard or not.

17          **THE COURT:**  Okay.

18          **MR. MARRIOTT:**  Just before -- I just -- I want to

19  make sure -- I'm not sure I fully understand the proposal of

20  the agreement.  So I like the idea of Your Honor reviewing it

21  in camera, and that makes --

22          **THE COURT:**  On the clawback issue; right?

23          **MR. MARRIOTT:**  On the clawback issue.  That makes

24  sense to me.

25          My only reservation, and I'm presently stating an

1  objection, just flagging issues so someone doesn't say, why

2  didn't you raise that earlier?

3        **THE COURT:**  Okay.

4        **MR. MARRIOTT:**  Any world in which we're being asked

5  to agree to have some -- that we're agreeing that someone else

6  can look at it, I worry that potentially gives rise to a

7  waiver.  It might be that Your Honor, for purposes of this

8  case, would say in this case it's not a waiver.

9        **THE COURT:**  Right.

10       **MR. MARRIOTT:**  Unfortunately, however, we have

11  another case pending in Arkansas --

12       **THE COURT:**  Okay.

13       **MR. MARRIOTT:**  -- that raises the same issues.  And I

14  don't know that we can be certain that if we agree that they

15  can use it for this purpose, then we won't be said by other

16  Plaintiffs to have waived it because we agreed.

17       **THE COURT:**  Doesn't 502(d) --

18       **MR. MARRIOTT:**  You order --

19       **THE COURT:**  Let's see if I have my rules up here.  Do

20  you have --

21       **MR. MARRIOTT:**  We don't have to resolve it.  I just

22  wanted to flag the issue of having some concern about that.

23       **THE COURT:**  All right.  I still want her to go grab

24  my civil rules.

25        Okay.  My recollection is that 502(d) would let us do

1 that and say a waiver here is not a waiver in any other case

2 and that it doesn't require or is not limited just to

3 inadvertent disclosures.

4        And, again, the more typical scenario is where

5 there's a -- we're going to -- we're not -- instead of

6 reviewing any documents, we're going to let the other side

7 review them first and decide what they want, and then we'll

8 claim privilege on the ones that we want to claim privilege.

9        But you all have other experience or things that I

10 might not know about, if there's some other concern I should

11 take into account on that.

12        **MR. MARRIOTT:**  My only concern was the possibility of

13 someone arguing later that it's waiver.  That's it, Your Honor.

14        **THE COURT:**  Okay.  And do you have a reason to think

15 502(d) wouldn't let me make that order that would mean it's not

16 a waiver in any other case?

17        **MR. MARRIOTT:**  Bear with me, Your Honor.

18        **THE COURT:**  Sure.

19        And let's see.  I may need --

20        **MR. MARRIOTT:**  So, Your Honor, I don't have a concern

21 if what the Court is doing is ordering something, right --

22        **THE COURT:**  Right.

23        **MR. MARRIOTT:**  -- because that's what 502(d) is --

24        **THE COURT:**  Exactly.

25        **MR. MARRIOTT:**  -- talking about.

 1              **THE COURT:**  Exactly.

 2              **MR. MARRIOTT:**  My only concern is whether, as part of

 3    the process that's set up, we are obligated to reach an

 4    agreement.  So if we have to agree to have them do it, as

 5    opposed if you order us to have them do it, that's the issue.

 6              **THE COURT:**  Okay.  And so I guess if I -- and I know

 7    an order is required.  I guess what we may say is incorporate

 8    that into the terms of the protective order that I adopt that

 9    wouldn't be an agreement, but that the Court would order that

10    the privilege is not waived by disclosure under this provision,

11    which would be a clawback and a disclosure for purposes of

12    negotiating whether in camera review is required.

13              **MR. MARRIOTT:**  I mean, you're entitled to do that

14    Your Honor as I read 502(d).

15              **THE COURT:**  Okay.  Okay.  And so that's what I would

16    be contemplating if we were going to do it that way.  I

17    don't -- I don't want to do anything that you think is putting

18    you at risk.  So we want to make sure it's explicit or clear

19    that this is not -- that I'm specifically ordering that it's

20    not a waiver for -- if the disclosure is made pursuant to that

21    provision.

22              **MR. MARRIOTT:**  Understood, Your Honor.  Thank you.

23              **THE COURT:**  Okay.  Okay.  Okay.

24              All right.  Yes, the third party is here.  Is it, Mr.

25    Sutton?

|   |   |
|---|---|
| 1 | **MR. SUTTON:**  Yes, Your Honor. |
| 2 | **THE COURT:**  All right.  And I'll let you just |
| 3 | identify yourself for the record -- come on forward -- identify |
| 4 | yourself for the record and let you be heard on any of these |
| 5 | issues. |
| 6 | Sure. |
| 7 | **MR. SUTTON:**  Thank you, Your Honor.  Derek Sutton |
| 8 | from K&L Gates on behalf of nonparty Wilbur-Ellis. |
| 9 | **THE COURT:**  Okay. |
| 10 | **MR. SUTTON:**  So I wanted to first direct your |
| 11 | attention to our joinder, which is Docket Number 143 in the MDL |
| 12 | action -- |
| 13 | **THE COURT:**  Right. |
| 14 | **MR. SUTTON:**  -- which states our position. |
| 15 | **THE COURT:**  Right. |
| 16 | **MR. SUTTON:**  And I'd also like to more fully address |
| 17 | the burden imposed on third parties that would result from any |
| 18 | of the issues that we're contemplating now. |
| 19 | So Wilbur-Ellis has already made decisions about its |
| 20 | document production process based on the protections that are |
| 21 | in place from the Government protective order.  That's |
| 22 | substantially similar to the protective order that's in place |
| 23 | in the Arkansas litigation that's also pending. |
| 24 | And so what we're concerned about and the burden that |
| 25 | would be imposed on Wilbur-Ellis is having to have the argument |

1  (indiscernible/paper shuffling over microphone) on those

2  protections and go back and potentially change the process with

3  which we produce documents, because they're going to be subject

4  to lesser protections in the MDL case as a result of documents

5  that we're producing (inaudible) in the MDL.

6        **THE COURT:**  And can you specify more for me exactly

7  what the difference is that you're concerned about?

8        **MR. SUTTON:**  It's really in relation to the clawback

9  issue --

10       **THE COURT:**  Oh, okay.

11       **MR. SUTTON:**  -- because the manner in which we've

12 reviewed and produced documents is we've utilized the

13 technological process for screening per privilege.  And so it's

14 a balancing act, right, the amount of resources you need to

15 allocate towards reviewing privileged information.  If you use

16 a technological process, it's obviously more efficient, but

17 there is a chance, because it's not mainly being reviewed, that

18 something's looking (inaudible.)

19       **THE COURT:**  Right.

20       **MR. SUTTON:**  And so what we did, because of the

21 protections that are in place in the protective order in the

22 FTC matter, is we went to use that technological process.

23       **THE COURT:**  Right.

24       **MR. SUTTON:**  For a change in the process midstream,

25 in our view, we would have to reconsider whether we need to go

1  back, essentially claw-back documents that we've already

2  produced for the FTC -- in the FTC matter that will be

3  reproduced in the MDL and make that manual privilege

4  determination.

5        And so we think, from our perspective -- we

6  discussed, obviously, today a lot of different proposals.  We

7  think that if the Court were inclined to issue a protective

8  order in the MDL matter that changed the substantive

9  protections, essentially they would be different from what's in

10  the Government case that -- and Your Honor alluded to this.

11  Perhaps a prudent solution would be to allow third parties to

12  negotiate a supplemental, tailored protective order for our

13  individual productions.

14        **THE COURT:**  All right.  So I think there's a few

15  issues there.  So the first one has to do with the things that

16  the class representatives get a copy of.  That's that separate

17  issue.  It sounds like as long as we're under the Defendants'

18  proposal, that's not something that you're as concerned about.

19        **MR. SUTTON:**  No concerns about that.

20        **THE COURT:**  No concerns about that.  Okay.

21        So your primary concern is if counsel is able to

22  review documents even after you've clawed back.

23        Is that right?

24        **MR. SUTTON:**  It's the same clawback issue that

25  Defense counsel --

1    **THE COURT:**  Okay.  That rather than just being

2  sequestered, there was this provision that counsel could

3  continue to review documents subject to a clawback.

4    Is that right?

5    **MR. SUTTON:**  Yes.

6    **THE COURT:**  So if the Court is not including any

7  provision like that that says sequester, the same as always,

8  but if after a meet-and-confer about it, you're not able to

9  resolve it, then you can resolve it under a short proceeding

10 with the Court.

11   Is that --

12   **MR. SUTTON:**  That's certainly preferable to what the

13 MDL Plaintiffs have proposed.

14   **THE COURT:**  Okay.  I mean, that essentially still

15 lets you claim the privilege, and it just gets it before the

16 Court if there's some issue that needs to be resolved or

17 addressed on that.

18   **MR. SUTTON:**  Yes, Your Honor.

19   **THE COURT:**  Would you need -- the fact that the class

20 representatives may get some copies of filed documents, would

21 you need the opportunity to change a designation from

22 confidential to highly confidential?

23   **MR. SUTTON:**  So, as a distributor, you know, one of

24 the primary concerns that we have is price information.

25   **THE COURT:**  Right.

1          **MR. SUTTON:**  So having the opportunity to redesignate

2    would be helpful for that.

3          **THE COURT:**  Okay.

4          **MR. SUTTON:**  Yes.

5          **THE COURT:**  Okay.  Okay.  Okay.  So, essentially,

6    protecting at least your client and third parties generally by

7    giving them the option to redesignate as highly confidential

8    and leaving the clawback as contemplated generally with either

9    destroying or sequestering, but really just codifying what I

10   think is always the rule, which is the parties should meet and

11   confer if there's a dispute about that, and then can always

12   bring it to the Court for a resolution.

13         **MR. SUTTON:**  That's fair.

14         **THE COURT:**  That's fair?  Okay.  All right.

15         Anything else you needed to be heard on that,

16   Mr. Sutton?

17         **MR. SUTTON:**  No, Your Honor.

18         **THE COURT:**  Okay.  All right.  Thank you.

19         So, Ms. Gillen, anything else you needed to add,

20   having come back around on all that?

21         **MS. GILLEN:**  Nothing else from us on the protective

22   order issue.

23         **THE COURT:**  Okay.  So on the protective order issue,

24   I am going to find that, given the confidentiality and business

25   pricing and strategy concerns and the interests of the third

1 parties and the interest in discovery proceeding with the third

2 parties promptly, that it would be appropriate to adopt the

3 Defendants' proposal for the protective order with the

4 understanding that, as to the meet-and-confer that's required,

5 the parties can discuss whether there's a need to put in a time

6 frame for that or how the logistics of that would be addressed

7 in order to meet the Plaintiffs' concerns on that.

8          And so I'll ask the Defendants to have that

9 conversation so we can determine whether we need to add

10 particular time requirements in there, or whether you all can

11 informally agree on a timeline that wouldn't need to be

12 included as part of the protective order.

