# EXHIBIT A

**Davis Polk**

Benjamin M. Miller
+1 202 962 7133
benjamin.miller@davispolk.com

Davis Polk & Wardwell LLP
901 15th Street, NW
Washington DC 20005
davispolk.com

August 6, 2024

Re: *FTC, et al. v. Syngenta Crop Protection AG, et al.*, No. 1:22-cv-828-TDS-JEP (M.D.N.C.)
   *In re Crop Protection Products Loyalty Antitrust Litigation*, 1:23-md-3062-TDS-JEP (M.D.N.C.)

Atticus, LLC
940 NW Cary Pkwy Suite 200
Cary, NC 27513

To Whom It May Concern:

On behalf of Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC (collectively, "Syngenta"), enclosed is a non-party subpoena pursuant to Federal Rule of Civil Procedure 45 calling for the production of certain documents in the above-referenced actions (the "Actions").

Syngenta is also a named defendant in a separate related action, *State of Arkansas v. Syngenta Crop Protection AG et al*, No. 4:22-cv-1287-BSM (E.D. Ark.). Syngenta is not currently subpoenaing Atticus, LLC's documents in that action. To the extent Syngenta is required to produce materials responsive to this subpoena in the Arkansas action, Syngenta will provide notice prior to any such re-production.

Please do not hesitate to contact me if you have any questions.

Sincerely,

*/s/ Benjamin M. Miller*
Benjamin M. Miller

**Enclosures**

# UNITED STATES DISTRICT COURT

for the
Middle District of North Carolina

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN, <br><br>        Plaintiffs, <br><br> v. <br><br> SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC., <br><br>        Defendants. | Civil Action No. 1:22-cv-00828-TDS-JEP |
| IN RE CROP PROTECTION PRODUCTS LOYALTY PROGRAM ANTITRUST LITIGATION <br><br> This document relates to: ALL ACTIONS | Civil Action No. 1:23-md-3062-TDS-JEP |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     ATTICUS, LLC

*(Name of person to whom this subpoena is directed)*

   ☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place:   Fox Rothschild LLP <br>        230 N. Elm Street, Suite 1200 <br>        Greensboro, NC 27401 | Date and Time: <br><br>      August 20, 2024 5:00pm |
|---|---|

   ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/06/2024
_____

CLERK OF COURT

OR

_____          /s/ Benjamin M. Miller
   Signature of Clerk or Deputy Clerk                                    _____
                                                                                              Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Syngenta Corp.,
Syngenta Crop Protection, LLC, and Syngenta Crop Protection AG _____ , who issues or requests this subpoena, are:

Benjamin M. Miller, Davis Polk & Wardwell LLP, 901 15th Street, NW Washington, DC 20005
202-962-7133, benjamin.miller@davispolk.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action Nos. 1:22-cv-00828-TDS-JEP and 1:23-md-3062-TDS-JEP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☒  I served the subpoena by delivering a copy to the named person as follows: Matthew J. Dowd, _____

counsel for Atticus, LLC pursuant to agreement of counsel to acccept service via email at:

mdowd@dowdscheffel.com                on *(date)*  08/06/2024        ; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date:     08/06/2024                         */s/ Benjamin M. Miller*
                                    _____
                                              *Server's signature*

                                    Benjamin M. Miller, Counsel (Davis Polk & Wardwell LLP)
                                    _____
                                              *Printed name and title*

                                    901 15th St NW
                                    Washington, DC 20005
                                    _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A TO SYNGENTA'S SUBPOENA TO ATTICUS, LLC TO PRODUCE
DOCUMENTS, INFORMATION, OR OBJECTS**

**DEFINITIONS**

The following Definitions are expressly incorporated into each specific Request for Production ("Request") as if fully stated therein. Notwithstanding any Definition stated below, each word, term, or phrase whenever used in any Definition, Instruction, or Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Rules of the U.S. District Court for the Middle District of North Carolina.

