# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

_____

)
FEDERAL TRADE COMMISSION, )
STATE OF CALIFORNIA, STATE OF )
COLORADO, STATE OF ILLINOIS, )
STATE OF INDIANA, STATE OF )
IOWA,STATE OF MINNESOTA, STATE )
OF NEBRASKA, STATE OF OREGON, )
STATE OF TENNESSEE, STATE OF )
TEXAS, STATE OF WASHINGTON, and )
STATE OF WISCONSIN, )
)
    *Plaintiffs* )   Case No. 1:22-cv-00828-TDS-JEP
)
    v. )
)
SYNGENTA CROP PROTECTION AG, )
SYNGENTA CORPORATION, )
SYNGENTA CROP PROTECTION, LLC, )
and CORTEVA, INC., )
)
)
    *Defendants.* )
)
_____)


_____

)
IN RE CROP PROTECTION PRODUCTS )
LOYALTY PROGRAM ANTITRUST )   Case No. 1:23-md-3062-TDS-JEP
LITIGATION )
)
_____)


**NON-PARTY ATTICUS LLC'S OPPOSITION TO DEFENDANTS SYNGENTA
CROP PROTECTION AG, SYNGENTA CORPORATION, AND SYNGENTA
CROP PROTECTION, LLC'S MOTION TO COMPEL NON-PARTY ATTICUS
LLC'S SUBPOENA RESPONSE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

FACTS AND PROCEDURAL HISTORY ....................................................... 2

ARGUMENT ................................................................................................... 7

I.     Legal Standard .................................................................................... 7

II.    The Motion to Compel is Moot ........................................................... 8

III.   The Broad Requests Are Unduly Burdensome to Atticus as a Third Party ........... 10

IV.    Protective Order Concerns ................................................................ 15

V.     Costs and Fees .................................................................................. 16

    A.    Atticus Should Be Protected Against Significant Burden and Expense .......... 16

    B.    Syngenta's Costs and Fees Should Not Be Awarded ..................... 17

VI.    Conclusion ......................................................................................... 18

i

# TABLE OF AUTHORITIES

**Cases**                                                                         **Pages**

*Alexander v. FBI*,
 186 F.R.D. 21 (D.D.C. 1998) ....................................................................... 14

*Bäumer v. Schmidt*,
 423 F. Supp. 3d 393 (E.D. Mich. 2019) ........................................................ 11

*Belk, Inc. v. Meyer Corp.*,
 No. 3:07-CV-168-DCK, 2009 WL 703704 (W.D.N.C. Mar. 16, 2009) ....................... 17

*Decision Insights, Inc. v. Sentia Group, Inc.*,
 311 Fed. App'x 586 (4th Cir. 2009) ............................................................... 17

*Donnelly v. Arringdon Development, Inc.*,
 No. 1:04CV889, 2005 WL 8167556 (M.D.N.C. Nov. 8, 2005) .................................... 13

*Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*,
 246 F.R.D. 522 (S.D.W. Va. 2007) ................................................................ 10

*Hicks v. United States*,
 No. 7:09-CR-9-FL, 2014 WL 1795155 (E.D.N.C. May 6, 2014) .................................... 8

*In re Aggrenox Antitrust Litig*ation,
 No. 3:14-md-02516-SRU, 2017 WL 4679228 (D. Conn. Oct. 18, 2017)...................... 16

*In re Camp Lejeune Water Litigation*,
 No. 7:23-CV-897, 2024 WL 1080141 (E.D.N.C. Mar. 8, 2024) .............................. 8, 10

*In re Crop Protection Products Loyalty Program Litigation*,
 No. 1:23-md-03062-TDS-JEP (M.D.N.C. filed Feb. 6, 2023) ......................................... 3

*In re Cusumano v. Microsoft Corp.*,
 162 F.3d 708 (1st Cir. 1998) ........................................................................... 7

*In re Dealer Management Systems Antitrust Litigation*,
 No. 18 C 864, 2018 WL 6048262 (N.D. Ill. Nov. 19, 2018) ......................................... 13

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation
 for Northern District of California*,
 No. 1:11MC63, 2012 WL 2281253 (M.D.N.C. June 18, 2012).............................. 13, 14

*In re Public Offering PLE Antitrust Litigation*,
 427 F.3d 49 (1st Cir. 2005)................................................................................ 14

