# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

FEDERAL TRADE COMMISSION, STATE
OF CALIFORNIA, STATE OF
COLORADO, STATE OF ILLINOIS,
STATE OF INDIANA, STATE OF IOWA,
STATE OF MINNESOTA, STATE OF
NEBRASKA, STATE OF OREGON, STATE
OF TENNESSEE, STATE OF TEXAS,
STATE OF WASHINGTON, and STATE OF
WISCONSIN,

              Plaintiffs,

     v.

SYNGENTA CROP PROTECTION AG,
SYNGENTA CORPORATION,
SYNGENTA CROP PROTECTION, LLC,
and CORTEVA, INC.,

              Defendants.

Case No. 1:22-cv-00828-TDS-JEP

---

IN RE CROP PROTECTION PRODUCTS
LOYALTY PROGRAM ANTITRUST
LITIGATION

Case No: 1:23-md-3062-TDS-JEP

---

**SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, AND
SYNGENTA CROP PROTECTION, LLC'S REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION TO COMPEL NON-PARTY ATTICUS LLC'S SUBPOENA
<u>RESPONSE</u>**

Pursuant to Local Rules 7(h) and 37.1(c), Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC (collectively, "Syngenta") submit this Reply Memorandum in further support of its Motion to Compel Atticus LLC ("Atticus") to respond and produce documents pursuant to Syngenta's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena").

## PRELIMINARY STATEMENT

Atticus's lengthy Opposition to Syngenta's motion to compel seeks to distract the Court from a very simple issue: Atticus has failed to respond to routine communications or meaningfully engage with Syngenta through the meet-and-confer process for over three months, with no indication that anything will change moving forward. Atticus argues that Syngenta's motion is now "moot," but nothing Atticus has done since Syngenta filed its motion shows that is the case. Atticus's non-responsiveness to Syngenta's communications after a single 30-minute conversation on November 22, 2024 (held at Syngenta's initiative and only after months of Atticus's counsel blatantly ignoring Syngenta's outreach), demonstrates that Atticus will never timely or meaningfully engage with Syngenta unless compelled by the Court to do so. Indeed, Atticus's Opposition raises many issues for the very first time that would have been most appropriate to discuss in a meet-and-confer; yet, Atticus refused multiple Syngenta requests to meet and, after meeting once, returned to its delay tactics. Those delay tactics have culminated in a short, performative holding letter sent by Atticus's counsel after-hours on the final business day before Syngenta's Reply was due—a letter transparently drafted to suggest to the Court a fictitious state of Atticus's engagement with Syngenta.

Accordingly, Syngenta requests that the Court order Atticus to meet and confer with Syngenta sufficient to reach agreement or impasse on the parameters of Atticus's production in

2

response to Syngenta's Subpoena no later than January 10, 2025. To the extent that Syngenta and Atticus fail to reach agreement by January 10, 2025, Syngenta requests that the Court subsequently enter an order compelling Atticus to produce all non-privileged documents and data in its possession, custody, or control responsive to the Subpoena.

## **BACKGROUND**

Syngenta moved to compel Atticus's response to the Subpoena following months of unequivocal non-responsiveness from Atticus's counsel. Since Syngenta filed its motion to compel, counsel for Syngenta and Atticus met and conferred once, at Syngenta's initiative, on November 22, 2024. (*See* Dkt. 270, p. 5.) In that discussion, Syngenta sought to understand the scope of Atticus's pre-complaint production to the Federal Trade Commission ("FTC") of documents and structured data in response to the FTC's Civil Investigative Demand ("CID"). In particular, Syngenta requested additional information regarding the parameters of Atticus's prior production in an affirmative effort to work within Atticus's existing document and data collection protocol and reduce any incremental collection burden on Atticus in responding to the Subpoena. In an email later that same day, Syngenta (1) memorialized the follow-up items discussed during the meet and confer and requested a current Atticus organizational chart (also raised during the meet and confer), (2) provided the search term proposal,[1] and (3) requested that Atticus supplement its CID data productions to incorporate additional relevant products and more recent time periods.[2]

---

[1] Syngenta requested that Atticus provide the search terms it used in responding to the CID to allow Syngenta to work within Atticus's document-collection protocol, but Atticus requested that Syngenta instead propose search terms, which Syngenta promptly did.

