# Exhibit A

# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ET AL. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   1:22-cv-00828 |
| SYNGENTA CROP PROTECTION AG, ET AL. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                        ATTICUS, LLC

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Document Requests, Definitions, and Instructions in Appendix A.

| Place: 400 7th Street, SW, Washington DC 20024, or a place within 100 miles of Cary, NC, as agreed upon by counsel | Date and Time:<br><br>05/29/2024 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     04/29/2024

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Michael J. Turner |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   THE FEDERAL TRADE COMMISSION on behalf of all Plaintiffs                , who issues or requests this subpoena, are:

Michael Turner, 400 7th Street, SW, Washington DC 20024, mturner@ftc.gov, (202) 326-3649.

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:22-cv-00828

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows: by email to Matthew Dowd,

counsel (Dowd Scheffel PLLC) for Atticus, LLC, pursuant to agreement of counsel to accept email service at

mdowd@dowdscheffel.com _____ on *(date)* 04/29/2024 ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 04/29/2024 _____              /s/ Michael J. Turner _____
                                                                   *Server's signature*

                                                  Michael Turner, Attorney, Federal Trade Commission
                                                                   *Printed name and title*
                                                  400 7th Street, SW, Washington, DC 20024

                                                  _____
                                                                   *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**APPENDIX A TO THE FEDERAL TRADE COMMISSION'S
SUBPOENA TO ATTICUS, LLC TO PRODUCE DOCUMENTS,
INFORMATION, OR OBJECTS**


**DOCUMENTS SOUGHT BY THE SUBPOENA**


1.  Organizational charts and/or personnel directories for each year for the Company
    as a whole and for each of the Company's parents, subsidiaries, facilities, or
    divisions engaged in any activity relating to the production or sale of any Covered
    Crop Protection Product.

2.  All data, reports, articles, studies, surveys, analyses, publications, or assessments
    relating to Covered Crop Protection Products that were created, produced, or
    published by any third-party data provider, advisory firm, consultant, or market
    research firm, such as AgData, Fanwood, Kynetec, Kline, Stratus, Market Edge,
    Ipsos, or Context.

3.  Data Sets sufficient to show, for each Covered Crop Protection Product sold by the
    Company in, or for use in, the United States:

    a.   the EPA registration number;

    b.   the Active Ingredient(s) within such Crop Protection Product and pounds of
         each Active Ingredient per unit of Crop Protection Product;

    c.   date each the Active Ingredient within such Crop Protection Product was
         first registered with the EPA by the Company;

    d.   date that an End-Use Crop Protection Product containing the Active
         Ingredient was first sold in the United States by the Company;

    e.   date that any End-Use Crop Protection Product containing the Active
         Ingredient was discontinued by the Company, if applicable;

    f.   the product name on packaging and any other names of the relevant End-
         Use Crop Protection Product sold by the Customer that incorporates such
         Crop Protection Product;

    g.   product classification indicating whether the product is a Manufacturing-
         Use Crop Protection Product or End-Use Crop Protection Product;

h.   product identification and classification variables used by the Company for the relevant Crop Protection Product, such as category, subcategory, segment, fighting brand, private label, or value-added product; and

i.   conversion factor to determine approximate acres treated per unit of the Crop Protection Product.

4.   For each Crop Protection Product identified in Specification 3, provide Data Sets sufficient to show, for each month:

a.   net sales in dollars;

b.   gross sales dollars;

c.   gross margin and cost of goods sold;

d.   the list price and a description of any discounts or rebates offered by the Company;

e.   the average net unit price charged by the Company (i.e., net of any promotional discounts or rebates);

f.   the identity, Customer number(s), and classifications of the Customer to which the product was sold (e.g., manufacturer, distributor, independent retailer, cooperative, farmer, broker, and/or other (specify)); and

g.   quantity sold.

