# Exhibit B



1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20006
(202) 559-9175
https://www.dowdscheffel.com

*Via Electronic Mail*

**May 28, 2024**

Michael J. Turner
Federal Trade Commission
400 7th Street, SW
Washington, D.C. 20024
mturner@ftc.gov

   Re: Rule 45 Subpoena to Atticus, LLC in *Federal Trade Commission v.*
      *Syngenta Crop Protection AG*, No. 1:22-CV-00828 (M.D.N.C.)

Dear Michael:

   We write on behalf of Atticus, LLC in response to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena") served on Atticus on or around April 29, 2024, on behalf of Plaintiff Federal Trade Commission ("FTC"). Atticus requests a meet and confer to discuss the scope and necessity of the requested documents.

   Atticus provides these objections and responses in accordance with the FTC's agreement that any objections and responses will be due May 28, 2024. Atticus reserves its right to raises additional objections if new information arises or in the interest of justice.

**<u>Objections to the Definitions</u>**

   **DEFINITION 1.** "Company," "the Company," "You," or "Your" shall mean ATTICUS, LLC, and its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures

   **OBJECTION.** Atticus objects to the definition of "Company," "the Company," "You," or "Your" as it is overly broad. For example, documents sought regarding its domestic and

foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of these entities is not relevant to the litigation, nor is the information held by them within the possession, custody, or control of Atticus. Atticus objects to the definition of "Company," "the Company," "You," or "Your" to the extent it seeks to impose discovery obligations on its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of these entities. Atticus will understand that the terms "Company," "the Company," "You," or "Your" refer to Atticus, LLC, and all responses will apply that definition.

**DEFINITION 2.** "Active Ingredient" or "AI" shall mean an ingredient, chemical, or molecule in a pesticide product that kills, controls, prevents, mitigates, or repels pests. See 40 C.F.R. § 158.300.

**OBJECTION.** Atticus objects to the definition of "Active Ingredient" or "AI" as it is overly broad. Atticus further objects to the extent the definition strays from the common industry definition of the term.

**DEFINITION 3.** "Agreement" or "Contract" shall mean any oral, written, or implied contract, arrangement, understanding, or Plan, whether formal or informal, between two or more Persons, together with all modifications or amendments thereto.

**OBJECTION.** Atticus objects to the definition of "Agreement" and "Contract" as it is overly broad. Atticus objects to the definition of "Agreement" and "Contract" to the extent it seeks information regarding agreements or contracts between Atticus and its customers because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus objects to the definition of "Agreement" and "Contract" to the extent it seeks to impose an undue burden on Atticus through the production process. Atticus will understand the terms "Agreement" or "Contract" by their plain and ordinary meaning.

**DEFINITION 4.** "And," as well as "Or" shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any Specification all information that otherwise might be construed to be outside the scope of the Specification.

**OBJECTION.** Atticus objects to the definition of "and," as well as "or," as it is overly broad. Atticus objects to the definition of "and," as well as "or," to the extent it seeks to impose an undue burden on Atticus through the production process. Atticus objects to the use of the term "specification," to refer to the document requests, as its use appears improper in the context of this litigation.

**DEFINITION 5.** "Any" shall be construed to include "all," and "All" shall be construed to include "any."

**OBJECTION.** Atticus objects to the definition of "any" as it is overly broad. Atticus objects to the definition of "any" and "all" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 6.** "Basic Manufacturer" means, as to an Active Ingredient, the original EPA registrant of such Active Ingredient (including affiliates, co-registrants, and successors in interest thereof).

**OBJECTION.** Atticus objects to the definition of "Basic Manufacturer" as it is overly broad. For example, it is not evident how the definition also defines "the original EPA registrant" and how this should be determined by Atticus.

**DEFINITION 7.** "Bayer" means Bayer Crop Science, and its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents (including Bayer Group and Bayer AG), predecessors (including The Monsanto Company), divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures.

**OBJECTION.** Atticus objects to the definition of "Bayer" as it is overly broad. For example, documents sought regarding Bayer Crop Science's "directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents (including Bayer Group and Bayer AG), predecessors (including The Monsanto Company), divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures" may not be relevant, may be unduly burdensome to identify, and may not be in the possession of Atticus. Atticus further objects as Atticus does not have any practical knowledge about what is understood by the scope of the proposed definition of Bayer. Atticus will understand that term "Bayer" to mean "Bayer Crop Science."

**DEFINITION 8.** "Benefit" means any actual or potential price or non-price benefit or consideration, including payments; price discounts; rebates; supply preferences or assurances; and technical or engineering support.

**OBJECTION.** Atticus objects to the definition of "benefit" as it is overly broad. For example, the definition places no limit on the price or non-price benefits sought, and instead lists many examples and states that production should include the listed examples. Atticus objects to the definition of "benefit" to the extent it seeks information regarding negotiations and deals between Atticus and its customers because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation.

**DEFINITION 9.** "Collaborative Work Environment" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often

**Dowd Scheffel PLLC**      3

configured as separate and closed environments, each of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include Microsoft SharePoint sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis (e.g., Confluence), work tracking software (e.g., Jira), and blogs.

**OBJECTION.** Atticus objects to the definition of "Collaborative Work Environment" as it is overly broad. For example, "a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices," can refer to an overly broad number of websites, apps, devices, or other locations of information, regardless of whether this is a primary or even intended use of the system. Atticus objects to the definition of "Collaborative Work Environment" to the extent it seeks to impose an undue burden on Atticus through the production process. Atticus objects to the definition of "Collaborative Work Environment" to the extent it seeks information regarding negotiations and deals between Atticus and its customers because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus further objects to this definition as creating unduly burdensome requirements to search and review potential electronic platforms and workspaces for which there is no reasonable means to search and review such information. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

**DEFINITION 10.** "Communication" or "Communicate" shall refer to any transmittal, exchange, transfer, or dissemination of information, regardless of the means by which it is accomplished, and includes all communications, whether written or oral, and all discussions, meetings, telephone communications, text messages, instant messenger messages, or email messages.

**OBJECTION.** Atticus objects to the definition of "communication" and "communicate" as it is overly broad. For example, information is sought as to written and oral communications, including "all discussions, meetings, telephone communications, text messages, instant messenger messages, [and] email messages." Atticus objects to the definition of "communication" and "communicate" to the extent it seeks to impose an undue burden on Atticus through the production process. Atticus objects to the definition of "communication" and "communicate" to the extent it seeks to impose discovery obligations on its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives.

**DEFINITION 11.** "Competitor" means any Person, other than Company, that produces, manufactures, formulates, or imports any Crop Protection Product for sale within the United States, and includes both generic pesticide companies and branded pesticide companies.

