**FILED UNDER SEAL PURSUANT TO**
**LOCAL RULE 5.5 ALTERNATIVE PROPOSAL**

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN,<br><br>    Plaintiffs,<br><br>vs.<br><br>SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC.,<br><br>    Defendants. | Case No. 1:22-CV-00828-TDS-JEP<br><br>**CONFIDENTIAL**<br><br>**DEFENDANTS SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, AND SYNGENTA CROP PROTECTION, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL WRITTEN DISCOVERY RESPONSES FROM THE SYNGENTA DEFENDANTS** |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................... iii

**PRELIMINARY STATEMENT** ................................................................................. 1

**PROCEDURAL AND FACTUAL BACKGROUND** ..................................................... 1

**ARGUMENT** .............................................................................................................. 4

    **I.**    **Legal Standard** ............................................................................................... 4

    **II.**   **Syngenta's Denials Are Appropriate.** ................................................................ 5

        **A.**    **Requests 15–17 Are Factually Inaccurate and Impermissibly Vague and Ambiguous.** ........................................................................ 6

        **B.**    **Requests 15–17 Go to Core, Disputed Issues in the Case That Will Be the Subject of Expert Discovery.** ........................................... 10

**CONCLUSION** ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169 (4th Cir. 2005) ............ 5

*Felder v. MGM Nat'l Harbor, LLC*, 2024 WL 3690779 (D. Md. Aug. 7, 2024) ............. 11

*Hedgepeth v. Nash Cnty.*, 2023 WL 2711545 (E.D.N.C. Mar. 28, 2023) ...................... 5, 6

*In re Transcon. Gas Pipe Line Co., LLC*, 2024 WL 4251915 (N.D. Ga.
    Aug. 5, 2024) ................................................................................................................ 11

*Jones v. Crum & Forster Specialty Ins. Co.*, 2023 WL 363745 (E.D.N.C.
    Jan. 23, 2023) ................................................................................................................ 6

*Mohammed v. Daniels*, 2015 WL 4758968 (E.D.N.C. Aug. 12, 2015) ........................ 9, 10

*Polara Eng'g, Inc. v. Campbell Co.*, 2013 WL 12172122 (C.D. Cal. Oct. 21, 2013) ...... 11

*Quicken Loans v. Jolly*, 2007 WL 3408551 (E.D. Mich. Nov. 15, 2007) ................... 10, 11

*Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394 (S.D.N.Y. 2018) ......................... 11

*Reyes v. Experian Info. Sols., Inc.*, 2017 WL 11897767 (C.D. Cal. Mar. 13, 2017) .......... 9

*Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118 (D.D.C. 2005) ............... 11

*Tyler v. Lassiter*, 2015 WL 1289817 (E.D.N.C. Mar. 20, 2015) ........................................ 5

*United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958 (3d Cir. 1988) .............................. 10

*United Sates ex rel. Bergman v. Abbott Lab'ys*, 2016 WL 2621669 (E.D. Pa.
    Jan. 15, 2016) .............................................................................................................. 11

*Wagner v. Norcold, Inc.*, 2024 WL 2703015 (E.D.N.C. May 24, 2024) ....................... 5, 6

*Watkins v. Lincare, Inc.*, 2023 WL 5490181 (S.D.W. Va. Aug. 24, 2023) ...................... 10

**Rules**

Fed. R. Civ. P. 36(a) ............................................................................................... 1, 4, 5

**Other Authorities**

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2252 (3d ed.) ........................................... 5

# PRELIMINARY STATEMENT

Plaintiffs' motion to compel is inappropriate and unnecessary. Through its requests for admission, Plaintiffs ask Syngenta to admit that it calculated "molecular market share" for three different active ingredients annually for eight fiscal years. Syngenta expressly denied these requests, as Federal Rule of Civil Procedure 36(a)(4) permits. As Syngenta has informed Plaintiffs several times, Plaintiffs' requests are not a proper subject for admission nor do the facts support Plaintiffs' demand for an admission in the form presented. Syngenta does not perform annual calculations of "molecular market share" or "molecule market share" and does not even regularly use these terms in its crop protection business. Regardless, this topic is not the proper subject of a request for admission. The definition of the relevant market, Syngenta's share of that market, and the methodology used to calculate the share of such market are all core issues in this case that will be the subject of expert reports and expert discovery on both sides. Syngenta's denials are appropriate, and no further response is required. This Court should accordingly deny Plaintiffs' motion to compel.

# PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs served its First Set of Requests for Admission on January 21, 2025 (the "Requests"). *See* Dkt. No. 323-2. Among the requests are the three at issue here, Requests Nos. 15–17 ("Requests 15–17"), which demand as follows:

- **REQUEST FOR ADMISSION NO. 15:** Admit that for each fiscal year from 2017-2024 Syngenta calculated that it possessed a molecule market share that exceeded ▮ for Azoxystrobin.

- **REQUEST FOR ADMISSION NO. 16:** Admit that for each fiscal year from 2017-2024 Syngenta calculated that it possessed a molecule market share that exceeded ▮ for Mesotrione.

- **REQUEST FOR ADMISSION NO. 17:** Admit that for each fiscal year from 2017-2024 Syngenta calculated that it possessed a molecule market share that exceeded ▓ for Metolachlor.

Per agreement, Syngenta served its objections on February 20, 2025 and its substantive responses on March 24, 2025. The parties since have met and conferred multiple times about Syngenta's responses and objections to Requests 15–17. On a March 3, 2025 call following Syngenta's initial objections, Plaintiffs asked whether there was anything unclear regarding Requests 15–17 that would prevent Syngenta from answering. Syngenta expressed uncertainty as to documents or other information motivating Requests 15–17 and asked that Plaintiffs share any materials substantiating the factual basis of the propositions. Plaintiffs responded that "molecule market share" is a term of art used within Syngenta and committed to follow up with more clarity.

On March 11, 2025, Plaintiffs sent a letter concerning written discovery, including Requests 15–17. *See* Dkt. No. 323-3. The letter cited one Syngenta document in support of Plaintiffs' position, an August 2020 slide deck entitled ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id.* at 5 (citing SYT_REBATELIT_01814958 at 9); *see also* Ex. 1 at 9. Plaintiffs referred Syngenta to a slide entitled, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" *Id.* at 5; Ex. 1 at 9. The slide states, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 1 at 9. The document does not refer to any actual calculations and does not use the term "molecular market share" or "molecule market share." Plaintiffs did not attach this document to their motion to compel.

On March 24, 2025, Syngenta served its substantive responses to Plaintiffs' First Set of Requests for Admission. Dkt. No. 323-4. Unaware of any regular, annual Syngenta

2

calculations concerning "molecular market share," let alone ones reflecting the specific share percentages as to which Plaintiffs sought admissions, Syngenta denied Requests 15–17, as emphasized below:

- **RESPONSE TO REQUEST FOR ADMISSION NO. 15:** Syngenta objects to this Request as vague and ambiguous, particularly as to the term 'molecule market share,' which is susceptible to multiple meanings and not a term ordinarily used on a regular basis by Syngenta. Syngenta further objects to this Request to the extent it implies that the term 'molecule market share' has any bearing on the relevant market in this Action. Syngenta further objects to this Request to the extent it calls for information that may be the subject of expert opinion and testimony. Syngenta further objects to this Request to the extent it is argumentative, contains inaccurate descriptions, lacks foundation, or assumes the existence of facts not in evidence or that are incorrect or the occurrence of events that did not happen.

    On the basis of the foregoing General and Specific Objections, ***Syngenta denies this Request***.

- **RESPONSE TO REQUEST FOR ADMISSION NO. 16:** Syngenta objects to this Request as vague and ambiguous, particularly as to the term 'molecule market share,' which is susceptible to multiple meanings. Syngenta further objects to this Request to the extent it calls for information that may be the subject of expert opinion and testimony. Syngenta further objects to this Request to the extent it is argumentative, contains inaccurate descriptions, lacks foundation, or assumes the existence of facts not in evidence or that are incorrect or the occurrence of events that did not happen.

