IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:22-cv-828

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SYNGENTA CROP PROTECTION AG, et al., <br><br> Defendants. | **REPLY BRIEF IN SUPPORT OF SYNGENTA'S MOTION TO STRIKE THE EXPERT REPLY REPORT OF NANCY A. MATHIOWETZ** |

Syngenta submits this reply brief in support of its Motion to Strike the Expert Reply Report of Dr. Nancy A. Mathiowetz.

## **INTRODUCTION**

Syngenta's Motion focuses on the procedural impropriety of Plaintiffs' disclosure of a new expert with new opinions for the first time as a "reply report," and the resulting fallout for the case schedule. (*See* Doc. No. 359 at 4). Plaintiffs' Response has a different focus. It uses Syngenta's procedural motion to take shots at the substance of Mr. Orszag's rebuttal report and at Syngenta's counsel. (*See* Doc. 366 at 2-4 (purporting to offer examples in which Dr. Mathiowetz, somehow, in Plaintiffs' view, "eviscerates" Mr. Orszag); *id.* at 11-12 (wrongly accusing Syngenta counsel of violating this Court's Local Rules)). These gratuitous attacks are not relevant to

1

Syngenta's Motion. They are, however, emblematic of Plaintiffs' gamesmanship.

The gamesmanship of the Response is an extension of Plaintiffs' gamesmanship in disclosing Dr. Mathiowetz in the first place. Plaintiffs could have disclosed Dr. Mathiowetz as an opening expert. Instead, they chose to wait until the reply report deadline—one day after representing to this Court that the parties needed a short extension to expert discovery in order to depose the "total of eight (8) testifying experts[,]" (Doc. No. 355 at 4)—to spring a new expert on Syngenta and on this Court.[1]

Plaintiffs' late disclosure of Dr. Mathiowetz undoubtedly prejudices Syngenta. But more significantly, it is harmful because allowing the untimely "reply report" from Dr. Mathiowetz would wreak havoc on the schedules for both this case and the coordinated MDL Action. To avoid disruption to the scheduling orders, the Court should strike Dr. Mathiowetz's improper reply report.

## ARGUMENT

Plaintiffs argue Syngenta's Motion should be denied because their

---

[1] Plaintiffs do not explain why they felt comfortable filing a joint motion that sought an extension of time specifically calculated to ensure that *eight* experts could be deposed without needing a modification to any other case deadlines, while withholding from the Court and Defendants that they were going to disclose a *ninth* expert the following day.

disclosure of Dr. Mathiowetz's reply report was proper and did not prejudice Syngenta, and because Syngenta did not confer with Plaintiffs before filing its Motion. (Doc. No. 366 at 1). These arguments fail.

**I. Disclosure of Dr. Mathiowetz's expert reply report was untimely and improper, and prejudices Syngenta and this Court.**

The Federal Rules do not provide for or define reply expert reports. *Canyon Ests. Condos. Ass'n v. Atain Specialty Ins. Co.*, 2020 WL 3048016, at *1 (W.D. Wash. June 8, 2020). But when ordained by a scheduling order,[2] a reply report is understood to be an opportunity for an opening expert to defend against the opposing rebuttal expert's attacks. *Oracle Am., Inc. v. Google Inc.*, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011) (a scheduling order "cannot fairly be read to bless the expansion of the expert roster at the reply stage"). Even the case on which Plaintiffs principally rely agrees it is "unusual" to allow a reply report from a new expert. *Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 13341004, at *4 (D. Del. Mar. 14, 2012).

The reason for this is clear: the revelation of a new expert at the reply report stage—near the end of expert discovery—risks the injection of new

---

[2] Plaintiffs' footnoted reference to the Federal Rules' default deadlines for expert disclosure is irrelevant because, under Rule 26(a)(2)(d), those deadlines were overwritten by the Court's scheduling order. Fed. R. Civ. P. 26(a)(2)(D) (disclosures must be made "at the times and in the sequence that the court orders" and the Rule's default deadlines only govern "[a]bsent a stipulation or court order").

