IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No.: 1:22-cv-828

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | |
| Plaintiffs, | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR C. SCOTT HEMPHILL** |
| v. | |
| SYNGENTA CROP PROTECTION AG, et al., | |
| Defendants. | **Oral Argument Requested** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 2

I.      Plaintiffs Misconstrue Their Burden and the Court's Role ................. 2

II.     Plaintiffs Have Not Proved Reliability or Fit ...................................... 3

    A.      Hemphill is a legal advocate ......................................................... 3

    B.      Hemphill's opinions are unreliable................................................ 8

        1.      Plaintiffs do not and cannot salvage Hemphill's HMT ......... 8

        2.      Plaintiffs have not proved that Hemphill's *ipse dixit*
             opinions fit the facts........................................................... 10

    C.      A methodology cannot be reliable when it lacks testability....... 12

CONCLUSION................................................................................................ 14

CERTIFICATE OF WORD COUNT .............................................................. 17

CERTIFICATE OF SERVICE........................................................................ 18

i

# TABLE OF AUTHORITIES

<b>Page(s)</b>

**Cases:**

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................... 12

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
  2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ...................................................7

*Engilis v. Monsanto Co.*,
  151 F.4th 1040 (9th Cir. 2025) .....................................................................2

*Est. of Thompson v. Kawasaki Heavy Indus., Ltd.*,
  933 F. Supp. 2d 1111 (N.D. Iowa 2013) ........................................................7

*FTC v. Meta Platforms, Inc.*,
  2025 WL 3458822 (D.D.C. Dec. 2, 2025) ................................................. 5, 6

*FTC v. Penn State Hershey Med. Ctr.*,
  838 F.3d 327 (3d Cir. 2016) ..........................................................................8

*FTC v. Tempur Sealy Int'l, Inc.*,
  768 F. Supp. 3d 787 (S.D. Tex. 2025) ........................................................ 10

*In re Trasylol Prods. Liab. Litig.*,
  709 F. Supp. 2d 1323 (S.D. Fla. 2010) .........................................................6

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003) .......................................................................4

*Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*,
  2016 WL 6839394 (M.D.N.C. Nov. 21, 2016).................................................1

*United States v. Adams*,
  444 F. Supp. 3d 1248 (D. Or. 2020).............................................................13

*United States v. Benson*,
  941 F.2d 598 (7th Cir. 1991).........................................................................6

*United States v. Johnson*,
122 F. Supp. 3d 272 (M.D.N.C. 2015) ........................................................ 12

*United States v. Mitchell*,
365 F.3d 215 (3d Cir. 2004) ...................................................................... 13

*United States v. Protho*,
41 F.4th 812 (7th Cir. 2022) ..................................................................... 12

*Viterbo v. Dow Chem. Co.*,
646 F. Supp. 1420 (E.D. Tex. 1986) ...........................................................5

*White v. City of Greensboro*,
586 F. Supp. 3d 466 (M.D.N.C. 2022) .................................................... 2, 6

**Rules:**

Fed. R. Evid. 104 ................................................................................... 2, 14

Fed. R. Evid. 702 ............................................................................ 1, 2, 3, 14

**Other Authorities:**

John Simpson & Abraham L. Wickelgren, *Naked Exclusion,
Efficient Breach, and Downstream Competition*, 97 Am. Econ.
Rev. 1305 (2007) ..................................................................................... 10

Patrick DeGraba & John Simpson, *Loyalty Discounts and
Theories of Harm in the Intel Investigations*, 2 J. Antitrust
Enforcement 170 (2014) ........................................................................... 10

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th &
5th ed. 2023) ........................................................................................... 10

# **INTRODUCTION**

Plaintiffs say that because Hemphill has advanced degrees, his opinions must be admissible, and Defendants' challenges just go to the weight of the evidence. Federal Rule of Evidence 702 says otherwise. No matter an expert's purported qualifications, that expert must satisfy *all* the requirements of Rule 702 for his opinions to reach the fact-finder.

