# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN,

Plaintiffs,

v.

SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC.,

Defendants.

Case No. 1:22-cv-00828-TDS-JEP

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO EXCLUDE THE REPORTS, OPINIONS, AND TESTIMONY OF LOREN K. SMITH**

**Oral Argument Requested**

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................. 1

I.      Smith's Analysis Should Be Excluded Because Plaintiff States Cannot
Establish the Reliability of the Purported Yardsticks on Which It Depends. .......... 3

II.     The Wide Variability of Smith's Yardstick Estimates Confirms That
They Are Not Reliable Approximations of the But-For World. ........................... 10

CONCLUSION ......................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

AngioDynamics, Inc. v. C.R. Bard,
537 F. Supp. 3d 273 (N.D.N.Y. 2021)..............................................................4

Cont. Packaging, Inc. v. Cent. Garden & Pet Co.,
2011 WL 13162306 (N.D. Ga. Mar. 31, 2011)................................................9

Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc.,
213 F.3d 198 (5th Cir. 2000) .......................................................................11

Gen. Elec. Co. v. Joiner,
522 U.S. 136 (1997)........................................................................................7

In re Blood Reagents Antitrust Litig.,
2015 WL 6123211 (E.D. Pa. Oct. 19, 2015)...................................................8

In re Live Concert Antitrust Litig.,
863 F. Supp. 2d 966 (C.D. Cal. 2012) .........................................................11

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,
638 F. Supp. 3d 227 (E.D.N.Y. 2022) ..........................................................10

In re Rezulin Prods. Liability Litig.,
369 F. Supp. 2d 398 (S.D.N.Y. 2005)............................................................7

Sandoz Inc. v. United Therapeutics Corp.,
2022 WL 17335696 (D.N.J. Mar. 30, 2022)................................................3, 5

Syngenta Crop Prot., LLC v. Willowood Azoxystrobin, LLC,
267 F. Supp. 3d 649 (M.D.N.C. 2017) ........................................................5, 6

Tawfilis v. Allergan, Inc.,
2017 WL 3084275 (C.D. Cal. June 26, 2017) ...............................................8

TK-7 Corp. v. Est. of Barbouti,
993 F.2d 722 (10th Cir. 1993) .......................................................................5

Watkins Inc. v. McCormick & Co.,
574 F. Supp. 3d 644 (D. Minn. 2021)............................................................5

**Statutes & Rules**

Fed. R. Evid. 702 ...................................................................................................... passim

Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment .......................................... 8

Case 1:22-cv-00828-TDS-JEP     Document 449     Filed 04/23/26     Page 4 of 22

# CITATION CONVENTIONS

**Parties**

| | |
|---|---|
| Corteva | Corteva, Inc. |
| Syngenta | Syngenta Crop Protection AG, Syngenta Corporation and Syngenta Crop Protection, LLC |
| Defendants | Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Crop Protection, LLC, and Corteva, Inc. |
| Plaintiff States | State of California, State of Colorado, State of Illinois, State of Indiana, State of Iowa, State of Minnesota, State of Nebraska, State of Oregon, State of Tennessee, State of Texas, State of Washington, and State of Wisconsin |
| Plaintiffs | Federal Trade Commission, State of California, State of Colorado, State of Illinois, State of Indiana, State of Iowa, State of Minnesota, State of Nebraska, State of Oregon, State of Tennessee, State of Texas, State of Washington, and State of Wisconsin |

**Filings**

| | |
|---|---|
| Br. | Defendants' Joint Motion to Exclude Expert Testimony of Dr. Loren K. Smith served on December 19, 2025, and to be filed on the docket in accordance with procedures established in this case for filing sealed motions |
| Opp'n or Opposition Brief | Plaintiff States' Brief in Opposition to Defendants' Joint Motion to Exclude Loren K. Smith served on February 20, 2026, and to be filed on the docket in accordance with procedures established in this case for filing sealed motions |
| Br. Ex. _ | Exhibit to the December 19, 2025 Declaration of Mark E. Anderson in support of Defendants' Joint Motion to Exclude Expert Testimony of Dr. Loren K. Smith, to be filed on the docket in accordance with the procedures established in this case for filing sealed motions |

