**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN,<br><br>Plaintiffs,<br><br>v.<br><br>SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC,<br><br>and<br><br>CORTEVA, INC.,<br><br>Defendants. | Case No. 1:22-cv-00828-TDS-JEP<br><br>**STIPULATED ORDER FOR INJUNCTIVE AND OTHER RELIEF**<br><br>**[REDACTED PUBLIC DOCUMENT]** |

Plaintiffs the Federal Trade Commission ("Commission" or "FTC") and the Attorneys General of California, Colorado, Illinois, Indiana, Iowa, Minnesota, Nebraska, Oregon, Tennessee, Texas, Washington, and Wisconsin (collectively, "the Plaintiff States," and together with the FTC, "Plaintiffs"), filed the Amended Complaint in this matter for injunctive, other equitable, and monetary relief, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §53(b); Section 16 of the Clayton Act, 15 U.S.C. § 26; and various applicable state laws to undo and prevent allegedly unlawful conduct in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); Section 3 of the Clayton Act, 15 U.S.C. § 14; Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; and state competition and consumer protection laws.

Plaintiffs and Defendant Corteva, Inc., including Corteva Agriscience LLC, ("Corteva") (collectively, the "Parties") stipulate to the entry of this Stipulated Order for Injunctive and Other Relief ("Stipulated Order") to resolve the Claims. Further, as part of

the settlement of this matter, Corteva, including, without limitation, Corteva Agriscience LLC which is a wholly-owned subsidiary of Corteva, agrees to comply with this Stipulated Order from the date it is issued by the Court. Upon entry of this Stipulated Order by the Court, Plaintiffs agree to dismiss with prejudice all Claims in the Amended Complaint.

**FINDINGS**

1. This Court has jurisdiction over the Parties and the subject matter of this action.

2. Venue for this matter is proper in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c), and under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

3. The Amended Complaint charges that Corteva engaged in anticompetitive acts in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); Section 3 of the Clayton Act, 15 U.S.C. § 14; Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; and various state competition and consumer protection laws.

4. This Stipulated Order does not constitute an admission by Corteva that the acts alleged in the Amended Complaint are true. For purposes of this Order only, Corteva admits only the facts necessary to establish jurisdiction.

5. Corteva waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Stipulated Order, and agrees to bear its own costs and attorney fees.

6. Corteva waives all rights to appeal or otherwise challenge or contest the validity of this Stipulated Order, except as otherwise set forth in Section X.

7. Entry of this Stipulated Order is in the public interest.

**STIPULATIONS**

1. Corteva stipulates that venue for this matter is proper in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c), and under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and that, for purposes of this Stipulated Order alone, the Court has jurisdiction over Corteva.

2. Except as otherwise expressly stated in Section X, Corteva waives all rights to appeal or otherwise challenge or contest the validity of this Stipulated Order.

3. Corteva stipulates that it shall comply with the provisions of this Stipulated Order as of the date it is issued by the Court.

4. Corteva, the Commission, and the Plaintiff States have agreed to entry of this Stipulated Order to finally resolve all Claims between Plaintiffs and Corteva in this matter.

5. Except as provided in Section VII below, the Commission, the Plaintiff States, and Corteva shall each bear their own costs, including attorney fees, of this action.

6. The Parties stipulate that certain appendices be filed under seal, as set forth in the accompanying Joint Motion to Seal.

7. The Parties stipulate that neither the Commission nor the Plaintiff States will challenge or contest the validity of the Settlement Agreement reached in the Multi-District Litigation, *In re Crop Protection Products*, 1:23-MD-3062-TDS-JEP (M.D.N.C.). For the avoidance of doubt, any challenge to the allocation of the underlying Settlement Agreement proceeds is not and cannot be a challenge to the Settlement Agreement itself.

## I. Definitions

**IT IS HEREBY ORDERED** that, as used in this Stipulated Order, the following definitions apply:

A. "Amended Complaint" means the operative complaint at Docket Number 89 in *FTC et al. v. Syngenta, et al.*, 711 F.Supp.3d 545, No. 1:22-cv-00828-TDS-JEP (M.D.N.C. 2024).

B. "Commission" or "FTC" means the Federal Trade Commission.

C. "Plaintiff States" means California, Colorado, Illinois, Indiana, Iowa, Minnesota, Nebraska, Oregon, Tennessee, Texas, Washington, and Wisconsin.

D. "Corteva" or "Defendant" means Corteva, Inc., or Corteva Agriscience LLC, and their directors, officers, employees, agents, representatives, successors, and assigns; and the joint ventures, subsidiaries, partnerships, divisions, groups, and affiliates controlled by Corteva, Inc., and the respective directors, officers, employees, agents, representatives, successors, and assigns of each. In the event Corteva, Inc. completes the planned corporate separation of its business units into two independent publicly-traded corporations ("Separation"), "Corteva" shall include any entity resulting from the Separation engaged in the business of manufacturing, marketing, selling, or distributing pesticides or crop protection products, and that corporation's parents (including, as applicable, its ultimate parent entity as defined in 16 CFR §801.1), directors, officers, employees, agents, representatives, successors, and assigns; and the joint ventures, subsidiaries, partnerships, divisions, groups, and affiliates controlled by that corporation; and the respective directors,

officers, employees, agents, representatives, successors, and assigns of each. In the event of a Separation, "Corteva" shall not include any entity resulting from the Separation not engaged in the business of manufacturing, marketing, selling, or distribution of pesticides or crop protection products.

