IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MINNESOTA, STATE OF NEBRASKA, STATE OF OREGON, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, and STATE OF WISCONSIN,<br><br>Plaintiffs,<br><br>v.<br><br>SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC.,<br><br>Defendants. | 1:22-cv-00828 |

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, District Judge.

This case concerns an allegedly anticompetitive loyalty rebate program for crop-protection products that was brought by the United States Federal Trade Commission and twelve states. Defendant Corteva, Inc. ("Corteva") has reached a settlement with Plaintiffs. Before the court is Corteva's motion to seal two appendices to the Consent Decree. (Doc. 546.) The facts of this case are set out int Fed. Trade Comm'n v. Syngenta Crop Prot. AG (Syngenta I), 695 F. Supp. 3d 701, 704 (M.D.N.C. 2023) and Fed. Trade Comm'n v. Syngenta Crop Prot. AG (Syngenta II), 711 F. Supp.

3d 545, 556-62 (M.D.N.C. 2024), and need not be repeated here. For the reasons set forth below, the motion will be granted.

## I. ANALYSIS

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), "and the public's business is best done in public," Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013). "When parties 'call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.'" Doe v. Pub. Citizen, 749 F.3d 246, 271 (4th Cir. 2014) (quoting Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000)).

The right of public access derives from both the common law and the First Amendment. See Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004) (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988)). "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone, 855 F.2d at 180 (citation omitted) (quoting

Nixon, 435 U.S. at 597). Thus, in any given case, some documents will "fall within the common law presumption of access," while others will be "subject to the greater right of access provided by the First Amendment," and some "may not qualify as 'judicial records' at all." United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003) (citing United States v. Amodeo, 44 F.3d 141, 145-46 (2d Cir. 1995)).[1]

Under the First Amendment standard, sealing is only permitted when (1) there is a "compelling government interest," and (2) the proposed restriction is "narrowly tailored to serve that interest." Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988) (collecting cases); see also Stone, 855 F.2d at 180 (citing Rushford, 846 F.2d at 253). Under the common law standard, the presumption in favor of public access "'can be rebutted if countervailing interests heavily outweigh the public interests in access' and '[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption.'" Lord Corp. v. S&B Tech. Prods., Inc., No. 09-CV-205, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012) (quoting Rushford, 846 F.32 at 253).

[1] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

When a party makes a request to seal judicial records, a district court "must comply with certain substantive and procedural requirements." Wash. Post, 386 F.3d at 576 (citing Rushford, 846 F.2d at 253). Procedurally, the court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. Id. (citing Stone, 855 F.2d at 181.) "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because '[o]nly then can it accurately weigh the competing interests at stake.'" Id. (alteration in original) (quoting Stone, 855 F.2d at 181). "Generally, the public interest in disclosure heightens as the underlying motions are directed more to the merits and as the case proceeds toward trial." SmartSky Networks, LLC v. Wireless Sys. Sols., LLC, 630 F. Supp. 3d 718, 732 (M.D.N.C. 2022) (citing Wash. Post, 386 F.3d at 578-79). Pursuant to this court's Local Rules, "[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support." L.R. 5.4(c)(3).

Settlement agreements requiring court approval have been reviewed under both the common law and the First Amendment right of access. Jeter v. Correct Care Sols., LLC, No. 19-cv-00152, 2020 WL 13551437, at *3 (M.D.N.C. July 16, 2020) (citations omitted) (citing Owino v. IBM Corp., No. 12-CV-1041, 2023 WL 2947146, at *2 (M.D.N.C. June 14, 2013); Mears v. Atl. Se. Airlines, Inc., No. 12-CV-613, 2014 WL 5018907, at *3 (E.D.N.C. Oct. 7, 2014)). The court need not decide whether settlement agreements requiring court approval are governed by the common law right of access or the stricter First Amendment right of access because Corteva meets its burden on both standards.

Sealing confidential business information may be appropriate absent an improper purpose and countervailing interests. See Nixon, 435 U.S. at 598; Adjabeng v. GlaxoSmithKline, LLC, No. 12CV568, 2014 WL 459851, at *3 (M.D.N.C. Feb. 5, 2014). In order to determine whether confidential business information should be sealed, courts consider (1) "whether the party has shown that the information sought to be sealed is confidential"; (2) "whether disclosure would harm the party's competitive standing or otherwise harm its business interests"; (3) "whether the motion is narrowly tailored"; and (4) "whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information." Sims v. BB&T Corp., No.

15-CV-732, 2018 WL 3466945, at *2 (M.D.N.C. July 18, 2018); see also Warner v. Midland Funding, LLC, No. 18CV727, 2021 WL 3432556, at *7 (M.D.N.C. Aug. 5, 2021) (applying the same standard). As discussed above, the common law standard "can be rebutted if countervailing interests heavily outweigh the public interests in access." Lord Corp, 2012 WL 895947, at *1. The Sims test incorporates the common law's rebuttal standard in its fourth prong: "whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information." Sims, 2018 WL 3466945, at *2. Therefore, any confidential business information that would be sealed under the First Amendment standard would be sealed under the common law standard.