13          And then with respect to the clawback, we'll adopt

14 the Defendants' proposal on that, but with the understanding

15 that you all may make an additional revision to note that the

16 Court would adopt an order under Rule 502(d) so that documents

17 subject to a clawback can be shared without waiving privilege

18 or work-product claims.

19          And then noting that if there's still a dispute, the

20 parties can submit that for in camera review by the Court with

21 the specific notation that's pursuant to that provision or

22 subject to a clawback, given my note that I would be willing to

23 entertain those where you all are able to reach an agreement on

24 that.

25          I think that I would also include a provision that

1  third parties may redesignate documents as highly confidential.

2  I don't know if that needs to be included in the stipulated

3  protective order or where the best place to include that is,

4  but certainly on any subpoena and production by third parties,

5  that they would have the ability to designate that as highly

6  confidential, even if it was otherwise previously designated

7  just as confidential, for purposes of sharing it in this

8  litigation, whether the FTC litigation or the MDL litigation,

9  or both.

10          I think that covers those protective order issues.

11          There's the separate issue raised by the FTC on the

12  schedule, which I will take up here.  But what I think I'm

13  going to need to do is ask you all to discuss those specific

14  additional provisions that I've talked about here and then

15  submit to me a protective order.  But I would like to get that

16  in place soon because I don't want that to keep holding things

17  up.  So if you can do that by Monday, then by next week -- or

18  Tuesday, if you need an extra day, and by the end of next week,

19  I will get that protective order entered so that we'll have

20  that taken care of.

21          Mr. Burke, is that something you all can do by

22  Tuesday, based on the rules?

23          **MR. BURKE:**  By Tuesday, yes, Your Honor.

24          **THE COURT:**  Okay.  Mr. Marriott and Mr. McClammy?

25          **MR. MARRIOTT:**  Yes, Your Honor.

1          **MR. McCLAMMY:**  Yes, Your Honor.

2          **THE COURT:**  Okay.  All right.  So what I'll do is ask

3    you to meet and confer then.  In light of the determinations

4    here, incorporate some additional language to address those

5    things that I've added or noted here.

6          I think that also takes into account the third

7    parties' request.  But then, of course, if there are particular

8    issues that need to be addressed as to individual third

9    parties, then we'll set out a schedule for them, which takes us

10   to the next issue of deadlines.

11         What I'd like to do is go ahead and talk about the

12   deadlines for the third-party subpoenas and challenges to those

13   subpoenas, and then take another break, come back -- you know,

14   I looked back at my notes from our prior hearing.  I think I

15   contemplated that if there were disputes, we'd go ahead and

16   hear them today.  I understand that they may not be fully

17   briefed certainly and may be not fully conferred.  But what may

18   be helpful is if you all, during the break, can discuss that

19   further to make sure we know exactly what the issues are, then

20   I'll see the extent to which I can hear it today, and if we

21   can't resolve it today, the extent to which I give you a

22   briefing schedule.

23         But my intent was to resolve those today, to the

24   extent that there were any issues or disputes.  So we'll see

25   where we are with that, if there's anything that we can take

1  care of that would be a remaining dispute on custodians or

2  search terms.

3         Before we do that, though, let's see where we are on

4  deadlines for third-party subpoenas and objections or responses

5  on those.

6         I think -- I heard from Ms. Gillen on that.  I'm

7  going to go to the Defendants first, and then I'll come to the

8  Plaintiffs, in terms of setting some kind of schedule or

9  deadlines for third-party subpoenas, and then for the third

10  parties who have been subpoenaed so far, to file a motion to

11  quash or for additional protective order so that we can get

12  these things moving, but with sensitivity to the third parties

13  that they shouldn't have to deal with multiple rounds of

14  subpoenas or not knowing if they're going to get additional

15  subpoenas in the MDL case.

16         So, Mr. McClammy, do you have anything you can add on

17  that or suggestions for me?

18         **MR. McCLAMMY:**  Not much to add, Your Honor.  I don't

19  think we have any particular objection to at least a concept --

20  you know, setting out some of these deadlines.  I think our

21  only concern is some of the logistics of how it might all work

22  and whether or not the fact that -- if some of these motions to

23  quash, for example, will be filed somewhere else first.

24         **THE COURT:**  Right.

25         **MR. McCLAMMY:**  And then the process of getting that

1  transferred to in front of Your Honor --

2          **THE COURT:** Right.

3          **MR. McCLAMMY:** -- whether that's creating an

4  artificial -- you know, additional deadlines in this case. Is

5  that helping us move things along, or is it perhaps, you know,

6  creating the possibility for slowing things down a bit?

7          I would be hopeful that we could work out some of

8  these things. You know, we had our own, you know, questions

9  about, you know, when and whether, you know, certain things had

10 to be shared. I think some of that has been resolved, which

11 will hopefully, you know, help these third-party discussions

12 kind of like move along. So I'm hopeful, with those deadlines,

13 that it may not be necessary, but not opposed.

14         **THE COURT:** I guess -- and, Ms. Gillen, you may be

15 able to help me with this. If you filed a motion to compel,

16 would you file that here, even though the motion to quash or

17 the motion to -- for protective order would be filed in the

18 district where compliance was required?

19         **MS. GILLEN:** I believe if we were to file a motion to

20 compel, it would be in the district --

21         **THE COURT:** It would have to be in that district as

22 well?

23         **MS. GILLEN:** -- where compliance is required.

24         **THE COURT:** Okay. Okay.

25         **MS. GILLEN:** And just to clarify one thing, Your

1  Honor, I don't think any third party has told us that they plan
2  to move to quash.
3          **THE COURT:**  Okay.
4          **MS. GILLEN:**  I just want to clarify that.  We're, of
5  course, not opposed to any deadline for a motion to quash, but
6  it's really the protective order concerns.  And it is -- you
7  know, we think it'd be helpful to, you know, have a date to
8  tell those third parties.
9          **THE COURT:**  So I think, you know, next week we'll
10 have the protective order entered.  I'm assuming everyone will
11 be able to incorporate the language we've said here and come up
12 with something to give to me.
13         Would it help to have an informal deadline for, you
14 know, negotiations or discussions as opposed to a hard deadline
15 for a motion to quash?  Or what would that --
16         **MS. GILLEN:**  I think even an informal deadline would
17 be very helpful.  I think, you know, from our perspective,
18 we've, you know, heard these concerns voiced.  And we, frankly,
19 just simply don't know whether it's something that a third
20 party is telling us as part of a, you know, meet-and-confer
21 negotiation strategy, or whether it's something that they truly
22 intend to take to the Court.  And I think that clarity would be
23 helpful.
24         **THE COURT:**  Okay.  All right.
25         Mr. McClammy, if I tell the FTC that within the next

1  two weeks they need to confirm that for everybody -- or every

2  third party that they send a subpoena to, that that subpoena is

3  it, that's the universe, that they're not going to come back

4  again on that third party, absent exceptional circumstances,

5  would you be able to then within two weeks after that provide a

6  subpoena to those third parties, if there's anything else that

7  you would want from those third parties?

8        **MR. McCLAMMY:**  I think that's right.  With respect to

9  especially the FTC action --

10        **THE COURT:**  Right.

11        **MR. McCLAMMY:**  -- that would not be an issue.

12        **THE COURT:**  Okay.  What if I were also to say for the

13  MDL action as well, that, you know, we want a universe of

14  what's being subpoenaed to the third parties?

15        **MR. McCLAMMY:**  We are very much working towards and

16  making sure that our subpoenas would cover both actions.  So I

17  don't think that that would be an issue.  I don't know yet when

18  the -- when the MDL Plaintiffs are thinking of getting their

19  third-party discovery out or if they're thinking of being on

20  that same schedule.

21        So I think some of it may be determinative -- may be

22  determined by what we see from the MDL Plaintiffs as well.

23        **THE COURT:**  All right.  So, essentially, at least in

24  the FTC action, you could make sure that that's your universe.

25        And what I may end up doing is giving you all in the

Case 1:22-cv-00828-TDS-JEP    Document 262    Filed 10/28/24    Page 116 of 173

1 MDL action a same or similar time frame, with the understanding

2 that there may be additional things that happen in the MDL

3 action.  And that would just be part of what I would have to

4 weigh, if the third party is objecting, in determining whether

5 there's an undue burden -- or there's been an undue burden on

6 the third party.  And we can take that up, if we needed to,

7 later and just take that into account.

8         But, essentially, it will give you at least that one

9 shot to get everything else that you wanted to include in any

10 subpoena to the third parties.

11         **MR. McCLAMMY:**  Exactly, Your Honor.

12         And I think, as was mentioned, that, you know, the

13 fact that, you know, we will have resolution on the protective

14 order, I think that's really going to be the thing that moves

15 things along.  So I think we should be able to do that.

16         **THE COURT:**  Okay.  All right.  And on that,

17 Ms. Gillen -- let's just make sure -- the proposal that I've

18 adopted now with the additional language, is there anything

19 about that that you think will delay third-party discovery, or

20 you think that that's sufficient to address or protect the

21 concerns that you've heard?

22         **MS. GILLEN:**  From what I've heard, I think it's

23 sufficient.  And, particularly, I think, you know, having a

24 protective order --

25         **THE COURT:**  Having it in place --

1      **MS. GILLEN:**  -- is progress.  So thank you.

2      **THE COURT:**  Okay.  Okay.  All right.

3      All right.  Mr. Marriott, as to the third-party

4  subpoenas, what's your thought or suggestion?

5      **MR. MARRIOTT:**  We're happy to give that a shot, Your

6  Honor.

7      **THE COURT:**  Okay.  Okay.  All right.

8      All right.  For the Plaintiffs, who's addressing

9  that?  Mr. Rrahmani or Mr. Burke?

10      **MR. BURKE:**  Chris Burke for the Class Plaintiffs.

11      It would be helpful for us to -- we're playing

12  catch-up to the FTC action.  We know there's been a whole slew

13  of subpoenas issued in Arkansas.  We know the FTC action has

14  subpoenas to third parties.

15      We're still waiting on Judge Schroeder's decision on

16  the motion to dismiss, which will inform are we going the state

17  route -- state law route, are we going the federal route, are

18  we going a little bit of both, which would affect what type of

19  discovery we're going to need from third parties.

20      **THE COURT:**  Okay.

21      **MR. BURKE:**  In addition, we'd like to see some

22  documents from Corteva and Syngenta beyond what the FTC

23  produced -- and we've gotten zippo yet -- to also inform what

24  we want for third parties, because we have no interest in

25  serving subpoenas to everybody under the sun just to cover our

1  bases when we might have -- when we could be more selective,

2  put it that way, and be narrower in our request and impose less

3  of a burden on third parties.

4         **THE COURT:**  Well, if we're looking not at sort of any

5  third parties, but just the third parties that the FTC has

6  already issued subpoenas to in the case that we're coordinating

7  with, is that something that you will be in a position to go

8  ahead and do subpoenas now on those same folks?