1. "Action" means *FTC, et al. v. Syngenta Crop Protection AG, et al.*, No. 1:22-cv-828-TDS-JEP (M.D.N.C.), including any related discovery, pre-trial, trial, post-trial, or appellate proceedings.

2. "Active Ingredient" or "AI" means a chemical substance that aims to kill or control one or more pests that damage crops.

3. "Amended Complaint" means the amended complaint filed in the Action on December 23, 2022.

4. "Civil Investigative Demand," "Information Request," "Informal Request," "Voluntary Request," "Document Request," or "Subpoena" refers to any formal or informal request for information, Documents, Communications, or other materials from a party in litigation or a federal, state, or foreign governmental entity.

5. "Communication" means the transmittal of information or request for information, including, but not limited to, any written contact between two or more people by such means as letters, memoranda, facsimile transmissions, text messages, instant messages, and emails, as well as orally by such means as face-to-face meetings and telephone conversations.

6.      "Complaint" means the original complaint filed in the Action on September 29, 2022.

7.      "Crop Protection Product" means any formulated product that is applied to or for the benefit of crops to kill or control insects, weeds, diseases, fungi, or other pests and contains one or more Active Ingredients.

8.      "Defendant(s)" means one or more of Corteva, Inc., Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC.

9.       "Distributor(s)" means any Person(s) that purchases Crop Protection Products and sells such products to other Persons that sell to consumers.

10.     "Documents" means all documents or data, whether hard copy or electronically stored information as defined in Federal Rule of Civil Procedure 34(a).

11.     "Electronically-Stored Information" means all Documents or data that are stored in any electronic medium from which information can be obtained.

12.     "Federal Trade Commission" refers to the United States Federal Trade Commission, including, but not limited to, any bureaus, components, agents, representatives, consultants, contractors, employees, attorneys, experts, economists, and any other Person(s) acting or purporting to act with or on its behalf.

13.     "Functional Equivalent to Azoxystrobin" means any AI contained within a Crop Protection Product that is effective against the same or similar pests on a same crop as a Crop Protection Product containing azoxystrobin.

14.     "Functional Equivalent to Fomesafen" means any AI contained within a Crop Protection Product that is effective against the same or similar pests on a same crop as a Crop Protection Product containing fomesafen.

2

15. "Functional Equivalent to Lambda-cyhalothrin" means any AI contained within a Crop Protection Product that is effective against the same or similar pests on a same crop as a Crop Protection Product containing lambda-cyhalothrin.

16. "Functional Equivalent to Mesotrione" means any AI contained within a Crop Protection Product that is effective against the same or similar pests on a same crop as a Crop Protection Product containing mesotrione.

17. "Functional Equivalent to Paraquat" means any AI contained within a Crop Protection Product that is effective against the same or similar pests on a same crop as a Crop Protection Product containing paraquat.

18. "Functional Equivalent to S-Metolachlor" means any AI contained within a Crop Protection Product that is effective against the same or similar pests on a same crop as a Crop Protection Product containing metolachlor or s-metolachlor.

19. "Generic Product" means any Relevant Crop Protection Product manufactured by a generic Supplier.

20. "Grower" means any Person(s) (including applicators) that purchases Crop Protection Products for the purpose of applying to crops.

21. "Other Government Entity or Actor" means all government entities or actors other than Plaintiffs in the Action or a Related Action, including, but not limited to, governmental agencies, other State Attorneys General, the United States Department of Justice, members of Congress, congressional staffers, or foreign regulators, as well as current or former employees of any such entities or actors.

22.     "Person" means any person and includes natural persons, corporations, firms, partnerships, proprietorships, associations, joint ventures, States, Territories, government agencies or entities, and other enterprises or legal entities.

23.     "Plaintiff(s)" mean the entities, both individually and collectively, asserting claims against some or all Defendants in the Action or the Related Actions, including, but not limited to, any components, agents, representatives, consultants, contractors, employees, attorneys, experts, economists, and any other Person(s) acting or purporting to act with or on such entity's behalf.