*In re Zantac (Ranitidine) Products Liability Litigation*,
 No. 20-md-192-RLR, 2022 WL 19919934 (S.D. Fla. May 23, 2022).................... 16, 17

*Kinetic Concepts, Inc. v. CovaTec Inc.*,
 268 F.R.D 226 (M.D.N.C. 2010) ............................................................................ 12

*Lawson v. Spirit AeroSystems, Inc.*,
 No. 18-cv-1100-EFM-ADM, 2020 WL 3288058 (D. Kan. June 18, 2020).................. 17

*Linder v. Calero-Porcarrero*,
 251 F.3d 178 (D.C. Cir. 2001)........................................................................... 8, 16

*Meadows v. Syngenta Crop Protection AG*,
 No. 1:22-cv-01128-TDS-JEP (M.D.N.C. filed Dec. 26, 2022)........................................ 3

*Medical Components, Inc v. Classic Medical, Inc.*,
 210 F.R.D. 175 (M.D.N.C. 2002) ............................................................................ 7

*Nicholas v. Wyndham International Inc.*,
 373 F.3d 537, 543 (4th Cir. 2004) ...................................................................... 10

*Pierce v. Underwood*,
 487 U.S. 552 (1988)............................................................................................ 17

*Quezada v. Lindsey*,
 No. 1:10–cv–01402–AWI–SAB, 2014 WL 5500800 (E.D. Cal. Oct. 30, 2024) ..... 11, 12

*Roberts v. Evans*,
 No. 5:21-CV-356-D, 2023 WL 5673114 (E.D.N.C. Sept. 1, 2023)............................... 9

*Sabol v. Brooks*,
 469 F. Supp. 2d 324 (D. Md. 2006)....................................................................... 10

*Singletary v. Sterling Transport Co.*,
 289 F.R.D. 237 (E.D. Va. 2012) ............................................................................ 7

*State of Arkansas ex rel. Griffin v. Syngenta Crop Protection AG*,
 4:22-cv-01287-BSM (E.D. Ark. 2024) ..................................................................... 3

*Stephenson v. Atrium Health, Inc.*,
 No. 3:21-CV-103-FDW-DCK, 2021 WL 5407856 (W.D.N.C. Nov. 18, 2021)............. 7

Case 1:22-cv-00828-TDS-JEP    Document 270    Filed 12/02/24    Page 4 of 26

*United States v. Anthem, Inc.*,
   No. 20-CV-2593, 2024 WL 1116276 (S.D.N.Y. Mar. 13, 2024).................................. 13

*United States v. Jackson*,
   184 Fed. App'x 307 (4th Cir. 2006) ................................................................ 8

*United States ex rel. Hayes v. Charlotte Mecklenburg Hospital Authority*,
   No. 3:16-CV-00750-GCM, 2021 WL 665109 (W.D.N.C. Feb. 19, 2021) ................... 10

*Virginia Department of Corrections v. Jordan*,
   921 F.3d 180 (4th Cir. 2019) ................................................................ 10,12

*Walls v. Ford Motor Co.*,
   No. 1:20-cv-98, 2021 WL 1723154 (M.D.N.C. Apr. 30, 2021)..................................... 12

*Williams v. Hernandez*,
   221 F.R.D. 414 (S.D.N.Y. 2004) ................................................................ 14

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................ 7, 10

Fed. R. Civ. P. 37(a) ................................................................................ 17

Fed. R. Civ. P. 37(a)(5)(A)................................................................................ 17

Fed. R. Civ. P. 45(d)(1) ................................................................................ 7

Fed. R. Civ. P. 45(d)(2)(B)(ii)................................................................................ 8, 16

Fed. R. Civ. P. 45(d)(3)(A)(iv)................................................................................ 10

**Other Authorities**

Office of Inspector General, Federal Trade Commission,
   *FY 2024 Report on the Federal Trade Commission's Top Management and
   Performance Challenges* (Sept. 30, 2024)........................................................ 15

Paul Steidler, *The FTC Must Be Held Accountable for Its Widespread Leaks of
   Confidential Data*, The Hill (Oct. 19, 2024) ................................................ 15

The Sedona Conference, *Federal Rule of Civil Procedure 34(b)(2) Primer:
   Practice Pointers for Responding to Discovery Requests*,
   19 Sedona Conf. J. 447 (2018) ................................................................ 13

Non-Party Atticus, LLC ("Atticus") hereby files its opposition to Defendants Syngenta AG, Syngenta Crop Protection LLC, Syngenta Corp., and Syngenta Crop Protection LLC's (collectively, "Syngenta") motion to compel a subpoena response.