[2] Syngenta did not "provide[] Atticus with a list of seventeen active ingredients that Syngenta is requesting to be included in Atticus's document collections." (Dkt. 270, p. 9). Rather, Syngenta identified certain relevant active ingredients that Atticus appeared to currently sell based upon public information and requested that Atticus supplement its CID-responsive structured data productions to include data on those other products. Syngenta has not requested that Atticus broadly collect documents about the identified active ingredients. Had Atticus met and conferred with

3

(Ex. K, pp. 2-3). In that same email, Syngenta provided its availability to continue the discussion on November 25 and 26. (*Id.* at 2). Having heard nothing in response, Syngenta sent a follow-up email to Atticus's counsel on November 26. (*Id.* at 1). On November 27, still having heard nothing from Atticus, Syngenta sent another email—this time requesting identification of Atticus's local counsel for logistical coordination related to the pending motion. (*Id.* at 8.)

True to form, and consistent with Atticus's prior dilatory conduct, Atticus did not acknowledge or reply to any of Syngenta's emails until after 6:30pm on December 6, 2024, the last business day before this Reply was due, when it sent Syngenta via email a short letter and a preexisting organizational chart that had already been in Atticus's counsel possession for at least several months. (*Id.* at 1). That correspondence from November 18, 2024 through December 6, 2024 is attached as <u>Exhibit K</u>.

Atticus's letter—in which the header, addressee information, and signature block take up just as much space as any substance of the letter—is a bare attempt to preempt Syngenta's Reply, while continuing to do nothing substantive to respond to the Subpoena. Atticus's letter purported to "update" Atticus's responses and objections to the Subpoena and "continue[]" Atticus's "effort to resolve the pending dispute concerning the subpoena." (Ex. K, p. 16). Even though Atticus has yet to respond to the Subpoena, Atticus devoted a substantial part of its letter to a request (similar to that in Atticus's Opposition) that Syngenta pay Atticus's costs and expenses for responding to the Subpoena. (*Id*). Atticus's letter then purported to address certain issues that Syngenta raised

---

Syngenta in good faith, Atticus's purported confusion about this and other alleged concerns in Atticus's Opposition (such as its mistaken belief that there is a pending Protective Order motion, *id.* at 16, n.6), could have been avoided and not unnecessarily occupy the Court's time.

on the November 22 meet and confer, but failed to advance resolution of any of the outstanding issues meaningfully:

- Atticus did not address Syngenta's structured data requests. To aid Atticus's data productions in response to the Subpoena, Syngenta provided, in its November 22 correspondence, Atticus a list of certain active ingredients relevant to the Subpoena and identified which of those active ingredients Atticus appeared to sell based upon public information. (*Id.* at 2-3). In its letter, Atticus "correct[ed]" the subset of relevant active ingredients on the list that Atticus has sold over the Subpoena time period.[3] (*Id.* at 17). But Atticus said nothing about any intent or plans to respond to Syngenta's structured data requests—the sole purpose of identifying the active ingredient list.

- Atticus almost verbatim recycled the contention from its Opposition that some (though not all) of Syngenta's proposed search strings are "overbroad." (*Id.*; Dkt. 270, p. 6). Atticus did not propose alternative search stings nor provide definitive search volumes that would allow for any real discussion of search terms or volumes, aside from a statement that its unspecified "preliminary analysis" indicated that the search stings would "identify tens of thousands of documents," (Ex. K, p. 17)—hardly an unreasonable volume and in line with document volumes collected or produced by other non-parties.

- Atticus provided no new information regarding its document custodians. Atticus repeated its representation from the November 22 meet and confer that Atticus CEO Randy Canady was a document custodian for pre-complaint CID productions. (*Id.*). Atticus then directed

---

[3] Atticus omitted from its "correct[ed]" list at least one active ingredient—glyphosate—that Atticus appears to have sold during the Subpoena time period based upon third-party industry data.

Syngenta to check the metadata for Atticus's prior CID productions to confirm the identities of additional custodians. (*Id.*). However, the metadata in Atticus's CID productions do not provide adequate information on Atticus's custodians or the locations where Atticus searched for documents. By way of example, two "custodians" listed in the metadata are "DropZone" and "SecureNA Email," but Atticus has not provided any information on what or who these "custodians" are or what they signify. And over one-third of Atticus's produced documents appear to have no associated custodian. Without further information regarding Atticus's CID collection protocol (which Atticus declined to provide without explanation), Syngenta expects Atticus to produce responsive documents from at least the same set of custodians in response to the Subpoena.