5.   Provide Data Sets sufficient to show, on an annual basis, the following metrics for each Crop Protection Product identified in Specification 3:

a.   each component of cost of goods sold, including (i) Active Ingredient; (ii) other ingredients; (iii) freight or shipping charges; (iv) storage; (v) distribution costs, whether fixed or marginal; (vi) direct labor; (vii) plant overhead; (viii) depreciation; and (ix) any other component of cost of goods sold tracked in the ordinary course of business, stated separately in dollars and indicating method of allocation, if any;

b.   any deductions or allowances (such as returns, discounts, rebates, or other promotions) that the Company uses to calculate net sales and/or gross margins;

c.   gross margin in dollars, indicating method of calculation;

d.    each category of other expenses, including (i) promotional expenses; (ii) marketing expenses; (iii) detailing expenses; (iv) advertising expenses; (v) research and development expenses; and (vi) any other significant expenses related to or allocated to each Crop Protection Product tracked in the ordinary course of business, stated separately in dollars; and

e.    net margin in dollars.

6.    For each Crop Protection Product identified in Specification 3, provide Data Sets sufficient to show the following transaction level data:

a.    the unique transaction identifier;

b.    the transaction date;

c.    the Customer identification number and zip code location for shipment;

d.    all applicable product identification numbers (UPC, SKU, or other);

e.    the package size and package type;

f.    the list price, invoice price, and net price;

g.    the quantity of units;

h.    any deductions or allowances (such as returns, discounts, rebates, or other promotions), stated separately by type;

i.    all chargebacks, returns, and taxes, stated separately by type;

j.    net sales, in units and dollars, after accounting for any deductions or allowances, chargebacks, returns, and taxes;

k.    gross sales, in units and dollars;

l.    the payment terms and conditions;

m.    the shipping and distribution terms, including the shipped to or delivered to location name and address, and the shipped from or picked up from location name and address; and

n.    cost of goods sold, in dollars, stating separately each component of the cost of goods.

3

7.  Provide Data Sets sufficient to show, for each Loyalty Product, all data compensation payments, to include the amount, date, and recipient of payment.

8.  Provide Data Sets sufficient to show the Company's manufacturing capacity for each Loyalty Product Active Ingredient on an annual basis.

9.  Documents sufficient to show the meaning or definition of any term or field used in Data Sets produced by the Company in response to this Subpoena, including data dictionaries or glossaries.

10. All Documents and Communications requested, received, produced, filed, or exchanged in this litigation, any related litigation, or any litigation that relates to any Exclusivity Condition or Loyalty Product, including *In re Crop Protection Products Loyalty Program Antitrust Lit.*, No. 1:23-md-03062-TDS-JEP (M.D.N.C.) and *Arkansas* ex rel. *Griffin v. Syngenta Crop Protection AG*, 4:22-cv-01287-BSM (D. Ark.).

11. All Documents and Communications produced, filed, or exchanged in any litigation or arbitration in which Company was a party that involved Corteva or Syngenta, including:

    a.  all white papers, written disclosures, and responses to interrogatories or requests for admission;

    b.  all trial, hearing, and deposition transcripts and exhibits associated with sworn testimony, including that of experts;

    c.  all sworn declarations and affidavits, including that of experts, and all Documents cited or referred to therein;

    d.  all briefs and memoranda in support of or in opposition to any substantive motion (including any motion to dismiss, motion for summary judgment, or motion for directed verdict) or any pretrial motion *in limine* or *Daubert* motion, and all Documents cited or referred to therein;

    e.  all briefs and memoranda filed by the Company in connection with any appeal, and all Documents cited or referred to therein; and

    f.  any settlement Agreement proposed or entered, and all Documents Relating to the negotiation of such settlement.

12. One copy of each regularly prepared financial and profit and loss statement, budget, cost center and profitability report, or other financial report for the

4

Company as a whole or any of the Company's subsidiaries or business units engaged in any activity relating to any Loyalty Product.

13. All Documents constituting or reflecting strategic, marketing, pricing or sales Plans relating to any Loyalty Product, including Documents Relating to:

    a.    product market Plans, business Plans or reviews, strategic Plans or reviews, Board of Director or senior leadership presentations, minutes, and agendas, forecasts, or similar documents;

    b.    all marketing materials relating to each Loyalty Product, including all current selling aids and promotional materials; and

    c.    the Company's or any other Person's price lists, pricing Plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, and pricing decisions (including discount or rebate decisions).