**OBJECTION.** Atticus objects to the definition of "competitor" as it is overly broad. For example, information is sought as to "any Person . . . that produces, manufactures, formulates, or imports any Crop Protection Product" within the U.S. whether they are generic

**Dowd Scheffel PLLC**          4

or branded pesticide companies.  Atticus objects to the definition of "competitor" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 12.**  "Corteva" means Corteva, Inc., also known as Corteva Agriscience, and its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents, predecessors (including the Dow Chemical Company, DowAgrosciences, Dow Dupont, and E.I. du Pont de Nemours and Company), divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures.

**OBJECTION.**  Atticus objects to the definition of "Corteva" as it is overly broad.  For example, documents sought regarding Corteva, Inc.'s "directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, its domestic and foreign parents, predecessors (including the Dow Chemical Company, DowAgrosciences, Dow Dupont, and E.I. du Pont de Nemours and Company), divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures" may not be relevant, may be unduly burdensome to identify, and may not be in the possession of Atticus. Atticus further objects as Atticus does not have any practical knowledge about what is understood by the scope of the proposed definition of Corteva.  Atticus will understand the term "Corteva" to mean Corteva Inc.

**DEFINITION 13.**  "Covered Crop Protection Product" means any Crop Protection Product containing or consisting of any of the following Active Ingredients: abamectin, acetochlor, azoxystrobin, lambda cyhalothrin, imidacloprid, mesotrione, methomyl, methoxyfenozide, metolachlor (including s-metolachlor (s-moc)), oxyfluorfen, oxamyl, paraquat, propyzamide (pronamide), or rimsulfuron.

**OBJECTION.**  Atticus objects to the definition of "Covered Crop Protection Product" as it is overly broad.  Specifically, information sought is not limited to each "Loyalty Product." Atticus objects to the definition of "Crop Protection Product" to the extent it seeks to impose an undue burden on Atticus as a third party through the discovery process.

**DEFINITION 14.**  "Crop Protection Product" shall mean any pesticide product, formulated product, or technical Active Ingredient, including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment or plant growth regulator. The term "Crop Protection Product" includes each Loyalty Product.

**OBJECTION.**  Atticus objects to the definition of "Crop Protection Product" as it is overly broad.  Specifically, information sought is not limited to each "Loyalty Product."  Atticus objects to the definition of "Crop Protection Product" to the extent it seeks to impose an undue burden on Atticus through the production process.  The proposed definition of "Crop Protection Product" essentially seeks to cover any type of pesticide-like product and more.

**DEFINITION 15.**  "Customer" shall mean any Person that purchases or has purchased any Crop Protection Product directly from the company.

**Dowd Scheffel PLLC**          **5**

**OBJECTION.** Atticus objects to the definition of "Customer" as it is overly broad. Atticus objects to the definition of "Customer" to the extent it seeks information regarding Atticus's customers, including their identity, because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus objects to the definition of "Customer" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 16.** "Data Set" means data held by, or accessible to, the Company in the ordinary course of business that is provided by the Company to respond to any Specification, in the form and with the accompanying information called for in Instruction 15.

**OBJECTION.** Atticus objects to the definition of "Data Set" as it is overly broad. Specifically, the documents sought through this definition are not limited by any format or medium. Atticus objects to the definition of "Data Set" to the extent it seeks to impose an undue burden on Atticus through the production process. Atticus objects to the use of the term "specification," to refer to the document requests, as its use appears improper in the context of this litigation.

**DEFINITION 17.** "Documents" means all written, printed, recorded, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Company, including information stored on and communications sent through social media accounts like Twitter, Facebook, or Snapchat; emails, chats, instant messages, text messages, direct messages, and any other communications sent through Messaging Applications; audio/visual recordings, wherever stored; documents contained in Collaborative Work Environments and other document databases; copies of documents that are not identical duplicates of the originals in a person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company. Employee-Owned Devices used to store or transmit documents responsive to this Subpoena are considered in the possession, custody, or control of the Company. "Documents" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document.

**OBJECTION.** Atticus objects to the definition of "Documents" as it is overly broad. For example, the information sought is "all written, printed, recorded, or electronically stored information ("ESI") of any kind." The definition then goes on to list a slew of examples of various types of documents, yet states that it is "not limited to" those types of documents. The definition also seeks original documents and copies that are "not identical duplicates of the originals," even if the difference is as slight as an underline or marking. The definition then seeks additional information regarding the document if it is not clear from the face of the document. Atticus objects to the definition of "Document" to the extent it seeks to impose an undue burden on Atticus through the production process. Atticus objects to the definition of the term as including Employee-Owned Devices, as such inclusion is unduly burdensome to Atticus as a third party and relevant documents and information can be obtained from other sources within Atticus. Moreover, including Employee-Owned Devices within the definition of Documents is unduly intrusive of individual privacy.

**DEFINITION 18.** "Documents sufficient to show" shall mean both Documents that are necessary and Documents that are sufficient to provide the specified information.

**Dowd Scheffel PLLC** 6

**OBJECTION.** Atticus objects to the definition of "Documents sufficient to show" as it is overly broad. Atticus objects to the definition of "Documents sufficient to show" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 19.** "Each" shall be construed to include "every," and "Every" shall be construed to include "each."

**OBJECTION.** Atticus objects to the definition of "each" as it is overly broad. Atticus objects to the definition of "each" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 20.** "Employee-Owned Device" means any computer, phone, tablet, or other electronic device owned by a Company employee that has been used to conduct business for Company.

**OBJECTION.** Atticus objects to the definition of "Employee-Owned Device" as it is overly broad. For example, information on a personal device that an employee has used to conduct unrelated business only a single time would be sought, yet would not be relevant and would not likely be in Atticus's possession. Atticus objects to the definition of "Employee-Owned Device" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 21.** "End-Use Crop Protection Product" means a Crop Protection Product that has been formulated into a form suitable for sale to and application by end users, whether or not such product is in its final packaged form.

**OBJECTION.** Atticus objects to the definition of "End-Use Crop Protection Product" as it is overly broad. For example, it is unclear how the definition also defines "form suitable for sale and application by end users," as many different forms of products might be suitable for sale and application by end users. In fact, one might posit that almost every form is suitable for sale and application by an end user. Atticus objects to the definition of "End-Use Crop Protection Product" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 22.** "Exclusivity Condition" means any offer, Agreement, or program term pursuant to which a Basic Manufacturer conditions any Benefit to a Customer on that Customer limiting its purchase or sale of Crop Protection Products for which an Active Ingredient is sourced from a different manufacturer; whether or not that offer, Agreement, or program requires a Customer to completely refrain from the purchase or sale of Crop Protection Products for which such Active Ingredient is sourced from a different manufacturer. Exclusivity Conditions may include loyalty or market share conditions or requirements, loyalty or market share discounts, bundled discounts, volume discounts, or volume commitments. The term "Exclusive" shall be construed in accordance with the foregoing.