    On the basis of the foregoing General and Specific Objections, ***Syngenta denies this Request***.

- **RESPONSE TO REQUEST FOR ADMISSION NO. 17:** Syngenta objects to this Request as vague and ambiguous as to the term 'molecule market share,' which is susceptible to multiple meanings. Syngenta further objects to this Request to the extent it is argumentative, contains inaccurate descriptions, lacks foundation, or assumes the existence of facts not in evidence or that are incorrect or the occurrence of events that did not happen.

    On the basis of the foregoing General and Specific Objections, ***Syngenta denies this Request***.

*Id.* at 21–22 (emphases added).

On April 4, 2025, Plaintiffs sent another letter. *See* Dkt. No. 323-5. Plaintiffs characterized Syngenta's responses to Requests 15–17 as "improper refusals to admit or deny RFAs," seemingly because Syngenta prefaced the phrase "Syngenta denies this Request" with the phrase "[o]n the basis of the foregoing General and Specific Objections." *Id*. at 3, 5. Plaintiffs also contended that Syngenta uses the phrase "molecule market share" or "molecular market share" "as a matter of course," again without providing any examples of documents using either phrase. *Id*. at 5.

Syngenta responded on May 2, 2025. *See* Dkt. No. 323-6. Syngenta reiterated that its responses to Requests 15–17 were substantive denials, explaining that the prefatory phrase "on the basis of the foregoing General and Specific Objections"—common parlance in written discovery—was intended to communicate the basis for Syngenta's denials, not to limit their scope. *Id.* at 2–3. Syngenta further explained that its denials were appropriate because, "In a case squarely about market share, where Syngenta does not regularly use the term 'molecule market share' or 'molecular market share,' we see no basis to admit these requests." *Id.* at 5.

On May 11, 2025, the parties met and conferred again and confirmed they were at impasse with respect to Requests 15–17. On June 10, 2025, Plaintiffs filed the instant motion to compel.

## ARGUMENT

I.     **Legal Standard**

Under Federal Rule of Civil Procedure 36(a)(1)(A), a party may serve another party with written requests to admit "the truth of any matters within the scope of Rule 26(b)(1) relating to [] facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). "The purpose of such admissions is to narrow the array of issues

4

before the court, and thus expedite both the discovery process and the resolution of the litigation." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005); *see also* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2252 (3d ed.) ("The rule is intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial").

"[T]he requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification." *Tyler v. Lassiter*, 2015 WL 1289817, at *2 (E.D.N.C. Mar. 20, 2015) (internal quotation marks and citation omitted).

If a party cannot admit a request for admission, it must either "specifically deny it or explain in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "A denial is a sufficient response under the rule . . . ." *Wagner v. Norcold, Inc.*, 2024 WL 2703015, at *11 (E.D.N.C. May 24, 2024); *accord Hedgepeth v. Nash Cnty.*, 2023 WL 2711545, at *3 (E.D.N.C. Mar. 28, 2023) (stating "Defendants could have simply denied [the request] because they disagreed with its premise").

## II.  Syngenta's Denials Are Appropriate.

Plaintiffs ask the Court to "order Syngenta to answer Plaintiffs' requests for admission" 15 through 17. Dkt. No. 323 at 4. But Syngenta has already answered. Its responses and objections to Requests 15–17 each state: "Syngenta denies this request." Dkt. No. 323-4 at 21–22. And Syngenta made clear during the meet-and-confer process that its responses were intended as substantive denials under Rule 36(a)(4). *E.g.*, Dkt. No. 323-6 at 5 (noting "Syngenta stands by its denials of RFAs 15–17."). "A denial is a

5

sufficient response under the rule . . . ." *Wagner*, 2024 WL 2703015, at *11; *accord Hedgepeth*, 2023 WL 2711545, at *3 (stating "Defendants could have simply denied [the request]"). No further response is required.