3

opinions and methodology by an expert who did not author an opening report. *See Innovation Ventures, L.L.C. v. N.V.E., Inc.*, 2014 WL 4979059, at *3 (E.D. Mich. Oct. 5, 2014) (striking report which "submitted additional information, prepared by a different expert, to bolster the original" report); *Harmony Biosciences, LLC v. Lupin Ltd.*, 2025 WL 3059901 (D. Del. Oct. 27, 2025) (in reply report, new expert improperly offered additional methodology not relied upon by opening expert); *City & Cnty. of S.F. v. Purdue Pharma L.P.*, 2022 WL 1203075, at *1 (N.D. Cal. Apr. 22, 2022) (same). This, in turn, jeopardizes the scheduling order. *Oracle Am.*, 2011 WL 5572835, at *3 ("[T]he late addition of new experts would frustrate case-management objectives by complicating the task of planning and preparing the case for trial.").

Plaintiffs attempt to excuse their late identification of a new "survey methodology" expert by claiming they "could not possibly have disclosed" Dr. Mathiowetz's analysis of the Stratus survey data until they received Mr. Orszag's rebuttal report. (Doc. No. 351 at 2, 6). This is untrue. Stratus survey data had been disclosed to Plaintiffs as early as 2020. (*See* Doc. No. 359-1). The data had been resurfaced to Plaintiffs on multiple occasions thereafter. In fact, Plaintiffs themselves explicitly sought Stratus data in their discovery requests to Syngenta in this case. (*See* Ex. A, RFP 26). Syngenta produced that requested data in December 2024 and January 2025. Plaintiffs thus have

4

known since well before expert discovery that the Stratus (and other) survey data bore closely on the issues here and that Syngenta would rely on them as part of its defense.³ Plaintiffs had ample opportunity to address that survey data in an opening expert report from an expert in "survey methodology." Their decision not to do so—either because Plaintiffs believed Dr. Hemphill and Dr. Smith were incapable of such analysis,⁴ or for some other reason—was one of strategy, not necessity.

The nature of that strategy is plain. By disclosing Dr. Mathiowetz's opinions in reply rather than in an opening expert report, Plaintiffs deprive Syngenta of the opportunity to address this new expert with its own experts.

---

³ The importance of such survey data is nothing new to Plaintiffs. The FTC recently submitted analysis of data nearly identical to those here—in an opening report authored by Dr. Loren Smith, who also authored an opening report in this case. *See FTC v. Tapestry, Inc.*, 755 F. Supp. 3d 386, 443 (S.D.N.Y. 2024).

⁴ At his deposition, Dr. Hemphill testified that, in his own reply report, he "do[es] criticize Mr. Orszag's use of Stratus surveys." Ex. B. And he does attempt to do so. *See* Hemphill Reply Report, Ex. C, at 48-53. Plaintiffs do not explain why Dr. Mathiowetz was necessary to augment Dr. Hemphill's opinions. *See Oracle Am.*, 2011 WL 5572835, at *3 (noting Oracle's similar failure to explain why a new reply expert, rather than its opening expert, was needed to address the opposing rebuttal expert). Plaintiffs may feel Dr. Hemphill lacks the ability to defend his opinion adequately. But if Plaintiffs desired an expert who possessed the requisite ability to defend an opinion about the Stratus survey data, they should have disclosed that expert as an opening expert, not a new reply expert. Alternatively, Plaintiffs could have relied on Dr. Smith, who has previously submitted expert reports on behalf of the FTC addressing similar survey data. *See, supra*, n.3.

5

*See Oracle Am.*, 2011 WL 5572835, at *3 (new experts disclosed at the reply report stage "would not be subject to a direct response from any opposing expert"); *Nguyen v. Jones*, 2020 WL 7264465, at *2 (W.D.N.C. Dec. 10, 2020) (recognizing prejudice where an expert is disclosed late and the opposing party is not given the chance to rebut with its own experts); *see also Saudi v. Northrup Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005) (late expert disclosure inhibits the opposing party's "ability to properly prepare").