Plaintiffs' response mostly just restates Hemphill's conclusions. But that is the problem: an expert's opinions are not admissible simply because the expert (or counsel) says so. Nor are they admissible where, as here, the proffered expert is a biased legal advocate using flawed methodology to reach a predetermined result.

Plaintiffs bear the burden of showing a reliable methodology (and application thereof) supporting Hemphill's opinions. But at every turn, all Plaintiffs rely on is Hemphill's word. As this Court has held, expert opinions that are "no more than an *ipse dixit* declaration unsupported by testable, reliable science" should be excluded. *See Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 2016 WL 6839394, at \*8 (M.D.N.C. Nov. 21, 2016).

Because Plaintiffs have not met—and cannot meet—their burden of satisfying each requirement of Rule 702 by a preponderance of the evidence, Hemphill's opinions should be excluded.

1

**ARGUMENT**

## I.    Plaintiffs Misconstrue Their Burden and the Court's Role.

Plaintiffs' response rests on the mistaken premise that Defendants, as movants, bear the burden of proving Hemphill's testimony should be excluded. That is backwards. Federal Rule of Evidence 104(a) dictates that the party *proffering* expert testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." *White v. City of Greensboro*, 586 F. Supp. 3d 466, 477 (M.D.N.C. 2022); Fed. R. Evid. 702 advisory committee note to 2023 amendments (noting that amendments clarified the proponent of expert testimony must prove "it is more likely than not" that the testimony is admissible). Plaintiffs misapprehend—and then fail to satisfy—*their* burden.

That same flaw undermines Plaintiffs' mantra that all of Defendants' challenges to Hemphill go merely to the weight of his testimony, rather than admissibility, because they can be addressed through cross-examination and contrary evidence. But only *after* "the court has found it more likely than not that the admissibility requirement has been met" does an attack go to weight. Fed. R. Evid. 702 advisory committee note to 2023 amendments; *see also Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (weight arguments apply only "if a court first finds it more likely than not that an

2

expert has a sufficient basis to support an opinion"). If Plaintiffs were correct, then the Court would no longer be a "gatekeeper"; instead, the floodgates for irrelevant and unreliable "expert" testimony would be flung wide open.

## II. Plaintiffs Have Not Proved Reliability or Fit.

As an initial matter, Plaintiffs do not address Hemphill's inadmissible arguments about undefined "ordinary price competition." (*See* Mem. at 24-25). At minimum, this aspect of Hemphill's opinions should be excluded. As to the arguments Plaintiffs do make, as shown below, they are meritless.

### A. Hemphill is a legal advocate.

While partiality is not disqualifying, *advocacy is*. Plaintiffs attempt to dismiss as "fanciful" the conclusion that Hemphill is a legal advocate, but the undisputed facts speak for themselves.

In describing Hemphill's background, Plaintiffs omit that he is a lawyer who has never held a position as an economist. (*Compare* Opp. at 2-3, *with* Mem. Ex. A, App. A). Plaintiffs ignore the obvious problems inherent in hiring a law professor who has publicly advocated a position on a central legal issue in the case, commented on the draft complaint, staffed his support team with in-house FTC litigators, and maintained an ongoing attorney-client

3

relationship with a Plaintiff.[1]  Indeed, it was circumstances like these that resulted in exclusion of a proffered expert who had "carried on the traditional functions of a lawyer advocate."  *Lippe v. Bairnco Corp.,* 288 B.R. 678, 688 (S.D.N.Y. 2003).

Plaintiffs question how Hemphill's attorney-client relationship with Plaintiff Colorado in the *Google* monopolization case is relevant.  (Opp. at 10 n.7).  As a lawyer for Colorado in an active monopolization case, Hemphill has ethical duties (including of loyalty) to his client that are incompatible with any claim that he is independent.  Under the ethical rules, Hemphill would not be permitted to advocate a position adverse to his current client Colorado in this case, even if that is what an objective review of the facts required of him as an expert.  Of course, the ability to take whatever position the facts require is the very lynchpin of expert impartiality.  Thus, Hemphill's attorney-client relationship with Colorado prohibits him from being an impartial expert in this matter, and that, alone, is a basis for exclusion.  (Mem. at 8).