**ARGUMENT**

Plaintiff States' Opposition fails to address the core problems with Smith's yardstick analysis. Contrary to Plaintiff States' contention, the fundamental reliability concern with Smith's yardsticks is not that they were prepared by someone else (though they were), or that they are based mainly on projections (though they are), but that Smith does not know what assumptions and methods were used to prepare them. His approach stands in stark contrast to the analyses in the cases cited by Plaintiff States, where the expert investigated and could explain the assumptions underlying the estimates on which the expert relied. Smith, by contrast, just assumes—without investigating—that his six yardsticks, sourced from narrow excerpts of Syngenta documents and one snippet of vague non-party deposition testimony, "reliably isolate[] the price impact of defendants' loyalty programs." (Opp'n at 6). Smith's blind reliance on estimates prepared by others, by itself, requires that Smith's opinions be excluded under Rule 702.

It gets worse. Smith also ignores red flags indicating that those estimates are not reliable approximations of the but-for world:

- Many of his yardstick sources identify confounding factors on their face, which Smith simply ignores; and many expressly indicate—or their authors testified under oath—that they do <u>not</u> create a but-for world in which Syngenta's (much less Corteva's) loyalty program is removed and all else is held constant.

- Smith's conclusions vary enormously; for example, depending on which yardstick is used, his price effects range from █ percent to █ percent, notwithstanding that the supposed yardsticks are meant to approximate <u>the exact same</u> but-for world.

1

- One of Smith's estimates (lambda), by Smith's own admission, leads to "impossible results" when run through Smith's model; and another (oxyfluorfen) would too if the estimate were changed by a single percentage point.[1]

- Of his six yardsticks, three have pre- and post-loyalty pricing data, and <u>all three</u> show prices going up, not down, after the active ingredients ("AIs") are removed from their respective loyalty programs, which is directly contrary to Smith's conclusions.

Plaintiff States claim that these glaring red flags are fodder for cross-examination. Not so. Rule 702 requires District Courts to act as gatekeepers. To get past the gate, the proponent must demonstrate that the testimony is reliable, both in its methodology and application to the facts. <u>See</u> Fed. R. Evid. 702. While real-world pricing data can and does falsify Smith's yardsticks, the reliability of whatever methodologies underlie his yardsticks cannot otherwise be tested because they are black boxes. Smith did not create his estimates; nor did he interview their creators; nor did he do anything else to understand how they supposedly approximate the but-for world. Smith neither investigated the wide variation in his estimates that are supposed to be measuring the same exact but-for world, nor did he conduct any regression on the pricing data to test his assumptions.

Any of these failings would be reason to exclude Smith's yardstick analysis. Taken together, they leave no doubt that Smith's analysis falls well short of Rule 702's requirements. His opinions should be excluded in their entirety.

---

[1] Plaintiff States argue, as did Smith, that it "is common in economic analysis for a large but reliable input and reliable model to produce an output that doesn't make sense." (Opp'n at 8.) That is a concession that at least one of Smith's conclusions "doesn't make sense." Smith also does not explain why an "impossible" output from his model should not call into question the reliability of the input that produced it. That is all the more so when another yardstick input produces the same impossible output with only slight changes.

**I.** **Smith's Analysis Should Be Excluded Because Plaintiff States Cannot Establish the Reliability of the Purported Yardsticks on Which It Depends.**

Smith's central failing is not, as Plaintiff States suggest, that he relies on others' projections and estimates (Opp'n at 2), but rather that he (1) failed to investigate the assumptions underlying those projections and estimates; (2) blindly relies on them despite clear red flags that they do not reliably approximate the but-for world; and, thus, (3) cannot vouch for, let alone establish, the reliability of the bedrock of his analyses.[2]

First, while "[i]n some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality," "to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable" based on "familiarity with the methods and the reasons underlying someone else's projections." Sandoz Inc. v. United Therapeutics Corp., 2022 WL 17335696, at *21–23 (D.N.J. Mar. 30, 2022). Without that familiarity, the proponent of the analysis could never demonstrate that the estimates are based on sufficient facts or data, or reflect reliable principles and methods as Rule 702 requires. See id. (explaining that the "familiarity" requirement is important so as not to "preclude any assessment of the validity of the projections through cross-examination").

By his admission, Smith has no familiarity with how his yardstick figures were derived, what assumptions underlie them, and how, if at all, they account for confounding factors. That alone warrants exclusion.