E. "Active Ingredient" or "AI" means the ingredient, chemical, or molecule in a Product that kills, controls, prevents, mitigates, or repels any pest.

F. "Antitrust Compliance Officer" means the person appointed or designated to supervise Corteva's antitrust compliance program described in Section III of this Stipulated Order.

G. "Antitrust Laws" means the Federal Trade Commission Act, as amended, 15 U.S.C. § 41 et seq., the Sherman Act, 15 U.S.C. § 1 et seq., and the Clayton Act, 15 U.S.C. § 12 et seq.; and similar laws and statutes of the Plaintiff States.

H. "Application-Based Category" means an identified group of Products that treat the same category of crop and/or pest (e.g., "herbicides for corn and soybean" or "insecticides") constituting at least 50% of the aggregate sales of all Products in that category (excluding products that are used in multiple categories), which group shall contain both Products with Relevant AIs and Products with Non-Relevant AIs.

I. "Application-Based Share Condition" means any condition, whether formal or informal, that requires a Customer to:

1. Purchase directly or indirectly from Corteva up to 50% of its Requirements (in units, dollars, or other measure) for Products in an Application-Based Category; or

2. Purchase directly or indirectly from Corteva a specified threshold volume (in units, dollars, or other measure) of Products in an Application-Based Category, so long as such specified threshold volume does not exceed 50% of such Customer's Requirements (in units, dollars, or other measure) for Products in that Application-Based Category.

J. "Claims" means any and all criminal, civil, or administrative causes of action that were or could have been alleged by any Plaintiff in the Amended Complaint based on the facts alleged in the Amended Complaint.

K. "Comparable Product" means a Product or AI registered with the Environmental Protection Agency ("EPA") and sold by a Person other than Corteva containing or consisting of a Relevant AI.

L. “Competitor” means any Person other than Corteva that manufactures a Comparable Product or has a Comparable Product manufactured on its behalf, or that offers or seeks to do so.

M. “Customer” means a Person who purchases, seeks to purchase, or is solicited to purchase a Relevant AI directly from Corteva in the United States.

N. “Executive and Commercial Staff” means (1) the Chief Executive Officer, Chief Financial Officer, General Counsel, President and Vice Presidents of Corteva (or their equivalent positions regardless of job title); (2) Corteva’s employees who report to the Chief Executive Officer, Chief Financial Officer, General Counsel, President or Vice Presidents and who have access to Corteva’s pricing and program portals for any Relevant AI; and (3) the Corteva employee(s) primarily responsible for managing Corteva’s marketing strategy and offers to Customers.

O. “Majority AI Share Condition” means any condition, whether formal or informal, that (1) expressly requires a Customer to purchase a percentage of its Requirements for a Relevant AI directly or indirectly from Corteva where such percentage is greater than 50%, or (2) expressly restricts a Customer’s purchases of Comparable Products to less than 50% of such Customer’s Requirements for a Relevant AI (or equivalent volume).

For the avoidance of doubt, a volume-based loyalty program introduced or restructured by Corteva for the purpose of essentially replicating or reintroducing a Majority AI Share Condition is a Majority AI Share Condition. On the other hand, a volume-based loyalty program (other than as described in (2) above) that Corteva introduces or restructures without a purpose of essentially replicating or reintroducing a Majority AI Share Condition is not a Majority AI Share Condition.

For the further avoidance of doubt, this Order does not prohibit Corteva from using, or require Corteva to change or eliminate, any rebate, discount or other pricing program or practice in use as of August 2025, other than the programs and practices that Plaintiffs specifically challenged in this matter, including the “Active Ingredient (AI) Support Program Offer,” formerly known as the “Crops, Range & Pasture and Industrial Vegetation Management Loyalty Program,” and Schedule A to the Corteva Corporate Distributor Offer.

P. “Market Year” means the relevant 12-month period that a loyalty, rebate, discount, or incentive program is in effect, for example, commencing on October 1 and ending September 30.

Q. “Monetary Benefit” means any pricing benefit or incentive, including incentive payments, loyalty payments, discounts, rebates, flat or lump-sum payments,

preferential pricing terms, preferential payment or credit terms, price protection, or other items of pecuniary value, whether related to future or past sales by Corteva.

R. "Multi-AI Share Condition" means any condition, whether formal or informal, that requires a Customer to:

1. Satisfy two or more separate Application-Based Share Conditions in order to receive a Monetary Benefit or Non-Monetary Benefit on any one Application-Based Share Condition; or

2. Purchase greater than 50% (in units, dollars, or other measure) of its Requirements for a Relevant AI directly or indirectly from Corteva in order to receive a Monetary Benefit or Non-Monetary Benefit for purchases of Products that do not contain that Relevant AI.

For the avoidance of doubt, an Application-Based Share Condition is not a Multi-AI Share Condition.