Furthermore, "personal information of third parties is often subject to protection, given the privacy interests at stake for individuals who are not part of the suit." Stevens v. Cabarrus Cnty. Bd. Ed., 20-CV-335, 2022 WL 4620906, at *15 (M.D.N.C. Sept. 30, 2022). However, it is not enough to assert generally that exhibits contain "sensitive and confidential business information" without supplying "specific underlying reasons for the district court to understand how [the party's interest] reasonably could be affected by the release of such information." Trs. of Purdue Univ. v. Wolfspeed, Inc., No. 21-CV-840, 2023 WL 2776193, at *2 (M.D.N.C.

Feb. 28, 2023) (quoting Wash. Post, 386 F.3d at 579).

Here, Corteva asks the court to "redact Appendices C and D in their entirety from the proposed final version of the Consent Decree." (Doc. 546 at 2.) Appendix C "lists customers who participated in the challenged loyalty programs." (Id. at 4.) Appendix D "describes in specific terms the rebate program that Corteva will implement to replace the challenged loyalty programs." (Id.) As Corteva points out, the court previously recognized similar information at issue as confidential and granted Corteva's request to seal. (Id. (citing Syngenta I, 695 F. Supp. 3d at 706-07).) The court granted the motion to seal "sensitive and confidential business information." Specifically:

> the identity of non-parties with whom they do business and the contents of their non-public agreements; proprietary details regarding the functioning of the loyalty program; sensitive business communications regarding the loyalty program; internal forecasts and assessments regarding the parties' market shares based on internal analyses; and the contents of negotiations between Defendants.

Syngenta I, 695 F. Supp. 3d at 706-07. Plaintiffs do not oppose the motion to seal. (Doc. 546 at 2.) The court considers each sealing standard element in turn.

**A. Confidentiality**

Appendix C identifies non-parties with whom Corteva does business. (See Doc. 544-1 at 25.) The court previously recognized this information as confidential. Syngenta I, 695 F. Supp. 3d at

706. Corteva maintains that "disclosure would enable competitors to identify and target Corteva's most important customers and expose non-party distributor information without consent." (Docs. 546 at 4; see Doc 546-1 ¶ 13.) This shows how the release of information would affect Corteva's interest. See Trs. of Purdue Univ., 2023 WL 2776193, at *2. There is no reason for a different analysis here. The identity of these non-parties is confidential.

Appendix D includes terms of the new loyalty and rebate program. (See Doc. 544-1 at 26-40.) The court recognized the previous agreement's terms as sensitive. Syngenta I, 695 F. Supp. 3d at 707. These new terms are also "sensitive, since [they] reflect[] detailed, forward-looking commercial plans and competitive strategies rather than historical data." (Doc. 546 at 4.) Corteva maintains that it will treat the information as "confidential in the ordinary course of business" and "guard the confidentiality of the terms of its revised rebate programs in the same manner as the prior loyalty programs, and does not intend to disclose these terms publicly." (Docs. 546 at 4-5 (citing 546-1 ¶ 7).) The agreement also includes a confidentiality clause, requiring customers to keep the agreement's terms confidential. (See Doc. 554-1 at 29.) As discussed below, Corteva asserts that competitors could "replicate Corteva's pricing structures or selectively undercut Corteva's pricing" if Appendix D's

information is released. (Doc. 546 at 5 (citing Doc. 546-1 ¶¶ 11-12).) This demonstrates how the release of information would adversely affect Corteva's interest. See Trs. of Purdue Univ., 2023 WL 2776193, at *2. The court therefore recognizes these new terms as confidential as it did the previous terms.

**B. Harm to Competitive Standing and Business Interests**

Corteva maintains that "[p]ublic disclosure of any the information in Appendices C and D would cause concrete competitive and commercial harm to Corteva and potentially to non-party distributors." (Doc. 546 at 5.)

Corteva asserts that disclosing Appendix C "would enable competitors to identify and target Corteva's most important customers and expose non-party distributor information without consent." (Doc. 546 at 4; see Doc. 546-1 ¶ 13.) The court previously determined that releasing "the identity of non-parties with whom [Corteva does] business" would create "a windfall to competitors because it would enable the pursuit of the same or similar agreements with third parties." Syngenta I, 695 F. Supp. 3d at 707. None of the parties presented the court with reason to change its analysis, and the court again determines that releasing customer identities, found in Appendix C, would "harm the party's competitive standing or otherwise harm its business interests." Sims, 2018 WL 3466945, at *2.

Corteva contends that the terms in Appendix D, if made public, "would reveal discount and rebate strategy with respect to its most important direct buying customers" and competitors "could replicate Corteva's pricing structures or selectively undercut Corteva's pricing." (Doc. 546 at 5 (citing Doc. 546-1 ¶¶ 11-12).) Corteva maintains that it developed these "forward-looking rebate calculation methodologies, qualifiers, and discount thresholds . . . through substantial investment of time, resources, and expertise." (Id. (citing Doc. 546-1 ¶ 12).) The court again finds that disclosure would "harm the party's competitive standing or otherwise harm its business interests," Sims, 2018 WL 3466945, at *2, because releasing the information would "give a windfall to competitors because it would enable pursuit of the same or similar agreements with third parties, that counterparties to future negotiations would gain an advantage to seek more favorable terms with [Corteva] and non-parties, and that competitors could modify their business strategies to [Corteva's] disadvantage." Syngenta I, 695 F. Supp. 3d at 707.