9         **MR. BURKE:**  We would like a little more time to catch

10 up on party discovery to understand what we need to backfill

11 and also get guidance from Judge Schroeder in terms of just

12 what our case is going to look like going forward.

13        **THE COURT:**  So I understand that.  I think, as I

14 said, if you all are not in a position where you're able to do

15 that, what we might do is just say we're doing the discovery on

16 the subpoenas that are in place and make sure that that

17 universe is filled.

18        But just so you all understand, if the third parties

19 come back again and say, look, we've already done this, we

20 can't do this again, I'm going to have to take into account the

21 burden on the third parties.  I mean, that -- it's -- I'm

22 obligated to.  And so the -- and, honestly, it's really going

23 to be the district where those third parties are and the judge

24 there making the initial determination about the level of

25 burden on them.

1              So that's -- I don't know that there's anything -- if

2    you wanted to try to incorporate anything as part of this first

3    round or whether you'd rather just wait and then deal with that

4    when you get to that point?

5              **MR. BURKE:**  I mean, at this point, we could serve

6    blanket subpoenas and just try to cover our bases.

7              **THE COURT:**  Right.

8              **MR. BURKE:**  I'm not sure that the third parties would

9    necessarily be happy with that.

10             **THE COURT:**  Right.

11             **MR. BURKE:**  And I understand you have to weigh, you

12   know, burden issues, and the court where that might be decided,

13   if it's not in this court, would have to weigh --

14             **THE COURT:**  Right.

15             **MR. BURKE:**  -- the burden on third parties.  But we

16   also have a right to take discovery in our case and prove our

17   case up.

18             **THE COURT:**  I mean, subject to the -- right.  Subject

19   to the burden analysis.

20             **MR. BURKE:**  Sure.

21             **THE COURT:**  And so that's what we're trying to

22   determine here.  I think what I'm looking at is, if you look at

23   the FTC subpoenas and you know there's something else that you

24   want, do you want to go ahead and piggyback that as part of

25   this process now?

Case 1:22-cv-00828-TDS-JEP   Document 262   Filed 10/28/24   Page 120 of 173

1          **MR. BURKE:**  Why do it piecemeal, though, when we're

2     going to have a better sense -- I mean, I feel like I'm the kid

3     and that the school bus is going.  Everybody else is in it.

4     I'm running, I'm running, trying to catch up to it.  And I

5     don't like being in that position now.

6          And I feel like every time we're having this

7     colloquy, Your Honor, that I'm giving you answers that you're

8     not happy with because I'm not up to speed like the FTC is, and

9     I'm not up to speed like Corteva and Syngenta is.  But that's

10    reality, and we're trying to do our best.  And we have a ton of

11    people on it.  And if we get production finally from the

12    Defendants, if they start turning over documents, we'll put the

13    necessary people on it.  We'll put the eyeballs on it to get it

14    done.  But we need (indiscernible cross-talk) that process.

15          **THE COURT:**  Well, now I think you took a turn there

16    that I don't think was helpful, and I think that you've already

17    said that you've got all of these documents that you haven't

18    had a chance to review.  So at least in terms of the

19    production, if you're telling me, once we get the production,

20    we'll put more people on it, then I'm going to just ask you why

21    aren't you putting more people on it right now to get the FTC

22    file reviewed?

23          **MR. BURKE:**  Because --

24          **THE COURT:**  I mean --

25          **MR. BURKE:**  -- it's economics, Your Honor.

23MD3062  -- Status conf.  -- 10/24/24

1          **THE COURT:**  But --

2          **MR. BURKE:**  Are we going to put 200 people on it and

3   then -- for two months, and then those folks --

4          **THE COURT:**  But if you're telling me -- Mr. Burke, if

5   you're telling me the problem is they haven't produced

6   documents to you, and that's why you haven't put 200 people on

7   it, then I'm at a loss why you don't just go ahead and put 200

8   people on to at least get caught up on the FTC file.

9          **MR. BURKE:**  We are doing a good job getting caught up

10  to the FTC, but it's reviewing, analyzing, synthesizing, making

11  sense of it.  That's not a process that happens overnight.

12         **THE COURT:**  Well, sure, but then I don't understand

13  why you pivoted to make an accusation against the Defendants.

14         **MR. BURKE:**  Because we need to see the whole picture

15  from the Defendants, and that discovery has been outstanding.

16  But put aside third-party stuff, that stuff's been outstanding

17  for, what, five months?  Three months?

18         **THE COURT:**  Well, I think you're also subject to the

19  protective order issue that we're resolving today as well as

20  any issues regarding the scope of search terms and custodians,

21  which we're here today to resolve as well --

22         **MR. BURKE:**  Okay.

23         **THE COURT:**  -- right?

24         I mean, I think that my concern came when -- on the

25  one hand, I appreciate the number of folks you've got and the

1  progress you're making.  That's a different thing than saying
2  the Defendants haven't turned over information.  And that's
3  what the holdup is, because you're also telling me that you
4  haven't made it through the documents you do have.
5          And so it's -- I'm having a hard time understanding
6  how both are true.
7          **MR. BURKE:**  Yeah.  We'll get through the documents in
8  a time -- according to this schedule, right.
9          **THE COURT:**  Okay.
10         **MR. BURKE:**  With this schedule, we're going to get
11 through those documents that have been produced already.  But
12 in order to get through the rest of the production from the
13 Defendants, we need them ASAP to meet the schedule the court
14 set.
15         **THE COURT:**  Okay.
16         **MR. BURKE:**  That's what I was trying to convey.  And
17 if I didn't convey it correctly, I apologize.  But that will
18 inform, as well as Judge Schroeder's decision, okay -- that
19 will inform the universe of information, at least partly, that
20 we're going to see from third party -- third parties, in
21 addition to what FTC gets and what Arkansas gets, because you
22 don't want us just sending out blank subpoenas, and then we're
23 litigating whether these things are overbroad and somebody
24 says, well, you don't need this; you know, maybe we don't need
25 that, but I don't know now because I'm not sure of everything

1  else that I have.

2        **THE COURT:**  So what I may do is give you the option,

3  if you want to be included in this round of third-party

4  subpoenas and the resolution of any issues on those.  And if

5  you decide to take that option, you can; and, if not, then

6  we'll take up whatever issues might arise later if you do

7  subpoena those same folks again.  And, you know, we'll figure

8  out where we -- where those issues land at that point,

9  including with respect to whatever court that may end up being

10  raised in.  And I think that's all we can do at this point then

11  is just give you that option.

12        **MR. BURKE:**  Sure.  And it may be something in

13  between.  It may be that, in certain respects, we can look at

14  this and say, yes, we know we need that.  In other respects,

15  we're going to hold fire because we'd like to have a little

16  more certainty.

17        **THE COURT:**  Maybe as to some third parties, you may

18  be able to join in.

19        **MR. BURKE:**  Correct.

20        **THE COURT:**  And other third parties you don't yet.

21        **MR. BURKE:**  Correct.

22        **THE COURT:**  Right.  And I think that's what we'll do

23  in terms of giving you the option so you can be on this time

24  frame for the third-party subpoenas, if you wanted to do that.

25        **MR. BURKE:**  Thank you.

1          **THE COURT:**  Okay.  All right.  So what I'll do is ask

2    you all to, as part of a break that we'll take here -- I'm not

3    going to take too long a break because I know you probably all

4    got flights to catch, and I want to try and cover everything

5    that we need to do.  And no promises, though, on that, but

6    we're here today, and today was the day to come back and try

7    and resolve the discovery disputes that you've got and make

8    sure you're on track.

9          So the two things that I think would be helpful for

10   you to do during the break is to firm up a schedule for these

11   third-party subpoenas.  So I want to know when the Government

12   is going to confirm, for the third-party subpoenas that have

13   been served, who those are, and this is the final version that

14   includes everything, and then the amount of time after that

15   that the Defendants in the FTC case have to -- as Defendants in

16   the FTC and the MDL case provide -- well, at least as

17   Defendants in the FTC case, to provide their subpoenas for

18   those same third parties.

19         I would encourage you, the same way as the

20   Plaintiffs, that if you have information that you want in the

21   MDL case, go ahead and include that as well, because I think

22   the more comprehensive it is, the more likely we'll be able to

23   take care of all of it at once, and we won't come back with a

24   later concern of an undue burden on a duplicate or a subsequent

25   Subpoena.

1    And then a deadline soon after that for the

2 Plaintiffs, if they elect to do so in the MDL action, to

3 include their subpoenas for any additional documents that they

4 would want to include.

5    And then if the Plaintiffs in the MDL action need to

6 come back later as to some or all of those third-party

7 defendants, we'll take up separately the question then of undue

8 burden, or the court where they may move to quash would do

9 that.  But I think that to the extent we can do this as a

10 single subpoena or group of subpoenas so the third parties know

11 that that's it that they're obligated on, that would certainly

12 be ideal, and that would be the intent.

13    And then as part of that, you can set a date where

14 you would request or anticipate that the third-party

15 negotiations will be concluded so that the parties can

16 determine how to proceed, whether to move to compel or move to

17 quash, not necessarily as a hard deadline, but just a date for

18 concluding the negotiations so that we know when the

19 productions would start and hopefully soon after be completed,

20 or what the timeline would be for that.

21    Because of the other timelines we're dealing with,

22 I'm anticipating those are very short deadlines.  So the FTC

23 tells us within a week or so that this is it, and we don't have

24 any others for these.  And within a week after that, the MDL --

25 excuse me -- Defendants in the FTC action let us know whether

1  there's anything else and subpoena any additional information.

2  And then a week or two after that, the Plaintiffs, if they

3  elect to on this round, go ahead and issue those subpoenas for

4  those third parties.  And that time frame for those third

5  parties to respond would apply for all of those.  So it gives

6  the Plaintiffs the opportunity to be in on that.

7          So that's the first thing.

8          The second thing is the issues that the Plaintiffs

9  mentioned regarding search terms and custodians.  I did

10 anticipate that this is when we would resolve those.  I

11 understand that those weren't included in the joint report and

12 maybe could or should have been.  But to the extent that has

13 been, as Mr. McClammy noted, a late-developing issue, I would

14 rather resolve the issue than put it off.  If there's something

15 that needs to be briefed or addressed, then we can address

16 that.  But my intent would be to at least hear that.  As part

17 of hearing that, I want to make sure you all have talked about

18 it so we know exactly what the disagreement is.

19         And so I know you haven't had a chance to brief it,

20 but at least to discuss it so I'll be able to know:  Is it over

21 custodians?  And which custodians?  Are there particular

22 custodians?  And who are they?  And why is it that the

23 Plaintiffs want those custodians?  And why do the Defendants

24 think they're not important?  If there are search terms, what

25 are the search terms that the Plaintiffs want?  And why do the

1  Defendants believe those are already covered by the search

2  terms that are being run?

3          So we can at least have that conversation.  In that

4  sense, I'm the one who's most blind because you all know what

5  the discussions are that you've had, but I'd like to hear

6  those, to the extent I can, so we can take care of that today,

7  if possible.