24.     "Pre-Complaint Investigation" means an investigation by the Federal Trade Commission, State Attorney General, or Other Government Entity or Actor into whether Syngenta or others engaged or is engaging in a violation or violations of the FTC Act, federal or state antitrust laws, or other federal or state laws, including, but not limited to, the investigation or file referred to as FTC File No. 191-0031, and any pre-investigative activity, review, inquiry, information gathering, or collection of Documents any Plaintiff in the Action engaged in prior to filing the Amended Complaint.

25.     "Product Rebate" means any rebate, incentive, discount, pass-through, or other price reduction offered to customers of Person(s) involved in the manufacture, distribution, or sale (including re-sale) of Relevant Crop Protection Products or Technical AI Products.

26.     "Related Actions" refers to any of the following actions: (i) the action captioned *In re: Crop Protection Products Loyalty Program Antitrust Litigation*, Case No. 1:23-MD-3062-TDS-JEP (M.D.N.C.), pending in the Middle District of North Carolina, including any related discovery, pre-trial, trial, post-trial, or appellate proceedings; (ii) the action captioned *Griffin v. Syngenta Crop Protection AG et al.*, Case No. 4:22-CV-01287-BSM (E.D. Ark.), pending in the

4

Eastern District of Arkansas, including any related discovery, pre-trial, trial, post-trial, or appellate proceedings; or (iii) any other litigation related to the subject matter of the Action.

27. "Relating to," "relate to," "related to," or "in relation to" mean concerning, constituting, regarding, referring to, describing, discussing, embodying, evidencing, memorializing, mentioning, recording, studying, analyzing, reflecting, pertaining to, supporting, refuting, responsive to, or with respect to.

28. "Relevant Crop Protection Product" means a Crop Protection Product containing azoxystrobin, a Functional Equivalent to Azoxystrobin, fomesafen, a Functional Equivalent to Fomesafen, lambda-cyhalothrin, a Functional Equivalent to Lambda-cyhalothrin, mesotrione, a Functional Equivalent to Mesotrione, metolachlor, s-metolachlor, a Functional Equivalent to S-Metolachlor, paraquat, or a Functional Equivalent to Paraquat.

29. "Retailer" means any Person(s) that sells Crop Protection Products to consumers, including but not limited to Growers.

30. "State Attorney General" refers to any Attorney General or other office of any State or Territory of the United States of America, whether a Plaintiff or otherwise, and including, but not limited to, any components, agents, representatives, consultants, contractors, employees, attorneys, and any other Person(s) acting or purporting to act with or on its behalf.

31. "Supplier" means any Person(s) that imports, manufactures, or has imported or manufactured Relevant Crop Protection Products, whether branded, generic, or otherwise.

32. "Support Services" means services provided to support the effective implementation of Crop Protection Products, including but not limited to services relating to pesticide resistance management, relating to methods of application for Crop Protection

5

Products, and relating to problems of any kind experienced by Growers following the application of a Crop Protection Product.

33.     "Syngenta" means Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC.

34.     "Technical AI Product" means any technical grade AI in any form, including but not limited to liquid, powder, solid, or MUP ("manufacturing use product"), sold by any Person for use in creating a Relevant Crop Protection Product.

35.     "Traditional Channel" means the distribution channel for Crop Protection Products that flows from Supplier to Distributor to Retailer to Grower.

36.     "Atticus," "You," or "Your" mean Atticus, LLC, its wholly or partially owned subsidiaries, parent companies, unincorporated divisions, joint ventures, partnerships, operations under assumed names, predecessors, affiliates, investment vehicles, and all directors, officers, partners, employees, agents, attorneys, consultants, and any other Person or entity, working for or on behalf of any of the foregoing at any time during the period covered by this Subpoena.