Thus far, Atticus has been served with five separate third-party subpoenas, trickling in across eight months. In total, the subpoenas include 156 document requests, based on 170 defined terms (and in many cases based on differing definitions for the same terms). Across the five subpoenas, 86 document requests seek "all documents." At bottom, the subpoenas effectively are asking Atticus to produce documents and information spanning almost its entire business. The extraordinary collective scope of the multiple subpoenas underscores the undue burden and expense placed on Atticus as a third party.

Even so, Atticus has been willing to work with the various parties to undertake reasonable efforts to produce documents and information that are proportional to the needs of the cases. Critical to minimizing the burden and expense on Atticus as a third party is its need to coordinate its review and production of documents and information. Atticus was served the fifth subpoena only recently, on November 15, 2024, and that subpoena contained 65 document requests. With its counsel working through the Thanksgiving holiday week, Atticus prepared and served its objections and responses to the most recent subpoena on Friday, November 29, 2024.

The breadth and number of these subpoenas have already subjected Atticus to significant burden and expense, which Atticus is seeking to minimize. If Atticus is required to produce all documents and information in response to Syngenta's overbroad subpoena

1

(as well as the other subpoenas), Atticus should be allowed to coordinate its search efforts. Additionally, the subpoenaing parties should bear the significant costs imposed on Atticus, pursuant to Federal Rule of Civil Procedure 26(c)(1)(B).

Most importantly, Syngenta has already obtained the relief it is requesting. Syngenta's motion asks that Atticus be ordered either (1) to meet and confer or (2) to produce documents. Atticus has already met and conferred and is continuing to work with Syngenta, as well as the other parties, to reach reasonable compromises on the overly broad discovery requests. Syngenta's motion should therefore be denied as moot. Further, given that Atticus is working to coordinate discovery requests from multiple parties, it is premature to burden the Court with having to resolve a purported dispute about one subpoena.

## FACTS AND PROCEDURAL HISTORY

The present litigation stems from the FTC's investigation into certain allegedly anti-competitive practices of Syngenta and Corteva. In November 2020, the FTC served a Civil Investigative Demand ("CID") on Atticus, seeking documents and information of a scope more limited than what is currently being sought. Atticus undertook a significant effort to review documents, and it ultimately produced over 20,000 pages of documents in response to the CID. Additionally, Atticus's CEO Randall Canady testified at an investigative hearing on January 20, 2022. That was the last of Atticus's involvement, until more recently.

On April 29, 2024, Atticus was served a subpoena by the FTC in the present action. On May 28, 2024, Atticus timely served its objections and responses to the FTC subpoena. Atticus also began the process of coordinating the production of documents and other data

2

for its response. The FTC subpoena contains twenty-two requests for production. During the months following the subpoena, Atticus met and conferred with the FTC on the subpoena and produced its first responsive documents to the FTC on September 16, 2024.

On August 2, 2024, Atticus was served a second subpoena by Corteva, in the present action. The Corteva subpoena contains twenty-nine requests for production, many of which differed in scope from the requests in the FTC subpoena. About a week later, Atticus was served a third subpoena by Syngenta. The Syngenta subpoena contains an additional twenty-nine requests for production, many of which comprise numerous sub-parts and sub-requests. In early September, Atticus timely served its objections and responses to both the Corteva and Syngenta subpoenas.

In September and November, Atticus was served two additional subpoenas. On September 23, 2024, Atticus accepted service of the subpoena from the Arkansas Attorney General in *State of Arkansas ex rel. Griffin v. Syngenta Crop Protection AG*, 4:22-cv-01287-BSM (E.D. Ark. 2024), a parallel antitrust action against Syngenta and Corteva. The Arkansas subpoena contains eleven document requests. On October 21, 2024, Atticus timely served its objections and responses to the Arkansas subpoena.

On November 15, 2024, Atticus was served the fifth subpoena, this one by the plaintiffs in *Meadows v. Syngenta Crop Protection AG*, No. 1:22-cv-01128-TDS-JEP (M.D.N.C. filed Dec. 26, 2022), a parallel antitrust action against Syngenta and Corteva that has been consolidated for pre-trial purposes with *In re Crop Protection Products Loyalty Program Litigation*, No. 1:23-md-03062-TDS-JEP (M.D.N.C. filed Feb. 6, 2023). The

*Meadows* subpoena contains sixty-five document requests. Atticus worked on its responses and objections through the Thanksgiving holiday and served those on the *Meadows* plaintiffs' counsel on Friday, November 29, 2024. The *Meadows* plaintiffs have not yet contacted Atticus to arrange a meet and confer on Atticus's objections and responses.