- Atticus provided an organizational chart, which despite Atticus having produced to the FTC on August 14, 2024 (Dkt. 270, p. 14 n.1), took Atticus two weeks to send to Syngenta following its initial request.[4]

While Atticus claims throughout its Opposition that Syngenta and Atticus are currently "working together" with respect to Atticus's Subpoena response (*e.g.*, Dkt. 270, pp. 14, 18), Atticus's dilatory, bad faith conduct shows otherwise. Were Atticus serious about working with Syngenta, Atticus would have responded promptly to one or more of Syngenta's follow-up emails after the November 22, 2024 meet and confer. (*See* Ex. K, pp. 1-15). Instead, Atticus ignored Syngenta completely, spent its time drafting a 26-page Opposition raising issues never previously raised

---

[4] This organizational chart was not produced to Syngenta prior to December 6, 2024 by Atticus or Plaintiffs.

with Syngenta, and then only finally "responded" (with a de-facto non-response) on the Friday night before Syngenta's Monday due date for its reply.

<u>**ARGUMENT**</u>

1. <u>Syngenta's motion to compel is not moot</u>. Atticus's willingness to meet and confer *once* with Syngenta and then wait two weeks to send a performative and largely non-responsive letter hardly renders Syngenta's motion to compel moot. As an initial matter, Syngenta requested that the Court "enter an order compelling Atticus to produce all non-privileged documents in its possession, custody, or control responsive to the Subpoena, or, *in the alternative*, to timely meet and confer to discuss the scope of Atticus's response to the Subpoena." (Dkt. 266, p. 6 (emphasis added)). Syngenta requested Atticus's full compliance with the Subpoena precisely because Atticus has shown no willingness to meet and confer promptly and take meaningful steps toward production. Because Atticus has not yet complied with Syngenta's Subpoena, Syngenta's motion is not moot.

In any event, Atticus has not yet met and conferred with Syngenta in a manner sufficient to resolve any dispute. As the cases Atticus cited in its Opposition show, a motion to compel is moot only when compliance with the movant's request has eliminated the dispute—which has not happened here. For example, in *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2024 WL 1080141 (E.D.N.C. Mar. 8, 2024), the court denied a motion to compel production as moot because the non-movant "aver[red] in a sworn declaration that its forthcoming production [would] include all of the data . . . responsive to" the movant's request. *Id.* at *2; *see also United States v. Jackson*, 184 Fed. App'x 307, 308 (4th Cir. 2006) (denying pro se litigant's motion to compel production of specific records to the court as moot because the court had already received them); *Hicks v. United States*, No. 7:09-CR-9-FL, 2014 WL 1795155, at *11 (E.D.N.C. May 6, 2014) (dismissing

7

as moot, in part, a motion to compel disclosure of identities of confidential informants because such identities had already been disclosed, but granting the remainder of the motion as to the informants whose identities had not yet been disclosed).

In the context of meeting and conferring to resolve a dispute, the parties must make "diligent attempts to resolve differences." *See* LR 37.1. Atticus's joining of a single meeting, bracketed by extended periods of silent inaction, hardly constitutes "diligen[ce]." While Syngenta and Atticus have met once, Atticus's subsequent delay is at odds with its suggestion that the parties are "now working" to "discuss the scope of Atticus's response to the Subpoena." (Dkt. 270, p. 14). Atticus has taken weeks to respond to Syngenta's requests to further meet and confer, produced no documents in response to the Subpoena, failed to timely provide basic foundational information such as prior custodian information, provided no specific basis for its claims that Syngenta's Subpoena requests are "unduly burdensome," and not proposed any alternative scope of production to advance negotiations. For these reasons, Syngenta's request for Court intervention remains ripe.

2. Syngenta has taken reasonable steps to prevent undue burden on Atticus. Given Atticus's failure to meet and confer or otherwise engage adequately with Syngenta, Atticus's argument that the Subpoena requests are "unduly burdensome" puts the cart before the horse. Atticus served responses and objections to the Subpoena which, among other things, stated that Atticus was "willing to meet and confer to discuss the scope of" various requests and "to allow [Syngenta] the opportunity to more clearly identify the documents it seeks and their relevance." (Dkt. 265-7). Syngenta attempted several times over a multi-month period to meet and confer with Atticus exactly as Atticus requested, but Atticus refused to do so. If Atticus has legitimate burden concerns, those are best resolved mutually via the meet-and-confer process that Atticus continues

8

to delay.  Atticus's avoidance tactics risk prejudicing Syngenta's ability to timely obtain the discovery it is entitled to receive.  It unfortunately appears an actual court order, and not merely the prospect of a court order, is needed to get Atticus to meaningfully engage and satisfy its obligations.