14. All Documents relating to competition in the manufacture or sale of any Loyalty Product, including market studies, forecasts, surveys, and all other Documents relating to:

    a.    the business performance of the Company or any of its Competitors;

    b.    the sales or share of sales of any Crop Protection Product or of any type of category of Crop Protection Product;

    c.    supply and demand conditions, including Customer, retailer, and end-user preferences and segmentation;

    d.    Crop Protection Products not produced or sold by the Company and that have a chemical composition that differs from the Company's Loyalty Products, but that are used on the same crops or that target the same pests;

    e.    attempts to win Customers from other Persons and losses of Customers to other Persons; and

    f.    the competitive position or relative strength or weakness of the Company and each of its actual or potential Competitors in the production and sale of Crop Protection Products.

15. Documents sufficient to show the Company's analysis of the distribution or sale of its Crop Protection Products through distributors, retailers, brokers, online sales platforms, including internal assessments, internal communications, and external communications relating to:

5

a. relative strengths and weaknesses of Persons involved in the distribution and sale of Crop Protection Products;

b. analyses of costs, efficiency, and attributes of different methods of distribution;

c. services, capabilities, and other benefits provided by Persons involved in the distribution or sale of Crop Protection Products;

d. manufacturing or supplying white-label or private label Crop Protection Products for distributors;

e. supply and demand conditions; and

f. decisions regarding which method of distribution to pursue.

16. Documents related to communications with Customers regarding the actual or potential sale of products containing a Covered Crop Protection Product, including:

a. internal discussions regarding sales strategies targeted to specific Customers or categories of Customers and/or distribution channels;

b. sales call reports or summaries of communications with Customers or indirect Customers;

c. communications with Customers offering price and quantity terms, programs, or other incentives for Customers to purchase the Company's product(s);

d. communications with Customers related to whether they will purchase, or potentially purchase, from Company;

e. the Company's discussion regarding Customer's acceptance or rejection of the Company's offer to sell its Covered Crop Protection Products;

f. communications with Customers about Exclusivity Conditions on any Covered Crop Protection Product; and

g. communications with Customers relating to any complaint or concern that Customers have with Syngenta and/or Corteva, including but not limited to supply, quality, pricing, and use of Exclusivity Conditions related to any Covered Crop Protection Product.

17.    Documents relating to any exclusionary or anticompetitive effect attributable to any Exclusivity Condition on any Crop Protection Product, including:

   a.    all Documents mentioning or discussing any Exclusivity Condition;

   b.    any assessments of the total market available for any Active Ingredient subject to an Exclusivity Condition;

   c.    Documents discussing or describing Company's inability to sell Crop Protection Products, Customers refusing to purchase Crop Protection Products, or Customers purchasing only minimal amounts;

   d.    Documents discussing or describing sourcing Active Ingredient from the Basic Manufacturer for white label or private label Crop Protection Products that Company manufactured for, or supplied to, a distributor and any related exclusionary effect, such as reduced output or higher cost;

   e.    Documents discussing or describing sourcing Active Ingredient from the Basic Manufacturer for Company's Crop Protection Products and any related exclusionary effect, such as reduced output or higher cost; and

   f.    any impact on the Company's decision-making process with respect to investment or innovation in an Active Ingredient subject to an Exclusivity Condition.

18.    All Documents relating to requirements and costs of entry into or expansion in the manufacture, distribution, or sale of any Covered Crop Protection Product, including:

   a.    research and development, planning, and design requirements;

   b.    licenses, registrations, and any necessary governmental and Customer approvals including FIFRA requirements and data compensation;

   c.    sales, marketing, and service activities;

   d.    production and distribution system requirements (including any requirements for multi-area, multi-plant, multi-product, or vertically integrated operations or distribution);

   e.    decisions on whether and how much of Active Ingredient to import;

   f.    retrospective analyses of profitability of the cost of entry or expansion for any Loyalty Product;

7

g.     estimates and forecasts of profitability for the cost of entry or expansion for any Loyalty Product; and

h.     any other factors required to attain any available cost savings or other efficiencies necessary to compete profitably or efficiently.

19.    All Documents comparing, discussing, describing, or analyzing the sales, margins, market access, end-user preferences and substitutability, or other financial or competitive metric of any of the Company's Loyalty Products sold in the United States to that of any equivalent Company product sold in any other country or region.