**OBJECTION.** Atticus objects to the definition of "Exclusivity Condition" as it is overly broad. For example, the definition refers to "any offer, Agreement, or program term," which results in the term being overly inclusive. Atticus objects to the definition of

**Dowd Scheffel PLLC**      **7**

"Exclusivity Condition" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 23.** "Including" means "including, but not limited to," and "include" shall be construed accordingly.

**OBJECTION.** Atticus objects to the definition of "including" as it is overly broad and sets no discernible boundaries. Atticus objects to the definition of "including" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 24.** "Loyalty Product" means any Crop Protection Product containing or consisting of any of the following Active Ingredients: acetochlor, azoxystrobin, mesotrione, metolachlor (including s-metolachlor (s-moc)), oxamyl, or rimsulfuron.

**OBJECTION.** Atticus objects to the definition of "Loyalty Product" as it is overly broad. For example, it is not explicitly limited to products subject to an "Exclusivity Condition." Atticus objects to the definition of "Loyalty Product" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 25.** "Manufacturing-Use Crop Protection Product" means any Crop Protection Product other than an End-Use Crop Protection Product, including any Crop Protection Product in manufacturing-use and/or technical-grade form.

**OBJECTION.** Atticus objects to the definition of "Manufacturing-Use Crop Protection Product" as it is overly broad. Atticus objects to the definition of "Manufacturing-Use Crop Protection Product" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 26.** "Messaging Application" refers to any electronic method that has ever been used by the Company and its employees to communicate with each other or entities outside the Company for any business purposes. "Messaging Application" includes platforms, whether for ephemeral or non-ephemeral messaging, for email, chats, instant messages, text messages, and other methods of group and individual communication (e.g., Microsoft Teams, Slack). "Messaging Application" may overlap with "Collaborative Work Environment."

**OBJECTION.** Atticus objects to the definition of "Messaging Application" as it is overly broad. For example, "any electronic method that has ever been used by the Company and its employees to communicate with each other or entities outside the Company for any business purposes," can refer to an overly broad number of websites, apps, or programs regardless of whether communication is a primary or even intended use of the program. Atticus objects to the definition of "Messaging Application" to the extent it seeks to impose an undue burden on Atticus through the production process, particularly given Atticus's status as a third party. Atticus objects to the definition of "Messaging Application" to the extent it seeks information regarding negotiations and deals between Atticus and its customers because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus will not search for documents and responsive information based on this vague and ambiguous term.

**Dowd Scheffel PLLC**          8

**DEFINITION 27.** "Person" includes the Company, and shall mean any natural person, corporate entity, partnership, association, joint venture, governmental entity, trust, or any other organization or entity engaged in commerce.

**OBJECTION.** Atticus objects to the definition of "Person" as it is overly broad. For example, information sought regarding any natural person, corporate entity, partnership, association, joint venture, governmental entity, trust, or any other organization or entity engaged in commerce is not relevant to the litigation, nor is the information held by them within the possession, custody, or control of Atticus. Atticus objects to the definition of "Person" to the extent it seeks to impose an undue burden on Atticus through the production process. Atticus objects to the definition of "Person" to the extent it seeks to impose discovery obligations on its directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, or the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of any of its partnerships, associations, joint ventures, trusts, or any other related organizations or entities. Atticus will understand "Person" to mean Atticus, LLC.

**DEFINITION 28.** "Plan" means any decision, strategy, intention, proposal, policy, recommendation, or consideration, whether or not precisely formulated, finalized, authorized, or adopted, and "Planning" shall be construed accordingly.

**OBJECTION.** Atticus objects to the definition of "Plan" as it is overly broad. For example, the definition seeks "any decision, strategy, intention, proposal, policy, recommendation, or consideration, whether or not precisely formulated, finalized, authorized, or adopted." Atticus objects to the definition of "Plan" to the extent it seeks information regarding Atticus's plans, regardless of whether or not they were enacted, because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus objects to the definition of "Plan" to the extent it seeks to impose an undue burden on Atticus as a third party through the discovery process.

**DEFINITION 29.** "Relating to," "referring to," "regarding," or "about" mean, in whole or in part, constituting, containing, concerning, embodying, reflecting, discussing, explaining, describing, analyzing, identifying, stating, reporting, forecasting, supporting, refuting, relating to, referring to, regarding, about, dealing with, or in any way pertaining to.

**OBJECTION.** Atticus objects to the definition of "relating to," "referring to," "regarding," or "about" to the extent it seeks to impose an undue burden on Atticus through the production process.

**DEFINITION 30.** "Syngenta" means Syngenta Crop Protection, LLC, Syngenta Corporation, and Syngenta Crop Protection AG, and their respective directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, their respective domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of their respective domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures.

**Dowd Scheffel PLLC**          **9**

**OBJECTION.** Atticus objects to the definition of "Syngenta" as it is overly broad. For example, documents sought regarding Syngenta Crop Protection, LLC, Syngenta Corporation, and Syngenta Crop Protection AG, and their "directors, officers, trustees, employees, attorneys, agents, consultants, and representatives, their respective domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and the directors, officers, trustees, employees, attorneys, agents, consultants, and representatives of their respective domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures" may not be relevant, may be unduly burdensome to identify, and may not be in the possession of Atticus. Atticus further objects as Atticus does not have any practical knowledge about what is understood by the scope of the proposed definition of Syngenta. Atticus objects to the definition of "Syngenta" to the extent it seeks to impose an undue burden on Atticus as a third party through the discovery process. Atticus will understand "Syngenta" to mean "Syngenta Crop Protection LLC."

## Objections to the Instructions

Atticus generally objects to the Instructions as they are overly broad and require unduly burdensome efforts to compile the required documents. The Instructions generally impose an undue burden on Atticus as a third party, in that they seek to impose obligations and requirements that are not reasonable for a third party not involved in the present litigation.

Atticus objects to Instruction 6 in that it purports to impart an improper legal rule of waiver. Atticus objects to Instruction 6 in that it misstates that law when it states that "[a]ll objections . . . must set forth all the information upon which the Company intends to rely in response to any motion to compel."

Atticus objects to Instruction 7 in that it misstates the legal requirements for objections. Atticus objects to this instruction to the extent it purports to impose mandatory requirements beyond those imposed by the Federal Rule of Civil Procedure or the Local Rules of the Middle District of North Carolina. Atticus objects to this instruction to the extent it attempts to impose a burden beyond what is required of a third party as it is not Atticus's burden as a third-party to demonstrate the relevance or responsiveness of documents to the requesting party.