Plaintiffs' motion effectively seeks to compel Syngenta to change their appropriate denials of Requests 15–17 into (inaccurate) admissions. But compelling a party to admit to a proposition is a drastic remedy, reserved for when a "responding party answers a Rule 36 request evasively or in bad faith." *Wagner*, 2024 WL 2703015, at *10 (quoting *Jones v. Crum & Forster Specialty Ins. Co.*, 2023 WL 363745, at *2 (E.D.N.C. Jan. 23, 2023)). Syngenta has not engaged in this manner, and Plaintiffs do not argue otherwise. Rather, Syngenta has squarely denied Requests 15–17 with valid cause to do so.

### A. Requests 15–17 Are Factually Inaccurate and Impermissibly Vague and Ambiguous.

Requests 15–17 each embed several inaccurate factual propositions. Syngenta could only admit these Requests if: (1) "molecular market share" or "molecule market share" were terms of art or were used regularly in the ordinary course of Syngenta's business and had a generally accepted meaning; (2) Syngenta consistently calculated "molecular market share" or "molecule market share" on an annual basis each fiscal year from 2017–2024 for azoxystrobin, metolachlor, and mesotrione, respectively; and (3) the ensuing calculations had always exceeded ▮. None of these statements is true. Syngenta accordingly denied Requests 15–17.

Plaintiffs' proffered "evidence" does not tell a different story. During the meet-and-confer process, Plaintiffs failed to identify any instance of Syngenta using the phrase "molecule market share" or "molecular market share," let alone that Syngenta had systematically calculated these figures to be above ▮ for three particular AIs over an

6

eight-year period. The lone document Plaintiffs shared was a single bullet on a single slide noting that ███████████████████████████████ ██████████ Ex. 1 at 9.

The evidence Plaintiffs cite in their motion is equally inapposite. Plaintiffs have not presented *anything* supporting that Syngenta calculates "molecular market share" or "molecule market share" annually for azoxystrobin, mesotrione, and metolachlor. Plaintiffs have instead cited instances of Syngenta using at least five different purportedly interchangeable permutations—"███████████████████████████ ████████ ██████████ and ████████"—often in irrelevant contexts, and often not in connection with annual calculations of Syngenta's own purported share. At most, these examples show that there are times when Syngenta compares the amount of a given AI that it produces to estimates of amounts of that AI that is imported or sold by Syngenta.

- **Exhibit G to Plaintiffs' motion** is a 2021 document discussing ██████ ████████████████████████. *See* Dkt. No. 323-8. It states, on a slide discussing azoxystrobin, ████████████████████████ *Id.* at 7 (CX2134-006). Kynetec is a third-party market research firm that analyzes data for agricultural markets.[1] Even if "██████" of "████████████" could be said to be the same as "calculat[ions]" of "molecule market share" or "molecular market share," this data was prepared by Kynetec, not Syngenta.

- **Exhibit H to Plaintiffs' motion** is a September 2023 internal Syngenta email chain that contains a chart entitled, ████████████████████ ████████████████████:

---

[1] *See* https://www.kynetec.com/agriculture (last visited June 24, 2025) ("Leaders in agriculture market research, farmer surveys and data-led insights and solutions.").



*See* Dkt. No. 323-9 at 3 (CX2732-002). The slide has no information about how the calculation was performed, nor does it use the term "molecule market share" or "molecular market share." Admitting Request No. 16 based on this document would require accepting that ▇▇▇ reflected on the page, without attribution, is tantamount to a calculation of Syngenta's "market share." ▇▇▇ do not reflect all available product in the market in a given year because, among other things, some product remains in inventory from prior years. And, even if ▇▇▇ mesotrione were an acceptable proxy for market share, the chart shows that Syngenta accounted for only ▇ of mesotrione ▇ in 2022, belying Request 16's assertion that that "for each fiscal year from 2017-2024 Syngenta calculated that it possessed a molecule market share that *exceeded* ▇ for Mesotrione." (emphasis added).

- **Exhibit I to Plaintiffs' motion** is an excerpt of deposition testimony provided by ▇▇▇ an executive in Syngenta's crop protection business, on April 15, 2025. *See* Dkt. No. 323-10. When asked, ▇▇▇ responded, ▇▇▇ *Id.* at 4 (Tr. 95:7–13). ▇▇▇ did not use the phrase "molecule market share" or "molecular market share." Moreover, a rough estimate of current share of *s-metolachlor in 2025*, does not indicate that Syngenta regularly calculated its share of *metolachlor each fiscal year from 2017 to 2024*, nor that such a figure would have exceeded ▇ in each fiscal year from 2017 to 2024, as Request 17 asks Syngenta to admit.