And that strategic calculation distinguishes this situation from *Wyeth*. There, the court allowed a reply report from a new expert only after determining the disclosing party could not have anticipated that the rebuttal report would make arguments rooted in a scientific discipline different from the one in which its opening expert had expertise. *Wyeth*, 2012 WL 13341004, at *4. In contrast, Plaintiffs did not learn that they would need an expert to opine on the Stratus survey data for the first time by reading Mr. Orszag's report—they had long been aware of the significance of that data, and had the ability to address them fully in opening reports from experts who they believed to have the appropriate expertise. Further, the *Wyeth* court also allowed the opposing party to submit an otherwise untimely report from yet another new expert to rebut the new reply expert disclosed for the first time on reply, highlighting the cascading effect that allowing a new reply expert has on a

6

discovery schedule. *Id.* at *10. *Wyeth* thus offers Plaintiffs no support.

Plaintiffs dismiss the notion that Syngenta suffered any prejudice from disclosure of a new expert at the reply report stage, suggesting that Syngenta may "explore and test Dr. Mathiowetz's reply" by deposing her during the scheduled expert discovery period. (Doc. No. 366 at 11). But this ignores three key facts.

**First**, the parties and the Court extended the expert discovery period based on the collective understanding that eight experts would be deposed. Plaintiffs shared and encouraged that understanding *even though they knew they would be imminently disclosing a ninth expert the next day*. As a result, Syngenta was left with an abbreviated period in which to digest and evaluate new analysis from a new expert and prepare for her deposition while also holding to the existing schedule to depose the originally disclosed experts.

**Second**, Plaintiffs' disclosure of Dr. Mathiowetz as a reply expert denies Syngenta the opportunity to address her opinion with its own experts, including potentially a rebuttal expert on "survey methodology." The scheduling order in this case does not account for sur-rebuttal experts or expert reports. (*See* Doc. Nos. 195 at 3; 260 at 7; 315 ¶ 4).[5] That is because the schedule

---

[5] Indeed, when Corteva addressed a new opinion offered by Hemphill in his reply report to one of Corteva's experts, Dr. Hill, with a short response, Plaintiffs threatened to move to strike that as improper. *See* Ex. D.

7

assumes the expert submitting a reply report is the same as the opening expert, and the opposing party will have already rebutted that expert's opinions in a rebuttal report. *See Oracle Am.*, 2011 WL 5572835, at \*3 (scheduling order provides no opportunity to respond to reply expert for "obvious reason" that a reply expert would have submitted an opening report). Plaintiffs' solution for the prejudice caused by its strategy—that Syngenta simply depose Dr. Mathiowetz on late notice during the compact expert discovery period designed for fewer experts—is plainly incomplete, as it does not allow Syngenta the same ability to respond that Plaintiffs enjoyed for each of Syngenta's experts.

Plaintiffs oppose any possibility of Syngenta serving a sur-rebuttal report from Mr. Orszag, baldly asserting that doing so would have "no basis in law or fact." (Doc. No. 366 at 11 n.10). Yet that is exactly what the *Wyeth* court allowed. 2012 WL 13341004, at \*10. Similarly, the court in *Akeva L.L.C. v. Mizuno Corp.* addressed the prejudice from a party's disclosure of a new reply expert by (1) allowing the opposing party to disclose a new sur-rebuttal expert and (2) allowing that new expert to submit a sur-rebuttal report. 212 F.R.D. 306, 312 (M.D.N.C. Dec. 20, 2002). The *Akeva* court also *sanctioned* the late-disclosing party, ordering it to pay the opposing party's fees and costs to file its motion to strike and to depose the untimely new expert. *Id.* at 312-13. Thus,

8

Plaintiffs' suggestion that prejudice to Syngenta can be cured by a simple deposition of Mathiowetz is belied by the same cases upon which Plaintiffs' opposition arguments rest.

**Third**, the disruption to the case schedule is by itself enough to warrant striking Dr. Mathiowetz's reply report.[6] *Akeva*, 212 F.R.D. at 360 ("The factors involving docket control planning are sufficiently important to alone justify the exclusion of an untimely disclosed expert report or opinion even in absence of prejudice to the opposing party." (*citing Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997))).