---

[1] Plaintiffs insist that staffing in-house FTC litigators on Hemphill's support team is necessary to avoid "tremendous expense to taxpayers."  (Opp. at 10 n.9).  But expert impartiality requires the FTC do what every other party does: refrain from having its litigators work for its expert and have an independent team selected by the expert support him.  This, and not the FTC's transgression of the line between lawyers and experts, is the "standard fare." (*See id.* at 9).

4

Hemphill's engagement by Colorado, like his tenured position at N.Y.U. Law School, also highlights that he is, first and foremost, a lawyer. That is why Hemphill's testimony as an "economist" in another monopolization case brought by the FTC was, according to the presiding judge, "almost as if the FTC had put one of its own lawyers on the stand." *FTC v. Meta Platforms, Inc.*, 2025 WL 3458822, at \*26 (D.D.C. Dec. 2, 2025), *appeal filed*, No. 26-5028 (D.C. Cir. Jan. 26, 2026).

Combined with the lack of support for Hemphill's opinions in accepted economic theory, these facts confirm that Plaintiffs are proffering a partisan attorney disguised as an independent economist. Hemphill does not have to be "driving" Plaintiffs' strategy to be acting as an advocate. (*See* Opp. at 8).

Plaintiffs' effort to transform a legal advocate into an expert witness does not simply implicate credibility. It presents a fundamental, threshold legal question: Are Hemphill's biased, results-driven opinions reliable? The true nature of Hemphill's role explains why his proffered opinions lack the rigor and limiting principles typical of economic modeling and analysis, and they should be excluded as improper advocacy. *See Viterbo v. Dow Chem. Co.*, 646 F. Supp. 1420, 1425 (E.D. Tex. 1986) (disqualifying experts as "advocates for a cause" because they, like Hemphill, came with opinions already formed about the case), *aff'd*, 826 F.2d 420 (5th Cir. 1987).

5

Even setting Hemphill's advocacy aside, "legal issues [are] not the proper basis for expert opinion." *White*, 586 F. Supp. 3d at 480. Hemphill regularly refers to "economic evidence" and then proceeds to characterize Defendants' documents, including by advancing arguments about Defendants' state of mind,[2] that the Court is well equipped to assess itself. (*See, e.g.*, Mem. Ex. A §§ 3.2, 4.4.2-4.4.4). Such analysis amounts to no more than "regurgitat[ed] [facts]" layered on "conclusory opinions." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010); *accord United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (expert testimony "consist[ing] of nothing more than drawing inferences from the evidence that he was no more qualified than the [fact-finder] to draw" is inadmissible), *amended by* 957 F.2d 301 (7th Cir. 1992). The judge is the legal expert in the courtroom—and it is the Court's prerogative as the gatekeeper to prevent Hemphill's legal advocacy from being admitted in the guise of expert testimony.

Plaintiffs suggest that Defendants acted improperly by citing to the recent decision in *FTC v. Meta*. But there is nothing wrong with pointing out another court's conclusions about a proffered expert—particularly a recent finding involving the same party, the same legal issue, and the same legal

---

[2] (*See, e.g.*, Mem. Ex. A ¶ 397; Mem. Ex. C ¶¶ 100, 339, 353 n.643).

advocate witness.  The cases cited by Plaintiffs discuss "references *at trial* to another court's prior *Daubert* ruling."  *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2022 WL 254348, at *6 (N.D. Cal. Jan. 27, 2022) (emphasis added); *see also Est. of Thompson v. Kawasaki Heavy Indus., Ltd.*, 933 F. Supp. 2d 1111, 1152 (N.D. Iowa 2013) (similar).  That is a different question than whether, as here, an expert's opinions should be excluded on the front-end.