---

[2] For these reasons, the cases Plaintiff States cite for the proposition that courts have admitted yardstick analyses based on internal projections and non-retrospective data (Opp'n at 13–15) are beside the point.

Smith's oxyfluorfen yardstick illustrates the problem. That yardstick is derived entirely from a snippet of testimony from non-party Vance, who testified, from memory, that he believed the price of oxyfluorfen fell after it was removed from Corteva's loyalty program. However, Plaintiff States' Opposition does not dispute that the actual farmgate pricing data shows that oxyfluorfen's prices <u>increased</u> after it was removed from the loyalty program. Plaintiff States and Smith surmise that the data is impacted by confounding factors, such as COVID-19 and Corteva's transfer of marketing rights to Nufarm. (Opp'n at 19.) But criticizing the actual data does not show that Vance's recollection is accurate—let alone more accurate than the hard data itself. Plaintiff States' methodological critique—data cannot be trusted unless confounding factors are eliminated—should be directed at Vance's memory and Smith's reliance on it: What, if anything, <u>did Vance do</u> to remove confounding factors and isolate the impact of oxyfluorfen's removal from loyalty on oxyfluorfen's price? Smith provides no answer.

The failings do not end there. According to Plaintiff States, "it is 'well known' to economists 'that when evaluating a time series of data it is difficult to account for confounding factors.'" (<u>Id.</u> (citing Br. Ex. 4 ¶ 78).) What, if anything, <u>did Vance do</u> to overcome those difficulties? What data had Vance seen to inform his work and from what source? Smith does not answer <u>any</u> of these questions. And standing alone, Vance's testimony provides "none of the information necessary to confirm that it is suitable for use in [Smith]'s analysis." <u>AngioDynamics, Inc. v. C.R. Bard</u>, 537 F. Supp. 3d 273, 339 (N.D.N.Y. 2021). That is the paradigm of unreliability under Rule 702. The same problem infects his approach to his other yardsticks. (<u>See</u> Br. at 17–20.) Smith's "fail[ure] to

4

demonstrate any basis for concluding that another individual's opinion on a subjective financial prediction was reliable" warrants exclusion. Cf. TK-7 Corp. v. Est. of Barbouti, 993 F.2d 722, 732 (10th Cir. 1993).

The cases cited by Plaintiff States underscore Smith's failings. In Sandoz, the court found the expert's reliance on a co-plaintiff's forecast model reliable where the "model provided specific detail into the individual assumptions being made," such that the expert "did not lack critical information that would be necessary for [the defendant] to effectively cross-examine him." 2022 WL 17335696, at *22–23. And the expert had corroborated the forecast using two economic studies calculating a similar number and "literature of industry analysts predicting" similar results. Id. The expert in Watkins Inc. v. McCormick & Co., 574 F. Supp. 3d 644, 653–54 (D. Minn. 2021), did similar bolstering. Smith, by contrast, did nothing of the sort, has no knowledge of the assumptions used to calculate the estimates on which he relies, and used no alternative sources to corroborate the estimates.[3]

Likewise, in Syngenta Crop Prot., LLC v. Willowood Azoxystrobin, LLC, 267 F. Supp. 3d 649 (M.D.N.C. 2017), the expert relied on two benchmarks, one of which was admitted and the other excluded. The admitted benchmark contrasts sharply with Smith's yardsticks, while the excluded benchmark shares more in common with them. Compare id. at 655–56 (admitting benchmark based on budgeting document where the

---

[3] Plaintiff States argue that Smith "corroborated" his yardsticks with other record evidence in which Corteva or Syngenta discuss the importance of their loyalty programs and, according to Plaintiff States, suggest that removing them would impact prices. (Opp'n at 18–19.) But Plaintiff States do not explain how those documents corroborate Smith's specific yardstick numbers, particularly because the actual farmgate data shows the opposite.

expert vetted the budgeting assumptions "through discussions with several employees," selected the benchmark based on similarities with the at-issue AI across multiple characteristics, and used empirical data from the benchmark to calibrate the projection), with id. at 660 (excluding benchmark for which the expert lacked "sound economic proof" of its reliability and failed to identify "substantial evidence of the similarities" between the benchmark and at-issue AI).

Second, not only does Smith blindly rely on his yardstick estimates, he compounds the error by ignoring clear indications on the face of his sources, and from their authors, that his yardsticks are not reliable approximations of the but-for world for either Syngenta or Corteva. (Br. at 5–14, 18–20.)