S. "Multi-Year Condition" means any condition, whether formal or informal, to receiving or retaining the full extent of any Monetary Benefit accrued on the basis of purchases made during a Market Year, that a Customer:

1. Achieve any obligation, target, purchase level, commitment, compliance standard, or participation requirement in any period after the Market Year in which a Monetary Benefit is earned;

2. Renew, extend, or continue its relationship with Corteva in any period after the Market Year in which a Monetary Benefit is earned; or

3. Refrain from terminating or reducing its purchases from Corteva in any period after the Market Year in which a Monetary Benefit is earned.

T. "Non-Monetary Benefit" means any benefit or incentive that is not a Monetary Benefit, including: Product access, Product supply, inventory levels, allocations (including in the event of an actual or anticipated Product shortage), lead-times, warranties, delivery terms, Product support, Product training, Product marketing, Product or Active Ingredient stewardship, market information, field scouting, complaint handling, agronomy services, business and trend information, infrastructure support, inventory control, inventory protection, and Customer service, whether related to future or past sales by Corteva, or preferential treatment or terms relating to any of these.

U. "Non-Relevant AI" means an Active Ingredient that is not a Relevant AI, including an Active Ingredient or a Product containing only Active Ingredient(s) for which

Corteva is not, or does not hold the rights of, the original EPA registrant (including as an affiliate, co-registrant, partnership, acquirer, or successor in interest).

V. "Person" means any individual, partnership, joint venture, firm, corporation, association, trust, unincorporated organization, or other business or governmental entity, and any subsidiary, division, group, or affiliate thereof.

W. "Product" means any formulated agricultural use fungicide, herbicide, insecticide, nematicide, rodenticide, or other pesticide or crop protection product that is approved and labeled by the EPA for sale.

X. "Prohibited Loyalty Program" means any loyalty, rebate, discount, or incentive program(s) available to a Customer—including by Customer agreement, contract term, condition of sale, policy, program, offer, or understanding, and whether written or unwritten—that contains a Majority AI Share Condition, Multi-AI Share Condition, or a Multi-Year Condition as a condition of receiving a Monetary Benefit or Non-Monetary Benefit. Prohibited Loyalty Program may include, as applicable, corporate-level programs or offers, region-specific programs or offers, and Customer-specific programs or offers, and includes the program named as of the date of this Stipulated Order the "Active Ingredient (AI) Support Program Offer," formerly known as the "Crops, Range & Pasture and Industrial Vegetation Management Loyalty Program," and Schedule A to the Corteva Corporate Distributor Offer.

"Prohibited Loyalty Program" shall not include offering Customers a Monetary Benefit (including but not limited to a tiered, volume-based, discount or rebate) or Non-Monetary Benefit that is a Non-Retroactive Benefit.

Y. "Relevant AI" means an Active Ingredient or a Product containing an Active Ingredient where (1) Corteva is, or holds the rights of, the original EPA registrant (including as an affiliate, co-registrant, partnership, acquirer, or successor in interest) of such Active Ingredient; and (2) the compound patent protection for such Active Ingredient has expired; *provided however* that a Product containing an Active Ingredient shall not be considered a Relevant AI if (i) the Product has valid, enforceable, and unexpired patent protection, and (ii) the still-patented ingredient(s) or formulations are material to the value or efficacy of the Product.

Z. "Requirements" means a Customer's total demand for one or more AIs or Products during the applicable Market Year (whether measured in units, dollars, or other measure).

AA. "Retroactive Benefit" means a Monetary Benefit or Non-Monetary Benefit that is provided to a Customer based upon the Customer's purchases reaching a specified threshold (in units, dollars, share, or other measure), or otherwise providing a

benefit for one unit because of the purchase of an additional unit, but excluding any Monetary Benefit or Non-Monetary Benefit provided to the Customer (1) only with respect to the Customer's purchases of a Relevant AI beyond such a specified threshold that (2) does not result in a unit price, at any given tier or volume threshold, that is below Corteva's average variable cost (a "Non-Retroactive Benefit"). By way of example, a discount of X% or X amount on all units if sales exceed Y units (including on the units sold up to and including Y) is a Retroactive Benefit, while a discount of X% or X amount on all units sold that are in excess of Y (but not on those units sold up to and including Y) is a Non-Retroactive Benefit.

## II. Prohibition

**IT IS FURTHER ORDERED** that, acting directly or indirectly, or through any corporate or other device, in or affecting commerce, as "commerce" is defined by the FTC Act:

A. Corteva shall cease and desist from entering into, offering, maintaining, or enforcing any Prohibited Loyalty Program;

*Provided, however*, that Corteva may honor rebates, incentives, or other Monetary Benefits or Non-Monetary Benefits earned or accrued by or available to a Customer under any Prohibited Loyalty Program already in effect as of the date this Stipulated Order is issued so long as Corteva (a) pays any such Monetary Benefits or Non-Monetary Benefits only for the Market Year ending September 30, 2026, including all deferred payments, and (b) does not require that the Customer meet any share threshold greater than 50% in order to qualify for such Monetary Benefits or Non-Monetary Benefits.