**C. Narrowly Tailored**

Corteva argues that "the proposed redaction is narrowly tailored to protect only Corteva's sensitive business information, and not aspects of the Consent Decree that may be of interest to the public." (Doc. 546 at 8 (citing Sky Angel U.S., LLC v.

Discovery Commc'ns, 95 F. Supp. 3d 860, 883 (D. Md. 2015)).) When analyzing redactions to the amended complaint, this court previously determined that the "specificity of the parties' redactions and claims of potential injury – supported by declarations from Defendants' executives – demonstrates that Defendants' justifications are adequate to overcome the public's important First Amendment interests at stake." Syngenta I, 695 F. Supp. 3d at 707 (citing Adjabeng, 2014 WL 459851, at *3.) At that stage, the Defendants only "highlighted portions of the amended complaint" to redact. Id. at 706. Here, however, Corteva seeks to redact entire appendices.

Redacting all of Appendix C is narrowly tailored. Appendix C is nothing more than a bulleted list of customers. (Doc. 544-1 at 25.) There is no additional information on this page other than the document title. Thus, "the redacted portions are narrowly tailored to protect . . . sensitive commercial information." Sky Angel, 95 F. Supp. 3d at 883.

Likewise, redacting all of Appendix D is narrowly tailored. The court recognized the previous agreement's terms as sensitive. Syngenta I, 695 F. Supp. 3d at 707. Corteva maintains that Appendix D, if made public, "would reveal discount and rebate strategy with respect to its most important direct buying customers" and competitors "could replicate Corteva's pricing

structures or selectively undercut Corteva's pricing." (Id. at 5 (citing Doc. 546-1 ¶¶ 11-12).) Requiring Corteva to redact only some of the agreement's terms would risk its competitive position by allowing competitors to model their offers based on the terms made public. (Doc. 546-1 ¶ 11.) These terms are not typically public anyway, as the document includes a confidentiality clause. (See Doc. 554-1 at 29.) Furthermore, the "public Consent Decree will set forth in full the negotiated terms governing prohibited and permitted rebate structures" without disclosing confidential business information. (See Doc. 546-1 ¶ 10.) The public will maintain access to the essential terms but not to confidential business information.

**D. Compelling Interests in Non-disclosure**

Corteva asserts that the "public interest in accessing Appendices C and D are minimal at best" and "Corteva's interest in keeping the information in these Appendices under seal is substantial, and therefore far outweighs the at-best minimal public interest in accessing the specific details of Corteva's customer lists and commercial plans disclosed in Appendices C and D." (Doc. 546 at 7 (citing Silicon Knights, Inc. v. Epic Games, Inc., No. 07-CV-275, 2011 WL 901958, at *2 (E.D.N.C. Mar. 15, 2011); Deque Sys., Inc. v. Browerstack, Inc., No. 24-cv-217, 2025 WL 4054491, at *3 (E.D. Va. Feb. 7, 2025)).) Courts within this

circuit have explained that the public's First Amendment presumption of access is overcome when documents "contain confidential and proprietary commercial information, including information relating to . . . highly sensitive financial and business information belonging to the parties as well as third-parties, information which is of utmost importance to them but not generally available to the public or bearing importance to any public matters." Silicon Knights, 2011 WL 901958, at *2 (collecting cases); see also Deque Sys., 2025 WL 4054491, at *3 (noting that a party's "interest in its proprietary information and nonparty's privacy interests are sufficient[ly] strong to overcome the First Amendment presumption of access").

Likewise, in this case, Appendix C includes a confidential list of customers, implicating third party privacy interests. And Appendix D includes confidential "forward-looking rebate calculation methodologies, qualifiers, and discount thresholds that Corteva developed through substantial investment of time, resources, and expertise." (Doc. 546 at 5 (citing Doc. 546-1 ¶ 12).) Corteva's interest in non-disclosure outweighs the public's interest in disclosure because these appendices implicate highly confidential business documents and non-party business privacy concerns.

### F. Public Notice and Opportunity to Challenge Sealing

Turning to the procedural requirement to give the public notice and a reasonable opportunity to challenge the request to seal, the motion has been publicly docketed since September 25, 2026. (Doc. 546; see Wash. Post, 386 F.3d at 576.) No party has contested the motion, nor has any member of the public objected. Defendants have therefore met the notice requirement.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED THAT Corteva's Motion to Seal Appendices C & D to the Consent Decree is GRANTED and that Appendices C & D (Doc. 544-1 at 25-40) shall remain redacted in the publicly-filed version of the Consent Decree.

/s/ Thomas D. Schroeder
United States District Judge

November 13, 2026