8          Given the time and the tasks that I've given you,

9  what I would intend to do is take what would be otherwise a

10 lunch break for, say, an hour or an hour and 15 minutes, but

11 ask you to use that time not only to get something to eat, but

12 also to have those conversations.

13         There are conference rooms here, and I'll ask the

14 court security officers to make those conference rooms

15 available, if that would be helpful for you all to use, or

16 wherever you might choose to have that conversation.

17         And then we'll come back, if my time is right, at

18 2:00.

19         Is that right, Ms. Garrett?

20         It gives us until 2:00.

21         Okay.  All right.  So let's take a recess until 2:00.

22     (Proceedings recessed.)

23     (Proceedings resumed.)

24         **THE COURT:**  We're back on the record in the MDL and

25 FTC cases.

1          Mr. Marriott, you're standing up.  Do you have

2  something to report for us?

3          **MR. MARRIOTT:**  I do, Your Honor.  I'm standing.  I'm

4  ready to go.

5          **THE COURT:**  Okay.

6          **MR. MARRIOTT:**  I think we have at least two

7  proposals --

8          **THE COURT:**  Okay.

9          **MR. MARRIOTT:**  -- that will -- that will move the

10  number of the issues and perhaps allow us to catch 2:53

11  flights, by way of full disclosure.

12          **THE COURT:**  Okay.

13          **MR. MARRIOTT:**  So the first issue Your Honor asked us

14  to address was some kind of a schedule for timing that would

15  deal with third party --

16          **THE COURT:**  Right.

17          **MR. MARRIOTT:**  So let me describe what I believe all

18  the parties in both actions have agreed to, and then someone

19  can tell me if I've misstated it.

20          **THE COURT:**  Okay.

21          **MR. MARRIOTT:**  The idea, Your Honor, relates, for

22  present purposes, solely to those third parties that have

23  already received subpoenas.

24          **THE COURT:**  Okay.

25          **MR. MARRIOTT:**  And the proposal with respect to those

1  entities or individuals is that we do the following four

2  things:

3         First, on Monday, October 28, the FTC and the States

4  will indicate whether they intend to supplement in any way

5  their subpoena to those entities.

6         **THE COURT:**  Okay.

7         **MR. MARRIOTT:**  On Friday, November 1, the Defendants

8  will do the same.

9         **THE COURT:**  Will supplement any existing?

10        **MR. MARRIOTT:**  We'll either serve -- as to those

11 entities, we'll either serve a subpoena that we haven't already

12 served, or we will indicate in what way we supplement.

13        **THE COURT:**  Okay.

14        **MR. MARRIOTT:**  And then on Friday, November 15, the

15 private Plaintiffs in the class action matter will do the same

16 thing.

17        **THE COURT:**  Okay.

18        **MR. MARRIOTT:**  If they've got something they want to

19 add to those entities being subpoenaed, they'll serve a

20 subpoena and let us know about that.

21        **THE COURT:**  Okay.

22        **MR. MARRIOTT:**  And then, lastly, the proposal is that

23 for December 2 the Court direct us, as parties, to do -- to do

24 what we can to conclude meet-and-confers with these third

25 parties.  We've stopped short of asking the Court or

1  recommending to the Court that there be any kind of a deadline

2  for motions to compel.

3       **THE COURT:**  Right.  And, you know, I will be limited

4  in what I could order the third parties to do anyway.  So I

5  think conclude -- or directing you all to conclude your

6  meet-and-confers and make a determination then, whether it's

7  you all filing a motion to compel or them moving to quash, or

8  whatever the resolution may be -- that the meet-and-confers

9  conclude by December 2?

10      **MR. MARRIOTT:**  Correct.

11      **THE COURT:**  Okay.

12      **MR. MARRIOTT:**  That's the proposal as it relates to

13  that issue.

14      **THE COURT:**  That seems reasonable.  My initial

15  thought before we came in here was that maybe I would need to

16  set a date for resolving those things.  But, as we've

17  discussed, that's going to have to go to whatever court the

18  service is required in as an initial matter, and so I'm not

19  going to set any other dates for hearings or any other issues

20  on that.

21      Let me -- for the Plaintiffs in the MDL, anything to

22  be heard as to that agreement?

23      **MR. BURKE:**  No, Your Honor.  That accurately states

24  the agreement.

25      **THE COURT:**  Okay.  And for the FTC?

23MD3062  --  Status conf.  --  10/24/24

1          MS. GILLEN:  Thanks, Your Honor.  That accurately

2     states the agreement.  I'll just offer one caveat.

3          You know, the FTC is prepared to provide on Monday a

4     list of the third parties to which we have served subpoenas and

5     confirm, you know, that we do not intend to supplement those.

6          I'll just add that we've asked there be a good cause

7     exception built into that, that if we learn of some additional

8     discrete detail down the road, once we start reviewing

9     Defendant documents, it may be that we have a very targeted

10    additional request to a third party.  That's entirely

11    hypothetical right now.  I'll just note that for the record.

12         THE COURT:  I think it's fair to note.  I think

13    that's built in for everyone, that there's always that

14    possibility.

15         And as I indicated before, I think then the analysis

16    would just be in terms of -- if it's creating an additional

17    burden on the third parties that they believe is an undue

18    burden, then that would be something that they could raise at

19    that point and consider -- and I could consider, if it comes to

20    me, or whatever court is hearing or making that determination.

21    But I think that -- I think that's built in, and I appreciate

22    you flagging that as well.

23         Anything else as to that schedule?

24         MS. GILLEN:  Nothing else.  We agree to the schedule.

25    Thank you.

1          THE COURT:  Okay.  All right.  And, Mr. McClammy, are

2    you in agreement as well?

3          MR. McCLAMMY:  Yes, Your Honor.

4          THE COURT:  Okay.  So, Mr. Marriott, I appreciate

5    that.  We'll put that issue succinctly to conclusion.  And so I

6    will adopt that proposal.  And it may be helpful to memorialize

7    that, and so if you could submit that to me.  I think those

8    deadlines will still apply, even if I have not entered that

9    order.  But if you could submit a proposed order that would let

10   that be added to the docket so that I've got your language and

11   we're all clear on --

12         MR. MARRIOTT:  I'm happy to do that.

13         THE COURT:  -- what those deadlines are and what

14   applies there.

15         Okay.  All right.  And did you have another matter

16   for me as well?

17         MR. MARRIOTT:  I do.

18         THE COURT:  Okay.

19         MR. MARRIOTT:  I have one more proposal.  So the

20   other and only remaining issue, as it relates to Corteva, was

21   the Plaintiffs -- in the private action, the Plaintiffs'

22   document requests to Corteva, and we have come to an

23   understanding that resolves all disputes as to those requests

24   by Corteva agreeing to do basically add four for custodians.

25   And those custodians are Brian Mack, David Rich, Devin Bird,

1  and Greg Webster.  And Mr. Mack was a custodian in connection

2  with the FTC matter.  So with respect to him, we would simply

3  be updating the production since the conclusion of the FTC

4  proceeding.  And that resolves -- the FTC investigation.  That

5  resolves all issues as to those requests, Your Honor.

6          **THE COURT:**  All right.  And there's not any other

7  issues regarding search terms?

8          **MR. MARRIOTT:**  All resolved.

9          **THE COURT:**  All resolved.

10          And you said as to Corteva.  Is there anything else

11  as to Syngenta I need to address?

12          **MR. McCLAMMY:**  I'm not yet certain, Your Honor.  But

13  we did have ultimately productive discussions during the break,

14  and I'm hopeful a similar resolution can be reached.  I've got

15  folks that are trying to reach our client as we speak.

16          **THE COURT:**  Okay.

17          **MR. McCLAMMY:**  I can suggest maybe either two

18  options.  We spoke already about the potential of maybe just

19  having a 10-minute adjournment to see if we can finalize it.

20          **THE COURT:**  Okay.

21          **MR. McCLAMMY:**  Or I can propose that we could present

22  the proposal on the record here as what we are considering.

23  And if that works -- if we find out, you know, by the end of

24  the day today, for example, that that works, then I think we're

25  fine.  Otherwise, I think we would need to set another time to

1  be back in front of Your Honor on that.

2          THE COURT:  Okay.  So I am -- if it's just a matter

3  of a 10-minute break, I'm happy to do that.  I'm not sure what

4  that means for folks' flights, but I'm happy to do that because

5  I would like to resolve everything today, if we could.

6          With regard to anything -- so just to help me

7  understand where we are, you all have made a proposal -- or

8  they've made a proposal, and you just need to get your client's

9  okay?

10         MR. McCLAMMY:  Exactly.  That's right, Your Honor.

11         THE COURT:  Okay.  And I just need to give you a

12 chance to make sure you've gotten through to somebody who can

13 give you the okay on that?

14         MR. McCLAMMY:  Exactly.

15         THE COURT:  And is that just regarding custodians or

16 search terms, or both?

17         MR. McCLAMMY:  If my understanding is similar to

18 Corteva, then that would resolve all outstanding issues.

19         THE COURT:  The proposal?

20         MR. McCLAMMY:  With respect -- that proposal would

21 resolve all outstanding issues with respect to the requests for

22 production that have been issued so far.

23         THE COURT:  Okay.  And just to make sure that there's

24 not any misunderstandings, what is the proposal that you've got

25 out there for consideration?

1        MR. McCLAMMY:  It is similar in nature.  It is four

2   custodians that we would be adding to our list.  Let me just

3   make sure that I've got all of the names correctly.

4        Or, Mr. Labeat --

5        MR. RRAHMANI:  Sorry?

6        MR. McCLAMMY:  I'm sorry.  Mr. Rrahmani, do you have

7   the list of the four handy?

8        MR. RRAHMANI:  I do.

9        MR. McCLAMMY:  Okay.

10       THE COURT:  All right.  Yes, sir, Mr. Rrahmani.

11       MR. RRAHMANI:  Labeat Rrahmani again.

12       The list is Trevor Heck, Carl Kessler, Lynn Sandlin,

13  and Greg -- I'm sorry -- Gil Strader.

14       THE COURT:  Okay.  All right.  Good.  Thank you.

15       And, Mr. McClammy, anything in terms of search terms,

16  or just adding those custodians?

17       MR. McCLAMMY:  My understanding is that it would just

18  be adding those four custodians with the search terms that

19  we've shared already.

20       THE COURT:  Okay.  All right.  Very good.

21       And so, Mr. Rrahmani, let me just make sure.  As to

22  both Corteva and Syngenta, would adding, for each of them, the

23  four custodians that have been listed resolve the disputes or

24  the issues that you've got?

25       MR. RRAHMANI:  I do have one caveat that I don't know

1  if we've reached resolution on.  They've objected to the

2  definition of relevant AI in such a way that Corteva interprets

3  it -- interprets it to only apply to the three relevant AI

4  (indiscernible/paper shuffling over microphone) Corteva at

5  issue, and Syngenta construes that term to only apply to the

6  six at issue for Syngenta, with the understanding that they

7  would add all nine to each of that definition.  I think that

8  would resolve the issue.