37.     The definitions set forth above shall apply to all requests.

### GENERAL INSTRUCTIONS

The following Instructions are expressly incorporated into each specific Request as if fully stated therein:

1.     In responding to these requests, You are requested to produce or identify not only Documents in Your possession, custody, or control, but also those Documents in the possession, custody, or control of other Persons acting on Your behalf.  This includes, but is not limited to, Documents maintained on Your premises, storage devices, email servers, or any other repository or location in which Documents exist; for example, if an individual is in possession, custody, or

6

control of responsive Documents, all such Documents must be produced, regardless of the type of premises or device on which they are maintained.

2.      The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

3.      The singular form shall include the plural and vice versa wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

4.      The words "any," "each," and "every" shall be construed to mean individually and collectively wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

5.      The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of a topic all information that might otherwise be construed to be outside of its scope.

6.      Each request seeks production of all Documents and things described, along with any addenda, attachments, appendices, drafts, and non-identical copies, as found or located in Your files, together with a copy of the descriptive file folder or database category in its entirety.

7.      Electronically-Stored Information must be produced according to the Stipulated Order Re: Discovery of Electronically Stored Information, entered in the Action on May 2, 2024 (Dkt. 201) (the "Electronically-Stored Information Protocol").

8.      Except as modified by any protocols adopted by the Court in the Action or a Related Action, if Documents are withheld or redacted under a claim of privilege, including, but

not limited to, attorney-client privilege and or work product doctrine, You are required to identify each such Document and state the specific basis for the claim of privilege for each Document withheld, as well as by providing at least the following information: (i) the date appearing on the Document; (ii) a description of the general nature of the Document (e.g., whether it is a letter, memorandum, email, etc.); (iii) the author of the Document; and (iv) the identity of each Person to whom the Document was addressed and the identity of each Person to whom a copy was sent.

9.      If any request cannot be responded to completely, respond to it to the extent possible, specify the portion(s) that cannot be responded to, and explain why any such portion(s) cannot be responded to.

10.     If You object to any request made herein as unduly broad, identify the categories of Documents within the scope of the request that You believe are properly discoverable, produce all such Documents, and state, with particularity, Your reason for asserting that the remainder of the request seeks Documents that are beyond the scope of permissible discovery.

11.     Each request shall be construed independently and, therefore, no request shall be construed to limit any other request.

12.     All Documents produced should bear Bates labels, except as otherwise set forth in the Electronically-Stored Information Protocol.

13.     These requests are continuing in nature.  If further information, evidence, or documentation comes into Your possession, custody, or control or is brought to the attention of You or Your attorneys or agents at any time subsequent to the service of any responses or production of any Documents, prompt and complete supplementation of the responses to these

requests and the corresponding production is required pursuant to the Federal Rules of Civil Procedure.

14.     Unless otherwise stated, the relevant time period for all requests is from January 1, 2015, to the present.

<u>**REQUESTS FOR PRODUCTION**</u>

**REQUEST FOR PRODUCTION NO. 1:**

All Communications with or Documents obtained from, produced to, or shared with (whether formally or informally) any Plaintiffs from the Action or the Related Actions or any Other Government Entity or Actor regarding the Action, any of the Related Actions, any Pre-Complaint Investigation, or the subject matter of the Action or the Related Actions, or Documents reflecting such Communications, including, but not limited to:

  i.    all Documents relating to the above topics that You produced in response to any Subpoena, Civil Investigative Demand, Information Request, Informal Request, or Document Request or any other request for information (voluntary or compelled) issued or made in the Action, the Related Actions, the Pre-Complaint Investigation, or any other related action or investigation; and

  ii.   notes or summaries of any oral communications between You and any Plaintiffs from the Action or the Related Actions or any Other Government Entity or Actor regarding the Action or any of the Related Actions or the subject matter of the Action or the Related Actions.

**REQUEST FOR PRODUCTION NO. 2:**

For the period from January 1, 2010 to present, all transcripts of any investigative hearing or deposition or other testimony taken of any Person in connection with the Pre-Complaint

9

Investigation, the Action, a Related Action, or otherwise relating to any Relevant Crop Protection Product or Product Rebate.