All in all, Atticus is now dealing with five separate third-party subpoenas that were served across eight months. The subpoenas contain 156 separate document requests, based on 170 defined terms (and in some cases based on differing definitions for the same terms). Across the five subpoenas, 86 document requests seek "all documents" relating to various document categories.

When Atticus was served the FTC subpoena, the deadline for the parties to substantially complete production was scheduled for January 22, 2025, with the deadline for fact discovery scheduled for April 22, 2025. *See* Dkt. No. 195 at 7. Atticus understands that these deadlines have remained the same. *See* Dkt. No. 264.

Upon receiving the three subpoenas totaling 80 document requests from Plaintiffs and Defendants in the present matter, Atticus continued working on preparing for production, including responding and objecting to the multiple subpoenas while working to understand the full scope of the numerous individual requests. The immense scope of these requests has forced Atticus to expend substantial time managing the logistics of reviewing and producing documents sufficient to satisfy these requests without overburdening Atticus.

4

Since being served the Syngenta subpoena, Atticus received several email communications from counsel for Syngenta through September and October 2024. Mot. Ex. F. Atticus was not yet prepared to begin production, given the time remaining for fact discovery, *i.e.*, April 22, 2025, and the additional subpoenas in the related litigations. Syngenta did not indicate an intent to file a motion to compel in any of its emails to Atticus. *Id.*

Atticus noted the various communications from Syngenta and other parties about the outstanding subpoenas and was prepared to respond once Atticus had identified all potential discovery issues. Indeed, after being served all expected subpoenas, Atticus is now working with the various parties to coordinate a reasonable production of responsive documents, subject to confidentiality concerns.

On October 31, 2024, upon Plaintiffs' and Defendants' joint motion, the Court set December 2, 2024, as the deadline for discovery negotiations with third parties. Dkt. No. 264.

On November 22, 2024, counsel for Atticus met and conferred via videocall with counsel for Syngenta to discuss the scope of Atticus's requested production as well as the parameters for a potential search. During this call, the parties raised issues about limiting the scope of the active ingredients and temporal limits covered by Syngenta's requests. The parties also discussed preparing a list of Atticus custodians from whom discovery might be produced, as well as the search parameters for obtaining production from Atticus's custodians. Syngenta proposed using search terms for each custodian, and Atticus agreed to review Syngenta's proposed terms.

Following the meet and confer, Syngenta provided Atticus with a list of the specific active ingredients for which Syngenta is seeking discovery from Atticus. Syngenta also proposed search strings for each custodian. The proposed search strings appear to be extraordinarily broad, comprising scores of search combinations. For example, for a proposed category titled "Product Concerns," Syngenta offered an "OR" Boolean search string that has (a) twenty-one search terms (specified as word or word fragments, such as "azoxy* OR meso*") combined with (b) thirty-one additional search terms (specified as phrases, words, or word fragments, such as "support* OR service* OR valu* OR help*"), with (c) the search terms being within twenty words of each other. Needless to say, this exemplary search string appears extraordinarily vast, resulting in 651 distinct combinations of search terms, and with the terms being within 1 to 20 words of each other. Syngenta proposed twelve additional searches, many of similar scope. Atticus is evaluating the scope of these proposed strings.

In addition to meeting with Syngenta, Atticus recently met and conferred with the FTC about its subpoena. During the meet and confer, on November 25, 2024, the FTC identified a narrower set of document requests to be prioritized for production. The FTC and Atticus also agreed to set a date by which the parties would reach agreement on Atticus's custodians and search parameters.

On November 26, 2024, Atticus also had a meet and confer with Corteva about its subpoena. Corteva wants Atticus to agree to produce all responsive documents that arise in its reasonable search, regardless of whether Atticus uses search strings. Corteva also

6

Case 1:22-cv-00828-TDS-JEP     Document 270     Filed 12/02/24     Page 11 of 26

provided suggested search strings that appear similar but not identical to Syngenta's search strings.