Yet despite Atticus's inaction, Syngenta has worked to prevent any undue burden on Atticus consistent with Syngenta's obligations under Rule 45(d)(1).  Where a party has taken steps to "narrow" non-party discovery requests "in order to reduce the burden and focus on only the most relevant information," such requests are not unduly burdensome.  *See Assure Re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*, No. 1:21MC25, 2021 WL 9682281, at *3 (M.D.N.C. Sept. 28, 2021).  Here, Syngenta has taken several steps to cabin the Subpoena requests to prevent undue burden on Atticus, including (1) seeking to identify relevant document custodians; (2) proposing targeted search terms to aid Atticus in identifying relevant documents; and (3) permitting Atticus to use the format of its prior CID data productions to address the Subpoena's data requests.

3. <u>Atticus is not entitled to costs</u>.  Atticus asks permission to seek an order "requiring Syngenta and the other parties to bear their fair share of [Atticus's] expense" in responding to the Subpoena and other Parties' subpoenas.[5]  (Dkt. 270, p. 21).  As Atticus recognizes, any motion for cost-shifting is premature and Syngenta reserves the rights to oppose any future motion by Atticus for cost-shifting.[6]  For avoidance of doubt, Syngenta does not agree to reimburse Atticus's

---

[5] This request, Atticus's raising of other issues about other Parties' subpoenas, and Atticus's hypothetical concern about the FTC's compliance with a court order are outside the scope of Syngenta's Motion to Compel.

[6] As stated previously, Syngenta reserves the right to return to this Court seeking further relief with respect to the Subpoena, including the payment of attorneys' fees and expenses. Syngenta's motion is not moot, nor has Atticus provided any valid reason why its failure to engage in routine meet-and-confer processes is "substantially justified" (Dkt. 270, p. 18).  That Atticus devoted a section of its Opposition to the argument that it should not be

9

costs and expenses for responding to the Subpoena, as Atticus requests in its December 6 letter. (*See* Ex. K, p. 16).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should order Atticus to meaningfully meet and confer with Syngenta sufficient to reach agreement or impasse on the parameters of Atticus's production in response to Syngenta's Subpoena no later than January 10, 2025. To the extent that Syngenta and Atticus fail to reach agreement by January 10, 2025, Syngenta requests that this Court enter a subsequent order compelling Atticus to produce all non-privileged documents and data in its possession, custody, or control responsive to the Subpoena.

[SIGNATURE PAGE TO FOLLOW]

---

liable for Syngenta's attorneys' fees and expenses (*id*., p. 17-18)—when Syngenta did not expressly request such relief—is telling: Atticus knows its conduct is unjustifiable. To the extent that Atticus is legitimately concerned over costs, had its counsel engaged in good faith discussions with Syngenta, the present motion practice would not have been necessary, and Atticus (and Syngenta) could have saved the costs associated with this briefing.

10

This, the 9th day of December, 2024.

/s/ Patrick M. Kane
Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
Sean T. Placey
N.C. Bar No. 56683
splacey@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400

Charles S. Duggan*
charles.duggan@davispolk.com
James I. McClammy*
james.mcclammy@davispolk.com
Daniel J. Thomson*
daniel.thomson@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: 212.450.4292
Facsimile: 212.701.5292

Benjamin M. Miller*
benjamin.miller@davispolk.com
901 15th Street, NW
Washington, DC 20005
DAVIS POLK & WARDWELL LLP
Telephone: 202.962.7133
Facsimile: 202.962.7196

*Specially appearing under Local Rule
83.1(e)

*Attorneys for Syngenta Crop Protection AG,
Syngenta Corporation, and Syngenta Crop
Protection, LLC.*

11

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned hereby certifies that the foregoing brief complies with Local Rule 7.3(d)(1) in that it contains no more than 3,125 words as reported by word processing software.

This the 9th day of December, 2024.

*/s/ Patrick M. Kane*
Patrick M. Kane
N.C. Bar No. 36861

*Attorney for Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC*