20.    All Documents comparing, discussing, describing, or analyzing the change in sales, margins, market access, market share, end-user preferences and substitutability, or other financial or competitive metric of any Covered Crop Protection Product before and after any Exclusivity Condition it was affected by was changed or that Company believes was changed.

21.    All Documents relating to Communications with Syngenta, Corteva, or (in the case of acetochlor) Bayer regarding Loyalty Products, including:

a.     discussions or negotiations regarding actual or potential sales or supply of Loyalty Products;

b.     agreements regarding the supply of Loyalty Products;

c.     discussions or negotiations regarding treatment of Loyalty Products under programs containing an Exclusivity Condition;

d.     discussions regarding data compensation for any Loyalty Product; and

e.     discussions involving the Company's sale of Loyalty Products to any Customer.

22.    All Documents assessing or evaluating the total and available capacity, or total and available future capacity, of any manufacturing facility relied upon by Company for supply of any Loyalty Product Active Ingredient.

## DEFINITIONS

1. "**Company**," "**the Company**," "**You**," or "**Your**" shall mean **ATTICUS, LLC**, and its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures.

2. "**Active Ingredient**" or "**AI**" shall mean an ingredient, chemical, or molecule in a pesticide product that kills, controls, prevents, mitigates, or repels pests. *See* 40 C.F.R. § 158.300.

3. "**Agreement**" or "**Contract**" shall mean any oral, written, or implied contract, arrangement, understanding, or Plan, whether formal or informal, between two or more Persons, together with all modifications or amendments thereto.

4. "**And**," as well as "**Or**" shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any Specification all information that otherwise might be construed to be outside the scope of the Specification.

5. "**Any**" shall be construed to include "all," and "All" shall be construed to include "any."

6. "**Basic Manufacturer**" means, as to an Active Ingredient, the original EPA registrant of such Active Ingredient (including affiliates, co-registrants, and successors in interest thereof).

7. "**Bayer**" means Bayer Crop Science, and its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents (including Bayer Group and Bayer AG), predecessors (including The Monsanto Company), divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures.

8. "**Benefit**" means any actual or potential price or non-price benefit or consideration, including payments; price discounts; rebates; supply preferences or assurances; and technical or engineering support.

9. "**Collaborative Work Environment**" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different

9

devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include Microsoft SharePoint sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis (e.g., Confluence), work tracking software (e.g., Jira), and blogs.

10. "**Communication**" or "**Communicate**" shall refer to any transmittal, exchange, transfer, or dissemination of information, regardless of the means by which it is accomplished, and includes all communications, whether written or oral, internal or external, and all discussions, meetings, telephone communications, text messages, instant messenger messages, or email messages.

11. "**Competitor**" means any Person, other than Company, that produces, manufactures, formulates, or imports any Crop Protection Product for sale within the United States, and includes both generic pesticide companies and branded pesticide companies.

12. "**Corteva**" means Corteva, Inc., also known as Corteva Agriscience, and its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents, predecessors (including the Dow Chemical Company, DowAgrosciences, Dow Dupont, and E.I. du Pont de Nemours and Company), divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures.

13. "**Covered Crop Protection Product**" means any Crop Protection Product containing or consisting of any of the following Active Ingredients: abamectin, acetochlor, azoxystrobin, lambda cyhalothrin, imidacloprid, mesotrione, methomyl, methoxyfenozide, metolachlor (including s-metolachlor (s-moc)), oxyfluorfen, oxamyl, paraquat, propyzamide (pronamide), or rimsulfuron.

14. "**Crop Protection Product**" means any pesticide product, formulated product, or manufacturing-use or technical-grade Active Ingredient, including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment or plant growth regulator. The term "Crop Protection Product" includes each Loyalty Product.

15. "**Customer**" means any Person that purchases or has purchased any Crop Protection Product directly from the Company.

16. "**Data Set**" means data held by, or accessible to, the Company in the ordinary course of business that is provided by the Company to respond to any

10

Specification, in the form and with the accompanying information called for in Instruction 15.

17.     "**Documents**" means all written, printed, recorded, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Company, including information stored on and communications sent through social media accounts like Twitter, Facebook, or Snapchat; emails, chats, instant messages, text messages, direct messages, and any other communications sent through Messaging Applications; audio/visual recordings, wherever stored; documents contained in Collaborative Work Environments and other document databases; copies of documents that are not identical duplicates of the originals in a person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company. Employee-Owned Devices used to store or transmit documents responsive to this Subpoena are considered in the possession, custody, or control of the Company. "Documents" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document.