Atticus objects to Instruction 11 to the extent it purports to impose mandatory requirements beyond those imposed by the Federal Rule of Civil Procedure or the Local Rules of the Middle District of North Carolina. Atticus objects to this instruction as it attempts to prevent Atticus from properly redacting irrelevant information. Atticus maintains its right to redact irrelevant information. Atticus will Bates label produced documents as appropriate and in accordance with the relevant rules. Atticus further objects to any requirement that its officers provide affidavits authenticating every produced document as unduly burdensome and beyond what is required by the rules, particularly for a third party.

Atticus objects to Instruction 12 to the extent it purports to impose mandatory requirements beyond those imposed by the Federal Rule of Civil Procedure or the Local Rules of the Middle District of North Carolina. Atticus objects to this instruction to the extent it requires Atticus to produce a cover letter with particular information for each production that is not required by the Federal Rules of Civil Procedure. Atticus may provide a cover

**Dowd Scheffel PLLC**          **10**

letter at its discretion in a form that is consistent with the Federal Rules of Civil Procedure and its obligations as a third party.

Atticus objects to Instruction 14 to the extent it purports to impose mandatory requirements beyond those imposed by the Federal Rule of Civil Procedure or the Local Rules of the Middle District of North Carolina. Atticus will produce physical media in a manner that is consistent with the Federal Rules of Civil Procedure, the applicable local rules, and its obligations as a third party.

Atticus objects to Instruction 15 to the extent it purports to impose mandatory requirements beyond those imposed by the Federal Rule of Civil Procedure or the Local Rules of the Middle District of North Carolina. Atticus objects to this instruction to the extent that it requires a particular format for data that is not required by Federal Rules of Civil Procedure. Atticus will produce all information in a form that is consistent with the Federal Rules of Civil Procedure, the applicable local rules, and its obligations as a third party.

Atticus objects to Instruction 16 to the extent it purports to impose mandatory requirements beyond those imposed by the Federal Rule of Civil Procedure or the Local Rules of the Middle District of North Carolina. Atticus objects to this instruction to the extent that it requires a particular format of privilege log that is not required by Federal Rules of Civil Procedure. Atticus will produce all information in a form that is consistent with the Federal Rules of Civil Procedure, the applicable local rules, and its obligations as a third party.

Atticus objects to Instruction 17. The metadata request in Attachment 1.2 is overly broad. Atticus objects to this Instruction to the extent it seeks to impose an undue burden on Atticus through the production process. Atticus will produce documents in accordance with known acceptable formats including TIFF format with appropriate load files and metadata that is available as a result of the document collection process. Atticus will produce all information in a form that is consistent with the Federal Rules of Civil Procedure, the applicable local rules, and its obligations as a third party.

## Objections to Protective Order

Atticus objects to the Protective Order to the extent it does not provide sufficient protection to Atticus's trade secrets and highly confidential information. Atticus reserves its right to object to the Protective Order in accordance with the Court's scheduling order.

## Objections and Responses to Requests for Production

### General Objections

Each of the following General Objections applies to each of the FTC's Requests and is incorporated into each of Atticus's responses as though fully set forth therein. Atticus's General Objections are in addition to any specific objections stated for each Request.

1. Atticus's responses are based upon current information available to Atticus that Atticus has been able to identify after a reasonable search for a third party. Atticus

reserves the right to amend, supplement, and/or modify its responses should new or different information become known to Atticus.

2. Atticus objects to the Requests, the Definitions, and Instructions contained therein to the extent they purport to impose discovery obligations beyond those permitted under the Federal Rules of Civil Procedure and any applicable Orders of the Court or agreements between counsel.

3. Atticus objects to the Requests, Definitions, and Instructions contained therein to the extent they purport to define words or phrases in a manner different than their ordinary meaning, or to the extent that they are overbroad, argumentative, prejudicial, improper, incorrect, vague and/or ambiguous. Atticus's response to such Requests shall not be construed as an admission, agreement, or acquiescence to the statements or definitions provided by the FTC.

4. Atticus objects to the Requests to the extent they seek information not within its possession, custody, or control.

5. Atticus objects to the Requests to the extent they seek information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privileges or immunities.

6. Atticus objects to the Requests to the extent they seek information of third parties protected from disclosure under confidentiality obligations or other restrictions.

7. Atticus objects to the Requests to the extent they are unlimited in time.

8. Atticus objects to the Requests to the extent they seek legal conclusions, and/or would require Atticus to reach a legal conclusion in order to prepare a response.

**Specific Objections**

**REQUEST NO. 1.** Organizational charts and/or personnel directories for each year for the Company as a whole and for each of the Company's parents, subsidiaries, facilities, or divisions engaged in any activity relating to the production or sale of any Covered Crop Protection Product.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and as not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "each of the Company's parents, subsidiaries, facilities, or divisions engaged in any activity relating to the production or sale of any Covered Crop Protection Product." Atticus objects to this Request as seeking information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking documents related to "each of the Company's parents, subsidiaries, facilities, or divisions engaged in any activity relating to the production or sale of any Covered Crop Protection Product" as unduly burdensome and

**Dowd Scheffel PLLC** 12

inconsistent with Atticus's accepted definition of "Company." Atticus further objects based on the definition of Covered Crop Protection Product and the Request seeking extensive sales information about numerous pesticide products having little, if any, relevance to the case. Atticus objects to this response as it seeks information that is not relevant to any claim or defense of any party in the case; for example, the Request seeks "personnel directories for each year," and Plaintiff has not shown how such personnel directories are relevant. The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to third parties.

Atticus further objects to this request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing objections, and subject to a reasonable search, Atticus will provide relevant documents that show the organizational structure of Atticus, to the extent such documents exist.

**REQUEST NO. 2.** All data, reports, articles, studies, surveys, analyses, publications, or assessments relating to Covered Crop Protection Products that were created, produced, or published by any third-party data provider, advisory firm, consultant, or market research firm, such as AgData, Fanwood, Kynetec, Kline, Stratus, Market Edge, Ipsos, or Context.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "all data, reports, articles, studies, surveys, analyses, publications, or assessments." Atticus objects to the Request as being vague and ambiguous with respect to the terms "AgData, Fanwood, Kynetec, Kline, Stratus, Market Edge, Ipsos, or Context," as these terms are not defined. Atticus objects to this Request as it seeks information that is protected by attorney work product and attorney-client privilege, such as analyses, assessments, and studies for Atticus. Atticus objects to this Request seeking documents related to "all data, reports, articles, studies, surveys, analyses, publications, or assessments" as unduly burdensome. Atticus further objects based on the definition of Covered Crop Protection Product and the Request seeking extensive sales information about numerous pesticide products having little, if any, relevance to the case. The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to documents "that were created, produced, or published by any third-party data provider, advisory firm, consultant, or market research firm." The Request is objected to because it also seeks information that is publicly available, and Plaintiff is able to obtain that information from other parties or third parties much more easily than by burdening Atticus, for example, any data, reports, articles, studies, surveys, analyses, publications, or assessments that were published by any third-party provider.