- **Exhibit J to Plaintiffs' motion** is a document entitled ▇▇▇ that contains ▇▇▇ *See* Dkt. No. 323-11. The ▇▇▇ contains ▇▇▇. Specifically, ▇▇▇

8

("Syngenta %") relative to the threshold in the program required to achieve the rebate payment ("Threshold %"). *See, e.g.*, Ex. 2 (███████████). The ███ document references this ███████. Dkt. No. 323-11 at 3 ("███████████████████████████████████████

While the ████████████████████████████████ that refers not to Syngenta's share of an alleged "molecular market," but rather the percentage of a single customer's purchases of Syngenta product for that AI—as made clear on the ███ themselves. *See* Ex. 2.[2]

- **Exhibit K to Plaintiffs' motion** is an excerpt of testimony by ████ given during the FTC's investigative hearing on November 16, 2021. *See* Dkt. No. 323-12. When asked, ██████████████████████████████████ responded, "█████████████████████████████████████████" *Id.* at 3–4 (Tr. 87:22–88:5). ████ did not testify that Syngenta calculated its "molecule market share" or "molecular market share" each fiscal year from 2017–2024, or that its shares of azoxystrobin, mestrione, and metolachlor always exceeded ███ during this timeframe.

- **Exhibit L to Plaintiffs' motion** is an excerpt of deposition testimony provided by ████████, a former executive in Syngenta's crop protection business, on April 8, 2025. *See* Dkt. No. 323-13. ████████ testified ████████████████████████████████████████ *Id.* at 3 (Tr. 45:6–22). ████ did not testify that Syngenta calculated its "molecule market share" or "molecular market share" each fiscal year from 2017–2024, or that its shares of azoxystrobin, mestrione, and metolachlor always exceeded ███ during this timeframe.

All told, Plaintiffs' examples only underscore the vagueness and ambiguity of the phrases "molecular market share" and "molecule market share" as used in Requests 15–17, and the inaccuracy of the overall propositions for which Plaintiffs seek admissions. Put simply, "words do matter" in discovery requests. *Reyes v. Experian Info. Sols., Inc.*, 2017 WL 11897767, at *1 (C.D. Cal. Mar. 13, 2017). Plaintiffs cannot pressure Syngenta to admit these Requests simply because they "appear[] to disagree with [Syngenta's] responses."

---

[2] Furthermore, not all Syngenta customers fill out ████████ forms each year. Consequently, in the aggregate, these forms reflect only particular customers' purchases not Syngenta's overall market share.

9

*Mohammed v. Daniels*, 2015 WL 4758968, at *2 (E.D.N.C. Aug. 12, 2015) (denying a motion to compel further responses to RFAs because plaintiff's apparent disagreement with defendants' responses was "not a valid basis for objection.").

### B. Requests 15–17 Go to Core, Disputed Issues in the Case That Will Be the Subject of Expert Discovery.

Even if Syngenta *had* calculated some form of annual "molecular market share" or "molecule market share" for azoxystrobin, mesotrione, and metolachlor to be in excess of ▮ each year, as Plaintiffs ask Syngenta to admit in Requests 15–17, Syngenta's denials still would be appropriate. How to define the relevant market and calculate the defendant's share thereof are core issues in any antitrust case, including this one. As Plaintiffs rightfully point out, courts often rely on defendants' ordinary-course market share calculations to define the relevant market. *See* Dkt. No. 323 at. 9 (citing cases). But moreover, there is a dispute among the parties as to whether the active ingredient, the product, or something else altogether is the proper basis for determining relevant market share. It is likely that Plaintiffs' and Syngenta's experts will consider any market share estimates in Syngenta's internal documents during forthcoming expert discovery. Thus, the relevance of the information underlying Requests 15–17 cuts against Plaintiffs, not for them.