Plaintiffs miss this crucial point in *Akeva*. There, the untimely new "reply" expert was disclosed only weeks before the close of discovery. *Id.* at 308. While that reply report was ultimately allowed, the additional experts and reports necessary to cure the prejudice to the opposing party forced the *Akeva* court to *extend discovery by over two months*. *Id.* at 312. Unlike here, the case schedule in *Akeva* was relaxed enough to absorb this delay without further consequence. *Id.* at 308 (noting only the scheduled trial date, which would occur multiple months after close of the extended discovery period); *see also id.*

---

[6] The Court denied two recent motions to stay this case, (Doc. Nos. 345, 353), to avoid disrupting the "carefully structured schedule for completion of expert discovery" and likely causing "delay [to] the related Multi-District Litigation[.]" (Text Ord., Oct. 17, 2025 (denying the renewed motion); *see also* Text Ord. Oct. 2, 2025 (denying the first motion)).

9

at 311 (the court's "interest in expeditious resolution of litigation" is one factor in the Rule 16(f) analysis). Plaintiffs also miss this same point in their discussion of *Kinetic Concepts, Inc. v. Convatec Inc.* There, the court modified the scheduling order to allow post-deadline discovery because doing so did "not preclude this case from remaining on its current" case schedule. 2010 WL 1418312 (M.D.N.C. Apr. 2, 2010).

This case presents significantly different scheduling considerations. The Court set an aggressive sequence of discovery and post-discovery motion practice, in which *Daubert* and summary judgment motions were to be filed less than one month after the close of expert discovery, and just two weeks from this submission. (Doc. No. 315 ¶ 4). The Court set this schedule in tight coordination with the parallel MDL Action. But curing the prejudice to Syngenta caused by Plaintiffs' Mathiowetz gambit would render that schedule unworkable and require multiple deadline extensions. The Court should not countenance Plaintiffs' lack of regard for the scheduling order. *See Boles v. United States*, 2015 WL 1508857, at *8 (M.D.N.C. Apr. 1, 2015) ("The Court however has a strong tradition for enforcing scheduling order deadlines to ensure" that cases are resolved on the planned timeline. (citing *Indura S.A. v. Engineered Controls Intern. Inc.*, 2011 WL 3862083, at *8 (M.D.N.C. Sept. 1, 2011)) (cleaned up)); *see also Oracle Am.*, 2011 WL 5578235, at *4 (disclosing a

new expert as a reply expert is "inherently unfair and frustrates important case-management objectives" even if it results in no prejudice to the opposing party).

Moreover, condoning Plaintiffs' tactic could have significant ramifications for the MDL Action. It not only risks upsetting the carefully coordinated schedules across the two cases, but it opens the door to the same thing happening there that Plaintiffs tried here. A party in the MDL Action could strategically hold back experts until rebuttal reports were disclosed, at which point those experts could "cre[ep] out of the woodwork" after the window in which they might be rebutted had passed. *Oracle Am.*, 2011 WL 5578235, at *3.[7] Or, a party could decide after the opposition's rebuttal report to engage a new expert with a new area of expertise to reply to that rebuttal report. Were either to occur, the MDL Action deadlines would be impacted by the need of the parties to address the new experts first disclosed on reply (as in *Wyeth* and *Akeva*) and the Court's meticulously constructed schedule to ensure summary

---

[7] Plaintiffs attempt to distinguish *Oracle* by tying exclusion of the new expert's reply report to "sandbagging" and "gamesmanship" by the disclosing party. (Doc. No. 366 at 8 n.8). But *Oracle* did the opposite—it indicated disclosure of the new expert was improper *regardless* of the parties' conduct because such a disclosure was "inherently unfair" irrespective of that conduct. 2011 WL 5572835, at *4; *see also Akeva*, 212 F.R.D. at 311-12 (issuing sanctions for disclosure of new expert in reply report resulting from "simple mistakes with no ulterior motives" or "deliberate delay").

11

judgment is fully briefed by close of 2026 would be jeopardized.