Finally, exacerbating the problem, Hemphill's proffered non-economic opinions extend beyond his improper legal advocacy.  Appendix C of his report proffers opinions like:

> Respiration is the process by which mitochondria within the cells produce a source of energy used by the cell.  Without respiration, dormant fungal spores are unable to become active and grow.

> [A]zoxystrobin is xylem mobile, meaning that the fungicide travels through the plant's xylem vessels (its water-conducting tissues), protecting parts of the plant that weren't directly sprayed.

(Mem. Ex. A, App. C ¶¶ 1-2 (footnotes omitted)).

Statements like these are not within the bailiwick of an economist (or a law professor).[3]  Despite Plaintiffs' contention to the contrary, (Opp. at 19 n.14), Hemphill conceded that he lacks relevant expertise to opine upon the

---

[3] Plaintiffs are wrong that Defendants' economists take "the same approach." (Opp. at 19).  Each Defendant retained an expert agronomist to speak to the agronomic properties of the at-issue AIs and their value to growers.

7

agronomic properties of Defendants' AIs. (Mem. at 10). Plaintiffs' uncompromising insistence that Hemphill's proffered testimony about fungal spore respiration and xylem mobility is admissible underscores that Plaintiffs' defense of Hemphill is unconstrained by common sense.

### B.    Hemphill's opinions are unreliable.

Hemphill's market definition rests on his flawed and biased HMT. (Mem. at 19). Hemphill relies on his opinion that his narrow single-AI markets pass his HMT as the *sole* reason this Court should ignore the ubiquitous evidence of broader product markets.[4] Thus, Hemphill acknowledges the broader markets but rejects their relevance based on (1) his HMT (which is unreliable) and/or (2) his say-so (which is insufficient).

### 1.    Plaintiffs do not and cannot salvage Hemphill's HMT.

Plaintiffs cite (inapposite) cases in which a different version of the HMT was used appropriately; Defendants cited (apposite) cases in which the HMT was not. The question is whether the test has been reliably applied to the facts of a particular case. In *FTC v. Penn State Hershey Medical Center*, cited by Plaintiffs, the Third Circuit held that a district court's analysis purportedly

---

[4] (*See* Mem. Ex. C ¶ 19 ("If a relatively narrow market satisfies the [HMT], then **the analysis is complete** even if (as is typically the case) there exist other products outside the market that also compete." (emphasis added)); Mem. Ex. B at 83:20-84:8 (Hemphill has not "ruled out the existence of other broader markets that contain other AIs")).

based on the HMT was "economically unsound and not reflective of the commercial reality" of the market. 838 F.3d 327, 344 (3d Cir. 2016). Because the analysis was inconsistent with economic understanding or tied to commercial realities of the specific industry at issue, the district court "committed legal error in failing to properly formulate and apply" the HMT. *Id.* at 344-45. Likewise, the problem here is not that Hemphill uses the HMT; the problem is that Hemphill does so unreliably, and Plaintiffs have not met their burden to show otherwise.[5]

The most glaring methodological flaw in Hemphill's HMT is the failure to hold the prices of incumbent products containing other AIs constant, which makes the analysis unreliable as a matter of law. (Mem. at 15-17). Plaintiffs insist that "a 'requirement' to hold constant is inconsistent with economics and the law." (Opp. at 23). That disregards this Court's explanation that "if the price of one incumbent product drops significantly in response to new entry, *while the prices of other incumbents do not*, then that first incumbent product, plus the new entrant, is very likely a market." (D.E. 160 at 32

---

[5] In his reply report, Hemphill made a belated effort to perform an appropriate HMT, but he did not do so for *any* of the Syngenta at-issue AIs or for all of the Corteva at-issue AIs. (*See* Mem. Ex. C ¶¶ 139-140, 143). And for the Corteva AIs Hemphill did "test," he used admittedly ill-suited data. (*See* Mem. Ex. B at 85:20-87:19).

9

(emphasis added) (quoting Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 561b2 (4th & 5th ed. 2023))).  And the only case cited by Plaintiffs for their argument reasoned:  "A properly conducted HMT requires a reliable data set, while holding everything constant *apart from* an increase in price for the product being tested…This the FTC's expert failed to do."  *FTC v. Tempur Sealy Int'l, Inc.*, 768 F. Supp. 3d 787, 827 (S.D. Tex. 2025).