For oxyfluorfen, Smith's yardstick is derived entirely from the testimony of a single executive (Vance) from a single generic supplier who recalled that oxyfluorfen prices dropped "about 50 percent" after the AI was removed from Corteva's loyalty program. Although Vance identified the removal of the loyalty programs and brand support in the marketplace as factors in his estimate, Smith contrarily assumes that the entire number is attributable only to removal from loyalty. (Id. at 6.)

Smith's other yardsticks pose similar problems:

For lambda, Smith relies on a Syngenta analysis comparing the ███████ ████████████████████████████████████████████████████ ████████ after generic entry, and assumes the entire price difference is attributable to the loyalty program. But the document itself identifies other factors contributing to ███████ ████████████████████████████████████████ (Id. at 10.)

6

For azoxystrobin, Smith relies on a Syngenta marketing plan, which ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ (Id. at 11–12.) Plaintiff States acknowledge this fact. (Opp'n at 6.) Yet, contrary to the marketing plan itself and Plaintiff States' own concession, Smith assumes the entire predicted price effect is attributable to the loyalty programs.

For mesotrione, the Syngenta presentation on which the yardstick is predicated addresses ████████████████████████████████████████████████

████████████████████████████████████████ (Br. at 12–13.) Nonetheless, Smith uses it as a yardstick for the effect of the loyalty programs.

For paraquat and abamectin—as with oxyfluorfen—Smith ignores red flags of conflicting real-world evidence following removal from loyalty programs (see Br. Ex. 3 ¶¶ 36–40), and the author's testimony that ████████████████ (Br. Ex. 8 at 127:9–18; Br. Ex. 9 at 200:1–23).

Smith states that he is "better position[ed] than [the Court] to draw inferences about [his yardstick sources]." (Br. Ex. 9 at 159:12–18.) That misses the point: Because Plaintiff States have not shown Smith's yardsticks to be reliable approximations of the but-for world—and, instead, on their face the yardstick sources demonstrate they are not reliable—Smith's opinions do not pass muster under Rule 702 and must be excluded. See In re Rezulin Prods. Liability Litig., 369 F. Supp. 2d 398, 425–26 (S.D.N.Y. 2005) (excluding expert testimony where the experts "discussed only the evidence that they believed would advance the plaintiffs' position" and ignored contradictory

7

information); <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 147 (1997) (court need not admit opinion "connected to existing data only by the ipse dixit of the expert").

Third, and on that point, Plaintiff States misunderstand Rule 702. They argue that a yardstick analysis need not account for confounding factors to pass muster under Rule 702 because any reliability issues stemming from that failure can be addressed during cross-examination. (Opp'n at 20–22.) Not so. Plaintiff States bear the burden of establishing the reliability of Smith's methodology; having not done so, the consequence is exclusion, not cross-examination. Rule 702 was amended to clarify this point because, like Plaintiff States, "many courts ha[d] held," incorrectly, "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment. Plaintiff States' position is exactly what the amendment was adopted to correct.

Smith's blind reliance on his yardsticks exemplifies the problem Rule 702 is intended to prevent. Cross-examining the people who created the source documents—even if possible—could not fully address Smith's reliance on those documents for his analysis; and indeed, Smith has already ignored testimony from the authors. <u>Cf.</u> <u>Tawfilis v. Allergan, Inc.</u>, 2017 WL 3084275, at *6 (C.D. Cal. June 26, 2017) (explaining that the expert took into account differences between South Korean and American markets, such that his methodology was reliable and disagreement about whether he had done so "adequately" was an issue "properly raised on cross-examination"); <u>In re Blood Reagents Antitrust Litig.</u>, 2015 WL 6123211, at *22 (E.D. Pa. Oct. 19, 2015) (finding that the expert

8

"adequately accounted for the relevant factors, such as 'product, firm, and market comparability' in selecting the [] yardstick"). Rather, there would be no possibility of cross-examination here because Smith did not do any of the work—or make any of the assumptions—on which he relies. In such circumstances, exclusion is the proper result. See Cont. Packaging, Inc. v. Cent. Garden & Pet Co., 2011 WL 13162306, at *6 (N.D. Ga. Mar. 31, 2011) (excluding the plaintiff's expert where the expert relied on the defendant's business documents and "did not independently examine the projections or how [the defendant] came up with them," holding that such blind reliance went "directly to the reliability of [the expert's] methodology").