*Provided further, however,* that:

1. Offering Customers discounts or rebates that are not based on a Prohibited Loyalty Program does not establish a violation of this Stipulated Order.

2. Offering Customers a Monetary or Non-Monetary Benefit conditioned on meeting an Application-Based Share Condition, including pursuant to the programs described in Appendix D (to be filed under seal), does not establish a violation of this Stipulated Order. Corteva adding Products to or removing Products from an Application-Based Category does not establish a violation of this Stipulated Order, unless the additions to or removals from the Application-Based Categories effectively or expressly create a Prohibited Loyalty Program.

B. If Corteva requires a Customer to verify or establish its eligibility under a Corteva marketing or sales program by providing data about its actual or projected purchases of crop protection products from another manufacturer, Corteva shall (i) use a third-

party auditor or accounting service to collect and analyze the Customer's data, and receive from the third party only verification of the Customer's eligibility or status under the program (but not information as to sales volumes, or share of sales, attributed to any other manufacturer); (ii) not require or request that the Customer provide such information directly to Corteva; and (iii) not use or disclose such information for any purpose other than establishing or verifying the Customer's eligibility or status under the program.

For the avoidance of doubt, using a third party to verify the percentage of Corteva purchases within an Application-Based Category does not establish a violation of this Stipulated Order.

C. Corteva shall be prohibited from threatening to take or taking any actions for the purpose of harming or disadvantaging a Customer because the Customer (a) conducts business, or intends to conduct business, with a Competitor; or (b) fails to undertake any action that would effectively result in the Customer meeting the terms of a Prohibited Loyalty Program. Not providing a Monetary Benefit or Non-Monetary Benefit to a Customer because the Customer did not meet the criteria to receive such Monetary Benefit or Non-Monetary Benefit under a program not prohibited by this Stipulated Order does not establish a violation of this Stipulated Order. Nothing in this Stipulated Order shall prohibit Corteva from:

1. making good faith Product allocations among Customers during times of short supply;

2. terminating a supply contract with a Customer because the Customer failed to meet contractual obligations not prohibited under this Stipulated Order, including, for example, regarding Product safety and stewardship; or

3. enforcing the terms of an agreement with a Customer that do not otherwise violate this Stipulated Order, including, for example, enforcing terms that require prompt payment of any amounts owed to Corteva.

## III. Compliance Program

**IT IS FURTHER ORDERED** that Corteva shall design, maintain, and operate an antitrust compliance program to ensure compliance with this Stipulated Order and the Antitrust Laws, and as part of such program shall:

A. Appoint or retain an Antitrust Compliance Officer to supervise the design, maintenance, and operation of its antitrust compliance program, and authorize the Antitrust Compliance Officer to perform all related tasks in supervision of Corteva's compliance with such program. Corteva may replace the Antitrust Compliance Officer with another qualified person at any time.

B. Provide in-person or online training concerning Corteva's obligations under this Stipulated Order and an overview of the Antitrust Laws as they apply to Corteva's activities to Corteva's Executive and Commercial Staff:

1. No later than 45 days after the entry of the Stipulated Order;

2. No later than 60 days after an employee first becomes Executive and Commercial Staff; and

3. At least annually.

*Provided, however*, that as to any employee on extended leave (*e.g.*, parental, family, or disability leave), the training for such employee under the above schedule shall be completed within 45 days of the date the employee returns to work.

C. Maintain policies and procedures for:

1. Executive and Commercial Staff to ask questions about, and report violations of, this Stipulated Order and the Antitrust Laws confidentially and without fear of retaliation of any kind;

2. Disciplining Executive and Commercial Staff for failure to comply with this Stipulated Order and the Antitrust Laws; and

3. The retention of documents and records sufficient to record Corteva's compliance with its obligations under this Section III, including records showing that Executive and Commercial Staff have received all trainings required under this Stipulated Order during the preceding two years.

D. The Commission shall be entitled to meet with the Antitrust Compliance Officer annually to discuss the program.

## IV. Notices

**IT IS FURTHER ORDERED** that Corteva shall, no later than 30 days after entry of the Stipulated Order:

A. Post and maintain a notice, accessible by a link entitled "Antitrust Compliance" on the home or menu page of Corteva's website, in the form of Appendix A, along with a link to the Stipulated Order on the FTC's website. Such notice shall remain in place for three years after the issuance of the Stipulated Order; and

B. Deliver a communication in the form of Appendix B, along with a copy of this Stipulated Order and the Amended Complaint, to the Customers that participated in

Corteva's Prohibited Loyalty Programs relating to a Relevant AI, as identified in Appendix C, which will be filed under seal.