9        **THE COURT:**  Okay.  And I think I understand, but just

10  to make sure and think through.  So is the idea that Corteva

11  says only their three AIs are the relevant, so they're not

12  searching for any of Syngenta's six; and Syngenta says their

13  six are relevant, so they're not searching for any of Corteva's

14  three, and they want both of them to be searching if they have

15  any documents that include the other's AI?

16        **MR. RRAHMANI:**  Right.

17        **THE COURT:**  Is that accurate?

18        **MR. RRAHMANI:**  Yes.

19        **THE COURT:**  Okay.

20        **MR. RRAHMANI:**  And what they do with the AIs of the

21  other and how they monitor that market is relevant to not only

22  their own -- the ones that they each manufacture, but the ones

23  that they're in competition with.

24        **THE COURT:**  Okay.  So let me see where they are on

25  that.

1          Mr. Marriott?

2          **MR. MARRIOTT:**  Yeah, I'm sorry, that's not the deal.

3  I mean, we had a deal, and there was no mention of that at all.

4  And, in fact, what that effectively does is change the search

5  terms.  So that is -- that is not something that is acceptable

6  to us, Your Honor.  It wasn't in any way discussed or raised.

7  I'm hearing about it for the first time now.  And so I'm afraid

8  not.

9          **THE COURT:**  Okay.

10         **MR. MARRIOTT:**  That changes -- that changes the

11  entire mix.  We've been using the same terms and protocol.  We

12  are using a TAR model that's trained on what it's trained on.

13         **THE COURT:**  Okay.

14         **MR. MARRIOTT:**  And that effectively upsets the entire

15  thing.

16         **THE COURT:**  Right.  Changes --

17         **MR. MARRIOTT:**  It isn't to say that they're not going

18  to get plenty of documents that deal with those -- those --

19  they're not even our products -- that deal with the products of

20  Syngenta, but not because we've specifically gone out and

21  searched just for those.  They're their products, Syngenta's.

22  They're not Corteva's.

23         **THE COURT:**  Okay.

24         **MR. MARRIOTT:**  That's a problem.

25         **THE COURT:**  What about this, Mr. Marriott?  If it

1  doesn't change the search terms, so you just keep the same

2  search terms, but as you're then reviewing for production --

3  and I don't know how your production works.  You automatically

4  produce everything with the search terms?

5          **MR. MARRIOTT:**  We use the TAR model --

6          **THE COURT:**  Okay.

7          **MR. MARRIOTT:**  -- Your Honor, that has been trained

8  based on what it's been trained on.  And I don't -- I don't

9  believe it's been based on the Syngenta products, because

10 they're not asserted as to Corteva.

11         **THE COURT:**  And then you take whatever that TAR model

12 does or produces or concludes, and that's what you produce?

13 You don't do any of your own manual review?

14         **MR. MARRIOTT:**  I'm not sure I would say that, Your

15 Honor.  I would need to double-check --

16         **THE COURT:**  Okay.  Let me --

17     (Indiscernible cross-talk.)

18         **MR. MARRIOTT:**  I don't want to --

19         **THE COURT:**  No, that's okay.  I'll give you a minute.

20 I want to make sure.

21     (Counsel conferred.)

22         **MR. MARRIOTT:**  Yeah, there is manual review out

23 there.

24         **THE COURT:**  Okay.  So if we just said that, for the

25 purposes of the final manual review, you're including documents

                    23MD3062  -- Status conf.  -- 10/24/24

1 that cover all of the nine of the AIs so that, I guess my point

2 being, you're not excluding from the production something that

3 just includes Syngenta's AIs or Syngenta's products because

4 yours aren't mentioned?

5     **MR. MARRIOTT:** I mean, there's certainly not a plan

6 to do that.

7     **THE COURT:** Right.

8     **MR. MARRIOTT:** We wouldn't be looking at them for

9 that purpose.

10     **THE COURT:** Right.

11     **MR. MARRIOTT:** So how much -- how much more does that

12 add to --

13     **THE COURT:** Right.

14     **MR. MARRIOTT:** What I don't want to do is then be

15 under an obligation now, for every one of those that comes out

16 of the TAR model, to be specifically looking for six AIs that

17 we have essentially nothing to do with.

18     **THE COURT:** Right.

19     **MR. MARRIOTT:** Right.

20     That's the challenge.

21     **THE COURT:** Right.

22     **MR. MARRIOTT:** So, again, we're not trying to -- I

23 think there are going to be plenty of documents, presumably,

24 that talk about the markets generally that will have a lot of

25 products in it.

1          **THE COURT:**  Right.

2          **MR. MARRIOTT:**  I don't know that we have much to do

3     with those at all, some narrower exceptions, but they're not

4     our products.

5          **THE COURT:**  Right.  Right.  Right.  So, well, let me

6     hear from Mr. McClammy as well.

7          Mr. McClammy.

8          **MR. McCLAMMY:**  I think we're in a similar position as

9     Mr. Marriott with respect to hearing that this did not resolve

10    everything.

11         But that being said, as long as we're not changing

12    the search term universe --

13         **THE COURT:**  Right.

14         **MR. McCLAMMY:**  -- our review protocol is such that

15    we're not, for example, kicking something out of the production

16    population because it only mentions a Corteva product --

17         **THE COURT:**  Right.

18         **MR. McCLAMMY:**  -- if it hits on other, you know,

19    relevant terms, and it's, therefore, you know, something we

20    might have otherwise produced if it had said a Syngenta

21    product.

22         **THE COURT:**  Right.

23         **MR. McCLAMMY:**  So I think that it's covered in that

24    way.

25         **THE COURT:**  Right.

 1          MR. McCLAMMY:  But changing the search terms at this

 2   stage and perhaps having to go back and recollect and all of

 3   that would be an immensely burdensome undertaking.

 4          THE COURT:  Right.

 5          MR. McCLAMMY:  And how that impacts the numbers I

 6   couldn't even suggest at this point in time.

 7          THE COURT:  Right.  Right.

 8          But, generally speaking, you're capped -- by the

 9   search terms you're doing, you're capturing the relevant

10   material that includes both Syngenta and Corteva products,

11   essentially?

12          MR. McCLAMMY:  I think that's just a natural part of

13   that process.

14          THE COURT:  Inherently, right.

15          MR. McCLAMMY:  It's not just picking up only Syngenta

16   products or even only Corteva products, it's other

17   manufacturers as well.

18          THE COURT:  Okay.  All right.  All right.

19          So, Mr. Rrahmani, you know, I think there are --

20   there are benefits to using this AI-type or trained-type search

21   model, but changing search terms now could create a lot of

22   issues or problems for how those models have worked or what the

23   production might involve.  And so I do have some concern about

24   that.

25          But I want to be sort of sensitive to that

1  possibility of how we get the information that you're looking

2  for, at least on the back end, so that, you know, a search goes

3  through, and it's collecting this -- all this material and

4  information.  If there's some manual review, I wouldn't expect

5  that they're holding back documents or pulling out documents as

6  not relevant because they relate to Syngenta instead of Corteva

7  or Corteva instead of Syngenta.

8         Does that address the primary concern that you have

9  there?

10        **MR. RRAHMANI:**  As to Corteva, my understanding is

11 that they're not using search terms at all.  They're using the

12 TAR only.  So I don't know what the issue is as far as Corteva

13 is concerned.  They're going to be reviewing this stuff anyway.

14        For Syngenta, I'm a little bit more sympathetic, but

15 we've been very clear, since the outset of our negotiations,

16 the definition of relevant AI is all things that are subject to

17 the loyalty programs in this case.  We have narrowed that to

18 this nine at issue here today.

19        **THE COURT:**  So before I go too far down on that, did

20 you all not discuss this already?  Or what's the status on

21 that?

22        **MR. RRAHMANI:**  We've discussed this on

23 meet-and-confers, and I made my decision very clear.  It's

24 surprising to me that Defendants are now claiming that this is

25 coming out of nowhere.

1           **THE COURT:**  So what we may need to do is take the --

2   as far as the custodians go, that covers everything with the

3   custodians, and there's not any other search terms you're going

4   to come back and tell me about?  This is just -- this is it,

5   right, just the -- making sure we've got everything as to all

6   of the products and --

7           **MR. RRAHMANI:**  And --

8           **THE COURT:**  What's that?

9           **MR. RRAHMANI:**  The products at issue.

10          **THE COURT:**  At issue, right, these nine products --

11  or nine AIs, I guess, is the more specific term.

12          But how we do that or how we get that, in light of

13  where we are now in discovery, is something that we would need

14  to address in terms of how -- if or how that could happen or

15  work.

16          I'm going to hear from them again.  If we need to

17  take a 10-minute break anyway to confirm Syngenta's custodians,

18  we can do that.  But I'll let you all then talk again or try to

19  determine where the -- where the disconnect is that's happening

20  here on this.

21          But, Mr. Marriott, can you talk to me again a little

22  more specifically about how your search process works and

23  why -- or the issues that would be created if we try to include

24  the Syngenta products, in addition?

25          **MR. MARRIOTT:**  Sure, Your Honor.  And I think there's

1 two principal issues here.

2        **THE COURT:** Okay.

3        **MR. MARRIOTT:** Look, let me just start with the one

4 that's not the direct answer to Your Honor's question but I

5 think will at least illustrate the challenge from our

6 perspective, given where this discussion is now going.

7        So the document requests are pretty broad, and

8 they're pretty sensitive. And the parties have had

9 back-and-forth with respect to document requests for a

10 considerable period of time. We've met and conferred.

11        A bunch of issues come up in meet-and-confers, okay.

12 But when we broke, at Your Honor's direction, and we met and

13 conferred there, and then we had a deal. The deal took all of

14 this entirely off the table.

15        **THE COURT:** Okay.

16        **MR. MARRIOTT:** I'm not disputing that the issue

17 hasn't arisen in the past as to search terms and TAR. True,

18 but entirely irrelevant. We had a deal, and I described the

19 deal. And then an entirely new deal, when that was taken off

20 the table, is introduced. It was not in any way, shape, or

21 form discussed during lunch at all.

22        So there's just a fundamental principle -- either we

23 have a deal or not. No, we have a deal. And now that I've got

24 you where I like you, let's come in and let me now negotiate as

25 if you -- as if that's a given.

 1          So I have a fundamental problem with the nature of

 2  the exchange.

 3          **THE COURT:**  Right.  If this is now on the table, then

 4  the custodians are back on the table, too?

 5          **MR. MARRIOTT:**  Exactly.

 6          **THE COURT:**  Right.

 7          **MR. MARRIOTT:**  Because our view, frankly, Your Honor,

 8  is that none of this -- they shouldn't have any of this.

 9          **THE COURT:**  Right.

10          **MR. MARRIOTT:**  The FTC and the States are no

11  pushovers.

12          **THE COURT:**  Right.

13          **MR. MARRIOTT:**  They negotiated hard.

14          **THE COURT:**  Right.

15          **MR. MARRIOTT:**  They negotiated for 35-some

16  custodians, massive numbers of documents.  So we don't think

17  any of it matters --

18          **THE COURT:**  Right.