**REQUEST FOR PRODUCTION NO. 3:**

For the period from January 1, 2010 to present, all Documents and Communications used in, referenced during, or prepared during, by You, the deponent, or any other Person, or otherwise related to, any investigative hearing or deposition or other testimony taken of any Person in connection with the Pre-Complaint Investigation, the Action, a Related Action, or otherwise relating to any Relevant Crop Protection Product or Product Rebate.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications reflecting business plans relating to Relevant Crop Protection Products, including, but not limited to, those concerning strategy, marketing, financial forecasts, costs, profitability, return on investment, future sales projections, or market or product entry, expansion, or retrenchment.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications relating to the supply or financial performance of Relevant Crop Protection Products that contain an AI for which a Supplier offers or has offered a Product Rebate, including, but not limited to, those concerning sales, profit margins, or market or product entry, expansion, or retrenchment.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications relating to the market and competition for each Relevant Crop Protection Product including, but not limited to, those concerning or relating to:

i.  market categorization by Active Ingredient, mode of action, or associated crops;

ii. competition in the research and development, manufacture, and/or sale of any Relevant Crop Protection Product, including, but not limited to, those concerning

10

the sales, market shares, or business performance of any competitor, supply and demand conditions, attempts to win customers from any competitor, or competitive assessments of or between competitors;

iii. substitution or willingness to substitute by Distributors, Retailers, or Growers between a given Relevant Crop Protection Product, on the one hand, and another Relevant Crop Protection Product, on the other hand;

iv. demand for, access to, and availability of Generic Products or other low-cost Relevant Crop Protection Products (including, but not limited to, private label products or fighting brands);

v. competition between Generic Products and branded Relevant Crop Protection Products, including, but not limited to, those relating to the actual or projected effects of branded competition on the sale of Generic Products; and actions You have taken, will take, or have contemplated taking to respond to competition between Generic Products and branded Relevant Crop Protection Products such as related to prices (including Product Rebates), availability, effectiveness, quality, Supplier Support Services, return on investment, value proposition, or any other price or non-price attributes;

vi. comparing any Relevant Crop Protection Product with any Crop Protection Product, including, but not limited to, comparisons concerning price (including Product Rebates), effectiveness, quality, Supplier Support Services, or any other price or non-price attributes;

vii. barriers, costs, or requirements to entry or expansion in the research and development, manufacture, distribution, and/or sale of Relevant Crop Protection

11

Product, including, but not limited to, those relating to Technical AI Product sourcing, regulatory approvals, manufacturing, distribution, or commercial challenges; and

viii. actual or potential entry or actual or potential exit of any Supplier of any Relevant Crop Protection Product, including, but not limited to, those concerning the rationale for the entry or exit or market dynamics or competition at the time of entry or exit.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications relating to the Traditional Channel for Crop Protection Products and alternatives to the Traditional Channel, including, but not limited to, those concerning the use of a broker, direct-to-Retailer sales, direct-to-Grower sales, or ecommerce.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications relating to complaints, concerns, or disputes (from or with any Persons) about Your or any other Person's Generic Products, including, but not limited to, those concerning product performance or quality, product availability, or Supplier Support Services for such products.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications relating to Your or any Person's price lists, pricing plans (including Product Rebates), pricing policies, pricing forecasts, pricing strategies, pricing analyses, or pricing decisions for any Relevant Crop Protection Product, including, but not limited to, studies, analyses, or assessments of the pricing or profitability of any such product, or any comparative analyses of generic and branded product performance.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications relating to any Product Rebate, including, but not limited to, those:

i.     relating to the entry, negotiation, amendment, termination, or non-renewal, of any Product Rebate agreement (including, but not limited to, negotiated agreements or comply by acceptance or performance agreements) entered by You or by any other Person;