## ARGUMENT

## I. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Stephenson v. Atrium Health, Inc.*, No 3:21-CV-103-FDW-DCK, 2021 WL 5407856, at *2 (W.D.N.C. Nov. 18, 2021) (quoting *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 240-41 (E.D. Va. 2012)).

Moreover, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "[T]he court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs." *Med. Components, Inc v. Classic Med., Inc.*, 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002) (citing *In re Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (emphasizing concern for subpoena respondents, especially where "[i]t is also noteworthy that

7

the respondents are strangers to the antitrust litigation; insofar as the record reflects, they have no dog in that fight")). Rule 45(d)(2)(B)(ii) further requires that the Court must protect a third party from significant expense from complying with the subpoena. *See also Linder v. Calero-Porcarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).

## II. The Motion to Compel is Moot

A motion to compel is rendered moot when there has already been compliance with the request. *See e.g., United States v. Jackson*, 184 Fed. App'x 307, 308 (4th Cir. 2006) (denying as moot a motion to compel where the court was already in possession of requested records); *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2024 WL 1080141, at *2 (E.D.N.C. Mar. 8, 2024) (denying as moot a motion to compel where the parties came to an agreement on production); *Hicks v. United States*, No. 7:09-CR-9-FL, 2014 WL 1795155, at *11 (E.D.N.C. May 6, 2014) (denying as moot a motion to compel where the requested identities of parties had already been disclosed).

Here, the motion is rendered moot because Syngenta has obtained the relief it is requesting. Syngenta and Atticus have met and conferred, and they are continuing their discussion of "the scope of Atticus's response to the Subpoena," which is precisely the relief requested. Mem. 6. The parties met and conferred on November 22, 2024. During the videocall, the parties discussed limiting the scope of the active ingredients implicated by Syngenta's requests and limiting the temporal limits for Atticus's production. The parties further discussed identifying Atticus custodians for responsive discovery.

8

Following the meet and confer, Syngenta provided Atticus with a list of seventeen active ingredients that Syngenta is requesting to be included in Atticus's document collection, which is excessively broad although narrower than the active ingredients initially sought by Syngenta's subpoena. Syngenta also provided Atticus with proposed search strings that Syngenta asserts are necessary for a complete collection and production of documents. Atticus is reviewing the proposed strings and will work with Syngenta to narrow the search strings as appropriate for a non-party subpoena.

Atticus will also be producing its organizational chart to Syngenta this week, as requested by Syngenta.[1] This production is intended to facilitate the identification of necessary custodians.

Accordingly, Syngenta's request that the parties "meet and confer to discuss the scope of Atticus's response to the Subpoena" has been granted, rendering Syngenta's motion moot. Given that the parties are now working to limit the scope of Syngenta's overbroad discovery requests, there is no need to grant the motion.[2] *See, e.g.*, *Roberts v. Evans*, No. 5:21-CV-356-D, 2023 WL 5673114, at *1 (E.D.N.C. Sept. 1, 2023) (dismissing "without prejudice as moot defendants' motions to compel discovery").

_____

[1] Atticus had previously produced its organization chart to the FTC on August 14, 2024. Atticus presumed that that document had been subsequently produced by the FTC to Defendants. In any event, Atticus will produce it to Defendants this week as well.

[2] Further, Syngenta's motion to compel expressly "reserves the right to return to this Court seeking further relief," if necessary. Mem. 6. Reserving that right is the most efficient and reasonable path forward, should the parties' ongoing discussion prove unsuccessful. For now, Syngenta's motion to compel should be dismissed as moot without prejudice, such that Syngenta may refile at a later date if necessary.

9

### III.  The Broad Requests Are Unduly Burdensome to Atticus as a Third Party

Federal Rule of Civil Procedure 26(b)(1) limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  "Simply because 'requested information is discoverable under Rule 26 does not mean that discovery must be had.'"  *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2024 WL 1080141, at *2 (E.D.N.C. Mar. 8, 2024) (quoting *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)).

"When discovery is sought from nonparties, however, its scope must be limited even more" than what is required by the proportionality requirement of Rule 26.  *Va. Dep't of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).  "A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified."  *Id.* (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)); *see also United States ex rel. Hayes v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:16-CV-00750-GCM, 2021 WL 665109, at *2-4 (W.D.N.C. Feb. 19, 2021).

Syngenta is correct that "boilerplate objections" are improper, but objections are not considered boilerplate when they are "stated with specificity" or "stated with particularity."  *See, e.g.*, *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 528 (S.D.W. Va. 2007); *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328-29 (D. Md. 2006).