18.     "**Documents Sufficient to Show**" shall mean both Documents that are necessary and Documents that are sufficient to provide the specified information.

19.     "**Each**" shall be construed to include "every," and "Every" shall be construed to include "each."

20.     "**Employee-Owned Device**" means any computer, phone, tablet, or other electronic device owned by a Company employee that has been used to conduct business for Company.

21.     "**End-Use Crop Protection Product**" means a Crop Protection Product that has been formulated into a form suitable for sale to and application by end users, whether or not such product is in its final packaged form.

22.     "**Exclusivity Condition**" means any offer, Agreement, or program term pursuant to which a Basic Manufacturer conditions any Benefit to a Customer on that Customer limiting its purchase or sale of Crop Protection Products for which an Active Ingredient is sourced from a different manufacturer; whether or not that offer, Agreement, or program requires a Customer to completely refrain from the purchase or sale of Crop Protection Products for which such Active Ingredient is sourced from a different manufacturer. Exclusivity Conditions may include loyalty or market share conditions or requirements, loyalty or market share discounts, bundled discounts, volume discounts, or volume commitments. The term "Exclusive" shall be construed in accordance with the foregoing.

23. "**Including**" means "including, but not limited to," and "include" shall be construed accordingly.

24. "**Loyalty Product**" means any Crop Protection Product containing or consisting of any of the following Active Ingredients: acetochlor, azoxystrobin, mesotrione, metolachlor (including s-metolachlor (s-moc)), oxamyl, or rimsulfuron.

25. "**Manufacturing-Use Crop Protection Product**" means any Crop Protection Product other than an End-Use Crop Protection Product, including any Crop Protection Product in manufacturing-use and/or technical-grade form.

26. "**Messaging Application**" refers to any electronic method that has ever been used by the Company and its employees to communicate with each other or entities outside the Company for any business purposes. "Messaging Application" includes platforms, whether for ephemeral or non-ephemeral messaging, for email, chats, instant messages, text messages, and other methods of group and individual communication (e.g., Microsoft Teams, Slack). "Messaging Application" may overlap with "Collaborative Work Environment."

27. "**Person**" includes the Company, and shall mean any natural person, corporate entity, partnership, association, joint venture, governmental entity, trust, or any other organization or entity engaged in commerce.

28. "**Plan**" means any decision, strategy, intention, proposal, policy, recommendation, or consideration, whether or not precisely formulated, finalized, authorized, or adopted, and "Planning" shall be construed accordingly.

29. "**Relating to**," "**referring to**," "**regarding**," or "**about**" mean, in whole or in part, constituting, containing, concerning, embodying, reflecting, discussing, explaining, describing, analyzing, identifying, stating, reporting, forecasting, supporting, refuting, relating to, referring to, regarding, about, dealing with, or in any way pertaining to.

30. "**Syngenta**" means Syngenta Crop Protection, LLC, Syngenta Corporation, and Syngenta Crop Protection AG, and their respective directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, their respective domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of their respective domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures.

# INSTRUCTIONS

1.  Each Specification in this subpoena calls for responsive Documents generated, prepared, created, edited, sent, or received during the time period from January 1, 2017, to the present.

2.  Documents requested are those in the actual or constructive possession, custody, or control of the Company, or its representatives, attorneys, or other agents, including without limitation consultants, accountants, lawyers, or any other persons retained, consulted by, or working on behalf of or under the direction of the Company, wherever they may be located.

3.  Without waiving any right or ability for the FTC to seek information that would allow it to assess Your previous claims of privilege, and to challenge the basis for any of those claims, You need not produce, in response to this subpoena, documents or data previously submitted in the course of the FTC's pre-complaint investigation *In the Matter of Pesticides*, FTC File No. 191-0031.

4.  Whenever necessary to bring within the scope of a Specification a response that might otherwise be construed to be outside its scope, the following constructions should be applied:

    a.  construing the singular form of any word to include the plural and the plural form to include the singular;

    b.  construing the past tense of a verb to include the present tense and the present tense to include the past tense;

    c.  construing the masculine form to include the feminine form; and

    d.  construing the term "date" to mean the exact day, month, and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters.