Atticus further objects to this request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, and subject to a reasonable search, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 3.** Data Sets sufficient to show, for each Covered Crop Protection Product sold by the Company in, or for use in, the United States:

a. the EPA registration number;
b. the Active Ingredient(s) within such Crop Protection Product and pounds of each Active Ingredient per unit of Crop Protection Product;
c. date each the Active Ingredient within such Crop Protection Product was first registered with the EPA by the Company;
d. date that an End-Use Crop Protection Product containing the Active Ingredient was first sold in the United States by the Company;
e. date that any End-Use Crop Protection Product containing the Active Ingredient was discontinued by the Company, if applicable;
f. the product name on packaging and any other names of the relevant End-Use Crop Protection Product sold by the Customer that incorporates such Crop Protection Product;
g. product classification indicating whether the product is a Manufacturing-Use Crop Protection Product or End-Use Crop Protection Product;
h. product identification and classification variables used by the Company for the relevant Crop Protection Product, such as category, subcategory, segment, fighting brand, private label, or value-added product; and
i. conversion factor to determine approximate acres treated per unit of the Crop Protection Product.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus further objects based on the definition of Crop Protection Product and the Request seeking extensive sales information about essentially pesticide product (including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment, and plant growth regulator). Atticus further objects to this Request to the extent it seeks "product identification and classification variables used by the Company" because that information may not be relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus further objects to Paragraphs g and h as being vague and ambiguous. For instance, Plaintiff does not provide clear definitions of the terms "category," "subcategory," "segment," "fighting brand," "private label," or "value-added

**Dowd Scheffel PLLC**       14

product." Atticus is willing to meet and confer to better understand the scope of those Paragraphs. Atticus objects to this Request due to the use of "Data Sets" as seeking to impose obligations beyond those required by the Federal Rules of Civil Procedure, the applicable local rules, and Atticus's obligations as a third party. Atticus further objects based on the definition of Covered Crop Protection Product and the Request seeking extensive sales information about numerous pesticide products having little, if any, relevance to the case.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seek and their relevance.

**REQUEST NO. 4.** For each Crop Protection Product identified in Specification 3, provide Data Sets sufficient to show, for each month:

> a. net sales in dollars;
> b. gross sales dollars;
> c. gross margin and cost of goods sold;
> d. the list price and a description of any discounts or rebates offered by the Company;
> e. the average net unit price charged by the Company (i.e., net of any promotional discounts or rebates);
> f. the identity, Customer number(s), and classifications of the Customer to which the product was sold (e.g., manufacturer, distributor, independent retailer, cooperative, farmer, broker, and/or other (specify)); and
> g. quantity sold.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus further objects based on the definition of Crop Protection Product and the Request seeking extensive sales information about essentially any pesticide product (including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment, and plant growth regulator). Atticus further objects to this Request to the extent it seeks "the identity, Customer number(s), and classifications of the Customer" because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus objects to the use of the term "specification," to refer to the document requests, as its use appears improper in the context of this litigation. Furthermore, Atticus objects to providing the identity, Customer number(s), and classifications of the Customer to which the product was sold (e.g., manufacturer, distributor, independent retailer, cooperative, farmer, broker, and/or other (specify)); those terms are vague and undefined, and, even if reasonably understood, providing such detailed information would be unduly burdensome on Atticus as a third party. Some of the requested information, such as but not limited to the so-called "classification" of customers, is likely not in Atticus's possession, custody, or control, and/or cannot be readily ascertained by Atticus as a third party. Atticus objects to this Request due to the use of "Data Sets" as seeking to

**Dowd Scheffel PLLC**         15

impose obligations beyond those required by the Federal Rules of Civil Procedure, the applicable local rules, and Atticus's obligations as a third party.

Atticus further objects to this request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 5.** Provide Data Sets sufficient to show, on an annual basis, the following metrics for each Crop Protection Product identified in Specification 3:

> a. each component of cost of goods sold, including (i) Active Ingredient; (ii)other ingredients; (iii) freight or shipping charges; (iv) storage; (v) distribution costs, whether fixed or marginal; (vi) direct labor; (vii) plant overhead; (viii) depreciation; and (ix) any other component of cost of goods sold tracked in the ordinary course of business, stated separately in dollars and indicating method of allocation, if any;
> b. any deductions or allowances (such as returns, discounts, rebates, or other promotions) that the Company uses to calculate net sales and/or gross margins;
> c. gross margin in dollars, indicating method of calculation;
> d. each category of other expenses, including (i) promotional expenses; (ii) marketing expenses; (iii) detailing expenses; (iv) advertising expenses; (v) research and development expenses; and (vi) any other significant expenses related to or allocated to each Crop Protection Product tracked in the ordinary course of business, stated separately in dollars; and
> e. net margin in dollars.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus further objects based on the definition of Crop Protection Product and the Request seeking extensive sales information about essentially any pesticide product (including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment, and plant growth regulator). Atticus objects to this Request as overbroad with respect to documents related to "each component of cost of goods sold" and "each category of other expenses." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking documents related to "each component of cost of goods sold" as unduly burdensome. Atticus further objects to this Request to the extent it seeks confidential business strategies because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus objects to the use of the term "specification," to refer to the document

**Dowd Scheffel PLLC**          16

requests, as its use appears improper in the context of this litigation. Atticus objects to this Request due to the use of "Data Sets" as seeking to impose obligations beyond those required by the Federal Rules of Civil Procedure, the applicable local rules, and Atticus's obligations as a third party.