"Requests for admission are not a vehicle to establish disputed facts." *Watkins v. Lincare, Inc.*, 2023 WL 5490181, at *7 (S.D.W. Va. Aug. 24, 2023). "[W]here, as here, issues in dispute are requested to be admitted, a denial is a perfectly reasonable response." *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 967 (3d Cir. 1988); *see also Quicken Loans v. Jolly*, 2007 WL 3408551, at **1–2 (E.D. Mich. Nov. 15, 2007) ("[A] request for admission as to a central fact in dispute . . . is beyond the proper scope of normal

discovery.") (collecting cases). Accordingly, courts regularly deny motions to compel responses to requests for admission that go to core, disputed issues, including where such issues will be the subject of expert discovery.[3]

Syngenta should not be compelled to admit that it has possessed a "market share" of over ▮ for three AIs over a period of when that very fact is sharply contested. Syngenta should be entitled to deny Requests 15–17 and preserve its ability to prove an issue in dispute in the manner it chooses.

## CONCLUSION

For the above reasons, Plaintiffs' motion to compel further responses from Syngenta as to Requests 15–17 should be denied.

---

[3] *See United States ex rel. Bergman v. Abbott Lab'ys*, 2016 WL 2621669, at *4 (E.D. Pa. Jan. 15, 2016) (declining to compel further response to RFA referring to "non-branded sales aid" because "the definition of 'non-branded sales aid' could be an ultimate issue in the case" and given "the significance of the definition, [the party] 'should be able to explain its position and not be bullied into an issue it does not want to make.'") (quoting *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 138 (D.D.C. 2005)); *Felder v. MGM Nat'l Harbor, LLC*, 2024 WL 3690779, at *15 (D. Md. Aug. 7, 2024) (declining to compel further response to RFA seeking admission as to individual's skin color because "Plaintiff's color -- and whether she was discriminated based on her skin tone -- is a central issue in dispute" and "Defendant's responses are not insufficient simply because they refuse to admit facts that are central to Plaintiff's dispute.") (internal quotation marks, brackets, and citation omitted); *Polara Eng'g, Inc. v. Campbell Co.*, 2013 WL 12172122, at *1 (C.D. Cal. Oct. 21, 2013) (denying motion to compel further responses "as to the few RFAs that concern [Plaintiff's] allegedly infringed patent, [because] their subject matter is best suited to an expert."); *In re Transcon. Gas Pipe Line Co., LLC*, 2024 WL 4251915, at *2 (N.D. Ga. Aug. 5, 2024) (report and recommendation adopted) (excusing a party from answering RFAs that "'seek information as to fundamental disagreements at the heart of the lawsuit'—the very opposite of identifying matters on which the parties agree") (quoting *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018)).

Dated: June 24, 2025

/s/Patrick M. Kane
Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
Sean T. Placey
N.C. Bar No. 56683
splacey@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400

Charles S. Duggan*
charles.duggan@davispolk.com
James I. McClammy*
james.mcclammy@davispolk.com
Daniel J. Thomson*
daniel.thomson@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: 212.450.4292
Facsimile: 212.701.5292

Benjamin M. Miller*
benjamin.miller@davispolk.com
1050 17th Street, NW
Washington, DC 20036
DAVIS POLK & WARDWELL LLP
Telephone: 202.962.7133
Facsimile: 202.962.7196

*Specially appearing under Local Rule 83.1(e)

*Attorneys for Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC*

12

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) in that it contains fewer than 6,250 words, excluding the exempted portions, as reported by word processing software.

Dated: June 24, 2025

                                                Respectfully submitted,

                                                */s/ Patrick M. Kane*
                                                Patrick M. Kane

# CERTIFICATE OF SERVICE

I, Patrick M. Kane, an attorney, certify that on June 24, 2025, I caused to be served upon counsel of record for Plaintiffs via email the Defendants Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC's Reply Memorandum Objecting to Plaintiffs' Motion to Compel Written Discovery Responses.

Dated: June 24, 2025

Respectfully submitted,

*/s/ Patrick M. Kane*
Patrick M. Kane