Simply put, allowing Dr. Mathiowetz's report risks delays to the deadlines in this case and undesirable consequences in the MDL Action as well. And that is why, under *Akeva*, Plaintiffs need to justify the ramifications of their late disclosure by demonstrating "good cause." 212 F.R.D. at 309. But Plaintiffs have no good cause for submitting the Mathiowetz reply. The Stratus survey data analyzed by Mr. Orszag has long been available to Plaintiffs. The bearing of those data on Syngenta's position in this case has long been known to Plaintiffs. And the Plaintiffs' opening experts could have, and *did*, address those data in reply—just apparently not to Plaintiffs' liking.

Because Dr. Mathiowetz's late "reply report" is prejudicial and not harmless, and because Plaintiffs have no good cause for their inappropriate disclosure of Dr. Mathiowetz, her report should be stricken.

## II. Syngenta's counsel was not required to meet and confer.

As its title makes clear, Local Rule 37.1(a) applies only to "[m]otions . . . [r]elating to [d]iscovery." A motion to strike is not a discovery motion, but an evidentiary one—its purpose is not to define the scope of discoverable material, but to exclude evidence at summary judgment or at trial. *See Feathers Chicken Farms, LLC v. Westfield Ins. Co.*, 2025 WL 1427055, at *5 (W.D. Ky. May 16, 2025) (citing *Bentley v. Highlands Hops. Corp.*, 2016 WL 5867496, at *3 (E.D.

12

Ky. Oct. 6, 2016)); *see also Bentley*, 2016 WL 5867496, at *3 (motions to strike expert reports "do not seek to compel discovery or somehow limit it" and thus are not "discovery motions" subject to meet-and-confer requirements). Thus, Syngenta's counsel was not required to confer with Plaintiffs' counsel before filing the Motion. Plaintiffs know this because they did not confer with Syngenta before filing their own motion to strike. (*See* Doc. No. 253).

In any event, Plaintiffs have not asked to confer with Syngenta in lieu of litigating this Motion, nor have they indicated that would be fruitful. *See G.D. Searle LLC v. Lupin Pharms., Inc.*, 2013 WL 12123216, at *1 (E.D. Va. Dec. 30, 2013) (finding a meet and confer would "not be beneficial or economical" considering the parties' "drastically different interpretations" of the motion's merits). Thus, Local Rule 37.1(a) provides no basis to deny Syngenta's Motion.

## CONCLUSION

For these reasons, the untimely expert reply report of Dr. Nancy A. Mathiowetz should be stricken, and Dr. Mathiowetz should be precluded from participating in this lawsuit. Alternatively, should the Court be inclined to allow Dr. Mathiowetz's report, Syngenta should be allowed to serve a rebuttal report to address her new opinion and depose her before trial.

13

Dated: December 4, 2025

>Respectfully submitted,
>
>*s/Patrick M. Kane*
>Patrick M. Kane
>N.C. Bar No. 36861
>pkane@foxrothschild.com
>Sean T. Placey
>N.C. Bar No. 56683
>splacey@foxrothschild.com
>FOX ROTHSCHILD LLP
>230 N. Elm Street, Suite 1200
>PO Box 21927 (27420)
>Greensboro, NC  27401
>Telephone:  336.378.5200
>Facsimile:  336.378.5400
>
>Charles S. Duggan*
>charles.duggan@davispolk.com
>James I. McClammy*
>james.mcclammy@davispolk.com
>Michael Scheinkman*
>michael.scheinkman@davispolk.com
>David B. Toscano*
>david.toscano@davispolk.com
>Alison B. Miller*
>alison.miller@davispolk.com
>Daniel J. Thomson*
>daniel.thomson@davispolk.com
>DAVIS POLK & WARDWELL LLP
>450 Lexington Avenue
>New York, NY 10017
>Telephone: (212) 450-4292
>Facsimile: (212) 701-5292

Jesse Solomon*
jesse.solomon@davispolk.com
Benjamin M. Miller*
benjamin.miller@davispolk.com
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
Telephone: (202) 962-7133

*Specially appearing under L.R. 83.1(d)

*Attorneys for Defendants Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC*

# CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing brief complies with Local Rule 7.3(d) in that it contains fewer than 3,125 words as reported by word processing software.

This the 4th day of December 2025.

>*/s/Patrick M. Kane*
>Patrick M. Kane