> ### 2. Plaintiffs have not proved that Hemphill's *ipse dixit* opinions fit the facts.

Plaintiffs also fail to show how Hemphill's opinions can be admissible despite being, as Plaintiffs implicitly concede, tethered to economic theory only by Hemphill's say-so.  For example, Plaintiffs argue that Hemphill "relies on" an article by Professors Asker and Bar-Isaac, (Opp. at 11-12); yet Plaintiffs concede that the article's economic model rests on the facially inapt assumptions that "each buyer can serve the whole market,"[6] (*id.* at 13), and

---

[6] Similarly, the Simpson-Wickelgren paper does not model the scenario in which competitors (generics) have entered at the time that the incumbent makes the loyalty offer to channel members.  *See, e.g.*, John Simpson & Abraham L. Wickelgren, *Naked Exclusion, Efficient Breach, and Downstream Competition*, 97 Am. Econ. Rev. 1305, 1307 (2007); (*see also* Opp. at 12).  The DeGraba-Simpson paper is not a general model; it instead considers foreclosure theories only within a unique CPU industry with massive scale economies.  *See* Patrick DeGraba & John Simpson, *Loyalty Discounts and Theories of Harm in the Intel Investigations*, 2 J. Antitrust Enforcement 170 (2014) (Ex. 11 to Opp).  That does not fit the crop protection industry.

10

that no competitor has entered the market, (Mem. Ex. A ¶ 264 n.285). Plaintiffs nonetheless insist the article supports Hemphill's opinions because Hemphill has "explained" the model can be "extended." (Opp. at 13). In other words, Hemphill's opinions are purportedly supported by established economic literature only because Hemphill says they are.

That Hemphill plays fast-and-loose with the established economic literature is also shown by Plaintiffs' attempt to distance Hemphill from the falsified corollary of his monopoly-profit-sharing theory that "[c]ompliance for an individual distributor is not rational if other distributors have accommodated the entrant." (Mem. Ex. C ¶ 214). Plaintiffs claim that the economic literature supports this corollary, at least if Hemphill can "extend" it to the facts of this case. (Opp. at 13-14). But the disproved corollary is Hemphill's own, expressed in his reply report. (Mem. Ex. C ¶ 214). Similarly, Plaintiffs ignore that Hemphill's theory of allegedly anticompetitive harm cannot be reconciled with his concession that generics can offer "only modest consideration…to secure distributor loyalty." (*Id.* ¶ 253).

Plaintiffs' response (or lack thereof) illustrates how Hemphill "extends" the inapplicable established literature when it advances his agenda, yet blames the divergence between that same literature and the facts of this case

11

when his own theory fails. That exploitation of economic literature does not yield reliable or relevant economic opinions.

### C. A methodology cannot be reliable when it lacks testability.

In a recurring pattern, Hemphill marshals evidence and then states a conclusion tracking Plaintiffs' legal theory. On the key questions—causation of harm, (Mem. at 21-22), whether the programs are exclusionary rather than competitive, (*id.* at 27-28), whether innovation was reduced, (*id.* at 20)—Hemphill offers no usable or verifiable test. The theory espoused in Hemphill's reports has not been "independently tested," and, "more importantly, it *cannot* be." *United States v. Johnson*, 122 F. Supp. 3d 272, 330-31 (M.D.N.C. 2015). "These flaws render the study unreliable." *See id.* at 331.

Under *Daubert*, "whether [a methodology] can be (and has been) tested" is pertinent to reliability. 509 U.S. 579, 593 (1993). "[T]estability" is what moves a "theory or technique" into the realm of "scientific knowledge" because "[s]cientific methodology...is based on generating hypotheses and testing them to see if they can be falsified." *Id.* (quotations omitted).