Nor can Plaintiff States look to the sources themselves to satisfy their burden of proving reliability under Rule 702. Those sources either make clear on their face that they did not attempt to isolate the effects of an AI coming off its loyalty program (e.g., azoxystrobin, lambda and mesotrione),[4] or offer no indication of how they did so, if they did so (e.g., oxyfluorfen, abamectin and paraquat). And, as explained above, many of the

---

[4] With respect to azoxystrobin, Plaintiff States attempt to wave away in a footnote the fundamental distinction between the ███████ of Syngenta's post-patent strategy and the "absence" of the strategy. (Opp'n at 6 n.1.) But this distinction determines whether the ███████████████████ would occur in the but-for world. The post-patent strategy's failure ██████████████████████████████████████████████████ According to the author of the analysis, ██████ ████████████████████████████ a view that is corroborated on the face of Smith's yardstick source. Such a world is not viable because the post-patent strategy was in place in the real world and ██████████. The but-for world, by contrast, is the absence of the strategy—with grower demand held constant. And that is demonstrably not what the ███████████████ scenario entails. (Br. at 11–12.)

sources have obvious red flags that should prevent their use as an input into a reliable economic analysis.

## II. The Wide Variability of Smith's Yardstick Estimates Confirms That They Are Not Reliable Approximations of the But-For World.

Plaintiff States neither dispute nor attempt to explain the wide variability in Smith's yardsticks. Instead, they suggest that variability always goes to weight, not admissibility. Not so. While some variability in data may go to weight in some circumstances, here, the extreme unexplained variability among Smith's yardstick estimates further confirms the unreliability of his yardsticks and his methodology.

Plaintiff States' argument overlooks that the purpose of a yardstick is to provide a reliable approximation of a world in which the challenged conduct is eliminated and all else is held constant. (See Br. Ex. 11 at 378, 380.) If each of Smith's yardsticks were measuring, with any reliability, just the elimination of Corteva's or Syngenta's loyalty programs, the conclusions derived from them should be relatively consistent. Smith's estimates are not even close. The high and low ends of his purported manufacturer net sales effects are separated by nearly ▮▮ percentage points, while the high and low ends of his purported farmgate price effects are separated by nearly ▮▮ percentage points. (Br. at 20.)[5]

---

[5] Plaintiffs' reliance on In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 638 F. Supp. 3d 227 (E.D.N.Y. 2022), is misplaced. (Opp'n at 23.) There, a rebuttal expert's admissibility was challenged. His testimony criticized another expert for using yardsticks that varied widely from real-world rates, and the court found him qualified to make that criticism. The variation was not amongst yardsticks, nor was the expert whose variation was criticized the subject of the admissibility challenge. In re Payment Card, 638 F. Supp. 3d at 250.

Smith's approach is akin to weighing the same dog on six different scales and finding weights of ███████████ pounds—with no explanation for the variation. The logical conclusion is either that the scales are unreliable, or they are not weighing the same dog. This situation is no different. Plainly, Smith's yardsticks either are not measuring the same event for comparable AIs, or his measuring sticks are broken. The wide variability underscores that Smith has not employed a yardstick methodology that meets the reliability requirements of Rule 702. See Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc., 213 F.3d 198, 207–09 (5th Cir. 2000) (excluding expert testimony for failing to offer evidence that the yardsticks were "as nearly identical to [the at-issue target] as possible"); In re Live Concert Antitrust Litig., 863 F. Supp. 2d 966, 976 (C.D. Cal. 2012) (excluding analysis where the plaintiffs failed to meet their burden of establishing the yardstick's comparability).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Smith's testimony, reports, and opinions be excluded in their entirety.