## V. Cooperation with Litigation

**IT IS FURTHER ORDERED** that, in connection with any legal proceeding by any Plaintiff relating to the allegations in the Amended Complaint in this matter against any other person ("Continuing Litigation"), Corteva shall:

A. Not object to or file a motion to quash subpoenas from Plaintiffs for the trial testimony of up to three of Corteva's officers, employees, or corporate representative(s) (designated under Federal Rule of Civil Procedure 30(b)(6) or Rule 3.33(c)(1) of the Commission Rules of Practice), on the grounds that the subpoenas are unduly burdensome because Corteva is a third party;

B. Agree to use reasonable best efforts to cooperate with Plaintiffs to make available for trial testimony former employees, including providing their most recent contact information and waiving any NDA(s) that would impact their ability to cooperate; and

C. Use reasonable best efforts to assist Plaintiffs in authenticating documents under the Federal Rules of Evidence and negotiate in good faith with Plaintiffs to provide a declaration, affidavit, and/or sponsoring witness, if necessary, to establish the authenticity and admissibility of any documents and/or data that Corteva has produced to Plaintiffs under Federal Rule of Evidence 902(11) and 902(12).

## VI. Compliance Reports

**IT IS FURTHER ORDERED** that Corteva shall file verified written reports ("Compliance Report") in accordance with the following:

A. Corteva shall submit:

1. An interim Compliance Report thirty days after the Stipulated Order is issued;

2. A second interim Compliance Report on April 15, 2027; and

3. For the Term of the Order, annual compliance reports, to be filed on October 15 of each year following the second interim Compliance Report.

4. Additional compliance reports as staff of the Commission may request and up to five additional compliance reports for the Term as requested by Plaintiff States collectively.

B. The interim Compliance Reports shall contain sufficient information and documentation to enable the Commission and the Plaintiff States to determine independently whether Corteva is in compliance with the Stipulated Order. Conclusory statements that Corteva has complied with its obligations under the Stipulated Order are insufficient. Corteva shall include in the interim Compliance Reports, among other information or documentation that may be necessary to demonstrate compliance:

1. The identity of each Customer, and for each:

   a. a full and complete copy of every tendered marketing agreement, program, or offer that conditions the Customer's receipt of any Monetary Benefit or Non-Monetary Benefit on the Customer's purchase of a specified threshold share of Corteva's Products, or national or region-wide agreements, programs, or offers that condition the receipt of any Retroactive Benefit on the Customer's purchase of a specified volume of Relevant AI from Corteva, and any amendment(s) thereto; and

   b. the name and contact information of Corteva's primary point of contact with the Customer for the purpose of such marketing agreement(s), program(s), or offer(s);

   c. a description of the process employed by Corteva to verify Customer eligibility under any share-based marketing or sales programs, and the name and contact information for each third party engaged by Corteva to collect Customer data relating to such programs;

2. The name, title, business address, e-mail address, and business telephone number of the Antitrust Compliance Officer;

3. A list of all Persons who were provided notices as required by Section IV of this Stipulated Order, along with address, telephone number, e-mail address, date, and method of delivery; and

4. A complete and updated list identifying each Relevant AI.

C. Each annual Compliance Report following the interim Compliance Reports shall contain sufficient information and documentation to enable the Commission and the Plaintiff States to determine independently whether Corteva is in compliance with the Stipulated Order. Conclusory statements that Corteva has complied with its obligations under the Stipulated Order are insufficient. Corteva shall include:

1. For the Market Year preceding the Compliance Report submission date, the identity of each Customer, and for each:

   a. a full and complete copy of every tendered marketing agreement, program, or offer that conditions the Customer's receipt of any Monetary Benefit or Non-Monetary Benefit on the Customer's purchase of a specified threshold share of Corteva's Products, or national or region-wide agreements, programs, or offers that condition the receipt of any Retroactive Benefit on the Customer's purchase of a specified volume of Relevant AI from Corteva, and any amendment(s) thereto; and

   b. the name and contact information of Corteva's primary point of contact with the Customer for the purpose of such marketing agreement(s), program(s), or offer(s), if this information has changed from that included in a prior compliance report; and

2. The information identified in Paragraphs VI.B.1.c and VI.B.2–4, if this information has changed from that included in a prior compliance report.

D. For each marketing agreement, program, or offer that contains a Retroactive Benefit conditioned on a Relevant AI share condition, Corteva shall provide, at the request of any Plaintiff or staff of the Commission, a description for each conditional Retroactive Benefit of whether the Customer qualified under the terms of the marketing agreement, program, or offer and, if not, whether:

   1. the Customer was nonetheless provided the Retroactive Benefit (an "exception") and the basis of that exception; or

   2. Corteva withheld all or part of the Monetary or Non-Monetary Benefit and the basis of such complete or partial withholding.

E. For a period of 5 years after filing a Compliance Report, Corteva shall retain the following documents that are within its custody or control and contain relevant information concerning whether Corteva is fulfilling or has fulfilled its obligations under this Stipulated Order: written communications with any third party identified in the Compliance Report, and non-privileged internal memoranda and reports. Corteva shall provide copies of these documents to any Plaintiff upon request.

F. Corteva shall verify each Compliance Report in the manner set forth in 28 U.S.C. § 1746 by the Chief Executive Officer or another officer or employee specifically authorized to perform this function. Corteva shall file its compliance reports electronically with the Secretary of the Commission at ElectronicFilings@ftc.gov and the Compliance Division at bccompliance@ftc.gov, as required by Commission

Rule 2.41(a), 16 C.F.R. § 2.41(a), and with the Plaintiff States by email at pesticidesmultistate@ag.iowa.gov.