19          **MR. MARRIOTT:**  -- in terms of, like, adding to what

20  the mix is.  But is it -- in the spirit of compromise to get

21  done and to be finished, we agreed to that.  And that's now

22  being turned into, well, this is now the floor.  Let's go see

23  what more we can get.  I have a problem with that.

24          **THE COURT:**  Okay.  Well -- and so I'll put -- on that

25  point, fair enough.  What I'll at least give you is this:  If

                  23MD3062  --  Status conf.  --  10/24/24

1 this is, in fact, another issue that still needs to be

2 resolved, then I will assume that I'm not holding you to the

3 four additional custodians.  That's back on the table as well,

4 because you only agreed to that in exchange for everything else

5 being resolved or your understanding that everything else was

6 resolved.

7         **MR. MARRIOTT:**  Correct.

8         **THE COURT:**  So if we're back to considering this,

9 then we'll take up the separate question of whether any or some

10 of the four custodians should be included in the mix as well.

11         Now, with that sort of said, what's the sort of

12 situation with adding search terms or how this works for you

13 all?

14         **MR. MARRIOTT:**  Thank you, Your Honor.

15         So to Your Honor's first question --

16         **THE COURT:**  Okay.

17         **MR. MARRIOTT:**  -- so on August 26, the Defendants

18 served responses and objections, and in that we agreed to

19 custodians and a TAR protocol that we would provide.  It's the

20 same protocol we've used with the States and the FTC.

21         **THE COURT:**  Okay.

22         **MR. MARRIOTT:**  We're not trying to do something

23 different with respect to these folks.

24         And on September 26, we met and conferred, and there

25 was no mention made by the Plaintiffs of any issue with respect

1  to our TAR protocol, none.  We've never received any direct

2  feedback with respect to the TAR protocol.  No comments on the

3  TAR protocol at all.

4          So we aren't using search terms.  We're using a TAR

5  protocol, Your Honor, which requires that you train a model to

6  understand, based on various concepts, what is and is not

7  responsible.  That training -- that training has happened.  We

8  are proceeding on the basis of that training.

9          And so, you know, this isn't just a matter of let's

10 add a search term.  What it's -- what this would do is

11 effectively cause us to have to revisit the training of the

12 model, which has been used in the past, which has been used

13 with others.  It potentially compromises the integrity of the

14 model.  So it's not -- it's not a matter of just let's add a

15 search term.

16          And as I say, if there was any issue with respect to

17 the TAR protocol and the approach, that could have been raised

18 a really long time ago, and it wasn't.  In fact, it never has

19 been, other than to indirectly suggest here that, you know,

20 this is just like a search term, so we should just add a couple

21 AIs in.  And it doesn't work like that.

22          **THE COURT:**  Okay.  Now, is this model that you

23 trained, is it now the one that you -- and I'm not sure exactly

24 how your technology works.  Is it the same model that you

25 trained on the FTC search, and you're using the same thing?  Or

1    did you retrain it starting in September for this particular --

2    **MR. MARRIOTT:**  We trained it for purposes of these

3    combined actions, because, from our perspective, the issues and

4    the discovery is basically the same.

5    **THE COURT:**  Okay.

6    **MR. MARRIOTT:**  The custodians -- you know, the

7    issues, from our perspective, are the same, the same

8    fundamental issues, and the people who have documents related

9    to any issues that are specific to one are the same people.

10    **THE COURT:**  Okay.  And so it's -- the training that

11    you've done on this model, where did that start?  Is that from

12    way back when you were first responding to the FTC action, or

13    is that in response to the FTC interrogatories or requests?

14    **MR. MARRIOTT:**  May I?

15    **THE COURT:**  Sure, of course.

16    (Counsel conferred.)

17    **MR. MARRIOTT:**  So the model, Your Honor, is the model

18    that's been trained for this particular matter and was not used

19    in connection with the -- with what was collected for the FTC.

20    **THE COURT:**  Okay.

21    **MR. MARRIOTT:**  So it's trained over the -- it's been

22    trained in the months since we had the requests from the

23    Plaintiffs and since we shared the protocol.

24    **THE COURT:**  Okay.

25    **MR. MARRIOTT:**  But the protocol was shared.  No

1  direct feedback was given.  We've undertaken to execute on the

2  protocol.

3          **THE COURT:**  For the last month or so since -- or two

4  months since the responses in August and the meet-and-confer in

5  September?

6          **MR. MARRIOTT:**  Correct.

7          **THE COURT:**  Okay.  Okay.  I think that's helpful to

8  know and understand a little bit.

9          Did you want to respond then?

10         **MR. RRAHMANI:**  I do.

11         **THE COURT:**  Okay.

12         **MR. RRAHMANI:**  I will just note for the record that

13 during the meet-and-confer with Corteva on October 14, 2024, I

14 know there were concerns with TAR -- their TAR proposal, to

15 follow it up by email saying that we would propose an

16 alternative.  This isn't something that we're just doing at

17 this last, final hour.  They've known that we were going to

18 negotiate the reasonable parameters of the search.

19         **THE COURT:**  So, you know, I think to their point,

20 their understanding was there was an agreement, and it included

21 the custodians.  And so if there's not an agreement, then we'll

22 start with the custodians and go through who those folks are

23 and whether to add them or not.

24         I think there's a separate question, of course, on --

25 if we're looking at how their proposal -- or what their

proposal is, whether they need to redo the model, because, of course, that potentially delays everything for at least 30 days, that they've lost this time, that they've started working on it since September.

So that's just something that you have to address, too, in terms of if the -- if the priority is getting the documents sooner, then you may want to keep the protocol that's already trained.  If the priority is getting a different model trained, then you would sort of build in the need to then expedite review on the back end, because it's going to add another 30 days before the production can be made.

**MR. RRAHMANI:**  I understand.

The point I'm trying to draw attention to is we're not contesting the metrics they provided as far as their TAR protocol.  We're letting them leave that in place.  What we're saying is that when you define relevant AI, it needs to encompass all nine of these AIs.  We made that clear in correspondence that we sent back, in meet-and-confer letters to Corteva.  When they sent us our -- their responses and objections, they said, we're going to construe this to only include these three terms.  We said, that's not going to work with us.

They've known this since the outset of these negotiations.  This isn't a surprise.

**THE COURT:**  Well, and so again, I think that it

1  sounds like, though, they're going to still have to retrain

2  their model; right?  I mean, whatever that means for time-wise,

3  it's just going to take that extra time from now to make that

4  retraining; right?

5          MR. RRAHMANI:  My point is I don't know why they

6  didn't train it according to their narrow definition when we

7  told them for months we want -- you're not -- we're not

8  satisfied with the three.

9          THE COURT:  "For months" being since when?

10         MR. RRAHMANI:  September 26.

11         THE COURT:  So it's September 26 when their

12 understanding was there wasn't any mention or issue of the TAR

13 protocol, but you will contend that there was?

14     (Counsel conferred.)

15         MR. RRAHMANI:  It's not necessarily about the TAR

16 protocol.  It's about the definitions that govern all of

17 discovery.

18         THE COURT:  Okay.  But that would -- so it -- maybe

19 giving everyone the benefit of the doubt, there was some

20 misunderstanding as to whether your objections -- or lack of

21 objection to the TAR protocol and an objection as to the

22 relevant AIs meant that you weren't objecting to protocol, and

23 they should just go ahead and start modeling their training

24 model, when, in fact, if that would have affected the way they

25 trained it, then you were having an objection on that?

1          **MR. RRAHMANI:**  And I just want to be clear, in the

2    meet-and-confer discussions, we've told counsel we want to work

3    with them on their TAR protocol so that we can have an

4    efficient review.  We don't want to create problems, but we've

5    been clear from the outset that it included these nine AIs.

6          **THE COURT:**  Okay.  So let's -- as I said, let's

7    assume we're giving everybody the benefit of the doubt, that

8    there was some misunderstanding there as to what your objection

9    meant and their understanding of your lack of objection to the

10   TAR protocol.

11          If that's the case, I think that there's still the

12   question of whether they should have to include all of those,

13   and also as a practical -- all of those, meaning all nine, as

14   opposed to just their own -- whether there's a practical sort

15   of delay on that just -- if we're going to say, okay, now,

16   start training now, but the reality is there's going to be

17   extra time built in on that before you get to production.  And

18   then coming back around, obviously, to the custodians as well.

19          Now, if you want to try to work out an agreement as

20   to all of those things, I think they understood, again, giving

21   everyone the benefit of the doubt -- understood that the

22   agreement that you all reached during the lunch break covered

23   everything, including that.

24          I think that -- I mean, certainly it was my intent

25   that if you had any issues, that you all would have raised it

1  and discussed it during the lunch break, because this was the

2  time to have those issues heard.

3        I can go through and hear all of them -- all of the

4  custodian issues and what the training should be and the

5  searches should be and how that affects either or both of the

6  Defendants.  But I can also give you a chance to try to talk

7  about those things if you haven't done that.

8        Was that raised during the lunch or -- and if not,

9  why not?

10       **MR. RRAHMANI:**  It wasn't raised by us.  It wasn't

11  raised by defense counsel.

12       **THE COURT:**  Well, I think they believed everything

13  was resolved.

14       **MR. RRAHMANI:**  I understood that we were resolving

15  custodians, which was the thing that we were discussing.

16       **THE COURT:**  Well, I think from the time we set this

17  back in May, the idea is we're resolving everything today --

18  search terms, custodians, anything that would be an issue -- to

19  make sure everything's moving forward.

20       So, yes, ma'am?

21       **MS. MacLEAN:**  I'm so sorry.  I think it just -- I

22  think it's probably a question of misunderstanding, of people

23  shoveling messages around.  There was not an intent to

24  blindside or to confuse anyone.

25       **THE COURT:**  Okay.  So, again, giving everybody the

 1  benefit of the doubt, there was maybe a misunderstanding there.

 2  Certainly my intent is that we're going to resolve and address

 3  all of it today.

 4          I certainly understand why defense counsel believed

 5  they had an agreement that resolved everything.  But if it

 6  doesn't, then, obviously, I'm not holding them to the agreement

 7  on the custodians.  And we'll hear all of it, but the intent is

 8  to hear all of it today.

 9          So I'm going to give you all another -- and I know

10  that means issues for people catching flights.  But we're here

11  today in order to resolve that.  Rather than shoveling

12  messages, you can all just stay in the courtroom and have the

13  conversations here to make sure everybody's on the same page.

14          And then, Mr. McClammy, I didn't hear it from you

15  specifically on how this affects your -- we talked about the --

16  training the model.  Did you want to add anything as to how

17  that affects you in terms of search terms?