ii.    identifying or describing the terms or requirements of any actual, contemplated, or terminated Product Rebate relating to any Relevant Crop Protection Product currently or previously offered, available, or contemplated to be offered or available to You;

iii.   relating to any relationship, connection, or any other interaction between the terms or requirements of Your Product Rebate(s) and any aspect of the supply of Your Relevant Crop Protection Products (including, but not limited to, price, availability, timing or regularity of supply, product allocations, or preferential treatment between customers);

iv.    relating to any actual or contemplated Product Rebate with any Person involving share-based, loyalty, or other conditional pricing;

v.     relating to Your strategy or decision-making in offering Product Rebates and the calculation of such rebates;

vi.    relating to Your payment of earned Product Rebates, non-payment of earned Product Rebates, or Product Rebate payment exceptions;

vii.  relating to any disputes with any Person about Product Rebate terms, eligibility, calculations, or payments, including, but not limited to, payment exceptions, payment timing, unmet thresholds, or threshold adjustments; and

viii.  relating to the actual, expected, contemplated, or potential effects of Your or any other Supplier's prices or Product Rebates for Relevant Crop Protection Products on competition, prices (including, but not limited to, prices to Distributors, Retailers, or Growers), sales, performance, output, revenues, or costs for Relevant Crop Protection Products.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications relating to the entry, negotiation, amendment, termination, or non-renewal, of any Relevant Crop Protection Product supply agreement entered by You or by any other Person.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications relating to customer or potential customer refusals to purchase, to consider purchasing, or to decrease year-over-year purchases of Your or any Supplier's Generic Products, for any reason.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Communications relating to customers' cancellations of orders containing Your or other Supplier's Generic Products.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents and Communications relating to the sourcing of Technical AI Products, whether from Syngenta or any other Supplier, including, but not limited to, those concerning the decision of where to source the Technical AI Product, negotiations for the purchase of the Technical AI Product, pricing of the Technical AI Product, pricing of Your products where the

14

Technical AI Product is an input to that product, or the treatment of such products under any Product Rebate.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents and Communications relating to the sourcing of tolled, pre-manufactured, or other in-sourced formulated Relevant Crop Protection Product, whether from Syngenta or any other Supplier, including, but not limited to, those concerning Your cost or purchase price of such products, Your pricing of such products for sale, or the treatment of such products under any Product Rebate.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications relating to any actual or potential agreements to purchase Syngenta's Technical AI Product, including, but not limited to, those concerning any negotiations for the purchase of Technical AI Product, pricing analyses related to Syngenta or alternate sources of Technical AI Product, the comparative value of purchasing Syngenta's Technical AI Product versus an alternative, and any other factors considered when purchasing Syngenta's Technical AI Product.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Communications relating to any actual or potential agreements to purchase Technical AI Product from a source other than Syngenta, including, but not limited to, those concerning any negotiations for the purchase of Technical AI Product, pricing analyses related to Syngenta or alternate sources of Technical AI Product, the comparative value of purchasing Syngenta's Technical AI Product versus an alternative, and any other factor(s) considered when comparing or purchasing Technical AI Product.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications relating to Your supply of Technical AI Products, including but not limited to the terms or conditions of any sale of Technical AI Products to any Person; the availability, any allocation of, or reliability of Your supply; any rebates or other incentives You offer related to Your supply of Technical AI Products or Relevant Crop Protection Products based on your Technical AI Products; and the impact of any rebate or other incentive on Your supply of Technical AI Products.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Communications relating to complaints, concerns, or disputes (from or with any Persons) about Your Technical AI Products, including, but not limited to, those concerning product performance or quality (of the Technical AI Product or of Relevant Crop Protection Products that include Your Technical AI Product), product availability, or Support Services for such products.