Here, as an initial point, Syngenta offers only a bare contention that Atticus's objections are not "sufficient to support noncompliance."  *See* Mem. 5.  Syngenta overlooks

that each objection is specific to each overbroad request to which it is responding. For example, Atticus specifically objected to Syngenta's Request Nos. 2-6, 9-10, 15, and 18-27, which seek discovery related to "Relevant Crop Protection Products." Mot. Ex. G at 13-37. Syngenta defines that term to include "any AI" that is "effective against the same or similar pests on a same crop" as Syngenta's active ingredients at issue in the litigation. *Id.* at 4-5, 8. Atticus explained that Syngenta's definition "potentially encompasses every pesticide product, including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment or plant growth regulator." *Id.* at 8.

Other objections are likewise particularized to each Request. Atticus's objections to Request Nos. 6-8, 11-13, 16-18, and 24-25 identify crucial terms that Syngenta failed to define. Mot. Ex. G at 16-36. Atticus's objections to Request Nos. 6 and 9-13 identify information that is more likely to be found in the possession of different third parties, such as "information related to 'other Supplier's Generic Products.'" *Id.* at 17, 19-23.

These objections are in no way "boilerplate objections," as Syngenta claims, but are instead specific identifications of how Syngenta's requests are overly broad. Accordingly, Atticus's objections are more than mere boilerplate. *See, e.g.*, *Bäumer v. Schmidt*, 423 F. Supp. 3d 393, 409 (E.D. Mich. 2019) ("Respondent's objection to the document requests on the basis that they seek documents more readily available from a more convenient, less burdensome, and less expensive source, i.e., Volkswagen, is not a boilerplate objection."); *Quezada v. Lindsey*, No. 1:10–cv–01402–AWI–SAB, 2014 WL 5500800, at *5-21 (E.D. Cal. Oct. 30, 2024) (finding numerous objections to undefined terms for vagueness were

"specifically tailored to the deficiencies in Plaintiff's request, and [are] not . . . boiler-plate objection[s]").

Syngenta cites *Kinetic Concepts, Inc. v. CovaTec Inc.*, 268 F.R.D 226 (M.D.N.C. 2010), for the proposition that a subpoenaed party "waive[s] any legitimate objection they may have had" for "failing to present valid objections." *See* Memo. 5. But this case is not on point. First, in *Kinetic Concepts*, "[t]wo-thirds of the 'Responses and Specific Objections' consist[ed] *entirely* of all or some portion of the [same] boilerplate paragraph." 268 F.R.D. at 229 (emphasis in original). In contrast, Atticus tailored its objections for each discovery request, for example, by identifying specific objectionable wording in the requests and reasons for the bases of its objections.

Second, and equally important, *Kinetic Concepts* concerns a motion to compel between a defendant and a plaintiff during discovery. 268 F.R.D. at 237. The court was not dealing with a Rule 45 subpoena on a non-party. *Id.* As noted above, a "more demanding variant of the proportionality analysis" applies when assessing the burdens imposed on a third party by a Rule 45 subpoena. *Va. Dep't of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). Accordingly, the ruling in *Kinetic Concepts* does not account for the increased scrutiny for third-party discovery.[3]

---

[3] Along similar lines, *Walls v. Ford Motor Co.*, No. 1:20-cv-98, 2021 WL 1723154 (M.D.N.C. Apr. 30, 2021), cited by Syngenta for the same proposition, also involves a motion to compel between a plaintiff and a defendant and does not involve a non-party subpoena. Furthermore, in *Walls*, the court found that, while "some portions of the

In short, Atticus has not waived any objection to Syngenta's overly broad requests. This waiver issue need not be decided at this time, however, in view of the mootness of Syngenta's motion. The parties are currently working together to reach a compromise on the proper scope of the various discovery requests.