5.  Unless otherwise stated, construe each Specification independently and without reference to any other for the purpose of limitation.

6.  If the Company objects to any part of a Specification, set forth the basis for your objection and respond to all parts of the Specification to which you do not object. Any ground not stated in an objection will be waived. All objections must be made

13

with particularity and must set forth all the information upon which the Company intends to rely in response to any motion to compel.

7.     All objections must state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the scope of any search for Documents or redacting or withholding any responsive Document. If the Company withholds responsive information pursuant to any general objection, the Company should so expressly indicate. If, in responding to any Specification, the Company claims any ambiguity in interpreting either the Specification or a Definition or Instruction applicable thereto, set forth as part of the Company's response the language deemed to be ambiguous and the interpretation used in responding to the Specification, and produce all Documents that are responsive to the Specification as interpreted.

8.     If, in responding to any Specification, you assert any ambiguity in interpreting either the Specification or a definition or instruction applicable thereto, please state the language deemed to be ambiguous and the interpretation used in responding to the Specification, and produce all documents that are responsive to the Specification as you interpret it.

9.     Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") prior to discussing the information with the FTC. If any Document responsive to a particular Specification contains unresponsive Sensitive PII or SHI, redact the unresponsive Sensitive PII or SHI prior to producing the Document.

     a.     The term "Sensitive PII" means an individual's Social Security Number alone; or an individual's name, address, or phone number in combination with one or more of the following:

        i.     date of birth;
       ii.     driver's license number or other state identification number, or a foreign country equivalent;
     iii.     passport number;
     iv.     financial account number; or
      v.     credit or debit card number.

     b.     The term "SHI" includes medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. Sensitive Health Information relates to the past,

14

present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

10.     These Specifications are continuing in nature. If at a later date the Company identifies additional relevant information, the Company must supplement any responses or Document productions promptly as required under the Federal Rules of Civil Procedure.

11.     All documents responsive to this subpoena:

    a.     shall be produced in complete form, unredacted unless privileged, and in the order in which they appear in the Company's files. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether you consider the entire document to be relevant or responsive to this subpoena;

    b.     shall be marked on each page with corporate identification and consecutive document control numbers when produced in image format; none of the numbers should be identical to control numbers on documents previously submitted to the FTC in the course of *In the Matter of Pesticides*, FTC File No. 191-0031; and

    c.     shall be accompanied by an affidavit of an officer of the Company stating that the copies are true, correct, and complete copies of the original documents.

12.     A cover letter shall be included with each production and shall include information sufficient to identify all accompanying media (hard drive, thumb drive, DVD, CD, secure FTP), shall identify each production on such media by assigning a Production Volume name or number, shall include the Bates range for the Documents produced in each volume, and shall include a list of load file fields in the order in which they are organized in the load file.

13.     Unless otherwise agreed among counsel, Documents responsive to this subpoena should be sent to the Federal Trade Commission (1) if under 20GB in size, by secure File Transfer Protocol ("FTP") provided by the FTC, and (2) if over 20GB in size, via FedEx or UPS at the following address:

Raul Sawh, Complete Discovery Source
Equinix
5851 West Side Avenue
North Bergen, NJ 07047
(800) 322-9280

Data Sets produced in response to Specifications 3–8 should be sent to the Federal Trade Commission BE Data Support Center using the Commission's secure FTP. For instructions on using this FTP, please contact the Federal Trade Commission BE Data Support Center by phone at 202-326-3481 or 202-326-2147 or by email at BE-DataMgt@ftc.gov. If using the FTP is not feasible, the Company's responses to this CID shall be delivered via FedEx or UPS, between 8:30 a.m. and 5:00 p.m., to the following address:

BE Data Support Center, Room H-285
600 Pennsylvania Avenue NW
Washington, D.C. 20580
Attn: Kevin Richardson and Constance Herasingh

The Company is further requested to send a copy set of any production responsive to this subpoena to counsel to Corteva and Syngenta as follows:

Cravath Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019-7475
Attn: David Marriott

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Attn: Paul Mishkin

14.     For physical media, the Company should provide notice of impending production one business day in advance and include the following information:

a.      method of delivery (i.e., FedEx or UPS);

b.      serial number(s) on the physical media used for the submission(s);

c.      production volume(s) and Bates range(s); and

d.      tracking number for package(s) as provided by mail service.