Atticus further objects to this request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 6.** For each Crop Protection Product identified in Specification 3, provide Data Sets sufficient to show the following transaction level data:

a. the unique transaction identifier;
b. the transaction date;
c. the Customer identification number and zip code location for shipment;
d. all applicable product identification numbers (UPC, SKU, or other);
e. the package size and package type;
f. the list price, invoice price, and net price;
g. the quantity of units;
h. any deductions or allowances (such as returns, discounts, rebates, or other promotions), stated separately by type;
i. all chargebacks, returns, and taxes, stated separately by type;
j. net sales, in units and dollars, after accounting for any deductions or allowances, chargebacks, returns, and taxes;
k. gross sales, in units and dollars;
l. the payment terms and conditions;
m. the shipping and distribution terms, including the shipped to or delivered to location name and address, and the shipped from or picked up from location name and address; and
n. cost of goods sold, in dollars, stating separately each component of the cost of goods.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus further objects based on the definition of Crop Protection Product and the Request seeking extensive sales information about essentially any pesticide product (including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment, and plant growth regulator). Atticus objects to this Request seeking documents related to as unduly burdensome, particularly for a third party. Atticus

**Dowd Scheffel PLLC**      17

further objects to this Request to the extent it seeks confidential business strategies or customer information because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus objects to the use of the term "specification," to refer to the document requests, as its use appears improper in the context of this litigation. Atticus objects to this Request due to the use of "Data Sets" as seeking to impose obligations beyond those required by the Federal Rules of Civil Procedure, the applicable local rules, and Atticus's obligations as a third party.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 7.** Provide Data Sets sufficient to show, for each Loyalty Product, all data compensation payments, to include the amount, date, and recipient of payment.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "all data compensation payments." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking documents related to "all data compensation payments" as unduly burdensome. Atticus objects to this Request due to the use of "Data Sets" as seeking to impose obligations beyond those required by the Federal Rules of Civil Procedure, the applicable local rules, and Atticus's obligations as a third party.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, and subject to a reasonable search, Atticus will provide relevant documents sufficient to show data compensation payments for each Loyalty Product, to extent such documents exist.

**REQUEST NO. 8.** Provide Data Sets sufficient to show the Company's manufacturing capacity for each Loyalty Product Active Ingredient on an annual basis.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "manufacturing capacity." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus further objects to this

Request to the extent it seeks documents related to "manufacturing capacity" because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus objects to this Request due to the use of "Data Sets" as seeking to impose obligations beyond those required by the Federal Rules of Civil Procedure, the applicable local rules, and Atticus's obligations as a third party.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, and subject to a reasonable search, Atticus will provide relevant documents sufficient to show manufacturing capacity for the identified products, to the extent such documents exist.

**REQUEST NO. 9.** Documents sufficient to show the meaning or definition of any term or field used in Data Sets produced by the Company in response to this Subpoena, including data dictionaries or glossaries.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "any term or field." The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to "data dictionaries or glossaries." Atticus objects to this Request due to the use of "Data Sets" as seeking to impose obligations beyond those required by the Federal Rules of Civil Procedure, the applicable local rules, and Atticus's obligations as a third party.

Subject to the foregoing generic and specific objections, and subject to a reasonable search, Atticus will provide relevant documents sufficient to show the meaning or definition of relevant terms or fields used in produced documents, to the extent such definitional documents exist.

**REQUEST NO. 10.** All Documents and Communications requested, received, produced, filed, or exchanged in this litigation, any related litigation, or any litigation that relates to any Exclusivity Condition or Loyalty Product, including *In re Crop Protection Products Loyalty Program Antitrust Lit.*, No. 1:23-md-03062-TDS-JEP (M.D.N.C.) and *Arkansas ex rel. Griffin v. Syngenta Crop Protection AG*, 4:22-cv- 01287-BSM (D. Ark.).

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "All Documents

**Dowd Scheffel PLLC** 19

and Communications," and "any related litigation, or any litigation that relates to any Exclusivity Condition or Loyalty Product." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege or any valid protective order. Atticus objects to this Request seeking documents related to "All Documents and Communications" as unduly burdensome, particularly for a third party. The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to other litigations. Atticus further objections because the Request does not define "related litigation," and that term is ambiguous.

Subject to the foregoing generic and specific objections, and subject to a reasonable search, Atticus will provide relevant documents requested, received, produced, filed, or exchanged in this litigation or from *In re Crop Protection Products Loyalty Program Antitrust Lit.*, No. 1:23-md-03062-TDS-JEP (M.D.N.C.), and *Arkansas ex rel. Griffin v. Syngenta Crop Protection AG*, 4:22-cv- 01287-BSM (D. Ark.), to the extent such documents exist.

**REQUEST NO. 11.** All Documents and Communications produced, filed, or exchanged in any litigation or arbitration in which Company was a party that involved Corteva or Syngenta, including:

> a. all white papers, written disclosures, and responses to interrogatories or requests for admission;
> b. all trial, hearing, and deposition transcripts and exhibits associated with sworn testimony, including that of experts;
> c. all sworn declarations and affidavits, including that of experts, and all Documents cited or referred to therein;
> d. all briefs and memoranda in support of or in opposition to any substantive motion (including any motion to dismiss, motion for summary judgment, or motion for directed verdict) or any pretrial motion in limine or Daubert motion, and all Documents cited or referred to therein;
> e. all briefs and memoranda filed by the Company in connection with any appeal, and all Documents cited or referred to therein; and
> f. any settlement Agreement proposed or entered, and all Documents Relating to the negotiation of such settlement.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "any litigation or arbitration in which Company was a party that involved Corteva or Syngenta." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege or any valid protective order. Atticus objects to this Request seeking documents related to "any litigation or arbitration in which Company was a party that involved Corteva or Syngenta" as unduly burdensome, particularly for a third party. The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to other litigation. The Request is objected to because it also seeks information that is publicly available or that can be obtained more readily from a party, *i.e.*, Syngenta Crop Protection AG. Atticus further

**Dowd Scheffel PLLC**          20

objects, as such documents may be subject to a separate protective order and cannot be produced absent judicial authorization. Atticus also objects as this Request seeks documents that may have third-party trade secret information that is not relevant to the claims or defenses at issue in the present case. Atticus further objects to this Request because the requested information can be more readily obtained, and with far less burden on Atticus, from other parties.

Subject to the foregoing generic and specific objections, and subject to a reasonable search, Atticus will produce documents filed or served in *Syngenta Crop Protection, LLC v. Atticus, LLC*, No. 5:19-cv-00509-D (E.D.N.C.).

**REQUEST NO. 12.** One copy of each regularly prepared financial and profit and loss statement, budget, cost center and profitability report, or other financial report for the Company as a whole or any of the Company's subsidiaries or business units engaged in any activity relating to any Loyalty Product.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "each regularly prepared financial and profit and loss statement, budget, cost center and profitability report, or other financial report." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking documents related to "each regularly prepared financial and profit and loss statement, budget, cost center and profitability report, or other financial report" as unduly burdensome. The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to "the Company's subsidiaries or business units." Atticus further objects to this Request to the extent it seeks financial records for "the Company as a whole" because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer with Plaintiff to discuss the scope of information sought by this Request.