For the Court to apply a proposed methodology to the facts, there must be some basis to test, or "falsify," the theory. *See United States v. Protho*, 41 F.4th 812, 822 (7th Cir. 2022) (describing analysis as "falsifiable" where "the same samples could be re-examined, and the original results shown to be

12

accurate or not"); *United States v. Mitchell*, 365 F.3d 215, 235 (3d Cir. 2004) ("A proposition is falsifiable if it is capable of being proved false; defeasible." (cleaned up)); *United States v. Adams*, 444 F. Supp. 3d 1248, 1260 (D. Or. 2020) ("The idea behind falsifiability is that the methodology at issue...involves a proposition that observation or testing can prove false.").

The lack of falsifiability pervades Hemphill's opinions. In fact, Hemphill's "but for" world is designed *not to be falsifiable*: in it, prices are "lower" and generic share is "higher." Yet Hemphill concedes, as he must, that generics in the real world have made substantial inroads and prices have dropped significantly as a result. He also concedes that Defendants' loyalty programs have not prevented price competition from "becom[ing] highly intense." (Mem. Ex. A ¶ 399). So how could the trier of fact know that if the supposed anticompetitive effects of loyalty programs[7] (as distinct from their price reductions) were eliminated, then generic share would be higher and prices lower? Only Hemphill's say-so. It is acceptable for an expert to create a but-for world. But the expert must do so reliably. Hemphill has not, and Plaintiffs have not met their burden to prove admissibility.

---

[7] Hemphill concedes loyalty programs can be procompetitive. (*See* Mem. Ex. A ¶ 23; Mem. Ex. B at 363).

13

Plaintiffs refuse to acknowledge a similar problem with Hemphill's causation opinions.  Hemphill has never denied that prices decreased, so the issue is what *caused* prices to go down.  Hemphill has not proffered a reliable methodology to show causation.  He assumes generics as the sole cause, but he has done nothing to eliminate other potential causes.  Plaintiffs' reliance on Hemphill's say-so is insufficient, and the failure to provide a testable theory renders his opinions inadmissible.

Hemphill's inappropriate causation assumption also infects his market definition opinions.  (Mem at 16-19).  Plaintiffs contend that Hemphill's failure to account for record evidence showing that the prices of other CPPs outside his proposed markets decreased significantly when generics entered "should [be] explore[d]...on cross examination." (Opp. at 24).  That is the exact scenario that Rule 702 prohibits, and Plaintiffs' approach effectively vitiates the application of Rule 104(a) to Rule 702.

It is Plaintiffs' burden to proffer a reliable, testable opinion for the fact-finder to analyze.  Plaintiffs fail that burden.

## CONCLUSION

For these reasons, Hemphill's proffered expert opinions should be excluded.

14

Dated: March 20, 2026

Respectfully submitted,

*s/Patrick M. Kane*

Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
Sean T. Placey
N.C. Bar No. 56683
splacey@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400

Charles S. Duggan*
charles.duggan@davispolk.com
James I. McClammy*
james.mcclammy@davispolk.com

Michael Scheinkman*
michael.scheinkman@davispolk.com
David B. Toscano*
david.toscano@davispolk.com
Alison B. Miller*
alison.miller@davispolk.com
Daniel J. Thomson*
daniel.thomson@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4292
Facsimile: (212) 701-5292

Benjamin M. Miller*
benjamin.miller@davispolk.com

*s/Mark E. Anderson*

**MCGUIREWOODS LLP**

Mark E. Anderson (NC Bar No. 15764)
Armina A. Manning (NC Bar No. 60436)
manderson@mcguirewoods.com
aamanning@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Telephone: (919) 755-6600
Fax: (919) 755-6699

**BALLARD SPAHR LLP**

Jason A. Leckerman*
Emilia McKee Vassallo*
Thomas W. Hazlett*
Elizabeth P. Weissert*
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
LeckermanJ@ballardspahr.com
McKeeVassalloE@ballardspahr.com
HazlettT@ballardspahr.com
WeissertE@ballardspahr.com