11

Respectfully submitted this 20th day of March, 2026,

/s/ Patrick M. Kane

Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
Sean T. Placey
N.C. Bar No. 56683
splacey@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400

Charles S. Duggan*
charles.duggan@davispolk.com
James I. McClammy*
james.mcclammy@davispolk.com
Michael Scheinkman*
michael.scheinkman@davispolk.com
David B. Toscano*
david.toscano@davispolk.com
Alison B. Miller*
alison.miller@davispolk.com
Daniel J. Thomson*
daniel.thomson@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4292
Facsimile: (212) 701-5292

Benjamin M. Miller*
benjamin.miller@davispolk.com
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
Telephone: (202) 962-7133

Jesse Solomon*
jsolomon@paulweiss.com

/s/ Mark E. Anderson

**MCGUIREWOODS LLP**
Mark E. Anderson (NC Bar No. 15764)
Armina A. Manning (NC Bar No. 60436)
manderson@mcguirewoods.com
aamanning@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Telephone: (919) 755-6600
Fax: (919) 755-6699

**BALLARD SPAHR LLP**
Jason A. Leckerman*
Emilia McKee Vassallo*
Thomas W. Hazlett*
Elizabeth P. Weissert*
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
LeckermanJ@ballardspahr.com
McKeeVassalloE@ballardspahr.com
HazlettT@ballardspahr.com
WeissertE@ballardspahr.com

**CRAVATH, SWAINE & MOORE LLP**
Wes Earnhardt*
Jesse Weiss*
Margaret T. Segall*
Two Manhattan West
375 Ninth Ave
New York, New York 10001
Telephone: (212) 474-1000
Fax: (212) 474-3700
wearnhardt@cravath.com
jweiss@cravath.com
msegall@cravath.com

12

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW Washington, DC
20006-1047 (202) 223-7312

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendant Corteva,
Inc.*

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendants Syngenta Crop
Protection AG, Syngenta Corporation, and
Syngenta Crop Protection, LLC*

13

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing brief complies with Local Rule 7.3(d) in that it does not exceed 3,125 words, excluding the exempted portions, as reported by word processing software.

*/s/ Mark E. Anderson*
Mark E. Anderson

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC., <br><br> Defendants. | Case No. 1:22-cv-00828-TDS-JEP <br><br> **CERTIFICATE OF SERVICE** |

Consistent with the Court's Order of February 18, 2026, D.E. 415, the undersigned counsel certifies that on March 20, 2026, counsel of record for Plaintiffs were timely served via electronic means with the Reply Brief in Support of Defendants' Joint Motion to Exclude the Reports, Opinions, and Testimony of Loren K. Smith.

This the 20th day of March 2026.

/s/Patrick M. Kane
Patrick M. Kane
N.C. Bar No. 36861
pkane@foxrothschild.com
Sean T. Placey
N.C. Bar No. 56683
splacey@foxrothschild.com
FOX ROTHSCHILD LLP
230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400

Charles S. Duggan*
charles.duggan@davispolk.com
James I. McClammy*
james.mcclammy@davispolk.com
Michael Scheinkman*
michael.scheinkman@davispolk.com
David B. Toscano*
david.toscano@davispolk.com
Alison B. Miller*
alison.miller@davispolk.com
Daniel J. Thomson*
daniel.thomson@davispolk.com
DAVIS POLK & WARDWELL
LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4292
Facsimile: (212) 701-5292

Benjamin M. Miller*
benjamin.miller@davispolk.com
DAVIS POLK & WARDWELL
LLP
1050 17th Street, NW

/s/Mark E. Anderson
MCGUIREWOODS LLP
Mark E. Anderson (NC Bar No.
15764)
Armina A. Manning (NC Bar No.
60436)
manderson@mcguirewoods.com
aamanning@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Telephone: (919) 755-6600
Fax: (919) 755-6699

BALLARD SPAHR LLP
Jason A. Leckerman*
Emilia McKee Vassallo*
Thomas W. Hazlett*
Elizabeth P. Weissert*
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
LeckermanJ@ballardspahr.com
McKeeVassalloE@ballardspahr.com
HazlettT@ballardspahr.com
WeissertE@ballardspahr.com

CRAVATH, SWAINE &
MOORE LLP
Wes Earnhardt*
Jesse Weiss*
Margaret T. Segall*
Two Manhattan West
375 Ninth Ave
New York, New York 10001
Telephone: (212) 474-1000
Fax: (212) 474-3700
wearnhardt@cravath.com

2

Washington, DC 20036
Telephone: (202) 962-7133

Jesse Solomon*
jsolomon@paulweiss.com
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW Washington,
DC 20006-1047 (202) 223-7312

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendants Syngenta Crop
Protection AG, Syngenta Corporation,
and Syngenta Crop Protection, LLC*

jweiss@cravath.com
msegall@cravath.com

*Specially appearing under L.R.
83.1(d)

*Attorneys for Defendant Corteva,
Inc.*

3