## VII. Monetary Payment

**IT IS FURTHER ORDERED** that,

A. Corteva, or its subsidiary Corteva Agriscience LLC, shall pay $35,000,000.00 (Thirty-Five Million Dollars) (the "Payment") to accounts designated by the Plaintiff States, pursuant to an allocation to be provided to Corteva by the Plaintiff States. Corteva shall have no responsibility or influence with respect to that allocation (or any subsequent use or distribution of the settlement funds). Corteva, or Corteva Agriscience LLC, shall make the Payment within 30 calendar days of the entry by the Court of this Stipulated Order, provided that the Plaintiff States have supplied Corteva with complete and accurate written payment instructions and any required tax documentation at least ten (10) calendar days prior to the payment deadline. If such information is provided later, the payment deadline shall be extended to fifteen (15) calendar days after receipt of complete information. The Payment shall be deemed to satisfy completely any Claim brought by Plaintiff States in this action pursuant to their respective state competition laws and/or consumer protection laws, including those for a civil penalty, damages, or disgorgement.

B. The Payment may be used for any one or more of the following purposes, by the Plaintiff States' Attorneys General as they, in their sole discretion, see fit:

1. for payment of attorneys' fees and expenses, including, without limitation, reimbursement of grants received;

2. for enforcement of antitrust or consumer protection law;

3. for deposit into a state antitrust or consumer protection account (e.g., revolving account, trust account), for use in accordance with the state laws governing that account;

4. for deposit into a fund exclusively dedicated to assisting state attorneys general enforce the antitrust laws by defraying the costs of (a) experts, economists, and consultants in multistate antitrust investigations and litigation, (b) training or continuing education in antitrust for attorneys in state attorney general offices, or (c) information management systems used in multistate antitrust investigations and litigation;

5. for distribution to farmers as deemed appropriate by any State's Attorney General, including for a restitutionary purpose;

6. for programs, initiatives, or grants designed to promote the welfare of agricultural producers or support agriculture-related activities; or

7. for any other purpose as the attorneys general deem appropriate consistent with or required by the various states' laws.

C. Subject to Section I.D, Corteva remains bound by the Payment obligation regardless of any corporate or other transaction that Corteva may enter after the entry by the Court of this Stipulated Order, and Corteva shall not enter any transaction that would make it unable to satisfy its obligation with respect to the Payment.

## VIII. Change in Corteva

**IT IS FURTHER ORDERED** that Corteva shall notify the Commission at least 30 days prior to:

A. The dissolution of Corteva, Inc., or its successor;

B. The acquisition, merger, or consolidation of Corteva, Inc., or its successor, or any Separation as referenced in Paragraph I.D; or

C. Any other change in Corteva, including assignment and the creation, sale, or dissolution of subsidiaries, if such change might affect compliance obligations arising out of this Stipulated Order.

## IX. Access

**IT IS FURTHER ORDERED** that, for purposes of determining or securing compliance with this Stipulated Order, and subject to any legally recognized privilege, upon written request and 10 business days' notice to Corteva, made to its principal place of business as identified in this Stipulated Order, registered office of its United States subsidiary, or its headquarters office, Corteva shall, without restraint or interference, permit any duly authorized representative of the Commission and any of the Plaintiff States wishing to attend:

A. Access, during business office hours of Corteva and in the presence of counsel, to all facilities and access to inspect and copy all business and other records and all documentary material and electronically stored information as defined in Commission Rules 2.7(a)(1) and (2), 16 C.F.R. § 2.7(a)(1) and (2), in the possession or under the control of Corteva related to compliance with this Stipulated Order, which copying services shall be provided by Corteva at the request of the authorized representative of the Commission and at the expense of Corteva; and

B. To interview officers, directors, or Executive and Commercial Staff of Corteva, who may have counsel present, regarding such matters.

## X. Jurisdiction

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over this matter for purposes of construction, modification, and enforcement of this Stipulated Order. Any Party may move this Court to modify the terms of this Stipulated Order if applying it prospectively is no longer equitable or for any other reason that justifies relief or is permitted by the Federal Rules of Civil Procedure.

## XI. Enforcement of Consent Judgment

**IT IS FURTHER ORDERED** that:

A. The Commission and the Plaintiff States retain and reserve all rights to enforce the provisions of this Stipulated Order, including the right to seek an order of contempt from the Court. Corteva agrees that, in a civil contempt action, a motion to show cause, or a similar action brought by the Commission or a Plaintiff State relating to an alleged violation of this Stipulated Order, the Commission or Plaintiff State may establish a violation of this Stipulated Order and the appropriateness of a remedy therefor by a preponderance of the evidence, and Corteva waives any argument that a different standard of proof should apply.

B. This Stipulated Order shall be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the Commission and Plaintiff States alleged was harmed by the challenged conduct. Corteva agrees that the Court may enforce any provision of this Stipulated Order that, as interpreted by the Court in applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Stipulated Order should not be construed against any party as the drafter.

C. In an enforcement proceeding in which the Court finds that Corteva has violated this Stipulated Order, the Plaintiffs may apply to the Court for an extension of this Stipulated Order, together with other relief that may be appropriate.