18          **MR. McCLAMMY:**  Sure.  I mean, it's simply a different

19  impact, but it's -- it's unusually burdensome to have to go

20  back now, add search terms.  If we collect and rerun, you know,

21  the search terms to put things into the system for one, then

22  that will take time.  And then not knowing what the numbers

23  are -- you know, one of the reasons why we agreed to the

24  addition of the four custodians -- that's another additional

25  burden --

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | **THE COURT:**  Right.                                                |
| 2  | **MR. McCLAMMY:**  -- we're going to have to take on                  |
| 3  | beyond this -- is that we thought it satisfied Plaintiffs with        |
| 4  | respect to all of the issues.                                        |
| 5  | **THE COURT:**  Right.                                                |
| 6  | **MR. McCLAMMY:**  So there's only but so much burden we             |
| 7  | can --                                                                |
| 8  | **THE COURT:**  Right.                                                |
| 9  | **MR. McCLAMMY:**  -- agree to do and still get                      |
| 10 | everything done on the schedule that we've got.  And my concern      |
| 11 | is that if we start collecting based on new search terms now,        |
| 12 | after undertaking a similar process, which is having served          |
| 13 | responses and objections to the second request for production        |
| 14 | in August --                                                         |
| 15 | **THE COURT:**  I want to make sure you all hear what                |
| 16 | Mr. McClammy is saying, too.                                          |
| 17 | Okay.  All right.                                                    |
| 18 | **MR. McCLAMMY:**  Having served our responses and                  |
| 19 | objections in August, offered to meet and confer on those            |
| 20 | responses and objections, not hearing from Plaintiffs until the      |
| 21 | end of September that they would like to meet and confer,            |
| 22 | meeting and conferring with them in October, we are running out      |
| 23 | of time to get everything set, which is one of the reasons why       |
| 24 | we thought coming in here -- anything that they were going to        |
| 25 | raise would have been set out.                                       |

1          And, yes, there have been differences all along.

2    They've been spoken about in some of the meet-and-confers.  But

3    to the extent that they didn't seek to affirmatively raise that

4    issue, our understanding is that we are moving forward with

5    what we proposed in our search protocol and in our responses

6    and objections.

7          **THE COURT:**  So as far as your search terms or your

8    searching goes, are these the same terms you've used

9    previously?  Or these are new terms that you all have worked

10   out for this MDL litigation?

11         **MR. McCLAMMY:**  These are new terms that we've worked

12   out for both the FTC and the MDL litigation.

13         **THE COURT:**  All right.

14         **MR. McCLAMMY:**  We, for sure -- when we were first

15   starting to negotiate with the FTC, we were limiting things to

16   the FTC AIs.

17         **THE COURT:**  Right.

18         **MR. McCLAMMY:**  But we've made a point to make sure

19   that we've included in our process the AIs that are the

20   additional AIs covered in the MDL complaint as well.

21         So it's not as though we're coming here and saying,

22   we've reached an agreement with the FTC; we're not even

23   searching for the AIs in the MDL action.  We are, for sure,

24   including those.

25         **THE COURT:**  Okay.  And have you already run search

1 terms and collected things at this point?

2      MR. McCLAMMY:  Yes.  We are well underway.  We've got

3 a review population of over a million documents --

4      THE COURT:  Okay.

5      MR. McCLAMMY:  -- that we are going through now, and

6 adding four custodians would be on top of that.

7      THE COURT:  And I think that's fair.  When I'm

8 looking at the undue burden or the burdensomeness, I will look

9 at the burden of adding custodians and rerunning searches or

10 retraining models and what the extent of the burden would be on

11 that and the time that we have, because to the extent it -- I'm

12 not intending to extend the discovery time, so the extent to

13 which all of that can be completed within the discovery period

14 that we have.

15      It is unlikely that we're going to do -- add

16 custodians and add search terms or retrain models.  That's -- I

17 understand the idea that that's a lot of additional potential

18 discovery and potential delay.  But what I would want to hear

19 from them is the rationale or reasoning.  And then I can hear

20 from you all sort of the extent to which you believe that the

21 searches you're doing already capture those things, to the

22 extent you can.

23      Yes, ma'am?

24      MS. MacLEAN:  So sorry to interrupt.

25      THE COURT:  It's all right.

1    **MS. MacLEAN:** But I think it's something you want to
2  hear.  I think we can short-circuit this, and we can take that
3  AI issue off the table.  We can just go with the custodians as
4  we discussed.

5           **THE COURT:** Okay.  All right.

6           **MS. MacLEAN:** Assuming that Mr. McClammy has
7  confirmation that we can get those.

8           **THE COURT:** Right.

9           **MR. McCLAMMY:** If I can just have maybe five, ten
10 minutes just to make sure I can contact the client.

11          **THE COURT:** Let's do that.

12          Okay.  Well, it's good we put this on the record then
13 so that we make sure that we've covered everything.

14          And for Plaintiffs then, just to make sure we're
15 clear, that if we add those four custodians each for Corteva
16 and Syngenta, which was their offer to resolve the issues, then
17 that resolves everything in terms of search terms and
18 custodians, and we'll move forward with the document production
19 and be able to get that underway.

20          Is that right, Ms. MacLean?

21          **MS. MacLEAN:** Yes.  That would cover custodians and
22 then TAR as far as Corteva and search terms as far as Syngenta.

23          **THE COURT:** Okay.  Right.  And I used "search terms"
24 broadly there, but, yes, for all of the electronic search
25 protocols that might be in place.

23MD3062  -- Status conf.  -- 10/24/24

1          All right.  Well, let's -- anything else then before

2    we take a break to do that?

3          Mr. Marriott?

4          **MR. MARRIOTT:**  Nothing here, Your Honor.

5          **THE COURT:**  All right.  Mr. McClammy?

6          **MR. McCLAMMY:**  Not at the moment, Your Honor.

7          **THE COURT:**  All right.  And let me ask the FTC.

8    Anything you needed to add or weigh in on anything?

9          **MS. GILLEN:**  Nothing here.

10         **THE COURT:**  Okay.  All right.  Let's take a 5-minute

11   break.  We'll see if we can get that confirmed.  And then we'll

12   run through the deadlines that we've got for what I can expect

13   for orders that I might need from folks.

14         Let's take a 5-minute recess.

15      (Proceedings recessed.)

16      (Proceedings resumed.)

17         **THE COURT:**  Were you able to reach the folks that you

18   needed to reach, Mr. McClammy?

19         **MR. McCLAMMY:**  Yes, Your Honor.

20         **THE COURT:**  Okay.

21         **MR. McCLAMMY:**  We have gotten confirmation from our

22   client that even with the additional burden, in the interest of

23   not burdening this Court further, in the interest of reaching

24   compromise and moving on, we can -- we can agree to the four

25   custodians that were mentioned on the record and adding them to

1  our process.

2          **THE COURT:**  Okay.  All right.  Very good.

3          And, Mr. Marriott, it still would be your position to

4  add those four custodians to resolve the issue as well?

5          **MR. MARRIOTT:**  Different four, but yes.

6          **THE COURT:**  Yes, yes, absolutely.

7          **MR. MARRIOTT:**  But if they want to just add those,

8  that's fine.  But I don't think that was -- I don't think that

9  was the deal.

10          **THE COURT:**  I don't think that was the deal, no.

11          So to confirm, Corteva is going to add the four

12  custodians, and I don't know if I can make my handwriting --

13  Brian Mack -- Mark, David Rich, Devin Bird, and Mr. Webster.

14          Is that right?

15          **MR. MARRIOTT:**  And it's Brian Mack.

16          **THE COURT:**  Mack.  Okay.

17          And then Syngenta is going to add Mr. Heck, Mr. -- is

18  it Kepler?  Kessler?

19          **MR. McCLAMMY:**  Kessler.

20          **THE COURT:**  -- Sandlin and Strader.

21          Is that right?

22          **MR. McCLAMMY:**  That's correct, Your Honor.

23          **THE COURT:**  Okay.  And with the addition of those

24  four custodians, that would resolve any issues related to

25  custody -- custodians or searches in order to respond to the

1    requests for production.

2              Is that your understanding, Mr. McClammy?

3              **MR. McCLAMMY:**  That's my understanding, Your Honor.

4              **THE COURT:**  Mr. Marriott?

5              **MR. MARRIOTT:**  Anything else?

6              **THE COURT:**  Right.  Anything related to the requests

7    for production of documents?

8              **MR. MARRIOTT:**  Correct, Your Honor.

9              **THE COURT:**  All right.  Is that Plaintiffs'

10   understanding?  Mr. Rrahmani or Ms. MacLean?

11             **MS. MacLEAN:**  Yes, Your Honor.

12             **THE COURT:**  Okay.  All right.  Very good.

13             And then -- so that takes care of those issues.  I

14   don't think I need a written order on that because you all have

15   discussed that.  We've got it on the record here.  But I will

16   still enter a written order on the deadlines that you all

17   agreed to regarding third-party discovery.  I think it would

18   just be helpful to have that -- to memorialize that.

19             And so, Mr. Marriott, can you submit a proposed order

20   on that?  You can circulate that and then file with a motion to

21   the Court.  Motion helps trigger the clerk's office to know to

22   send it to me with a proposed order.  It's a consent order

23   based on the agreement that we talked about today.

24             **MR. MARRIOTT:**  Will do, Your Honor.

25             **THE COURT:**  Okay.  All right.

1        And then, in addition, by Tuesday the 29th, the

2    Defendants will submit a motion for a protective order and a

3    proposed protective order based on the Court's rulings as to

4    the protective order in the MDL.

5        So, Mr. McClammy, since I've given Mr. Marriott the

6    first proposed order, can you take care of that for the

7    Defendants?

8            **MR. McCLAMMY:**  We can do that, Your Honor.

9            **THE COURT:**  All right.  So if you can circulate that.

10       And then what I'm going to do is tell the clerk to

11   terminate the pending motions for protective order in the MDL

12   action.  And that's going to be Number 137 and Number 140.  And

13   those will be resolved pursuant to the Court's rulings today

14   and by submission of the protective order, again with a motion

15   so that the clerk's office can remove -- or send it to me and

16   the proposed protective order that adopts the Defendants'

17   proposal that includes the additional language, to the extent

18   we've discussed that today.

19       And you can take care of that, Mr. McClammy?

20           **MR. McCLAMMY:**  Yes, Your Honor, we can take care of

21   that.

22           **THE COURT:**  Okay.  Very good.  And then that takes

23   care of the schedule for the third-party discovery.  That takes

24   care of the motions for a protective order.  That resolves the

25   issues regarding the Plaintiffs' request for production of

1  documents, including any searches and custodians.  And I think

2  that resolves everything.

3         I did have a prior -- or a note from the prior

4  hearing that we had raised the question of whether the FTC

5  wanted to address whether to extend fact discovery to match the

6  MDL so that the FTC could continue participating in discovery

7  after April 22nd.

8         Was that something you wanted to address or be heard

9  on?

10         **MS. GILLEN:**  Thank you, Your Honor.

11         I think that's still something we'd consider.

12         **THE COURT:**  Okay.

13         **MS. GILLEN:**  But I think it's still too soon to

14  tell --

15         **THE COURT:**  Okay.

16         **MS. GILLEN:**  -- at this point.

17         And just to update Your Honor, I know last time we

18  were here, we also talked about, you know, coming back in

19  October and talking a little more about timing for depositions.

20         **THE COURT:**  Right.