**REQUEST FOR PRODUCTION NO. 20:**

Stated separately for each of Your Supplier, Distributor, or Retailer affiliates, if applicable, invoice-level *purchase* data for Relevant Crop Protection Products including, for each invoice line item:

     i.    transaction order date and order received date;

    ii.    unique transaction identifier;

   iii.    Supplier name;

   iv.    name of the entity that sold You the product, a unique identifier for that entity, the entity type (e.g., Supplier, Distributor, Retailer, broker), and whether the entity is independent or affiliated with You;

    v.    product name;

16

viii.     vi.     product identifiers (e.g., UPC, SKU);

vii.     EPA registration number;

viii.     package size and type;

ix.     all AIs included in the product and the amount of each AI;

x.     volume purchased, in units;

xi.     unit of measure of product sold (e.g., gallons, pounds);

xii.     list price, invoice price, and net price for the product;

xiii.     any applicable Product Rebates, or other deductions or allowances (e.g., discounts, returns, other rebates, promotions), stated separately by type;

xiv.     total invoice gross dollar amount;

xv.     total invoice net dollar amount; and

xvi.     the facility and address at which You received the product from the selling entity.

**REQUEST FOR PRODUCTION NO. 21:**

Stated separately for each of Your Supplier, Distributor, or Retailer affiliates, if applicable, invoice-level *sales* data for Relevant Crop Protection Products, including, for each invoice line item:

i.     transaction order date and order received date;

ii.     unique transaction identifier;

iii.     customer name, unique identifier, and entity type (e.g., Distributor, Retailer, Grower, broker), and whether the customer is independent or affiliated with You;

iv.     customer ship-to and customer bill-to locations;

v.     Supplier name;

vi.     product name;

17

vii.     product identifiers (e.g., UPC, SKU);

viii.     EPA registration number;

ix.     package size and type;

x.     all AIs included in the product and the amount of each AI;

xi.     for each AI, the manufacturer and the importer, if applicable, of the Technical AI Product;

xii.     volume sold, in units;

xiii.     unit of measure of product sold (e.g., gallons, pounds);

xiv.     list price, invoice price, and net price for the product;

xv.     any applicable Product Rebates, or other deductions or allowances (e.g., discounts, returns, other rebates, promotions), stated separately by type;

xvi.     total invoice gross dollar amount;

xvii.     total invoice net dollar amount;

xviii.     the facility and address from which You made the sale; and

xix.     cost of goods sold, in dollars.

**REQUEST FOR PRODUCTION NO. 22:**

Stated separately for each of Your Supplier, Distributor, or Retailer affiliates, if applicable, invoice-level *purchase* data for Technical AI Products and for any tolled, pre-manufactured, or other in-sourced formulated Relevant Crop Protection Product, including, for each invoice line item:

i.     transaction order date and order received date;

ii.     unique transaction identifier;

18

iii.     manufacturer and importer, if applicable, of the Technical AI Product or tolled, pre-manufactured, or other in-sourced formulated product;

iv.     name of the Technical AI Product or tolled, pre-manufactured, or other in-sourced formulated product;;

v.     product identifiers (e.g., UPC, SKU);

vi.     EPA registration number;

vii.     location where the Technical AI Product or tolled, pre-manufactured, or other in-sourced formulated product was manufactured;

viii.     the Relevant Crop Protection Products being sold by You containing the Technical AI Product or tolled, pre-manufactured, or other in-sourced formulated product, including the brand name, packaging name, or other names under which the Relevant Crop Protection Product is sold;

ix.     volume purchased, in units, pounds of AI, or gallons;

x.     list price, invoice price, and net price for the Technical AI Product or tolled, pre-manufactured, or other in-sourced formulated product;

xi.     any applicable Product Rebates, or other deductions or allowances (e.g., discounts, returns, other rebates, promotions), stated separately by type;

xii.     total invoice gross dollar amount;

xiii.     total invoice net dollar amount; and

xiv.     the facility and address where You received the product from the selling entity.