Beyond Atticus's proper objections, Syngenta's subpoena requests are overbroad and unduly burdensome on their face. For example, nineteen requests seek "All Documents and Communications." Mot. Ex. G. "[D]ocument requests seeking 'any and all' documents 'relating to' are overly broad." *Donnelly v. Arringdon Dev., Inc.*, No. 1:04CV889, 2005 WL 8167556, at *1 (M.D.N.C. Nov. 8, 2005); *see also United States v. Anthem, Inc.*, No. 20-CV-2593, 2024 WL 1116276, at *4 (S.D.N.Y. Mar. 13, 2024) ("The drafters of the 2015 amendments sought to reduce costs and burdens of discovery and, with respect to Rule 34, prohibit 'overly broad, non-particularized discovery requests that reflexively sought all documents.'" (quoting *The Sedona Conference, Federal Rule of Civil Procedure 34(b)(2) Primer: Practice Pointers for Responding to Discovery Requests*, 19 Sedona Conf. J. 447, 452-53 (2018))); *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2018 WL 6048262, at *2 (N.D. Ill. Nov. 19, 2018) ("To the extent CDK seeks 'all documents and communications' in a category or in response to a request for production, its requests are overbroad, burdensome, and not proportional to the needs of the case."); *In*

---

preliminary statement qualify as impermissible boilerplate objections, others do not." *Id.* at *10. Accordingly, the court denied a request to strike the objections but ordered the objecting party to supplement objections on which it withheld responsive information. *Id.* at *11.

*re NCAA Student-Athlete Name & Likeness Licensing Litig. for N. Dist. of California*, No. 1:11MC63, 2012 WL 2281253, at *6 (M.D.N.C. June 18, 2012) (denying motion to compel third party to produce documents because the plaintiffs "failed to show that the relevance of these documents to the underlying action outweighs the burden on the ACC of producing responsive documents covering a ten-year span"); *Williams v. Hernandez*, 221 F.R.D. 414, 416 (S.D.N.Y. 2004) (noting that a document request for "any and all" e-mails is overly broad and burdensome); *Alexander v. FBI*, 186 F.R.D. 21, 34-35 (D.D.C. 1998) (finding "any and all" document request to be "[o]n its face . . . clearly over broad").

    As noted, Atticus properly objected to Syngenta's definition of "Relevant Crop Protection Product," which would encompass every alternative to each active ingredient at issue in the litigation. Accordingly, requests such as Request Nos. 20 and 22 are each seeking around fifteen separate transaction-level parameters for each sale or purchase of a "Relevant Crop Protection Product." Such requests are plainly overbroad, and Syngenta has not explained how such broad discovery from a third party is proportional to the needs of the case. *See Va. Dep't of Corrections*, 921 F.3d at 189 ("But courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005))).

## IV. Protective Order Concerns

Beyond the unreasonable scope of Syngenta's subpoena, Atticus has recently learned that that highly confidential information within FTC's possession and control has been leaked to the media with increasing frequency.

> The internal watchdog agency is respectful but clear in its assertions. "The volume of unauthorized disclosures of FTC leaks to the media has been steadily increasing," it says. "Although it is possible that some of the leaks could have originated from outside sources, it appears that the media may be obtaining significant amounts of nonpublic information from sources within the FTC."

*See* Paul Steidler, *The FTC Must Be Held Accountable for Its Widespread Leaks of Confidential Data*, The Hill (Oct. 19, 2024)[4] (quoting Office of Inspector General, Federal Trade Commission, *FY 2024 Report on the Federal Trade Commission's Top Management and Performance Challenges* (Sept. 30, 2024)[5]).  Atticus does not currently have a complete understanding about the FTC leak issues, but Atticus must express its concern about the protection of its confidential trade secret information, especially considering the immense amount of Atticus's confidential information being sought in this litigation.  Accordingly, in view of this recent news, Atticus respectfully submits that it needs additional time to

---

[4] https://thehill.com/opinion/white-house/4939465-federal-trade-commission-news-leaks-report/.
[5] https://oig.ftc.gov/reports/top-management-challenges/fy-2024-report-federal-trade-commissions-top-management-and.

assess its position concerning the production of highly sensitive information and whether an amendment to the protective order is necessary.[6]

## V. Costs and Fees

### A. Atticus Should Be Protected Against Significant Burden and Expense

Courts have the authority to allocate expenses and award fees and costs for responding to a Rule 45 subpoena. Under Rule 45(d)(2)(B)(ii), the Court must allocate at least a portion of the significant expenses, including attorney's fees, to the subpoenaing party. *See Linder*, 251 F.3d at 182 ("If [the expenses are significant], the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'"); *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516-SRU, 2017 WL 4679228, at *1 (D. Conn. Oct. 18, 2017) (granting fees and costs, determining that cost-shifting under Rule 45 is "mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena").