16

15. Where this subpoena calls for data that the Company maintains in database form, the Company may in, lieu of providing the requested information in the form maintained in the ordinary course of business, provide the requested data in Microsoft Excel or similar format, with all underlying data unredacted and all underlying formulas and algorithms intact; and identifying the specific company databases from which these data were obtained.

16. If the Company withholds any responsive document or masks or redacts any portion of any responsive document based on a claim of privilege or other protection from discovery, provide a log in Microsoft Excel format describing the claim and all facts supporting the claim sufficient for the FTC and the Court to assess the claim of privilege, in accordance with Rule 45(e)(2) of the Federal Rules of Civil Procedure.

17. Documents and electronically stored information shall be produced in the following form.

    a. *Format for production of documents – documents existing in electronic format.* All documents existing in electronic format shall be produced in single page, Group IV tagged image file format ("TIFF"), or equivalent, at a resolution of at least 300 dpi in accordance with the following:

        i. Image files shall be produced along with Concordance/Opticon image load files linking the images to the corresponding document that indicate the beginning and ending of each document. Each image file shall be named according to a unique corresponding Bates number associated with the document. Each image file shall be branded according to the Bates number and the agreed-upon confidentiality designation. Image files shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes.

        ii. Notwithstanding the foregoing, all documents that the Company received from Third Parties or is reproducing in whole or in part from the production files of a historical litigation should be produced in the same manner and form, including native files and all metadata, as the producing party received from the producing Third Party or originally produced in the relevant historical litigation.

17

iii.     Extracted text, to the extent it exists, should be provided in document-level text files.

b.     *Format for production of documents – hardcopy or paper documents*. All documents that are hardcopy or paper files shall be scanned, produced in the same manner as documents existing in electronic format. In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hardcopy documents should be logically unitized). The Company shall undertake to unitize documents correctly.

c.     *Production media and encryption of productions*. If the Company so desires, it can encrypt the production data using an industry acceptable encryption method. In such a case, the Company shall forward the password to decrypt the production data separately from the CD, DVD, or external drive on which the production data is saved.

d.     *Deduplication*. Removal of duplicate Documents should only be done on exact duplicated Documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying de-duplication, metadata identifying all custodians in possession of each Document that is removed as a duplicate must be provided in the "Alternative Custodian" metadata field, to the extent applicable. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of de-duplication, must be identified in the BCC metadata field specified in Appendix 1. In the event of rolling production of Documents, the Company will, as needed supplement the load files with updated Alternative Custodian information, as well as update BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata overlay and will be provided by the Company on an ongoing basis.

e.     *Email threading*. Where multiple email messages are part of a single chain or "thread," the Company is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and inline objects (including inline images and hyperlinks) and including identical text, identical subject(s), identical

18

senders and recipients (including in "to," "cc," and "bcc" fields), within the Last In Time Email. Only email messages for which all inline objects, text, subject(s), senders, recipients, and attachments are fully contained in and identical to the relevant portion of the Last In Time Email will be considered less inclusive email messages that need not be produced.

f.    *Native files*. The Company shall produce Microsoft Excel or other spreadsheet files, and Microsoft PowerPoint files in native format, and respond to additional reasonable and specific requests for the production of files or file types in native format where appropriate.

g.    *Color documents*. Color documents should be produced as color images (JPEGs) or in native format.

h.    *Images with Poor Legibility*. If a document is originally produced in an illegible or difficult to read form, the Company shall have the option of responding by producing a native-file version of the document or producing a replacement image of legible quality.

i.    *Culling and Filtering*. The Company shall use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

j.    *Metadata*. Load files shall include, where applicable, the information listed in the Table of Metadata Fields, set forth below. However, the Company is not obligated to include metadata for any document that does not contain such metadata in the original. The Company shall not degrade the searchability of documents as part of the document production process.