**REQUEST NO. 13.** All Documents constituting or reflecting strategic, marketing, pricing or sales Plans relating to any Loyalty Product, including Documents Relating to:

a. product market Plans, business Plans or reviews, strategic Plans or reviews, Board of Director or senior leadership presentations, minutes, and agendas, forecasts, or similar documents;

**Dowd Scheffel PLLC**       21

b. all marketing materials relating to each Loyalty Product, including all current selling aids and promotional materials; and

c. the Company's or any other Person's price lists, pricing Plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, and pricing decisions (including discount or rebate decisions).

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to documents related to "All Documents constituting or reflecting strategic, marketing, pricing or sales Plans," "all marketing materials," and "all current selling aids and promotional materials," as Plaintiff has not identified any need for "all documents." Atticus objects to this Request as seeking information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking documents related to "All Documents constituting or reflecting strategic, marketing, pricing or sales Plans," "all marketing materials," and "all current selling aids and promotional materials" as unduly burdensome. The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to "any other Person's price lists, pricing Plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, and pricing decisions." Atticus further objects to this Request as seeking documents related to confidential business strategies because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation.

Atticus further objects to this request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, and subject to a reasonable search, Atticus will provide representative relevant documents related to marketing, pricing, or sales regarding the Loyalty Products, to the extent such documents exist.

**REQUEST NO. 14.** All Documents relating to competition in the manufacture or sale of any Loyalty Product, including market studies, forecasts, surveys, and all other Documents relating to:

a. the business performance of the Company or any of its Competitors;

b. the sales or share of sales of any Crop Protection Product or of any type of category of Crop Protection Product;

c. supply and demand conditions, including Customer, retailer, and end-user preferences and segmentation;

d. Crop Protection Products not produced or sold by the Company and that have a chemical composition that differs from the Company's Loyalty Products, but that are used on the same crops or that target the same pests;

e. attempts to win Customers from other Persons and losses of Customers to other Persons; and
f. the competitive position or relative strength or weakness of the Company and each of its actual or potential Competitors in the production and sale of Crop Protection Products.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus further objects based on the definition of Crop Protection Product and the Request seeking extensive sales information about essentially any pesticide product (including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment, and plant growth regulator). Atticus objects to this Request as overbroad with respect to documents related to "All Documents relating to competition in the manufacture or sale of any Loyalty Product." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking documents related to "All Documents relating to competition in the manufacture or sale of any Loyalty Product" as unduly burdensome. The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to "the business performance of . . . any of its Competitors," and "Customer, retailer, and end-user preferences and segmentation. Atticus further objects to this Request to the extent it seeks customer information and information regarding the "relative strength or weakness of the Company" and other confidential business strategies because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation.

Atticus further objects to this request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 15.** Documents sufficient to show the Company's analysis of the distribution or sale of its Crop Protection Products through distributors, retailers, brokers, online sales platforms, including internal assessments, internal communications, and external communications relating to:

a. relative strengths and weaknesses of Persons involved in the distribution and sale of Crop Protection Products;
b. analyses of costs, efficiency, and attributes of different methods of distribution;

**Dowd Scheffel PLLC**      23

c. services, capabilities, and other benefits provided by Persons involved in the distribution or sale of Crop Protection Products;

d. manufacturing or supplying white-label or private label Crop Protection Products for distributors;

e. supply and demand conditions; and

f. decisions regarding which method of distribution to pursue.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking documents related to these numerous factors as unduly burdensome. Atticus further objects based on the definition of Crop Protection Product and the Request seeking extensive sales information about essentially any pesticide product (including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment, and plant growth regulator). Without waiving its objections to the definitions, Atticus objects to this Request as overly broad and burdensome to the extent it seeks information related to all businesses as well as individuals in the crop protection industry. The Request is objected to because it also seeks information that is not in the possession, custody, or control of Atticus, including information relating to the "relative strengths and weaknesses" and "services, capabilities, and other benefits" of third parties. Atticus further objects to this Request to the extent it seeks documents related to "decisions regarding which method of distribution to pursue" and other confidential business strategies because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus further objects to the Request as being vague and ambiguous. For instance, Plaintiff does not provide clear definitions of the terms "attributes," "white-label," "private label," and "supply and demand conditions." Atticus is willing to meet and confer to better understand the scope of those Paragraphs.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 16.** Documents related to communications with Customers regarding the actual or potential sale of products containing a Covered Crop Protection Product, including:

a. internal discussions regarding sales strategies targeted to specific Customers or categories of Customers and/or distribution channels;

**Dowd Scheffel PLLC**      24

b. sales call reports or summaries of communications with Customers or indirect Customers;

c. communications with Customers offering price and quantity terms, programs, or other incentives for Customers to purchase the Company's product(s);

d. communications with Customers related to whether they will purchase, or potentially purchase, from Company;

e. the Company's discussion regarding Customer's acceptance or rejection of the Company's offer to sell its Covered Crop Protection Products;

f. communications with Customers about Exclusivity Conditions on any Covered Crop Protection Product; and

g. communications with Customers relating to any complaint or concern that Customers have with Syngenta and/or Corteva, including but not limited to supply, quality, pricing, and use of Exclusivity Conditions related to any Covered Crop Protection Product.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Without waiving its objections to the definitions, Atticus objects to this Request as overly broad and burdensome to the extent it seeks information related to all customers of Atticus. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to "Documents related to communications with Customers regarding the actual or potential sale of products containing a Covered Crop Protection Product." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product, attorney-client privilege, or any applicable confidentiality agreement. Atticus objects to this Request seeking "Documents related to communications with Customers regarding the actual or potential sale of products containing a Covered Crop Protection Product" as unduly burdensome. Atticus further objects to this Request to the extent it seeks "internal discussions regarding sale strategies," all communications with customers, and other confidential business strategies because that information may not be relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus further objects based on the definition of Covered Crop Protection Product and the Request seeking extensive sales information about numerous pesticide products having little, if any, relevance to the case.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**Dowd Scheffel PLLC**          25