**CRAVATH, SWAINE & MOORE LLP**

Wes Earnhardt *
Jesse Weiss*
Margaret T. Segall *
Two Manhattan West
375 Ninth Ave

15

DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
Telephone: (202) 962-7133

Jesse Solomon*
jsolomon@paulweiss.com
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW Washington, DC
20006-1047 (202) 223-7312

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendants Syngenta
Crop Protection AG, Syngenta
Corporation, and Syngenta Crop
Protection, LLC*

New York, New York 10001
Telephone: (212) 474-1000
Fax: (212) 474-3700
wearnhardt@cravath.com
jweiss@cravath.com
msegall@cravath.com

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendant Corteva,
Inc.*

16

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing reply brief complies with Local Rule 7.3(d) in that it contains fewer than 3,125 words as reported by word processing software.

This the 20th day of March 2026.

*/s/Patrick M. Kane*
Patrick M. Kane

17

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br>STATE OF CALIFORNIA,<br>STATE OF COLORADO,<br>STATE OF ILLINOIS,<br>STATE OF INDIANA,<br>STATE OF IOWA,<br>STATE OF MINNESOTA,<br>STATE OF NEBRASKA,<br>STATE OF OREGON,<br>STATE OF TENNESSEE<br>STATE OF TEXAS,<br>STATE OF WASHINGTON,<br>    and<br>STATE OF WISCONSIN,<br><br>        Plaintiffs,<br><br>    v.<br><br>SYNGENTA CROP PROTECTION AG,<br>SYNGENTA CORPORATION,<br>SYNGENTA CROP PROTECTION,<br>LLC,<br>    and<br>CORTEVA, INC.,<br><br>        Defendants. | Case No. 1:22-cv-00828-TDS-JEP<br><br>**CERTIFICATE OF SERVICE** |

Consistent with the Court's Order of February 18, 2026, D.E. 415, the undersigned counsel certifies that on March 20, 2026, counsel of record for Plaintiffs were timely served via electronic means with the Reply Brief in Support of Defendants' Joint Motion to Exclude Expert Testimony of Professor C. Scott Hemphill.

18

This the 20th day of March 2026.

s/Patrick M. Kane
Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
Sean T. Placey
N.C. Bar No. 56683
splacey@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC  27401
Telephone:  336.378.5200
Facsimile:  336.378.5400

Charles S. Duggan*
charles.duggan@davispolk.com
James I. McClammy*
james.mcclammy@davispolk.com
Michael Scheinkman*
michael.scheinkman@davispolk.com
David B. Toscano*
david.toscano@davispolk.com
Alison B. Miller*
alison.miller@davispolk.com
Daniel J. Thomson*
daniel.thomson@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4292
Facsimile: (212) 701-5292

Benjamin M. Miller*
benjamin.miller@davispolk.com
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
Telephone: (202) 962-7133

s/Mark E. Anderson
MCGUIREWOODS LLP
Mark E. Anderson (NC Bar No. 15764)
Armina A. Manning (NC Bar No. 60436)
manderson@mcguirewoods.com
aamanning@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Telephone: (919) 755-6600
Fax: (919) 755-6699

BALLARD SPAHR LLP
Jason A. Leckerman*
Emilia McKee Vassallo*
Thomas W. Hazlett*
Elizabeth P. Weissert*
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
LeckermanJ@ballardspahr.com
McKeeVassalloE@ballardspahr.com
HazlettT@ballardspahr.com
WeissertE@ballardspahr.com

CRAVATH, SWAINE & MOORE LLP
Wes Earnhardt *
Jesse Weiss*
Margaret T. Segall *
Two Manhattan West
375 Ninth Ave
New York, New York 10001
Telephone: (212) 474-1000
Fax: (212) 474-3700
wearnhardt@cravath.com
jweiss@cravath.com

19

Jesse Solomon*
jsolomon@paulweiss.com
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7312

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendants Syngenta
Crop Protection AG, Syngenta
Corporation, and Syngenta Crop
Protection, LLC*

msegall@cravath.com

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendant Corteva,
Inc.*

20