D. For a period of four years following the expiration of this Stipulated Order, if the Commission or Plaintiff States have evidence that Defendant violated this Stipulated Order before it expired, any Plaintiff may file an action against Corteva in this Court requesting that the Court order: (1) Corteva to comply with the terms of this Stipulated Order for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure Corteva complies with the terms of this Stipulated Order; and (4) fees or expenses as called for by this Section.

## XII. Term

**IT IS FURTHER ORDERED** that this Stipulated Order shall terminate 10 years after entry.

## XIII. Dismissal and Costs

**IT IS FURTHER ORDERED** that this action is hereby dismissed with prejudice as to Corteva. Each party to bear its own costs.

**SO ORDERED** this ____ day of _______________, 2026.

___________________________________

The Honorable

SO STIPULATED AND AGREED:

*<u>/s/ Allyson M. Maltas</u>*

ALLYSON M. MALTAS
Deputy Chief Trial Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3646
Email: amaltas@ftc.gov

KARNA ADAM
JOSEPH R. BAKER
WESLEY G. CARSON
ROBERT Y. CHEN
ELIZABETH A. GILLEN
GEOFFREY M. GREEN
PATRICIA C. JERJIAN
PHILIP J. KEHL
LAUREN B. PATTERSON
MICHAEL J. TURNER

*Attorneys for Federal Trade Commission*

CORTEVA, INC.

By: *<u>/s/ Thomas Warnock</u>*

Name: Thomas Warnock

Title: Vice President, Deputy General Counsel

*<u>/s/ Mark E. Anderson</u>*

**MCGUIREWOODS LLP**
Mark E. Anderson (NC Bar No. 15764)
Armina A. Manning (NC Bar No. 60436)
manderson@mcguirewoods.com
aamanning@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, North Carolina 27601
Telephone: (919) 755-6600
Fax: (919) 755-6699

**CRAVATH, SWAINE & MOORE LLP**
Wes Earnhardt*
Jesse Weiss*

*/s/ Nicole S. Gordon*
NICOLE S. GORDON
Deputy Attorney General
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94610
Telephone: (415) 510-4400
Email: nicole.gordon@doj.ca.gov

*Attorney for Plaintiff State of California*

Margaret T. Segall*
Two Manhattan West
375 Ninth Ave
New York, New York 10001
Telephone: (212) 474-1000
Fax: (212) 474-3700
wearnhardt@cravath.com
jweiss@cravath.com
msegall@cravath.com

**BALLARD SPAHR LLP**
Jason A. Leckerman*
Emilia McKee Vassallo*
Thomas W. Hazlett*
Elizabeth P. Weissert*
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
Fax: (215) 864-8999
LeckermanJ@ballardspahr.com
McKeeVassalloE@ballardspahr.com
HazlettT@ballardspahr.com
WeissertE@ballardspahr.com

*Specially appearing under L.R. 83.1(d)

*Attorneys for Defendant Corteva, Inc.*

*/s/ Conor J. May*
ARIC J. SMITH
CONOR J. MAY
Assistant Attorneys General
Colorado Department of Law
Office of the Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Aric.Smith@coag.gov
Conor.May@coag.gov

*Attorneys for Plaintiff State of Colorado*

*/s/ Paul J. Harper*
PAUL J. HARPER
Assistant Attorney General, Antitrust
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3000
Email: paul.harper@ilag.gov

ALEX KAPLAN
RYAN CAUGHEY
ADAM CARLIS
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Email: akaplan@susmangodfrey.com
rcaughey@susmangodfrey.com
acarlis@susmangodfrey.com

BETSY ARONSON
REBEKAH G.S. GREENE
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
Email: baronson@susmangodfrey.com
rgreene@susmangodfrey.com

*Attorneys for Plaintiff State of Illinois*

*/s/ Jennifer Linsey*
JENNIFER LINSEY
CHRISTI FOUST
Deputy Attorneys General
SCOTT BARNHART
Chief Counsel and Director of Consumer Protection
Office of the Indiana Attorney General
Indiana Government Center South 5th Fl.
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (463) 261-7401
Email: jennifer.linsey@atg.in.gov
christi.foust@atg.in.gov
scott.barnhart@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

*/s/ Noah Goerlitz*
NOAH GOERLITZ
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 725-1018
Email: noah.goerlitz@ag.iowa.gov

*Attorney for Plaintiff State of Iowa*

*/s/ Justin McCully*
JUSTIN MCCULLY
Assistant Attorney General
Office of the Attorney General of Nebraska
2115 State Capitol Building
Lincoln, NE 68509
Telephone: (402) 471-9305
Email: Justin.McCully@nebraska.gov

*/s/ Katherine Moerke*
KATHERINE MOERKE
ELIZABETH ODETTE
Assistant Attorneys General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Telephone: (651) 296-3353
Email: katherine.moerke@ag.state.mn.us
elizabeth.odette@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

*/s/ Rachel K. Sowray*
RACHEL K. SOWRAY
Senior Assistant Attorney General
Economic Justice Section
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 689-0249
Email: Rachel.Sowray@doj.oregon.gov