21         **MS. GILLEN:**  So I think, you know, from Plaintiffs'

22  perspective, you know, we expect to be in a position to at

23  least notice a small handful of third-party depositions by the

24  end of the year.

25         **THE COURT:**  Okay.

23MD3062  -- Status conf.  -- 10/24/24

1          **MS. GILLEN:**  There's a small group of third parties

2   who have, you know, either -- had represented to us that they

3   either have or will substantially complete another document

4   production.  So we plan to move forward and try to get those

5   scheduled in the coming months.

6          You know, I think related to that, Plaintiffs have

7   put together a draft deposition protocol --

8          **THE COURT:**  Okay.

9          **MS. GILLEN:**  -- that we've shared with the other

10  parties.  We're still in the process of negotiating that.

11         **THE COURT:**  Okay.

12         **MS. GILLEN:**  You know, one of the things we've

13  included in the protocol is, ideally, we'd have a mechanism to

14  allow for some depositions to occur remotely.  You know, in our

15  experience, that has been a very cost-effective way to proceed.

16  I'm hopeful we can reach agreement on those issues.  So I just

17  wanted to preview for Your Honor that that is something that we

18  may submit in the coming months.

19         **THE COURT:**  Okay.

20         **MS. GILLEN:**  And, finally, you know, as things ramp

21  up here, we think it would be helpful for Your Honor to hold

22  monthly or other semi-regular status conferences as things

23  start to ramp up.  You know, Plaintiffs are open to having

24  these conferences either in person or by telephone or Zoom, or

25  whatever the Court finds is most efficient.  But we do think,

1  as we sort of enter this final six months of the fact discovery

2  period, it would be helpful for us.  You know, usually having a

3  conference helps all parties crystallize any disputes.  And if

4  that's something that Your Honor is willing to do, we would

5  appreciate it.

6  **THE COURT:**  Well, when you mentioned the discovery

7  schedule, that certainly prompted that.  The question for me

8  would have been, you know, when would you like to set to meet

9  to be able to resolve any of those issues or make sure moving

10  forward -- I may not set you now for every month, but I could

11  go ahead and set you for a pretrial motion day, say, in

12  January, and then we'll see where we are.

13  I don't want to fly everyone here unnecessarily, but

14  there are a lot of you, and it's easier for me to do, when I've

15  got everyone here, and have you all conference as you need to

16  or be able to address folks as I can.

17  But the alternative procedure that we've already

18  talked about is the 30-minute check-in under the local rules.

19  I can do that if I need to, but for a much more limited,

20  specific issue, if it arises.

21  But just in terms of these more open-ended

22  conferences, it's helpful to me to have everyone here and to do

23  them this way.  But I don't want to do that unnecessarily or

24  bring everyone here if there's not anything to cover.

25  So my thought would be maybe to set it for January,

1  which will give you time to get the deposition protocol in

2  place or determine if there are going to be issues with

3  depositions.  And if some issue arises earlier that you need to

4  be heard on, you can always request that.

5          Would that be a time frame that seems like it would

6  work or be helpful for what you're looking at?

7          **MS. GILLEN:**  Yes, I think so.

8          **THE COURT:**  Okay.  Okay.  All right.  So on that, let

9  me come back around just to make sure we've covered everything

10  and get everyone's thoughts as to coming back.

11          My pretrial motion date in January is January 23rd.

12  So it would be the 23rd at 9:30, just adding you on that date.

13  So I can let you all take a look at that and see if that works

14  for folks or if there's any suggestion for some other time or

15  date.

16          **MR. BURKE:**  Your Honor, we're not permitted yet to

17  bring our electronic gear in, and none of us have our

18  calendars.

19          **THE COURT:**  Oh, well, you know, it's actually easy to

20  do.  You just do a card.  You just have to sign a form, and

21  then you can bring your electronics every time.

22          **UNIDENTIFIED SPEAKER:**  (Inaudible.)

23          **THE COURT:**  Okay.  Okay.  Okay.  Okay.  And,

24  actually, if you get -- if you show up here and you don't have

25  your card with you, you can just sign another form.

1   Ms. Garrett or Ms. Little can bring that down to you, and they

2   can -- you sign it again, and I can give you the -- the court

3   security officers the okay to bring it up for today -- for the

4   hearing today.  So we can do that in the future, if we need to.

5           **MR. BURKE:**  But we understand January 3 is -- 23rd is

6   the bidding.  Is there any way we could --

7           **THE COURT:**  Is the what?

8           **MR. BURKE:**  -- have a day to check that out on our

9   calendars?

10          **THE COURT:**  Oh, right.  So the thing is that's my

11  pretrial motion date, so it's helpful to me to go ahead and put

12  it on the 23rd.  But if for some reason that's not workable or

13  you can't get folks here, then we can see if we can find an

14  alternative date for that.

15          **MR. BURKE:**  Thank you.

16          **THE COURT:**  All right.  Mr. Marriott, did you have a

17  conflict on that?

18          **MR. MARRIOTT:**  No, I do not.  The 23rd works.

19  My only question would be whether -- if we waited to start it a

20  little later so that we can -- we can get down on flights that

21  come the morning of.

22          **THE COURT:**  Oh, yes.  Sure.

23          **MR. MARRIOTT:**  It's a little harder for 9:30.  10:00,

24  10:30 are much easier, if that's possible.

25          **THE COURT:**  Absolutely.

1      **MS. BROOM:**  It's much easier for the folks coming

2  from the West Coast as well, Your Honor.

3      **THE COURT:**  That is a very reasonable request, and I

4  actually don't mind starting later and not being here to get

5  ready before the 9:30 hearing either.

6      So does 10:30 work?

7      **MR. MARRIOTT:**  That's fine by us, Your Honor.

8      **THE COURT:**  Okay.

9      **UNIDENTIFIED SPEAKER:**  That should work for us, Your

10  Honor.

11      **THE COURT:**  Okay.  All right.  So my pretrial motion

12  day itself is at 9:30.  So the calendar might say 9:30.  It's

13  actually good to do it this way anyway because there are

14  occasionally times when there are other things on the calendar

15  for pretrial motion day.  So I will take care of those first in

16  that hour, and you all won't be on specifically until 10:30.

17  And I think that that works best for everyone.  I certainly

18  wouldn't want you to rush to be here at 9:30 and then have to

19  sit through an additional pretrial conference for another case

20  or two.

21      So we'll put you on for 10:30 on the 23rd.  And if I

22  try to set you at 9:30 in the future, just remind me of that.

23  I'm always happy to set it for a little later in the morning,

24  and we'll do it at 10:30 instead.

25      All right.  So -- yes?

1      **MS. BROOM:**  Would you like us to just email your case
2  manager to let them know if the 23rd works?
3      **THE COURT:**  Yeah.  So I tell you what I think I'm
4  going to do, is I'll go ahead and set it for the 23rd.  But
5  then if you all -- if that doesn't work, if you all can
6  exchange dates among yourselves to give me some other
7  suggestions for in January when everyone can come, then I can
8  look at my calendar and see what will work.
9          Okay.  All right.  Good.
10         So it would be -- if you needed to do that, file a
11  motion to continue and give us the dates when it would work,
12  although, if it's something where -- unless folks can be here
13  to cover it, then that works as well for me.
14         And on that, while I appreciate you all who are
15  handling the case the most being the ones who are here, of
16  course, local counsel being here, I leave it up to you in terms
17  of who you send to represent.  So if it's not something that
18  you feel like you need to be here or if there's -- somebody
19  else needs to cover, that's always okay with me as well, unless
20  we get to the point where we need to actually have specific
21  folks here.  But for these kinds of purposes, at this point I'm
22  comfortable with that.
23         So that will be set then for a status conference on
24  January 23rd, unless it's continued.
25         And this calendar never has all the dates on it.

23MD3062  -- Status conf.  -- 10/24/24

1 | Let's see.

2 |         Do you have a 2025 calendar?  Is this 2025?

3 | No, it just goes through December.

4 |         **MR. MARRIOTT:**  I've got one on my iPad.

5 |         **THE COURT:**  Ms. Garrett has got it.  Thank you.

6 |         Okay.  So the 23rd is a Thursday.  It looks like the

7 | 20th is a holiday.  So let's ask for joint staff reports by

8 | that Friday, the 17th, just to make sure that we're all

9 | hopefully on the same page about what it is to be heard.  And

10 | obviously that bubbled up today in terms of things that were

11 | not anticipated in the joint status report.  I'm happy to

12 | resolve whatever needs to be resolved, but I would just ask you

13 | all to go ahead and include in the joint status report

14 | everything that is at dispute or that needs to be resolved or

15 | addressed so that we don't have any of those misunderstandings

16 | where folks think things are resolved and they're not.

17 |         And so just for planning purposes, if you've got

18 | something, even if it hasn't fully crystallized yet -- if you

19 | anticipate that this is going to be an issue, go ahead and

20 | include it in the joint status report so everybody knows this

21 | is something that may get raised as an issue to be addressed.

22 | And that would be by Friday, the 17th.

23 |         And, of course, as always, continuing the

24 | meet-and-confer process so that you can get as close as

25 | possible to an agreement, and we will have narrowed down to

1  whatever it is that needs to be heard at the hearing on the
2  23rd.
3          And, again, I know my calendar is available that day
4  because it's already blocked off as my pretrial motion day.  If
5  we need to look at other days, we can do that.  But, hopefully,
6  we can make that work and do that 10:30 on the 23rd.
7          As far as concluding everything, Ms. Garrett, I think
8  I've taken care of everything that's pending, other than the
9  motions that are with Judge Schroeder.
10         Is that right?
11     (Off-the-record discussion.)
12     **THE COURT:**  Okay.  Okay.  All right.
13         Anything else for the Plaintiffs before we adjourn?
14     **MS. MacLEAN:**  No, Your Honor.
15     **THE COURT:**  Okay.  Very good.
16         Anything else, Mr. Marriott?
17     **MR. MARRIOTT:**  Nothing, Your Honor.  Thank you.
18     **THE COURT:**  Okay.  Absolutely.
19         Mr. McClammy, anything else?
20     **MR. McCLAMMY:**  Nothing else, Your Honor.
21     **THE COURT:**  And for the FTC, anything else?
22     **MS. GILLEN:**  Nothing further, Your Honor.
23     **THE COURT:**  Okay.  Very good.  Thank you.
24         All right.  We'll go ahead and adjourn court.
25     (END OF PROCEEDINGS.)

23MD3062  -- Status conf.  -- 10/24/24

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF TRANSCRIBER

4

5          I,  Briana L. Chesnut, Official United States Court

6  Reporter, certify that the foregoing transcript is a true and

7  correct transcript of the proceedings produced solely from an

8  audio recording to the best of my ability in the above-entitled

9  matter.

10         Dated this 28th day of October 2024.

11

12

13                        _Briana L. Chesnut_

14         _____

                 Briana L. Chesnut, RPR
15               Official United States Court Reporter

16

17

18

19

20

21

22

23

24

25