**REQUEST FOR PRODUCTION NO. 23:**

Stated separately for each of Your Supplier, Distributor, or Retailer affiliates, if applicable, invoice-level *sales* data for Technical AI Products and for any tolled, pre-

manufactured, or other in-sourced formulated Relevant Crop Protection Product, including, for each invoice line item:

i. transaction order date and order received date;

ii. unique transaction identifier;

iii. customer name, unique identifier, and type (e.g., Supplier, Distributor, Retailer, broker) and whether customer is independent or Affiliated with You;

iv. customer ship-to location and customer bill-to location;

v. name of the Technical AI Product or tolled, pre-manufactured, or other in-sourced formulated product;

vi. product identifiers (e.g., UPC, SKU);

vii. EPA registration number;

viii. volume sold, in units, pounds of AI, or gallons;

ix. location where Technical AI Product or tolled, pre-manufactured, or other in-sourced formulated product was manufactured;

x. the Relevant Crop Protection Product being sold containing the Technical AI Product, including the brand name, packaging name, or other names under which the Relevant Crop Protection Product is sold;

xi. list price, invoice price, and net price for the Technical AI Product or tolled, pre-manufactured, or other in-sourced formulated product;

xii. any applicable Product Rebates, or other deductions or allowances (e.g., discounts, returns, other rebates, promotions), stated separately by type;

xiii. total invoice gross dollar amount;

xiv. total invoice net dollar amount;

20

xv.    the facility and address from which You made the sale; and

xvi.    cost of goods sold, in dollars.

**REQUEST FOR PRODUCTION NO. 24:**

Data sets to show all payments *made by You* to any Person for any Product Rebate, including, for each payment, at least the following information:

i.    identity of the recipient;

ii.    whether the recipient is a direct or indirect purchaser from You of the product;

iii.    date of the payment;

iv.    amount of the payment;

v.    the name of the Product Rebate for which the payment is being made and whether such Product Rebate is conditional on any volume or share requirements;

vi.    the Relevant Crop Protection Product(s) for which the payment was made, including any product identifiers; and

vii.    whether the discount was applied at the time of purchase, time of payment, or some later time.

**REQUEST FOR PRODUCTION NO. 25:**

Data sets to show all payments *received by You* from any Person for any Product Rebate, including for each payment at least the following information:

i.    identity of the payor;

ii.    whether You are a direct or indirect purchaser from the payor of the product;

iii.    date of the payment;

iv.    amount of the payment;

21

v. the name of the Product Rebate for which the payment is being made and whether such Product Rebate it is conditional on any volume or share requirements;

vi. the Relevant Crop Protection Product(s) for which the payment was made, including any product identifiers; and

vii. whether the discount was applied at the time of purchase, time of payment, or some later time.

**REQUEST FOR PRODUCTION NO. 26:**

All financial statements (including, but not limited to, profit and loss statements showing sales, costs, gross margins and net margins; budgets; pricing analyses; and sale projections) relating to any Relevant Crop Protection Product or Technical AI Product, business lines or divisions purchasing or selling any Relevant Crop Protection Product or Technical AI Product, and Your company as a whole.

**REQUEST FOR PRODUCTION NO. 27:**

Data sets to show, separately by Active Ingredient, Technical AI Product, Relevant Crop Protection Product, business line, and Your company as a whole, on a monthly basis:

i. cost of goods sold, broken out by type (e.g., Active Ingredients, other raw materials, labor costs, data compensation costs, manufacturing costs, overhead costs, distribution costs);

ii. promotional expenses;

iii. marketing and advertising expenses;

iv. gross margin in dollars and percent;

v. operating margin in dollars and percent; and

vi. net margin in dollars and percent.

22

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications supporting Randall V. Canady's testimony in the

January 20, 2022 FTC investigational hearing that ███████████████████████████████

████████████████████████████████████████████████████. *See*

Canady 1/20/2022 Tr. at CX7035-031.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents and Communications supporting Randall V. Canady's testimony in the

January 20, 2022 FTC investigational hearing that Atticus ████████████████████████

████████████████████████████████████████████████████. *See id*. at

CX7035-188.

23