Here, given the breadth of the requests, full compliance (as demanded by Syngenta and perhaps other parties) will almost certainly impose a significant, continuing burden and expense on Atticus. If Atticus is compelled to produce documents and information as broadly as the parties demand, then Atticus should be permitted to seek an order requiring Syngenta and the other parties to bear their fair share of the expense. *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-md-192-RLR, 2022 WL 19919934, at *6-7 (S.D.

---

[6] Additionally, as the Court is aware, there is a pending protective-order dispute in the MDL Action. *See* Dkt. No. 261, at 4-5.

Fla. May 23, 2022) (granting compensation of attorney's fees and other expenses to sub-poenaed party for responding to Rule 45 subpoena); *Lawson v. Spirit AeroSystems, Inc.*, No. 18-cv-1100-EFM-ADM, 2020 WL 3288058, at *22 (D. Kan. June 18, 2020) (granting fees and expenses to subpoenaed party in an amount to be determined upon subsequent briefing).

## B. Syngenta's Costs and Fees Should Not Be Awarded

Although Federal Rule of Civil Procedure 37(a) allows for an award of attorney's fees following the disposition of a motion to compel, fees need not be awarded where "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objec-tion was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). A party satisfies the "substantially justified" standard "if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think [that the failure to produce discovery is] correct, that is, if it has a reasonable basis in law and fact.'" *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 Fed. App'x 586, 599 (4th Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Furthermore, courts rarely award fees against a third party when the motion is denied as moot. *See e.g., Belk, Inc. v. Meyer Corp.*, No. 3:07-CV-168-DCK, 2009 WL 703704, at *7 (W.D.N.C. Mar. 16, 2009).

Here, Syngenta has not requested attorney's fees. It instead merely reserves the right to seek attorney's fees if it needs to "seek[] further relief with respect to the

17

Subpoena." Memo. 6. Further, given that the motion should be deemed moot because the parties are currently engaged in discussions to resolve any outstanding discovery issues, there should be no basis to award fees. Finally, based on the full explanation above, Atticus's actions are substantially justified given the applicable deadlines in the case, its efforts to coordinate among five outstanding subpoenas, and its reasonable objections to overly broad document requests.

## VI. Conclusion

For the foregoing reasons, Syngenta's Motion to Compel Non-Party Atticus LLC's Subpoena Response should be denied as moot. Alternatively, if the Court decides not to deny the motion as moot, the Court should order all parties serving subpoenas to continue to meet and confer such that Atticus can provide a reasonable production while minimizing the additional burdens imposed on it as a non-party and permitting Atticus to seek a reasonable award of expenses, as may be required.

Dated: December 2, 2024

Respectfully submitted,

/s/ Robert J. Morris
Robert J. Morris
N.C. State Bar No. 15981
Smith, Anderson, Blount, Dorsett,
Mitchell & Jernigan, LLP
150 Fayetteville Street, Suite 2300
Raleigh, NC 27601
Tel: (919) 821-1220
jmorris@smithlaw.com

18

Matthew J. Dowd (D.C. Bar No. 998373)*
Robert J. Scheffel (D.C. Bar No. 489490)*
Elliot A. Gee (D.C. Bar No. 90001700)*
Dowd Scheffel PLLC
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20006
Tel: (202) 559-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com
egee@dowdscheffel.com

*Special Appearance to be filed

*Attorneys for Non-Party
Atticus, LLC*

19

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(d)(1)

I hereby certify that the brief complies with Local Rule 7.3(d)(1) as it contains 4,538 words as counted using the word count feature of Microsoft Word.

/s/ Robert J. Morris
Robert J. Morris
N.C. State Bar No. 15981
Smith, Anderson, Blount, Dorsett,
Mitchell & Jernigan, LLP
150 Fayetteville Street, Suite 2300
Raleigh, NC 27601
Tel: (919) 821-1220
jmorris@smithlaw.com

*Attorney for Non-Party*
*Atticus, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on December 2, 2024, the following was filed with the Court

and served on Plaintiffs and Defendants via the Court's electronic filing system:

1. Non-Party Atticus LLC's Opposition to Defendants Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC's Motion To Compel Non-Party Atticus LLC's Subpoena Response.

/s/ Robert J. Morris
Robert J. Morris
N.C. State Bar No. 15981
Smith, Anderson, Blount, Dorsett,
Mitchell & Jernigan, LLP
150 Fayetteville Street, Suite 2300
Raleigh, NC 27601
Tel: (919) 821-1220
jmorris@smithlaw.com

*Attorney for Non-Party*
*Atticus, LLC*