**Table of Metadata Fields**

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the email. |
| Bates End | Bates number of the last page of the email. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of the person from whom the email was obtained. |
| Email BCC | Names of person(s) blind copied on the email. |
| Email CC | Names of person(s) copied on the email. |
| Email Date Received | Date the email was received. [MM/DD/YYYY] |
| Email Date Sent | Date the email was sent. [MM/DD/YYYY] |
| Email From | Names of the person who authored the email. |

20

| Metadata/Document Information | Description |
|---|---|
| Email Message ID | Microsoft Outlook Message ID or similar value in other message systems. |
| Email Subject | Subject line of the Email or Calendar Invite |
| Email Time Received | Time email was received. [HH:MM:SS AM/PM] |
| Email To | Recipients(s) of the email. |
| Email Time Sent | Time email was sent. [HH:MM:SS AM/PM] |
| Page count | Number of pages in record. |
| File size | Size of document in KB. |
| File Extension | File extension type (*e.g.*, docx, xlsx). |
| Record Type | Indicates form of record: E-Doc, E-Doc Attachment, Email, Email Attachment, HardCopy, Calendar Appt, Text Message, Chat Message etc. |
| Folder | File path/folder location of email. |

21

| Metadata/Document Information | Description |
|---|---|
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Redaction | Indicates Yes or No status regarding document redactions. |
| Text Link | Relative path to submitted text file.<br><br>Example:  \TEXT\001\FTC0003090.txt |

i. Submit email attachments other than those described in subpart (f) in TIFF (Group IV) format. For all email attachments, provide extracted text and the following metadata and information as applicable:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |

22

| Metadata/Document Information | Description |
|---|---|
| Custodian | Name of person from whom the file was obtained. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY] |
| Page count | Number of pages in record. |
| File size | Size of document in KB. |
| File Extension | File extension type (*e.g.*, docx, xlsx). |
| Filename with extension | Name of the original native file with file extension. |
| Record Type | Indicates form of record: E-Doc, E-Doc Attachment, Email, Email Attachment, HardCopy, Calendar Appt, Text Message, Chat Message etc. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Author | Author field value extracted from the metadata of a native file |

| Metadata/Document Information | Description |
| --- | --- |
| Last Author | Last Saved By field value extracted from metadata of a native file |
| Redaction | Indicates Yes or No status regarding document redactions. |
| Native Link | Relative file path to submitted native or near native files.<br><br>Example: \NATIVES\001\FTC0003090.xls |
| Parent ID | Document ID or beginning Bates number of the parent email. |
| Text Link | Relative path to submitted text file.<br>Example: \TEXT\001\FTC0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

ii. Submit all other electronic documents, other than those described in subpart (f), in TIFF (Group IV) format accompanied by extracted text and the following metadata and information as applicable:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Beg Attach | First Bates number of attachment range. |
| End Attach | Ending Bates number of attachment range. |
| Custodian | Name of the original custodian of the file. |
| Date Created | Date the file was created.  [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY HH:MM:SS AM/PM] |
| Record Type | Indicates form of record: E-Doc, E-Doc Attachment, Email, Email Attachment, HardCopy, Calendar Appt, Text Message, Chat Message etc. |
| Author | Author field value extracted from the metadata of a native file |
| Last Author | Last Saved By field value extracted from metadata of a native file |
| Redaction | Indicates Yes or No status regarding document redactions. |

25

| Metadata/Document Information | Description |
|---|---|
| Page count | Number of pages in record. |
| File size | Size of document in KB. |
| File Extension | File extension type (*e.g.*, docx, xlsx). |
| Filename with extension | Name of the original native file with file extension. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Originating Path | File path of the file as it resided in its original environment. |
| Production Link | Relative path to submitted native or near native files. Example: \NATIVES\001\FTC0003090.xls |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC-0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

26

iii. Submit documents stored in hard copy in TIFF (Group IV) format accompanied by OCR with the following information:

| Metadata/Document Information | Description |
|---|---|
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Bates number of the last page of the document. |
| Record Type | Indicates form of record: E-Doc, E-Doc Attachment, Email, Email Attachment, HardCopy, Calendar Appt, Text Message, Chat Message etc. |
| Page count | Number of pages in record. |
| Redaction | Indicates Yes or No status regarding document redactions. |
| Custodian | Name of person from whom the file was obtained. |

iv. Submit redacted documents in TIFF format accompanied by extracted text or OCR with the metadata and information required by relevant document type as listed above.