**REQUEST NO. 17.** Documents relating to any exclusionary or anticompetitive effect attributable to any Exclusivity Condition on any Crop Protection Product, including:

a. all Documents mentioning or discussing any Exclusivity Condition;
b. any assessments of the total market available for any Active Ingredient subject to an Exclusivity Condition;
c. Documents discussing or describing Company's inability to sell Crop Protection Products, Customers refusing to purchase Crop Protection Products, or Customers purchasing only minimal amounts;
d. Documents discussing or describing sourcing Active Ingredient from the Basic Manufacturer for white label or private label Crop Protection Products that Company manufactured for, or supplied to, a distributor and any related exclusionary effect, such as reduced output or higher cost;
e. Documents discussing or describing sourcing Active Ingredient from the Basic Manufacturer for Company's Crop Protection Products and any related exclusionary effect, such as reduced output or higher cost; and
f. any impact on the Company's decision-making process with respect to investment or innovation in an Active Ingredient subject to an Exclusivity Condition.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Without waiving its objections to the definitions, Atticus objects to this Request as overly broad and burdensome to the extent it seeks information related to all customers of Atticus. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus further objects based on the definition of Crop Protection Product and the Request seeking extensive sales information about essentially any pesticide product (including any fungicide, herbicide, insecticide, nematicide, rodenticide, seed treatment, and plant growth regulator). Atticus objects to this Request as overbroad with respect to "all Documents mentioning or discussing any Exclusivity Condition" and "any assessments of the total market available." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking "all Documents mentioning or discussing any Exclusivity Condition" and "any assessments of the total market available" as unduly burdensome, particularly for a third party. Atticus further objects to this Request to the extent it seeks documents related to confidential business strategies because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus further objects to the Request as being vague and ambiguous. For instance, Plaintiff does not provide clear definitions of the terms "assessments," "white label," "private label," or "impact." Atticus is willing to meet and confer to better understand the scope of those Paragraphs.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

**Dowd Scheffel PLLC**          26

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 18.** All Documents relating to requirements and costs of entry into or expansion in the manufacture, distribution, or sale of any Covered Crop Protection Product, including:

a. research and development, planning, and design requirements;

b. licenses, registrations, and any necessary governmental and Customer approvals including FIFRA requirements and data compensation;

c. sales, marketing, and service activities;

d. production and distribution system requirements (including any requirements for multi-area, multi-plant, multi-product, or vertically integrated operations or distribution);

e. decisions on whether and how much of Active Ingredient to import;

f. retrospective analyses of profitability of the cost of entry or expansion for any Loyalty Product;

g. estimates and forecasts of profitability for the cost of entry or expansion for any Loyalty Product; and

h. any other factors required to attain any available cost savings or other efficiencies necessary to compete profitably or efficiently.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to "All Documents relating to requirements and costs of entry into or expansion in the manufacture, distribution, or sale of any Covered Crop Protection Product" and "any other factors required to attain any available cost savings or other efficiencies necessary to compete profitably or efficiently." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking "All Documents relating to requirements and costs of entry into or expansion in the manufacture, distribution, or sale of any Covered Crop Protection Product" as unduly burdensome. Atticus further objects to this Request to the extent it seeks documents related to confidential business strategies because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus further objects to the Request as being vague and ambiguous. For instance, Plaintiff does not provide clear definitions of the terms "costs of entry," "expansion," "multi-area," "multi-plant," "multi-product," "vertically integrated," and "efficiencies." Atticus is willing to meet and confer to better understand the scope of those Paragraphs. Atticus further objects based on the definition of Covered Crop Protection Product and the Request seeking extensive sales information about numerous pesticide products having little, if any, relevance to the case.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information

**Dowd Scheffel PLLC**      **27**

from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 19.** All Documents comparing, discussing, describing, or analyzing the sales, margins, market access, end-user preferences and substitutability, or other financial or competitive metric of any of the Company's Loyalty Products sold in the United States to that of any equivalent Company product sold in any other country or region.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to "All Documents." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking "All Documents" as unduly burdensome. Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost. Atticus's products are only sold in the United States and as such comparative studies with products sold in other countries is not relevant and producing such documents would be unduly burdensome.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 20.** All Documents comparing, discussing, describing, or analyzing the change in sales, margins, market access, market share, end-user preferences and substitutability, or other financial or competitive metric of any Covered Crop Protection Product before and after any Exclusivity Condition it was affected by was changed or that Company believes was changed.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to "All Documents." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking "All Documents" as unduly burdensome. Atticus further objects to this Request to the extent it seeks documents related to confidential business strategies because that information is not relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly

sensitive competitive business information that is not relevant to the litigation. Atticus further objects based on the definition of Covered Crop Protection Product and the Request seeking extensive sales information about numerous pesticide products having little, if any, relevance to the case.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 21.** All Documents relating to Communications with Syngenta, Corteva, or (in the case of acetochlor) Bayer regarding Loyalty Products, including:

a. discussions or negotiations regarding actual or potential sales or supply of Loyalty Products;
b. agreements regarding the supply of Loyalty Products;
c. discussions or negotiations regarding treatment of Loyalty Products under programs containing an Exclusivity Condition;
d. discussions regarding data compensation for any Loyalty Product; and
e. discussions involving the Company's sale of Loyalty Products to any Customer.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to "All Documents relating to Communications with Syngenta, Corteva, or . . . Bayer regarding Loyalty Products." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product, attorney-client privilege, protective order, or confidentiality agreement. Atticus objects to this Request seeking "All Documents relating to Communications with Syngenta, Corteva, or . . . Bayer regarding Loyalty Products" as unduly burdensome.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

**REQUEST NO. 22.** All Documents assessing or evaluating the total and available capacity, or total and available future capacity, of any manufacturing facility relied upon by Company for supply of any Loyalty Product Active Ingredient.

**RESPONSE.** Atticus objects to this Request as overly broad and seeking discovery that is not relevant to the litigation, and not proportional to the needs of the case. Atticus

**Dowd Scheffel PLLC**          **29**

objects to this Request on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, to the extent Plaintiff can identify any such likely benefit. Atticus objects to this Request as overbroad with respect to "All Documents." Atticus objects to this Request to the extent it seeks information that is protected by attorney work product and attorney-client privilege. Atticus objects to this Request seeking "All Documents" as unduly burdensome. Atticus further objects to this Request to the extent it seeks all documents related to Atticus's manufacturing capacities because that information may not be relevant to the litigation, not proportional to the needs of the case, and an improper attempt to seek highly sensitive competitive business information that is not relevant to the litigation. Atticus further objections because the term "manufacturing facility" is vague and not defined.

Atticus further objects to this Request as unduly burdensome, as it is seeking documents that are, in some cases, six to seven years old. Such documents, to the extent they exist, may reside in difficult-to-access sources. Atticus may not be able to retrieve information from many of these sources, or even confirm with certainty whether any responsive information in fact exists in the sources, without incurring substantial undue burden or cost.

Atticus further objects to this Request because the requested information can be more readily obtained, and with far less burden on Atticus, from other parties.

Subject to the foregoing generic and specific objections, Atticus is willing to meet and confer to discuss the scope of this request and to allow Plaintiff the opportunity to more clearly identify the documents it seeks and their relevance.

Sincerely,

Matthew J. Dowd

*Counsel for Third-Party*
*Atticus, LLC*