*Attorney for Plaintiff State of Oregon*

*/s/ Hamilton Millwee*
HAMILTON MILLWEE
Assistant Attorney General
Office of the Attorney General of
Tennessee
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov

*Attorney for Plaintiff State of Tennessee*

ALEX KAPLAN
RYAN CAUGHEY
ADAM CARLIS
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Email: akaplan@susmangodfrey.com
rcaughey@susmangodfrey.com
acarlis@susmangodfrey.com

BETSY ARONSON
REBEKAH G.S. GREENE
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
Email: baronson@susmangodfrey.com
rgreene@susmangodfrey.com

*Attorneys for Plaintiff State of Nebraska*

*/s/ Luminita Nodit*
LUMINITA NODIT
Assistant Attorney General,
Antitrust Division
Washington State Office
of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104
Telephone: (206) 254-0568
Email: Lumi.Nodit@atg.wa.gov

*Attorney for Plaintiff State of Washington*

*/s/ William Shieber*
Austin Kinghorn
Deputy Attorney General for Civil Litigation
WILLIAM SHIEBER
Senior Staff Attorney, Antitrust Division
Office of the Attorney General of Texas
300 West 15th Street, 7th Floor
Austin, TX 78701
Telephone: (512) 463-1710
Email: William.Shieber@oag.texas.gov

*Attorneys for Plaintiff State of Texas*

*/s/ Caitlin M. Madden*
CAITLIN M. MADDEN
LAURA E. MCFARLANE
Assistant Attorneys General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*

## Appendix A
## Website Notice

On [[DATE]], the Federal District Court for the Middle District of North Carolina entered a consent order ("Stipulated Order") prohibiting Corteva, Inc. ("Corteva") from offering active-ingredient-based loyalty programs where the customer must purchase more than 50% of its overall requirements of certain active ingredients from Corteva to qualify for a payment or other benefit. This prohibition applies to new and existing agreements or loyalty programs offered by Corteva. The Stipulated Order also prohibits Corteva from retaliating against customers who decide to purchase or sell certain active ingredients offered by generic competitors along with (or instead of) Corteva's products.

The Stipulated Order resolves a December 2022 amended complaint brought by the United States Federal Trade Commission ("Commission") and the states of California, Colorado, Illinois, Indiana, Iowa, Minnesota, Nebraska, Oregon, Tennessee, Texas, Washington, and Wisconsin, acting by and through their respective Attorneys General (collectively, "Plaintiffs"). The Stipulated Order does not constitute an admission by Corteva that it has violated the law or that any of the facts alleged by Plaintiffs regarding Corteva's conduct are true.

**Where To Get More Information**

To learn more, please read the Stipulated Order [[FTC link]].

If you have concerns about whether Corteva is complying with its obligations under the Stipulated Order—or questions about how the Stipulated Order applies to you—you may contact Corteva Agriscience at FTCOrderCompliance@Corteva.com or Corteva's Customer Information Center at 1-800-992-5994.

**Appendix B**
**Letter to Customers**

[Corteva letterhead]

[Name and address of Customer]

Dear [name of Customer]:

Corteva is required to send you this notice by the Court's Stipulated Order in *Federal Trade Commission, et al., v. Syngenta Crop Protection AG, et al.*, Case No. 1:22-cv-00828-TDS-JEP. The Stipulated Order reflects a settlement between the Plaintiffs and Corteva and does not constitute an admission by Corteva that it has violated the law or that any of the facts alleged by the plaintiffs regarding Corteva's conduct are true. Attached is a copy of the Stipulated Order and the complaint. You also may read and download these documents from the FTC's website at [web link]. Corteva's obligations relating to customer agreements and loyalty programs are set out in Section II of the Stipulated Order. Capitalized terms used in the Stipulated Order are defined in Section I of the Stipulated Order. All capitalized terms in this letter refer to terms defined in the Stipulated Order.

**Please read the Stipulated Order carefully. If anything in this letter conflicts with the terms in the Stipulated Order, the terms in the Stipulated Order apply**.

Generally, the Stipulated Order prohibits Corteva from offering or maintaining any Prohibited Loyalty Program that conditions a Monetary Benefit or Non-Monetary Benefit on a customer purchasing more than 50% of its overall requirements of a Relevant AI from Corteva during the term of the agreement. This prohibition applies to existing agreements or loyalty programs with Corteva and to any new agreements you enter with Corteva. The Stipulated Order also prohibits Corteva from retaliating against customers who decide to purchase or sell Comparable Products along with (or instead of) Corteva's Products.

If you have concerns in the future about whether Corteva is complying with its obligations under the Stipulated Order, you may contact us, the FTC, or both. You may contact Corteva through the account manager with whom you do business or contact our corporate offices directly by emailing FTCOrderCompliance@Corteva.com or calling 1-

800-992-5994. You may contact the FTC by phoning or e-mailing Paul Frangie at (202) 326-2697 and pfrangie@ftc.gov or bccompliance@ftc.gov.

Sincerely,

Damon M. Palmer

Vice President, National Accounts

**Appendix C**

[redacted]

**Appendix D**

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]